1  Victor A. Sahn (CA Bar No. 97299)
     *victor.sahn@gmlaw.com*
2  Mark S. Horoupian (CA Bar No. 175373)
     *mark.horoupian@gmlaw.com*
3  Steven F. Werth (CA Bar No. 205434)
     *steven.werth@gmlaw.com*
4  Greenspoon Marder LLP
   a Florida limited liability partnership
5  333 South Grand Ave., Suite 3400
   Los Angeles, CA 90071
6  Telephone: 213.626.2311
   Facsimile: 954.771.9264
7

8  Attorneys for Spring Mountain
   Vineyard Inc.

9              UNITED STATES BANKRUPTCY COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11                   SANTA ROSA DIVISION

12  In re:                              Case No.:  1:22-bk-10381 CN

13  SPRING MOUNTAIN VINEYARD INC., a     Chapter 11
    Delaware corporation,
14                                        **DEBTOR'S EMERGENCY MOTION
                                          PURSUANT TO SECTION 363(c) OF THE
15            Debtor.                     BANKRUPTCY CODE AND RULE 4001(b)
                                          OF THE FEDERAL RULES OF
16       Federal EIN:  36-3844911         BANKRUPTCY PROCEDURE FOR
                                          INTERIM AND FINAL ORDERS
17                                        AUTHORIZING USE OF CASH
                                          COLLATERAL; MEMORANDUM OF
18                                        POINTS AND AUTHORITIES**

19                                        [Declarations of Constantine S. Yannias, Kevin
                                          Krakora, Jay B. Spievack, Esq., Jorge Cauz,
20                                        Peter Ekman and John Vaughan, filed
                                          concurrently herewith]
21
                                          Date:      October 6, 2022
22                                        Time:      3:00 p.m.
                                          Place:     U.S. Bankruptcy Court
23                                                    Courtroom 215
                                                      1300 Clay Street, Suite 300
24                                                    Oakland, CA 94612
25

26

27

28

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

**TO THE HONORABLE CHIEF JUDGE CHARLES NOVACK, UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; MGG CALIFORNIA LLC AS AGENT FOR CERTAIN SECURED CREDITORS, THE TWENTY LARGEST UNSECURED CREDITORS, AND PARTIES ENTITLED TO NOTICE:**

## EMERGENCY MOTION

Pursuant to Section 363 of the Bankruptcy Code, Spring Mountain Vineyard Inc., a Delaware corporation, the debtor and debtor in possession in the above-captioned case ("Debtor"), moves, on an emergency basis, for an order authorizing the Debtor to use cash collateral on an interim basis pending a final hearing (the "Motion").

The Debtor commenced its Chapter 11 bankruptcy case on September 29, 2022 (the "Petition Date"). The Debtor owns and operates an 845-acre winery on four adjacent vineyard estates in St. Helena, California (the "Vineyard"). The website for the Vineyard is www.springmountainvineyard.com. The Debtor's sole secured creditor is MGG California LLC, which is the administrative agent and collateral agent for a group of lenders who are affiliated with that entity (collectively, "MGG").

The Debtor entered into a credit facility with MGG on October, 2018, and obtained a loan "Loan") from MGG of $185 million. Since that date, the Debtor and MGG have amended that credit facility twice, entered into a forbearance agreement, and amended the terms of that forbearance agreement two times, most recently in July, 2022. As a result of these transactions, with one exception, MGG possesses a security interest in all of the Debtor's assets: its real property, its 135 vineyard blocks occupying 150 acres, the grapes that are currently being harvested, two winery buildings, the estate manor, 79,000 cases of wine inventory, the caves where the Debtor stores its wine casks, the well and reservoir where the Debtor gets its liquor license, its accounts receivable, and its cash.

MGG will likely inform the Court that regular monthly payments on the Loan have not been made for some time. There is an element of truth to that fact, however, the following is also true which is that the following lump sum payments have been made to MGG as a result of the liquidation

2

of certain collateral that they hold and as a result of payment(s) made by the Debtor or its principal. Those payments are as follows-

    A.     Principal Reduction Payment Through Real Estate Sale of Principal's Residence-$40,000,000

    B.     Principal Reduction Payment January, 2022-$25,000,000

    C.     Principal Reduction Payment Through Payment by Insurance Carrier for Fire Damage Suffered at the Debtor's Vineyard which was remitted to MGG pursuant to its security interests in the policy-$7,250,000

So whether through asset sales of assets of the Debtor's principal, Mr. Jaqui Safra or through collections on insurance claims (See Declaration of Jay B. Spievack, Esq. in Support of Cash Collateral Motion), since 2018, MGG has been paid $72,250,000. In addition, with regular payments and the application of the interest reserve, the total MGG has received is approximately $103,623,789. In spite of these very substantial payments, MGG's indebtedness has accrued interest at a rate of sixteen percent (16%) per annum for a number of years. Having borrowed $185 Million in 2018 and having paid over $100,000,000 toward that debt, MGG's debt has **increased** by $20 Million. One of the primary reasons for the filing of this Chapter 11 case is the Debtor will file a Plan of Reorganization and as provided in Section 1123(a)(5)(G), file and confirm a Plan which shall "…curing or waiving of any default…" as the statute permits. Hence as of the bankruptcy filing, MGG's debt is approximately $205,000,000.

MGG also has a security interest in two non-Debtor assets. As a result of the amendments to the credit facility after October, 2018, the Debtor's beneficial owner Mr. Jacob Safra ("Mr. Safra") pledged additional collateral to MGG to secure the Loan. He pledged a 100% interest in the Debtor (held by a company--Freecrest Limited--controlled by Mr. Safra). Additionally, he granted MGG a $75 million third-lien in a company owned by Mr. Safra--Encyclopaedia Britannica, Inc. ("Britannica"), the company that holds the famed Encyclopedia Britannica and Merriam-Webster dictionary and thesaurus, a company with an estimated value of $450,000,000 to $550,000,000 (See Declaration of Jorge Cauz, Chief Executive Officer of Britannica). The two liens ahead of MGG total less than $150 million, making MGG's lien in Britannica oversecured by three times.

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

Additionally, though it is not collateral, the Loan has been guaranteed by Mr. Safra and Mr. Safra has provided a Confession of Judgment to MGG, for the full amount of the Loan.

On September 30, 2022--the day after the Petition Date--Mr. Safra transferred $600,000 of his own money into the Debtor's bank account as an equity infusion (the "Unrestricted Cash"). He did this voluntarily for the purpose of covering any operating shortfall in the cash collateral budget which the Debtor asks this Court to approve on an interim basis (See Declaration of Mr. Kevin Krokara of GetzlerHenrich in support of cash collateral motion). The Unrestricted Cash will provide an operating cushion that will cover the Debtor's operating costs through November 30, 2022. Mr. Safra will make an additional cash infusion of $1.4 Million by November 15, 2022 in order to cover operating costs through December 31. 2022. MGG will likely indicate that Mr. Safra is unreliable or has made promises not kept over the course of this Loan. The Debtor begs to differ. Mr. Safra has paid MGG $72,500,000 through the sale of his assets or from insurance policy recoveries from the Glass Fire. MGG will find as many bad things to say about Mr. Safra as they possibly can. The substantial payments made to MGG since 2018 speaks to a different level and kind of performance than MGG will surely attempt to portray before this Court.

The Debtor's expenses as reflected in the budget attached to the separately filed Declaration of Kevin Krakora are bare bones, but it has two significant, and inflexible, operating costs. The first is insurance, which skyrocketed as a result of the Glass Fire in September 2020 which destroyed an entire season of grapes and half of the vineyard blocks. Over the next 13 weeks, insurance is projected to cost $1.3 million. The second is the Debtor's 61 employees, approximately 40 of whom are, at this very moment, harvesting grapes. The Debtor projects $1.2 million in salary expenses over the next 13 weeks to these employees. During this same period, the Debtor projects that its income will be approximately $2.2 million. The shortfall will be made up by equity infusions from Mr. Safra, including the Unrestricted Cash, with another infusion of equity to be made in November, on or before November 15, 2022 when $1.4 Million will be provided.

MGG's adequate protection comes from a combination sources. The first is the equity cushion provided by all of the collateral in which the MGG has an interest: real property (recently appraised at $218,700,000), the Debtor's 79,000 cases of wine inventory ($164 million at retail, $80

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

4

Million at wholesale), and its third-lien in Britannica ($75 million). Additionally, as shown in the Declaration of Jay B. Spievack, MGG has a security interest in a litigation action filed by the Debtor against a number of its insurers for damages suffered and not paid by the insurance carriers stemming from the Glass Fire. The lawsuit as Mr. Spievack, an expert in insurance coverage litigation, indicates that the lawsuit is worth $35 Million. Not only does MGG have a security interest in this eventual recovery, but they have already collected and applied to their prepetition debt, $7.25 Million of the total of $8.25 Million that has been paid by certain of the Debtor's insurance carriers. The total value of that collateral is $408,700.00 based upon the wholesale value of the Debtor's inventory, and the value is $492,700,000 based upon the retail value of the Debtor's wine inventory. MGG is owed, as of the Petition Date, $205 million. Further, the value of the underlying collateral is increasing. Wine inventory increases in value as it ages, and the Debtor's vineyard property has steadily and dramatically increased in value over the years.

