Victor A. Sahn (CA Bar No. 97299)
  victor.sahn@gmlaw.com
Mark S. Horoupian (CA Bar No. 175373)
  mark.horoupian@gmlaw.com
Steven F. Werth (CA Bar No. 205434)
  steven.werth@gmlaw.com
Greenspoon Marder LLP
a Florida limited liability partnership
333 South Grand Ave., Suite 3400
Los Angeles, CA 90071
Telephone: 213.626.2311
Facsimile: 954.771.9264


Attorneys for Spring Mountain
Vineyard Inc.

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SANTA ROSA DIVISION

| | |
|---|---|
| In re: | Case No. 1:22-bk-10381 CN |
| SPRING MOUNTAIN VINEYARD INC., a Delaware corporation, | Chapter 11 |
| Debtor. | **MOTION FOR ORDER (1) AUTHORIZING DEBTOR TO HONOR PRE-PETITION PURCHASE ORDER; AND (2) AUTHORIZING DEBTOR TO ASSUME EXECUTORY CONTRACT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF KEVIN A. KRAKORA AND DERMOT WHELAN** |
| Federal EIN: 36-3844911 | |
| | Date:      To Be Set<br>Time:<br>Place:    U.S. Bankruptcy Court<br>          Courtroom 215<br>          1300 Clay Street, Suite 300<br>          Oakland, CA 94612 |

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

**TO THE HONORABLE CHIEF JUDGE CHARLES NOVACK, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, MGG CALIFORNIA, LLC, AND PARTIES ENTITLED TO NOTICE:**

<u>MOTION</u>

Spring Mountain Vineyard Inc., a Delaware corporation, debtor in possession in the above-captioned case ("<u>Debtor</u>"), pursuant to 11 U.S.C. §§ 105(a), 363(b), and 365 hereby moves this Court for an order (1) authorizing the Debtor to deliver bottles of wine to one of its customers, Ballande Menaret, located in Bruges, France ("<u>Customer</u>") pursuant to a purchase order which was prepaid prior to the commencement of this case, and (2) authorizing the Debtor to assume an executory contract with a valuable customer--.

Customer paid the Debtor $509,010 on August 18, 2022, which related to an August 9, 2022 invoice for 4,260 bottles of wine (the "<u>Purchased Wine</u>"). The purchase order (the "<u>Purchase Order</u>") identifying the Purchased Wine is attached as **Exhibit 1**--though information regarding the individual prices of individual bottles of wine is redacted for proprietary reasons. The Customer's payment of $509.010 was received on August 18, 2022. The Debtor seeks the authority to honor the Purchase Order. In addition, the Debtor seeks an order authorizing it to assume the executory contract (the "<u>Contract</u>") to which the Debtor and Customer are a party, pursuant to which the Debtor and Customer have agreed to enter into a long-term business arrangement whereby Customer will purchase the Debtor's wine in large quantities, for resale abroad. A true and correct copy of the Contract is attached hereto as **Exhibit 2**.

The Purchased Wine has not yet been delivered to Customer. The Purchased Wine is currently located at 1150 Dowdell Lane, St. Helena, California, on premises owned by Wine Service Cooperative, Inc. ("<u>WSC</u>"), the entity the Debtor utilizes to store and ship its bottled wine. Per the Contract which lead to the Purchase Order, it is Debtor's obligation to deliver the Purchased Wine to Customer at WSC, but it is Customer's obligation to arrange and pay for transportation from WSC to its final destination in France. That transportation will occur by truck leaving from WSC for delivery to the port of Oakland, California where it will be loaded onto a cargo ship. While the Purchased Wine was in the process of being staged by the Debtor to be

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

1   ready for shipment prior to the Petition Date, the Customer had not completed arrangements for

2   transportation and shipment until now.  Customer has informed Debtor that it has arranged for the

3   necessary space on a cargo ship, to carry the Purchased Wine to France.  Customer now contacts

4   the Debtor daily, to ask when Customer can send a truck to WSC to pick up the Purchased Wine

5   and deliver it to the port.  Arrangement of all of these logistics was complicated and time-

6   consuming, and the cost of these logistics is borne by Customer.  If the Debtor is not permitted to

7   allow the Purchased Wine to leave WSC because of the constraints of the bankruptcy case, (1) the

8   opportunity to ship the Purchased Wine per these difficult to make arrangements will be lost, (2)

9   Customer will almost certainly file a claim against the Debtor not just for the return of the

10  $509,010 it has paid to the Debtor, but additional damages relating to the costs it has incurred in

11  arranging for the shipment of the Purchased Wine, and (3) Customer will almost certainly refuse

12  to do business with the Debtor in the future.  The Debtor has never delivered wine to Europe and

13  Customer is its first opportunity to do so.  There is no guaranty that another such opportunity will

14  ever occur again.

