

1  Victor A. Sahn (CA Bar No. 97299)
   *victor.sahn@gmlaw.com*
2  Mark S. Horoupian (CA Bar No. 175373)
   *mark.horoupian@gmlaw.com*
3  Steven F. Werth (CA Bar No. 205434)
   *steven.werth@gmlaw.com*
4  Greenspoon Marder LLP
   a Florida limited liability partnership
5  333 South Grand Ave., Suite 3400
   Los Angeles, CA 90071
6  Telephone: 213.626.2311
   Facsimile: 213.629.4520

7  Attorneys for Spring Mountain Vineyard Inc.

**CHANGES MADE BY COURT**

The following constitutes the order of the Court.
Signed: October 26, 2022

**Charles Novack**
**U.S. Bankruptcy Judge**

8  ## UNITED STATES BANKRUPTCY COURT

9  ## NORTHERN DISTRICT OF CALIFORNIA

10

11  In re:                                    Case No.: 1:22-bk-10381 CN

12  SPRING MOUNTAIN VINEYARD INC., a          Chapter 11
    Delaware corporation,

13          Debtor.                           **SECOND INTERIM ORDER:**

14                                            **(I) AUTHORIZING THE DEBTOR TO**
            Federal EIN: 36-3844911           **UTILIZE CASH COLLATERAL OF PRE-**
15                                            **PETITION SECURED PARTIES**
                                              **THROUGH NOVEMBER 4, 2022;**
16
                                              **(II) GRANTING ADEQUATE**
17                                            **PROTECTION TO PRE-PETITION**
                                              **SECURED PARTIES;**
18
                                              **(III) SCHEDULING A FINAL HEARING**
19                                            **PURSUANT TO BANKRUPTCY RULES**
                                              **4001(b) AND 4001(c); AND (IV)**
20                                            **GRANTING RELATED RELIEF**

21                                            **[Relates to Docket No. 19]**

22                                            Date:    October 18, 2022
                                              Time:    8:00 a.m.
23                                            Place:   U.S. Bankruptcy Court
                                                       Courtroom 215
24                                                     1300 Clay Street, Suite 300
                                                       Oakland, CA 94612
25                                                     *Via Zoom*

Upon the motion, dated October 4, 2022 (Docket Entry No. 19) (the "Motion"),[1] of Spring Mountain Vineyard, Inc., as debtor-in-possession (the "Debtor") in the above referenced chapter 11 case (the "Case") for entry of a second interim order (the "Second Interim Order") under sections 105, 361, 362, 363(c), 363(e), 364(c), 364(d)(1) and 364(e) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"); the Court having reviewed the Motion, the Omnibus Declaration of Constantine S. Yannias (the "Yannias Declaration"), and the Declarations of Jorge Cauz, John Vaughan, Peter Ekman, and Jay B. Spievack, Esq. and all other evidence and all responses to the Motion, and having entered an interim order (the "Interim Order") (Docket No. 48) granting interim cash collateral usage based upon that certain Letter Agreement (Docket No. 39) reached between the Debtor and MGG, the relief sought by the Debtor in this Second Interim Order includes an order:

    (a)    authorizing the Debtor's use of Cash Collateral (as defined below), subject to the terms of this Second Interim Order, and granting adequate protection to the Administrative Agent (defined below) in respect of its rights under the Loan Documents (as defined below), as applicable, and its interests in the Collateral (as defined below) pursuant to sections 105, 361, 362, 363, and 507 of title 11 of the United States Code (the "Bankruptcy Code") with respect to any Diminution in Value (as defined below) of such rights and interests on and after the Petition Date (as defined below);

---

[1] Capitalized terms used herein that are not otherwise defined shall have the meanings given to them in the Motion.

VAS 5211740503

-2-

(b)    vacating and modifying the automatic stay arising under section 362 of the Bankruptcy Code in accordance with the provisions hereof to the extent necessary to implement and effectuate the terms and provisions of this Second Interim Order;

(c)    scheduling a final hearing (the "Final Hearing") pursuant to Bankruptcy Rule 4001(b)(2) to be held before this Court to consider entry of an order authorizing and granting the relief requested in the Motion on a final basis (the "Final Order"); and

(d)    granting certain related relief.

The Court having considered the Motion, the Yannias Declaration, the other filings and pleadings in the Case and the evidence submitted or adduced and the arguments of counsel made at the second interim hearing held on October 18, 2022 (the "Second Interim Hearing"); and notice of the Second Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001, and 9014; and the Second Interim Hearing to consider the interim relief requested in the Motion having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved, or overruled by the ~~CN~~ Court; ↙ and having reviewed this Second Interim Order and having conducted a further hearing on October 25, 2022; and it appearing to the Court that granting the relief set forth herein is necessary to avoid immediate and irreparable harm to the Debtor and its estate, and is otherwise fair and reasonable, in the best interests of the Debtor, its estate, and its creditors and equity holders, and essential for the continued operation of the Debtor's business; and after due deliberation and CN consideration, and for good and sufficient cause appearing therefor; the following terms are approved as the Second Interim Cash Collateral Order between Debtor and MGG California LLC (the "Administrative Agent"); ~~BASED UPON THE RECORD ESTABLISHED AT THE SECOND INTERIM HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:~~[2] CN

---

[2] ~~The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact~~

VAS 5211740SV3

A. ~~Petition Date. On September 29, 2022 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of California (the "Court").~~ CN

B. ~~Debtor in Possession. The Debtor has continued in the management and operation of its business and properties as debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.~~ CN

C. ~~Jurisdiction and Venue. This Court has core jurisdiction over this Case, this Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief set forth in this Second Interim Order are sections 105, 361, 362, 363 and 507 of the Bankruptcy Code and Bankruptcy Rules 2002 and 4001.~~ CN

D. ~~Notice. Upon the record presented to the Court at the Second Interim Hearing, and under the circumstances set forth therein, requisite notice of the Motion and the relief requested thereby and this Second Interim Order has been provided in accordance with Bankruptcy Rules 4001(b) and 4001(c)(1) to: (a) the United States Trustee for the Northern District of California (the "U.S. Trustee"); (b) the entities listed on the Consolidated List of Creditors Holding the 20 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) the Internal Revenue Service; (d) MGG California LLC, in its capacity as Administrative Agent ("MGG" or the "Administrative Agent") (e) all parties known to the Debtor that hold any liens or security interests in the Debtor's assets that filed UCC-1 financing statements against the Debtor; and (f) all parties who have filed a notice of appearance and request for service of papers pursuant to~~

~~constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.~~

-4-
VAS 5211740.5V3

Bankruptcy Rule 2002 (collectively, the "Notice Parties"), which notice was appropriate under the circumstances and sufficient for the Motion, and the entry of this Second Interim Order; and no further notice of, or hearing on, the entry of this Second Interim Order is necessary or required. CN

