1 | Victor A. Sahn (CA Bar No. 97299)
*victor.sahn@gmlaw.com*
2 | Mark S. Horoupian (CA Bar No. 175373)
*mark.horoupian@gmlaw.com*
3 | Steven F. Werth (CA Bar No. 205434)
*steven.werth@gmlaw.com*
4 | **Greenspoon Marder LLP**
a Florida limited liability partnership
5 | 333 South Grand Ave., Suite 3400
Los Angeles, CA 90071
6 | Telephone: 213.626.2311
Facsimile: 954.771.9264
7 |
8 | Attorneys for Debtor in Possession,
Spring Mountain Vineyard Inc.

9 | **UNITED STATES BANKRUPTCY COURT**

10 | **NORTHERN DISTRICT OF CALIFORNIA**

11 | **SANTA ROSA DIVISION**

12 | In re:

Case No. 1:22-bk-10381 CN

13 | SPRING MOUNTAIN VINEYARD INC., a Delaware corporation,

Chapter 11

14 | Debtor.

**APPLICATION FOR ORDER AUTHORIZING DEBTOR TO EMPLOY AND RETAIN JIGSAW ADVISORS LLC TO PROVIDE OUTSIDE WINERY OPERATIONS AND MANAGEMENT SERVICES; DECLARATIONS OF CONSTANTINE S. YANNIAS AND WILLIAM R. BRINKMAN IN SUPPORT THEREOF**

15 |

16 | Federal EIN: 36-3844911

17 |

18 |

19 |

20 | **Hearing Information**

Date: November 22, 2022
21 | Time: 3:30 p.m.
Place: U.S. Bankruptcy Court
22 | Courtroom 215
1300 Clay Street
23 | Oakland, CA 94612

24 |

25 |

26 |

27 |

28 |

ASH 52257096v6

**TO THE HONORABLE CHARLES NOVACK, UNITED STATES BANKRUPTCY JUDGE, THE TWENTY LARGEST UNSECURED CREDITORS, THE OFFICE OF THE UNITED STATES TRUSTEE, AND PARTIES ENTITLED TO NOTICE:**

Pursuant to 11 U.S.C. §§ 105(a) and 363(b), Spring Mountain Vineyard Inc., a Delaware corporation, debtor and debtor in possession in the above-captioned case (the "Debtor"), hereby applies for authority to employ and retain Jigsaw Advisors LLC (the "Firm" or "Jigsaw") to provide outside winery operations and management services, *nunc pro tunc* to September 29, 2022 (the "Petition Date"), pursuant to the terms and conditions in the engagement agreement dated October 28, 2022, a true and correct copy of which is attached as Exhibit 1 to the accompanying declaration of William R. Brinkman (the "Brinkman Declaration"), as may be supplemented by the terms and conditions in the present application (the "Application") and the proposed form of order approving this Application (the "Proposed Order"), a copy of which is attached hereto as Exhibit 3.

This Application is based on the Application, the accompanying declaration of Constantine S. Yannias (the "Yannias Declaration") and the Brinkman Declaration, any exhibits thereto, notice of the Application (filed and served concurrently herewith), all facts, information, and documents that are the subject of judicial notice, and any other arguments or evidence that may be presented to the Court in support of or in connection with the Application.

## I.

## BACKGROUND

Since 1992, the Debtor has owned the Spring Mountain Vineyard in Napa County, California (the "Vineyard"). The Vineyard is the Debtor's primary asset. The Debtor runs an ongoing business with 70 employees, millions of dollars in annual sales, and relationships with dozens of suppliers and thousands of customers.

The Vineyard features approximately 135 vineyard blocks across approximately 211 acres, each with a different elevation, soil and exposure to the elements and each producing a unique and diverse grape. The Vineyard is also improved with the estate residence, two winery buildings, a tasting room, six wells, cisterns, an irrigation system, a historic barn, and other outbuildings. The

Vineyard also has extensive winery caves that have been completely finished and utilized for barrel storage and private events.

The Debtor's business consists primarily of growing grapes in its 135 vineyard blocks, harvesting those grapes and pressing them into wine in casks, bottling that wine from casks, and storing and selling that wine. The Debtor's revenue comes almost entirely from the sale of wine and grapes.

The Debtor has traditionally financed its operations through secured lending. Prior to October 2018, the Debtor had a loan secured by substantially all of the real and personal property of the Debtor. On October 11, 2018, the Debtor refinanced this debt and entered into a new lending relationship. The Debtor entered into a "Credit and Guaranty Agreement" and numerous related agreements with fourteen lenders, and MGG California LLC, as administrative agent and collateral agent for those lenders (collectively with MGG California LLC, "MGG"), pursuant to which Debtor obtained a loan (the "Loan") in the amount of $185 million.

On September 29 ,2022 (the "Petition Date"), the Debtor commenced this bankruptcy case. As more particularly set forth in the *Omnibus Declaration of Constantine S. Yannias in Support of Debtor's "First Day" Emergency Motions* [Dkt. No. 26], the Debtor's bankruptcy filing was brought about by a number of extraordinary events, including, but not necessarily limited to, the drastic decline in tourism caused by the COVID-19 pandemic and difficulties the Debtor experienced with its secured lender that negatively impacted the Debtor's operations.

The Debtor commenced this reorganization case to restructure its operations and debt. The Debtor believes that a successful overall reorganization will maximize the value of the Estate and allow the Debtor to emerge from chapter 11 with a reorganized and viable ongoing business.

The Debtor continues to manage its affairs and operate its business as a debtor in possessions. No trustee or creditors' committee has been appointed in this case.

/ / /

/ / /

/ / /

/ / /

## II.

## THE DEBTOR'S RETENTION OF THE FIRM

**A.**     **Pre-Petition and Proposed Post-Petition Scope of Services**

In February 2021, the Debtor and MGG entered into a forbearance agreement relating to the Loan.  The forbearance agreement was amended twice.  In the second amendment, dated July 2022, MGG required the Debtor to retain a Chief Restructuring Officer.  As a result, in July 2022, pursuant to an engagement agreement dated July 5, 2022, the Debtor retained Getzler Henrich & Associates LLC ("Getzler") as its advisor and has served in that capacity since that date.  Due to the specialized and complex nature of winery and vineyard operations, Getzler will work closely with Peter Ekman ("Ekman") and Jigsaw.

On August 22, 2022, Kevin A.  Krakora ("Krakora"), one of Getzler's managing directors, was appointed as the Debtor's Chief Restructuring Officer ("CRO"), and has held that position since that time.  Since his appointment as CRO, Krakora has become intimately familiar with the Debtor's business operations and its revenues and expenses.  In such role, Krakora works with a team of individuals, including Ekman, an experienced winery, tech, and e-commerce manager and CEO.[1]

Since Krakora's installment as CRO, the Debtor has worked closely with him to restructure the Debtor's operations and improve its revenue.  In addition, since that time, Ekman has been at the Vineyard multiple days a week.  The Debtor relies on the Firm and Krakora, working together with Ekman of Jigsaw (collectively, the "Advisors") to manage daily operations at the Vineyard and render other critical services described below.

Since its retention, Jigsaw (primarily, if not exclusively, through Ekman) has provided and,

---

[1] Ekman, who has worked in conjunction with Getzler and Krakora, has extensive experience relevant to the engagement contemplated in this Application and, to date, has been a valuable and integral addition to the Debtor's operations.  To ensure the Debtor and its estate and creditors continue to receive the value and benefits of these professionals, concurrently herewith, the Debtor is filing a separate application to retain Getzler to provide interim management services, designate Krakora as CRO, and provide additional personnel for related financial and operational support services (the "Getzler Application").  *See also*, *Declaration of Kevin Krakora*, which accompanies the concurrently-filed Getzler Application.

ASH 52257096v6

subject to order of this Court, as necessary, will continue to provide, the services delineated in the Agreement, as supplemented by this Application, at the direction of the Debtor's President and the Debtor's CRO. Such services shall include the following (the "Services"):

    a.    Oversee and manage the day-to-day operations of the winery and vineyards

        i.    Responsible for cost-effectiveness and efficiency of winery operations, and to assess and implement improvements.

        ii.    Manage work and deliverables of winery and vineyard employee teams in order to control priorities, output and to manage labor costs.

        iii.    Implement revenue enhancements and sales and marketing improvements in order to maximize revenue.

        iv.    Evaluate and implement cost reductions and process improvements to maximize short-term cash flow.

        v.    Analyze inventory, and prepare and implement inventory sell-through plans and forecasts.

        vi.    Manage overall sales process of wine case goods through all channels.

        vii.    Prepare and analyze all cash flow improvement initiatives related to winery and vineyard operations.

    b.    Manage the accounting and back-office teams, and assist the CRO team with financial reporting and analyses necessary to support the restructuring and Chapter 11 process

        i.    Oversee and manage the in-house accounting staff and outsource finance team.

        ii.    Implement required accounting and reporting processes, timelines, and deliverables.

        iii.    Produce meaningful financial analysis and reports to allow management to make informed operating and restructuring decisions.

        iv.    Assist as requested by the CRO to support the updating of financial forecasts and projections, including 13-week cash flow forecasting, CAPEX expenditure analysis, and annual financial planning.

