Victor A. Sahn (CA Bar No. 97299)
  *victor.sahn@gmlaw.com*
Mark S. Horoupian (CA Bar No. 175373)
  *mark.horoupian@gmlaw.com*
Steven F. Werth (CA Bar No. 205434)
  *steven.werth@gmlaw.com*
**Greenspoon Marder LLP**
a Florida limited liability partnership
333 South Grand Ave., Suite 3400
Los Angeles, CA 90071
Telephone: 213.626.2311
Facsimile: 954.771.9264

Attorneys for Debtor in Possession,
Spring Mountain Vineyard Inc.

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SANTA ROSA DIVISION

| | |
|---|---|
| In re:<br><br>SPRING MOUNTAIN VINEYARD INC.., a Delaware corporation,<br><br>        Debtor.<br><br>Federal EIN: 36-3844911 | Case No. 1:22-bk-10381 CN<br>Chapter 11<br><br>**APPLICATION FOR ORDER AUTHORIZING DEBTOR TO EMPLOY AND RETAIN GETZLER HENRICH & ASSOCIATES LLC TO:**<br><br>**(A) PROVIDE INTERIM MANAGEMENT SERVICES;**<br><br>**(B) DESIGNATE KEVIN A. KRAKORA OF GETZLER HENRICH & ASSOCIATES LLC AS CHIEF RESTRUCTURING OFFICER; AND**<br><br>**(C) PROVIDE ADDITIONAL PERSONNEL FOR RELATED FINANCIAL AND OPERATIONAL SUPPORT SERVICES;**<br><br>**DECLARATIONS OF CONSTANTINE S. YANNIAS AND KEVIN A. KRAKORA IN SUPPORT THEREOF**<br><br>[11 U.S.C. §§ 105, 363(b)]<br><br>Date:    November 22, 2022<br>Time:    3:30 p.m.<br>Place:   U.S. Bankruptcy Court<br>           Courtroom 215<br>           1300 Clay Street<br>           Oakland, CA 94612 |

**TO THE HONORABLE CHARLES NOVACK, UNITED STATES BANKRUPTCY JUDGE, THE TWENTY LARGEST UNSECURED CREDITORS, THE OFFICE OF THE UNITED STATES TRUSTEE, AND PARTIES ENTITLED TO NOTICE:**

Pursuant to 11 U.S.C. §§ 105(a) and 363(b), Spring Mountain Vineyard Inc., a Delaware corporation, debtor and debtor in possession in the above-captioned case (the "Debtor"), hereby applies for authority to employ and retain Getzler Henrich & Associates LLC (the "Firm" or "Getzler") to (a) provide interim management services; (b) designate Kevin A. Krakora of the Firm as Chief Restructuring Officer; and (c) provide additional personnel for related financial and operational support services, *nunc pro tunc* to September 29, 2022 (the "Petition Date"), pursuant to the terms and conditions in the engagement agreement dated July 5, 2022, a true and correct copy of which is attached as Exhibit 1 to the accompanying declaration of Kevin A. Krakora (the "Krakora Declaration"), as may be supplemented by the terms and conditions in the present application (the "Application") and the proposed form of order approving this Application (the "Proposed Order"), a copy of which is attached hereto as Exhibit 2.

This Application is based on the Application, the accompanying declaration of Constantine S. Yannias (the "Yannias Declaration") and the Krakora Declaration, any exhibits thereto, notice of the Application (filed and served concurrently herewith), all facts, information, and documents that are the subject of judicial notice, and any other arguments or evidence that may be presented to the Court in support of or in connection with the Application.

# I.

## BACKGROUND

Since 1992, the Debtor has owned the Spring Mountain Vineyard in Napa County, California (the "Vineyard"). The Vineyard is the Debtor's primary asset. The Debtor runs an ongoing business with 70 employees, millions of dollars in annual sales, and relationships with dozens of suppliers and thousands of customers.

The Vineyard features approximately 135 vineyard blocks across approximately 211 acres, each with a different elevation, soil and exposure to the elements and each producing a unique and diverse grape. The Vineyard is also improved with the estate residence, two winery buildings, a

Case: 22-10381   Doc# 85   Filed: 10/31/22   Entered: 10/31/22 18:30:06   Page 2 of 53

1   tasting room, six wells, cisterns, an irrigation system, a historic barn, and other outbuildings.  The

2   Vineyard also has extensive winery caves that have been completely finished and utilized for

3   barrel storage and private events.

4         The Debtor's business consists primarily of growing grapes in its 135 vineyard blocks,

5   harvesting those grapes and pressing them into wine in casks, bottling that wine from casks, and

6   storing and selling that wine.  The Debtor's revenue comes almost entirely from the sale of wine

7   and grapes.

8         The Debtor has traditionally financed its operations through secured lending.  Prior to

9   October 2018, the Debtor had a loan secured by substantially all of the real and personal property

10  of the Debtor.  On October 11, 2018, the Debtor refinanced this debt and entered into a new

11  lending relationship.  The Debtor entered into a "Credit and Guaranty Agreement" and numerous

12  related agreements with fourteen lenders, and MGG California LLC, as administrative agent and

13  collateral agent for those lenders (collectively with MGG California LLC, "MGG"), pursuant to

14  which Debtor obtained a loan (the "Loan") in the amount of $185 million.

15        On September 29 ,2022 (the "Petition Date"), the Debtor commenced this bankruptcy case.

16  As more particularly set forth in the *Omnibus Declaration of Constantine S. Yannias in Support of*

17  *Debtor's "First Day" Emergency Motions* [Dkt. No. 26], the Debtor's bankruptcy filing was

18  brought about by a number of extraordinary events, including, but not necessarily limited to, the

19  drastic decline in tourism caused by the COVID-19 pandemic and difficulties the Debtor

20  experienced with its secured lender that negatively impacted the Debtor's operations.

21        The Debtor commenced this reorganization case to restructure its operations and debt.  The

22  Debtor believes that a successful overall reorganization will maximize the value of the Estate and

23  allow the Debtor to emerge from chapter 11 with a reorganized and viable ongoing business.

24        The Debtor continues to manage its affairs and operate its business as a debtor in

25  possessions.  No trustee or creditors' committee has been appointed in this case.

26  / / /

27  / / /

28  / / /

3

## II.

## THE DEBTOR'S RETENTION OF THE FIRM AND APPOINTMENT OF CHIEF RESTRUCTURING OFFICER

**A.     Pre-Petition and Proposed Post-Petition Scope of Services**

In February 2021, the Debtor and MGG entered into a forbearance agreement relating to the Loan.  The forbearance agreement was amended twice.  In the second amendment, dated July 2022, MGG required the Debtor to retain a Chief Restructuring Officer.  As a result, in July 2022, pursuant to an engagement agreement dated July 5, 2022 (defined above as the Agreement and attached to the Krakora Declaration as Exhibit 1), the Debtor retained the Firm as its advisor and has served in that capacity since that date.

On August 22, 2022, Kevin A.  Krakora ("Krakora"), one of the Firm's managing directors, was appointed as the Debtor's Chief Restructuring Officer ("CRO"), and has held that position since that time.  Since his appointment as CRO, Krakora has become intimately familiar with the Debtor's business operations and its revenues and expenses.  In such role, Krakora works with a team of individuals, including Peter Ekman ("Ekman") of Jigsaw Advisors LLC ("Jigsaw"), an experienced winery, tech, and e-commerce CEO.[1]

Since Krakora's installment as CRO, the Debtor has worked closely with him to restructure the Debtor's operations and improve its revenue.  In addition, since that time, Ekman has been at the Vineyard multiple days a week.  The Debtor relies on the Firm and Krakora, working together with Ekman of Jigsaw (collectively, the "Advisors") to manage daily operations at the Vineyard and render other critical services described below.

Since its retention, the Firm (working together with Ekman) has provided and, subject to

---

[1] As detailed below, the Firm and Krakora, who, as noted, have worked in conjunction with Ekman of Jigsaw, have extensive experience relevant to the engagement contemplated in this Application and, to date, have been a valuable and integral addition to the Debtor's operations.  To ensure the Debtor and its estate and creditors continue to receive the value and benefits of these professionals, concurrently herewith, the Debtor is filing a separate application to retain Jigsaw to provide outside winery operations and management services.

Case: 22-10381    Doc# 85    Filed: 10/31/22    Entered: 10/31/22 18:30:06    Page 4 of 53

order of this Court, as necessary, will continue to provide, the services delineated in the Agreement, as supplemented by this Application. Such services are divisible into two primary categories: (a) financial and operations support services, and (b) CRO services (together, the "Services").

Financial and operational support services include, but are not necessarily limited to, the following types of services:

a. Develop an initial assessment of the current situation
   i. Meet with key staff to understand status of current financial reporting
   ii. Identify open issues for completing financial statements
   iii. Develop work plan and priorities to complete financial reporting

b. Assist with completing current financial reporting and relevant analyses
   i. Implement basic accounting and reporting processes, timelines, and deliverables to management
   ii. Produce meaningful financial reports and analyses to allow management to make informed decisions

c. Assist with updated financial forecasts and projections, including 13-week cash flow forecasting, if requested

d. Identify areas for improvement in the financial and accounting organization
   i. Analyze and propose short- and long-term solutions for sufficient, relevant, and accurate reporting and controls
   ii. Implement reporting improvements, and monitor financial reporting for proper change implementation

e. In the normal course of the Firm's work and analysis, identify potential areas for future discussion and analysis, as appropriate
   i. Revenue enhancements and sale/marketing improvements
   ii. Cost reductions and process improvements
   iii. Inventory management and potential opportunistic reductions

f. Prepare initial report for the Debtor regarding preliminary findings, observations, and a plan-forward
   i. Identify concise and realistic management action items
   ii. Establish routine reporting cadence with the Debtor
   iii. Status of efforts, progress, and updates

CRO Services include, but are not necessarily limited to, the following types of services:

a. Provide Krakora to serve as CRO, appointed by the Debtor's board of directors and reporting directly to the board of directors

b. Manage and oversee the Debtor's overall resources and operations, including without limitation, budgeting, forecasting and managing cash flows, overseeing the

5

vineyard facilities and all personnel

c.  Develop, evaluate, and make recommendations in connection with business plans, restructuring options and strategic alternatives

d.  Communicate with the board of directors regarding financial performance and strategic initiatives

e.  Communicate directly with the Debtor's lender regarding financial and operational issues, including providing relevant information

f.  Identify all licenses held by the Debtor and take steps to preserve same

g.  Require the Debtor and its personnel to provide full and unfettered access to the books and records of the Debtor and all of the Debtor's personnel with knowledge of the books and records, licenses of the Debtor and financial information necessary to perform the above tasks, as agreed to by the Debtor pursuant to Annex I, ¶ 1(a) to the Agreement.

In addition to services rendered pre-petition, shortly after the Debtor's retention of Greenspoon Marder LLP ("GM") as its bankruptcy counsel on September 27, 2022, the Firm worked closely with the Debtor and GM attorneys in connection with the Debtor's bankruptcy filing, including, but not limited to, preparing a 13-week budget projection, negotiating and communicating with MGG regarding the use of cash collateral, and providing other information critical for the preparation and prosecution of the Debtor's "first day" papers and motions.

Subject to order of the Court, and consistent with and pursuant to the Agreement, the Firm will continue to provide the foregoing types of services in the context of this bankruptcy case and tailor such services as necessary to meet the Debtor's needs and ensure compliance with the Debtor's obligations in this case, and otherwise assist the Debtor and the Debtor's counsel with such tasks. Among other things, as encompassed within the Services, the Firm will:

(a) evaluate potential restructuring options;

(b) prepare any necessary chapter 11 reporting, including monthly operating reports, budget reporting and testing, and any other reporting that may be required or appropriate;

(c) prepare the Debtor's short-term cash-flow projections, including underlying assumptions;

(d) determine the appropriate amount of potential debtor-in-possession financing that may

6

be needed (if any) and the preparation of any related budgets and reporting;

(e) provide MGG necessary reports, including a weekly statement of cash flows, which will track the categories identified in the Debtor's budget (the "Budget"), weekly reconciliation of cash flow against the Budget, and a monthly listing of the Debtor's wine inventory;

(f) support the Debtor and GM with any necessary motions, including providing declarations or testimony in support of the Debtor's efforts in this bankruptcy case; and

(g) render such other services as the Debtor may request or require and which the Firm agrees to perform.

