1   Victor A. Sahn (CA Bar No. 97299)   _
      *victor.sahn@gmlaw.com*
2   Mark S. Horoupian (CA Bar No. 175373)
      *mark.horoupian@gmlaw.com*
3   Steven F. Werth (CA Bar No. 205434)
      *steven.werth@gmlaw.com*
4   **Greenspoon Marder LLP**
    a Florida limited liability partnership
5   333 South Grand Ave., Suite 3400
    Los Angeles, CA  90071
6   Telephone: 213.626.2311
    Facsimile: 213.629.4520
7

8   Attorneys for Debtor in Possession,
    Spring Mountain Vineyard Inc.

9                     **UNITED STATES BANKRUPTCY COURT**

10                    **NORTHERN DISTRICT OF CALIFORNIA**

11                          **SANTA ROSA DIVISION**

12   In re:                                  Case No. 1:22-bk-10381 CN

13   SPRING MOUNTAIN VINEYARD INC., a        Chapter 11
     Delaware corporation,
14                                           **APPLICATION TO EMPLOY**
                  Debtor.                     **GREENSPOON MARDER LLP AS**
15                                           **GENERAL BANKRUPTCY COUNSEL;**
                                             **DECLARATION OF KEVIN A**
16   Federal EIN:  36-3844911               **KRAKORA; DECLARATION OF VICTOR**
                                             **A. SAHN**
17
                                             Date:    November 22, 2022
18                                           Time:    3:30 p.m.
                                             Place:   U.S. Bankruptcy Court
19                                                    Courtroom 215
                                                      1300 Clay Street
20                                                    Oakland, CA 94612
21

22

23

24

25

26

27

28

**TO THE HONORABLE CHIEF JUDGE CHARLES NOVACK, UNITED STATES BANKRUPTCY JUDGE, THE TWENTY LARGEST UNSECURED CREDITORS, MGG CALIFORNIA LLC, THE OFFICE OF THE UNITED STATES TRUSTEE, AND PARTIES ENTITLED TO NOTICE:**

Pursuant to 11 U.S.C. §§ 105, 327(a), 330, 331, and Rule 2014 of the Federal Rules of Bankruptcy Procedure, Spring Mountain Vineyard Inc., a Delaware corporation, the debtor in possession in the above-captioned case (the "Debtor"), applies for authority to employ Greenspoon Marder LLP, a Florida limited liability partnership ("Greenspoon"), as general bankruptcy counsel in the Debtor's bankruptcy case, effective as of September 29, 2022, pursuant to the terms and conditions stated in this employment application (the "Application"). This Application is supported by the attached declarations of Kevin A. Krakora ("Krakora Decl.") and Victor A. Sahn ("Sahn Decl.").[1]

## I.

## BACKGROUND

### A.     The Debtor

Since 1992, the Debtor has owned the Spring Mountain Vineyard in Napa County, California (the "Vineyard"). The Vineyard is the primary asset of the Debtor, an ongoing business with 61 employees, millions of dollars in annual sales, and relationships with dozens of suppliers and thousands of customers. The Debtor's business consists primarily of growing grapes in its 135 vineyard blocks, harvesting those grapes and pressing them into wine in casks, bottling that wine from casks, and the storage and sale of that wine.

In October, 2018, the Debtor obtained a loan (the "Loan") of $185 million from MGG California LLC, as administrative and collateral agent for a group of lenders affiliated with that entity ("MGG"). As a result of amendments to that loan agreement, and certain additional

---

[1] Unless otherwise noted, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code"), and all references to the "Bankruptcy Rules" are to the Federal Rules of Bankruptcy Procedure ("FRBP"), 1001 et seq.

agreements, MGG possesses a security interest in substantially all of the Debtor's assets, with the exception of $600,000 which the Debtor's ultimate beneficial owner Mr. Jacob E. Safra ("Mr. Safra") transferred to the Debtor as an equity infusion on September 30, 2022. MGG also possesses a security interest in certain non-Debtor assets owned by Mr. Safra, and the Loan is guaranteed by Mr. Safra.

In February 2021, the Debtor and MGG entered into a forbearance agreement which gave MGG the ability to seize the Debtor's real property and personal property by a certain date - ultimately extended to September 30, 2022--upon certain conditions. Prior to this deadline, the Debtor requested that MGG continue this date, but MGG declined to do so. The Debtor commenced this bankruptcy case on an emergency basis on September 29, 2022 (the "Petition Date"), to prevent MGG from seizing the Vineyard and the Debtor's personal property. The Debtor's goal in this bankruptcy case is resolve its dispute by paying MGG and other creditors in full through a sale or refinance of the Vineyard, and to emerge from chapter 11 as quickly as feasible.

### B. Greenspoon's Prepetition Services

The Debtor retained Greenspoon only a few days prior to the Petition Date. During that brief time period, Greenspoon: (a) gathered relevant information, (b) advised the Debtor regarding the preparation of this chapter 11 case, (c) communicated with other professionals representing the Debtor regarding restructuring issues, (d) prepared the Debtor's bankruptcy petition, related documents, and started preparing the emergency "first day" motions which the Debtor filed on October 4, 2022, and (e) otherwise rendered services to the Debtor in anticipation of its emergency bankruptcy filing.

Greenspoon received a prepetition retainer in the amount of $250,000 (the "Retainer"). Of that amount, Green Light Investments--an affiliate of Mr. Safra--paid Greenspoon $50,000 on September 28, 2022. One day later, and prior to the filing of the Debtor's bankruptcy petition at approximately 8:40 p.m. Pacific Time on September 29, 2022, the Debtor wired $200,000 to Greenspoon. Greenspoon subsequently drew down on this retainer in the amount of $44,807.90 on account of fees and costs incurred prior to commencing this case. As of the

commencement of this case, the balance of the Retainer--$205,192.10--remains to be applied to Greenspoon's post-petition fees and expenses allowed by this Court.

Greenspoon is not representing Mr. Safra or any other person or entity affiliated with the Debtor in connection with this bankruptcy case. Greenspoon has in the past represented AT&T--a utility that provides telephone services to the Debtor for which the Debtor pays AT&T approximately $300 per month--on matters not related to bankruptcy or the Debtor. Additionally, the Debtor's insurance finance company, IFPS, which possesses a large secured claim against the Debtor, is a vendor of Greenspoon, but Greenspoon has never represented it. IFPS provides the Debtor with insurance premium financing for which the Debtor pays them approximately $265,000 per month.

## II.

## PROPOSED EMPLOYMENT OF GREENSPOON

### A. Scope and Terms of Employment

#### 1. Services To Be Provided

The Debtor now seeks to employ Greenspoon as its general bankruptcy counsel, pursuant to the terms and conditions stated in this Application, effective as of the Petition Date.

Greenspoon has agreed to continue its representation of the Debtor, and the Debtor believes it is necessary to have Greenspoon employed as general bankruptcy counsel in this chapter 11 case, to represent it as debtor in possession. Such employment may include advising, assisting, and/or representing the Debtor with regard to the following: (a) preparation of bankruptcy schedules and statement of affairs, (b) compliance with United States Trustee requirements, including the preparation of the Region 17 Chapter 11 Initial Reporting Requirements and Document Requests, (c) representation of the Debtor at the Debtor's initial debtor interview with the United States Trustee, and at the section 341(a) meeting of creditors, (d) negotiations with MGG and addressing issues relating to MGG's cash collateral, (e) the examination of claims of creditors in order to determine their validity, (f) employing necessary professionals to assist the Debtor in this bankruptcy case, (g) giving advice and counsel to the Debtor in connection with legal issues, including the use, sale, or lease of property of the estate,

Case 22-10381   Doc# 87   Filed: 10/31/22   Entered: 10/31/22 18:41:14   Page 4 of 40

use of cash collateral, postpetition financing, relief from the automatic stay, special treatment of creditors, payment of prepetition obligations, the rejection or assumption of leases, and related matters, (h) negotiation with creditors holding secured and unsecured claims, (i) various "first day" motions designed, among other things, to facilitate the smooth administration of the Debtor's case and minimize disruption relating to the commencement of this case, (j) preparing and presenting a plan of reorganization and disclosure statement, (k) objecting to claims as may be appropriate, (l) review, analysis, legal research, and the preparation of documents, correspondence, and other communications with regard to the foregoing matters, (m) the commencement and prosecution of avoidance actions and other adversary proceedings, (n) compliance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules, the requirements and guidelines of the United States Trustee, and any orders of this Court, and (o) in general, acting as counsel on behalf of the Debtor in any and all bankruptcy law and related matters which may arise in the course of this case.