The second source of protection for MGG is the Debtor's plan to pay down MGG and refinance the Property. Mr. Safra has engaged, and is actively working with, well-known bankers at William Blair & Company to monetize the equity of Britannica. The private placement – which is expected to close by the end of the year – will enable Mr. Safra to pay $75 million to MGG, reducing the amount owing to approximately $130 million, and at that debt level, Mr. Safra will be able to obtain a refinance of the Loan.

The Debtor is not relying upon the Britannica private placement and a subsequent refinance of the real property in order to pay off its indebtedness to MGG. Debtor is actively exploring other potential business plans for the expeditious exit from Chapter 11. Once again, MGG will attempt to convince the Court that Mr. Safra has failed to perform with respect to the Debtor's obligations under the Loan. And once against, the Debtor reminds the Court that since 2018 when this loan was placed, Mr. Safra has paid MGG at least $72,500,000, and combined with regular interest payments and the application of an interest reserve, MGG has received over $103,000,000. MGG may say it has heard that before, but the Debtor is now before this Court where transparency is mandatory. Compliance with Bankruptcy Code obligations is mandatory. The Debtor has retained capable bankruptcy counsel. The Debtor has employed--a requirement of MGG--a highly sophisticated

5

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

financial advisor--Getzler Henrich & Associates, and a Chief Restructuring Officer, Mr. Kevin Krakora and with Mr. Peter Ekman, an expert in the wine industry who has shepherded a number of companies through distressed financial situations, work-outs and reorganizations (See Declaration of Peter Ekman regarding value of Debtor's wine inventory).

At a continued hearing on this motion, the Debtor anticipates it will be able to provide substantially more information on the progress of having its reorganization move toward a conclusion which will satisfy the Loan. This bankruptcy case may have been caused by the imminent exercise by MGG of its default remedies and other rights obtained under the second Forbearance Agreement with the Debtor, however, now, the Debtor seeks only an interim order, and a continued hearing so that the Debtor's request for use of MGG's cash collateral can be heard on a final basis later. That hearing will take place based upon availability, on a date which is approximately 15 days from the October 6, 2022 preliminary hearing on the Cash Collateral Motion. The Debtor proposes to use cash pursuant to a 13-week budget projection which is attached hereto as **Exhibit 1** (the "Budget"). The separately filed Declaration of Kevin Krakora from Getzler Henrich & Associates demonstrates his efforts to prepare a conservative budget regarding operations-what the Debtor seeks in this case must be granted in order for the Debtor's business to continue as a going concern. No one argues, including MGG, that operations on a going concern basis should continue. If operating expenses including payroll, withholding taxes and benefits are not paid, if critical vendors are not paid and if applicable utility bills are not paid, the Debtor will be out of business and the most important asset, its vineyard stock, will die. That would be particularly tragic because the Debtor is currently harvesting its crop and is enjoying a significant increase in the quality and tonage of its grapes this year as compared with the last two years subsequent to the Glass Fire and while the Debtor and so many other businesses languished in Chapter 11.

The relief sought in the Motion is based upon the Motion, the attached Memorandum of Points and Authorities, and several declarations filed concurrently with this motion. The first is the Omnibus Declaration of Constantine S. Yannias ("Omnibus Decl."), President of the Debtor. The second is the declaration of Mr. Kevin Krakora, the Debtor's Chief Restructuring Officer ("Krakora

Decl."). The third is the declaration John Vaughan, the appraiser of the Vineyard ("Vaughan Decl."). The fourth is the declaration of Jorge Cauz regarding the valuation of the Britannica company and MGG's interest in it, the fifty is the Declaration of Peter Ekman regarding the value of the Debtor's inventory and the sixth is the Declaration of Jay B. Spievack, Esq. regarding the value of the Debtor's litigation claims against its insurance carriers for failing to pay $35 Million of insurance benefits that the Debtor was entitled to receive owing to the damage suffered in the Glass Fire. The relief sought in the Motion is also based on the statements, arguments, and representations of counsel to be made at the hearing on the Motion, and any other evidence properly presented to the Court at or prior to the hearing on the Motion.

    **FOR THESE REASONS**, the Debtor respectfully requests that the Court enter an order:

    1. Granting the Motion;

    2. Authorizing the Debtor's use of cash collateral on an interim basis pursuant to 11 U.S.C. § 363(c)(2)(B) and (c)(3) and Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedure;

    3. Setting a final hearing on the Motion; and

    4. Granting such other relief as the Court deems just and proper.

Dated: October 4, 2022

Greenspoon Marder LLP
A Florida limited liability partnership

By: _____
Victor A. Sahn
Mark S. Horoupian
Steven F. Werth
Bankruptcy Counsel for Spring Mountain Vineyard Inc.

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

7

# TABLE OF CONTENTS

INTRODUCTORY STATEMENT ..................................................................................1

I. BACKGROUND ..........................................................................................................5

    A. Business Operations ..........................................................................................5

    B. Financing History ..............................................................................................6

    C. Assets .................................................................................................................8

    D. Budget ................................................................................................................9

II. THE DEBTOR SHOULD BE PERMITTED TO USE CASH COLLATERAL................10

    A. The Relief Requested Is Authorized by 11 U.S.C. § 363 ........................................10

    B. MGG's Interest In Cash Collateral Will Be Adequately Protected Under 11 U.S.C. § 361 Because There Will Be No Significant Diminution In Value Of The Collateral That Secures MGG's Claim .................................................................12

    C. MGG's Interests In Cash Collateral Will Be Adequately Protected Under 11 U.S.C. ...............................................................................................................15

    § 361 Because The Debtor's Use Of Cash Collateral Will Preserve The Going Concern Value Of The Vineyard .............................................................................15

    D. Emergency Authority To Use Cash Collateral Is Warranted Under 11 U.S.C. § 363(c)(3) And Rule 4001(B) To Allow The Debtor To Operate Its Business ......................................................................................................................17

III. CONCLUSION ..........................................................................................................18

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

i

# TABLE OF AUTHORITIES

**Page**

## CASES

*In re A&B Hearing & Air Conditioning, Inc.,*
    48 B.R. 401 (Bankr. M.D. Fla. 1985) ................................................................. 15

*In re Alyucan Interstate Corp.,*
    12 B.R. 803 (Bankr. D. Utah 1981) ..................................................................... 13

*In re Avila,*
    311 B.R. 81 (Bankr. N.D. Cal., 2004) ................................................................. 17

*In re Center Wholesale, Inc.,*
    759 F.2d 1440 (9th Cir. 1985) ............................................................................. 18

*In re Dynaco Corp.,*
    162 B.R. 389 (Bankr. D. N.H. 1993) ................................................................... 15

*In re Forest Ridge, II, Ltd. Partnership,*
    116 B.R. 937 (Bankr. W.D.N.C. 1990) ............................................................... 14

*In re Gallegos Research Corp.,*
    193 B.R. 577 (Bankr. D. Colo. 1995). ................................................................ 14

*In re Heatron, Inc.,*
    6 B.R. 493 (Bankr. W.D. Mo. 1980) ............................................................. 15, 16

*In re Hoffman,*
    51 B.R. 42 (Bankr. W.D. Ark. 1985) ................................................................... 15

*In re McCombs Props. VI, Ltd.,*
    88 B.R. 261 (Bankr. C.D. Cal. 1988) ............................................................. 13, 17

*In re Megan-Racine Assocs., Inc.,*
    202 B.R. 660 (Bankr. N.D.N.Y. 1996) ................................................................ 14

*In re Melcher,*
    329 B.R. 865 (Bankr. N.D. Cal., 2005) ............................................................... 17

*In re Mickler,*
    9 B.R. 121 (Bankr. M.D. Fla. 1981) .................................................................... 11

*In re Nellson Nuraceutical, Inc.,*
    2007 WL 201134 (Bankr.D. Del. 2007) .............................................................. 17

*In re O'Connor,*
    808 F.2d 1393 (10th Cir. 1987) ........................................................................... 16

*In re Pine Lake Village Apartment Co.,*
    16 B.R. 750 (Bankr. S.D.N.Y. 1981) .................................................................. 17

**GREENSPOON MARDER LLP**
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

ii

*In re Prime, Inc.,*
    15 B.R. 216 (Bankr. W.D. Mo. 1981) ............................................................ 16

*In re Shockley Forest Industries, Inc.,*
    5 B.R. 160 (Bankr. N.D. Ga. 1980) .............................................................. 16

*In re Stein,*
    19 B.R. 458 (Bankr. E.D. Pa. 1982) ............................................................ 16

*Matter of Plaza Family Partnership,*
    95 B.R. 166 (Bankr. E.D. Cal., 1989) ......................................................... 17

**<u>STATUTES</u>**

11 U.S.C. § 363 ................................................................................... 10, 11, 13

11 U.S.C. § 363(c)(2) ................................................................................... 10

11 U.S.C. § 506(c) ........................................................................................ 11

11 U.S.C. § 522 ............................................................................................. 11

11 U.S.C. § 544 ............................................................................................. 11

11 U.S.C. § 545 ............................................................................................. 11

11 U.s.C. § 547 ............................................................................................. 11

11 U.S.C. § 548 ............................................................................................. 11

11 U.S.C. § 552(b) ........................................................................................ 11

11 U.S.C.§ 361 ..................................................................................... 12, 13, 14, 15

11 U.S.C.§ 362(d)(1) .................................................................................... 14

11 U.S.C.§ 363(a) ......................................................................................... 11

11 U.S.C.§ 363(c) ......................................................................................... 10

11 U.S.C.§ 363(c)(1) .................................................................................... 10

11 U.S.C.§ 363(c)(3) .................................................................................... 17

11 U.S.C.§ 552(b)(1) .................................................................................... 11

**<u>RULES</u>**

Local Bankruptcy Rule
    Rule 4001(B) ............................................................................................ 17

Case: 22-10381   Doc# 19   Filed: 10/04/22   Entered: 10/04/22 11:59:39   Page 10 of 39

Local Bankruptcy Rule.
Rule 4001(b)(2) ................................................................................ 17, 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**GREENSPOON MARDER LLP**
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTORY STATEMENT

The Debtor filed this Chapter 11 petition on September 29, 2022 ("Petition Date"). The filing was done on an emergency basis to prevent MGG from exercising rights under its latest forbearance agreement with the Debtor which would have conveyed substantially all of the Debtor's assets to MGG which would have taken place on September 30, 2022. The Debtor is a multi-million dollar wine business that owns and operates a winery on approximately 850 acres in St. Helena, California in Napa County. The Debtor currently employs 70 people.