15          The Debtor has asked for the consent to the requested relief both from its secured lenders,

16  for whom MGG California, LLC acts as the collateral agent (all such lenders are referred to

17  collectively as "<u>MGG</u>"), and the Office of the United States Trustee.  The responses to those

18  requests are as follows:

19          (a) On October 17, 2022, MGG advised that it will not oppose the Customer Motion, and

20  consented to the matter being heard on shortened time, but requested that the following language

21  be included in the Motion:  "*MGG consents to the relief requested in the Motion; <u>provided,</u>*

22  *<u>however</u>, MGG reserves all rights and arguments with respect to (1) any assertions and*

23  *arguments made in the Motion, and (2) any other requests by the Debtor, including, without*

24  *limitation, in connection with Debtor's request for use of MGG's cash collateral [ECF No. 19]*.

25          (b)     On October 17, 2022, the UST, through its counsel, advised that it would not take a

26  position on the application for order shortening time, or the Customer Motion itself, but reserved

27  rights to respond to the Customer Motion prior to or at the hearing thereon.

28

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

If the Debtor cannot ship wine (post-petition) to customers who have paid for it (pre-petition), word may spread quickly that customers should no longer do business with the Debtor, at all. Customer is a significant customer of the Debtor, and the Purchased Wine is a large percentage of the Debtor's revenue so far in 2022. If the Debtor is not allowed to ship the Purchased Wine to the Customer, it is likely that Debtor's goodwill it has built with its customers will suffer catastrophic harm--regardless of how often the Debtor tells customers that *post*-petition deposits will be honored.

Debtor's relationship with Customer is an extremely important one that the Debtor has worked very hard to establish. The arrangement with the Customer grants the Debtor exposure to the French wine market, something that has been accomplished by very few domestic wine producers. Customer is one of the leading French negociants of Bordeaux wines, and until it entered into the agreement with the Debtor, only four domestic wines were of the standard high enough to be part of the wine library that Customer represented. The relationship will put the Debtor's wine in an elevated position above the vaunted labels of Mondavi Opus One, Cardinale, Quintessa and Vérité This relationship will provide a significant sales channel for the Debtor's vineyard previously unavailable to the Debtor and will expose its wines not only to the exclusive French and European wine market, but globally through the Customer's sales representatives in the Americas and Asia.

The Debtor wishes to note that it is not seeking to pay any money on account of a pre-petition claim. This shipment will have no impact on the Debtor's projected budget, though it will reduce the Debtor's wine bottle inventory by 4,260 bottles. Rather, the Debtor is simply seeking the authority to assume its obligations under the Purchase Order and Contract, and make its shipment to this very important customer in the ordinary course of its business.

If the Debtor had had more time to prepare for this bankruptcy case it might have been able to resolve issues relating to the Purchased Wine prior to the Petition Date, but the emergency nature of the Debtor's bankruptcy filing meant that certain operational issues could not be quickly addressed because other more pressing matters, such as the use of MGG's cash collateral and the

relief requested in other First Day emergency motions, required the Debtor's immediate and continued attention.

FOR THESE REASONS, the Debtor respectfully requests that this Court enter an order (1) granting this Motion, (2) authorizing the Debtor to ship the Purchased Wine to the Customer, (3) authorizing the Debtor to assume the Contract, and (4) providing such other and further relief as is proper.

Dated: October 17, 2022

Greenspoon Marder LLP
A Florida limited liability partnership

By: *s/Mark S. Horoupian*
Victor A. Sahn
Mark S. Horoupian
Steven F. Werth
Bankruptcy Counsel for Spring Mountain Vineyard Inc.