E.     The Debtor's Business. Generally stated, the Debtor is in the business of growing grapes for making fine wines, harvesting the grapes that it grows, and processing those grapes into wine which it sells to its customers. The Debtor's business consists of is real property which is approximately 845 acres located in St. Helena, California (Napa), the grape vines growing on the St. Helena property and the processing and other facilities that they use to process the grapes eventually into wine. The Debtor's business also consists of substantial wine inventory, which the Debtor estimates consists of 69,745 of 9L-equivalent cases as of August 31, 2022, which the Debtor is holding in storage. The assets described in this paragraph, from time to time, shall be referred to as the "Vineyard and Inventory." CN

F.     Creditors' Committee. As of the date hereof, the U.S. Trustee has not appointed an official committee of unsecured creditors (a "Committee") in accordance with section 1102 of the Bankruptcy Code. CN

G.     The Debtor's Stipulations .   After consultation with its attorneys and financial advisors, and without prejudice to the rights of parties in interest as set forth in Paragraph 18 herein, the Debtor, on its behalf and on behalf of its estate, admits, stipulates, acknowledges, and agrees as follows (Paragraphs G(i) through G(viii) below are referred to herein, collectively, as the "Debtor's Stipulations"):

(i)     Cash Collateral. Any and all cash of the Debtor, including cash and other amounts on deposit or maintained in any bank account or accounts of the Debtor and any amounts generated by the collection of accounts receivable, the sale of inventory,

sale of real estate or other disposition of the Collateral (as defined below) existing as of the Petition Date or arising or acquired after the Petition Date, together with all proceeds of any of the foregoing, is cash collateral within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral") of the Administrative Agent. For the avoidance of doubt, Cash Collateral includes any proceeds from the sale of inventory or any other Collateral (as defined below). Pursuant to section 363(c)(2) of the Bankruptcy Code, the Debtor is not able to use Cash Collateral without the Administrative Agent's consent or this Court's authorization after notice and a hearing. The Administrative Agent is willing to consent to the Debtor's use of the Cash Collateral, expressly limited to, and conditioned upon, the terms and conditions specified in this Second Interim Order.

(ii) Loan Facility. Pursuant to that certain *Credit and Guaranty Agreement* dated as of October 11, 2018 (as amended, restated, supplemented, or otherwise modified from time to time, the "Credit Agreement," and, collectively, with the Loan Documents (here, as defined in the Credit Agreement), together with any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, waived or otherwise modified from time to time, the "Loan Documents"), by and among the Debtor, the lenders from time to time party thereto (each a "Lender" and collectively, the "Lenders"), MGG as collateral agent for the Lenders, and MGG, as administrative agent for the Lenders (in such capacity, together with its successors and assigns in such capacity) and the Personal Guaranty (Unlimited), dated as of October 11, 2018, made by Jacob E. (a/k/a Jaqui) Safra, an individual maintaining a residence at 40 East 94th Street, Unit 31CD, New York, New York 10128 (the "Prepetition Guarantor"), in favor of the Collateral Agent, (collectively,

VAS 5211740553

the "Loan Parties"), in which the Debtor and Prepetition Guarantor owe the Lenders an aggregate amount of $192,221,090.14[3] as of June 30, 2022 (the "Loan Facility").

(iii) Forbearance Agreements. Pursuant to that certain *Forbearance Agreement* dated as of February 22, 2021 (as amended, restated, supplemented, or otherwise modified on December 28, 2021 and July 29, 2022, the "Forbearance Agreements,") by and among the Debtor, the Lenders, the Prepetition Guarantor and the Administrative Agent, the Debtor and the Prepetition Guarantor confirmed that events of default occurred and are continuing under the Credit Agreement and providing other terms and conditions during the forbearance periods.

(iv) Prepetition Obligations. As of the June 30, 2022, the aggregate amount outstanding under the Loan Facility was not less than $192,221,090.14 (including, as applicable, accrued and unpaid interest, any fees, expenses and disbursements (including attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), indemnification obligations, guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Debtor's obligations pursuant to, or secured by, the Loan Documents, including all "Secured Obligations" as defined in the Credit Agreement, and all interest, fees, prepayment premiums, costs and other charges allowable under section 506(b) of the Bankruptcy Code, (the "Prepetition Obligations").

---

[3] This amount includes outstanding principal, interest and fees. The Debtor and MGG each reserve and retain their respective rights, claims, and defenses in connection with any interest accrued and accruing on or after the Petition Date, if any.

VAS 5211740 5V3

Notwithstanding the foregoing, Debtor shall have until the date of entry of the Final Order ("Final Date") to notify MGG, in writing (a "Dispute Notice"), whether it has any disputes with the amount of the Prepetition Obligations referred to in this subparagraph. If no Dispute Notice is delivered to MGG on or before the Final Date, the Debtor shall have waived its right to object to the amount of MGG's Prepetition Obligations.

(v)     Prepetition Liens.  As more fully set forth in the Loan Documents, prior to the Petition Date, the Debtor and the Prepetition Guarantors granted to the Administrative Agent, for the benefit of itself, security interests in and continuing liens (the "Prepetition Liens") on substantially all of their assets and property and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising, in all instances as further described in the Loan Documents (collectively, the "Prepetition Collateral").[4]

(vi)     Validity, Perfection, and Priority of Prepetition Liens and Prepetition Obligations. MGG asserts that as of the Petition Date (a) the Prepetition Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, MGG, for fair consideration and reasonably equivalent value; (b) the Prepetition Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to certain liens senior

---

[4] Debtor alleges that MGG's prepetition collateral includes the Vineyard and the Inventory as well as certain rights that it holds in litigation claims commenced prior to the filing of the Debtor's bankruptcy petition against certain insurance carriers growing out of the Glass Fire that occurred in Napa, California.  Debtor alleges that MGG also holds a security interest represented by a third lien on the stock in the company Encyclopedia Britannica which secures a $75,000,000 obligation that Debtor alleges constitutes a portion of MGG's indebtedness. MGG reserves all rights with respect to the foregoing.

by operation of law (solely to the extent such liens were valid, non-avoidable, and senior in priority to the Prepetition Liens as of the Petition Date and properly perfected prior to the Petition Date or perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code) or otherwise permitted by the Loan Documents (the "Permitted Liens"); (c) the Prepetition Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtor enforceable in accordance with the terms of the applicable Loan Documents; (d) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Liens or Prepetition Obligations exist, and no portion of the Prepetition Liens or Prepetition Obligations is subject to any challenge or defense including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law. As provided in Paragraph (iv) herein, the Debtor shall have until the Final Date to deliver a Dispute Notice to MGG with respect to any dispute regarding the validity, priority or extent of MGG's liens. If no Dispute Notice is delivered to MGG on or before the Final Date, the Debtor shall have waived its right to object to the validity, priority or extent of MGG's liens.