In addition to services rendered pre-petition, shortly after the Debtor's retention of Greenspoon Marder LLP ("GM") as its bankruptcy counsel on September 27, 2022, the Firm worked closely with the Debtor and GM attorneys in connection with the Debtor's bankruptcy filing, including, but not limited to, preparing a 13-week budget projection, negotiating and communicating with MGG regarding the use of cash collateral, and providing other information critical for the preparation and prosecution of the Debtor's "first day" papers and motions.

Subject to order of the Court, and consistent with and pursuant to the Agreement, the Firm

will continue to provide the foregoing types of services in the context of this bankruptcy case and tailor such services as necessary to meet the Debtor's needs and ensure compliance with the Debtor's obligations in this case, and otherwise assist the Debtor, the CRO, and the Debtor's counsel with such tasks.

Subject to order of the Court, the Firm will provide the foregoing interim management services, and specifically winery and vineyard operations and management services. Ekman, a Jigsaw Managing Director, will provide day-to-day management services. While it is not anticipated that any other Jigsaw professionals will be utilized in this engagement, all Jigsaw professionals, including those preparing any applications or reports in connection with the Compensation Procedures (defined below), shall be independent contractors of the Debtor.

The Debtor believes that the Firm's services described herein are vital to the success of this chapter 11 case, and the Debtor requires advisors knowledgeable and experienced in winery and vineyard management and operations, such as Jigsaw and Ekman (whose qualifications are described below), to render such Services. As a result, the Debtor believes its retention of the Firm is necessary, appropriate, and in the best interests of the Debtor, its Estate, and creditors.

Further, the Debtor believes that the Services will not duplicate the services that other professionals, including Getzler, will be providing to the Debtor in this chapter 11 case. Specifically, the Firm and Ekman will carry out unique functions and will use reasonable efforts to coordinate with the Debtor's other retained professionals to avoid the unnecessary duplication of services.

**B.      Compensation, Retainer, and Proposed Compensation Procedures**

Commencing on the Petition Date, as more specifically set forth in the Agreement, the Firm will charge the Debtor professional fees based on the number of hours expended multiplied by the standard hourly billing rates in effect at the time such services were rendered.

The Firm's current standard hourly rates, subject to periodic adjustment, are as follows:

| TITLE | HOURLY RATE |
|---|---|
| Partners / Managing Directors | $495-$575 |

ASH 52257096v6

6

| Directors | $275-$375 |
| Associates | $150-$225 |

In the normal course of business, the Firm may periodically adjust its billing rates. Changes in applicable hourly rates will be noted on the invoices for the first time period in which the revised rates became effective.

Ekman's standard hourly rate is $550. The Firm will notify the Debtor of any changes to its hourly rates. The Firm provides no assurance regarding the outcome of its work and its fees are not contingent on the result of such work.

In addition to the foregoing hourly rates and related fees incurred, the Firm will charge the Debtor for all costs and expenses incurred at actual cost. The Firm may incur reasonable and necessary costs and expenses in the normal course of performing the engagements. Costs and expenses commonly include, but are not limited to, mileage, parking, business meals while working at the Debtor's office, express mail and other delivery fees. All costs and expenses shall be subject to Court approval pursuant to the Compensation Procedures.

The Firm will strive to perform services in a most expeditious and comprehensive fashion. The Firm will communicate the project status and direction routinely to the Debtor and the CRO, and immediately identify any issues and/or roadblocks that could impact the project's cost or timeline.

The Firm has not received, and will not require, any retainer from the Debtor for the present engagement.

Notwithstanding anything to the contrary in the Agreement, the Debtor shall pay the Firm the compensation set forth above based upon the submission of monthly invoices by the Firm. As further discussed below, the Firm shall file with the Court reports of compensation earned and expenses incurred on a monthly basis (the "Compensation Reports," and each, a "Compensation Report"). Such reports shall contain summary charts which describe the time incurred and services provided, identify the compensation earned by each professional and staff employee provided, and itemize the expenses incurred. The Firm will nonetheless maintain records (in

summary format) of its services rendered for the Debtor in six minute increments, including reasonably detailed descriptions of those services and the individuals who provided those services. All compensation shall be subject to review by the Court in the event an objection is filed. The compensation provided for in the Agreement shall constitute full payment for the services to be rendered to the Debtor by the Firm, Ekman, and any other personnel the Firm shall provide to render the services contemplated in this Application.

The Firm is not being employed as a professional under section 327 of the Bankruptcy Code. As a result, the Firm will not be submitting any fee applications (interim or final) pursuant to sections 328, 330, or 331 of the Bankruptcy Code. Instead, as noted above, the Debtor seeks approval of the Application pursuant to sections 105 and 363 and requests approval of the following compensation procedures (the "Compensation Procedures"):

The Firm shall file the Compensation Reports with the Court on a monthly basis, and serve such reports on the U.S. Trustee, counsel for MGG, counsel to any official committees that may be appointed, and any other party requesting special notice (collectively, the "Notice Parties"), as detailed herein and in the Proposed Order. The Notice Parties shall have 21 days after the date each Compensation Report is served to objection to such Compensation Report. Any compensation and expenses that are the subject of any Compensation Report shall be subject to Court review only in the event an objection is timely filed.

No payment will be made to the Firm that is not in conformity with a cash collateral budget, in effect at the time, and approved by MGG or otherwise ordered by the Court. The Debtor believes that the foregoing fees, compensation, and related procedures described herein are reasonable and justified under the circumstances.

**C.     The Firm's Qualifications**

Jigsaw is a boutique restructuring and turnaround firm that provides interim management, advisory, board, and fiduciary services to middle-market companies that are in need of operational, financial, and strategic solutions as they navigate through challenging situations, including restructurings, recapitalizations, bankruptcies, distressed sales and orderly wind-downs. Jigsaw provides management and various types of advisory services, including restructuring and

turnaround services, transaction advisory services, and corporate finance and capital advisory services to companies across a broad spectrum of industries, with a focus on the wine industry.

As noted above, the present engagement will be led by Ekman, and supported by other professionals at the Firm, as may be required. Ekman is highly qualified to render the services contemplated in this Application.

Ekman is a successful winery, tech, and e-commerce manager and CEO with substantial board experience. Ekman brings decades of expertise in business development, profitable growth, successful turnarounds, and restructuring projects in the wine industry. Successful restructuring projects include B.R. Cohn Winery, Crushpad Inc., Cosentino Winery, Bounty Hunter Wine, and the restructuring and re-start of Wine.com, the largest eCommerce company in the wine industry. Ekman provides his clients with a unique and powerful combination of financial acumen, creative strategic thinking, operations management, restructuring and turnaround expertise. He is a managing director at Jigsaw, and since 2012 has provided Jigsaw's clients with interim management expertise.

A summary overview and qualifications of the Firm and its professionals is attached to the Brinkman Declaration as <u>Exhibit 2</u>.

**D.**     **The Firm is Disinterested and Not Adverse to the Estate**

To the best of the Debtor's knowledge, information, and belief, other than as set forth in the Brinkman Declaration, the Firm: (a) has no connection with the Debtor, its creditors, its direct and indirect owners, other parties in interest, or the attorneys or accountants of any of the foregoing, or the Office of the United States Trustee for the Northern District of California or any person employed in the Office of the U.S. Trustee; and (b) does not hold any interest adverse to the Debtor or its estate, except that the Firm and Ekman is connected to the Debtor by virtue of the Agreement, this engagement discussed in this Application, and the related services rendered for the Debtor prior to the Petition Date.

Although the Debtor respectfully submits that the Firm's retention is not governed by section 327 of the Bankruptcy Code, the Brinkman Declaration discloses, among other things, the relationship (if any) that the Firm has with the Debtor, its significant creditors, or other significant

parties in interest known to the Firm.  Based upon such disclosures, the Debtor submits that the Firm is a "disinterested person" as that term is defined by section 101(14) of the Bankruptcy Code (to the extent applicable to the Application and related engagement).

In addition, as set forth in the Brinkman Declaration, if any new material facts or relationships are discovered or arise, the Firm will provide the Court with a supplemental declaration disclosing, among other things, any new potential conflicts among the Debtor, the Firm, or other significant parties in interest.

**III.**

**BASIS FOR RELIEF REQUESTED**

As detailed above, the Debtor seeks to employ and retain the Firm to provide the Services pursuant to section 363 and 105 of the Bankruptcy Code, *nunc pro tunc* to the Petition Date.  This Court should approve the Application.

Section 363(b)(1) provides, in relevant part, that a debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Under applicable law, if a debtor's proposed use of assets pursuant to section 363(b) represents a reasonable exercise of the debtor's business judgment, such use should be approved.  *See, e.g.*, *Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988) (citing *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986)); *United Retired Pilots Benefit Protection Ass'n v. United Airlines, Inc. (In re UAL Corp.)*, 446 F.3d 565, 571 (7th Cir. 2006); *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991) (noting that courts have applied the "sound business purpose" test to evaluate motions brought under section 363(b)).

Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted).  *See also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the

ASH 52257096v6

merits is a near-Herculean task").  Notably, Ekman has been working and will continue to work in conjunction with the Debtor, its CRO and Getzler Henrich, and applications to retain financial advisory firms and related CROs have been approved under section 363, together with section 105 (and outside of sections 327, 328, and 330), on terms and conditions similar to those described in this Application, in at least one case in this District.  *See, e.g.*, *In re PG&E Corporation*, Bk. Case No. 19-30088 (DM), *Order Pursuant to 11 U.S.C. §§ 363(b) and 105 Authorizing The Debtors to Employ and Retain AP Services, LLC to Provide a Chief Restructuring Officer, Deputy Chief Restructuring Officer, and Additional Personnel for the Debtors Nunc Pro Tunc to the Petition Date* [Dkt. No. 1299].  Concurrently herewith, the Debtor is filing its application to retain Getzler Henrich, among other things, to designate Krakora as CRO, pursuant to sections 105 and 363, and upon the same Compensation Procedures proposed in the present Application.

The relief requested herein is appropriate and warranted under the foregoing standard.  The decision to retain the Firm, effective as of the Petition Date, represents a sound exercise of the Debtor's business judgment.

*First,* as further described above, the Firm and Ekman have extensive experience providing the services contemplated in this Application to many troubled companies.  The Debtor believes that Ekman, as well as any additional personnel who may be provided by the Firm for this engagement, will provide essential services that will benefit the Debtor and its estate and creditors. Additionally, the Firm has extensive experience in providing restructuring consulting services in reorganization proceedings, as well as management services particularly in the winery and vineyard industry.

*Second*, the Firm, working in conjunction with Getzler, Karkora, and the Debtor's senior management, as well as the Debtor's bankruptcy counsel, have already proven to be of invaluable assistance.  Among other things, Ekman, together with Krakora, have assisted the Debtor in its efforts to assist in the management of winery and vineyard operations, develop near-term projections, handle short-term cash management activities, evaluate strategic alternatives, and coordinate the Debtor's efforts to prepare for and operate in chapter 11, including, in connection with the negotiation of cash collateral usage.

ASH 52257096v6

*Third*, given the important role the Firm and Ekman will fill during this chapter 11 case, the Debtor believes the economic terms of this proposed engagement are fair, reasonable, and beneficial to the Debtor and its estate. Moreover, the Debtor understands that the compensation arrangement provided for in this Application and the Agreement is consistent with and typical of arrangements entered into by the Firm and other restructuring consulting firms for similar services for clients such as the Debtor.

In sum, the Debtor believes that the proposed engagement reflects the sound exercise of the Debtor's business judgment and is in the best interests of all parties in interest in this case. The Debtor additionally believes that the Firm is well qualified and able to represent the Debtor in a cost effective, efficient, and timely manner. The Firm has indicated a willingness to act on behalf of the Debtor and to subject itself to the jurisdiction and supervision of the Court.

## IV.

## <u>CONCLUSION</u>

Based on the foregoing, the Debtor respectfully request that the Court enter an order in the form attached hereto as <u>Exhibit 3</u>: (1) approving the Application; (2) approving the Agreement (<u>Exhibit 1</u>); (3) authorizing the Debtor's retention of the Firm to provide outside winery operations and management services, and render the Services (defined above) to the Debtor, effective as of the Petition Date, pursuant to sections 105 and 363 of the Bankruptcy Code, on the terms and conditions in the Agreement, as supplemented by the Application and the Proposed Order; (4) approving the Compensation Procedures; and (5) providing such other or further relief.

Dated: October 31, 2022

**GREENSPOON MARDER LLP**
A Florida limited liability partnership


By: */s/Mark S. Horoupian*
        Victor A. Sahn
        Mark S. Horoupian
        Steven F. Werth
        Attorneys for Debtor in Possession,
        Spring Mountain Vineyard Inc.

ASH 52257096v6

# DECLARATION OF CONSTANTINE S. YANNIAS[2]

I, Constantine S. Yannias, declare:

1.     I am the Chairman and President of Spring Mountain Vineyard Inc., a Delaware corporation, the debtor in possession in the above-captioned case (the "Debtor"). I have served in this capacity for the Debtor since August 1993.

2.     In my capacity as President of the Debtor, I am involved in its day-to-day operations including issues regarding financial matters, issues regarding operational concerns from the vineyard operations, sales issues and all related matters to its doing business. I have also worked for the Debtor's principal, Mr. Safra, since approximately 1985, and am also involved in his other businesses since the start of my employment with him.

3.     I make and execute this declaration in support of the Application.

4.     Since 1992, the Debtor has owned the Spring Mountain Vineyard in Napa County, California (the "Vineyard"). The Vineyard is the Debtor's primary asset. The Debtor's runs an ongoing business with 70 employees, millions of dollars in annual sales, and relationships with dozens of suppliers and thousands of customers.

5.     The Vineyard features approximately 135 vineyard blocks across approximately 211 acres, each with a different elevation, soil and exposure to the elements and each producing a unique and diverse grape. The Vineyard is also improved with the estate residence, two winery buildings, a tasting room, six wells, cisterns, an irrigation system, a historic barn, and other outbuildings. The Vineyard also has extensive winery caves that have been completely finished and utilized for barrel storage and private events.

6.     The Debtor's business consists primarily of growing grapes in its 135 vineyard blocks, harvesting those grapes and pressing them into wine in casks, bottling that wine from casks, and storing and selling that wine. The Debtor's revenue comes almost entirely from the sale of wine and grapes.

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the foregoing application to which this declaration is attached (the "Application").

ASH 52257096v6

7. The Debtor has traditionally financed its operations through secured lending. Prior to October 2018, the Debtor had a loan secured by substantially all of the real and personal property of the Debtor. On October 11, 2018, the Debtor refinanced this debt and entered into a new lending relationship. The Debtor entered into a "Credit and Guaranty Agreement" and numerous related agreements with fourteen lenders, and MGG California LLC, as administrative agent and collateral agent for those lenders (collectively with MGG California LLC, "MGG"), pursuant to which Debtor obtained a loan (the "Loan") in the amount of $185 million.

8. On September 29 ,2022 (the "Petition Date"), the Debtor commenced this bankruptcy case. As more particularly set forth in my prior declaration titled *Omnibus Declaration of Constantine S. Yannias in Support of Debtor's "First Day" Emergency Motions* [Dkt. No. 26], the Debtor's bankruptcy filing was brought about by a number of extraordinary events, including, but not necessarily limited to, the drastic decline in tourism caused by the COVID-19 pandemic and difficulties the Debtor experienced with its secured lender that negatively impacted the Debtor's operations.

9. The Debtor commenced this reorganization case to restructure its operations and debt. The Debtor believes that a successful overall reorganization will maximize the value of the Estate and allow the Debtor to emerge from chapter 11 with a reorganized and viable ongoing business.

10. The Debtor continues to manage its affairs and operate its business as a debtor in possessions. No trustee or creditors' committee has been appointed in this case.

11. In February 2021, the Debtor and MGG entered into a forbearance agreement relating to the Loan. The forbearance agreement was amended twice. In the second amendment, dated July 2022, MGG required the Debtor retain a Chief Restructuring Officer. As a result, in July 2022, pursuant to an engagement agreement dated July 5, 2022, which I signed on the Debtor's behalf, the Debtor retained Getzler Henrich & Associates LLC ("Getzler") as its advisor and Getzler has served in that capacity since that date.

12. On or about August 22, 2022, Krakora was appointed as the Debtor's Chief Restructuring Officer ("CRO"), and has held that position since that time.

ASH 52257096v6

13.     Since Krakora's installment as CRO, I have worked closely with him to restructure the Debtor's operations and improve its revenue.  In addition, since that time, Ekman has been at the Vineyard multiple days a week.  I rely on the Firm and Krakora, working together with Jigsaw and Ekman, to manage daily operations at the Vineyard and render other critical services described in the Application.

14.     I believe that the Firm's services described in the Application are vital to the success of this chapter 11 case, and the Debtor requires advisors knowledgeable and experienced in winery and vineyard management and operations, such as Jigsaw and Ekman (whose qualifications are described in the Application) to render the Services.  As a result, I, on behalf of the Debtor, believe that the Debtor's retention of the Firm (to work in conjunction with Jigsaw and Ekman) is necessary, appropriate, and in the best interests of the Debtor, its Estate, and creditors.

15.     As set forth in the Application and the Brinkman Declaration, I, on behalf of the Debtor, am satisfied that the Firm and Ekman are highly-qualified to render the services contemplated by the Application.

16.     To the best of the Debtor's knowledge, information, and belief, other than as set forth in the Brinkman Declaration, the Firm: (a) has no connection with the Debtor, its creditors, its direct and indirect owners, other parties in interest, or the attorneys or accountants of any of the foregoing, or the Office of the United States Trustee for the Northern District of California or any person employed in the Office of the U.S. Trustee; and (b) does not hold any interest adverse to the Debtor or its estate, except that the Firm and Ekman are connected to the Debtor by virtue of the Agreement, the engagement discussed in the Application, and the related services rendered for the Debtor prior to the Petition Date.