Subject to order of the Court, Krakora will provide interim management services to the Debtor and continue serving as the Debtor's CRO, and the Firm will assign additional professionals to perform other services as needed. The Firm, and Krakora, together with Jigsaw and Ekman, as well as any other additional personnel that may be necessary, will lead the Debtor's restructuring efforts and work in tandem with the Debtor's bankruptcy counsel and other professionals in this regard. The Firm and Krakora shall be authorized to perform the Services, as detailed above and in the Agreement, in a manner consistent with the business judgment rule as applicable to officers and the provisions of applicable state law and the Bankruptcy Code applicable to the obligations of persons acting on behalf of companies, subject, however, to appropriate governance by the Debtor's board of directors other governing documents and applicable state law as and when required.

The Debtor believes that the Firm's and Krakora's services described herein are vital to the success of this chapter 11 case, and the Debtor requires knowledgeable restructuring management to render such Services. As a result, the Debtor believes its retention of the Firm and Krakora is necessary, appropriate, and in the best interests of the Debtor, its Estate, and creditors. Further, the Debtor believes that the Services will not duplicate the services that other professionals, including Jigsaw, will be providing to the Debtor in this chapter 11 case. Specifically, the Firm and Krakora will carry out unique functions and will use reasonable efforts to coordinate with the Debtor's other retained professionals to avoid the unnecessary duplication of services.

7

**B.** **Compensation, Retainer, and Proposed Compensation Procedures**

Pursuant to the Agreement, dated July 5, 2022, the Firm charged the Debtor a fixed fee (the "Consulting Fee") of $25,000 per week for four months or until earlier termination in accordance with the provisions of the Agreement, which was to be paid by the Debtor in weekly $25,000 installments, plus reasonable out-of-pocket expenses incurred by the Firm. Commencing on the Petition Date, the Firm will charge the Debtor fees based on the professionals' actual hours incurred and standard hourly rates.

Subject to and consistent with any cash collateral stipulations or orders, cash collateral usage, post-petition financing, or related budgets approved by the Court, after the initial four months, which period will commence post-petition, the Firm will prepare a budget for reimbursable out-of-pocket expenses and will work with the Debtor on a mutually agreeable maximum monthly expense limit, which shall not be exceeded absent the Debtor's prior written approval.

The Firm's current standard hourly rates, subject to periodic adjustment, are as follows:

| TITLE | HOURLY RATE |
|---|---:|
| Principal / Managing Director | $595-$725 |
| Director / Specialists | $475-$695 |
| Associate Professionals | $175-$475 |

In the normal course of business, the Firm may periodically adjust its billing rates. Changes in applicable hourly rates will be noted on the invoices for the first time period in which the revised rates became effective.

Krakora's standard hourly rate is $650. The Firm will notify the Debtor of any changes to its hourly rates. The Firm provides no assurance regarding the outcome of its work and its fees are not contingent on the result of such work.

The Firm will strive to perform services in a most expeditious and comprehensive fashion, which will be dependent, in part, on the quality, sophistication, and availability of the Debtor's existing systems, personnel, processes, and reporting procedures, and the Debtor's ability to

Case: 22-10381   Doc# 85   Filed: 10/31/22   Entered: 10/31/22 18:30:06   Page 8 of 53

provide all required financial and operational information and data in a timely fashion and in the required format. The Firm will communicate the project status and direction routinely to the Debtor, and immediately identify any issues and/or roadblocks that could impact the project's cost or timeline.

To the extent that any services outside the scope of the engagement are required or requested, the extent of these services, and the additional compensation to be paid to the Firm for such services, shall be agreed upon prior to the Firm beginning to perform such services. These services will be provided subject to the parties entering into an appropriate amendment to the Agreement, which shall be subject to Court approval.

Prior to the Petition Date, the Firm received a $50,000 retainer from the Debtor. The Firm currently holds $29,856.25 of such retainer for post-petition services (the "Retainer").[2] The Firm shall apply any remaining amounts of the Retainer to allowed post-petition fees and expenses, prior to seeking final payment from the Debtor's cash flows. Any amount of this Retainer remaining after application to unpaid fees will be returned to the Debtor. Notwithstanding anything to the contrary contained in this paragraph, the Firm will be entitled to retain the unused portion of the Retainer, if any, upon the entry of an order by the Bankruptcy Court, on appropriate notice, that performance to the Firm by the Debtor remains due under the indemnification obligations set forth in the Agreement, as may be supplemented or clarified in the Application (discussed below). *See* Agreement (Exhibit 1), Annex I, ¶ 8.

Notwithstanding anything to the contrary in the Agreement, the Debtor shall pay the Firm and Krakora the compensation set forth above based upon the submission of weekly invoices by the Firm. As further discussed below, the Firm shall file with the Court reports of compensation earned and expenses incurred on a monthly basis (the "Compensation Reports," and each, a "Compensation Report"). Such reports shall contain summary charts which describe the time

---

[2] Prior to the Petition Date, the Firm compensated Jigsaw for services provided to the Debtor under the Agreement.

Case: 22-10381   Doc# 85   Filed: 10/31/22   Entered: 10/31/22 18:30:06   Page 9 of 53

incurred and services provided, identify the compensation earned by each professional and staff employee provided, and itemize the expenses incurred. The Firm will nonetheless maintain records (in summary format) of its services rendered for the Debtor in six minute increments, including reasonably detailed descriptions of those services and the individuals who provided those services. All compensation shall be subject to review by the Court in the event an objection is filed. The compensation provided for in the Agreement shall constitute full payment for the services to be rendered to the Debtor by the Firm, Krakora, and any other personnel the Firm shall provide to render the services contemplated in this Application.

The Firm and Krakora are not being employed as professionals under section 327 of the Bankruptcy Code. As a result, neither the Firm nor Krakora will be submitting any fee applications (interim or final) pursuant to sections 328, 330, or 331 of the Bankruptcy Code. Instead, as noted above, the Debtor seeks approval of the Application pursuant to sections 105 and 363 and requests approval of the following compensation procedures (the "Compensation Procedures"):

The Firm shall file the Compensation Reports with the Court on a monthly basis, and serve such reports on the U.S. Trustee, counsel for MGG, counsel to any official committees that may be appointed, and any other party requesting special notice (collectively, the "Notice Parties"), as detailed herein and in the Proposed Order. The Notice Parties shall have 21 days after the date each Compensation Report is served to objection to such Compensation Report. Any compensation and expenses that are the subject of any Compensation Report shall be subject to Court review only in the event an objection is timely filed.

No payment will be made to the Firm that is not in conformity with a cash collateral budget, in effect at the time, and approved by MGG or otherwise ordered by the Court.

The Debtor believes that the foregoing fees, compensation, and related procedures described herein are reasonable and justified under the circumstances.

## C. Indemnification Provisions

As part of the overall compensation payable to the Firm, the Agreement provides the Firm certain indemnification rights (the "Indemnification Provision"). The Indemnification Provision

Case: 22-10381    Doc# 85    Filed: 10/31/22    Entered: 10/31/22 18:30:06    Page 10 of 53

was negotiated between the Debtor and the Firm at arm's length and in good faith.

The Firm's decision to accept the proposed engagement to provide the Services to the Debtor is contingent upon their ability to be retained in accordance with the terms and conditions of the Agreement, as may be supplemented by this Application and the Proposed Order. The Firm and Krakora have indicated that they understand and accept that the terms of the Agreement, as clarified herein, and that they must be approved by the Court. Thus, they have requested that the Debtor seek this Court's approval of such matters contemporaneously with the filing of this Application.

**D.      The Firm's Superior Qualifications**

Getzler is one of the oldest and most respected names in middle-market corporate restructuring, assisting companies around the world with an approach that emphasizes rapid, pragmatic, decision making and implementation. Over more than 50 years, Getzler has developed a strong track record, assisting both underperforming and healthy companies in the middle market.

Getzler provides advisory services that includes turnarounds and workouts, interim and crisis management, bankruptcy advisory, financial restructuring and forensic/litigation support. Getzler also assists companies in achieving operational excellence through process improvement, supply chain solutions, sales and marketing effectiveness, technology advisory and transaction advisory services. While not all of Getzler's capabilities are required in this case, its breadth of services is briefly summarized on its website www.getzlerhenrich.com.

As noted above, the present engagement will be led by Krakora, and supported by other professionals at the Firm, as may be required. Krakora is highly qualified to render the services contemplated in this Application.

Krakora is a managing director of Getzler. He is a Certified Turnaround Professional with over 30 years of executive experience in corporate turnarounds, strategic consulting, financial and operational restructurings, and debtor bankruptcy situations. He has extensive experience advising both companies and senior lenders in complex debt restructurings, financings, and workouts. In addition, Krakora has served as CRO and Independent Director in many complex restructuring scenarios, including in chapter 11 bankruptcy cases. He specializes in advising and working with

11

underperforming companies to develop and implement business transformation strategies, operational and financial improvements, and turnaround plans. He has worked with financially distressed companies to address liquidity issues, improve working capital, develop cost containment programs, implement process improvements, and improve profitability. Krakora is a frequent speaker on restructurings and distressed M&A.

**E.** **The Firm is Disinterested and Not Adverse to the Estate**

To the best of the Debtor's knowledge, information, and belief, other than as set forth in the Krakora Declaration, the Firm: (a) has no connection with the Debtor, its creditors, its direct and indirect owners, other parties in interest, or the attorneys or accountants of any of the foregoing, or the Office of the United States Trustee for the Northern District of California or any person employed in the Office of the U.S. Trustee; and (b) does not hold any interest adverse to the Debtor or its estate, except that the Firm and Krakora are connected to the Debtor by virtue of the Agreement and this engagement discussed in this Application.

Although the Debtor respectfully submits that the Firm's retention is not governed by section 327 of the Bankruptcy Code, the Krakora Declaration discloses, among other things, the relationship (if any) that the Firm or Krakora have with the Debtor, its significant creditors, or other significant parties in interest known to the Firm. Based upon such disclosures, the Debtor submits that the Firm is a "disinterested person" as that term is defined by section 101(14) of the Bankruptcy Code (to the extent applicable to the Application and related engagement).

In addition, as set forth in the Krakora Declaration, if any new material facts or relationships are discovered or arise, the Firm will provide the Court with a supplemental declaration disclosing, among other things, any new potential conflicts among the Debtor, the Firm, Krakora, or other significant parties in interest.

**III.**

**BASIS FOR RELIEF REQUESTED**

As detailed above, the Debtor seeks to employ and retain Getzler Henrich, and appoint Krakora to serve as the Debtor's CRO, pursuant to section 363 and 105 of the Bankruptcy Code, *nunc pro tunc* to the Petition Date. This Court should approve the Application.

Case: 22-10381    Doc# 85    Filed: 10/31/22    Entered: 10/31/22 18:30:06    Page 12 of 53

Section 363(b)(1) provides, in relevant part, that a debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under applicable law, if a debtor's proposed use of assets pursuant to section 363(b) represents a reasonable exercise of the debtor's business judgment, such use should be approved. *See, e.g.*, *Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988) (citing *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986)); *United Retired Pilots Benefit Protection Ass'n v. United Airlines, Inc. (In re UAL Corp.)*, 446 F.3d 565, 571 (7th Cir. 2006); *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991) (noting that courts have applied the "sound business purpose" test to evaluate motions brought under section 363(b)).

Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted). *See also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task"). Notably, applications to retain financial advisory firms and related CROs have been approved under section 363, together with section 105 (and outside of sections 327, 328, and 330), on terms and conditions similar to those described in this Application, in at least one case in this District. *See, e.g.*, *In re PG&E Corporation*, Bk. Case No. 19-30088 (DM), *Order Pursuant to 11 U.S.C. §§ 363(b) and 105 Authorizing The Debtors to Employ and Retain AP Services, LLC to Provide a Chief Restructuring Officer, Deputy Chief Restructuring Officer, and Additional Personnel for the Debtors Nunc Pro Tunc to the Petition Date* [Dkt. No. 1299].

The relief requested herein is appropriate and warranted under the foregoing standard. The decision to retain the Firm and install Krakora as the Debtor's CRO, effective as of the Petition Date, represents a sound exercise of the Debtor's business judgment.

*First,* as further described above, the Firm and Krakora have extensive experience serving

Case: 22-10381   Doc# 85   Filed: 10/31/22   Entered: 10/31/22 18:30:06   Page 13 of 53

in senior officer and advisor roles for many troubled companies. The Debtor believes that Krakora, in his capacity as CRO, as well as any additional personnel who may be provided by the Firm for this engagement, will provide essential services that will benefit the Debtor and its estate and creditors. Additionally, the Firm has extensive experience in providing restructuring consulting services in reorganization proceedings and has an excellent reputation for the services it has rendered in chapter 11 cases on behalf of debtors and creditors throughout the United States.