Greenspoon's scope of employment will also include, as may be necessary, appearing in and prosecuting or defending suits and proceedings which may arise and to take proper steps in matters involving bankruptcy law or connected with the affairs of the estate.

### 2. Compensation and Retainer

The Debtor proposes to employ Greenspoon, effective as of the Petition Date, at the expense of the bankruptcy estate, pursuant to 11 U.S.C. § 330 in accordance with the terms and conditions stated in this Application.

No payment will be made to Greenspoon that is not in conformity with a cash collateral budget, in effect at the time, and approved by MGG or otherwise ordered by the Court.

Greenspoon will charge the Debtor for services rendered at Greenspoon's ordinary hourly rates in effect at the time the services are rendered. A schedule of the current rates being charged by attorneys and paraprofessionals of Greenspoon is attached to the Sahn Decl. as **Exhibit 1**, subject to periodic adjustment. As set forth in Exhibit 1, at this time, the attorneys at Greenspoon primarily responsible for the representation of the Debtor in this matter have hourly rates ranging from $475 to $750 for attorneys, and $250 for paraprofessionals. From time-to-time,

in other matters and not this one, Greenspoon may utilized the services of non-bankruptcy attorneys at the Firm, whose rates may be higher or lower than this range. Greenspoon's resume is attached to the Sahn Decl. as **Exhibit 2**, together with the individual profiles of the attorneys at Greenspoon expected to work on this matter.

Victor A. Sahn, Esq. whose current hourly rate is $750, will be the attorney at Greenspoon with primary responsibility for Greenspoon's representation of the Debtor. At this time, the other attorneys at Greenspoon who are contemplated to work extensively on this matter are Mark S. Horoupian, Steven F. Werth, and Steve Burnell. Their current hourly rates are $695, $610, and $475, respectively. In addition, Greenspoon utilizes paralegals for certain tasks when appropriate to minimize fees incurred. Karen Files is the paralegal currently assigned to this matter, and her hourly rate is $250. Greenspoon will also seek reimbursement of out-of-pocket expenses incurred in this engagement.

Greenspoon has not agreed to share any compensation received for services rendered in connection with this case with any other entity, except among Greenspoon's partners, associates, and employees.

Greenspoon is familiar with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the United States Trustee Guidelines, and shall comply with them. Greenspoon understands that, notwithstanding anything to the contrary in this Application, any and all fees and expenses sought or requested by, or paid on an interim basis to, Greenspoon are subject to Court approval and in the amounts approved by the Court upon application, and in accordance with any order of this Court, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules for this Court, and any other applicable law and guidelines. At the conclusion of this case or Greenspoon's proposed engagement, Greenspoon will file an application seeking final allowance and payment of all its fees and expenses, regardless of whether monthly or interim compensation has been paid to Greenspoon.

Greenspoon was engaged by the Debtor as restructuring/bankruptcy counsel prior to the Petition Date. Greenspoon provided prepetition services to the Debtor with regard to restructuring and bankruptcy issues, matters, and alternatives and provided services in preparation

Case 22-10381    Doc# 87    Filed: 10/31/22    Entered: 10/31/22 18:41:14    Page 6 of 40

for the commencement of this chapter 11 case.

As discussed above, Greenspoon received its prepetition Retainer in the total amount of $250,000. Greenspoon applied $44,807.90 of the Retainer to fees and costs incurred (including chapter 11 filing fees) in Greenspoon's representation of the Debtor prepetition. As a result, Greenspoon's unused prepetition Retainer balance was $205,192.10 as of the Petition Date, which remains in a trust account maintained by Greenspoon.

Pursuant to Section 331 of the Bankruptcy Code, all professionals are entitled to submit applications for interim compensation and reimbursement of expenses not more often than every 120 days. However, given the fast pace typical of larger, more complex chapter 11 cases, and certainly the fast pace of this case, there is a great deal of activity ongoing and if Greenspoon is required to wait an extended period of time for payment and reimbursement, Greenspoon will be unnecessarily and unfairly deprived of the compensation of similarly situated non-bankruptcy professionals who are accustomed to being paid and are being paid monthly for their services. Greenspoon should not be treated any differently. The Debtor proposes to adopt procedures identified below which will allow the Debtor and interested parties more time to monitor the fees and expenses incurred by Greenspoon on an ongoing basis, will promote the maintenance of a more level cash flow availability, and will promote efficient cash management. For these reasons, the Debtor requests that the Court establish the following procedure for compensating and reimbursing Greenspoon on a monthly basis.

### 3. Proposed Interim Fee Procedure

The Debtor proposes a system where the monthly payment of fees incurred and reimbursement of expenses of Greenspoon be structured as follows:

(1) On or before the 20th day of each month following the month for which compensation is sought, Greenspoon must file with the Court and serve a monthly statement (the "Monthly Statement") on the Debtor, MGG, the Office of the United States Trustee, and counsel to the Debtor's secured creditors, and all parties who have filed requests for notice in this bankruptcy case (collectively, the "Recipients").

(2) Each Monthly Statement must include the following information:

Case 22-10381    Doc# 87    Filed: 10/31/22    Entered: 10/31/22 18:41:14    Page 7 of 40

(i)     the total amount of compensation and reimbursement of expenses requested for the month;

(ii)     the names, hourly rates, total number of hours billed, and total amount of fees incurred by each individual during the month;

(iii)     a summary list of the expenses, separated by category, for which reimbursement is sought;

(iv)     a summary list of the fees, separated by matter categories, for which compensation is sought; and

(v)     detailed statements of the time entries for all individuals who performed services during the month.

(3)     Each of the Recipients shall have fifteen (15) days after service of a Monthly Statement (the "Objection Deadline") to raise any objection thereto.  Any objection to a Monthly Statement (each, an "Objection") must (i) be in writing, (ii) set forth the precise nature of the Objection, the grounds therefor, and the amount of fees and/or expenses to which the Objection applies, and (iii) be filed with the Court and served, on or before the Objection Deadline, on Greenspoon and each of the Recipients.

(4)     If no timely Objection is filed and served with respect to a Monthly Statement, then, without further order of the Court, the Debtor may pay Greenspoon 80% of the fees and 100% of the out-of-pocket expenses requested in the Monthly Statement.  All such payments shall be on an interim basis and subject to the filing of interim and final fee applications pursuant to applicable provisions of the Bankruptcy Code.

(5)     If a timely Objection is filed and served with respect to a Monthly Statement, then the objecting party and Greenspoon may attempt to resolve the Objection on a consensual basis.  If the parties are unable to reach a consensual resolution of the Objection, Greenspoon may either (i) set the matter for hearing with the Court, on not less than fifteen (15) days' notice to each of the Recipients, or (ii) forego payment of the disputed amount until the next interim or final fee application hearing, at which time the Court will consider and resolve the Objection.

(6)     Pending resolution of any timely Objection, the Debtor may pay Greenspoon the

8

lesser of (i) 80% of the fees and 100% of the expenses requested in the Monthly Statement to which the Objection applies; and (ii) the aggregate amount of fees and expenses requested in such Monthly Statement as to which no timely Objection was raised.

(7)     In accordance with Section 331 of the Bankruptcy Code, and applicable rules and guidelines, Greenspoon shall file with the Court and serve on the Recipients and such additional parties as may be required by the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure an application for Court approval of interim compensation and reimbursement of expenses (including the 20% held back from the payment of Monthly Statements), for the period dating back to the last application for Court approval of interim compensation and reimbursement of expenses, and not less frequently than every 120 days.  If Greenspoon fails to file an application for interim compensation when due, it shall be ineligible to receive further monthly payments of fees and expenses pursuant to the service of Monthly Statements until such time as Greenspoon submits an application for interim compensation which is then ruled upon by the Court.