The Debtor's sole secured creditor is MGG. MGG has a security interest in all of the Debtor's real property and personal property, including its wine inventory and cash, with the exception of the Unrestricted Cash. The Debtor owes MGG approximately $205 million. MGG is substantially oversecured. The exercise of its remedies provided in their Forbearance Agreement would have deprived the bankruptcy estate, its creditors and the Debtor's interest holders of value in the amount of more than $180 Million on the low side and as much as $250 Million on the high side. The Debtor would not be acting in a manner consistent with its fiduciary duties if it did not file this Chapter 11 case and move to expeditiously capitalize on the substantial value in its assets for the benefit of creditors, employees, vendors, unsecured creditors and interest holders of the Debtor. The assets that secure the Debtor's obligation to MGG include the following:

*The Vineyard*. MGG has a first-lien mortgage in the Vineyard, which has been recently appraised at $218.7 million by John Vaughan, MAI, with Newmark Knight Frank. Vaughan Decl., ¶12. Mr. Vaughan also appraised the Vineyard in June 2021, and estimated a value of the Vineyard at that time of $204 million. Mr. Vaughan works for a very prestigious appraisal firm and he specializes in the appraisal of wine vineyard assets. It would be difficult to find a more credible expert in the valuation area.

*The Wine Collateral*. The Vineyard has been producing fine wine since the 1800s. For a number of years, the Vineyard has been retaining a majority of each year's production in order to build a vertical inventory library. The Vineyard's library is comprised of 79,000 cases of wine that include vintages going back to 1979 (the "Wine Inventory"). This library significantly enhances the

1

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

Spring Mountain brand, making it more competitive to established French vineyards than any other vineyard in Napa, and attracts visitors (and purchasers) to the Vineyard's tasting room. MGG has a first-lien security interest in the Wine Inventory. The wholesale value of the Wine Inventory is $82 million and the retail value is $164 million. *See Declaration of Peter Ekman submitted in support of Cash Collateral Motion.*

*The Britannica Third-Lien*. MGG has a $75 million third-lien security interest in Mr. Safra's 100% equity in Britannica. Britannica is a private company, indirectly and wholly owned by Mr. Safra, that owns incredibly valuable intellectual property assets and a highly lucrative ongoing business that spins off substantial free cash flow with comparably minimal operating expenses, resulting in an annual EBITDA in the tens of millions of dollars. Mr. Safra has engaged, and is actively working with at the present time, well-known investment bankers at William Blair & Company to conduct a private placement of the equity of Britannica. The Court has before it the detailed Declaration of the Chief Executive Officer of Britannica, Mr. Jorge Cauz. Mr. Cauz has conservatively estimated Mr. Safra's equity in Britannica at between $450 Million and $550 million. The first lien on Britannica is for $100 million, and the second lien is no more than $25 million, making MGG's third lien oversecured and more than "in the money". Mr. Safra believes that this portion of MGG's secured claim will be paid by year end or in early January, 2023. This payment of $75 Million will substantially reduce the Debtor's obligation to MGG. *See Declaration of Jorge Cauz in Support of Cash Collateral Motion.*

*The Litigation Against the Insurance Carriers.* As demonstrated by the Declaration of Jay B. Spievack, Esq., responsible counsel in connection with the Debtor's claims against the multiple insurance carriers for their failure to pay claims for which they were responsible following the Glass Fire in the fall of 2020, the Debtor ascribes a value of $35,000,000 to those claims as the damages actually suffered exceed the available coverage. Additionally, with respect to some of the insurance defendants, Mr. Spievack believes that the Debtor may additionally recover punitive damages and attorneys' fees.

In February 2021, the Debtor and MGG entered into a forbearance agreement relating to the Loan. The forbearance agreement was amended twice, and in the second amendment, dated July,

2

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

2022, MGG required as a condition of forbearance that the Debtor retain  Getzler Henrich & Associates LLC ("Getzler") as its financial advisor and that the Debtor hire Mr. Kevin Krakora ("Mr. Krakora"), the managing director of Getlzer, as the Debtor's Chief Restructuring Officer.  The Debtor did so, and Mr. Krakora has served as the Debtor's CRO since August 22, 2022.  Mr. Krakoa has prepared a 13-week budget of anticipated Debtor expenses.  That budget (the "Budget") is attached as **Exhibit 1**.  The Budget identifies all of the expenses that the Debtor anticipates it will incur during that time.

The Budget, which includes additional expenses relating to professional fees the Debtor will incur during this bankruptcy case, indicates that by the end of the 13-week period, the Debtor will have expenses of $1.7 million more than its projected income.  To bridge that gap, Mr. Safra on September 30, 2022, deposited $600,000 into the Debtor's bank account.  This payment was made as an equity contribution.  As set forth in the Budget, that amount will be sufficient to cover the Debtor's expenses through the end of November.  For December, 2022, Mr. Safra will deposit another $1.1 million into the Debtor's account not later than November 15, 2022.

Prior to the Petition Date, the Debtor and MGG entered into numerous forbearance agreements which, among other things, established a Termination Date by which if certain events had not occurred, MGG could record certain documents and immediately take possession of the Debtor's real and personal property.  That Termination Date was eventually extended to September 30, 2022.  The Debtor requested that MGG extend that date an additional time, but MGG declined to do so.  The Debtor, faced with the imminent loss of all of its property, commenced this bankruptcy case.

The Debtor and MGG have engaged in numerous conversations regarding the use of its cash collateral in this bankruptcy case.  Prior to filing this motion, MGG had not been able to reach a resolution of the interim usage of cash collateral.  They will continue to try and resolve the matter prior to the October 6 hearing before this Court.

The Debtor and MGG may ultimately enter into some type of agreement regarding cash collateral.  But that has not yet occurred, and as such, the Debtor by this motion seeks only a narrow ruling from this Court:  that (i) the Debtor be authorized to use cash collateral on an interim basis

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

for the purposes identified in the Budget, with a 15% variance built in, (ii) that the Court set a further hearing on the motion, and (iii) that the Court grant MGG a replacement lien on post-petition receivables to the extent of any diminution in value of MGG's collateral as a result of the Debtor's use of cash collateral. This last item is the only additional "security" that the Debtor requests the Court grant MGG by way of this motion.

**Debtor's Motion to Pay Critical Vendors:** The Chapter 11 filing by the Debtor has created significant emergent situations with regard to a limited but very important number of the Debtor's vendors. Set for hearing at the same time as this cash collateral hearing is the Debtor's Motion to Pay Critical Vendors. These critical vendors include

1.      Conway Beverage Group, LLC, dba Elite Brands, a California limited liability company ("Elite"): owed $69,329.20

2.      Wine Service Cooperative ("WSC"): owed $141,500.

3.      Napa Valley Petroleum: $13,985.27

4.      C Q & A Consulting: approximately $30,000

The Debtor will not repeat here what is in the Critical Vendors Motion that was filed with the Court simultaneously with the filing of this within Cash Collateral Motion along with the Debtor's other First Day Motions. However, while some of these items are substantial, they are nevertheless crucial. Wine Service Cooperative, for example, warehouses all of the Debtor's inventory at its various locations. Additionally, they fulfill all of the Debtor's orders, from the smallest possible orders to orders which are very large, particularly to large stores and distributors. It is likely that WSC has a warehouseman's lien under applicable law. *See California Commercial Code Section 7201-7210.*

**Additional Provisions of the Cash Collateral Order:** In addition, the Debtor will add to an interim order, if the Court finds it appropriate, the following requirements with which Debtor will comply:

1.      The Debtor will provide MGG a weekly statement of cash flows, which will track the categories identified in the Budget.

4

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

2.      The Debtor will provide MGG a weekly reconciliation of cash flow against the Budget.

3.      Both of the above will be provided to MGG on or before the Friday following the end of the previous week.  For example, on or before October 14, 2022, the Debtor will provide to MGG the statements covering the week of October 2 to October 8.

4.      The Debtor will provide a monthly accounting of the Wine Inventory, with the first accounting due on October 28, 2022, and later accountings due on the last business day of the month.