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

### A.  The Debtor

Since 1992 the Debtor has owned the Spring Mountain Vineyard in Napa County, California (the "Vineyard").  The Vineyard is the primary asset of the Debtor, an ongoing business with 61 employees, millions of dollars in annual sales, and relationships with dozens of suppliers and thousands of customers.  The Debtor's business consists primarily of growing grapes in its 135 vineyard blocks, harvesting those grapes and pressing them into wine in casks, bottling that wine from casks, and the storage and sale of that wine.

### B.  The Debtor's Business Relationship With Customer

Customer is one of the largest and most respected French negociants in the world.  It has teams in Europe, North America, Asia, and South America.  It is a Bordeaux expert, and is looking for aged wines in the United States which it cannot find anywhere else but at Spring Mountain Vineyard, because the Debtor is the only vineyard in the United States with aged Bordeaux style wines of exceptional quality and with inventory available in large quantities.

The Debtor's relationship with Customer began through an introduction to Mr. Dermot Whelan, the Debtor's Vice President of Sales and Marketing, from a master sommelier, Ian Cauble, who had a preexisting relationship with Customer.  Customer carries only four U.S. wines in their portfolio, but Mr. Cauble recommended to Customer that it add the Debtor's wines to that portfolio.  Mr. Whelan exchanged emails with Customer in February, 2022, regarding Customer's interest in entering into a contract with the Debtor.  In March 2022, the Customer's managing director agreed to visit the Debtor's vineyard, and in April 2022 that first visit occurred.  That first visit lasted five hours, and Customer's representatives tasted the Debtor's wine library--twelve wines covering five decades.  The Customer was so impressed with the quality and profile of the Debtor's wines that it decided on the spot to add Debtor's wines to its portfolio, and thereafter placed a purchase order with the Debtor.

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

The Debtor's normal practice is to ship wine to its wholesale customers and then invoice that wholesale customer for payment later. Customer, however, as a show of good faith to its suppliers, sometimes offers to pay for ordered wine up front. That is what Customer did here. On August 18, 2022, Customer paid $509,010 to the Debtor, to purchase the Purchased Wine. The reason the Purchased Wine did not immediately ship out was because of the complexities involved in arranging for the Purchased Wine to be placed on board a ship in the Port of Oakland.

The Debtor has not done any significant business with Europe in the past. Customer will ship the Purchased Wine to France, but thereafter the wine will be disbursed to its teams globally. Therefore, Debtor's wines will be exposed not only to the European market, but also worldwide.

Mr. Whelan also met with the Customer's managing director several days ago. Customer's managing director visited the Debtor's vineyard to discuss additional purchases of wine Customer would like to make in 2023, and also to obtain an update regarding when the Purchased Wine would be shipped. Debtor was informed that Customer intended to purchase two more shipments of wine, one in March 2023, and one in late 2023, and was also informed of certain of the types of wine that Customer would like to purchase then. Mr. Whelan also understood from this conversation that the amount of wine intended to be ordered in the future would be comparable to the amount of the Purchased Wine.

During Mr. Whelan's recent in-person meeting with Customer's manager, that manager informed Mr. Whelan that Customer has arranged space on a ship leaving the Port of Oakland, to deliver the Purchased Wine to France. Customer asked the Debtor during that meeting, and now asks the Debtor at least once each day, when Customer will be able to send a truck to WSC to pick up the Purchased Wine. If the Debtor is not able to release the Purchased Wine to the Customer, it is more than likely that the Customer will not do any future business with the Debtor.

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

## II.

## THE COURT SHOULD ALLOW THE DEBTOR TO SHIP THE PURCHASED WINE AND ASSUME THE CONTRACT

**A.      The Delivery Of The Purchased Wine Should Be Authorized As An Appropriate Transfer the Debtor Can Make On Account Of A Pre-Petition Obligation**

As of the Petition Date, Customer possessed a claim against Debtor for the Purchased Wine. In the ordinary course of business, the Debtor would have shipped the Purchased Wine to Customer, reducing that claim to zero. However, because of the bankruptcy filing, the shipment could not take place absent relief from the Court. The Customer has now made all of the arrangements for shipment, and is ready to have the Purchased Wine released from the Debtor's warehouse. If that does not occur, Customer have a claim against the Estate in the amount of, at least, the $509,010 transferred to the Debtor on August 18, 2022. But the damage to the Estate will be far greater than the claim which will be asserted by the Customer. Not allowing the Debtor to honor this order would destroy a relationship that the Debtor worked so hard to establish, and one that will greatly enhance the value of the Estate by putting the Debtor's wine alongside the likes of Opus One, Cardinale, Quintesssa and Vérité as one of the only domestic wines represented by one of the largest and most respected French negociants in the world, and one that has already indicated it will be making several more significant purchases of the Debtor's wines in the future.