(vii) <u>Default by the Debtor</u>. MGG asserts that (A) the Debtor has been, since at least February 22, 2021, and remains in default of its obligations under the Loan Documents, (B) that Event of Defaults have occurred under the Loan Documents, (C) since February 22, 2021, interest has accrued, and will continue to accrue, on the Prepetition Obligations at the default rate set forth in the Forbearance Agreements and (D) the Loan Facility matured on October 11, 2021 (the "Maturity Date").

H.  Necessity for Relief Requested; Immediate and Irreparable Harm. The Debtor requested entry of this Second Interim Order pursuant to Bankruptcy Rule 4001(b)(2) on the terms described herein. The Debtor has an immediate need to use the Cash Collateral to, among other things, preserve and maximize the value of the assets of the Debtor's bankruptcy estate (as defined under section 541 of the Bankruptcy Code, the "Estate") in order to maximize the recovery to all creditors of the Debtor's Estate, absent which immediate and irreparable harm will result to the Debtor, its Estate, and its stakeholders.  Absent the Debtor's ability to use Cash Collateral, the Debtor will not have sufficient available sources of working capital or financing and will be unable to pay its payroll and other operating expenses, or maintain its assets to the detriment of its Estate and creditors.  Accordingly, the relief requested in the Motion and the terms set forth herein are (i) critical to the Debtor's ability to maximize the value of the Estate, (ii) in the best interests of the Debtor and its Estate, and (iii) necessary, essential, and appropriate to avoid immediate and irreparable harm to the Debtor and the Debtor's Estate, stakeholders, assets, goodwill, reputation, and employees.

I.  Adequate Protection.  The Administrative Agent is entitled to the adequate protection provided in this Second Interim Order pursuant to sections 361, 362 and 363 of the Bankruptcy Code. Based on the Motion and on the record presented to the Court, the terms of the proposed adequate protection arrangements and of the use of the Prepetition Collateral, including the Cash Collateral, are fair and reasonable, reflect the Debtor's prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of Cash Collateral. The Administrative Agent reserves the right to seek additional adequate protection beyond the adequate protection provided in this Second Interim Order, and nothing in this Second Interim Order or otherwise shall be deemed or construed to limit, impair or otherwise prejudice

any of the Administrative Agent's rights to seek and/or obtain such other or additional adequate protection or any other relief. After notice and a hearing under applicable rules, the Debtor may seek to use cash collateral beyond the current November 4, 2022 expiration in this Second Interim Order and MGG reserves the right to object to such further cash collateral usage on any basis permitted by applicable law.

J. <u>Good Cause</u>. Good cause has been shown for immediate entry of this Second Interim Order, and the entry of this Second Interim Order is in the best interests of the Debtor, its Estate and its stakeholders. Among other things, the relief granted herein will minimize disruption of the Debtor's business and permit the Debtor to meet payroll and other expenses necessary to maximize the value of the Estate. The terms of the Debtor's use of Cash Collateral and proposed adequate protection arrangements, as set forth in this Second Interim Order, are fair and reasonable under the circumstances and reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties.

K. <u>Good Faith</u>. The Debtor's use of Cash Collateral in accordance with the terms hereof has been negotiated in good faith and at arms'-length between the Debtor and the Administrative Agent in accordance with the terms hereof shall be deemed to have been made in "good faith."

**IT IS HEREBY ORDERED that:**

1. <u>Motion Granted</u>. The relief requested in the Motion is GRANTED to the extent provided herein. Any objection to the entry of this Second Interim Order, to the extent not withdrawn, waived or resolved, is hereby overruled.

2. <u>Authorization to Use Cash Collateral</u>. The Debtor is authorized, on an interim basis, to use Cash Collateral solely in accordance with and to the extent set forth in the Budget

(as defined below) and this Second Interim Order during the period commencing on the date of this Second Interim Order through the earlier to occur of (i) the date of the Final Hearing pursuant to the Budget, or (ii) the Termination Date (as defined below) (the "Cash Collateral Period") in an amount not to exceed at any time $694,000.00 (the "Cash Collateral Limit").

3. Budget.

(a) The Debtor may use Cash Collateral during the Cash Collateral Period, up to the Cash Collateral Limit only to pay the amount and type of expenses set forth in the cash collateral budget attached as **Exhibit 1** hereto (as the same may be updated from time to time with the prior written consent of the Administrative Agent, the "Budget") during the periods covered by the Budget in which such expenses are projected to be paid. The Budget shall depict, on a weekly basis and line-item basis (i) projected cash receipts, (ii) projected disbursements (including ordinary course operating expenses, non-operating expenses, bankruptcy-related expenses (including professional fees of the Debtor's professionals and advisors), asset sales and any other fees and expenses), and (iii) net cash flow, for the first thirteen (13) week period from the Petition Date, and such initial Budget shall be approved by, and in form and substance satisfactory to the Administrative Agent, in its sole discretion (it being acknowledged and agreed that the initial Budget attached hereto is approved by and satisfactory to the Administrative Agent), each in the detail provided in the initial Budget. Each Budget delivered to the Administrative Agent shall be accompanied by such customary supporting documentation as reasonably requested by the Administrative Agent and shall be prepared in good faith based upon assumptions the Debtor believes to be reasonable at the time of delivery. A copy of any Budget (or updated Budget once approved by the Administrative Agent) shall simultaneously be delivered by the Debtor to the counsel for a Committee (if appointed), and the U.S. Trustee. All

Cash Collateral use must be strictly in accordance with the terms of the Budget, subject to such variances as are permitted by this Second Interim Order or agreed to in writing by the Administrative Agent.

(b)     Not later than 8:00 p.m. (prevailing Eastern time) on the Thursday of each week commencing on October 17, 2022, the Debtor shall furnish to the Administrative Agent a weekly report (each, a "Budget Compliance Report") that sets forth, as of the preceding Friday of such week, for the prior week and on a cumulative basis from the Petition Date through the second full week after the Petition Date and then on a rolling three-week basis at all times thereafter (each such reporting period, a "Cash Flow Measurement Period"), the actual results for each line item set forth in the Budget.