17.     I, on behalf of the Debtor, believe that the decision to retain the Firm, effective as of the Petition Date, represents a sound exercise of the Debtor's business judgment.  First, as further described in the Application, I understand that the Firm and Ekman have extensive experience providing the services contemplated in the Application to many troubled companies.  I also believe that Ekman, as well as any additional personnel who may be provided by the Firm for this engagement, will provide essential services that will benefit the Debtor and its estate and

ASH 52257096v6

Case: 22-10381     Doc# 84     Filed: 10/31/22     Entered: 10/31/22 18:23:46     Page 15 of 48

creditors. Additionally, I am informed that the Firm has extensive experience in providing restructuring consulting services in reorganization proceedings, as well as management services particularly in the winery and vineyard industry.

18. Second, the Firm, working in conjunction with Getzler, Krakora, and the Debtor's senior management, as well as the Debtor's bankruptcy counsel, have already proven to be of invaluable assistance. Among other things, Ekman, together with Krakora, have assisted the Debtor in its efforts to assist in the management of winery and vineyard operations, develop near-term projections, handle short-term cash management activities, evaluate strategic alternatives, and coordinate the Debtor's efforts to prepare for and operate in chapter 11, including, in connection with the negotiation of cash collateral usage.

19. Third, given the important role the Firm and Ekman will fill during this chapter 11 case, I, on behalf of the Debtor, believe the economic terms of this proposed engagement are fair, reasonable, and beneficial to the Debtor and its estate. Moreover, I understand that the compensation arrangement provided for in this Application and the Agreement is consistent with and typical of arrangements entered into by the Firm and other restructuring consulting firms for similar services for clients such as the Debtor.

20. I, on behalf of the Debtor, also believe that the proposed fee structure, compensation, and Compensation Procedures are reasonable and justified under the circumstances.

21. For such reasons, I, on behalf of the Debtor, believe that the proposed engagement reflects the sound exercise of the Debtor's business judgment and is in the best interests of all parties in interest in this case, and that the Firm is well qualified and able to represent the Debtor in a cost effective, efficient, and timely manner.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on October 31, 2022, in Chicago, Illinois.

_____
Constantine S. Yannias

16

## DECLARATION OF WILLIAM R. BRINKMAN[3]

I, William R. Brinkman, declare:

1.     I am the founder and a partner at Jigsaw Advisors LLC (the "Firm" or "Jigsaw").

2.     I make and execute this declaration in support of the Application.

3.     The Firm and the Debtor entered an engagement agreement dated October 28, 2022, which I signed on the Firm's behalf, a true and correct copy of which is attached hereto as Exhibit 1.

4.     Since the Firm's retention, the Firm (primarily, if not exclusively, through Ekman) has provided and, subject to order of this Court, as necessary, will continue to provide, the services delineated in the Agreement, as supplemented by the Application, at the direction of the Debtor's President and the Debtor's CRO.  Such services shall include the following (the "Services"):

　　　　　a.     Oversee and manage the day-to-day operations of the winery and vineyards

　　　　　　　　i.     Responsible for cost-effectiveness and efficiency of winery operations, and to assess and implement improvements.

　　　　　　　　ii.     Manage work and deliverables of winery and vineyard employee teams in order to control priorities, output and to manage labor costs.

　　　　　　　　iii.     Implement revenue enhancements and sales and marketing improvements in order to maximize revenue.

　　　　　　　　iv.     Evaluate and implement cost reductions and process improvements to maximize short-term cash flow.

　　　　　　　　v.     Analyze inventory, and prepare and implement inventory sell-through plans and forecasts.

　　　　　　　　vi.     Manage overall sales process of wine case goods through all channels.

---

[3] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the foregoing application to which this declaration is attached (the "Application").

ASH 52257096v6

vii. Prepare and analyze all cash flow improvement initiatives related to winery and vineyard operations.

b. Manage the accounting and back-office teams, and assist the CRO team with financial reporting and analyses necessary to support the restructuring and Chapter 11 process

i. Oversee and manage the in-house accounting staff and outsource finance team.

ii. Implement required accounting and reporting processes, timelines, and deliverables.

iii. Produce meaningful financial analysis and reports to allow management to make informed operating and restructuring decisions.

iv. Assist as requested by the CRO to support the updating of financial forecasts and projections, including 13-week cash flow forecasting, CAPEX expenditure analysis, and annual financial planning.

5. In addition to services rendered pre-petition, shortly after the Debtor's retention of Greenspoon Marder LLP ("GM") as its bankruptcy counsel on September 27, 2022, the Firm worked closely with the Debtor and GM attorneys in connection with the Debtor's bankruptcy filing, including, but not limited to, preparing a 13-week budget projection, negotiating and communicating with MGG regarding the use of cash collateral, and providing other information critical for the preparation and prosecution of the Debtor's "first day" papers and motions.

6. Subject to order of the Court, and consistent with and pursuant to the Agreement, the Firm will continue to provide the foregoing types of services in the context of this bankruptcy case and tailor such services as necessary to meet the Debtor's needs and ensure compliance with the Debtor's obligations in this case, and otherwise assist the Debtor, the CRO, and the Debtor's counsel with such tasks.

7. Subject to order of the Court, the Firm will provide the foregoing interim management services, and specifically winery and vineyard operations and management services. Ekman, a Jigsaw Managing Director, will provide day-to-day management services. While it is

not anticipated that any other Jigsaw professionals will be utilized in this engagement, all Jigsaw professionals, including those preparing any applications or reports in connection with the Compensation Procedures (defined below), shall be independent contractors of the Debtor.

8.  I believe that the Services will not duplicate the services that other professionals will be providing to the Debtor in this chapter 11 case. Specifically, the Firm will carry out unique functions and will use reasonable efforts to coordinate with the Debtor's other retained professionals to avoid the unnecessary duplication of services.

9.  Commencing on the Petition Date, as more specifically set forth in the Agreement, the Firm will charge the Debtor professional fees based on the number of hours expended multiplied by standard hourly billing rates in effect at the time such services were rendered.

10. The Firm's current standard hourly rates, subject to periodic adjustment, are as follows:

| TITLE | HOURLY RATE |
|---|---|
| Partners / Managing Directors | $495-$575 |
| Directors | $275-$375 |
| Associates | $150-$225 |

In the normal course of business, the Firm may periodically adjust its billing rates. Changes in applicable hourly rates will be noted on the invoices for the first time period in which the revised rates became effective.

11. Ekman's standard hourly rate is $550. The Firm will notify the Debtor of any changes to its hourly rates. The Firm provides no assurance regarding the outcome of its work and its fees are not contingent on the result of such work.

12. In addition to the foregoing hourly rates and related fees incurred, the Firm will charge the Debtor for all costs and expenses incurred at actual cost. The Firm may incur reasonable and necessary costs and expenses in the normal course of performing the engagements. Costs and expenses commonly include, but are not limited to, mileage, parking, business meals while working at the Debtor's office, express mail and other delivery fees. All costs and expenses

ASH 52257096v6

shall be subject to Court approval pursuant to the Compensation Procedures.

13. The Firm will strive to perform services in a most expeditious and comprehensive fashion. The Firm will communicate the project status and direction routinely to the Debtor and the CRO, and immediately identify any issues and/or roadblocks that could impact the project's cost or timeline.

14. The Firm has not received, and will not require, any retainer from the Debtor for the present engagement.

15. Notwithstanding anything to the contrary in the Agreement, the Debtor shall pay the Firm the compensation set forth above based upon the submission of monthly invoices by the Firm. As further discussed below, the Firm shall file with the Court reports of compensation earned and expenses incurred on a monthly basis (the "Compensation Reports," and each, a "Compensation Report"). Such reports shall contain summary charts which describe the time incurred and services provided, identify the compensation earned by each Director and staff employee provided, and itemize the expenses incurred. The Firm will nonetheless maintain records (in summary format) of its services rendered for the Debtor in six minute increments, including reasonably detailed descriptions of those services and the individuals who provided those services. All compensation shall be subject to review by the Court in the event an objection is filed. The compensation provided for in the Agreement shall constitute full payment for the services to be rendered to the Debtor by the Firm, Ekman, and any other personnel the Firm shall provide to render the services contemplated in this Application.

16. As set forth in the Application, the Debtor seeks approval of the Application pursuant to sections 105 and 363 and requests approval of the following compensation procedures (the "Compensation Procedures"): The Firm shall file the Compensation Reports with the Court on a monthly basis, and serve such reports on the U.S. Trustee, counsel for MGG, counsel to any official committees that may be appointed, and any other party requesting special notice (collectively, the "Notice Parties"), as detailed herein and in the Proposed Order. The Notice Parties shall have 21 days after the date each Compensation Report is served to objection to such Compensation Report. Any compensation and expenses that are the subject of any Compensation

1   Report shall be subject to Court review only in the event an objection is timely filed.

2         17.    I believe the foregoing fees, compensation, and related procedures described herein

3   are reasonable and justified under the circumstances.

4         18.    Jigsaw is a boutique restructuring and turnaround firm that provides interim

5   management, advisory, board, and fiduciary services to middle-market companies that are in need

6   of operational, financial, and strategic solutions as they navigate through challenging situations,

7   including restructurings, recapitalizations, bankruptcies, distressed sales and orderly wind-downs.

8   Jigsaw provides management and various types of advisory services, including restructuring and

9   turnaround services, transaction advisory services, and corporate finance and capital advisory

10  services to companies across a broad spectrum of industries, with a focus on the wine industry.