*Second*, the Firm, together with Krakora, and working in conjunction with Jigsaw, Ekman, and the Debtor's senior management, as well as the Debtor's bankruptcy counsel, have already proven to be of invaluable assistance. Among other things, the Firm, together with Krakora and Ekman, have assisted the Debtor in its efforts to develop near-term projections, handle short-term cash management activities, evaluate strategic alternatives, and coordinate the Debtor's efforts to prepare for and operate in chapter 11, including, in connection with the negotiation of cash collateral usage.

*Third*, given the important role the Firm and Krakora will fill during this chapter 11 case, the Debtor believes the economic terms of this proposed engagement are fair, reasonable, and beneficial to the Debtor and its estate. Moreover, the Debtor understands that the compensation arrangement provided for in this Application and the Agreement is consistent with and typical of arrangements entered into by the Firm and other restructuring consulting firms for similar services for clients such as the Debtor.

In sum, the Debtor believes that the proposed engagement reflects the sound exercise of the Debtor's business judgment and is in the best interests of all parties in interest in this case. The Debtor additionally believes that the Firm is well qualified and able to represent the Debtor in a cost effective, efficient, and timely manner. The Firm has indicated a willingness to act on behalf of the Debtor and to subject itself to the jurisdiction and supervision of the Court.

## IV.

## CONCLUSION

Based on the foregoing, the Debtor respectfully request that the Court enter an order in the form attached hereto as <u>Exhibit 2</u>: (1) approving the Application; (2) approving the Agreement

14

(Exhibit 1); (3) authorizing the Debtor's retention of the Firm to provide interim management services, designate Krakora as CRO, and provide additional personnel for related financial and operational services to the Debtor, effective as of the Petition Date pursuant to sections 105 and 363 of the Bankruptcy Code, on the terms and conditions in the Agreement, as supplemented by the Application and the Proposed Order; (4) approving the Compensation Procedures and the Indemnification Provision; and (5) providing such other or further relief.

Dated:  October 31, 2022

**GREENSPOON MARDER LLP**
A Florida limited liability partnership

By: _____

Victor A. Sahn
Mark S. Horoupian
Steven F. Werth
Attorneys for Debtor in Possession,
Spring Mountain Vineyard Inc.

# DECLARATION OF CONSTANTINE S. YANNIAS[3]

I, Constantine S. Yannias, declare:

1.      I am the Chairman and President of Spring Mountain Vineyard Inc., a Delaware corporation, the debtor in possession in the above-captioned case (the "Debtor").  I have served in this capacity for the Debtor since August 1993.

2.      In my capacity as President of the Debtor, I am involved in its day-to-day operations including issues regarding financial matters, issues regarding operational concerns from the vineyard operations, sales issues and all related matters to its doing business.  I have also worked for the Debtor's principal, Mr. Safra, since approximately 1985, and am also involved in his other businesses since the start of my employment with him.

3.      I make and execute this declaration in support of the Application.

4.      Since 1992, the Debtor has owned the Spring Mountain Vineyard in Napa County, California (the "Vineyard").  The Vineyard is the Debtor's primary asset.  The Debtor's runs an ongoing business with 70 employees, millions of dollars in annual sales, and relationships with dozens of suppliers and thousands of customers.

5.      The Vineyard features approximately 135 vineyard blocks across approximately 211 acres, each with a different elevation, soil and exposure to the elements and each producing a unique and diverse grape.  The Vineyard is also improved with the estate residence, two winery buildings, a tasting room, six wells, cisterns, an irrigation system, a historic barn, and other outbuildings.  The Vineyard also has extensive winery caves that have been completely finished and utilized for barrel storage and private events.

6.      The Debtor's business consists primarily of growing grapes in its 135 vineyard blocks, harvesting those grapes and pressing them into wine in casks, bottling that wine from casks, and storing and selling that wine.  The Debtor's revenue comes almost entirely from the

---

[3] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the foregoing application to which this declaration is attached (the "Application").

1   sale of wine and grapes.

2       7.      The Debtor has traditionally financed its operations through secured lending.  Prior

3   to October 2018, the Debtor had a loan secured by substantially all of the real and personal

4   property of the Debtor.  On October 11, 2018, the Debtor refinanced this debt and entered into a

5   new lending relationship.  The Debtor entered into a "Credit and Guaranty Agreement" and

6   numerous related agreements with fourteen lenders, and MGG California LLC, as administrative

7   agent and collateral agent for those lenders (collectively with MGG California LLC, "MGG"),

8   pursuant to which Debtor obtained a loan (the "Loan") in the amount of $185 million.

9       8.      On September 29 ,2022 (the "Petition Date"), the Debtor commenced this

10  bankruptcy case.  As more particularly set forth in my prior declaration titled *Omnibus*

11  *Declaration of Constantine S. Yannias in Support of Debtor's "First Day" Emergency Motions*

12  [Dkt. No. 26], the Debtor's bankruptcy filing was brought about by a number of extraordinary

13  events, including, but not necessarily limited to, the drastic decline in tourism caused by the

14  COVID-19 pandemic and difficulties the Debtor experienced with its secured lender that

15  negatively impacted the Debtor's operations.

16      9.      The Debtor commenced this reorganization case to restructure its operations and

17  debt.  The Debtor believes that a successful overall reorganization will maximize the value of the

18  Estate and allow the Debtor to emerge from chapter 11 with a reorganized and viable ongoing

19  business.

20      10.     The Debtor continues to manage its affairs and operate its business as a debtor in

21  possessions.  No trustee or creditors' committee has been appointed in this case.

22      11.     In February 2021, the Debtor and MGG entered into a forbearance agreement

23  relating to the Loan.  The forbearance agreement was amended twice.  In the second amendment,

24  dated July 2022, MGG required the Debtor retain a Chief Restructuring Officer.  As a result, in

25  July 2022, pursuant to an engagement agreement dated July 5, 2022, which I signed on the

26  Debtor's behalf, a true and correct copy of which is attached to the Krakora Declaration as Exhibit

27  1, the Debtor retained the Firm as its advisor and the Firm has served in that capacity since that

28  date.

12. On or about August 22, 2022, I appointed Krakora as the Debtor's Chief Restructuring Officer ("CRO"), and Krakora has held that position since that time.

13. Since Krakora's installment as CRO, I have worked closely with him to restructure the Debtor's operations and improve its revenue. In addition, since that time, Ekman has been at the Vineyard multiple days a week. I rely on the Firm and Krakora (working together with Jigsaw and Ekman) to manage daily operations at the Vineyard and render other critical services described in the Application.

14. I believe that the Firm's and Krakora's services described in the Application are vital to the success of this chapter 11 case, and the Debtor requires knowledgeable restructuring management to render such Services. As a result, I, on behalf of the Debtor, believe that the Debtor's retention of the Firm, Krakora, and his team at the Firm (and working in conjunction with Jigsaw and Ekman) is necessary, appropriate, and in the best interests of the Debtor, its Estate, and creditors.

15. Since the Debtor retained the Firm and Krakora, the Debtor has paid the Firm $100,000 per month for their services.

16. As set forth in the Application and the Krakora Declaration, I, on behalf of the Debtor, am satisfied that the Firm and Krakora are highly qualified to render the services contemplated by the Application.

17. To the best of the Debtor's knowledge, information, and belief, other than as set forth in the Krakora Declaration, the Firm: (a) has no connection with the Debtor, its creditors, its direct and indirect owners, other parties in interest, or the attorneys or accountants of any of the foregoing, or the Office of the United States Trustee for the Northern District of California or any person employed in the Office of the U.S. Trustee; and (b) does not hold any interest adverse to the Debtor or its estate, except that the Firm and Krakora are connected to the Debtor by virtue of the Agreement and this engagement discussed in this Application.

18. I, on behalf of the Debtor, believe that the decision to retain the Firm and install Krakora as the Debtor's CRO, effective as of the Petition Date, represents a sound exercise of the Debtor's business judgment. First, as further described in the Application, I understand that the

18

Firm and Krakora have extensive experience serving in senior officer and advisor roles for many troubled companies. I also believe that Krakora, in his capacity as CRO, as well as any additional personnel who may be provided by the Firm for this engagement, will provide essential services that will benefit the Debtor and its estate and creditors. Additionally, I am informed that the Firm has extensive experience in providing restructuring consulting services in reorganization proceedings and has an excellent reputation for the services it has rendered in chapter 11 cases on behalf of debtors and creditors throughout the United States.

19.     Second, the Firm, together with Krakora, working in conjunction with Jigsaw, Ekman, and the Debtor's senior management, as well as the Debtor's bankruptcy counsel, have already proven to be of invaluable assistance. Among other things, the Firm, together with Krakora and Ekman, have assisted the Debtor in its efforts to develop near-term projections, handle short-term cash management activities, evaluate strategic alternatives, and coordinate the Debtor's efforts to prepare for and operate in chapter 11, including, in connection with the negotiation of cash collateral usage.

20.     Third, given the important role the Firm and Krakora will fill during this chapter 11 case, I, on behalf of the Debtor, believe the economic terms of this proposed engagement are fair, reasonable, and beneficial to the Debtor and its estate. Moreover, I understand that the compensation arrangement provided for in this Application and the Agreement is consistent with and typical of arrangements entered into by the Firm and other restructuring consulting firms for similar services for clients such as the Debtor.

21.     I, on behalf of the Debtor, also believe that the proposed fee structure, compensation, and Compensation Procedures are reasonable and justified under the circumstances.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

19

22.     For such reasons, I, on behalf of the Debtor, believe that the proposed engagement reflects the sound exercise of the Debtor's business judgment and is in the best interests of all parties in interest in this case, and that the Firm is well qualified and able to represent the Debtor in a cost effective, efficient, and timely manner.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on October 31, 2022, in Chicago, Illinois.

Constantine S. Yannias

# DECLARATION OF KEVIN A. KRAKORA[4]

I, Kevin A. Krakora, declare:

1.     I am a managing director of Getlzer Henrich & Associates LLC (the "Firm" or "Getzler").

2.     I am a Certified Turnaround Professional with over 30 years of executive experience specializing in corporate turnarounds, strategic consulting, financial and operational restructurings, and debtor bankruptcy situations.

3.     I specialize in advising and working with underperforming companies to develop and implement business transformation strategies, operational and financial improvements, and turnaround plans.  I have worked with financially distressed companies to address liquidity issues, improve working capital, develop cost containment programs, implement process improvements and improve profitability.

4.     I make and execute this declaration in support of the Application.

5.     In July 2022, pursuant to an engagement agreement dated July 5, 2022, which I signed on the Firm's behalf, a true and correct copy of which is attached hereto as Exhibit 1, the Debtor retained the Firm as its advisor and the Firm has served in that capacity since that date.

6.     On August 22, 2022, I was appointed as the Debtor's Chief Restructuring Officer ("CRO"), and have held that position since that time.  Since my appointment as CRO, I have become intimately familiar with the Debtor's business operations and its revenues and expenses. In such role, I work with a team of individuals, including Peter Ekman ("Ekman") of Jigsaw Advisors LLC ("Jigsaw"), an experienced winery, tech, and e-commerce CEO.

7.     Since my installment as CRO, the Debtor has worked closely with me to restructure the Debtor's operations and improve its revenue.  In addition, since that time, Ekman has been at the Vineyard multiple days a week.

---

[4] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the foregoing application to which this declaration is attached (the "Application").

21

8.      Since the Firm's retention, the Firm (working together with Ekman of Jigsaw) has provided and, subject to order of this Court, as necessary, will continue to provide, the services delineated in the Agreement, as supplemented by the Application. Such services are divisible into two primary categories: (a) financial and operations support services, and (b) CRO services (together, the "Services").