(8)     The pendency of an Objection to payment of compensation or reimbursement of expense requested by Greenspoon in a particular Monthly Statement or interim fee application shall not prevent Greenspoon from receiving payment of fees and expenses pursuant to future Monthly Statements served in accordance with these proposed procedures, except as otherwise ordered by the Court.

(9)     Neither the payment of, nor the failure of any Recipient to serve an Objection, in whole or in part, to any Monthly Statement, shall waive that party's right to later object to an interim or final fee application, nor bind that party with respect to the subsequent consideration of the interim or final allowance of Greenspoon's fees and expenses.

(10)     The proposed procedures are optional and need only be followed if Greenspoon is seeking monthly compensation.

**4.     The Proposed Interim Fee Procedure Is Necessary And Appropriate**

Section 331 of the Bankruptcy Code provides for the payment of interim compensation for professionals retained by debtors in possession and creditors' committees.  In enacting the professional compensation provisions of the Bankruptcy Code, Congress adopted the

9

principle that "professionals in bankruptcy cases are entitled to be paid on a comparable basis to other privately retained counsel, both in terms of timeliness and amount of payment". *See* In re Commercial Consortium of California, 135 B.R. 120, 123 (Bankr. C.D. Cal. 1991) (citing Burgess v. Klenske (In re Monoa Finance Co., Inc.), 853 F.2d 687, 690 (9th Cir. 1988)); In re Nucorp Energy, Inc., 764 F.2d 655, 658-59 (9th Cir. 1985); First National Bank of Chicago v. Committee of Creditors Holding Unsecured Claims (In re Powerine Oil Co.), 71 B.R. 767, 770 (B.A.P. 9th Cir. 1986).

In a case well known to bankruptcy professionals practicing in the Ninth Circuit, the Bankruptcy Appellate Panel for the Ninth Circuit ("Panel") recognized that interim payments for professionals on a monthly basis are entirely appropriate in sophisticated and difficult cases. *See* United States Trustee v. Knudsen Corp. (In re Knudsen Corp.), 84 B.R. 668 (B.A.P. 9th Cir. 1988). In Knudsen, the Panel observed that:

> the problem, arising especially in large cases, is that when counsel must wait an extended period for payment, counsel is essentially compelled to finance the reorganization. This result is improper and may discourage qualified practitioners from participating in bankruptcy cases; a result that is clearly contrary to Congressional intent.

Id., at 672.

Knudsen holds that, at least in multifaceted and complex cases, monthly payments to professionals are appropriate without prior approval of the court so long as they are made pursuant to a procedure that provides the opportunity for subsequent review by the court. Id., at 671-72. The procedure proposed in this Application provides ample opportunity for such review, not only by the Court, but by the significant creditors such as MGG and the United States Trustee. Furthermore, in Knudsen, the Panel identified four factors that support the establishment of procedures similar to those outlined above:

• The case is an unusually large one in which an exceptionally large amount of fees accrue each month;

• The court is convinced that waiting an extended period for payment would place an undue hardship on professionals;

- The court is satisfied that the professionals will be able to respond to any subsequent reassessment of fees paid pursuant to the procedures; and

- The fee procedures are the subject of a noticed hearing prior to any payment thereunder.

Id., at 672.

Each of the Knudsen factors is present here.

First, the Debtor's case involves one of the most unique pieces of real estate in Napa County, California, and has a history of winemaking that goes back to the 1800s. The Debtor's bankruptcy filing was done on an emergency basis, has resulted in two hearings to date on the Debtor's use of MGG's cash collateral (and a third one scheduled for November 2, 2022), and the Debtor is concurrently retaining an investment banker to assist with the sale of the Vineyard. Greenspoon has incurred substantial time and effort in assisting the Debtor with reorganization issues, including its negotiations with MGG, and will continue to incur a substantial amount of fees and expenses on a monthly basis.

Second,, while Greenspoon does have a retainer of $205,192.10 from which it will request the ability to draw down pursuant to these procedures, the Debtor anticipates that given the amount of work necessary in the initial stages of this case, this retainer may not last beyond the first few months of this case, and thereafter Greenspoon would suffer unreasonable and unnecessary hardship in waiting for payment of potentially substantial sums during the four-month intervals between approval of interim fee applications.

Third, the proposed fee procedure will ensure that Greenspoon will be able to address any reassessment of fees or costs paid prior to interim or final allowance. The proposed fee procedure provides for a 20% fee holdback (one of the methods suggested by the Panel in Knudsen), which holdback will serve as a reserve from which any disallowed fees or costs can be deducted. Furthermore, Greenspoon is a well-established firm in the community, with extensive bankruptcy and litigation experience and the financial wherewithal to respond to any reassessment of fees or costs.

Finally, the proposed fee procedure is the subject of a noticed application pursuant

11

to which any party in interest may request a hearing. The Debtor will not make any monthly payments pursuant to the proposed fee procedures unless and until the requested procedures are approved by the Court. Further, no payment will be made to Greenspoon that is not in conformity with a cash collateral budget, in effect at the time, and approved by MGG or otherwise ordered by the Court. Accordingly, this last factor also has been met. *See* Sahn Decl., ¶¶27-28.

### B. Greenspoon Qualifications

Greenspoon is expert in insolvency, bankruptcy, restructuring, and reorganization matters and is well-qualified to represent the Debtor. See Sahn Decl., Ex. 2. Greenspoon, its partners, associates, and other attorneys are experienced in matters of restructuring, bankruptcy, insolvency, corporate reorganization, and debtor/creditor law, and in the representation of debtors, debtors in possession, creditors, creditors' committees and trustees in cases under the Bankruptcy Code and are well qualified to represent such parties in such matters. As a result, the Debtor believes that Greenspoon is well-qualified to render the services contemplated by this Application.

### C. Greenspoon is Disinterested and Not Adverse to the Bankruptcy Estate, and its Employment is in the Best Interests of the Bankruptcy Estate

Greenspoon does not hold a prepetition claim against the Debtor's bankruptcy estate. Greenspoon's representation in this case is limited to representation of the Debtor. Greenspoon does not represent and has not represented any other party connected with this bankruptcy case. Greenspoon is not representing Mr. Safra or any other non-debtor affiliate with regard to this bankruptcy case.

In addition, Greenspoon does not represent or hold any interest adverse to the bankruptcy estate, and Greenspoon is a disinterested person as that term is defined in Section 101(14) of the Bankruptcy Code. Furthermore, the Debtor believes that, except as otherwise may be set forth herein and in the Sahn Declaration, neither Greenspoon, its attorneys, employees nor other professionals have any connection with the Debtor, its employees, or accountants, the U.S. Trustee, or any employee of the U.S. Trustee, or any other parties in interest or creditors in this case.

The Debtor believes that the employment of Greenspoon upon the foregoing terms

Case: 22-10381   Doc# 87   Filed: 10/31/22   Entered: 10/31/22 18:41:14   Page 12 of 40

and conditions is fair, equitable, and in the best interests of the Debtor's bankruptcy estate.

**FOR THESE REASONS**, the Debtor respectfully requests that the Court enter an order: (1) approving the Application, (2) authorizing the employment of Greenspoon as the Debtor's general bankruptcy counsel in this case pursuant to Sections 327(a) and 330 of the Bankruptcy Code, on the terms and conditions stated herein, with such employment effective as of the Petition Date, September 29, 2022, (3) authorizing Greenspoon to draw down on any Retainer (or any unused portion of the Retainer) in connection with any cash collateral budget for the Debtor approved by the Court, (4) authorizing Greenspoon to receive payments from the Debtor for fees and reimbursement of expenses pursuant to the Interim Fee Procedure set forth in this Application, and (5) providing such other relief as is proper.