5.      The Debtor will provide MGG access to inspect the Vineyard and to inspect the Wine Inventory, at reasonable times and with reasonable notice.

# I.

# BACKGROUND

## A.      Business Operations

Since 1992 the Debtor has owned the Spring Mountain Vineyard in Napa County, California. The Vineyard is the primary asset of the Debtor, an ongoing business with 70 employees, millions of dollars in annual sales, and relationships with dozens of suppliers and thousands of customers. Its website is www.springmountainvineyard.com.

The Vineyard itself is an incomparable property, unique from all other vineyards in the Napa Valley.  The Vineyard has been producing fine wine since the late 1800s.  It was once three separate properties, each with its own vineyard and winery:  Spring Mountain Vineyards, formerly owned by Tiburcio Parrot who grew olives, citrus, grapes, and built a home on the property he named Miraville; Chateau Chevalier, once owned by Fortune Chevalier, whose stone winery began making wine in 1891; and La Perla, founded in 1873 by Charles Lemme and expanded by the Schilling Spice family.

The total acreage of the Vineyard is approximately 845 acres.  The Vineyard features approximately 135 vineyard blocks across approximately 150 acres, each with a different elevation, soil, and exposure to the elements and each producing a unique and diverse grape.  A substantial portion of the Vineyard is sloped east-facing mountain, which is the most beneficial facing for growing grapes.

5

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

The Debtor's business consists primarily of growing grapes in its 135 vineyard blocks, harvesting those grapes and pressing them into wine in casks, bottling wine from casks, and the storage and sale of that wine. On the growing side of the equation, the Debtor is currently engaged in (i) grafting existing vineyards to Cabernet Sauvignon, (ii) transitioning existing vineyards from very high density goblet trellis systems to high density 4 wire VSP systems, and (iii) replanting older vineyards to modern resistant rootstock. Currently the Debtor is in its harvest season, which is approximately 1/3 completed, and will be fully completed by the end of October.

The Vineyard is also improved with the estate residence, two winery buildings, a tasting room, historic barn, a well, and other outbuildings. The Vineyard also has extensive winery caves that have been completely finished and utilized for barrel storage and private events. The Vineyard has a reservoir for the storage of rainwater for later use during the summer seasons, first constructed in 2015, but it is currently being repaired and is not functional at the present date.

Napa County regulates all vineyards by capping the amount of gallons of wine per year each vineyard can manufacture. The Debtor possesses permits to manufacture 48,000 gallons per year, which is a substantial amount for a vineyard in that area. For a number of years, the Debtor has been retaining a significant part of each year's production in order to build a vertical inventory library reaching back to 1979. The Vineyard's library is comprised of 79,000 cases of wine, and this significantly enhances the value of the Spring Mountain brand, making it more competitive to established French vineyards, and is a significant factor in drawing visitors (and purchasers) to the Vineyard's tasting room. The Wine Inventory at wholesale values is worth approximately $82 million (wholesale) and $164 million (retail).

The Debtor obtained a real estate appraisal as of June 2021 that valued the Vineyard at $204 million. The Debtor obtained an updated appraisal of the Vineyard as of September 2022 of $218,700.000. *See Declaration of John Vaughan, separate filed with the First Day Motions*

B.     **Financing History**

6

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

The Debtor has traditionally financed its operations through secured lending. Prior to October 2018, the Debtor had a loan with Fortress Credit Corp., secured by substantially all of the real and personal property of the Debtor. On October 11, 2018, the Debtor refinanced this debt, eliminating Fortress' liens, and entered into a new lending relationship. The Debtor entered into a Credit Facility with MGG California, LLC, as administrative agent and collateral agent for numerous affiliated lenders. The Loan was in the in the amount of $185 million. MGG now has a first priority perfected security interest in all of the Debtor's assets, with the exception of the Unrestricted Cash. The Debtor has no other secured creditors.

The Debtor and MGG amended the Credit Facility two times, then entered into a forbearance agreement in February, 2021 and amended that agreement two times also. As part of the concessions made in exchange for MGG's forbearance, the Debtor and Mr. Safra agreed that they would retain a broker to sell the Vineyard by a certain date. The Debtor entered into a brokerage agreement with Engels & Voelkers, a well-known real estate broker, to list and sell the Vineyard. The Debtor has been assisting Engels & Voelkers with the marketing and sale of the Vineyard since at least March 2021. The Debtor also retained a Chief Restructuring Officer, Mr. Krakora, who works for Getzler Henrich. Mr. Safra also personally guaranteed the Loan, and gave MGG a $75 million third-priority lien in Britannica.

In mid-2021, Mr. Safra paid approximately $40 million to the MGG as a result of the liquidation of non-Debtor assets. Mr. Safra paid another $25 million to MGG in October 2021, which at that point brought to $103.6 million the amount that the Debtor and Mr. Safra had paid to MGG in connection with the Loan, after taking into account other payments including $20 million in interest, and the application of an interest reserve.

One of the Debtor's additional payments to MGG, of approximately $7.25 million, came from insurance proceeds relating to the Glass Fire in September, 2020, which burned various forested areas, destroyed half of the vineyard blocks, and ruined the entire 2020 harvest. The Debtor's cost to rebuild its infrastructure from the Glass Fire is significant.

Despite the Debtor and Mr. Safra paying approximately $103.6 Million with respect to the Loan--more than half of its original principal balance--the Loan balance has actually increased as it

7

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

1   is currently incurring interest at a post-default rate of more than 16%. The Debtor estimates that as

2   of the Petition Date, MGG is owed approximately $205 million.

3       **C.**   **Assets**

4       The Debtor's assets have significant value. The Debtor's primary asset is the Vineyard. The

5   Debtor's appraiser John Vaughn has appraised the Vineyard (which does not include the Wine

6   Inventory), at $218,700,000 as of August 27, 2022. Vaughan Decl., ¶12. Mr. Vaughn estimates

7   that by 2029, when the Debtor completes repairs from the Glass Fire and plants more vineyard

8   blocks, the Vineyard's value will increase to $316 million. Vaughan Decl., ¶13.

9       The Debtor's next most valuable asset is the Wine Inventory. Napa County regulates all

10  vineyards by capping the amount of gallons of wine per year each vineyard can manufacture. The

11  Debtor possesses permits to manufacture 48,000 gallons per year, which is a substantial amount for

12  a vineyard in that area. For a number of years, the Debtor has been retaining a majority of each

13  year's production in order to build a vertical inventory library reaching back to 1979. The Vineyard's

14  library is comprised of 79,000 cases of wine. The present value of the Wine Inventory is estimated

15  to be valued at $82 Million at wholesale, and $164 Million at retail.

16      Additionally, in early 2020, MGG voiced concerns over the Debtor's ability to repay the

17  Loan, and demanded additional collateral from Mr. Safra. As a demonstration of his good faith, in

18  July 2020, Mr. Safra agreed to provide such collateral, in the form of a $75 million third-lien

19  security interest that he gave to MGG on Mr. Safra's 100% equity interest in Britannica. As

20  demonstrated by the *Declaration of Jorge Cauz, the Chief Executive Officer of Britannica*, MPP's

21  $75 Million claim is fully secured and is scheduled to be paid as at this time, Britannica is engaging

22  in a private placement which will raise more than enough to pay MGG's claim in full.

23      Britannica is a private company, indirectly and wholly owned by Mr. Safra, that owns

24  incredibly valuable intellectual property assets and a highly lucrative ongoing business that spins

25  off substantial free cash flow with comparably minimal operating expenses, resulting in an annual

26  EBITDA that was approximately $21 Million in 2021, and will exceed $26 Million in 2022 and

27  increase to more than $34 Million in 2023. Mr. Safra has engaged, and is actively working with,

28  well-known bankers at William Blair & Company ("William Blair") to conduct a private placement

8

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

of the equity of Britannica. Mr. Cauz, the Chief Executive Officer of Britannica, has conservatively estimated the value of Mr. Safra's equity in Britannica at between $450 Million-$550 million, which would easily place MGG's $75 million security interest fully "in the money." The private placement – which is expected to close by the end of the year – will enable Mr. Safra to pay $75 million to MGG, which will reduce the amount owed to them sufficiently so that the Debtor can refinance the Loan.

As set forth below, and in the concurrently-filed declarations of Mr. Yannias, Mr. Krakora, Mr. Cauz, Mr. Ekman, Mr. Jay Spievack and Mr. Vaughan, MGG's interest in cash collateral is adequately protected by a combination of (a) an equity cushion in the Debtor's assets (value of collateral over amount of secured debt) as well as MGG's third lien in Britannica; (b) the continued operation of the Vineyard; and (c) the granting of a replacement lien on post-petition receivables to the extent of any diminution in value of MGG's collateral as a result of the Debtor's use of cash collateral. As discussed below, the substantial equity cushion alone provides MGG with adequate protection for the use of cash collateral requested pursuant to this Motion. The replacement lien would be on all post-petition assets in the same priority and to the same extent and validity as MGG's asserted pre-petition security interest.

Pending a final hearing on the Motion, the Debtor requests emergency authority to use cash collateral in accordance with the Budget and therefore for only a period of approximately fifteen (15) days.