The Debtor has previously filed a critical vendor motion in this case, which this Court granted on October 7, 2022 (Docket No. 47). Here, Customer is not a vendor, and the Debtor is not seeking to pay Customer any money. Instead, Customer is a purchaser, and the Debtor is seeking to transfer to it the goods it has paid for--the Purchased Wine. To the extent that this is a prepetition claim and the shipment of the Purchased Wine is payment on account of that claim, then the same legal analysis that applies to critical vendor motions applies here, specifically, that the Court may authorize the payment of payment of prepetition claims in appropriate circumstances based on sections 105(a) and 363(b) of the Bankruptcy Code. See *Burchinal v. Central Washington Bank (In re Adams Apple, Inc.)*, 829 F.2d 1484, 1490 (9th Cir. 1987) (the fundamental tenet--rehabilitation of debtors - may supersede the policy of equal treatment); *In re*

*Tropical Sportswear Int'l Corp.*, 320 B.R. 15, 20 (Bankr. M.D. Fla. 2005) ("Bankruptcy courts recognize that section 363 is a source for authority to make critical vendor payments, and section 105 is used to fill in the blanks.").  In *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973 (2017), the Supreme Court discussed *In re Iridium Operating LLC*, 478 F.3d 452 (2nd Cir. 2007), and noted the following:

> We recognize that *Iridium* is not the only case in which a court has approved interim distributions that violate ordinary priority rules. But in such instances one can generally find significant Code-related objectives that the priority-violating distributions serve.  Courts, for example, have approved "first day" wage orders that allow payment of employees' wages, "critical vendor" orders that allow payment of essential suppliers' prepetition invoices, and "roll-ups" that allow lenders who continue financing the debtor be paid first on their prepetition claims.  [Citations omitted].  In doing so, these courts have usually found that the distributions at issue would "enable a successful reorganization and make even the disfavored creditors better off."  [Citation omitted].

*Czyzewski*, 137 S. Ct. at 985.  The underlying premise is thus that bankruptcy courts can approve interim distributions--potentially delivery of the Purchased Wine--if that would enable a successful reorganization and made even the disfavored creditors better off.  Here, no creditor of the estate is worse off, if the Debtor is allowed to deliver the Purchased Wine.  All creditors including MGG would benefit simply by the fact that the Debtor, allowed to deliver wine to customers who have paid for it, will continue to maintain its good will and solid customer relations, and thus maintain its value as an operating entity.  This is particularly true in the case of the Customer as this relationship will lead to significant future sales, and entry into the European and global markets—a sales channel that was not previously available to the Debtor. Furthermore, and as stated above, MGG has consented to the relief requested in the Motion subject to its stated reservation of rights.

###### B.	The Delivery Of The Purchased Wine Should Be Authorized As A Necessary Cure As A Condition Of Assuming The Contract

A contract is executory if two prongs are satisfied:  (1) performance must remain due to some extent by both parties to the agreement, and (2) failure by either party to complete performance would constitute a material breach of the contract, thus excusing the other party from

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

performing.  Vern Countryman, *Executory Contracts in Bankruptcy*: Part I, 57 Minn. L. Rev. 439, 460 (1973).  Here, the Contract is executory, in that the Debtor has an obligation to release the Purchased Wine to the Customer, and Customer has the obligation to arrange and pay for the transportation and shipment of the Purchased Wine. Section 365 of the Bankruptcy Code states that a debtor in possession "subject to the Court's approval, may…assume any executory contract or unexpired lease of the Debtor" *See generally*, 11 U.S.C. §365(a). Bankruptcy Code §365 authorizes a debtor-in-possession to maximize the value of a debtor's estate by assuming executory contracts or unexpired leases that benefit the estate. *In re Nat'l Gypsum Co*., 208 F.3d 498, 505 (5th Cir. 2000).  A chapter 11 debtor's decision to assume or reject an executory contract is governed by the "business judgment test." *Agarwal v. Pomona Valley Medical Group, Inc.* (In re Pomona Valley Medical Group, Inc.,) 476 F. 3d 665 (9th Cir. 2007). A court should approve a decision to assume an executory contract or unexpired lease pursuant to section 365 if based on a sound exercise of the debtor's business judgment. I, *Richmond Leasing Co. v. Capital Bank, N.A*., 762 F.2d 1303, 1309 (5th Cir. 1985); *see also In re Wolflin Oil, L.L.C*., 318 B.R. 392, 396 (Bankr. N.D. Tex. 2004) (same).