(c)     The Debtor shall be deemed in compliance with the Budget to the extent that (i) the actual amount of "Total Receipts" for any Cash Flow Measurement Period is not less than eighty-five percent (85%) of the amount projected in the "Total Receipts" line item of the Budget for such Cash Flow Measurement Period; and (ii) the actual amount of the "Operating Disbursements" for any Cash Flow Measurement Period does not exceed one hundred fifteen percent (115%) of the amount projected in the "Operating Disbursement" line item of the Budget for such Cash Flow Measurement Period (individually and collectively, the "Permitted Variances"); provided, however, the Debtor may apply unused budget variances from the Interim Order to the Budget for the Cash Collateral Period upon providing MGG with a revised budget and variance analysis for the period covered by the Interim Order.

(d)     The Administrative Agent, in its discretion, may agree in writing (which writing may be via e-mail) to the use of the Cash Collateral (i) in a manner or amount which does not conform to the Budget (other than the Permitted Variances) (each such approved non-

VAS 52117405v3

conforming use of Cash Collateral, a "Non-Conforming Use"). If such written consent is given by the Administrative Agent, the Debtor is authorized pursuant to this Second Interim Order to expend Cash Collateral for any such Non-Conforming Use CN out further Court approval, and the Administrative Agent shall be entitled to all of the protections specified in this Second Interim Order for any such use of Cash Collateral; provided that each such permitted Non-Conforming Use shall be deemed a modification to the Budget for all testing purposes. The Debtor shall provide notice of any Non-Conforming Use to the U.S. Trustee and counsel for the Committee, if any.

4. Termination Date. Immediately upon written notice by the Administrative Agent, to the Debtor, the U.S. Trustee and, if appointed, counsel for any Committee (an "Enforcement Notice"), the Debtor's authorization for the Debtor to use Cash Collateral pursuant to this Second Interim Order shall terminate on the earliest to occur of the following (the earliest such date, the "Termination Date") events (each a "Termination Event"):

(a) the Debtor's failure to receive a deposit into its trust account established by its counsel (the "Trust Account") in the amount of not less than $1,450,000 (the "Deposit") on or before November 1, 2022; provided, however, that on the date of such Deposit into the Trust transferor CN Account, the Debtor's counsel shall have been directed in writing by the ~~transferee~~ (with contemporaneous copy to MGG and its counsel) to transfer to the Debtor's operating account a minimum of (i) $200,000, and (ii) additional amounts necessary to satisfy Budget expenses for each such week on Wednesday of each week starting on November 2, 2022, until the full Deposit has been so transferred, the failure of which shall be a Termination Event;

(b)    the entry of an order of this Court terminating, reversing, adversely amending, supplementing, staying, or vacating any material provisions of this Second Interim Order without the prior consent of the Administrative Agent;

(c)    this Second Interim Order shall cease, for any reason, to be in full force and effect, or any liens or claims created in favor of the Administrative Agent under this Second Interim Order shall cease to be enforceable and of the same effect and priority purported to be created hereby, or the Debtor shall so assert in writing;

(d)    the entry of any order of the Court that impairs in any way the security interests, liens, priority claims or rights granted to the Administrative Agent under the terms of this Second Interim Order;

(e)    the resignation, denial of retention, or termination of Getzler Henrich & Associates LLC, or any chief restructuring officer therefrom (the "CRO"), who shall be responsible for day to day decision-making of the Debtor's business in a manner consistent with its retention agreement with the Debtor, without the prior written consent of the Administrative Agent;

(f)    the appointment in the Case of a trustee or an examiner with expanded powers, without the prior written consent of the Administrative Agent;

(g)    a filing by the Debtor or any other Person of any motion, pleading, application, Dispute Notice, written notice or adversary proceeding challenging the validity, enforceability, perfection or priority of the liens or asserting any other cause of action against and/or with respect to the Credit Agreement or any other Loan Document, the Collateral, the Administrative Agent (or if the Debtor supports any such motion, pleading, application, or adversary proceeding commenced by any third party);

(h)     the dismissal of the Case or the conversion of the Case to a case under chapter 7 of the Bankruptcy Code, without the prior written consent of the Administrative Agent;

(i)     the failure of the Debtor to perform, any of the terms, provisions, conditions, covenants, or obligations under this Second Interim Order;

(j)     the Debtor having used Cash Collateral or Collateral to make payments or transfers of any kind, including unpaid wages and/or expense reimbursements, to Constantine S. Yannias, without Court approval after notice and an opportunity for hearing;

(k)     failure by the Debtor to comply with the Budget, subject to the Permitted Variances, without the prior written consent of the Administrative Agent;

(l)     the payment of, or application by the Debtor for authority to pay, any prepetition claim unless in accordance with the Budget or otherwise approved by the Court or the Administrative Agent;

(m)     any misrepresentation the Debtor in the financial reporting or certifications to be provided by the Debtor to the Administrative Agent under the Loan Documents and/or this Second Interim Order;

(n)     any Debtor's failure to perform, in any respect, any of its obligations under this Second Interim Order;

(o)     if any order is entered after the date of this Second Interim Order requiring the Debtor to provide additional payment or other consideration to the Administrative Agent, any failure of the Debtor to comply with the terms and provision of such order;

(p)     the entry of an order in the Case charging any of the Collateral under section 506(c) or limiting the extent or priority of the liens in favor of the Administrative Agent pursuant to section 552(b) of the Bankruptcy Code or the commencement of other actions that are

materially adverse to the Administrative Agent or its respective rights and remedies under the Loan Documents in the Case (or any order requiring any of the Administrative Agent to be subject to the equitable doctrine of "marshalling") without the prior written consent of the Administrative Agent;

(q)     without the prior written consent of the Administrative Agent, the obtaining after the Petition Date of credit or the incurring of indebtedness that is, in each case, (A) secured by a security interest, mortgage or other lien on all or any portion of the Collateral that is equal or senior to any security interest, mortgage or other lien of the Administrative Agent, including, without limitation, any Adequate Protection Liens; or (B) entitled to priority administrative status that is equal or senior to that granted to the Administrative Agent, including, without limitation, the Adequate Protection Superpriority Claim (as defined below);

(r)     the automatic stay shall be modified, reversed, revoked or vacated in a manner that has a material adverse impact on the rights and interests of the Administrative Agent without the prior written consent of the Administrative Agent; or

(s)     the Court shall have entered an order avoiding, disallowing, subordinating or recharacterizing any claim, lien, or interest held by the Administrative Agent arising under the Loan Documents.

5.     <u>Adequate Protection</u>.