11        19.    As noted above, the present engagement will be led by Ekman, and supported by

12  other professionals at Getzler and/or Jigsaw, as may be required. Ekman is highly qualified to

13  render the services contemplated in the Application.

14        20.    Ekman is a successful winery, tech, and e-commerce manager and CEO with

15  substantial board experience.  Ekman brings decades of expertise in business development,

16  profitable growth, successful turnarounds, and restructuring projects in the wine industry.

17  Successful restructuring projects include B.R. Cohn Winery, Crushpad Inc., Cosentino Winery,

18  Bounty Hunter Wine, and the restructuring and re-start of Wine.com, the largest eCommerce

19  company in the wine industry.  Ekman provides his clients with a unique and powerful

20  combination of financial acumen, creative strategic thinking, operations management,

21  restructuring and turnaround expertise.  He is a managing director at Jigsaw, and since 2012 has

22  provided Jigsaw's clients with interim management expertise.

23        21.    A summary overview and qualifications of the Firm and its professionals is

24  attached hereto as Exhibit 2.

25        22.    Even though the Debtor is not seeking to retain the Firm or me pursuant to section

26  327 of the Bankruptcy Code, I desire to make the following assertions:  To the best of my

27  knowledge and belief, insofar as I have been able to ascertain after due inquiry, and as is disclosed

28  herein, none of the managing directors or employees of the Firm is related to the Debtor, its

creditors, other parties in interest, the United States Trustee for the Northern District of California, or anyone employed in the Office of the United States Trustee for such district, or holds or represents any interest adverse to any such party except that the Firm and its professionals are connected to the Debtor by virtue of the Agreement and the engagement proposed in the Application. To the extent the Firm may represent, or have represented, any other of the Debtor's creditors or other parties in interest or interests adverse to such creditors or other parties in interest, such representation has been or is in matters unrelated to this chapter 11 case.

23. In connection with the preparation of this Declaration, the Firm conducted a review of its professional contacts with the Debtor, its affiliates, and the Debtor's known secured creditors, general unsecured, and other parties in interest (the "Interested Party List").

24. The Firm reviewed the Interested Party List to determine whether the Firm and/or its affiliates have any connections to the individuals and entities on the Interested Party List. The Firm then reviewed the results of the search. Pursuant to the results of the conflicts search, I represent that none of the services that were or will be provided in the course of other engagements (a) is connected in any way to this chapter 11 case, (b) will impact or conflict with the rights of the Debtor in this case, or (c) will compromise the Firm's or my ability to provide services in this case.

25. I had prior professional relationship with Jay Conway, principal of Conway Beverage/Elite Brands, when he was an executive at Cameron Hughes Wine Co. and I was the fiduciary and receiver of the same company.

26. It should be understood that the Firm's present or former clients and their affiliates, officers, directors, principal shareholders, and their respective affiliates may have had relationships with parties in interest in this case of which the Firm was not informed or, subsequent to the performance of the Firm's services, may have developed relationships with such parties of which the Firm or I are unaware.

27. To the best of my knowledge, information, and belief, other than as set forth herein, the Firm: (a) has no connection with the Debtor, its creditors, its direct and indirect owners, other parties in interest, or the attorneys or accountants of any of the foregoing, or the Office of the

ASH 52257096v6

United States Trustee for the Northern District of California or any person employed in the Office of the U.S. Trustee; and (b) does not hold any interest adverse to the Debtor or its estate, except as set forth above.

28.     If any new material facts or relationships are discovered or arise, the Firm will provide the Court with a supplemental declaration disclosing, among other things, any new potential conflicts among the Debtor, the Firm, me, or other significant parties in interest.

29.     The compensation arrangement provided for in the Application and the Agreement is consistent with and typical of arrangements entered into by the Firm and other restructuring consulting firms for similar services for clients such as the Debtor.

30.     The Firm is well qualified and able to represent the Debtor in a cost effective, efficient, and timely manner.  The Firm is willing to act on behalf of the Debtor and to subject itself to the jurisdiction and supervision of the Court.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on October 31, 2022, in Lafayette, California.

William R. Brinkman

# EXHIBIT 1



October 28, 2022

Mr. Don Yannias
Chairman and President
2805 Spring Mountain Rd.
St. Helena, CA 94574

Dear Don:

This letter confirms that Spring Mountain Vineyard ("SMV" or the "Company") has requested Jigsaw Advisors LLC ("Jigsaw") to act as interim manager providing outside winery and vineyard operations and management services. This Agreement supersedes any prior arrangement entered into prior to SMV filing for protection under Chapter 11 of Title, 11, United States Bankruptcy Code, and the effective date of this agreement is as-of September 29, 2022, or the petition date. Jigsaw's retention is subject to approval by the Bankruptcy Court.

The Company has retained Jigsaw pursuant to the following:

1. **Scope of Services**. SMV is retaining Jigsaw to provide interim management services, and specifically winery and vineyard operations and management services. Peter Ekman, a Jigsaw Managing Director, will provide day-to-day management services. While it is not anticipated that any other Jigsaw professionals will be utilized in this engagement, all Jigsaw professionals, including those preparing Chapter 11 fee applications, shall be independent contractors of the Company.

   Pursuant to and except as limited by the terms of this Agreement, Jigsaw shall be authorized at the direction of the President and the Chief Restructuring Officer to:
   - Oversee and manage the day-to-day operations of the winery and vineyards.
     i. Responsible for cost, effectiveness, efficiency of winey operations, and to assess and implement improvements.
     ii. Manage work and deliverables of winery and vineyard employee teams in order to control priorities and output and to manage costs.
     iii. Implement revenue enhancements and sales and marketing improvements in order to maximize the top line.
     iv. Evaluate and implement cost reductions and process improvements to maximize short-term cash flow.
     v. Analyze inventory and prepare and implement inventory sell-through plans and forecasts.
     vi. Manage overall sales process of wine case goods through all channels.

vii. Prepare and analyze all cash flow improvement initiatives related to winery and vineyard operations.

- Manage the accounting and back-office teams and assist the CRO team with financial reporting and analyses necessary to support restructuring and Chapter 11 process.
  i. Oversee and manage the in-house accounting staff and outsource finance team.
  ii. Implement required accounting and reporting processes, timelines, and deliverables.
  iii. Produce meaningful financial analysis and reports to allow management to make informed operating and restructuring decisions.
  iv. Assist as requested by the CRO to support the updating of financial forecasts and projections, including 13-week cash flow forecasting, CAPEX expenditure analysis, and annual financial planning.

2. **Engagement Fees.** In consideration for the services rendered by Jigsaw hereunder, the Company shall pay Jigsaw the following fees.

   Generally, our professional fees are determined by the number of hours expended multiplied by the standard hourly billing rates set forth in the below schedule:

   |  | Standard Hourly Rates: | | |
   |---|---|---|---|
   | Partners/Managing Directors | $495 | - | $575 |
   | Directors | $275 | - | $375 |
   | Associates | $150 | - | $225 |

   Peter Ekman's standard hourly rate is $550 per hour.

   All costs and expenses incurred will be charged at actual cost. Jigsaw may incur reasonable and necessary costs and expenses in the normal course of performing the engagement. Costs and expenses commonly include, but are not limited to: mileage, parking, business meals while working at the Company's office, express mail, and other delivery fees. All costs and expenses are subject to Court approval.

   We will submit monthly invoices to the Company detailing accrued advisory fees and costs.

   We have not received, and we will not require, a security retainer for our services to the Company in the Chapter 11 case.

   Payments to be made via wire transfer to the Jigsaw account as follows:

Case: 22-10381   Doc# 84   Filed: 10/31/22   Entered: 10/31/22 18:23:46   Page 26 of 48

Bank name: Wells Fargo N.A.
Recipient name: Jigsaw Advisors LLC
Routing number: 121000248
Account number: 3675460335

3. **Liability.**  As part of the consideration for Jigsaw to furnish services to the Company pursuant to terms of this Agreement, Jigsaw's liability, and that of its members, employees, consultants, and representatives, shall be limited to the amount of Jigsaw's fees and expenses allowed by the bankruptcy court in this case, except if Jigsaw is found to have acted with willful misconduct or gross negligence.

4. **Enforceability.**  The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provisions of this Agreement, which shall remain in full force and effect.

5. **Reliance on Information:**  Jigsaw will rely on information provided by the Company. Jigsaw will deem and treat information received from the Company as confidential, except for such information that is filed with the court, was previously made public, or was authorized by the Company to be made public.

6. **Entire Agreement.**  This Agreement may not be amended or modified except in writing signed by each of the parties hereto and shall be governed by and construed in accordance with the laws of the State of California. To the extent permitted by law, each of the parties hereto expressly waives all right to trial by jury in any action or proceeding arising out of this Agreement. This Agreement incorporates the entire understanding of the parties with respect to the subject matter hereof and supersedes all previous agreements should they exist with respect thereto and shall be binding upon and inure to the benefit of the Company, Jigsaw, and their respective successors, assigns, heirs and personal representatives.