9.      Financial and operational support services include, but are not necessarily limited to, the following types of services:

a.      Develop an initial assessment of the current situation: (i) Meet with key staff to understand status of current financial reporting; (ii) Identify open issues for completing financial statements; and (iii) Develop work plan and priorities to complete financial reporting.

b.      Assist with completing current financial reporting and relevant analyses: (i) Implement basic accounting and reporting processes, timelines, and deliverables to management; and (ii) Produce meaningful financial reports and analyses to allow management to make informed decisions.

c.      Assist with updated financial forecasts and projections, including 13-week cash flow forecasting, if requested.

d.      Identify areas for improvement in the financial and accounting organization: (i) Analyze and propose short- and long-term solutions for sufficient, relevant, and accurate reporting and controls; and (ii) Implement reporting improvements, and monitor financial reporting for proper change implementation.

e.      In the normal course of Getzler's work and analysis, identify potential areas for future discussion and analysis, as appropriate: (i) Revenue enhancements and sale/marketing improvements; (ii) Cost reductions and process improvements; and (iii) Inventory management and potential opportunistic reductions.

f.      Prepare initial report for the Debtor regarding preliminary findings, observations, and a plan-forward: (i) Identify concise and realistic management action items; (ii) Establish routine reporting cadence with the Debtor; and (iii) Status of efforts, progress, and updates.

10.      CRO Services include, but are not necessarily limited to, the following types of services: (a) Provide for me to serve as CRO, appointed by the Debtor's board of directors and reporting directly to the board of directors; (b) Manage and oversee the Debtor's overall resources and operations, including without limitation, budgeting, forecasting and managing cash flows, overseeing the vineyard facilities and all personnel; (c) Develop, evaluate, and make recommendations in connection with business plans, restructuring options and strategic

22

alternatives; (d) Communicate with the board of directors regarding financial performance and strategic initiatives; (e) Communicate directly with the Debtor's lender regarding financial and operational issues, including providing relevant information; (f) Identify all licenses held by the Debtor and take steps to preserve same; and (g) Require the Debtor and its personnel to provide full and unfettered access to the books and records of the Debtor and all of the Debtor's personnel with knowledge of the books and records, licenses of the Debtor and financial information necessary to perform the above tasks, as agreed to by the Debtor pursuant to Annex I, ¶ 1(a) to the Agreement.

11. In addition to services rendered pre-petition, shortly after the Debtor's retention of Greenspoon Marder LLP ("GM") as its bankruptcy counsel on September 27, 2022, the Firm worked closely with the Debtor and GM attorneys in connection with the Debtor's bankruptcy filing, including, but not limited to, preparing a 13-week budget projection, negotiating and communicating with MGG regarding the use of cash collateral, and providing other information critical for the preparation and prosecution of the Debtor's "first day" papers and motions.

12. Subject to order of the Court, and consistent with and pursuant to the Agreement, the Firm will continue to provide the foregoing types of services in the context of this bankruptcy case and tailor such services as necessary to meet the Debtor's needs and ensure compliance with the Debtor's obligations in this case, and otherwise assist the Debtor and the Debtor's counsel with such tasks.

13. Among other things, as encompassed within the Services, Getzler will: (a) evaluate potential restructuring options; (b) prepare any necessary chapter 11 reporting, including monthly operating reports, budget reporting and testing, and any other reporting that may be required or appropriate; (c) prepare the Debtor's short-term cash-flow projections, including underlying assumptions; (d) determine the appropriate amount of potential debtor-in-possession financing that may be needed (if any) and the preparation of any related budgets and reporting; (e) provide MGG necessary reports, including a weekly statement of cash flows, which will track the categories identified in the Debtor's budget (the "Budget"), weekly reconciliation of cash flow against the Budget, and a monthly listing of the Debtor's wine inventory; (f) support the Debtor and GM with

23

any necessary motions, including providing declarations or testimony in support of the Debtor's efforts in this bankruptcy case, and (g) render such other services as the Debtor may request or require and which the Firm agrees to perform.

14. Subject to order of the Court, I will provide interim management services to the Debtor and continue serving as the Debtor's CRO, and Getzler will assign additional professionals to perform other services as needed. Getzler and I, together Jigsaw and Ekman, and any other additional personnel that may be necessary, will lead the Debtor's restructuring efforts and work in tandem with the Debtor's bankruptcy counsel and other professionals in this regard. Getzler and I, and any other additional personnel that may be necessary, shall be authorized to perform the Services, as detailed above and in the Agreement, in a manner consistent with the business judgment rule as applicable to officers and the provisions of applicable state law and the Bankruptcy Code applicable to the obligations of persons acting on behalf of companies, subject, however, to appropriate governance by the Debtor's board of directors other governing documents and applicable state law as and when required. I believe that the Services will not duplicate the services that other professionals will be providing to the Debtor in this chapter 11 case. Specifically, the Firm and I will carry out unique functions and will use reasonable efforts to coordinate with the Debtor's other retained professionals to avoid the unnecessary duplication of services.

15. Pursuant to the Agreement, dated July 5, 2022, the Firm charged the Debtor a fixed fee (the "Consulting Fee") of $25,000 per week for four months or until earlier termination in accordance with the provisions of the Agreement, which was to be paid by the Debtor in weekly $25,000 installments, plus reasonable out-of-pocket expenses incurred by the Firm. Commencing on the Petition Date, the Firm will charge the Debtor fees based on the professionals' actual hours incurred and standard hourly rates.

16. Subject to and consistent with any cash collateral stipulations or orders, cash collateral usage, post-petition financing, or related budgets approved by the Court, after the initial four months, which period will commence post-petition, the Firm will prepare a budget for reimbursable out-of-pocket expenses and will work with the Debtor on a mutually agreeable

24

maximum monthly expense limit, which shall not be exceeded absent the Debtor's prior written approval.

17.     The Firm's current standard hourly rates, subject to periodic adjustment, are as follows:

| TITLE | HOURLY RATE |
|-------|-------------|
| Principal / Managing Director | $595-$725 |
| Director / Specialists | $475-$695 |
| Associate Professionals | $175-$475 |

In the normal course of business, the Firm may periodically adjust its billing rates. Changes in applicable hourly rates will be noted on the invoices for the first time period in which the revised rates became effective.

18.     My standard hourly rate is $650. The Firm will notify the Debtor of any changes to its hourly rates. The Firm provides no assurance regarding the outcome of its work and its fees are not contingent on the result of such work.

19.     The Firm will strive to perform services in a most expeditious and comprehensive fashion, which will be dependent, in part, on the quality, sophistication, and availability of the Debtor's existing systems, personnel, processes, and reporting procedures, and the Debtor's ability to provide all required financial and operational information and data in a timely fashion and in the required format. The Firm will communicate the project status and direction routinely to the Debtor, and immediately identify any issues and/or roadblocks that could impact the project's cost or timeline.

20.     To the extent that any services outside the scope of the engagement are required or requested, the extent of these services, and the additional compensation to be paid to the Firm for such services, shall be agreed upon prior to the Firm beginning to perform such services. These services will be provided subject to the parties entering into an appropriate amendment to the Agreement, which shall be subject to Court approval.

21.     Prior to the Petition Date, the Firm received a $50,000 retainer from the Debtor.

25

The Firm currently holds $29,856.25 of such retainer for post-petition services (the "Retainer").[5] The Firm shall apply any remaining amounts of the Retainer to allowed post-petition fees and expenses, prior to seeking final payment from the Debtor's cash flows. Any amount of this Retainer remaining after application to unpaid fees will be returned to the Debtor. Notwithstanding anything to the contrary contained in this paragraph, the Firm will be entitled to retain the unused portion of the Retainer, if any, upon the entry of an order by the Bankruptcy Court, on appropriate notice, that performance to the Firm by the Debtor remains due under the indemnification obligations set forth in the Agreement, as may be supplemented or clarified in the Application.

22. Notwithstanding anything to the contrary in the Agreement, the Debtor shall pay the Firm and me the compensation set forth above based upon the submission of weekly invoices by the Firm. As further discussed below, the Firm shall file with the Court reports of compensation earned and expenses incurred on a monthly basis (the "Compensation Reports," and each, a "Compensation Report"). Such reports shall contain summary charts which describe the time incurred and services provided, identify the compensation earned by each Director and staff employee provided, and itemize the expenses incurred. The Firm will nonetheless maintain records (in summary format) of its services rendered for the Debtor in six minute increments, including reasonably detailed descriptions of those services and the individuals who provided those services. All compensation shall be subject to review by the Court in the event an objection is filed. The compensation provided for in the Agreement shall constitute full payment for the services to be rendered to the Debtor by the Firm, me, and any other personnel the Firm shall provide to render the services contemplated in this Application.

23. As set forth in the Application, the Debtor seeks approval of the Application pursuant to sections 105 and 363 and requests approval of the following compensation procedures

---

[5] Prior to the Petition Date, the Firm compensated Jigsaw for services rendered to the Debtor under the Agreement.

Case: 22-10381    Doc# 85    Filed: 10/31/22    Entered: 10/31/22 18:30:06    Page 26 of
53

(the "Compensation Procedures"):  The Firm shall file the Compensation Reports with the Court on a monthly basis, and serve such reports on the U.S. Trustee, counsel for MGG, counsel to any official committees that may be appointed, and any other party requesting special notice (collectively, the "Notice Parties"), as detailed herein and in the Proposed Order.  The Notice Parties shall have 21 days after the date each Compensation Report is served to objection to such Compensation Report.  Any compensation and expenses that are the subject of any Compensation Report shall be subject to Court review only in the event an objection is timely filed.

24.    I believe foregoing fees, compensation, and related procedures described herein are reasonable and justified under the circumstances.

25.    As part of the overall compensation payable to the Firm, the Agreement provides the Firm with certain indemnification rights (the "Indemnification Provision").  The Indemnification Provision was negotiated between the Debtor and the Firm at arm's length and in good faith.

26.    The Firm's and my decision to accept the proposed engagement to provide the Services to the Debtor is contingent upon our ability to be retained in accordance with the terms and conditions of the Agreement, as may be supplemented by this Application and the Proposed Order.  The Firm and I understand and accept that the terms of the Agreement, as clarified herein, and that such terms must be approved by the Court.  Thus, we have requested that the Debtor seek this Court's approval of such matters contemporaneously with the filing of the Application.

27.    Getzler is one of the oldest and most respected names in middle-market corporate restructuring, assisting companies around the world with an approach that emphasizes rapid, pragmatic, decision making and implementation.  Over more than 50 years, Getzler has developed a strong track record, assisting both underperforming and healthy companies in the middle market.

28.    Getzler provides advisory services that includes turnarounds and workouts, interim and crisis management, bankruptcy advisory, financial restructuring and forensic/litigation support.  Getzler also assists companies in achieving operational excellence through process improvement, supply chain solutions, sales and marketing effectiveness, technology advisory and transaction advisory services.  While not all of Getzler's capabilities are required in this case, its

27

breadth of services is briefly summarized on its website www.getzlerhenrich.com.

29.     As noted above, the present engagement will be led by me and supported by other professionals at Getzler as may be required. I am highly qualified to render the services contemplated in the Application.

30.     As stated above, I am a managing director of Getzler. I am a Certified Turnaround Professional with over 30 years of executive experience in corporate turnarounds, strategic consulting, financial and operational restructurings, and debtor bankruptcy situations. I have extensive experience advising both companies and senior lenders in complex debt restructurings, financings, and workouts. In addition, I have served as CRO and Independent Director in many complex restructuring scenarios, including in chapter 11 bankruptcy cases. I specialize in advising and working with underperforming companies to develop and implement business transformation strategies, operational and financial improvements, and turnaround plans. I have worked with financially distressed companies to address liquidity issues, improve working capital, develop cost containment programs, implement process improvements, and improve profitability. I am a frequent speaker on restructurings and distressed M&A.

31.     Even though the Debtor is not seeking to retain the Firm or me pursuant to section 327 of the Bankruptcy Code, I desire to make the following assertions: To the best of my knowledge and belief, insofar as I have been able to ascertain after due inquiry, and as is disclosed herein, none of the managing directors or employees of the Firm is related to the Debtor, its creditors, other parties in interest, the United States Trustee for the Northern District of California, or anyone employed in the Office of the United States Trustee for such district, or holds or represents any interest adverse to any such party except that the Firm and I are connected to the Debtors by virtue of the Agreement and the engagement proposed in the Application. To the extent the Firm may represent, or have represented, any other of the Debtor's creditors or other parties in interest or interests adverse to such creditors or other parties in interest, such representation has been or is in matters unrelated to this chapter 11 case.

32.     In connection with the preparation of this Declaration, the Firm conducted a review of its professional contacts with the Debtor, its affiliates, and the Debtor's known secured

creditors, general unsecured, and other parties in interest (the "Interested Party List").