Dated: October 31, 2022

Respectfully submitted,

**GREENSPOON MARDER LLP**
A Florida limited liability partnership

By: _____
    Victor A. Sahn
    Mark S. Horoupian
    Steven F. Werth
    Attorneys for Debtor in Possession,
    Spring Mountain Vineyard Inc.

13

## DECLARATION OF KEVIN A. KRAKORA

I, Kevin A. Krakora, declare as follows:

1. I am over the age of 18 years.

2. I have personal knowledge of the facts stated herein. I can testify that these facts are true and correct.

3. I am the Chief Restructuring Officer of Spring Mountain Vineyard Inc., a Delaware corporation (the "Debtor").

4. I have been the Chief Restructuring Officer of the Debtor since August 22, 2022.

5. In my capacity as Chief Restructuring Officer of the Debtor, I am involved in its day-to-day operations including issues regarding financial matters, issues regarding operational concerns from the vineyard operations, sales issues and all related matters to its doing business.

6. I make this declaration in support of the attached "Application To Employ Greenspoon Marder LLP As General Bankruptcy Counsel" (the "Application"). Unless otherwise defined herein, capitalized terms have the meaning given them in the Application.

7. Since 1992, the Debtor has owned the Spring Mountain Vineyard in Napa County, California. The Vineyard is the primary asset of the Debtor, an ongoing business with 61 employees, millions of dollars in annual sales, and relationships with dozens of suppliers and thousands of customers. The Debtor's business consists primarily of growing grapes in its 135 vineyard blocks, harvesting those grapes and pressing them into wine in casks, bottling that wine from casks, and the storage and sale of that wine.

8. In October, 2018, the Debtor obtained a loan of $185 million from MGG California LLC, as administrative and collateral agent for a group of lenders affiliated with MGG. As a result of amendments to that loan agreement, and certain additional agreements, MGG possesses a security interest in substantially all of the Debtor's assets, with the exception of $600,000 which the Debtor's ultimate beneficial owner Mr. Jacob E. Safra transferred to the Debtor as an equity infusion on September 30, 2022. MGG also possesses a security interest in certain non-Debtor assets owned by Mr. Safra, and the Loan is guaranteed by Mr. Safra.

9. In February 2021, the Debtor and MGG entered into a forbearance agreement

14

which gave MGG the ability to seize the Debtor's real property and personal property by a certain date - ultimately extended to September 30, 2022--upon certain conditions. Prior to this deadline, the Debtor requested that MGG continue this date, but MGG declined to do so. The Debtor commenced this bankruptcy case on an emergency basis on September 29, 2022, to prevent MGG from seizing the Vineyard and the Debtor's personal property. The Debtor's goal in this bankruptcy case is resolve its dispute by paying MGG and other creditors in full through a sale or refinance of the Vineyard, and to emerge from chapter 11 as quickly as feasible.

10. The Debtor retained Greenspoon only a few days prior to the Petition Date. During that brief time period, Greenspoon: (a) gathered relevant information, (b) advised the Debtor regarding the preparation of this chapter 11 case, (c) communicated with other professionals representing the Debtor regarding restructuring issues, (d) prepared the Debtor's bankruptcy petition, related documents, and started preparing the emergency "first day" motions which the Debtor filed on October 4, 2022, and (e) otherwise rendered services to the Debtor in anticipation of its emergency bankruptcy filing.

11. The Debtor now seeks to employ Greenspoon as the Debtor's general bankruptcy counsel pursuant to the terms and conditions stated in the Application, effective as of the Petition Date. I believe the Debtor's employment of Greenspoon on such terms and conditions, to render the types of services identified in the Application, is necessary and appropriate.

12. Based on my understanding of Greenspoon's experience and qualifications, I believe Greenspoon is well-qualified to render the services contemplated by the Application.

13. To the best of my knowledge, and based on the Sahn Declaration, Greenspoon does not hold a prepetition claim against the Debtor's bankruptcy estate, does not represent any party other than the Debtor in connection with this case, and does not hold an adverse interest to the bankruptcy estate. Based on the Sahn Declaration, Greenspoon's representation in this case is limited to representation of the Debtor.

14. Furthermore, to the best of my knowledge, and based on the Sahn Declaration, except as otherwise set forth in the Application or in the Sahn Declaration, neither Greenspoon, its attorneys, employees nor other professionals have any connection with the Debtor, its employees,

15

accountants, the U.S. Trustee, or any employee of the U.S. Trustee, or other parties in interest or creditors.

15.     While Greenspoon represents that it holds a retainer of $205,192.10, I anticipate that given the amount of work necessary in the initial stages of this case, this retainer may not last beyond the first several months of this case.

16.     I believe that the Debtor's employment of Greenspoon on the terms and conditions set forth in the Application, is necessary, fair, equitable, and in the best interests of the Debtor's bankruptcy estate.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed October 31, 2022, in Chicago, Illinois.

Kevin A. Krakora

## DECLARATION OF VICTOR A. SAHN

I, Victor A. Sahn, declare as follows:

1. I am over the age of 18 years.

2. I have personal knowledge of the facts stated herein. I can testify that these facts are true and correct.

3. I am a partner at Greenspoon Marder LLP, a Florida limited liability partnership ("Greenspoon"), proposed bankruptcy counsel to Spring Mountain Vineyard Inc., a Delaware corporation. I am the attorney at Greenspoon with primary responsibility for representing the Debtor.

4. I make this declaration in support of the attached "Application To Employ Greenspoon Marder LLP As General Bankruptcy Counsel" (the "Application"). Unless otherwise defined herein, capitalized terms have the meaning given them in the Application.

5. At the Debtor's request, Greenspoon has agreed to serve as general bankruptcy counsel in the Debtor's bankruptcy case, effective as of the Petition Date, September 29, 2022, pursuant to the terms and conditions stated in the Application.

6. The Debtor retained Greenspoon only a few days prior to the Petition Date. During that brief time period, Greenspoon: (a) gathered relevant information, (b) advised the Debtor regarding the preparation of this chapter 11 case, (c) communicated with other professionals representing the Debtor regarding restructuring issues, (d) prepared the Debtor's bankruptcy petition, related documents, and started preparing the emergency "first day" motions which the Debtor filed on October 4, 2022, and (e) otherwise rendered services to the Debtor in anticipation of its emergency bankruptcy filing.

7. Greenspoon has agreed to continue its representation of the Debtor to represent it as debtor in possession. Such employment may include advising, assisting, and/or representing the Debtor with regard to the following: (a) preparation of bankruptcy schedules and statement of affairs, (b) compliance with United States Trustee requirements, including the preparation of the Region 17 Chapter 11 Initial Reporting Requirements and Document Requests, (c) representation of the Debtor at the Debtor's initial debtor interview with the United States Trustee, and at the

17

section 341(a) meeting of creditors, (d) negotiations with MGG and addressing issues relating to MGG's cash collateral, (e) the examination of claims of creditors in order to determine their validity, (f) employing necessary professionals to assist the Debtor in this bankruptcy case, including the firm of Getzler Henrich & Associates LLP which is the Debtor's financial advisor, and the firm of Cohen Tauber Spievack & Wagner P.C. which is the Debtor's litigation counsel in litigation pending in the California Superior Court, captioned *Spring Mountain Vineyards, Inc. v. Landmark American Ins. Co.*, Case No. 22CV000270, (g) giving advice and counsel to the Debtor in connection with legal issues, including the use, sale, or lease of property of the estate, use of cash collateral, postpetition financing, relief from the automatic stay, special treatment of creditors, payment of prepetition obligations, the rejection or assumption of leases, and related matters, (h) negotiation with creditors holding secured and unsecured claims, (i) various "first day" motions designed, among other things, to facilitate the smooth administration of the Debtor's case and minimize disruption relating to the commencement of this case, (j) preparing and presenting a plan of reorganization and disclosure statement, (k) objecting to claims as may be appropriate, (l) review, analysis, legal research, and the preparation of documents, correspondence, and other communications with regard to the foregoing matters, (m) the commencement and prosecution of avoidance actions and other adversary proceedings, (n) compliance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules, the requirements and guidelines of the United States Trustee, and any orders of this Court, and (o) in general, acting as counsel on behalf of the Debtor in any and all bankruptcy law and related matters which may arise in the course of this case.