**D.    Budget**

The Budget attached as Exhibit 1 is a 13-week cash flow budget that runs through December 31, 2022. The Budget reflects the bare minimum of expenses that must be paid for the Debtor to stay in business--largely labor and insurance expenses. These expenses are ongoing, regular, and essential to keep the Debtor operating during harvest season and leading into the holiday season. Some fluctuation in actual expenses is likely to occur, so the Debtor requests that it be deemed compliant with the Budget provided the Debtor does not exceed Budget line items by more than 15%, and does not exceed the total Budget by that same margin, being 15%. Further, if actual

9

expenditures for any line items are less than budgeted, the shortfall shall carry over to the following weeks.

On October 2, 2022, the Debtor sent the Budget to MGG along with an explanation of its line items. The Debtor is continuing to discuss the Budget with MGG but to date, MGG and the Debtor have not agreed that the Debtor may use MGG's cash collateral to fund items identified in the Budget. The Debtor does not blame anyone for this as the parties did not have an opportunity prior to the Chapter 11 filing and before the exercise of MGG's remedies on September 30, 2022, to negotiate and reach an agreement prior to the Chapter 11 filing.

## II.

## THE DEBTOR SHOULD BE PERMITTED TO USE CASH COLLATERAL

**A.      The Relief Requested Is Authorized by 11 U.S.C. § 363**

Section 363 of the Bankruptcy Code, made pertinent to this case by 11 U.S.C. § 1107, governs a debtor-in-possessions' use of property of an estate. Section 363(c)(1) provides in pertinent part that:

> If the business of the debtor is authorized to be operated under section 721, …of this title and unless the court orders otherwise, the [debtor-in-possession] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1).

Section 363(c)(2) stablishes a special requirement with respect to "cash collateral", by providing that a debtor-in-possession may not use, sell or lease "cash collateral" under subsection (c)(1) unless (i) such entity that has an interest in such collateral consents or (ii) the court, after notice and a hearing, authorizes such use, sale or lease.

"Cash collateral" is defined by the Code as follows:

> [C]ash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b)

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

10

of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a).

The definition of "cash collateral" set forth in Section 363(a) refers to Section 552(b) of the Code, which provides:

> Except as provided in sections 363, 506(c), 522, 544, 545, 547 and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, products, offspring, rents, or profits of such property, then such security interest extends to such proceeds, products, offspring, rents or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable non-bankruptcy law, except to the extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

11 U.S.C. § 552(b)(1).

It is universally acknowledged that the debtor's cash "is the life blood of the business" and the bankruptcy court must assure that such life's blood "is available for use even if to a limited extent". In re Mickler, 9 B.R. 121, 123 (Bankr. M.D. Fla. 1981). Courts typically authorize a debtor-in-possession to use cash collateral to continue its business operations so long as the interests asserted by affected creditors in such cash are adequately protected.

As this Motion and the declarations in support of this Motion demonstrate, the standards for authorizing the Debtor to utilize cash collateral are satisfied in this case because (1) MGG's claim of $205 million is secured by collateral with a value of between $410 milloin and $492 million, (2) the ongoing operations of the Vineyard, such as the harvest of grapes, the repair of the reservoir, and the continued employment of the Debtor's 70 employees who are necessary to keep the Vineyard operating, will preserve the value of the Vineyard as a going concern, (3) Mr. Safra's efforts to conduct a private placement of Britannica will, when successful, result in significant paydown of the Loan, by $75 million, and enable the Debtor to refinance the Loan, and (4) MGG will be further adequately protected by the grant of replacement liens on postpetition assets and the proceeds thereof to the extent of any diminution in the value of MGG's cash collateral.

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

For the present, the Debtor is not offering to make payments to MGG on its secured indebtedness. Debtor is extremely confident and comfortable that MGG is protected by an equity cushion in its collateral that is between ninety (90%) percent more than MGG's claim as of the bankruptcy filing date and as much as two-hundred twenty-one (221%) percent more than the amount of MGG's claim as of the bankruptcy filing date. This is simply accomplished by tabulating the value of the various assets of the Debtor based upon the appraisal information provided to the Court as evidence from the various declarants in support of this Cash Collateral Motion.[1]

**B.** **MGG's Interest In Cash Collateral Will Be Adequately Protected Under 11 U.S.C. §**
**361 Because There Will Be No Significant Diminution In Value Of The Collateral That**
**Secures MGG's Claim**

A debtor-in-possession's authority to use cash collateral is typically conditioned on providing "adequate protection" to entities that assert an interest in such cash. 11 U.S.C. § 361. Although the term "adequate protection" is not defined in the Bankruptcy Code, Section 361 provides the following three non-exclusive examples of what may constitute adequate protection:

> (1)     requiring the [debtor-in-possession] to make a cash payment
> or periodic cash payments to such entity, to the extent that the …use

---

[1]

| AMOUNT OF MGG, LLC'S CLAIM AS OF BANKRUPTCY FILING DATE |
|:---:|
| **$205,000,000** |

| | | |
|---|---|---|
| Real Property | $218,700,000 | $218,700,000 |
| Wine Inventory | $82,000,000 (Wholesale) | $164,000,000 |
| Britannica Interest | $75,000,000 | $75,000,000 |
| Litigation Recovery | $35,000,000 | $35,000,000 |
| **TOTAL** | **$410,700,000** | **$492,700,000** |

…under section 363 of this title …results in a decrease in the value of such entity's interest in such property.

(2)   providing to such entity an additional or replacement lien to the extent that such …use …results in a decrease in the value of such entity's interest in such property; or

(3)   granting such other relief …as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

Neither Section 361 nor any other provision of the Code defines the nature and extent of "interest in property" of which a secured creditor is entitled to adequate protection under Section 363.  However, the statute plainly provides that a qualifying interest demands protection only to the extent that the use of the creditor's collateral will result in a decrease in "the value of such entity's interest in such property".  United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 108 S. Ct. 626, 98 L. Ed. 2d 740 (1988).

Timbers teaches that secured creditors are entitled to "adequate protection" only against the diminution in their interest in asserted collateral by reason of the use of cash collateral. Where the value of MGG's collateral is not diminishing by the Debtor's use, sale, or lease, it follows that Lenders' interests in cash collateral is adequately protected.[2]  In re McCombs Props. VI, Ltd., 88 B.R. 261 (Bankr. C.D. Cal. 1988), the court applied the foregoing straightforward interpretation of Timbers in ruling that a secured creditor's interest in the cash and proceeds derived from a debtor's operations was adequately protected where the value of the collateral was not declining during the pendency of the bankruptcy case.  On the nature of the protection required, the court noted:

The analysis of the Supreme Court in Timbers is instructive here.  The phrase "interest in property" in § 363 means the value of the collateral.  That is the interest that I am required to protect.  If that value is likely to diminish during the time of the use, adequate protection must be provided by the debtor.  As the Supreme Court stated in Timbers, thus, it is agreed if the apartment project in this case had been declining in value petitioner would have been entitled,

---

[2] In re Alycuan Interstate Corp., 12 B.R. 803 (Bankr. D. Utah 1981), the court ruled that an equity cushion is not a requirement of adequate protection because a secured creditor is only entitled to protection against a decline in the value of its lien.  The court reasoned that Section 361 speaks not in terms of preserving equity, but in terms of compensating for any "decrease in the value of [an] interest in property".  Id., at 803.  The Supreme Court's decision in Timbers confirms the interpretation of Section 361.

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

under § 362(d)(1) to cash payments or additional security in the amount of the decline, as § 361 describes.

Id., at 266 (quotations omitted).

Similarly, in In re Forest Ridge, II, Ltd. Partnership, 116 B.R. 937 (Bankr. W.D.N.C. 1990), the court ordered that no adequate protection payments were required, because the property in question was not decreasing in value. See also In re Megan-Racine Assocs., Inc., 202 B.R. 660 (Bankr. N.D.N.Y. 1996) (stating that adequate protection is intended to compensate a creditor for any decrease in the value of its security interest in collateral during the pendency of a debtor's reorganization); In re Gallegos Research Corp., 193 B.R. 577 (Bankr. D. Colo. 1995).

Applying the foregoing authorities to the instant case, MGG is entitled to protection only against the decline in value of its interest in the collateral which secures its claim. The Vineyard is projected to increase in value significantly over the next several years. Vaughan Decl., ¶¶13-14. The Wine Inventory is also projected to increase in value over time. MGG's lien in Britannica is oversecured at $75 million, and the equity cushion MGG enjoys in that asset is not decreasing. See separately filed Declarations of Peter Ekham, John Vaughan, Jorge Vaughan and Jay B. Spievack, Esq.

The Declaration from Mr. Spievack values the Debtor's litigation claims against the Debtor's insurance carriers at as much as $35 Million.

The Debtor is not requesting that the Court find that the value of the Vineyard years from now will outpace the growth of MGG's secured claim; the time frame here is short. MGG's claim at the very high default interest rate which they claim is accruing on their claim would be adequately protected as a matter of law by for many years even as their claim increases. Debtor's position is that two categories of MGG's collateral will increase even as quickly as its claim accrues at its default interest rate; therefore, there will likely never be a time when MGG will not be adequately protected by the equity cushion along with continued responsible operations by the Debtor under the very capable management of Mr. Kevin Krakora of Getzler-Henrich. Debtor is not going to leave MGG unpaid during the time that it needs to reorganize in this bankruptcy case. Debtor plans on paying MGG $75,000,000 by early January, 2023 or by year-end 2022. The

14

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

Declaration submitted by Mr. Cauz demonstrates that this will take place through the William Blair private placement. Debtor is working to present to this Court its ultimate business plan for its reorganization and hopes to be able to do that prior to the final hearing on cash collateral usage.