The Debtor's business justification for assuming the Contract is beyond reasonable and sound.  The Debtor has no viable means of selling its wines in large quantities in France and globally.  The Contract contemplates that the Customer will make two such purchases each year, beginning in 2023.  The establishment of the relationship with the Customer which opened an international sales channel was not only a testament to the quality of the Debtor's wines, but to the quality and strength of its sales team.  The Contract, thus, represents a victory of the Debtor's sales team and business model, and should be preserved if at all reasonable to do so.  Here, there is no reason to not deliver the Purchased Wine to the Customer, and for the reasons discussed herein, the damage that will result to the Debtor are far in excess of the half million dollar claim to which the Debtor would be exposed were it to reject the Contract.  The Debtor is ready and able to perform under the Contract, and the Court should permit the Debtor to do so, so that it may maintain this important, profitable business relationship.

# III.

## CONCLUSION

There will be nothing more devastating to the Debtor's ability to reorganize, than if the Debtor is not allowed to ship wine to customers who paid for it pre-petition. The Debtor will lose the loyalty of that customer forever, and in the case of Customer, that loyalty results in significant revenue for the Debtor's estate. The Debtor's business judgment in seeking the authority to make this shipment is undoubtedly sound and beyond justified. The Court should order that the Debtor may assume the Contract and cure its default under the Contract by shipping the Purchased Wine, or simply authorize the Debtor to ship the Purchased Wine which will accomplish the same goal.

Dated: October 17, 2022

Greenspoon Marder LLP
A Florida limited liability partnership

By: *s/Mark S. Horoupian*
Victor A. Sahn
Mark S. Horoupian
Steven F. Werth
Bankruptcy Counsel for Spring Mountain Vineyard Inc.

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

# DECLARATION OF KEVIN A. KRAKORA

I, Kevin A. Krakora, declare:

1.     I am over the age of eighteen.

2.     I am a managing director of Getzler Henrich & Associates LLC.

3.     I am a Certified Turnaround Professional with over thirty years of executive experience specializing in corporate turnarounds, strategic consulting, financial and operational restructuring, and debtor bankruptcy situations.

4.     Each of the facts contained in this declaration are based on my personal knowledge and, if called as a witness, I could and would competently testify to those facts.

5.     I make this declaration in support of the attached "Motion Authorizing Debtor to Honor Pre-Petition Purchase Order; and (2) Authorizing Debtor to Assume Executory Contract"(the "Customer Motion").  Capitalized terms in this declaration have the meaning given them in the Motion.

6.     Customer paid the Debtor $509,010 on August 18, 2022, which related to an August 9, 2022 invoice for 4,260 bottles of wine.  A true and correct copy of the invoice identifying the Purchased Wine is attached as **Exhibit 1**--though information regarding the individual prices of individual bottles of wine is redacted.  Customer paid $509,010 to the Debtor on August 18, 2022.

7.     Customer is one of the leading French negociants of Bordeaux wines.  Prior to the Petition Date, the Debtor and Customer entered into an agreement which contemplated an ongoing business arrangement whereby Customer intended to place a container order twice each year beginning in February 2023.  A copy of this agreement is attached as **Exhibit 2**--though information regarding pricing of individual bottles of the Purchased Wine is redacted.  Under the terms of that agreement, Customer would pay 100% up front in advance at the time of order placement, which is precisely what happened in connection with the Purchased Wine.

8.     The Purchased Wine has not yet been delivered to Customer.  The Purchased Wine is currently located at 1150 Dowdell Lane, St. Helena, California, on premises owned by Wine

Service Cooperative, Inc., the entity the Debtor utilizes to store and ship its bottled wine.