(t)     <u>Adequate Protection Liens</u>.  As adequate protection for and to the extent of the amount of diminution in value from and after the Petition Date, of its interests in the Collateral, the imposition of the automatic stay and any other act or omission which causes diminution in the value of its interests in the Collateral (collectively, the "<u>Diminution in Value</u>"), the Administrative Agent, for the benefit of itself, is hereby granted, pursuant to sections 361 and

VAS 52117405v3

-17-

363 of the Bankruptcy Code, valid, binding, enforceable and perfected replacement and additional liens upon and security interests in all property, real or personal, whether now existing or hereafter arising and wherever located, tangible and intangible, of the Debtor, including insurance policies (and any and all claims thereunder) and the proceeds thereof, commercial tort claims, causes of action, and all substitutions, indemnification rights, all present and future intercompany debt, books and records related to the foregoing, accessions and proceeds of the foregoing, wherever located, including, without limitation, (a) insurance or other proceeds; (b) all proceeds of leased real property; (c) the proceeds of any avoidance actions brought pursuant to Chapter 5 of the Bankruptcy Code or applicable state law equivalents; and (d) the proceeds of the Debtor's rights under section 506(c) and 550 of the Bankruptcy Code, and all Collateral that was not otherwise subject to valid, perfected, enforceable, and unavoidable liens on the Petition Date (collectively, to the extent acquired after the Petition Date, the "Post-Petition Collateral" and, together with the Prepetition Collateral and the Cash Collateral, the "Collateral") to the extent of any Diminution in Value (the "Adequate Protection Liens"). The Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any asset of the Debtor and all rights of payment of all other parties. Other than as set forth herein, including, without limitation, with respect to the Carve-Out, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or with any lien or security interest previously or hereinafter granted in the Case or any Successor Case (as defined below). The Adequate Protection Liens shall be valid, binding and enforceable against any trustee or other estate representative appointed in the Case, upon the conversion of the Case to a case under chapter 7 of the Bankruptcy Code (collectively, "Successor Case") and/or upon the dismissal of any Case or Successor Case. The Adequate Protection Liens shall be subordinate to the Carve Out.

VAS 5211740Sv3   -18-

(u) <u>Cash Management</u>.  The Debtor shall maintain its cash management arrangements in a manner consistent with that described in the applicable "first day" order.

(v) <u>Adequate Protection Superpriority Claim</u>. As adequate protection for the Diminution in Value of its interest in the Prepetition Collateral, the Administrative Agent is hereby granted as and to the extent provided by sections 503 and 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in the Case and any successor bankruptcy case, subject in all respects to the Carve-Out (the "<u>Adequate Protection Superpriority Claim</u>"). The Adequate Protection Superpriority Claim shall have priority over all administrative expense claims, including administrative expenses of the kinds specified in or ordered pursuant to sections 503(b) and 507(b) of the Bankruptcy Code, and unsecured claims against the Debtor and the Estate now existing or hereafter arising, of any kind or nature whatsoever; <u>provided</u>, <u>however</u>, the Adequate Protection Superpriority Claim shall be subject to the Carve-Out.  The Adequate Protection Superpriority Claim of MGG shall be subordinate to the Carve Out.

(w) <u>Disposition of Collateral</u>.  The Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral outside the ordinary course of business without (i) prior written notice (which writing may be e-mail) to the Administrative Agent of such disposition and the terms thereof, and (ii) in each case, an order of this Court.

(x) <u>Further Adequate Protection Reservation</u>.  Notwithstanding anything to the contrary set forth herein, the adequate protection granted by this Second Interim Order is without prejudice to the Administrative Agent's rights to seek additional adequate protections from this Court. The use of Cash Collateral pursuant to the terms and conditions of this Second Interim Order and in accordance with the Budget shall not be deemed to be a consent by the Administrative Agent to any other or further use of Cash Collateral or to the use of any Cash

VAS 5217405v3

Collateral in any amount or for any purpose in excess of the amount set forth in the Budget for each such type of disbursement.

6. <u>Carve-Out</u>. As used in this Second Interim Order, the "<u>Carve-Out</u>" means the sum of, to the extent allowed at any time pursuant to the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any interim or final orders of the Court, all accrued and unpaid fees, disbursements, costs, expenses (the "<u>Allowed Professional Fees</u>") incurred by persons or firms retained by the Debtor pursuant to sections 327, 328, or 363 of the Bankruptcy Code, up to one hundred fifteen percent (115%) of the amount specified for professional fees in the Budget.

7. <u>Limits on Lender Liability</u>. Subject to entry of the Final Order, nothing in this Second Interim Order, the Loan Documents, or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the Administrative Agent of any liability for any claims arising from any activities by the Debtor in the operation of its businesses or in connection with the administration of this Case.

8. <u>Insurance</u>. At all times the Debtor shall maintain casualty and loss property insurance coverage for the Collateral on substantially the same basis as maintained prior to the Petition Date. The Debtor shall provide the Administrative Agent with proof of the foregoing within five (5) days of written demand and give the Administrative Agent reasonable access to Debtor's records in this regard.

9. <u>Proof of Claim</u>. Notwithstanding any notice, motion or other order entered by this Court in relation to the establishment of a bar date in this Case or any Successor Case to the contrary, the Administrative Agent will not be required to file proofs of claim or requests for approval of administrative expenses in this Case or Successor Case. The acknowledgment by the Debtor of the liens, rights, priorities and protections granted to or in favor of the Administrative

VAS 5211740.5v3

-20-

Agent in respect of the Prepetition Collateral as set forth herein and in the Loan Documents shall be deemed a timely filed proof of claim on behalf of the Administrative Agent in this Case or Successor Case and remain subject to the provisions of the Challenge Period discussed above.

10.     Relief from the Automatic Stay.

(y)     The automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to permit (i) the Debtor to implement and perform the terms of this Second Interim Order and (ii) the Debtor to create, and the Administrative Agent to perfect, the Adequate Protection Liens and other Liens granted hereunder. The Administrative Agent shall not be required to file UCC financing statements or other instruments with any other filing authority to perfect the Liens, including the Adequate Protection Liens, granted by this Second Interim Order or to take any other actions to perfect such Liens, which shall be deemed automatically perfected by the docketing of this Second Interim Order by the Clerk of the Court, and deemed to be effective as of the Petition Date. If, however, the Administrative Agent shall elect for any reason to file, record or serve any such financing statements or other documents with respect to such Liens, then the Debtor shall execute same upon request and the filing, recording or service thereof (as the case may be) shall be deemed to have been made at the time of the commencement of this Case on the Petition Date.

(z)     The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified without further notice, application or order of the Court to the extent necessary to permit the Administrative Agent to perform any act authorized or permitted under or by virtue of this Second Interim Order, the Credit Agreement, the other Loan Documents, as applicable, including, without limitation, (i) to implement the post-petition use of Cash Collateral authorized by this

VAS 52117405v3

Second Interim Order, (ii) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the Collateral, including any adequate-protection replacement liens, and (iii) to assess, charge, collect, advance, deduct and receive payments with respect to without limitation, all interests, fees, costs and expenses permitted under the Loan Documents.