**(SIGNATURE PAGE TO FOLLOW)**

Case: 22-10381   Doc# 84   Filed: 10/31/22   Entered: 10/31/22 18:23:46   Page 27 of 48

026

If the foregoing correctly sets forth the understanding and agreement between Jigsaw and the Company, please so indicate in the space provided below, whereupon this letter shall constitute a binding agreement as of the effective date, September 29, 2022.

Very truly yours,

JIGSAW ADVISORS, LLC

By: _____
Name:    William R. Brinkman, Partner
Date:    October 28, 2022

Agreed and Accepted:

SPRING MOUNTAIN VINEYARD

By: _____
Name:    CONSTANTINE S. YANNIAS
Date:    October **31** , 2022

# EXHIBIT 2



# JIGSAW ADVISORS LLC

Restructuring, Bankruptcy & Interim Management Services

## Summary Overview and Qualifications

**October 2022**

# Overview

Jigsaw Advisors LLC ("Jigsaw") is a boutique restructuring and turnaround firm that provides interim management, advisory, board and fiduciary services to middle-market companies that are in need of **operational, financial and strategic solutions** as they navigate through challenging situations, including restructurings, recapitalizations, bankruptcies, distressed sales and orderly wind-downs.

JIGSAW
ADVISORS

# What We Do

**Restructuring & Turnaround Services**

- Crisis & interim management services
- Fiduciary services (i.e., board leadership, assignee, and receiver specialists)
- Financial advisory, cash flow management, operational improvement

**Transaction Advisory**

- Sell-side sale processes, banking advisory, and § 363 sales
- Fairness opinions and transaction analyses
- Problem-solving strategies (both in-court and out-of-court)

**Corporate Finance & Capital Advisory**

- Balance sheet optimization and restructuring
- Sourcing and structuring of debt capital
- Strategic planning for long-term financing needs

JIGSAW ADVISORS

030

3

# Select Recent Assignments

- **Winery & Vineyard** – Provided operations management advisory services to a Napa winery with extensive land holdings to stabilize, evaluate, and restructure operations as part of an organization-wide restructuring.
- **Hospitals & Healthcare Company –** Assumed interim CFO role as part of a complex reorganization and strategic sales of assets of an $800 million healthcare company as part of a Chapter 11 proceeding.
- **Vineyard & Winery –** Retained as president and chairman of a Napa Valley vineyard and winery the successfully used Chapter 11 to reorganize its balance sheet, monetize assets, and settle $20+ million of claims.
- **Outdoor Retail & Adventure Travel Company –** Acted as manager and fiduciary of a leading eCommerce retailer of outdoor goods and worldwide adventure travel as part of an out-of-court asset sale process.
- **Multifamily Home Developer –** Appointed officer and independent board manager of a $1.2 billion developer of apartments tasked to plan and execute an orderly wind-down, to resolve economic disputes, and to dissolve the entities.
- **Négociant Winery –** Acted as officer and fiduciary while operating, marketing and successfully selling as a going concern a large négociant wine company.
- **Winery & Vineyard –** Acted as CRO to a Sonoma County wine company that successfully restructured, recapitalized, and confirmed a Plan of Reorganization while in Chapter 11.
- **Craft Brewery –** Appointed as receiver and fiduciary responsible for operating, marketing for sale, and ultimately selling a 20-year-old craft brewing company as part of a stipulated receivership with the company's secured lender.
- **FinTech SaaS Software Company –** Acted as interim CFO and financial advisor to an industry leading software provider to banks and credit unions as the company navigated an ownership dispute/dissolution action involving a highly profitable, $100M+ revenue company.
- **Consumer Products Company –** Acted as manager and fiduciary to the leading U.S. company that designs and distributes premier, specialized barbeque and pizza products with a dozen brands and with 80+ patents.


JIGSAW
ADVISORS

031

4

# Select Recent Assignments

- **Winery & Vineyard** – Acted as CRO of a wine company as it successfully restructured $30+ million of bank debt and improved operating margins, inventory management, and cash flow.
- **Grocery/Retail Company** – Served as CRO, restructuring advisor and investment banker to a $120 million specialty grocer that was sold via a 363 sale while in Chapter 11.
- **Medical Device Company** – Assumed independent board member role of venture backed orthodontics devices company to lead a recapitalization and sale process of the 16-year-old company.
- **Assisted Living Care Company** – Retained as interim CEO and board member of a RCFE facing falling census, a cash crunch and broken balance sheet, and litigation claims. Managed the sale of assets to a strategic buyer, and settled all litigation claims in an out-of-court process.
- **Airline Industry Software Company** – Acted as interim CFO and CRO while restructuring and recapitalizing the largest travel wholesale company in the U.S. Successfully managed a sale process involving a strategic recapitalization and structuring of a successful management buyout.
- **GPS Device Manufacturer** – Served as restructuring advisor to a $600 million designer/manufacturer of navigation devices. Company performance was stabilized and sold to a large contract manufacturer.
- **FinTech SaaS Software Company** – Acted as advisor to the board of directors and as interim CFO to an industry leading software provider to banks and credit unions as the company navigated an ownership dispute/dissolution action involving a highly profitable, $100M+ revenue company.
- **Staffing & Recruiting Software Company** – Served as officer and fiduciary while successfully managing the going-concern sale of assets of the leading software solution and marketplace for recruiters to a strategic buyer.
- **Casual Dining Chain** – Acted as CRO and financial advisor to a buffet-style restaurant chain with 30+ locations as part of a Chapter 11 process.


JIGSAW ADVISORS

# Standard Costs & Rates

- Standard rates are as follows:

| | Standard Hourly Rates: | | |
|---|---|---|---|
| Partners/Managing Directors | $495 | - | $575 |
| Directors | $275 | - | $375 |
| Associates | $150 | - | $225 |

- Fixed fee arrangements may be structured when the scope of the engagement can be reasonably estimated, and success fee arrangements may be structured when success and outcomes can be adequately defined.

**JIGSAW ADVISORS**

033

6

# Bill Brinkman

Bill Brinkman is the founder and a partner at Jigsaw Advisors, and he has been fixing troubled companies and managing turnaround situations since 1992. Bill has served as financial advisor, CRO, assignee, and interim CEO/CFO to companies both in and out of bankruptcy court, and he has he has acted as court appointed Receiver. His turnaround experience spans a wide range of industries including: software & technology, manufacturing, construction, industrials, retail & restaurants, food & beverage, agriculture, real estate, aerospace, security alarm, and distribution companies.

Notable recent assignments that Bill recently completed include:

- Interim CFO and board advisor to an $800M healthcare provider.
- Interim CFO and advisor to a $100M+ SaaS in the FinTech sector.
- President and chairman of a wine company that restructured, settled claims and sold its assets as part of a Chapter 11 proceeding.
- CEO and fiduciary of a regional craft brewery sold as a going concern entity in less than 60 days as part of a stipulated receivership.
- Interim CFO and CRO of a $1.6B international air travel consolidator that faced a dire cash flow  position and faced substantial litigation. Company was recapitalized and sold via a management buyout.
- Receiver of a negociant winery whose assets were sold to a strategic buyer in less than 90 days from the start of the receivership.
- Interim CEO of a troubled assisted living care co. facing a cash crunch and mounting litigation and that was sold to a strategic buyer.
- CRO to a troubled winery & vineyard as it successfully restructured operations and $30+ million of bank debt in an out-of-court process.
- CRO and investment banker to regional grocery chain as the company restructured its operations, its broken balance sheet and completed a sale transaction via section 363 of the bankruptcy code.

Prior to Jigsaw, Bill worked as a restructuring and turnaround professional at Nightingale & Associates, Baymark Strategies, and Coopers & Lybrand, where he provided corporate recovery and restructuring services to large and middle-market companies. Bill was graduated Magna Cum Laude from Michigan State University with a BA in Accounting, and he earned an MBA from the University of Chicago.  Bill, his wife and two children reside in Lafayette, CA.


JIGSAW ADVISORS

Case: 22-10381   Doc# 84   Filed: 10/31/22   Entered: 10/31/22 18:23:46   Page 36 of 48

# Peter Ekman

Peter Ekman is a successful winery, tech and e-commerce CEO with substantial board experience. Peter brings decades of expertise in business development, profitable growth, successful turnarounds, and restructuring projects in the wine industry. Successful restructuring projects includes B.R. Cohn Winery, Crushpad Inc., Cosentino Winery, Bounty Hunter Wine, and the restructuring and re-start of Wine.com, the largest eCommerce company in the wine industry. Peter provides his clients with a unique and powerful combination of financial acumen, creative strategic thinking, operations management, restructuring and turnaround expertise. Peter is a managing director at Jigsaw Advisors, and since 2012 he provided Jigsaw's clients with interim management expertise.

Born and raised in Sweden, Peter started his career as the first trainee for Nestle in Europe followed by eight successful years in finance and sales with Procter & Gamble in Europe. Peter relocated to the Bay Area in 1997 where he started in the wine industry, spending five years at Louis Vuitton Moet Hennessy (LVMH) in Napa and San Francisco. Since then, Peter has held C-suite positions at cutting-edge wine companies including roles as turnaround chairman & CEO at Bounty Hunter Wine, chief business development officer at Vivino, restructuring CEO of Crushpad, and turnaround CEO of Wine.com.