33. The Firm reviewed the Interested Party List to determine whether the Firm and/or its affiliates have any connections to the individuals and entities on the Interested Party List. The Firm then reviewed the results of the search. The only connection identified by the Firm is as follows: Hilco Redevelopment Partners, LLC, an affiliate of Getzler, has used Newmark & Company Real Estate Inc. for real estate brokerage services in matters unrelated to the Debtor and this chapter 11 case. Newmark & Company Real Estate Inc. may be affiliated with Newmark Knight Frank, which is listed on the "Other Parties/Request for Special Notice" section of the Interested Party List provided by Debtor's counsel.

34. Pursuant to the results of the conflicts search, I represent that none of the services that were or will be provided in the course of other engagements (a) is connected in any way to this chapter 11 case, (b) will impact or conflict with the rights of the Debtor in this case, or (c) will compromise the Firm's or my ability to provide services in this case.

35. It should be understood that the Firm's present or former clients and their affiliates, officers, directors, principal shareholders, and their respective affiliates may have had relationships with parties in interest in this case of which the Firm was not informed or, subsequent to the performance of the Firm's services, may have developed relationships with such parties of which the Firm or I are unaware.

36. To the best of my knowledge, information, and belief, other than as set forth herein, the Firm: (a) has no connection with the Debtor, its creditors, its direct and indirect owners, other parties in interest, or the attorneys or accountants of any of the foregoing, or the Office of the United States Trustee for the Northern District of California or any person employed in the Office of the U.S. Trustee; and (b) does not hold any interest adverse to the Debtor or its estate, except that the Firm and I are connected to the Debtor by virtue of the Agreement and this engagement discussed in the Application.

37. If any new material facts or relationships are discovered or arise, the Firm will provide the Court with a supplemental declaration disclosing, among other things, any new potential conflicts among the Debtor, the Firm, me, or other significant parties in interest.

29

38. The compensation arrangement provided for in the Application and the Agreement is consistent with and typical of arrangements entered into by the Firm and other restructuring consulting firms for similar services for clients such as the Debtor.

39. The Firm is well qualified and able to represent the Debtor in a cost effective, efficient, and timely manner. The Firm is willing to act on behalf of the Debtor and to subject itself to the jurisdiction and supervision of the Court.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on October 31, 2022, in Chicago, Illinois.

Kevin A. Krakora

# EXHIBIT 1

Getzler Henrich & Associates LLC

295 Madison Avenue
20th Floor
New York, NY 10017

T: 212.697.2400
F: 212.697.4812
www.getzlerhenrich.com



**GetzlerHenrich**
MANAGEMENT & FINANCIAL CONSULTANTS



July 5, 2022

Mr. Don Yannias
Chairman and President
Spring Mountain Vineyard
2805 Spring Mountain Rd.
St. Helena, CA 94574

Via e-mail:  don@bimi.com

Dear Don:

Thank you for your interest in retaining the services of Getzler Henrich & Associates LLC ("Getzler Henrich").  We appreciate the opportunity to work with Spring Mountain Vineyard and its affiliates and subsidiaries, if any (collectively, the "Company") to provide financial advisory and management consulting services.

## OUR FIRM

Getzler Henrich & Associates is one of the oldest and most respected names in middle-market corporate restructuring, assisting companies around the world with an approach that emphasizes rapid, pragmatic, decision making and implementation. Over more than fifty years, Getzler Henrich has developed a strong track record, assisting both underperforming and healthy companies in the middle market. We have a demonstrated ability to generate realistic solutions to challenges confronting businesses or their creditors, and to helping companies improve their operations.  Engagements have spanned a broad spectrum of industries. Executing solutions with speed, competence and integrity, we adapt our approach to the precise needs of each individual client and make practical proposals to address specific issues.

## OUR SERVICES

Financial advisory services include turnarounds and workouts, interim and crisis management, bankruptcy advisory, financial restructuring and forensic/litigation support.  We also assist companies in achieving operational excellence through process improvement/ LeanSigma, supply chain solutions, sales and marketing effectiveness, technology advisory and transaction advisory services.  While not all Getzler Henrich's capabilities are required in this case, our breadth of services is briefly summarized on our website www.getzlerhenrich.com.

## OUR PEOPLE

Assignments are always managed with a proactive, results-oriented approach.  We believe that to provide valuable guidance and advice to our clients, our people must

have first-hand experience running a business.  Therefore, prior to joining the firm, each team leader at Getzler Henrich has gained valuable experience managing companies, ranging from top executive positions at middle market companies to senior management positions at major divisions of multinationals.

This engagement will be led by Kevin A. Krakora and Peter Ekman and supported by other Getzler Henrich professionals, as required.

 **Kevin A. Krakora**, managing director, is a Certified Turnaround Professional with over thirty years of executive experience specializing in corporate turnarounds, strategic consulting, financial and operational restructurings, and debtor bankruptcy situations. He has extensive experience advising both companies and senior lenders in complex debt restructurings, financings and workouts. In addition, he has served as Chief Restructuring Officer and Independent Director. Mr. Krakora specializes in advising and working with under-performing companies to develop and implement business transformation strategies, operational and financial improvements, and turnaround plans. He has worked with financially distressed companies to address liquidity issues, improve working capital, develop cost containment programs, implement process improvements and improve profitability. Mr. Krakora is a frequent speaker on restructurings and distressed M&A.

**Peter Ekman** is an experienced winery, tech and e-commerce CEO with substantial board experience.  Peter brings decades of expertise in business development, profitable growth, successful turnarounds, and restructuring projects in the wine industry, including B.R. Cohn Winery, Crushpad Inc., Cosentino Winery, Bounty Hunter Wine, and the restructuring and re-start of Wine.com, the largest eCommerce company in the wine industry. Mr. Ekman provides his clients with a unique and powerful combination of financial acumen, creative strategic thinking, operations management, restructuring and turnaround expertise. After spending five years at Louis Vuitton Moet Hennessy (LVMH), Mr. Ekman has held several executive positions, including as turnaround Chairman & CEO at Bounty Hunter Wine, chief business development officer at Vivino, restructuring CEO of Crushpad and turnaround CEO of Wine.com.

### TERMS OF ENGAGEMENT

The Standard Terms and Conditions annexed hereto as Annex I are incorporated by reference herein as if set forth in full herein and shall govern this engagement, except to the extent inconsistent with or superseded by the express terms of this letter.

### OUR UNDERSTANDING AND SCOPE

During our discussions, you were kind enough to provide considerable background information regarding the Company's history, recent challenges and current needs. We understand that the Company has experienced challenges with timely financial and operational reporting. In addition, your lender has requested that you seek financial advisory support, including the possible appointment of a Chief Restructuring Officer.

Based on our understanding of your needs and to assist you in achieving your objectives, we would perform the following services at your request:

1. Financial and Operational Support Services:
   a. Develop an initial assessment of the current situation
      i. Meet with key staff to understand status of current financial reporting
      ii. Identify open issues for completing financial statements
      iii. Develop work plan and priorities to complete financial reporting



   b. Assist with completing current financial reporting and relevant analyses
      i. Implement basic accounting and reporting processes, timelines, and deliverables to management
      ii. Produce meaningful financial reports and analyses to allow management to make informed decisions
   c. Assist with updating financial forecasts and projections, including 13-week cash flow forecasting, if requested
   d. Identify areas for improvement in the financial and accounting organization
      i. Analyze and propose short- and long-term solutions for sufficient, relevant, and accurate reporting and controls
      ii. Implement reporting improvements, and monitor financial reporting for proper change implementation
   e. In the normal course of our work and analysis, identify potential areas for future discussion and analysis, as appropriate:
      i. Revenue enhancements and sales/marketing improvements
      ii. Cost reductions and process improvements
      iii. Inventory management and potential opportunistic reductions
   f. Prepare initial report for the Company regarding preliminary findings, observations, and a plan-forward
      i. Identify concise and realistic management action items
      ii. Establish routine reporting cadence with the Company
      iii. Status of efforts, progress, and updates

2. Chief Restructuring Officer ("CRO") Services
   a. Provide Kevin A. Krakora to serve as CRO, appointed by the Company's board of directors and reporting directly to the board of directors
   b. Manage and oversee the Company's overall resources and operations, including without limitation, budgeting, forecasting and managing cash flows, overseeing the vineyard facilities and all personnel
   c. Develop, evaluate, and make recommendations in connection with business plans, restructuring options and strategic alternatives
   d. Communicate with the board of directors regarding financial performance and strategic initiatives
   e. Communicate directly with the Company's lender regarding financial and operational issues, including providing relevant information
   f. Identify all licenses held by the Company and take steps to preserve same
   g. Require the Company and its personnel to provide full and unfettered access to the books and records of the Company and all Company personnel with knowledge of the books and records, licenses of the Company and financial information necessary to perform the above tasks, as agreed to by the Company pursuant to Annex I 1(a)

h. Provide oversight for Company's revenue generation process and work to connect different revenue-related functions, from marketing to sales, customer success, pricing, and revenue operations

i. Perform such additional duties as the CRO and/or the Board, from time to time, determine are appropriate, with additional fees, if any, to be mutually agreed upon



Getzler Henrich will perform additional tasks as requested by and mutually agreed upon with the Company. We appreciate the Company's desire to obtain value from this exercise. Accordingly, Getzler Henrich has structured a highly skilled, seasoned team and focused approach to accomplish the Company's objectives in an expedient and comprehensive fashion.

Should Getzler Henrich serve as CRO, please note the D&O insurance requirements described in Section 6 of Annex I of the Engagement Letter. The Company shall maintain D&O insurance policies, including a "Side A" policy, acceptable to Getzler Henrich, naming each Getzler Henrich Party (as defined) and Getzler Henrich as insureds under the policies and under all such other policies that the Company may purchase during Getzler Henrich's engagement. Serving in the capacity of CRO will become effective when the Company provides written evidence of adequate insurance coverage described herein.

Getzler Henrich believes in utilizing the Company's personnel to the greatest extent possible to strengthen their understanding of the business should they have the capacity and capability to perform the necessary analyses. Getzler Henrich will perform the necessary tasks should the Company's capacity or ability to perform the necessary analyses be limited. To the extent that the Company can share any relevant information, financial modeling and analyses available for our review, Getzler Henrich will utilize that work for expediency.

## FEE STRUCTURE

Getzler Henrich will charge a fixed fee (the "Consulting Fee") of $25,000 per week for four months or until earlier termination in accordance with the provisions hereunder, which shall be paid by the Company in weekly $25,000 installments, plus reasonable out-of-pocket expenses incurred by Getzler Henrich. After the initial four weeks, Getzler Henrich will prepare a budget for reimbursable out-of-pocket expenses and will work with the Company on a mutually agreeable maximum monthly expense limit, which shall not be exceeded absent the Company's prior written approval. The Company acknowledges that Getzler Henrich invoices are due and payable weekly upon presentation. Should payment not be provided timely by the Company, we reserve the right to cease work until the matter is settled.

Getzler Henrich will strive to perform services in a most expeditious and comprehensive fashion, which will be dependent in part on the quality, sophistication and availability of the Company's existing systems, personnel, processes and reporting procedures and the Company's ability to provide all required financial and operational information and data in a timely fashion and in the required format. We will communicate the project status and direction routinely and immediately identify any issues and/or roadblocks that could impact the project's cost or timeline. We strongly emphasize employing a collaborative

approach with constant communication. Note that we do not provide assurance regarding the outcome of our work and our fees will not be contingent on the results of such work.

To the extent that any services outside the scope of this engagement are required or requested, the extent of these services, and the additional compensation to be paid to Getzler Henrich for such services, shall be agreed upon prior to Getzler Henrich beginning to perform such services. These services will be provided subject to our entering into an appropriate amendment to this letter.

The Company will, on the signing of this letter, pay Getzler Henrich a retainer in the amount of $50,000 which will be applied to the final bill. Should this retainer be insufficient because of a change in circumstances (e.g., required level of assistance or filing for bankruptcy protection), Getzler Henrich reserves the right to request and the Company agrees to pay a retainer increase. Any amount of this retainer remaining after application to unpaid fees and expenses will be returned to the Company. Notwithstanding anything to the contrary contained in this paragraph, Getzler Henrich will be entitled to retain the unused portion of the retainer, if any, to the extent necessary to ensure performance by the Company of its indemnification obligations pursuant to this engagement letter.

This Engagement Letter contains the entire agreement among the parties relating to the subject herein. Any modification or other changes to the terms contained herein, including Annex I, must be in writing and signed by the parties hereto to be enforceable.