8.      Greenspoon's scope of employment will also include, as may be necessary, appearing in and prosecuting or defending suits and proceedings which may arise and to take proper steps in matters involving bankruptcy law or connected with the affairs of the estate.

9.      Greenspoon will charge the Debtor for services rendered at Greenspoon's ordinary hourly rates in effect at the time the services are rendered. A true and correct copy of the schedule of the current rates being charged by attorneys and paraprofessionals of Greenspoon is attached as **Exhibit 1**, subject to periodic adjustment. As set forth in Exhibit 1, at this time, Greenspoon bills

its time at hourly rates ranging from $475 to $750 for attorneys, and $250 for paraprofessionals. A true and correct copy of Greenspoon's resume is attached as **Exhibit 2**, together with the individual profiles of the attorneys at Greenspoon expected to work on this matter.

10. My current hourly rate is $750 and I will be the attorney at Greenspoon with primary responsibility for Greenspoon's representation of the Debtor. The other attorneys at Greenspoon who are contemplated to work extensively on this matter are Mark S. Horoupian, Steven F. Werth, and Steve Burnell. Their current hourly rates are $695, $610, and $475, respectively. In addition, Greenspoon utilizes paralegals for certain tasks when appropriate to minimize fees incurred. Karen Files is the paralegal currently assigned to work on this matter, and her hourly rate is $250. Greenspoon will also seek reimbursement of out-of-pocket expenses incurred in this engagement.

11. Greenspoon has not agreed to share any compensation received for services rendered in connection with this case with any other entity, except among Greenspoon's partners, associates, and employees.

12. Greenspoon is familiar with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the United States Trustee Guidelines, and shall comply with them. Greenspoon understands that, notwithstanding anything to the contrary in this Application, any and all fees and expenses sought or requested by, or paid on an interim basis to, Greenspoon are subject to Court approval and in the amounts approved by the Court upon application, and in accordance with any order of this Court, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules for this Court, and any other applicable law and guidelines. At the conclusion of this case or Greenspoon's proposed engagement, Greenspoon will file an application seeking final allowance and payment of all its fees and expenses, regardless of whether monthly or interim compensation has been paid to Greenspoon.

13. Greenspoon was engaged by the Debtor as restructuring/bankruptcy counsel prior to the Petition Date. Greenspoon provided prepetition services to the Debtor with regard to restructuring and bankruptcy issues, matters, and alternatives and provided services in preparation for the commencement of this chapter 11 case.

Case: 22-10381    Doc# 87    Filed: 10/31/22    Entered: 10/31/22 18:41:14    Page 19 of 40

14.     Greenspoon received a prepetition Retainer in the total amount of $250,000. Greenspoon applied $44,807.90 of the Retainer to fees and costs incurred (including chapter 11 filing fees) in Greenspoon's representation of the Debtor prepetition.  As a result, Greenspoon's unused prepetition Retainer balance was $205,192.10 as of the Petition Date, which remains in a trust account maintained by Greenspoon.

15.     To ease the financial burden that would inure to Greenspoon in limiting payment only to every 120 days, consistent with any cash collateral stipulation, cash collateral usage, postpetition financing, and/or related budget approved by the Court, the Debtor and Greenspoon request that the Court authorize Greenspoon to draw-down from the Retainer on a monthly basis. All compensation and reimbursement of expenses paid to Greenspoon pursuant to the foregoing monthly draw-down procedures shall remain subject to approval of the Court.

16.     As detailed in Greenspoon's firm resume attached as Exhibit 2, Greenspoon is expert in insolvency, bankruptcy, restructuring, and reorganization matters and is well-qualified to represent the Debtor.  Greenspoon, its partners, associates, and other attorneys are experienced in matters of restructuring, bankruptcy, insolvency, corporate reorganization, and debtor/creditor law, and in the representation of debtors, debtors in possession, creditors, creditors' committees and trustees in cases under the Bankruptcy Code and are well qualified to represent such parties in such matters.

17.     Greenspoon maintains a computer database of past and present clients, and certain parties (such as significant creditors) related to those clients.  I caused Greenspoon's database to be searched for the names of the Debtor, any known secured creditors, general unsecured creditors, and other interested parties ("Searched Persons"), to determine the extent if any, of Greenspoon's (a) conflicts, (b) past relationships, and (c) connections with or to the Searched Persons.  The list of Searched Persons was matched against Greenspoon's computer database which contains (i) all names of all cases and matters in which Greenspoon has ever represented any person, (ii) the names of all cases and matters in which any attorney at Greenspoon's office has served as a trustee, examiner, responsible person, or receiver, (iii) the names of the persons that Greenspoon's office has represented, and (iv) the named of all persons and parties related or affiliated to the

20

persons whom Greenspoon has ever represented.  It is important to note that in spite of these efforts, it sometimes occurs that not all connections are discovered and that some additional connections arise after the filing of the employment application or after the entry of an order authorizing the employment.  Should this occur, I will ensure that Greenspoon makes additional disclosures to this Court and to parties in interest and will request appropriate relief depending on the nature of the connections, if any, that are subsequently discovered.  Greenspoon also circulated the name of the Debtor and other significant parties to Greenspoon's attorneys and other personnel for purposes of identifying any potential conflict.

18.     Based on the comprehensive search discussed in the immediately preceding paragraph, Greenspoon and I have not identified any potential or actual conflicts of interest relating to its representation of the Debtor.  Greenspoon has in the past represented AT&T on matters unrelated to this bankruptcy proceeding and unrelated to the Debtor.  Additionally, IFPS, the insurance financier for the Debtor, is a vendor of Greenspoon, but Greenspoon has not represented it.

19.     In addition, based on such search, neither I, Greenspoon, nor Greenspoon's other partners, associates, of counsel attorneys, or other employees have any prepetition claim against the Debtor.  Further, other than as disclosed herein, neither I, Greenspoon, nor Greenspoon's other partners, associates, of counsel attorneys, or other employees to my knowledge represent or have any connection with the Debtor, its employees, accountants, or advisors (except with regard to the Debtor's retention of Greenspoon and as set forth herein), creditors, any other party in interest in this case, their respective attorneys or accountants, the United States Trustee, or any person employed in the Office of the United States Trustee.

20.     Greenspoon's representation in this case is limited to representation of the Debtor. Except as set forth above, Greenspoon does not represent and has not represented any other party connected with this bankruptcy case.  Greenspoon is not representing Mr. Safra or any other non-debtor affiliate of Mr. Safra with regards to this bankruptcy case.

21.     Certain partners of Greenspoon are members of the private panel of bankruptcy trustees for the Central District of California (Howard M. Ehrenberg and Elissa D. Miller) and

Florida (Michael Bakst) maintained and supervised by the Office of the United States Trustee.

22.     Neither I, Greenspoon, nor Greenspoon's other partners, associates, of counsel attorneys, or other employees have any interest adverse to the Debtor or the Debtor's bankruptcy estate.  Further, I am not aware of facts that would lead me to conclude that Greenspoon is not a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code.

23.     Greenspoon has not in the past represented, nor does Greenspoon presently plan to represent in the future, any related debtors, principals, officers, or affiliates of the Debtor in this or any other court.

24.     Greenspoon has no connections with the Debtor, other than those disclosed herein.

25.     Greenspoon is not and was not an equity security holder or an insider of the Debtor.

26.     No partner, associate, other attorney, or other employee of Greenspoon is a relative or employee of the United States Trustee or a United States Bankruptcy Judge

27.     This is a large Chapter 11 case where the remaining prepetition retainer received by Greenspoon will be fully exhausted before the end of November, 2022.  The demands of the legal and business issues before the Court including (a) cash collateral, (b) the balance of the first day motions, (c) negotiations with MGG California, LLC regarding cash collateral usage, (d) the preparation of financial materials required by the Office of the United States Trustee, (e) the preparation of bankruptcy schedules and statement of financial affairs, (f) the negotiation of the investment banker retention agreement, (g) the preparation of employment application for the Debtor's financial advisor and CRO, the Debtor's accounting firm, the Debtor's special land use and real estate counsel, the Debtor's special litigation counsel, (h) the preparation of the employment application for the Debtor's investment banker, and (i) the preparation of the employment application for the debtor's general bankruptcy counsel at Greenspoon Marder and other daily tasks that come up during consultations with the Debtor's owner and with the Debtor's financial advisor and CRO oftentimes requires 2-3 senior lawyers at Greenspoon Marder working simultaneously on these many different tasks.