**C. MGG's Interests In Cash Collateral Will Be Adequately Protected Under 11 U.S.C. § 361 Because The Debtor's Use Of Cash Collateral Will Preserve The Going Concern Value Of The Vineyard**

The Vineyard is a farming operation which converts its crops into a commodity that increases in value over time. The value of the Vineyard thus is tied to its ongoing operations and specifically, the harvest of its crop (grapes) and the conversion of that crop into a commodity (wine). It is true that agricultural property has value whether it is in production or lies fallow, but a significant part of a winery's value lies in its continued operation, brand recognition, customer relationships, distribution and warehouse arrangements, experienced workforce, and other factors that allow uninterrupted production of a commodity that costs relatively little beyond labor expenses and insurance. Cessation of the Debtor's business not only would result in the termination of its 70 employees during harvest season, but could have an adverse impact on the value of the Wine Inventory to the extent that the value of that inventory is tied to the good will of the Debtor. The Debtor's ability to maximize the value of the Vineyard is inextricably tied to maintaining the going concern value of the winery. If the Debtor does not have access to cash, it will be forced to shut down operations, and the value of the Debtor's business will be severely diminished to less than fair value.

It is well established that a bankruptcy court, where possible, should resolve issues presented in favor of reorganization rather than to force a liquidation because the business cannot use cash or other property to operate for a short time. In re Dynaco Corp., 162 B.R. 389 (Bankr. D. N.H. 1993); In re Hoffman, 51 B.R. 42 (Bankr. W.D. Ark. 1985); In re A&B Hearing & Air Conditioning, Inc., 48 B.R. 401 (Bankr. M.D. Fla. 1985); In re Heatron, Inc., 6 B.R. 493 (Bankr. W.D. Mo. 1980). As the Heatron court stated in granting a debtor's motion to use cash collateral:

> The policy of the Code, as was that of the predecessor statutes, is to encourage reorganization if there is a reasonable possibility of success. At the beginning of the reorganization process, the court

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

> must work with less evidence than might be desirable and should
> resolve issues in favor of the reorganization, where the evidence is
> conflicting.

Id., at 496.

In In re O'Connor, 808 F.2d 1393 (10th Cir. 1987), the court eloquently summarized the foregoing principle as follows:

> Because the ultimate benefit to be achieved by a successful
> reorganization inures to all the creditors of the estate, a fair
> opportunity must be given to the Debtor to achieve that end. Thus,
> while interests of the secured creditor …are of concern to the
> court, the interests of all other creditors also have bearing upon the
> question of whether use of cash collateral shall be permitted during
> the early stages of administration.

> The first effort of the court must be to insure the value of the
> collateral will be preserved. Yet prior to confirmation for a plan of
> reorganization, the test of that protection is not by the same
> measurements applied to treatment of a secured creditor in a
> proposed plan. In order to encourage the Debtor's efforts in the
> formative period prior to the proposal of a reorganization, the court
> must be flexible in applying the adequate protection standard.

Id., at 1397-98.

This important sentiment is echoed in other cases. In In re Prime, Inc., 15 B.R. 216, 218 (Bankr. W.D. Mo. 1981), the court succinctly stated that "[I]t is not the purpose of a Chapter 11 proceeding to close a business at the beginning". And, in In re Shockley Forest Industries, Inc., 5 B.R. 160, 162 (Bankr. N.D. Ga. 1980), the bankruptcy court held "Chapter 11 is designed for the purpose of preventing dissolution of an otherwise viable corporation. A court should not precipitously sound the death knell for a debtor by prematurely determining that the debtor's prospects for economic revival are poor. At this time the Court has no basis on which to conclude the Debtor cannot be rehabilitated".

Courts have frequently allowed a debtor to use cash collateral in circumstances where such use would enhance or preserve the debtor's reorganization value. Thus, for example, in In re Stein, 19 B.R. 458 (Bankr. E.D. Pa. 1982), the court allowed a debtor to use cash collateral where the bank was *undersecured* and had no cushion for protection. The court in Stein found that the use of cash collateral was necessary to the continued operations of the debtor and "the creditor's secured position can only be enhanced by the continued operation of the [debtor's business]". Id., at 460.

16

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

*See also* In re Pine Lake Village Apartment Co., 16 B.R. 750 (Bankr. S.D.N.Y. 1981) (marginally secured creditor adequately protected by lien in post-petition property acquired by debtor; debtor can use cash collateral "in the normal course of their business"); In re Corino, 191 B.R. 283, 287 (Bankr. N.D.N.Y., 1995); In re Senior Care Properties, Inc., 137 B.R. 527 (Bankr. N.D. Fla., 1992) (senior lienholder was adequately protected by 18% equity cushion in property); In re McCombs Properties VI, Ltd., 88 B.R. 261 (Bankr.C.D. Cal. 1988) (Adequate protection for purposes of making determinations of relief form stay is the same as adequate protection for the Trustee to use, sell or lease collateral), *See also,* Matter of Plaza Family Partnership, 95 B.R. 166 (Bankr. E.D. Cal., 1989) (Equity cushion may be used as method of adequate protection regarding Debtor's use of cash collateral); In re Avila, 311 B.R. 81 (Bankr. N.D. Cal., 2004) (Equity cushion of 40% was sufficient to adequately protect mortgagee's interest); In re Melcher, 329 B.R. 865 (Bankr. N.D. Cal., 2005). In determining the extent of the protection to be given a secured creditor or an entity whose property interests are involved, the court must ascertain the property's value, because the degree of protection required is related to the value of the property interest affected. Valuation is a factor which appears throughout the liquidation and rehabilitation Chapters of the Bankruptcy Code, and is not peculiar to Code administrative powers. In re Nellson Nuraceutical, Inc., 2007 WL 201134 (Bankr.D. Del. 2007)

**D.** **Emergency Authority To Use Cash Collateral Is Warranted Under 11 U.S.C. § 363(c)(3) And Rule 4001(B) To Allow The Debtor To Operate Its Business**

The Debtor has requested an emergency hearing to consider the relief requested in this Motion. Section 363(c)(3) and Rule 4001(b)(2) require the Court to schedule a cash collateral hearing in accordance with the needs of the Debtor and conduct a preliminary hearing for the purpose of authorizing the use of cash collateral to the extent necessary to avoid irreparable harm to the Debtor. Section 363(c)(3) mandates that "[a]ny hearing [on the use of cash collateral] …shall be scheduled in accordance with the needs of the debtor". The Ninth Circuit has recognized that emergency relief is often crucial to the success of a corporate reorganization:

> We realize that "in certain circumstances, the entire reorganization effort may be thwarted if emergency relief is withheld" and that reorganization under the Bankruptcy Code "is a perilous process,

17

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

seldom more so than at the outset of the proceedings when the debtor is often without sufficient cash flow to fund essential business operations". It is for this very reason that Congress specified that hearings concerning the use of cash collateral "shall be scheduled in accordance with the needs of the debtor". 11 U.S.C. § 363(c)(3).

In re Center Wholesale, Inc., 759 F.2d 1440, 1449 n. 21 (9th Cir. 1985) (citations omitted).

In the present case, emergency use of cash collateral by the Debtor, pending a final hearing, is necessary to prevent immediate and irreparable harm to the Debtor and its creditors. Absent such use, the Debtor will have little or no funds from which to conduct its operations, beyond the Unrestricted Cash, and would shortly be forced to cease operations of the Vineyard, including harvest.

## III.

## CONCLUSION

The Debtor requests that the Court (i) permit the Debtor to use cash collateral to the extent necessary to avoid irreparable harm pending a final hearing in accordance with the Budget, (ii) schedule a final hearing on this Motion under Rule 4001(b)(2), (iii) following the final hearing, authorize the Debtor to use cash collateral in order to pay its ordinary and necessary operating expenses and generally operate its business in accordance with the Budget, (iv) provide MGG with the replacement liens on post-petition receivables to the extent of the diminution in the value of the collateral securing their claim, and (v) grant such additional relief as the Court deems appropriate. *The Debtor will separately file a proposed order granting this Motion.*

Dated: October 4, 2022

Greenspoon Marder LLP
A Florida limited liability partnership

By: _____
Victor A. Sahn
Mark S. Horoupian
Steven F. Werth
Bankruptcy Counsel for Spring Mountain
Vineyard Inc.