9. If the Debtor cannot ship wine (post-petition) to customers who have paid for it (pre-petition), word may spread quickly that customers should no longer do business with the Debtor, at all. The Customer is a significant customer of the Debtor, and the Purchased Wine is a large percentage of the Debtor's revenue so far in 2022. If the Debtor is not allowed to ship the Purchased Wine to the Customer, it is likely that (1) Customer will refuse to do business with the Debtor in the future, and (2) the Debtor's good will it has built with its customers will suffer catastrophic harm--regardless of how often the Debtor tells customers that *post*-petition deposits will be honored.

10. In the exercise of my business judgment, as the Debtor's chief restructuring officer, I believe that the shipment of the Purchased Wine to Customer is critical to the Debtor, and in the best interest of all of its creditors.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 17th day of October, 2022, in Chicago, Illinois.

Kevin A. Krakora

# DECLARATION OF DERMOT WHELAN

I, Dermot Whelan, declare:

1.     I am over the age of eighteen.

2.     I the Vice President of Sales and Marketing at Spring Mountain Vineyard Inc. I am the most senior person responsible for sales at Spring Mountain.

3.     I make this declaration in support of the attached "Motion Authorizing Debtor to Honor Pre-Petition Purchase Order; and (2) Authorizing Debtor to Assume Executory Contract" (the "Motion"). Capitalized terms in this declaration have the meaning given them in the Motion.

4.     Each of the statements made in this declaration are based on my personal knowledge and, if called as a witness, I could and would competently testify to those facts.

5.     I have worked at the Debtor since August 2017. Prior to my employment at the Debtor, I worked at Young's Market Company--now purchased by RNDC--as Vice President and Brand Manager. I have worked the last twenty-five years in the wine and spirits business in various capacities.

6.     Ballande & Meneret are one of the largest French negociants in the world. They have teams in Europe, North America, Asia, and South America. They are Bordeaux experts, and are looking for aged wines in the United States which they cannot find anywhere else but the Napa Valley.

7.     The Debtor's relationship with Customer began through an introduction to me, from a master sommelier, Ian Cauble, who had a relationship with Customer. Customer carries only four U.S. wines in their portfolio, but Mr. Cauble recommended to Customer that it add the Debtor's wines to that portfolio.

8.     I exchanged emails with Customer in February, 2022, regarding Customer's interest in entering into a contract with the Debtor. In March 2022, the Customer's managing director agreed to visit the Debtor's vineyard, and in April 2022 that first visit occurred. That first visit lasted five hours, and Customer's representatives tasted the Debtor's wine library--twelve wines covering five decades. Based upon that tasting, Customer decided on the spot to add Debtor's

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

wines to its portfolio, and thereafter placed a purchase order with the Debtor.

9. The Debtor's normal practice is to ship wine to its wholesale customers and then invoice that wholesale customer for payment later. Customer, however, as a show of good faith to its suppliers, sometimes offers to pay for ordered wine up front. That is what Customer did here. On August 18, 2022, Customer paid $509,010 to the Debtor, to purchase the Purchased Wine. The reason the Purchased Wine did not immediately ship out was because of the complexities involved in arranging for the Purchased Wine to be placed on board a ship in the Port of Oakland.

10. The Debtor has not done significant business with Europe in the past. Customer will ship the Purchased Wine to France, but thereafter the wine will be disbursed to its teams globally. Therefore, Debtor's wines will not be sold solely in the European market, but potentially globally.

11. I also met with the Customer's managing director several days ago. Customer's managing director visited the Debtor's vineyard to discuss additional purchases of wine Customer would like to make in 2023, and also to obtain an update regarding when the Purchased Wine would be shipped. I was informed that Customer intended to purchase two more shipments of wine, one in March 2023, and one in late 2023, and was also informed of certain of the types of wine that Customer would like to purchase then. I also understood from this conversation that the amount of wine intended to be ordered in the future would be comparable to the amount of the Purchased Wine.

12. During my recent in-person meeting with Customer's manager, that manager informed me that Customer has arranged space on a ship leaving the Port of Oakland, to deliver the Purchased Wine to France. Customer asked me during that meeting, and now asks me at least once each day, when Customer will be able to send a truck to WSC to pick up the Purchased Wine. I understand based on my experience in this industry that if the Purchased Wine is not shipped to the Customer, the Customer will not do any future business with the Debtor.