11. <u>Reversal, Modification, Vacatur, or Stay</u>. Any reversal, modification, vacatur, or stay of any or all of the provisions of this Second Interim Order (other than in accordance with this Second Interim Order) shall not affect the validity or enforceability of any Adequate Protection Liens, the Adequate Protection Superpriority Claim, or any claim, lien, security interest, or priority authorized or created hereby with respect to any Adequate Protection Liens or the Adequate Protection Superpriority Claim, incurred prior to the effective date of such reversal, modification, vacatur, or stay. ~~Notwithstanding any reversal, modification, vacatur, or stay (other than in accordance with this Second Interim Order), (a) this Second Interim Order shall govern, in all respects, any use of Cash Collateral or Adequate Protection Liens, or Adequate Protection Superpriority Claim incurred by the Debtor prior to the effective date of such reversal, modification, vacatur, or stay, and (b) the Administrative Agent shall be entitled to all the benefits and protections granted by this Second Interim Order with respect to any such use of Cash Collateral or such Adequate Protection Liens, or Adequate Protection Superpriority Claim incurred by the Debtor.~~ CN

12. <u>No Waiver for Failure to Seek Relief</u>. The failure or delay of the Administrative Agent to seek relief or otherwise exercise any of its rights and remedies under this Second Interim Order, the Credit Agreement, the other Loan Documents or applicable law, as the case may be, shall not constitute a waiver of any rights hereunder, thereunder, or otherwise, by the Administrative Agent.

13. <u>Section 507(b) Reservation</u>. Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Administrative Agent, hereunder is insufficient to compensate for any Diminution in Value during the Case. Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by the Administrative Agent that the adequate protection granted herein does in fact adequately protect the Administrative Agent against any Diminution in Value of its interests in the Prepetition Collateral (including the Cash Collateral). Any rights of MGG provided under this paragraph shall be subordinate to the Carve Out.

14. <u>Marshalling</u>. Upon entry of this Second Interim Order, in no event shall the Administrative Agent be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the Collateral.

15. <u>552(b) "Equities of the Case" Waiver</u>. Subject to entry of the Final Order granting such relief, the Administrative Agent shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code.

16. <u>506(c) Claims</u>. Subject to entry of the Final Order granting such relief, no costs or expenses of administration which have or may be incurred in the Case shall be charged against the Administrative Agent, its claims or the Collateral pursuant to section 506(c) of the Bankruptcy Code without the prior written consent of the Administrative Agent, as applicable, and no such consent shall be implied from any other action, inaction or acquiescence by the Administrative Agent.

17. <u>Limitation on Use of Collateral</u>. The Cash Collateral may not be used in connection with or to finance in any way: (a) any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) for the payment of any services rendered by the professionals

retained by the Debtor or Committee, or other representative of the Estate, in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment, determination, declaration or similar relief invalidating, setting aside, avoiding or subordinating, in whole or in part, any Prepetition Liens or Prepetition Obligations, (ii) for monetary, injunctive or other affirmative relief against the Administrative Agent, or any Prepetition Collateral, or (iii) preventing, hindering or otherwise delaying the exercise by the Administrative Agent of any rights under this Second Interim Order; (b) objecting to or challenging in any way the claims, liens, or interests held by or on behalf of the Administrative Agent; (c) asserting, commencing or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against the Administrative Agent; or (d) prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the Prepetition Liens, the Prepetition Obligations or any other rights or interest of the Administrative Agent; provided, that up to an aggregate amount of $25,000 of the amount identified for professional fees in the Budget may be used during the Challenge Period to investigate (but not to prosecute or challenge) the claims and liens of the Administrative Agent and other potential claims, counterclaims, causes of action or defenses against the Administrative Agent.

18. Effect of Debtor's Stipulations on Third Parties.

(aa) Nothing in this Second Interim Order shall prejudice the rights of any Committee or any other party in interest, including the Debtor, if granted standing by the Court, to seek, solely in accordance with the provisions of this Paragraph 18, to assert claims against the

Administrative Agent, on behalf of the Debtor or the Debtor's creditors or to otherwise challenge the Debtor's Stipulations, including, but not limited to those in relation to (i) the validity, extent, priority, or perfection of the security interests, and liens of the Administrative Agent, (ii) the validity, allowance, priority, or amount of the Prepetition Obligations, or (iii) any liability of the Administrative Agent with respect to anything arising from the Loan Documents. Notwithstanding the immediately preceding sentence, any Committee or any other party in interest must, after obtaining standing approved by the Court, commence an adversary proceeding raising such claim, objection, or challenge, including, without limitation, any claim or cause of action against the Administrative Agent (each, a "Challenge") no later than (i) the date that is sixty (60) days after the Committee's formation, (ii) if no Committee is appointed, then with respect to other parties in interest, no later than the date that is seventy-five (75) days after the entry of this Second Interim Order, or (iii) with respect to any chapter 11 trustee appointed in the Case or any chapter 7 trustee appointed in any Successor Case, prior to the expiration of the periods set forth in subsections (i) and (ii) above, no later than the date that is the later of (A) fourteen (14) days after the appointment of such trustee or (B) the expiration of the time periods set forth in the foregoing subsections (i) and (ii) above (collectively, the "Challenge Period"). The Challenge Period may only be extended with the written consent of the Administrative Agent, as applicable, prior to the expiration of the Challenge Period, and for the avoidance of doubt, any such extension shall only apply to the specific party as to which any such extension may be granted. Only those parties in interest who commence a Challenge within the Challenge Period may prosecute such Challenge. As to (x) any parties in interest, including any Committee, who fail to file a Challenge within the Challenge Period, or if any such Challenge is filed and overruled or otherwise finally resolved or adjudicated in favor of the Administrative Agent, or (y) any and

all matters that are not expressly the subject of a timely Challenge: (i) any and all such Challenges by any party (including, without limitation, any Committee, any chapter 11 trustee, any examiner or any other estate representative appointed in the Debtor's Case, or any chapter 7 trustee, any examiner or any other estate representative appointed in any Successor Case), shall be deemed to be forever waived and barred; (ii) all of the findings, Debtor's Stipulations, waivers, releases, affirmations, and other stipulations as to the priority, extent, and validity as to the claims, liens, and interests of the Administrative Agent, as applicable, shall be of full force and effect and forever binding upon the Debtor's Estate and all creditors, interest holders, and other parties in interest in the Case and any Successor Case; and (iii) any and all claims or causes of action against the Administrative Agent, as applicable, relating in any way to the Loan Documents, Prepetition Obligations, and Prepetition Liens, as applicable, shall be released by the Debtor's Estate, all creditors, interest holders, and other parties in interest in the Case and any Successor Case.