Peter received his B.Sc. in Economics and Finance from the University of Orebro, Sweden and is fluent in English, Swedish, Norwegian, and Danish. He lives in San Rafael, CA with his teenage daughters, and when he's not working, restructuring distressed companies, or starting new companies, he spends time on his bike.

# Yan Guan-Tomimoto

Yan Tomimoto has over 20 years of experience as an advisor to, and manager of, numerous real estate investment and development companies. She has served as the EVP of capital markets at a prominent Central Valley based real estate development company, and she has successfully transacted over $1.5 billion of project fundings and capitalizations. Yan's recent roles include:

- Managed the asset sale, disposition, and wind-down of a software company in the security compliance industry.
- Managed the acquisition, renovation and disposition of over 2,500 units of apartments in Reno, Denver, Albuquerque, Phoenix and various counties in California.
- Managed the sell-side efforts of the intellectual property of a large SaaS software company in technology staffing space as part of assignee sale process and orderly wind-down.
- Oversaw the development of seven ground-up apartment projects with over 970 units, a 120,000 SF self-storage facility, six single-family subdivisions with over 200 homes, and the disposition of three entitled land projects in Northern California.
- Monitor each project's cash flow, capital improvements progress, update investors/lenders on project progress, update project's potential value, prepare quarterly financial reports, capital call and cash distributions to investors pursuant to the operating agreements.
- Managing the day-to-day operations of a $150 million regional homebuilder which included five single-family subdivisions and a portfolio of entitled and unentitled land while in Chapter 11 bankruptcy.
- Analyzed the portfolio of a mortgage fund, and prepared a disposition plan to monetize the mortgage notes as part of sale and wind-down in Chapter 11.

Recently, Yan managed the ABC processes for five financially distressed operating companies where she successfully sold the companies as going-concern entities. Since 2008 Yan has provided real estate consulting services focused on acquisitions and asset management, and she has restructured over $1 billion of debt. She formerly worked at Burnham Pacific (Retail REIT) in Los Angeles, Legacy Partners (Commercial Developer) in Foster City, and Reynen and Bardis Communities (Home Builder) in Sacramento. Yan received her degree in political science and business administration from the UCLA. She is fluent in both Mandarin and Cantonese, and she resides in Danville with her husband and son.


JIGSAW ADVISORS

036

9

# Contact Us

Bill Brinkman
Partner
Jigsaw Advisors LLC

bill.brinkman@jigsawadvisors.com
(415) 218-3439

Jigsaw Advisors, LLC
3581 Mt. Diablo Blvd., Suite 215
Lafayette, CA 94549

www.jigsawadvisors.com

**JIGSAW**
**ADVISORS**

037

10

# EXHIBIT 3

1  Victor A. Sahn (CA Bar No. 97299)    _
   *victor.sahn@gmlaw.com*
2  Mark S. Horoupian (CA Bar No. 175373)
   *mark.horoupian@gmlaw.com*
3  Steven F. Werth (CA Bar No. 205434)
   *steven.werth@gmlaw.com*
4  Greenspoon Marder LLP
   a Florida limited liability partnership
5  333 South Grand Ave., Suite 3400
   Los Angeles, CA 90071
6  Telephone: 213.626.2311
   Facsimile: 213.954.771.9264
7

8  Attorneys for Debtor and Debtor in Possession
   Spring Mountain Vineyard Inc.

9              **UNITED STATES BANKRUPTCY COURT**

10              **NORTHERN DISTRICT OF CALIFORNIA**

11                  **SANTA ROSA DIVISION**

| | |
|---|---|
| 12 In re: | Case No. 1:22-bk-10381 |
| 13 SPRING MOUNTAIN VINEYARD INC., a Delaware corporation, | Chapter 11 |
| 14 | **ORDER APPROVING APPLICATION FOR ORDER AUTHORIZING DEBTOR TO EMPLOY AND RETAIN JIGSAW ADVISORS LLC TO PROVIDE OUTSIDE WINERY OPERATIONS AND MANAGEMENT SERVICES** |
| 15 Debtor. | |
| 16 Federal EIN: 36-3844911 | |
| 17 | [11 U.S.C. §§ 105, 363(b)] |
| 18 | [No Hearing Required] |
| 19 | |

20          On October 31, 2022, the Debtor filed its *Application For Order Authorizing Debtor to*

21  *Employ and Retain Jigsaw Advisors LLC to Provide Outside Winery Operations and Management*

22  *Services* [Dkt. No. ___] (the "Application").[1]

23          This Court having considered the Application, all papers and documents submitted in

24  support of the Application, including, but not limited to, all declarations and exhibits thereto, and

25  the record in this case; and this Court having jurisdiction to consider the Application and the relief

---

27  [1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Application.

*GREENSPOON MARDER LLP*
*333 SOUTH GRAND AVENUE, SUITE 3400*
*LOS ANGELES, CALIFORNIA 90071*
*TEL 213.626.2311 • FAX 213.629.4520*

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1   requested therein; and due and proper notice of the Application having been provided to all

2   necessary parties, and it appearing that no other or further notice need be provided; and the Court

3   having found and determined that the relief sought in the Application is in the best interests of the

4   Debtor, its estate, creditors, and all other parties in interest, and that the legal and factual bases for

5   approval of the Application establish just cause for the relief granted herein; and good cause

6   appearing therefor, it is hereby **ORDERED** as follows:

7       1.      The Application is APPROVED in its entirety.

8       2.      The engagement agreement, dated October 28, 2022, a copy of which is attached to

9   the declaration of William R. Brinkman that accompanies the Application as Exhibit 1 (the

10  "Agreement"), is APPROVED.

11      3.      The Debtor is authorized to employ and retain Jigsaw Advisors LLC (the "Firm" or

12  "Jigsaw") pursuant to sections 105(a) and 363(b) to provide outside winery operations and

13  management services, effective as of September 29 ,2022 (the "Petition Date"), pursuant to the

14  terms and conditions in the Agreement, as the same may be supplemented or clarified by the terms

15  and conditions in the Application and this Order.

16      4.      The Firm, Peter Ekman. and any other personnel are authorized to rendered the

17  Services, and any other services as set forth in the Application, for the Debtor on the terms and

18  conditions set forth in the Agreement, the Application, and this Order.

19      5.      The Firm and its affiliates shall not act as financial advisor, claims agent, claims

20  administrator, or investor/acquirer in connection with the chapter 11 case.

21      6.      No principal or employee of the Firm and its affiliates shall serve as a director of

22  the Debtor during the pendency of the chapter 11 case.

23      7.      Subject to and consistent with any cash collateral stipulations or orders, cash

24  collateral usage, post-petition financing, or related budgets approved by the Court, the Firm shall

25  be compensated for its services and reimbursed for any related expenses in accordance with the

26  rates (as may be adjusted from time-to-time) and disbursement policies as set forth in the

27  Application, the Brinkman Declaration, the Agreement, and any other applicable Orders of this

28  Court.

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

8.      The Compensation Procedures are APPROVED.

9.      Notwithstanding anything to the contrary in the Agreement, the Debtor shall pay the Firm the compensation set forth in the Application based upon the submission of monthly invoices by the Firm.  The Firm shall file the Compensation Reports with the Court on a monthly basis, and serve such reports on the U.S. Trustee, counsel for MGG, counsel to any official committees that may be appointed, and any other party requesting special notice (collectively, the "Notice Parties").  The Notice Parties shall have 21 days after the date each Compensation Report is served to object to such Compensation Report.  Any compensation and expenses that are the subject of any Compensation Report shall be subject to Court review only in the event an objection is timely filed.

10.     All compensation and reimbursement due to, and other rights of the Firm in accordance with the Agreement, as may be modified by this Order, shall be treated and allowed (subject to the compensation review procedures identified in this Order) as administrative expenses in accordance with section 503 of the Bankruptcy Code and shall be paid in accordance with the Agreement, the Application, and this Order.

11.     To the extent that there may be any inconsistency between the terms of the Application, the Brinkman Declaration, or the Agreement, on the one hand, and this Order, on the other hand, the terms of this Order shall govern.

12.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

13.     The Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this Order.

14.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the Agreement, the Application, or the implementation, interpretation, or enforcement of this Order.

**END OF ORDER**

3

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 333 South Grand Avenue, Suite 3400, Los Angeles, CA 90071.