If the foregoing is in accordance with our understanding, please sign the attached copy and forward it to our office. In addition, the retainer and future payments may be wired to Getzler Henrich & Associates LLC c/o JP Morgan Chase Bank, account # 733687336, routing/ABA # 021 0000 21.

We are very appreciative of the opportunity to assist Spring Mountain Vineyard in achieving its goals and to work with you.

Sincerest regards,

**GETZLER HENRICH & ASSOCIATES LLC**


By: _____     Dated: 6/30/2022
     Kevin A. Krakora
     Managing Director

**AGREED TO AND ACCEPTED BY:**

**Spring Mountain Vineyard**



Accepted by: _____

Dated: _____ 07/04/2022 _____

Print Name: _____ Constantine S. Yannias _____

Title: _____ President _____

**Annex I**

**Terms and Conditions**

1.      **Access to Company Personnel and Information.**



(a)      The Company agrees to make available to Getzler Henrich all of the Company's financial and operational information and data as requested by Getzler Henrich (all such information so furnished being the "Information") and agrees to permit discussions with Company personnel that Getzler Henrich reasonably requests in connection with the services performed by Getzler Henrich under this Agreement. The Company will provide Getzler Henrich with full access to all Company personnel, books, and records, including those of the Company's attorneys (subject to such safeguards as may be necessary to preserve applicable client privileged communications) and other agents and third-party representatives. Getzler Henrich understands that the Company's financial information is incomplete and may contain inaccuracies, which the Company intends to correct with Getzler Henrich's assistance. Subject to the preceding sentence, the Company represents and warrants that it shall not provide Getzler Henrich with information that is knowingly and intentionally inaccurate and/or misleading, for the purpose of Getzler Henrich relying on such Information. The Company agrees that it shall notify Getzler Henrich if it learns subsequently that any Information provided or made available to Getzler Henrich in accordance with this Agreement is incorrect, inaccurate, or otherwise should not be relied upon.

(b)      The Company recognizes and confirms that Getzler Henrich (a) will use and rely primarily on the Information and on information available from generally recognized public sources in performing the services contemplated hereby without having independently verified any of the same and (b) does not assume responsibility for accurateness or completeness of the Information and such other information and (c) will not make an appraisal of any of the assets or liabilities of the Company. The Company agrees that Getzler Henrich shall have no duty to verify independently the reliability, accuracy or completeness of any Information or other information. The Company also agrees that Getzler Henrich shall incur no liability to the Company or any individual or other entity that may arise if any Information or other information proves to be unreliable, inaccurate or incomplete.

2.      **Confidential Information.**

(a)      Getzler Henrich shall not publicly disclose Confidential Information. "Confidential Information" shall consist of Information: (i) disclosed to Getzler Henrich by the Company, its directors, officers, employees, representatives and agents; (ii) acquired by Getzler Henrich from any inspection of the Company's property in connection with this Agreement; or (iii) information produced by Getzler Henrich, from Confidential Information, in connection with performing services to the Company under this Agreement. Further, Getzler Henrich will use the Confidential Information only for the purpose of providing services to the Company pursuant to this Agreement.

(b)      Confidential Information shall not include information that is: (i) now or subsequently becomes generally known or available by publication, commercial or otherwise, through no fault of Getzler Henrich, its employees, agents, or independent contractors; (ii) already known by Getzler Henrich at the time of the disclosure, provided that such information did not come from a source known by Getzler Henrich to be bound by a confidentiality agreement with the Company, or from a source that was otherwise prohibited from disclosing such information under a contractual, legal or fiduciary obligation; (iii) becomes available to Getzler Henrich on a non-confidential basis from a source other than the Company, provided that, to Getzler Henrich's knowledge, the source was not prohibited from disclosing such information to Getzler Henrich under a contractual, legal or fiduciary obligation to the Company; (iv) independently developed by Getzler Henrich, its employees, agents, or independent contractors primarily from information that is not Confidential Information; (v) information that the Company and Getzler Henrich agree, in writing, may be disclosed; (vi) information that is or should be reasonably expected to be disclosed as part of Getzler Henrich's services to the Company; or (vii) information that Getzler Henrich reasonably believes, upon advice of its attorneys, must be disclosed pursuant to applicable law, or regulatory or administrative process, including stock exchange rules.

(c)      Getzler Henrich may disclose Confidential Information: (i) to the Company's lender in connection with the performance of Getzler Henrich's services under this Agreement; or (ii) in connection with any dispute between Getzler Henrich and Company under, concerning or arising out of this Agreement. If Getzler Henrich receives any request by order, subpoena, or other legal process to produce any Confidential Information, then unless otherwise prohibited by law or process, if practicable Getzler Henrich will seek to provide the Company with timely notice of such request. At the Company's request and expense, and unless otherwise prohibited by law or against a recommendation by Getzler Henrich's counsel, and without relinquishing or modifying Getzler Henrich's authority to disclose information under the terms of this Agreement, Getzler Henrich will cooperate reasonably with the Company in actions that the Company deems necessary or appropriate under the circumstances to protect the confidentiality of the Confidential Information.

(d)      Getzler Henrich may disclose the Company's name for purposes of internal marketing materials only and will not otherwise disclose Confidential Information as contemplated under this Section 2.

3.      **No Third-Party Beneficiaries; Use of Work Product.** Except as provided with respect to indemnification and exculpation, there are no third-party beneficiaries of this Agreement. The Company acknowledges that in connection with its engagement Getzler Henrich is acting as an independent contractor with duties owing solely to Company. The Company acknowledges that all information, whether written or oral, created, prepared, or compiled by Getzler Henrich in connection with this Agreement is intended solely for the benefit and use of the Company provided, however that Getzler Henrich acknowledges

and agrees that Company shall utilize Getzler Henrich's work in negotiations with Company's creditors. No other individual or entity shall be entitled to rely on such information for any purpose. Company agrees that such information shall not be reproduced, disseminated, quoted or referred to at any time or in any manner other than to the Company's board of directors or managers, officers, employees, representatives, attorneys, and other agents who have a need to receive such information, except upon Getzler Henrich's prior written consent. Without limiting the foregoing, the Company shall not (and shall not authorize any other individual or entity to) use Getzler Henrich's name or to make available to third parties any information created, prepared, or compiled by Getzler Henrich under this Agreement for any reason, including obtaining or extending credit, offering or selling securities or other assets, or in any representations to third parties without Getzler Henrich's prior written consent, provided, however, that the Company shall be permitted to disclose its financials, including actuals, whether prepared or compiled by the Company, Getzler Henrich or both, to any third party. Additionally, the Company shall be permitted to disclose financial projections prepared or compiled by the Company (or in collaboration with Getzler Henrich) with any third party so long as the Company does not represent that the financial projections have been prepared or compiled by Getzler Henrich. In the event the Company desires to disclose financial projections as having been prepared or compiled by Getzler Henrich to a third party, the Company must first obtain Getzler Henrich's written consent to such proposed disclosure, which consent Getzler Henrich shall not unreasonably withhold. It is also expressly agreed that notwithstanding the above restrictions upon the Company's dissemination and use of information and work product, Getzler Henrich shall have no responsibility or liability relating directly or indirectly to such disclosure (whether authorized or unauthorized) by the Company concerning any information created, prepared, or compiled, in whole or in part, by Getzler Henrich pursuant to this Agreement, which may be disclosed only after prior written approval by Getzler Henrich or as required by applicable law, or regulatory or administrative process, including stock exchange rules. The foregoing provisions shall not be construed or interpreted to prohibit references to Getzler Henrich's engagement under this Agreement in required public filings or court documents.



### 4.   Future Performance.

(a)    The services to the Company under this Agreement may include the preparation of recommendations, projections, and other forward-looking statements. The Company acknowledges that numerous factors may affect the Company's actual financial and operational results, and that these results may materially and adversely differ from the recommendations and projections prepared, in whole or in part, by Getzler Henrich.

(b)    Getzler Henrich does not provide assurance regarding the outcome of its engagement and its fees are not contingent on the results of its engagement.

### 5.   Independent Contractor Status.   Getzler Henrich is an independent contractor under this Agreement, and accordingly, this Agreement shall not be an employment agreement. No one on behalf of any Getzler Henrich Party (as defined below), nor any employees, agents, or independent contractors thereof, shall be considered to be a director, officer, member, manager, partner, control person, employee, representative, agent, or insider of the Company, unless expressly agreed to in a writing signed by Company and Getzler Henrich. Getzler Henrich will have exclusive control over the management and operation of Getzler Henrich, including hiring and paying the wages or other compensation of its personnel. The Getzler Henrich personnel that provide services to the Company under this Agreement may also provide services to other past, present or future Getzler Henrich clients. In addition, like other advisory firms, Getzler Henrich may utilize the services of qualified independent project employees, who work under our direct supervision for us on an ad hoc basis as temporary employees, to assist Getzler Henrich with its performance of its services pursuant to this Agreement. This arrangement enables us to reduce our overhead and provide cost-effective services to our clients, who benefit from this saving by our reasonable rate structure.

### 6.   Appointment as Officer and/or Director.   Should the Company with the consent of Getzler Henrich elect a Getzler Henrich Party as an officer or director, the Company shall prior to the effectiveness of such election name such Getzler Henrich Party, and to the extent permissible under the applicable policy, Getzler Henrich, as covered persons under D&O and similar policies that the Company may purchase during Getzler Henrich's engagement. The Company further agrees to provide evidence of this coverage as soon as it is in place. It is mutually understood that naming such Getzler Henrich representative as an officer or director of the Company, that such Getzler Henrich representative will remain at all times an employee of Getzler Henrich and not become an employee of the Company and will be compensated solely by Getzler Henrich. Upon any cancellation or non-renewal of the D&O policy, then the Company shall exercise their rights to extend the claim period for a one-year "discovery period" and shall exercise such rights and pay such premiums required thereunder.

### 7.   No Fiduciary Relationship.   Other than with respect to appointment(s) of a Getzler Henrich Party as an officer and/or director of Company in writing (and then only with respect to such Getzler Henrich Party), nothing in this Agreement is intended to create, or shall be deemed or construed to create a fiduciary relationship between: (a) the Company, including without limitation, the Company's directors, officers, members, managers partners, control persons, shareholders, employees, representatives, agents, or creditors (collectively, the "Company parties" and each a "Company Party"), on the one hand; and (b) Getzler Henrich, Getzler Henrich's affiliates, and the respective directors, officers, members, managers, partners, control persons, shareholders, employees, representatives, independent contractors, attorneys, agents, successors or assigns of Getzler Henrich or Getzler Henrich affiliates (collectively, the "Getzler Henrich Parties," and each a "Getzler Henrich Party") on the other hand.

### 8.   Indemnity by Company.

(a)    The Company agrees to indemnify and hold harmless Getzler Henrich and each other Getzler Henrich Party from and against, and Company agrees that no Getzler Henrich Party shall have any liability to the Company or



any other Company Party for, any losses, claims, damages, obligations, penalties, judgments, awards, settlements, liabilities, costs, expenses and disbursements (including reasonable attorneys' and consultants' fees and expenses, investigation fees and expenses and court and litigation costs) of any kind or nature whatsoever, known or unknown, foreseen or unforeseen, contingent or otherwise arising out of or in any way, directly or indirectly, related to (i) Company's actions or failures to act (including statements or omissions made, or information provided, by it or its agents) or (ii) actions or failures to act by an Getzler Henrich Party with Company's consent or in reliance on Company's actions or failures to act, or (B) otherwise related to or arising out of any services rendered by Getzler Henrich or any Getzler Henrich Party pursuant to this Agreement or other services rendered at the request of Company (including service by an Getzler Henrich Party as an officer, director or in any other capacity with Company or any of its affiliates), including costs arising out of any dispute whether or not Getzler Henrich or any other Getzler Henrich Party is a party to such dispute and including any claim brought by, on behalf of or in the name of Company (collectively, "Covered Losses"); provided, however, that this indemnity and exculpation shall not apply where a court of competent jurisdiction has found by a final judgment (not subject to further appeal) that such Covered Losses resulted primarily from bad faith, self-dealing, gross negligence, intentional or wilful misconduct on the part of Getzler Henrich in the performance of its services under this Agreement. The Company also agrees to pay Getzler Henrich a fee at Getzler Henrich's regular hourly rates for it or any other Getzler Henrich Party at the request of the Company preparing for, or testifying in, any legal proceedings. The Company's obligations hereunder shall be in addition to any rights that any Getzler Henrich Party may have at common law or otherwise. Solely for the purpose of enforcing this agreement, the Company hereby consents to personal jurisdiction and to service and venue in any court in which any claim which is subject to this agreement is brought by or against any Getzler Henrich Party.