28.     The senior lawyers working on this matter could be working on other matters with hourly paying clients who pay their bills each month.  Asking these lawyers and Greenspoon

22

1  Marder to wait four months before it can be paid what it is owed is an unreasonable financial

2  burden on the law firm.  Greenspoon Marder is a fairly large firm with approximately 260 lawyers

3  at the present time in multiple offices around the United States.  However, this size and financial

4  strength are not reasons to make the law firm wait an unreasonable period of time before it can be

5  paid what it is owed.  It is for this reason that the *Knudsen Procedure* has been requested in this

6  Employment Application.  As stated, I have reviewed Greenspoon Marder's financial information

7  and can represent that the firm is able to return any funds that it receives under the fee procedures'

8  whose approval the firm seeks in this case.

9       29.     No payment will be made to Greenspoon that is not in conformity with a cash

10  collateral budget, in effect at the time, and approved by MGG or otherwise ordered by the Court.

11       I declare under penalty of perjury under the laws of the United States of America that the

12  foregoing is true and correct.  Executed October 31, 2022, in Los Angeles, California

13

14  _____

    Victor A. Sahn

15

16

17

18

19

20

21

22

23

24

25

26

27

28

23

# EXHIBIT 1

# RATES FOR PROFESSIONAL SERVICES

*(Effective since 7/1/2022)*

| ATTORNEYS | INITIALS | RATE |
|-----------|----------|------|
| HOWARD M. EHRENBERG | HME | $725 |
| MARK S. HOROUPIAN | MSH | $695 |
| DANIEL A. LEV | DAL | $650 |
| ELISSA D. MILLER | EDM | $650 |
| VICTOR A. SAHN | VAS | $750 |
| ALAN G. TIPPIE | AGT | $750 |
| ASA S. HAMI | ASH | $610 |
| STEVEN F. WERTH | SFW | $610 |
| STEVE BURNELL | SB | $475 |
| | | |
| **PARALEGALS** | | |
| KAREN L. FILES | KLF | $250 |
| | | |
| **TRUSTEE ADMINISTRATORS** | | |
| LUPE V. CORTEZ | LVC | $195 |
| | | |
| | | |
| PARTNERS | | $435-1100 |
| ASSOCIATE | | $250-590 |
| PARALEGALS | | $125-400 |



# EXHIBIT 2



# BANKRUPTCY & REORGANIZATION

PRACTICE OVERVIEW

WWW.GMLAW.COM

# OVERVIEW

Greenspoon Marder LLP's Bankruptcy and Reorganization Practice Group takes a comprehensive approach to bankruptcy law, drawing on the particular experience of attorneys practicing across our full-service business law firm. Our team focuses on keeping our clients out of the courtroom, because experience has shown that this approach often leads to beneficial results and considerable cost savings for our clients.

Our team has experience in representing:

- Debtors
- Buyers of Assets
- Creditors' Committees (in Court Proceedings)
- Unofficial Creditors' Committees (Out-Of-Court Proceedings)
- Institutional Lenders
- Investors
- Landlords
- Private and Publicly Held Corporations
- Receivers
- Trustees

When reaching an out-of-court settlement is not possible, Greenspoon Marder LLP's Litigation Practice Group has decades of experience in representing bankruptcy clients. Our attorneys routinely appear before the United States Bankruptcy Courts, United States Court of Appeals, United States District Courts, and state courts throughout the United States.





## Creditor Representation

Greenspoon Marder's attorneys have experience protecting and preserving the rights of secured, priority, and unsecured creditors. Included among the matters we handle for creditors are:



- Obtaining Relief from Stay/Adequate Protection
- Filing Proofs of Claim
- Contesting Motions to Value Collateral
- Contesting Use of Cash Collateral
- Defending Voidable Transfer Lawsuits Under Bankruptcy Code and State Law
- Prosecuting Dismissal of Bad Faith Bankruptcy Filings
- Prosecuting Denial of Discharge under Sector 727 of the Bankruptcy Code
- Prosecuting Non-Dischargeability of Debt under Sector 523 of the Bankruptcy Code
- Contesting Plan Confirmation in Chapter 11, 12, and 13 Cases

# MEET THE TEAM



### HOWARD M. EHRENBERG
### PARTNER
HOWARD.EHRENBERG@GMLAW.COM

Howard M. Ehrenberg is a partner in the Bankruptcy & Reorganization practice group at Greenspoon Marder. For nearly 30 years, he has served as a Chapter 11 and Chapter 7 trustee. As a bankruptcy litigator, he has represented both debtors and creditors, creditor's committees, landlords, and buyers looking to purchase assets from bankruptcy estates. Mr. Ehrenberg is also a certified mediator. He has been a member of the Bankruptcy Mediation Panel since 2016 for the Central District Bankruptcy Court Panel of Mediators. As a result of his high success rate as a mediator, Mr. Ehrenberg has been one of the most sought-after mediators in Los Angeles for cases including non-dischargeability actions, contract disputes, landlord tenant disputes, and legal malpractice actions over the last several years. Mr. Ehrenberg was appointed by the Office of the United States Trustee to the Chapter 7 Bankruptcy Panel of Trustees for the Central District of California in 1995. Since then, in his role as a trustee, he has managed bankruptcy estates in a range of industries. A Certified State Court Receiver, Mr. Ehrenberg facilitates the completion of ongoing projects, the liquidation of shared assets, and the continuation of business operations amid disputes in ownership and management.



### MARK S. HOROUPIAN
### PARTNER
MARK.HOROUPIAN@GMLAW.COM

Mark S. Horoupian is a partner in the Bankruptcy & Reorganization practice group at Greenspoon Marder where he focuses on bankruptcy, bankruptcy litigation, corporate restructurings, receiverships, assignments for the benefit of creditors and other non-bankruptcy insolvency solutions. He represents a wide spectrum of participants in the insolvency process, including creditors, creditors' committees, debtors in possession, Chapter 11 and Chapter 7 trustees, assignees for the benefit of creditors and acquirers of assets from bankruptcy estates. Mr. Horoupian also has substantial experience representing real estate developers in their individual Chapter 11 cases. Mr. Horoupian also acts as an assignee for the benefit of creditors.

# MEET THE TEAM



**DANIEL A. LEV**
PARTNER
DANIEL.LEV@GMLAW.COM

Daniel A. Lev is a partner in the Bankruptcy & Reorganization practice group at Greenspoon Marder, practicing in the area of corporate restructuring and insolvency. Because pre and post-bankruptcy proceedings are fast-paced and high-stakes, Daniel is committed to offering his clients practical solutions to their most difficult challenges as efficiently as possible. Clients appreciate Daniel's understanding of the business implications of legal disputes, as well as his ability to develop and execute strategies that minimize exposure, maximize recovery, and realize the best possible outcome, and his clients praise him for his practical thinking, strategic advice, and creative solutions. Daniel focuses his practice on the representation of debtors, the acquirers of distressed debt, real estate developers, secured and unsecured lenders, HOA's, landlords, creditors' committees, chapter 11 and 7 trustees, and investors in a broad range of insolvency, restructuring, business litigation, and creditors' rights matters. Prior to joining Greenspoon Marder, Daniel spent the past 21 years at a boutique bankruptcy firm based in Los Angeles. As a native Los Angelino and diehard UCLA fan, his approach to law follows the words of the legendary John Wooden, who aptly noted, "Failing to prepare is preparing to fail."