18

# EXHIBIT 1

**SPRING MOUNTAIN VINEYARD**
**WEEKLY CASH FLOWS**
**($000s)**

| | Estimated | 1 Forecast | 2 Forecast | 3 Forecast | 4 Forecast | 5 Forecast | 6 Forecast | 7 Forecast | 8 Forecast | 9 Forecast | 10 Forecast | 11 Forecast | 12 Forecast | 13 Forecast | TOTAL 13 Weeks |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Weeks start on Mondays (W/O) | 9/26/2022 | 10/3/2022 | 10/10/2022 | 10/17/2022 | 10/24/2022 | 10/31/2022 | 11/7/2022 | 11/14/2022 | 11/21/2022 | 11/28/2022 | 12/5/2022 | 12/12/2022 | 12/19/2022 | 12/26/2022 | |
| **Operating Receipts** | | | | | | | | | | | | | | | |
| US Wholesale | 53.7 | | 32.0 | 12.5 | 17.0 | 125.0 | 46.3 | 46.3 | 46.3 | 46.3 | 46.3 | 46.3 | 46.3 | 46.3 | 556.5 |
| Export | | | | | | | | | | | | | | | 12.0 |
| Tasting Room (POS, Web, Events) | 76.1 | 30.0 | 25.6 | 52.5 | 47.3 | 14.5 | 52.3 | 52.3 | 52.3 | 52.3 | 52.3 | 52.3 | 52.3 | 52.3 | 587.9 |
| Club | | 23.0 | 207.0 | | | 60.0 | 540.0 | | | | | | | | 830.0 |
| Other (Bulk, Grape, Misc.) | | | | 112.5 | | | | | | | | 112.5 | | | 225.0 |
| **Total Operating Receipts** | **129.8** | **53.0** | **264.6** | **177.5** | **76.3** | **199.5** | **638.5** | **98.5** | **98.5** | **98.5** | **98.5** | **211.0** | **98.5** | **98.5** | **2,211.4** |
| **Operating Disbursements** | | | | | | | | | | | | | | | |
| Total Payroll | 159.4 | 42.5 | 165.7 | 47.5 | 148.2 | 45.0 | 148.2 | 45.0 | 148.2 | 45.0 | 148.2 | 45.0 | 148.2 | 45.0 | 1,221.7 |
| Total Farm & Vineyards | - | - | 11.5 | 28.5 | 73.5 | 15.0 | 11.5 | 11.5 | 11.5 | 11.5 | 11.5 | 11.5 | 11.5 | 11.5 | 220.5 |
| Total Winemaking & Production | - | - | 9.0 | 9.0 | 9.0 | 9.0 | 45.2 | 4.0 | 4.0 | 4.0 | 4.0 | 4.0 | 4.0 | 4.0 | 109.2 |
| Elite (Sales Brokers) | | | 32.5 | | 36.8 | | | 33.6 | | | | | 33.3 | | 136.2 |
| Licensing/Fees/DTC Sales Tax | | 30.0 | | 4.9 | | | | | 35.0 | | | | | 30.0 | 99.9 |
| Warehouses/Shipping | | 61.5 | 80.0 | 25.0 | | | 25.0 | | | | 100.0 | | | 25.0 | 316.5 |
| Misc. | - | | 1.1 | - | - | | 1.1 | - | - | - | | 1.1 | - | - | 3.3 |
| **Total Sales & Shipping** | | **91.5** | **113.6** | **29.9** | **36.8** | **-** | **1.1** | **58.6** | **35.0** | **-** | **100.0** | **1.1** | **33.3** | **55.0** | **555.9** |
| Utilities | | 2.0 | 2.0 | 2.0 | | 2.0 | 2.0 | 2.0 | 2.0 | | 2.0 | 2.0 | 2.0 | 2.0 | 24.0 |
| Book Keeping Services | | | | | 25.0 | | | | | 25.0 | | | | 25.0 | 75.0 |
| Property Tax | | | | | | | | | | | | 200.0 | | | 200.0 |
| Corporate Insurance/Financing | | 246.1 | | | 246.1 | | | | | 246.1 | | | | 246.1 | 984.4 |
| Other/Misc. | | 2.3 | 2.3 | 2.3 | 2.3 | 2.3 | 2.3 | 2.3 | 2.3 | 2.3 | 2.3 | 2.3 | 2.3 | 2.3 | 27.6 |
| **Total Corporate/Overhead** | **-** | **-** | **250.4** | **4.3** | **4.3** | **275.4** | **4.3** | **4.3** | **4.3** | **275.4** | **4.3** | **4.3** | **204.3** | **275.4** | **1,311.0** |
| **Total Operating Disbursements** | **159.4** | **134.0** | **550.2** | **119.2** | **271.8** | **344.4** | **210.3** | **123.4** | **203.0** | **335.9** | **268.0** | **65.9** | **401.3** | **390.9** | **3,418.3** |
| **Net Operating Cash Flows** | **(29.7)** | **(81.0)** | **(285.6)** | **58.3** | **(195.5)** | **(144.9)** | **428.2** | **(24.9)** | **(104.5)** | **(237.4)** | **(169.5)** | **145.1** | **(302.8)** | **(292.4)** | **(1,206.9)** |
| Reservoir CapEx | 193.1 | | | | | | | | | | | | | | - |
| Investment Banking/Appraisal | | | | | | | | | | | | | | | |
| Greenspoon & Marder | 200.0 | | | | | | 50.0 | 50.0 | 50.0 | 50.0 | 50.0 | 50.0 | 50.0 | 50.0 | 400.0 |
| Special Counsel | | | | | | | | | | | | | | | |
| Getzler Henrich | 52.5 | 35.0 | 35.0 | 35.0 | 35.0 | 35.0 | 50.0 | 50.0 | 50.0 | 50.0 | 50.0 | 50.0 | 50.0 | 50.0 | 575.0 |
| Legal - Unsecured Creditors Comm | | | | | | | 35.0 | | | | 35.0 | | | 35.0 | 105.0 |
| US Trustee Fees | | | | | 0.3 | | | | | | | | | 39.8 | 40.1 |
| Utility Deposits | | | | | 7.5 | | | | | | | | | | 7.5 |
| Interest | | | | | | | | | | | | | | | |
| **Total Non-Operating Disbursemen** | **445.6** | **35.0** | **35.0** | **35.0** | **42.8** | **35.0** | **135.0** | **100.0** | **100.0** | **100.0** | **135.0** | **100.0** | **100.0** | **174.8** | **1,127.6** |
| **Total Operating & Non-Operating Dist** | **605.0** | **169.0** | **585.2** | **154.2** | **314.6** | **379.4** | **345.3** | **223.4** | **303.0** | **435.9** | **403.0** | **165.9** | **501.3** | **565.7** | **4,545.9** |
| **Net Cash Flows** | **(475.3)** | **(116.0)** | **(320.6)** | **23.3** | **(238.3)** | **(179.9)** | **293.2** | **(124.9)** | **(204.5)** | **(337.4)** | **(304.5)** | **45.1** | **(402.8)** | **(467.2)** | **(2,334.5)** |
| Beg Bank Balance (Est.) | 607.2 | 925.1 | 809.1 | 488.5 | 511.8 | 273.5 | 93.6 | 386.8 | 261.9 | 57.4 | 1,170.0 | 865.5 | 910.6 | 507.8 | 925.1 |
| Net Cash Flows | (475.3) | (116.0) | (320.6) | 23.3 | (238.3) | (179.9) | 293.2 | (124.9) | (204.5) | (337.4) | (304.5) | 45.1 | (402.8) | (467.2) | (2,334.5) |
| Owner Advances | 600.0 | - | - | - | - | - | - | - | - | 1,450.0 | - | - | - | - | 1,450.0 |
| MGG Advances | 193.1 | | | | | | | | | | | | | | - |
| MGG (Repayments) | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **End Bank Balance (Est.)** | **925.1** | **809.1** | **488.5** | **511.8** | **273.5** | **93.6** | **386.8** | **261.9** | **57.4** | **1,170.0** | **865.5** | **910.6** | **507.8** | **40.6** | **40.6** |
| Beg Loan Balance (Est.) | 196,488.7 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 |
| MGG Advances | 193.1 | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| MGG (Repayments) | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **End Loan Balance (Est.)** | **196,681.8** | **196,681.8** | **196,681.8** | **196,681.8** | **196,681.8** | **196,681.8** | **196,681.8** | **196,681.8** | **196,681.8** | **196,681.8** | **196,681.8** | **196,681.8** | **196,681.8** | **196,681.8** | |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 333 South Grand Avenue, Suite 3400, Los Angeles, CA 90071.

A true and correct copy of the foregoing document entitled (*specify*): DEBTOR'S EMERGENCY MOTION PURSUANT TO SECTION 363(c) OF THE BANKRUPTCY CODE AND RULE 4001(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR INTERIM AND FINAL ORDERS AUTHORIZING USE OF CASH COLLATERAL; MEMORANDUM OF POINTS AND AUTHORITIES will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) October 4, 2022  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) October 4, 2022, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 4, 2022 | Patricia Dillamar | */s/Patricia Dillamar* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

CC 51988413v1 CC 51988413v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                    **F 9013-3.1.PROOF.SERVICE**

## 1. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")

Office of the U.S. Trustee / SR
USTPRegion17.SF.ECF@usdoj.gov

Elvina Rofael on behalf of U.S. Trustee Office of the U.S. Trustee / SR
elvina.rofael@usdoj.gov, Katina.Umpierre@usdoj.gov,GemMil.Langit@usdoj.gov

Victor A. Sahn on behalf of Debtor Spring Mountain Vineyard Inc.
victor.sahn@gmlaw.com, vsahn@ecf.inforuptcy.com

Phillip John Shine on behalf of U.S. Trustee Office of the U.S. Trustee / SR
phillip.shine@usdoj.gov

## 3. SERVED BY OVERNIGHT MAIL AND EMAIL

**Debtor**
Spring Mountain Vineyard Inc.
2805 Spring Mountain Road
St. Helena, CA 94574-1798
Attn:  Don Yannias, President
email:  don@bimi.com