13. The Debtor's contract with Customer is the first time that a company with distribution channels in Europe has expressed an interest in purchasing the Debtor's wine, for distribution in Europe.

14. The Purchased Wine is now staged at WSC and is ready to be picked up.

15. Customer has secured a slot on a vessel, and a trucking company--Hildebrand-has been arranged to pick up the Purchased Wine at WSC as soon as Debtor gives Customer permission to do so.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 17th day of October, 2022, at _____, California

_____
Dermot Whelan

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

# EXHIBIT 1



# SPRING MOUNTAIN
### VINEYARD

## PROFORMA INVOICE

2805 Spring Mountain Road
St. Helena, California 94574
U.S.A.
Telephone: 707-967-4188
Fax: 707-963-2753

| | |
|---|---|
| **Invoice Number:** | 892022 |
| **Invoice Expiration:** | 9/9/2022 |
| **Invoice Date:** | 8/9/2022 |

| CUSTOMER | SHIP TO | SHIPPING DETAILS |
|---|---|---|
| Ballande Meneret | Ballande Meneret | FREIGHT: JF Hillebrand |
| 55 Boulevard Chaban Delmas | 55 Boulevard Chaban Delmas | LOGISTICS CONTACT: |
| Bruges | Bruges | Wine Service Co-op |
| France 33 520 | France 33 520 | |
| Tel: 330681187584 | Tel: 330681187584 | |
| Attn: Mr. Florian Malpuech | Attn: Mr. Florian Malpuech | |

| CUSTOMER ID | CUSTOMER PO | PAYMENT TERMS |
|---|---|---|
| Ballande Meneret | 8-Aug-22 | WIRE TRANSFER |

| QUANTITY | U/M | ITEM | DESCRIPTION | Alcohol % | USD $ UNIT PRICE | USD $ AMOUNT |
|---|---|---|---|---|---|---|
| 480 | BOTTLES | SMCS1979 | 1979 Cabernet Sauv 750ml 12 pack | 13.7 | | |
| 540 | BOTTLES | SM99CSR2X6 | 1999 Cab Reserve 750ml 6 pack | 14.1 | | |
| 540 | BOTTLES | SM1CS881 | 1988 Cabernet Sauv 750ml 12 pack | 13.5 | | |
| 600 | BOTTLES | SM05CSE206 | 2005 Cabernet Sauv 750ml 6 pack | 14.7 | | |
| 600 | BOTTLES | SM11CSE206 | 2011 Cabernet Sauv 750ml 6 pack | 14.1 | | |
| 540 | BOTTLES | SM03CSR206 | 2003 Elivette 750ml 6 pack | 14.6 | | |
| 480 | BOTTLES | SM07CSR206 | 2007 Elivette 750ml 6 pack | 14.4 | | |
| 480 | BOTTLES | SM16CSR306 | 2016 Elivette 750ml 6 pack | 14.5 | | |
| 4260 | BOTTLES | | | | | $535,800 |
| | | | Less 5% Samples Allowance | | | $26,790 |
| | | | Grand Total | | | $509,010 |

| COMMENTS | TOTAL | |
|---|---|---|
| | USD $ | $509,010 |

_Henri Barelli_
SIGNATURE

_8/9/22_
DATE

# EXHIBIT 2



# SPRING MOUNTAIN
V I N E Y A R D

## *Ballande & Meneret / Spring Mountain Vineyard Agreement*

August 5th, 2022

Dear Florian,

Our team at Spring Mountain Vineyard is thrilled to begin this new business partnership with Ballande & Meneret. We are very excited at the prospect of expanding our footprint across the International market and have full confidence in your abilities to help us reach that goal.
I wanted to capture in writing a few of the items we discussed along the way, namely pricing (both FOB and SRP pricing), freight/shipping arrangements, sample agreement, payment agreement and order frequency.