(bb)    Nothing in this Second Interim Order vests or confers on any person (as defined in the Bankruptcy Code), including any Committee, standing or authority to pursue any cause of action belonging to the Debtor or its Estate, including, without limitation, any Challenge with respect to the Loan Documents or the Prepetition Obligations.

19.    <u>Binding Effect</u>.  This Second Interim Order shall be binding upon and inure to the benefit of the Administrative Agent, and the Debtor and its respective successors and assigns, including, without any limitation, any trustee, responsible officer, examiner, estate administrator or representative, or similar person appointed in a case for the Debtor under any chapter of the Bankruptcy Code. No rights are entered under this Second Interim Order for the benefit of any creditor of the Debtor, any other party in interest in the Case, or any other person or entities, or any direct, indirect or incidental beneficiaries thereof.

VAS 52117405v3

20.     <u>Reporting</u>. Debtor shall provide the Administrative Agent with all financial and other information required under the Loan Documents and this Second Interim Order, and such other information as the Administrative Agent may from time to time reasonably request.

21.     <u>Inspection and Access to CRO</u>. Without limiting the rights of the Administrative Agent contained in this Second Interim Order, the Administrative Agent shall have the right, upon three (3) days written notice to the Debtor, at any time during the Debtor's normal business hours, to inspect, audit, examine, check, make copies of or extract from the non-privileged books, accounts, checks, orders, correspondence and other records of the Debtor, and to inspect, audit and monitor all or any part of the Collateral, and the Debtor shall make all of same reasonably available to the Administrative Agent and its representatives, for such purposes. Notwithstanding anything to the contrary herein, (a) the Debtor's CRO is authorized to provide confidential information to the Administrative Agent and its advisors subject to all of the rights and privileges that apply to such information including that provided by Federal Rule of Evidence 408 and California Evidence Code 1152, (b) the Debtor authorizes the CRO to communicate directly with the Administrative Agent regarding the matters described herein and to participate in discussions and update calls with the Administrative Agent, and authorizes the CRO to provide to the Administrative Agent copies of reports and other information or materials prepared or reviewed by the CRO as the Administrative Agent may reasonably request from time to time subject to all of the rights and privileges that apply to such information and documents including that provided by Federal Rule of Evidence 408 and California Evidence Code 1152, and (c) the Administrative Agent is the intended third-party beneficiary of the provisions in this paragraph and the other provisions of this Order that reference a consent, agreement or approval of the Administrative Agent, and no such provisions shall be amended or otherwise modified or waived without the

written consent of the Administrative Agent.  Notwithstanding anything to the contrary herein, neither the Debtor nor the CRO shall be required to provide the Administrative Agent any communications or materials subject to attorney-client privilege.

22.    <u>Limitation of Liability</u>.  In permitting the use of the Prepetition Collateral or in exercising any rights or remedies as and when permitted pursuant to this Second Interim Order, subject to entry of a final order, the Administrative Agent shall not be deemed to be in control of the operations of the Debtor. Furthermore, nothing in this Second Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon the Administrative Agent of any liability for any claims arising from the prepetition or post-petition activities of the Debtor and its affiliates (as defined in section 101(2) of the Bankruptcy Code).

23.    <u>Effectiveness</u>.  The terms and conditions of this Second Interim Order shall be (i) effective and immediately enforceable upon its entry by the Clerk of the Court notwithstanding any potential application of Bankruptcy Rule 6004(h), 7062, 9014 or otherwise; and (ii) not be stayed absent (a) an application by a party in interest for such stay in conformance with such Bankruptcy Rule 8007, and (b) a hearing upon notice to the Notice Parties.

24.    <u>Survival</u>.  The provisions of this Second Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (a) converting the Case to a case under chapter 7 of the Bankruptcy Code, (b) dismissing the Case or Successor Case, or (c) pursuant to which this Court abstains from hearing the Case or Successor Case; <u>provided</u>, <u>that</u> in the event there is later entered any order providing for either the conversion or dismissal of the Case, such order(s) shall make express provision, among other things, for the survival and continuing force and effect of the terms and provisions of this Second Interim Order notwithstanding such conversion or dismissal. The terms and provisions of this Second Interim

Order, as well as the Adequate Protection Superpriority Claim, the Adequate Protection Liens, and all other claims and Liens granted by this Second Interim Order, and the rights provided to the Debtor and its professionals, shall (a) continue in this or any other superseding case under the Bankruptcy Code, (b) be valid and binding on all parties in interest, including, without limitation, any Committee, chapter 11 trustee, examiner or chapter 7 trustee, and (c) continue, notwithstanding any dismissal of any Case or Successor Case (and any such order of dismissal shall so provide), and such claims and Liens shall maintain their priority as provided by this Second Interim Order.

25.    <u>Rights Preserved</u>.  Notwithstanding anything herein to the contrary, the entry of this Second Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the Administrative Agent to seek any other relief in respect of the Debtor (including the right to seek additional adequate protection); (b) the Administrative Agent's right to seek the payment by the Debtor of post-petition interest pursuant to section 506(b) of the Bankruptcy Code; or (c) any rights of the Administrative Agent under the Bankruptcy Code or under non-bankruptcy law, including the right to (i) request modification of the automatic stay pursuant to section 362 of the Bankruptcy Code, (ii) request dismissal of the Case or Successor Case, conversion of the Case to a case under chapter 7 of the Bankruptcy Code, or appointment of a chapter 11 trustee or an examiner (with or without expanded powers), (iii) propose a chapter 11 plan or plans of reorganization, subject to section 1121 of the Bankruptcy Code, or (iv) Other than as expressly set forth in this Second Interim Order, any other rights claims or privileges (whether legal, equitable or otherwise) of the Administrative Agent are preserved.  Except as expressly provided in this Second Interim Order, all rights of the Debtor under the Bankruptcy

VAS 52117405v3

Code, Bankruptcy Rules, and Local Rules governing practice and procedure in the United States

Bankruptcy Court for the Northern District of California are preserved.

26.  <u>Application of Proceeds</u>.  All proceeds of the Collateral received by the Administrative Agent, and any other amounts or payments received by the Administrative Agent in respect of the Prepetition Obligations, may be applied or deemed to be applied by the Administrative Agent in such manner and priority as the Administrative Agent may determine in its sole discretion, in accordance with this Second Interim Order. ~~Without limiting the generality of the foregoing, the Debtor is authorized without further order of this Court to pay or reimburse the Administrative Agent for future costs and expenses, including, without limitation, all professional fees, consultant fees and legal fees and expenses paid or incurred by the Administrative Agent as provided in this Second Interim Order and the Loan Documents, all of which shall be and are included as part of the principal amount of the Prepetition Obligations and~~ CN ~~secured by the Collateral~~.  The Debtor shall have until the Final Date to deliver a Dispute Notice to MGG with respect to any objection to the manner by which the proceeds of the Collateral or payment of the Prepetition Obligations are applied by MGG.  If no Dispute Notice is delivered to MGG on or before the Final Date, the Debtor shall have waived its right to object to the application of proceeds of the Collateral provided in this Paragraph 26.