A true and correct copy of the foregoing document entitled (*specify*): **APPLICATION FOR ORDER AUTHORIZING DEBTOR TO EMPLOY AND RETAIN JIGSAW ADVISORS LLC TO PROVIDE OUTSIDE WINERY OPERATIONS AND MANAGEMENT SERVICES; DECLARATIONS OF CONSTANTINE S. YANNIAS AND WILLIAM R. BRINKMAN IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) October 31, 2022 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) October 31, 2022 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) October 31, 2022, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 31, 2022 | Cheryl Caldwell | */s/Cheryl Caldwell* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

CC 52262618v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

# 1. <u>SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")</u>

Dean C. Burnick on behalf of Interested Party Mt. Hawley Insurance Company **(RSN)**
dcb@proughlaw.com

Jacquelyn H. Choi on behalf of Creditor Napa County Treasurer-Tax Collector **(RSN)**
jacquelyn.choi@rimonlaw.com, docketing@rimonlaw.com

Mark S Horoupian on behalf of Debtor Spring Mountain Vineyard Inc.
mark.horoupian@gmlaw.com, cheryl.caldwell@gmlaw.com

Steve Ma on behalf of Creditor MGG California, LLC
sma@proskauer.com

Jeff J. Marwil on behalf of Creditor MGG California, LLC
jmarwil@proskauer.com

Office of the U.S. Trustee / SR
USTPRegion17.SF.ECF@usdoj.gov

Elvina Rofael on behalf of U.S. Trustee Office of the U.S. Trustee / SR
elvina.rofael@usdoj.gov, Katina.Umpierre@usdoj.gov,GemMil.Langit@usdoj.gov

Victor A. Sahn on behalf of Debtor Spring Mountain Vineyard Inc.
victor.sahn@gmlaw.com, Karen.Files@gmlaw.com

Phillip John Shine on behalf of U.S. Trustee Office of the U.S. Trustee / SR
phillip.shine@usdoj.gov

Michael St. James on behalf of Interested Party Arcade Capital, LLC **(RSN)**
ecf@stjames-law.com

Ashley M. Weringa on behalf of Creditor MGG California, LLC
aweringa@proskauer.com

Steven F. Werth on behalf of Debtor Spring Mountain Vineyard Inc.
steven.werth@gmlaw.com, Patricia.Dillamar@gmlaw.com

Peter J Young on behalf of Creditor MGG California, LLC
pyoung@proskauer.com

CC 52262618v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                   **F 9013-3.1.PROOF.SERVICE**

**SERVED BY EMAIL AND REGULAR MAIL**

**Secured Creditor**
Imperial PFS aka IPFS
49 Stevenson St. #127
San Francisco, CA 94105-2909
(877) 687-9826
Lisa Chandler, Litigation and Bankruptcy
Recovery Manager
lisa.chandler@ipfs.com

**Largest Unsecured Creditors**
Allen Group
Attn: Timothy Allen, CPA - Managing Partner
120 Stony Point Road, #230
Santa Rosa, CA 95401
(707) 528-3860
tim@allenwine.com
Tim@allengroupllp.com
Brent Garrison
Brent@allengroupllp.com

Bartelt Engineering
Attn: Paul Bartelt
1303 Jefferson St #200B
Napa, CA 94559
(707) 258-1301
paulb@barteltengineering.com

Belkorp AG, LLC
Attn: Laura Correll, Accounting
2413 Crows Landing Rd
Modesto, CA 95358
(209) 205-3706
ar@belkorpag.com
AR@BelkorpAg.com
ldunhouse@belkorpag.com

Brown's Auto Parts
Attn Dan Beltramai, Owner
1218 Main St.
Saint Helena, CA 94574-1901
(707) 963-3638
brownsauto169@gmail.com

Castino Restaurant Equipment And Supply
50 Utility Ct.
Rohnert Park, CA 94928-1659
(707) 585-3566
sales@castinosolutions.com

Central Valley
~~Attn: Gerry Cruz, Accounting Mgr.~~
~~1100 Vintage Avenue.~~
~~Saint Helena, CA 94574~~
~~707 261-7900~~
~~gerryc@central-valley.com~~
**See address below per Gerry Cruz, Actg. Mgr.**

Central Valley
Administrative Offices
1804 Soscol Ave., #205
Napa, CA 94559
Attn: Gerry Cruz, Accounting Mgr.
(707) 261-7900
gerryc@central-valley.com

Chubb Group of Insurance Companies
P.O. Box 777-1630
Philadelphia, PA 19175-0001
(800) 372-4822
**Returned – Box Closed**

Conway Beverage Group, LLC
Dba: Elite Brands
Elite Brokerage
3238 Old Heather Rd.
San Diego, CA 92111-7716
Attn: Mr. Jay Conway
Jayconway@elitebrands.biz

Famille Sylvain
855 Bordeaux Way #239
Napa, CA 94558-7549
(707) 492-3308
contactusa@famillesylvain.com

Tonnellerie Sylvain
855 Bordeaux Way
Napa, CA 94558
(707) 492-3308
contactusa@famillesylvain.com

Francois Freres USA Inc.
1403 Jefferson St.
Napa, CA 94559-1708
(707) 294-2204
office@francoisfreresusa.com

CC 52262618v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

Case: 22-10381    Doc# 84    Filed: 10/31/22    Entered: 10/31/22 18:23:45    Page 46 of
48

F 9013-3.1.PROOF.SERVICE

julie@francoisfreresusa.com
accounting@francoisfreresusa.com
assistant@francoisfreresusa.com

G3 Enterprises Inc.
(Tapp Labels)
580 Gateway Dr.
Napa, CA 94558
(707) 252-8300
jeff.licht@tapplabel.com

Napa County Treasurer
1195 3rd St. #108
Napa, CA 94559-3035
(707) 253-4314
Dawnette.martindale@countyofnapa.org
Napa County Treasurer-Tax Collector
Bob.Minahen@countyofnapa.org
Napa County Attorney
Wendy.dau@countyofnapa.org

Napa Ford Lincoln
170 Soscol Ave.
Napa, CA 94559
(707) 255-2580
**Via Regular Mail**

Ford Motor Credit Company
National Bankruptcy Service Center
P O Box 62180
Colorado Springs CO 80962-2180
**Via Regular Mail**

Napa Valley Petroleum
P.O. Box 2670
Napa, CA 94558-0528
(707) 252-6888
kamh@napavalleypetroleum.com

Napa Valley Vintners Association
P.O. Box 141
Saint Helena, CA 94574
(707) 963-3388
Attn: Steve Tradewell, CFO
stradewell@napavinters.com

Ramondin U.S.A. Inc.
Tammy Frandsen
Finance Manager
541 Technology Way
Napa, CA 94558
(707) 944-2277
tfrandsen@ramondin.com

Stanzler Law Group
Attn: Jordan S. Stanzler
390 Bridge Pkwy #220
Redwood City, CA 94065
(650) 739-0200
Jstanzler@stanzlerlawgroup.com

Wilbur Ellis Company LLC
c/o Registered Agent Solutions Inc.
720 14th St.
Sacramento, CA 95814-1905
(707) 963-3495
KZavala@wilburellis.com
MHAMMETT@wilburellis.com

Wilbur Ellis Company LLC
975 Vintage Ave.
St Helena, CA 94574
**Via Regular Mail**

Wine Service Cooperative
1150 Dowdell Lane
Saint Helena, CA 94574
Attn: Steven Tamburelli
General Manager
Tel: (707) 963-9474
Fax: (707) 963 9359
Steve@wineservicecoop.com

Bright Event Rental
22674 Broadway # A
Sonoma, CA 95476
(707) 940-6060
Attn: Michelle Minsk, Acctg.
accountsreceivable@bright.com

CNH Capital
Dept. 1801104747435
P.O. Box 78004
Phoenix, AZ 85062
(209) 632-3931
**Via Regular Mail**

CC 52262618v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

F 9013-3.1.PROOF.SERVICE

ETS Laboratories
c/o Marjorie Burns 899 Adams Street #A
Saint Helena, CA 94574-1160
(707) 963-4806
Attn Accounts Receivable Team
ar@etslabs.cm

Matheson Tri-Gas Inc.
Dept. LA 23793
Pasadena, CA 91185
(707) 963-4307
**Via Regular Mail**

Sovos Compliance LLC
200 Ballardvale St. Bldg 1 4th Fl.
Wilmington, MA 01887
(866) 890-3970
**Via Regular Mail**

Wine Technology America
474 Walten Way
Windsor, CA 95492
(707) 703-5919
**Via Regular Mail**

Wyatt Irrigation Co.
4407 Solano Ave.
Napa, CA 94558
(707) 578-3747
Lynne Colombamo, Acct Receivable Mgr.
lynne@wyattsupply.com

**Request for Special Notice**
Alcohol & Tobacco Tax & Trade Bureau
Attn:  Daniel Paralta, Senior Counsel, Field
Operations
1436 2nd Street #531
Napa, CA 94559
**Via Regular Mail**

**Courtesy Email**

Jay B. Spievack, Esq.
Cohen Tauber Spievack & Wagner P.C.
420 Lexington Ave., Suite 2400
New York NY 10170-2499
email:  jspievack@ctswlaw.com

Joseph Vann, Esq.
Cohen Tauber Spievack & Wagner P.C.
420 Lexington Ave., Suite 2400
New York NY 10170-2499
email:  jvann@ctswlaw.com

Will Densenberger
Engel & Volkers St. Helena - Napa Valley
1111 Main Street, Suite A
St. Helena, CA 94574
(707) 302-8133
email:  will@nvwineestates.com

John C. Vaughan
Newmark Knight Frank
4675 MacArthur Court, Suite 1600
Newport Beach, CA 92660
email:  john.vaughan@nmrk.com

Mark Kasowitz:  MKasowitz@kasowitz.com

Gavin D. Schryver:  GSchryver@kasowitz.com

CC 52262618v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                      F 9013-3.1.PROOF.SERVICE

Case: 22-10381    Doc# 84    Filed: 10/31/22    Entered: 10/31/22 18:23:45    Page 48 of
48