(b)     If any action, suit, proceeding or investigation or similar item is commenced as to which a Getzler Henrich Party is entitled to indemnification hereunder, it shall notify Company with reasonable promptness; provided, however, that any failure to so notify Company shall not relieve Company from its obligations hereunder (except to the extent Company is materially and adversely affected by such failure to be given notice). Getzler Henrich shall have the right to retain counsel of its own choice to represent it, and Company shall pay the reasonable fees, expenses and disbursements of such counsel; and such counsel shall to the extent consistent with its professional responsibilities cooperate with Company and any counsel designated by Company. Company shall not without written prior consent of Getzler Henrich, settle or compromise any claim against Getzler Henrich, or permit a default or consent to the entry of any judgment in respect thereof, unless such settlement, compromise or consent includes as an unconditional term thereof, the giving by the claimant to Getzler Henrich of an unconditional release from all liability in respect of such claim.

(c)     In order to provide for just and equitable contribution, if a claim for indemnification pursuant to this Indemnification Agreement is made but is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) that such indemnification may not be enforced in such case, even though the express provisions hereof provide for the indemnification in such case, then Company, on the one hand, and Getzler Henrich, on the other hand, shall contribute to the Covered Losses to which the Indemnified Parties may be subject in accordance with the relative benefits received by Company, on the one hand, and Getzler Henrich, on the other hand, and also the relative fault of Company, on the one hand, and Getzler Henrich, on the other hand, in connection with the statements, acts or omissions which resulted in such Covered Losses and the relevant equitable considerations shall also be considered. Notwithstanding the foregoing, Getzler Henrich shall not be obligated to contribute any amount hereunder that exceeds that amount of fees previously received by Getzler Henrich from Company.

(d)     Neither termination nor completion of the engagement of Getzler Henrich or of this Agreement shall affect these indemnification provisions which shall remain operative and in full force and effect and shall be binding upon any successors or assigns of Company. Each Getzler Henrich Party is an express third-party beneficiary of the provisions of this Section 8.

9.     **Non-Solicitation.** For a period commencing on the date hereof and continuing for twelve (12) months after the later of: (a) the completion of all services to be provided by Getzler Henrich under this Agreement; or (b) termination of this Agreement, the Company, including any affiliates thereof, shall not, directly or indirectly, hire, solicit, employ, retain or utilize (other than through, and with the prior written consent of, Getzler Henrich) the services of any current or former employee of Getzler Henrich or independent contractor of Getzler Henrich who provided services under this Agreement at any time without the prior written consent of Getzler Henrich. The Company agrees and acknowledges that the Getzler Henrich's remedy at law for any breach of the provisions of this Section would be inadequate and that for any breach of such provisions Getzler Henrich will, in addition to such other remedies as may be available to it at law or in equity, be entitled to injunctive relief and to enforce its rights by an action for specific performance to the extent permitted by law. For a period commencing on the date hereof and continuing for twelve (12) months after the later of: (a) the completion of all services to be provided by Getzler Henrich under this Agreement; or (b) termination of this Agreement, Getzler Henrich, including any affiliates thereof, shall not, directly or indirectly, hire, solicit, employ, retain or utilize (other than through, and with the prior written consent, of the Company) the services of any current or former employee of the Company or independent contractor of the Company. The Company agrees and acknowledges that the Company's remedy at law for any breach of the provisions of this Section would be inadequate and that for any breach of such provisions the Company will, in addition to such other remedies as may be available to it at law or in equity, be entitled to injunctive relief and to enforce its rights by an action for specific performance to the extent permitted by law.

10.     **[Reserved.]**

11.     **Limitation of Liability.** No Getzler Henrich Party shall be liable to the Company, or any party asserting claims on behalf of the Company, except for direct damages found in a final determination to be the direct result of the bad

faith, self-dealing, intentional or willful misconduct or gross negligence of such Getzler Henrich Party. The Getzler Henrich Parties shall not be liable for incidental or consequential damages under any circumstances, even if they have been advised of the possibility of such damages. The Getzler Henrich Parties aggregate liability, whether in tort, contract or otherwise, is limited to the amount of fees paid for services on this engagement (the "Liability Cap"). The Liability Cap is the total limit of the Getzler Henrich Parties for any and all claims or demands by anyone with respect to this Agreement, or the services provided hereunder, and the Liability Cap shall be allocated among all such claimants, as appropriate.



**12.** **Attorneys' Fees and Expenses.** The Company shall pay all costs and expenses, including reasonable attorneys' fees and expenses, incurred by Getzler Henrich to enforce this Agreement, including, but not limited to any indemnity provision of this Agreement. This obligation to pay Getzler Henrich's reasonable attorneys' fees and expenses shall apply whether such fees and expenses are incurred during trial or appeal, or in arbitration, a bankruptcy case, or otherwise. If so required, Getzler Henrich shall additionally be entitled to reimbursement of reasonable legal expenses associated with any required court approval of this Agreement or enforcement of provisions of this Agreement, including, but not limited to, fee applications and the defense of any objections thereto. Company shall reimburse Getzler Henrich for all such expenses upon presentation of the invoice for the same supported by appropriate documentation.

**13.** **Consent; Entire Agreement.** In any instance under this Agreement where a party's consent is permitted or required to be given, such consent shall not be withheld unreasonably. This Agreement contains the entire Agreement of the parties with respect to its subject matter and supersedes all prior agreements and understandings between the Company and Getzler Henrich with respect to such subject matter. The parties agree that all terms of their agreement and understanding are embodied in this Agreement, and as modified or supplemented from time to time, but only if such modification or supplement is both: (i) in writing, and (ii) signed by all parties. To the extent that any services outside the scope of this engagement are required or requested, the extent of these services, and the additional compensation to be paid to Getzler Henrich for such services, shall be agreed upon prior to Getzler Henrich beginning to perform such services.

**14.** **Choice of Law/Forum.** The validity, interpretation and enforcement of this Agreement, matters arising out of or related to this Agreement or its making, performance or breach, and related matters shall be governed by the internal laws of the State of New York (without reference to choice of law doctrine). Any legal action or proceeding concerning the validity, interpretation and enforcement of this Agreement, matters arising out of or related to this Agreement or its making, performance or breach, or related matters shall be brought exclusively in the courts of the State of New York in the County of New York or of the United States of America for the Southern District of New York, and all parties consent to the exclusive jurisdiction of those courts, waiving any objection to the propriety or convenience of such venues. GETZLER HENRICH HEREBY AGREES, AND THE COMPANY HEREBY AGREES ON ITS OWN BEHALF, AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ON BEHALF OF EACH OTHER COMPANY PARTY, TO WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM, COUNTER-CLAIM OR ACTION IN CONNECTION WITH, RELATING TO OR ARISING OUT OF GETZLER HENRICH'S ENGAGEMENT, GETZLER HENRICH'S PERFORMANCE THEREOF, OR THIS AGREEMENT.

**15.** **Multiple Originals.** This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document. This Agreement may be executed by facsimile signatures or signatures forwarded via email.

**16.** **Termination.** Either the Company or Getzler Henrich can terminate this agreement upon one week's prior written notice, except for Sections 1 thru 3 and 6 thru 12 of this Annex 1, which shall survive any termination. Outstanding amounts due Getzler Henrich, if any, for services provided or expenses incurred prior to the effective date of termination will be paid promptly upon receipt of a final invoice that will be provided immediately upon notice of termination by the Company.

# EXHIBIT 2

1 | Victor A. Sahn (CA Bar No. 97299)
   *victor.sahn@gmlaw.com*
2 | Mark S. Horoupian (CA Bar No. 175373)
   *mark.horoupian@gmlaw.com*
3 | Steven F. Werth (CA Bar No. 205434)
   *steven.werth@gmlaw.com*
4 | Greenspoon Marder LLP
   a Florida limited liability partnership
5 | 333 South Grand Ave., Suite 3400
   Los Angeles, CA  90071
6 | Telephone: 213.626.2311
   Facsimile:  954.771.9264
7 |
   Attorneys for Debtor and Debtor in Possession
8 | Spring Mountain Vineyard Inc.

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SANTA ROSA DIVISION

| In re: | Case No. 1:22-bk-10381 |
| SPRING MOUNTAIN VINEYARD INC., a Delaware corporation, | Chapter 11 |
|          Debtor. | **ORDER APPROVING APPLICATION FOR ORDER AUTHORIZING DEBTOR TO EMPLOY AND RETAIN GETZLER HENRICH & ASSOCIATES LLC TO: (A) PROVIDE INTERIM MANAGEMENT SERVICES; (B) DESIGNATE KEVIN A. KRAKORA OF GETZLER HENRICH & ASSOCIATES LLC AS CHIEF RESTRUCTURING OFFICER; AND (C) PROVIDE ADDITIONAL PERSONNEL FOR RELATED FINANCIAL AND OPERATIONAL SUPPORT SERVICES** |
|       Federal EIN:  36-3844911 | |
| | [11 U.S.C. §§ 105, 363(b)] |

On October 31, 2022, the Debtor filed its *Application For Order Authorizing Debtor to Employ and Retain Getzler Henrich & Associates LLC to: (A) Provide Interim Management Services; (B) Designate Kevin A. Krakora of Getzler Henrich & Associates LLC as Chief Restructuring Officer; and (C) Provide Additional Personnel for Related Financial and Operational Support Services* [Dkt. No. ___] (the "Application").[1]

This Court having considered the Application, all papers and documents submitted in support of the Application, including, but not limited to, all declarations and exhibits thereto, and the record in this case; and this Court having jurisdiction to consider the Application and the relief requested therein; and due and proper notice of the Application having been provided to all necessary parties, and it appearing that no other or further notice need be provided; and the Court having found and determined that the relief sought in the Application is in the best interests of the Debtor, its estate, creditors, and all other parties in interest, and that the legal and factual bases for approval of the Application establish just cause for the relief granted herein; and good cause appearing therefor, it is hereby **ORDERED** as follows:

1. The Application is APPROVED in its entirety.

2. The engagement agreement, dated July 5, 2022, a copy of which is attached to the declaration of Kevin A. Krakora that accompanies the Motion as Exhibit 1 (the "Agreement"), is APPROVED.

3. The Debtor is authorized to employ and retain Getzler Henrich & Associates LLC (the "Firm" or "Getzler") pursuant to sections 105(a) and 363(b) to (a) provide interim management services; (b) designate and appoint Kevin A. Krakora of Getzler as Chief Restructuring Officer ("CRO"); and (c) provide additional personnel for related financial and operational support services, effective as of September 29 ,2022 (the "Petition Date"), pursuant to the terms and conditions in the Agreement, as the same may be supplemented or clarified by the terms and conditions in the Application and this Order.

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Application.

2

042

4. The Firm, Krakora, and any other personnel are authorized to render the Financial and Operational Support Services, the CRO Services, and any other services as set forth in the Application for the Debtor on the terms and conditions set forth in the Agreement, the Application, and this Order.

5. Krakora is authorized to provide interim management services to the Debtor and continue serving as the Debtor's CRO, and the Firm is authorized to assign additional professionals to perform other services as needed. The Firm and Krakora are authorized to perform the Services, as detailed in the Application and the Agreement, in a manner consistent with the business judgment rule as applicable to officers and the provisions of applicable state law and the Bankruptcy Code applicable to the obligations of persons acting on behalf of companies, subject, however, to appropriate governance by the Debtor's board of directors other governing documents and applicable state law as and when required.

6. The Firm and its affiliates shall not act as investment banker, claims agent, claims administrator, or investor/acquirer in connection with the chapter 11 case.

7. No principal or employee of the Firm and its affiliates shall serve as a director of the Debtor during the pendency of the chapter 11 case.

8. Subject to and consistent with any cash collateral stipulations or orders, cash collateral usage, post-petition financing, or related budgets approved by the Court, the Firm shall be compensated for its services and reimbursed for any related expenses in accordance with the rates (as may be adjusted from time-to-time) and disbursement policies as set forth in the Application, the Krakora Declaration, the Agreement, and any other applicable Orders of this Court.