**ELISSA D. MILLER**
PARTNER
ELISSA.MILLER@GMLAW.COM

Elissa D. Miller is a partner in the Bankruptcy & Reorganization practice group at Greenspoon Marder. As a well-established bankruptcy lawyer and fiduciary, Ms. Miller represents secured and unsecured creditors, creditors' committees, and trustees in both Chapter 7 and Chapter 11 bankruptcy cases. She is a member of the Chapter 7 Panel of Bankruptcy Trustees appointed by the Office of the United States Trustee in the Central District of California and serves as a Chapter 11 trustee. Ms. Miller is currently serving as the Chapter 7 Trustee of the infamous law firm of Girardi Keese, and for Mark Slotkin, an entrepreneur and the owner of Antiquarian Traders, a long time established antique store and warehouse in Los Angeles, among many other matters. She has also been named as the Liquidating Trustee under the confirmed Chapter 11 Plan in the case of Jaguar Distribution Corp. a former distributor of films to airlines and cruise ships.

# MEET THE TEAM



## VICTOR A. SAHN
### PARTNER
VICTOR.SAHN@GMLAW.COM

Victor A. Sahn is a partner in the Bankruptcy & Reorganization practice group at Greenspoon Marder. With more than 40 years of experience, Mr. Sahn represents Chapter 11 Debtors and Creditors' Committees, as well as secured creditors, equity committees, and individual unsecured creditors, in bankruptcy cases. He also works frequently with asset purchasers in Chapter 11 and Chapter 7 cases, and with plan proponents in relation to Chapter 11 cases. Mr. Sahn has also represented Plaintiffs and Defendants in many litigation or adversary proceedings before bankruptcy courts. He is frequently sought after as counsel in such proceedings. These include actions under the fraudulent transfer statutes under State and Bankruptcy law, as well as common law or actions pursuant to applicable State or Federal law which are adjudicated in the bankruptcy forum.



## ALAN G. TIPPIE
### PARTNER
ALAN.TIPPIE@GMLAW.COM

Alan G. Tippie is a partner in the Bankruptcy & Reorganization practice group at Greenspoon Marder. He represents a wide range of clients in matters from business litigation and financial restructuring to reorganization and insolvency disputes. With an emphasis on creditor/debtor disputes, Mr. Tippie handles federal and state court litigation, as well as bankruptcy and related matters, on behalf of parties on all sides of these issues, including business participants, investors, creditors, fiduciaries, debtors, and institutional clients. He serves as a receiver by appointment from the Superior Court of the State of California, and as a private trustee and estate executor. As a receiver, Mr. Tippie manages receivership estates on behalf of financial institutions and other litigants that have sought his appointment.

# MEET THE TEAM



**ASA S. HAMI**
**SENIOR COUNSEL**
ASA.HAMI@GMLAW.COM

Asa S. Hami is senior counsel in the Bankruptcy & Reorganization practice group at Greenspoon Marder, practicing primarily in the area of corporate restructuring and insolvency. Mr. Hami works closely with his clients from start to finish to ensure they understand the often complex matters and issues involved in bankruptcy and insolvency proceedings, and provides them the necessary information and guidance to make informed decisions that best serve their interests throughout any given case. He focuses his practice on the representation of debtors, trustees, creditor committees, landlords, asset purchasers, and other parties in interest in Chapter 11 and Chapter 7 bankruptcy cases, avoidance litigation, and other contested matters and adversary proceedings. He has represented a range of clients across different industries.



**STEVEN F. WERTH**
**SENIOR COUNSEL**
STEVEN.WERTH@GMLAW.COM

Steven F. Werth is senior counsel in the Bankruptcy & Reorganization practice group at Greenspoon Marder. Mr. Werth has represented debtors and creditors in bankruptcy matters for over two decades. He has worked with individuals and companies in industries ranging from entertainment to janitorial services and manufacturing, regularly representing creditors' committees and small business debtors in Chapter 11 matters. Mr. Werth has particular expertise in negotiating landlord-tenant disputes that arise in the bankruptcy process, as well as addressing land-use issues and restrictive covenants related to golf course bankruptcies. He regularly navigates foreclosure actions on behalf of real property owners, in relation to office buildings and multi-unit residential properties, reorganizing debt and providing a runway to sale or refinancing.

# MEET THE TEAM



**STEVE BURNELL**
**ASSOCIATE**
STEVE.BURNELL@GMLAW.COM

Steve Burnell is an associate in the Bankruptcy & Reorganization practice group at Greenspoon Marder LLP. He represents debtors, trustees, creditors, and committees in all aspects of bankruptcy litigation, including appeals. Prior to joining the firm he was an associate at a boutique bankruptcy law firm and served as term law clerk for three years for the Honorable Erithe A. Smith, U.S. Bankruptcy Judge for the Central District of California. He is a member of the Commercial Law and Bankruptcy Section of the Orange County Bar Association and the Orange County Bankruptcy Forum, as well as a former participant in the National Conference of Bankruptcy Judges' Honorable Cornelius Blackshear Fellowship Program and the Next Generation Program. Mr. Burnell is a veteran of the U.S. Marine Corps having served honorably for four years.

# BACKED BY A NATIONAL, FULL-SERVICE LAW FIRM

Greenspoon Marder LLP is a full-service law firm with over 225 attorneys and more than 20 office locations across the United States. With operations from Miami to New York and from Denver to Los Angeles, the firm attracts some of the nation's top talent in key markets and innovation hubs. Its core practice areas include Real Estate, Litigation, and Transactional Services, complemented by the capabilities of a full-service firm. Greenspoon Marder has upheld a spot on The American Lawyer's Am Law 200 as one of the top law firms in the U.S. since 2015, and the firm's goal is to provide exceptional client service by developing a thorough understanding of each client's business needs and objectives in order to provide strategic, cost-effective solutions.

**SERVING CLIENTS THROUGHOUT THE U.S. WITH 20+ OFFICES IN KEY MARKETS**

Atlanta   Boca Raton   Chicago   Denver   Ft. Lauderdale   Las Vegas   Los Angeles   Miami
Naples   New York   Newark   Orlando   Scottsdale   Tallahassee   Tampa   West Palm Beach

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 333 South Grand Avenue, Suite 3400, Los Angeles, CA 90071.

A true and correct copy of the foregoing document entitled (*specify*): **APPLICATION TO EMPLOY GREENSPOON MARDER LLP AS GENERAL BANKRUPTCY COUNSEL; DECLARATION OF KEVIN A KRAKORA; DECLARATION OF VICTOR A. SAHN** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) October 31, 2022 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) October 31, 2022 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) October 31, 2022, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 31, 2022 | Patricia Dillamar | */s Patricia Dillamar* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

CC 52262618v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**

## 1. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")

Dean C. Burnick on behalf of Interested Party Mt. Hawley Insurance Company **(RSN)**
dcb@proughlaw.com

Jacquelyn H. Choi on behalf of Creditor Napa County Treasurer-Tax Collector **(RSN)**
jacquelyn.choi@rimonlaw.com, docketing@rimonlaw.com

Mark S Horoupian on behalf of Debtor Spring Mountain Vineyard Inc.
mark.horoupian@gmlaw.com, cheryl.caldwell@gmlaw.com

Steve Ma on behalf of Creditor MGG California, LLC
sma@proskauer.com

Jeff J. Marwil on behalf of Creditor MGG California, LLC
jmarwil@proskauer.com

Office of the U.S. Trustee / SR
USTPRegion17.SF.ECF@usdoj.gov

Elvina Rofael on behalf of U.S. Trustee Office of the U.S. Trustee / SR
elvina.rofael@usdoj.gov, Katina.Umpierre@usdoj.gov,GemMil.Langit@usdoj.gov

Victor A. Sahn on behalf of Debtor Spring Mountain Vineyard Inc.
victor.sahn@gmlaw.com, Karen.Files@gmlaw.com

Phillip John Shine on behalf of U.S. Trustee Office of the U.S. Trustee / SR
phillip.shine@usdoj.gov

Michael St. James on behalf of Interested Party Arcade Capital, LLC **(RSN)**
ecf@stjames-law.com

Ashley M. Weringa on behalf of Creditor MGG California, LLC
aweringa@proskauer.com