**Debtor's Financial Advisor And Chief Restructuring Officer**
Attn:  Kevin A. Krakora, Managing Director
Getzler Henrich & Associates LLC, a Hilco Global Company
150 S. Wacker Drive | 24th Floor
Chicago, IL 60606
Tel:   (312) 283-8071
email:  kkrakora@getzlerhenrich.com

**U.S. Trustee**

Tracy Hope Davis
United States Trustee for Region 17
Office of The United States Trustee
450 Golden Gate Avenue, 5th Floor, Suite #05-0153
San Francisco, CA 94102
Tel:  (415) 705-3300

**Attorneys For U.S. Trustee**

Office of the United States Trustee
Attn:  Elvina Rofael
450 Golden Gate Ave., Rm. 05-1053
San Francisco, California 94102
email:  Elvina.Rofael@usdoj.gov
Tel:  (415) 705-3333

CC 51988413v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                     F 9013-3.1.PROOF.SERVICE

Case: 22-10381    Doc# 19    Filed: 10/04/22    Entered: 10/04/22 11:59:39    Page 33 of 39

Office of the United States Trustee
Attn: Phillip J. Shine
280 South First Street, Rm. 268
San Jose, CA 95113
email: phillip.shine@usdoj.gov
Tel: (408) 535-5526

**Secured Creditors**

MGG (BV) Limited
MGG Canada Fund LP
MGG Insurance Fund Series Interests of t
MGG Investment Group LP
MGG Onshore Funding I LLC
MGG SF Drawdown Master Fund (Cayman) LP
MGG SF Drawdown Unlevered Fund II LP
MGG SF Drawdown Unlevered Fund LP
MGG SF Drawdown Unlevered Master Fund I
MGG SF Evergreen Unlevered Fund LP
MGG SF Evergreen Master Fund (Cayman) LP
MGG SF Evergreen Unlevered Fund LP
MGG SF Evergreen Unlevered Master Fund I
MGG Specialty Finance Fund I LP
MGG Specialty Finance Fund LP

c/o MGG California, LLC
One Penn Plaza 53rd Fl
Attn Kevin F. Griffin, CEO
New York, NY 10119-0002
Tel: (212) 356-6100
creditagreementnotices@mgginv.com

MGG Investment Group LP
One Penn Plaza 53rd Fl
Attn Kevin F. Griffin, CEO
New York, NY 10119-0002
Tel: (212) 356-6100
creditagreementnotices@mgginv.com

**Counsel for Secured Creditors**

Bradley R. Bobroff, Esq.
Proskauer Rose LLP
Eleven Times Square
New York, NY 10036-8299
Tel: (212) 969-3643
email: bbobroff@proskauer.com

CC 51988413v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                    F 9013-3.1.PROOF.SERVICE

Case: 22-10381    Doc# 19    Filed: 10/04/22    Entered: 10/04/22 11:59:39    Page 34 of
39

Scott P. Cooper, Esq.
Proskauer Rose LLP
2029 Century Park East, Suite 2400
Los Angeles, California 90067-3010
Tel:  (310) 284-5669
email:  scooper@proskauer.com

Frederic Ragucci, Esq.
Proskauer Rose LLP
Eleven Times Square
New York, NY  10036-8299
Tel:  (212) 969-3023
email:  FRagucci@proskauer.com

Jeff. J. Marwil, Esq.
Proskauer Rose LLP
70 W. Madison
Suite 3800
Chicago, IL 60602-4342
email:  jmarwil@proskauer.com

**20 Largest Unsecured Creditors**
Allen Group
Attn:  Timothy Allen, CPA - Managing Partner
120 Stony Point Road,  #230
Santa Rosa, CA 95401
(707) 528-3860
tim@allenwine.com
Tim@allengroupllp.com
Brent Garrison
Brent@allengroupllp.com

Bartelt Engineering
Attn:  Paul Bartelt
303 Jefferson St #200B
Napa, CA 94559
(707) 258-1301

Belkorp AG, LLC
Attn:  Laura Correll, Accounting
2413 Crows Landing Rd
Modesto, CA 95358
(209) 205-3706
ar@belkorpag.com

Brown's Auto Parts
Attn Dan Beltramai, Owner
1218 Main St.
Saint Helena, CA 94574-1901
(707) 963-3638

CC 51988413v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

brownsauto169@gmail.com

Castino Restaurant Equipment And Supply
50 Utility Ct.
Rohnert Park, CA 94928-1659
(707) 585-3566
sales@castinosolutions.com

Central Valley
Attn: Gerry Cruz, Accounting Mgr.
1100 Vintage Avenue.
Saint Helena, CA 94574
707 261-1900
gerryc@centralvalley.com

Chubb Group of Insurance Companies
P.O. Box 777-1630
Philadelphia, PA 19175-0001
(800) 372-4822

Conway Beverage Group, LLC
Dba: Elite Brands
3238 Old Heather Rd.
San Diego, CA 92111-7716
Attn: Mr. Jay Conway

Famille Sylvain
855 Bordeaux Way #239
Napa, CA 94558-7549
(707) 492-3308

Francois Freres USA Inc.
1403 Jefferson St.
Napa, CA 94559-1708
(707) 294-2204

G3 Enterprises Inc.
(Tapp Labels)
580 Gateway Dr.
Napa, CA 94558
(707) 252-8300

IPFS
49 Stevenson St. #127
San Francisco, CA 94105-2909
(877) 687-9826

Napa County Treasurer
1195 3rd St. #108
Napa, CA 94559-3035

CC 51988413v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                          F 9013-3.1.PROOF.SERVICE

(707) 253-4311

Napa Ford Lincoln
170 Soscol Ave.
Napa, CA 94559
(707) 255-2580

Napa Valley Petroleum
P.O. Box 2670
Napa, CA 94558-0528
(707) 252-6888

Ramondin U.S.A. Inc.
541 Technology Way
Napa, CA 94558
(707) 944-2277

Stanzler Law Group
Attn: Jordan S. Stanzler
390 Bridge Pkwy #220
Redwood City, CA 94065
(650) 739-0200
email:  Jstanzler@stanzlerlawgroup.com

Tonnellerie Sylvain
855 Bordeaux Way
Napa, CA 94558
(707) 492-3308

Wilbur Ellis Company LLC
c/o Registered Agent Solutions Inc.
720 14th St.
Sacramento, CA 95814-1905
(707) 963-3495

Wine Service Cooperative
1150 Dowdell Lane
Saint Helena, CA 94574
Attn:  Bob Holmes
General Manager
Tel: (707) 963-9474
Fax: (707) 963 9359
bob@wineservicecoop.com

**<u>Critical Vendor</u>**

C Q & A Consulting
P.O. Box 777
Pinole, CA 94564
Attn:  Deanna Leon

CC 51988413v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                          F 9013-3.1.PROOF.SERVICE

Tel: (510) 964-7901
Fax: (510) 223-8140
email: dleon@cqaconsult.com

**Request for Special Notice**
Attorneys for Mt. Hawley Insurance Company
Michael D. Prough
Dean C. Burnick
Prough Law, APC
1550 Parkside Drive, Suite 200
Walnut Creek, CA 94596
T: (925) 433-5894
F: (925) 482-0929
Email: mdp@proughlaw.com
        dcb@proughlaw.com

Dept. of the Treasury, Alcoholic Beverage Control
Attn: Tracie Parker, Lic. Rep. I
50 D Street Room 130
Santa Rosa, CA. 95404
Phone: (707) 576-2165
Fax: (707) 638-9537

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346
(800) 973-0424

California Department of Tax and Fee Administration
Special Operations Bankruptcy Team MIC: 74
P.O. Box 942879
Sacramento, CA 94279-0074
(800) 400-7115

Franchise Tax Board
Bankruptcy Section, MS A-340
P.O. Box 2952
Sacramento, CA 95812-2952
916-845-4750

Employment Development Department
Bankruptcy Unit-MIC 92E
P.O. Box 826880
Sacramento, CA 94280-0001

Service by Mail Address:
Employment Development Department
Attn: MIC 53
800 Capital Mall
Sacramento, CA 95814

CC 51988413v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                F 9013-3.1.PROOF.SERVICE

**Courtesy Email**

Jay B. Spievack, Esq.
Cohen Tauber Spievack & Wagner P.C.
420 Lexington Ave., Suite 2400
New York NY 10170-2499
email:  jspievack@ctswlaw.com

Joseph Vann, Esq.
Cohen Tauber Spievack & Wagner P.C.
420 Lexington Ave., Suite 2400
New York NY 10170-2499
email:  jvann@ctswlaw.com

Will Densenberger
Engel & Volkers St. Helena - Napa Valley
1111 Main Street, Suite A
St. Helena, CA 94574
(707) 302-8133
email:  will@nvwineestates.com

John C. Vaughan
Newmark Knight Frank
4675 MacArthur Court, Suite 1600
Newport Beach, CA 92660
email:  john.vaughan@nmrk.com

Peter Ekman:  PEkman@hilcoglobal.com

Mark Kasowitz:  MKasowitz@kasowitz.com

Gavin D. Schryver:  GSchryver@kasowitz.com

CC 51988413v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

Case: 22-10381    Doc# 19    Filed: 10/04/22    Entered: 10/04/22 11:59:39    Page 29 of
39

F 9013-3.1.PROOF.SERVICE