**Pricing** – both the Freight on Board pricing (FOB) and Suggested Retail pricing (SRP) are listed below on each of the wines you selected for your initial order. As we discussed, the SRP is extremely important to SMV because the pricing our wines sell for is closely monitored by our valued wine club members, both internationally and domestically.

| Vintage / Wine | FOB Bottle purchase price | SRP Bottle selling price |
|---|---|---|
| 1979 Cabernet | $ | $ |
| 1999 Cabernet Reserve | $ | $ |
| 1988 Cabernet | $ | $ |
| 2003 Elivette | $ | $ |
| 2005 Cabernet | | $ |
| 2007 Elivette | $ | $ |
| 2011 Cabernet | | $ |
| 2016 Elivette | $ | $ |

**Freight / Shipping** – Ballande & Meneret is responsible for freight / transportation of all wine ordered, from our warehouse in St. Helena (Wine Service Cooperative, 1150 Dowdell Lane, St. Helena, CA 94574), to your warehouse in Bruges, France.

**Sample Policy** – Spring Mountain Vineyard has agreed to offer a 5% discount on every order placed by B&M, in an effort to support the need for sampling customers on our wines.

**Payment Terms** – Ballande & Meneret agrees to pay 100% up front in advance at time of order placement.

**Order Frequency** – Ballande & Meneret will NOT be held accountable for an ordering schedule, however B&M shared with SMV that their intent is to place a container order twice each year beginning in 2023.

Florian – if you are in agreement with the terms listed above, please sign below, scan and email me a copy for our records. Thank you in advance for your trust in Spring Mountain Vineyard and we look forward to great things ahead.

Dermot Whelan
Vice President Sales & Marketing
Spring Mountain Vineyard

Florian Malpuch
Director General
Ballande & Meneret

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 333 South Grand Avenue, Suite 3400, Los Angeles, CA 90071.

A true and correct copy of the foregoing document entitled (*specify*): **MOTION FOR ORDER (1) AUTHORIZING DEBTOR TO HONOR PRE-PETITION PURCHASE ORDER; AND (2) AUTHORIZING DEBTOR TO ASSUME EXECUTORY CONTRACT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF KEVIN A. KRAKORA AND DERMOT WHELAN** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) October 17, 2022  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Jacquelyn H. Choi on behalf of Creditor Napa County Treasurer-Tax Collector
jacquelyn.choi@rimonlaw.com, docketing@rimonlaw.com

Mark S Horoupian on behalf of Debtor Spring Mountain Vineyard Inc.
mark.horoupian@gmlaw.com, cheryl.caldwell@gmlaw.com

Steve Ma on behalf of Creditor MGG California, LLC
sma@proskauer.com

Jeff J. Marwil on behalf of Creditor MGG California, LLC
jmarwil@proskauer.com

Office of the U.S. Trustee / SR
USTPRegion17.SF.ECF@usdoj.gov

Elvina Rofael on behalf of U.S. Trustee Office of the U.S. Trustee / SR
elvina.rofael@usdoj.gov, Katina.Umpierre@usdoj.gov,GemMil.Langit@usdoj.gov

Victor A. Sahn on behalf of Debtor Spring Mountain Vineyard Inc.
victor.sahn@gmlaw.com, Karen.Files@gmlaw.com

Phillip John Shine on behalf of U.S. Trustee Office of the U.S. Trustee / SR
phillip.shine@usdoj.gov

Michael St. James on behalf of Interested Party Arcade Capital, LLC
ecf@stjames-law.com

Ashley M. Weringa on behalf of Creditor MGG California, LLC
aweringa@proskauer.com

Steven F. Werth on behalf of Debtor Spring Mountain Vineyard Inc.
steven.werth@gmlaw.com, Patricia.Dillamar@gmlaw.com

Peter J Young on behalf of Creditor MGG California, LLC
pyoung@proskauer.com

☒ Service information continued on attached page.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) October 17, 2022 , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**Via Email**
**Request for Special Notice**
Attorneys for Mt. Hawley Insurance Company
Michael D. Prough
Dean C. Burnick
Prough Law, APC
Email: mdp@proughlaw.com
        dcb@proughlaw.com

**Via Priority Overnight**
**Request for Special Notice**
Alcohol & Tobacco Tax & Trade Bureau
Attn:  Daniel Paralta, Senior Counsel, Field Operations
1431 2nd Street #531
Napa, CA 94559

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 17, 2022 | Cheryl Caldwell | */s/Cheryl Caldwell* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                          F 9013-3.1.PROOF.SERVICE

Case: 22-10381    Doc# 57    Filed: 10/17/22    Entered: 10/17/22 15:45:01    Page 22 of 22