27.  <u>Final Hearing</u>.  A hearing on the Debtor's request for a Final Order approving the Motion is scheduled for November 2,, 2022, at 11:00 a.m./p.m. (prevailing Pacific time) before this Court. Within three (3) business days after entry of this Second Interim Order, the Debtor shall serve, or cause to be served, by first class mail or other appropriate method of service, a copy of the Motion (to the extent the Motion was not previously served on a party) and this Second Interim Order on (i) the Notice Parties and (ii) counsel for any Committee. Any responses

may be made at the hearing.   CN

or objections to the Motion ~~shall be made in writing, conform to the applicable Bankruptcy Rules~~ ~~and Local Bankruptcy Rules, be filed with the Court, set forth the name of the objecting party,~~ ~~the basis for the objection, and the specific grounds therefor, and be served so as to be actually~~ ~~received no later than October 31, 2022, at 12:00 p.m. (prevailing Pacific time).~~  Any response to such opposition shall be presented at the time of the hearing.   .

  28. <u>Retention of Jurisdiction</u>.  The Court has and will retain jurisdiction to enforce this Second Interim Order in accordance with its terms and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Second Interim Order.

  29. <u>Controlling Effect of this Second Interim Order</u>.  To the extent any provision of this Second Interim Order conflicts or is inconsistent with any provision of the Motion, the provisions of this Second Interim Order shall control to the extent of such conflict.

**\*END OF ORDER\***

VAS 5211740Sv3

Case: 22-10381    Doc# 76    Filed: 10/26/22    Entered: 10/27/22 10:22:27    Page 31 of 35

APPROVED AS TO FORM AND CONTENT:


By: _____
      Jeff J. Marwil
      Peter J. Young
      Steve Ma
      Ashley M. Weringa
      Attorneys for MGG California, LLC
      As Administrative Agent

1

## Exhibit 1

2

**Budget**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SPRING MOUNTAIN VINEYARD**
**WEEKLY CASH FLOWS**
**($000s)**

| Weeks start on Mondays (W/O) | 3 Forecast 10/17/2022 | 4 Forecast 10/24/2022 | 5 Forecast 10/31/2022 | TOTAL 3 Weeks |
|---|---|---|---|---|
| **Operating Receipts** | | | | |
| US Wholesale | 12.5 | 17.0 | 125.0 | 154.5 |
| Export | | 12.0 | | 12.0 |
| Tasting Room (POS, Web, Events) | 52.5 | 47.3 | 14.5 | 114.3 |
| Club | | | 60.0 | 60.0 |
| Other (Bulk, Grape, Misc.) | | | 112.5 | 112.5 |
| **Total Operating Receipts** | **65.0** | **76.3** | **312.0** | **453.3** |
| | | | | |
| **Operating Disbursements** | | | | |
| **Total Payroll** | **32.0** | **171.0** | **42.5** | **245.5** |
| | | | | |
| **Total Farm & Vineyards** | **30.0** | **75.0** | **16.5** | **121.5** |
| | | | | |
| **Total Winemaking & Production** | **9.0** | **9.0** | **9.0** | **27.0** |
| | | | | |
| Elite (Sales Brokers) | | 36.8 | | 36.8 |
| Licensing/Fees/DTC Sales Tax | 4.9 | | | 4.9 |
| Warehouses/Shipping | 88.3 | | 25.0 | 113.3 |
| Misc. | 1.1 | - | - | 1.1 |
| **Total Sales & Shipping** | **94.3** | **36.8** | **25.0** | **156.1** |
| | | | | |
| Utilities | 2.0 | 2.0 | 2.0 | 6.0 |
| Book Keeping Services | | | 25.0 | 25.0 |
| Property Tax | | | | |
| Corporate Insurance/Financing | | | 246.1 | 246.1 |
| Other/Misc. | 2.3 | 2.3 | 2.3 | 6.9 |
| **Total Corporate/Overhead** | **4.3** | **4.3** | **275.4** | **284.0** |
| | | | | |
| **Total Operating Disbursements** | **169.6** | **296.1** | **368.4** | **834.1** |
| | | | | |
| **Net Operating Cash Flows** | **(104.6)** | **(219.8)** | **(56.4)** | **(380.8)** |
| | | | | |
| Reservoir CapEx | | | | - |
| Investment Banking/Appraisal | | | | - |
| Greenspoon & Marder | | | | - |
| Special Counsel | | | | - |
| Getzler Henrich | 105.0 | 35.0 | 35.0 | 175.0 |
| Legal - Unsecured Creditors Comm | | | | - |
| US Trustee Fees | | 0.3 | | 0.3 |
| Utility Deposits | | 3.9 | | 3.9 |
| Interest | | | | - |
| **Total Non-Operating Disbursemer** | **105.0** | **39.2** | **35.0** | **179.2** |
| | | | | |
| **Total Operating & Non-Operating Dis** | **274.6** | **335.3** | **403.4** | **1,013.2** |
| | | | | |
| **Net Cash Flows** | **(209.6)** | **(259.0)** | **(91.4)** | **(559.9)** |
| | | | | |
| Beg Bank Balance (Est.) | 698.6 | 489.1 | 230.1 | 698.6 |
| **Net Cash Flows** | **(209.6)** | **(259.0)** | **(91.4)** | **(559.9)** |
| **Owner Advances** | **-** | **-** | **200.0** | **200.0** |
| **MGG Advances** | | | | **-** |
| **MGG (Repayments)** | **-** | **-** | **-** | **-** |
| **End Bank Balance (Est.)** | **489.1** | **230.1** | **338.7** | **338.7** |
| | | | | |
| Beg Loan Balance (Est.) * | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 |
| **MGG Advances** | **-** | **-** | **-** | **-** |
| **MGG (Repayments)** | **-** | **-** | **-** | **-** |
| **End Loan Balance (Est.) *** | **196,681.8** | **196,681.8** | **196,681.8** | **196,681.8** |

**Subject to Paragraph 3(c) of the second interim order providing for use of cash collateral, the Debtor may apply actual,**
**unused variances from the period covered by the first interim cash collateral order (Docket No. 48).**
*** Note: MGG Loan balances are estimated and subject to change and reconciliation.**

Case: 22-10381    Doc# 76    Filed: 10/26/22    Entered: 10/27/22 10:22:27    Page 34 of
35

COURT SERVICE LIST

SERVICE OF THE ORDER IS NOT NECESSARY

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1