9. The Compensation Procedures are APPROVED.

10. Notwithstanding anything to the contrary in the Agreement, the Debtor shall pay the Firm and Krakora the compensation set forth in the Application based upon the submission of weekly invoices by the Firm. The Firm shall file the Compensation Reports with the Court on a monthly basis, and serve such reports on the U.S. Trustee, counsel for MGG, counsel to any official committees that may be appointed, and any other party requesting special notice

3

043

(collectively, the "Notice Parties"). The Notice Parties shall have 21 days after the date each Compensation Report is served to object to such Compensation Report. Any compensation and expenses that are the subject of any Compensation Report shall be subject to Court review only in the event an objection is timely filed.

11.     The Firm shall apply any remaining amounts of the Retainer to allowed post-petition fees and expenses, prior to seeking final payment from the Debtor's cash flows. Any amount of this Retainer remaining after application to unpaid fees will be returned to the Debtor. Notwithstanding anything to the contrary contained in this paragraph, the Firm will be entitled to retain the unused portion of the Retainer, if any, upon the entry of an order by the Bankruptcy Court, on appropriate notice, that performance to the Firm by the Debtor remains due under the indemnification obligations set forth in the Agreement, as supplemented or clarified in the Application.

12.     The Firm is entitled to receive the indemnification as provided for in the Agreement.

13.     All compensation and reimbursement due to, and other rights of the Firm and Krakora Advisors in accordance with the Agreement, as may be modified by this Order, including without limitation any indemnification obligations, shall be treated and allowed (subject to the compensation review procedures identified in this Order) as administrative expenses in accordance with section 503 of the Bankruptcy Code and shall be paid in accordance with the Agreement, the Application, and this Order.

14.     To the extent that there may be any inconsistency between the terms of the Application, the Krakora Declaration, or the Agreement, on the one hand, and this Order, on the other hand, the terms of this Order shall govern.

15.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

16.     The Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this Order.

4

17. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the Agreement, the Application, or the implementation, interpretation, or enforcement of this Order.

**\*\*END OF ORDER\*\***

5

045

COURT SERVICE LIST

SERVICE OF THE ORDER IS NOT NECESSARY

1

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 333 South Grand Avenue, Suite 3400, Los Angeles, CA 90071.

A true and correct copy of the foregoing document entitled (*specify*):  **APPLICATION FOR ORDER AUTHORIZING DEBTOR TO EMPLOY AND RETAIN GETZLER HENRICH & ASSOCIATES LLC TO: (A) PROVIDE INTERIM MANAGEMENT SERVICES; (B) DESIGNATE KEVIN A. KRAKORA OF GETZLER HENRICH & ASSOCIATES LLC AS CHIEF RESTRUCTURING OFFICER; AND (C) PROVIDE ADDITIONAL PERSONNEL FOR RELATED FINANCIAL AND OPERATIONAL SUPPORT SERVICES; DECLARATIONS OF CONSTANTINE S. YANNIAS AND KEVIN A. KRAKORA IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)  October 31, 2022  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*)  October 31, 2022 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)  October 31, 2022, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 31, 2022 | Patricia Dillamar | */s Patricia Dillamar* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

CC 52262618v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

ADDITIONAL SERVICE INFORMATION (if needed):

## 1. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")

Dean C. Burnick on behalf of Interested Party Mt. Hawley Insurance Company **(RSN)**
dcb@proughlaw.com

Jacquelyn H. Choi on behalf of Creditor Napa County Treasurer-Tax Collector **(RSN)**
jacquelyn.choi@rimonlaw.com, docketing@rimonlaw.com

Mark S Horoupian on behalf of Debtor Spring Mountain Vineyard Inc.
mark.horoupian@gmlaw.com, cheryl.caldwell@gmlaw.com

Steve Ma on behalf of Creditor MGG California, LLC
sma@proskauer.com

Jeff J. Marwil on behalf of Creditor MGG California, LLC
jmarwil@proskauer.com

Office of the U.S. Trustee / SR
USTPRegion17.SF.ECF@usdoj.gov

Elvina Rofael on behalf of U.S. Trustee Office of the U.S. Trustee / SR
elvina.rofael@usdoj.gov, Katina.Umpierre@usdoj.gov,GemMil.Langit@usdoj.gov

Victor A. Sahn on behalf of Debtor Spring Mountain Vineyard Inc.
victor.sahn@gmlaw.com, Karen.Files@gmlaw.com

Phillip John Shine on behalf of U.S. Trustee Office of the U.S. Trustee / SR
phillip.shine@usdoj.gov

Michael St. James on behalf of Interested Party Arcade Capital, LLC **(RSN)**
ecf@stjames-law.com

Ashley M. Weringa on behalf of Creditor MGG California, LLC
aweringa@proskauer.com

Steven F. Werth on behalf of Debtor Spring Mountain Vineyard Inc.
steven.werth@gmlaw.com, Patricia.Dillamar@gmlaw.com

Peter J Young on behalf of Creditor MGG California, LLC
pyoung@proskauer.com

CC 52262618v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                    **F 9013-3.1.PROOF.SERVICE**

**Secured Creditor**
Imperial PFS aka IPFS
49 Stevenson St. #127
San Francisco, CA 94105-2909
(877) 687-9826
Lisa Chandler, Litigation and Bankruptcy
Recovery Manager
lisa.chandler@ipfs.com

**Largest Unsecured Creditors**
Allen Group
Attn:  Timothy Allen, CPA - Managing Partner
120 Stony Point Road,  #230
Santa Rosa, CA 95401
(707) 528-3860
tim@allenwine.com
Tim@allengroupllp.com
Brent Garrison
Brent@allengroupllp.com

Bartelt Engineering
Attn:  Paul Bartelt
1303 Jefferson St #200B
Napa, CA 94559
(707) 258-1301
paulb@barteltengineering.com

Belkorp AG, LLC
Attn:  Laura Correll, Accounting
2413 Crows Landing Rd
Modesto, CA 95358
(209) 205-3706
ar@belkorpag.com
AR@BelkorpAg.com
ldunhouse@belkorpag.com

Brown's Auto Parts
Attn Dan Beltramai, Owner
1218 Main St.
Saint Helena, CA 94574-1901
(707) 963-3638
brownsauto169@gmail.com

Castino Restaurant Equipment And Supply
50 Utility Ct.
Rohnert Park, CA 94928-1659
(707) 585-3566
sales@castinosolutions.com

Central Valley
~~Attn:  Gerry Cruz, Accounting Mgr.~~
~~1100 Vintage Avenue.~~
~~Saint Helena, CA 94574~~
~~707 261-7900~~
~~gerryc@central-valley.com~~
**See address below per Gerry Cruz, Actg. Mgr.**

Central Valley
Administrative Offices
1804 Soscol Ave., #205
Napa, CA 94559
Attn:  Gerry Cruz, Accounting Mgr.
(707) 261-7900
gerryc@central-valley.com

Chubb Group of Insurance Companies
P.O. Box 777-1630
Philadelphia, PA 19175-0001
(800) 372-4822
**Returned – Box Closed**

Conway Beverage Group, LLC
Dba:  Elite Brands
Elite Brokerage
3238 Old Heather Rd.
San Diego, CA 92111-7716
Attn:  Mr. Jay Conway
Jayconway@elitebrands.biz

Famille Sylvain
855 Bordeaux Way #239
Napa, CA 94558-7549
(707) 492-3308
contactusa@famillesylvain.com

Tonnellerie Sylvain
855 Bordeaux Way
Napa, CA 94558
(707) 492-3308
contactusa@famillesylvain.com

Francois Freres USA Inc.
1403 Jefferson St.
Napa, CA 94559-1708
(707) 294-2204
office@francoisfreresusa.com
julie@francoisfreresusa.com
accounting@francoisfreresusa.com

CC 52262618v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

Case: 22-10381     Doc# 85     Filed: 10/31/22     Entered: 10/31/22 18:30:05     Page 51 of
53

F 9013-3.1.PROOF.SERVICE

assistant@francoisfreresusa.com

G3 Enterprises Inc.
(Tapp Labels)
580 Gateway Dr.
Napa, CA 94558
(707) 252-8300
jeff.licht@tapplabel.com

Napa County Treasurer
1195 3rd St. #108
Napa, CA 94559-3035
(707) 253-4314
Dawnette.martindale@countyofnapa.org
Napa County Treasurer-Tax Collector
Bob.Minahen@countyofnapa.org
Napa County Attorney
Wendy.dau@countyofnapa.org

Napa Ford Lincoln
170 Soscol Ave.
Napa, CA 94559
(707) 255-2580
**Via Regular Mail**

Ford Motor Credit Company
National Bankruptcy Service Center
P O Box 62180
Colorado Springs CO 80962-2180
**Via Regular Mail**

Napa Valley Petroleum
P.O. Box 2670
Napa, CA 94558-0528
(707) 252-6888
kamh@napavalleypetroleum.com

Napa Valley Vintners Association
P.O. Box 141
Saint Helena, CA 94574
(707) 963-3388
Attn: Steve Tradewell, CFO
stradewell@napavinters.com

Ramondin U.S.A. Inc.
Tammy Frandsen
Finance Manager

541 Technology Way
Napa, CA 94558
(707) 944-2277
tfrandsen@ramondin.com

Stanzler Law Group
Attn: Jordan S. Stanzler
390 Bridge Pkwy #220
Redwood City, CA 94065
(650) 739-0200
Jstanzler@stanzlerlawgroup.com

Wilbur Ellis Company LLC
c/o Registered Agent Solutions Inc.
720 14th St.
Sacramento, CA 95814-1905
(707) 963-3495
KZavala@wilburellis.com
MHAMMETT@wilburellis.com

Wilbur Ellis Company LLC
975 Vintage Ave.
St Helena, CA 94574
**Via Regular Mail**

Wine Service Cooperative
1150 Dowdell Lane
Saint Helena, CA 94574
Attn:  Steven Tamburelli
General Manager
Tel: (707) 963-9474
Fax: (707) 963 9359
Steve@wineservicecoop.com

Bright Event Rental
22674 Broadway # A
Sonoma, CA 95476
(707) 940-6060
Attn:  Michelle Minsk, Acctg.
accountsreceivable@bright.com

CNH Capital
Dept. 1801104747435
P.O. Box 78004
Phoenix, AZ 85062
(209) 632-3931
**Via Regular Mail**

ETS Laboratories
c/o Marjorie Burns 899 Adams Street #A
Saint Helena, CA 94574-1160

CC 52262618v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Case: 22-10381    Doc# 85    Filed: 10/31/22    Entered: 10/31/22 18:30:06    Page 52 of
53

**F 9013-3.1.PROOF.SERVICE**

(707) 963-4806
Attn Accounts Receivable Team
ar@etslabs.cm

Matheson Tri-Gas Inc.
Dept. LA 23793
Pasadena, CA 91185
(707) 963-4307
**Via Regular Mail**

Sovos Compliance LLC
200 Ballardvale St. Bldg 1 4th Fl.
Wilmington, MA 01887
(866) 890-3970
**Via Regular Mail**

Wine Technology America
474 Walten Way
Windsor, CA 95492
(707) 703-5919
**Via Regular Mail**

Wyatt Irrigation Co.
4407 Solano Ave.
Napa, CA 94558
(707) 578-3747
Lynne Colombamo, Acct Receivable Mgr.
lynne@wyattsupply.com

**Request for Special Notice**
Alcohol & Tobacco Tax & Trade Bureau
Attn: Daniel Paralta, Senior Counsel, Field
Operations
1436 2nd Street #531
Napa, CA 94559
**Via Regular Mail**

**Courtesy Email**

Jay B. Spievack, Esq.
Cohen Tauber Spievack & Wagner P.C.
420 Lexington Ave., Suite 2400
New York NY 10170-2499
email: jspievack@ctswlaw.com

Joseph Vann, Esq.
Cohen Tauber Spievack & Wagner P.C.
420 Lexington Ave., Suite 2400
New York NY 10170-2499
email: jvann@ctswlaw.com

Will Densenberger
Engel & Volkers St. Helena - Napa Valley
1111 Main Street, Suite A
St. Helena, CA 94574
(707) 302-8133
email: will@nvwineestates.com

John C. Vaughan
Newmark Knight Frank
4675 MacArthur Court, Suite 1600
Newport Beach, CA 92660
email: john.vaughan@nmrk.com
Mark Kasowitz: MKasowitz@kasowitz.com
Gavin D. Schryver: GSchryver@kasowitz.com

CC 52262618v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                           F 9013-3.1.PROOF.SERVICE

Case: 22-10381    Doc# 85    Filed: 10/31/22    Entered: 10/31/22 18:30:05    Page 53 of
53