Steven F. Werth on behalf of Debtor Spring Mountain Vineyard Inc.
steven.werth@gmlaw.com, Patricia.Dillamar@gmlaw.com

Peter J Young on behalf of Creditor MGG California, LLC
pyoung@proskauer.com

CC 52262618v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                                F 9013-3.1.PROOF.SERVICE

Case: 22-10381    Doc# 87    Filed: 10/31/22    Entered: 10/31/22 18:41:14    Page 37 of
40

**SERVED BY EMAIL AND REGULAR MAIL**

**Secured Creditor**
Imperial PFS aka IPFS
49 Stevenson St. #127
San Francisco, CA 94105-2909
(877) 687-9826
Lisa Chandler, Litigation and Bankruptcy
Recovery Manager
lisa.chandler@ipfs.com

**Largest Unsecured Creditors**
Allen Group
Attn:  Timothy Allen, CPA - Managing Partner
120 Stony Point Road,  #230
Santa Rosa, CA 95401
(707) 528-3860
tim@allenwine.com
Tim@allengroupllp.com
Brent Garrison
Brent@allengroupllp.com

Bartelt Engineering
Attn:  Paul Bartelt
1303 Jefferson St #200B
Napa, CA 94559
(707) 258-1301
paulb@barteltengineering.com

Belkorp AG, LLC
Attn:  Laura Correll, Accounting
2413 Crows Landing Rd
Modesto, CA 95358
(209) 205-3706
ar@belkorpag.com
AR@BelkorpAg.com
ldunhouse@belkorpag.com

Brown's Auto Parts
Attn Dan Beltramai, Owner
1218 Main St.
Saint Helena, CA 94574-1901
(707) 963-3638
brownsauto169@gmail.com

Castino Restaurant Equipment And Supply
50 Utility Ct.
Rohnert Park, CA 94928-1659
(707) 585-3566
sales@castinosolutions.com

Central Valley
~~Attn:  Gerry Cruz, Accounting Mgr.~~
~~1100 Vintage Avenue.~~
~~Saint Helena, CA 94574~~
~~707 261 7900~~
~~gerryc@central-valley.com~~
**See address below per Gerry Cruz, Actg. Mgr.**

Central Valley
Administrative Offices
1804 Soscol Ave., #205
Napa, CA 94559
Attn:  Gerry Cruz, Accounting Mgr.
(707) 261-7900
gerryc@central-valley.com

Chubb Group of Insurance Companies
P.O. Box 777-1630
Philadelphia, PA 19175-0001
(800) 372-4822
**Returned – Box Closed**

Conway Beverage Group, LLC
Dba:  Elite Brands
Elite Brokerage
3238 Old Heather Rd.
San Diego, CA 92111-7716
Attn:  Mr. Jay Conway
Jayconway@elitebrands.biz

Famille Sylvain
855 Bordeaux Way #239
Napa, CA 94558-7549
(707) 492-3308
contactusa@famillesylvain.com

Tonnellerie Sylvain
855 Bordeaux Way
Napa, CA 94558
(707) 492-3308
contactusa@famillesylvain.com

Francois Freres USA Inc.
1403 Jefferson St.
Napa, CA 94559-1708
(707) 294-2204
office@francoisfreresusa.com
julie@francoisfreresusa.com
accounting@francoisfreresusa.com

CC 52262618v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012
F 9013-3.1.PROOF.SERVICE

assistant@francoisfreresusa.com

G3 Enterprises Inc.
(Tapp Labels)
580 Gateway Dr.
Napa, CA 94558
(707) 252-8300
jeff.licht@tapplabel.com

Napa County Treasurer
1195 3rd St. #108
Napa, CA 94559-3035
(707) 253-4314
Dawnette.martindale@countyofnapa.org
Napa County Treasurer-Tax Collector
Bob.Minahen@countyofnapa.org
Napa County Attorney
Wendy.dau@countyofnapa.org

Napa Ford Lincoln
170 Soscol Ave.
Napa, CA 94559
(707) 255-2580
**Via Regular Mail**

Ford Motor Credit Company
National Bankruptcy Service Center
P O Box 62180
Colorado Springs CO 80962-2180
**Via Regular Mail**

Napa Valley Petroleum
P.O. Box 2670
Napa, CA 94558-0528
(707) 252-6888
kamh@napavalleypetroleum.com

Napa Valley Vintners Association
P.O. Box 141
Saint Helena, CA 94574
(707) 963-3388
Attn: Steve Tradewell, CFO
stradewell@napavinters.com

Ramondin U.S.A. Inc.
Tammy Frandsen
Finance Manager

541 Technology Way
Napa, CA 94558
(707) 944-2277
tfrandsen@ramondin.com

Stanzler Law Group
Attn: Jordan S. Stanzler
390 Bridge Pkwy #220
Redwood City, CA 94065
(650) 739-0200
Jstanzler@stanzlerlawgroup.com

Wilbur Ellis Company LLC
c/o Registered Agent Solutions Inc.
720 14th St.
Sacramento, CA 95814-1905
(707) 963-3495
KZavala@wilburellis.com
MHAMMETT@wilburellis.com

Wilbur Ellis Company LLC
975 Vintage Ave.
St Helena, CA 94574
**Via Regular Mail**

Wine Service Cooperative
1150 Dowdell Lane
Saint Helena, CA 94574
Attn:  Steven Tamburelli
General Manager
Tel: (707) 963-9474
Fax: (707) 963 9359
Steve@wineservicecoop.com

Bright Event Rental
22674 Broadway # A
Sonoma, CA 95476
(707) 940-6060
Attn:  Michelle Minsk, Acctg.
accountsreceivable@bright.com

CNH Capital
Dept. 1801104747435
P.O. Box 78004
Phoenix, AZ 85062
(209) 632-3931
**Via Regular Mail**

ETS Laboratories
c/o Marjorie Burns 899 Adams Street #A
Saint Helena, CA 94574-1160

CC 52262618v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

Case: 22-10381     Doc# 87     Filed: 10/31/22     Entered: 10/31/22 18:41:14     Page 39 of
40

**F 9013-3.1.PROOF.SERVICE**

(707) 963-4806
Attn Accounts Receivable Team
ar@etslabs.cm

Matheson Tri-Gas Inc.
Dept. LA 23793
Pasadena, CA 91185
(707) 963-4307
**Via Regular Mail**

Sovos Compliance LLC
200 Ballardvale St. Bldg 1 4th Fl.
Wilmington, MA 01887
(866) 890-3970
**Via Regular Mail**

Wine Technology America
474 Walten Way
Windsor, CA 95492
(707) 703-5919
**Via Regular Mail**

Wyatt Irrigation Co.
4407 Solano Ave.
Napa, CA 94558
(707) 578-3747
Lynne Colombamo, Acct Receivable Mgr.
lynne@wyattsupply.com

**Request for Special Notice**
Alcohol & Tobacco Tax & Trade Bureau
Attn:  Daniel Paralta, Senior Counsel, Field
Operations
1436 2nd Street #531
Napa, CA 94559
**Via Regular Mail**

**Courtesy Email**

Jay B. Spievack, Esq.
Cohen Tauber Spievack & Wagner P.C.
420 Lexington Ave., Suite 2400
New York NY 10170-2499
email:  jspievack@ctswlaw.com

Joseph Vann, Esq.
Cohen Tauber Spievack & Wagner P.C.
420 Lexington Ave., Suite 2400
New York NY 10170-2499
email:  jvann@ctswlaw.com

Will Densenberger
Engel & Volkers St. Helena - Napa Valley
1111 Main Street, Suite A
St. Helena, CA 94574
(707) 302-8133
email:  will@nvwineestates.com

John C. Vaughan
Newmark Knight Frank
4675 MacArthur Court, Suite 1600
Newport Beach, CA 92660
email:  john.vaughan@nmrk.com
Mark Kasowitz:  MKasowitz@kasowitz.com
Gavin D. Schryver:  GSchryver@kasowitz.com

CC 52262618v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.
June 2012
F 9013-3.1.PROOF.SERVICE