1  Victor A. Sahn (CA Bar No. 97299)
      victor.sahn@gmlaw.com
2  Mark S. Horoupian (CA Bar No. 175373)
      mark.horoupian@gmlaw.com
3  Steve Burnell (CA Bar No. 286557)
      steve.burnell@gmlaw.com
4  **GREENSPOON MARDER LLP**
   333 South Grand Avenue, Suite 3400
5  Los Angeles, California 90071
   Telephone: 213.626.2311
6  Facsimile: 954.771.9264

7  Attorneys for Debtor in Possession,
   Spring Mountain Vineyard Inc.

8

**UNITED STATES BANKRUPTCY COURT**

9

**NORTHERN DISTRICT OF CALIFORNIA**

10

**SANTA ROSA DIVISION**

11

| | |
|---|---|
| In re | Case No. 1:22-bk-10381 CN |
| SPRING MOUNTAIN VINEYARD INC., a Delaware corporation, | Chapter 11 |
| Federal EIN: 36-3844911 | **DEBTOR'S NOTICE OF MOTION AND MOTION FOR ENTRY OF (I) AN ORDER APPROVING AUCTION AND BID PROCEDURES FOR THE SALE OF ITS WINE VINEYARD BUSINESS INCLUDING REAL PROPERTY, RIGHTS RUNNING WITH THE CERTAIN REAL PROPERTY, WINE INVENTORY, CERTAIN VINEYARD BUSINESS RIGHTS AND CONTRACT RIGHTS AND (II) GRANTING RELATED RELIEF; DECLARATION KEVIN A. KRAKORA, CHIEF RESTRUCTURING OFFICER, IN SUPPORT OF MOTION** |
| Debtor. | |
| | Date:      February 15, 2023 |
| | Time:      11:00 a.m. |
| | Place.:    Courtroom 215 |
| |            1300 Clay Street |
| |            Oakland, California 94612 |
| |            *Videoconference via Zoom* |

**PLEASE TAKE NOTICE** that a hearing on the Motion more fully described below shall take place on February 15, 2023 at 11:00 a.m. before the United States Bankruptcy Court for the Northern District of California, the Honorable Chief Judge Charles Novack Presiding. The hearing will take place via videoconference via ZoomGov. The Chapter 11 Debtor in Possession, Spring Mountain Vineyard, Inc. ("SMV" or "Debtor") has filed the *"Debtor's Notice Of Motion And Motion For Entry Of (I) An Order Approving Auction And Bid Procedures For The Sale Of Its Wine Vineyard Business Including Real Property, Rights Running With The Certain Real Property, Wine Inventory, Certain Vineyard Business Rights And Contract Rights And (II) Granting Related Relief"* (the "Motion" or "Sales Procedures Motion").

Generally, by the Motion, the Debtor is seeking approval of bid procedures for the sale of all or substantially all of its assets (the "Assets"), which include, without limitation, its wine vineyard business (the "Vineyard Business") consisting of approximately 845 acres of wine vineyard property ("Property") located in Napa, California, the wine-making and processing equipment, bottling equipment, certain rights that run with the Property (such as permits and water rights), approximately 79,000 cases of wine inventory, and the Debtor's contract rights, free and clear of all liens, claims, interests, or other encumbrances.

**PLEASE TAKE FURTHER NOTICE THAT** (1) counsel, parties, and other interested parties may attend the hearing by Zoom; (2) additional information is available on Judge Novack's Procedures page on the court's website; and (3) information on attending the hearing by Zoom will be provided on Judge Novack's calendar, posted no later than seven (7) days prior to the hearing date.

Objections to the relief requested in the Motion shall be filed on or before February 1, 2023 and served upon counsel for the Chapter 11 Debtor whose name, firm name and address are on the first page of the upper left corner of this Motion. Objections should also be served upon Jeff J. Marwil, Peter Young and Steve Ma of Proskauer, LLP, counsel for MGG California, LLC (jmarwil@proskauer.com, Pyoung@proskauer.com, SMa@proskauer.com) , the Debtor's primary secured creditor and upon Elvina Rofael and Trevor Fehr of the Office of the United States Trustee (Elvina.Rofael@usdoj.gov, Trevor.Fehr@usdoj.gov). Objections should be accompanied by all

evidence which the objecting party intends to offer in support of the Objection and an answering memorandum of points and authorities. The failure to file an objection or a timely objection may be treated by the Court as consent to the relief requested by the Debtor in the Motion and a waiver of any opposition thereto.

DATED: January 17, 2023

Respectfully submitted,

**GREENSPOON MARDER LLP**

By: _____/s/ Victor A. Sahn_____
Victor A. Sahn
Attorneys for Spring Mountain Vineyard, Inc.,
Chapter 11 Debtor in Possession

# TABLE OF CONTENTS

**Page**

I.      Background To Relief Requested...........................................................1

II.     Jurisdiction And Venue ....................................................................1

III.    Background of Debtor and Prepetition Operations and Capital Structure ...........2

IV.     Chapter 11 Filing and Post-Bankruptcy Court Orders and Operations.................3

V.      Discussion of Proposed Bid Procedures...............................................8

VI.     Memorandum of Points and Authorities ............................................15

VII.    Conclusion................................................................................20

Declaration Of Kevin A. Krakora In Support Of Motion ..................................21

# **TABLE OF AUTHORITIES**

**Page**

## **CASES**

*Calpine Corp. v. O'Brien Envtl. Energy, Inc.* (In re O'Brien Envtl. Energy, Inc.),
    181 F.3d 527 (3d Cir. 1999) ................................................................... 19

*Chinichian v. Campolongo* (In re Chinichian),
    784 F.2d 1440 (9th Cir. 1986) ................................................................. 18

*Committee of Equity Sec. Holders v. Lionel Corp.* (In re Lionel Corp.),
    722 F.2d 1063 (2d Cir. 1983)) ................................................................. 16

*In re 310 Associates*,
    346 F.3d 31 (2d Cir. 2003) ..................................................................... 19

*In re 995 Fifth Ave. Assocs., L.P.*,
    96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (quotations omitted) ................. 18

*In re America West Airlines, Inc.*,
    166 B.R. 908 (Bankr. D. Ariz. 1994) ...................................................... 19

*In re Bakalis*,
    220 B.R. 525 (Bankr. E.D.N.Y. 1998) .................................................... 19

*In re Comdisco, Inc.*,
    Case No. 01-24795 (RB) (Bankr. N.D. Ill. Aug. 9, 2002) ...................... 19

*In re Delaware & Hudson Ry. Co.*,
    124 B.R. 169 (D. Del. 1991) ................................................................... 16

*In re Ditech Holding Corporation*,
    No. 19-10412 (JLG) (ECF No. 456, Bankr. S.D.N.Y. Apr. 23, 2019)................. 18

*In re Hupp Indus.*,
    140 B.R. 191 (Bankr. N.D. Ohio 1997) ............................................. 18, 19

*In re Integrated Resources, Inc.*,
    147 B.R. 650 (Bankr. S.D.N.Y. 1992) ............................................... 18, 19

In re Kmart Corp.,
    Case No. 02-02474 (SPS) (Bankr. N.D. Ill. May 10, 2002) .................... 19

*In re Marrose Corp.*,
    1992 WL 33848, at *5 (Bankr. S.D.N.Y. 1992) ...................................... 18

*In re Nine West Holdings, Inc.*,
    588 B.R. 678 (Bankr. S.D.N.Y. 2018 ...................................................... 16

*In re S.N.A. Nut Co.*,
    186 B.R. 98 (Bankr. N.D. Ill. 1995) ........................................................ 19

*Official Comm. of Unsecured Creditors of LTV Aerospace Def. Co., v. LTV Corp.* (In re Chateaugay Corp.),
    973 F.2d 141 (2d Cir. 1992) ........................................................................ 16

*Polvay v. B.O. Acquisitions, Inc.* (In re Betty Owens Sch),
    1997 WL188127, *4 (S.D.N.Y. Apr. 17, 1997) .......................................... 16

## STATUTES

11 U.S.C. § 105 ................................................................................................... 2

11 U.S.C. § 105(a) .................................................................................... 15, 17, 18

11 U.S.C. § 361 ................................................................................................... 2

11 U.S.C. § 362 ................................................................................................... 2

11 U.S.C. § 363(b) ............................................................................................. 16

11 U.S.C. § 363(b)(1) ........................................................................................ 15

11 U.S.C. § 364(c)(2) .......................................................................................... 2

11 U.S.C. § 364(e) ............................................................................................... 2

11 U.S.C. § 507 ................................................................................................... 2

28 U.S.C. § 1334 ................................................................................................. 1

28 U.S.C. § 157(b) .............................................................................................. 1

28 U.S.C. §§ 1408 and 1409 .............................................................................. 1

## RULES

Fed. R. Bank. P.
    Rule 2002-1 ...................................................................................................... 2

Fed. R. Bankr. P.
    4001-2 ............................................................................................................... 2

Fed. R. Bankr. P.
    Rule 9006-1 ...................................................................................................... 2

Fed. R. Bankr. P.
    Rule 9013-1 ...................................................................................................... 2

Fed. R. Bankr. P.
    Rule 9014 .......................................................................................................... 2

Fed. R. Bankr. P.
    Rule 9014-1 .................................................................................................................. 2

Fed. R. Bankr. P.
    Rule 6004(f)(1) ............................................................................................................. 16

Fed. R. Bankr. P.
    Rule 2002(c)(1) ............................................................................................................. 16

Fed. R. Bankr. P.
    Rule 6004 ..................................................................................................................... 15

Fed. R. Bankr. P.
    Rule 7008 ....................................................................................................................... 1

# I.

## Background To Relief Requested

By this Motion, the Debtor seeks entry of (i) an order, substantially in the form attached hereto as **Exhibit A** (the "Bid Procedures Order"), pursuant to sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the Debtor to implement solicitation, bid, and auction procedures as set forth in **Exhibit 1** to the Bid Procedures Order (the "Bid Procedures")[1] for the sale (the "Sale") of all or substantially all of its assets (the "Assets"), which include, without limitation, its wine vineyard business (the "Vineyard Business") consisting of approximately 845 acres of wine vineyard property ("Property") located in Napa, California, the wine-making and processing equipment, bottling equipment, certain rights that run with the Property (such as permits and water rights), approximately 79,000 cases of wine inventory, and the Debtor's contract rights, free and clear of all liens, claims, interests, or other encumbrances, to the winning bidder for the assets (such entity or entities each, a "Purchaser") that submits the highest or otherwise best offer for the Assets as determined by the Debtor in its business judgment and in consultation with MGG California, LLC, as administrative agent and DIP agent ("MGG") pursuant to the Bid Procedures, and (ii) granting related relief. In support of this Motion, the Debtor respectfully represents as follows:

# II.

## Jurisdiction And Venue

1.      The United States Bankruptcy Court for the Northern District of California (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtor confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court.

2.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Bid Procedures.

3. The bases for the relief requested herein are sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), and 507 of the Bankruptcy Code, Bankruptcy Rules 2002-1, 4001-2, 9006-1, 9013-1, and 9014-1, and rules 9013-1 and 9014 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Northern District of California (the "Local Rules").

## III.

## Background of Debtor and Prepetition Operations and Capital Structure

Since 1992, the Debtor has owned the Spring Mountain Vineyard in Napa County, California (the "Vineyard"). The Vineyard is the Debtor's primary asset. The Debtor runs an ongoing business with approximately 70 employees, millions of dollars in annual sales, and relationships with dozens of suppliers and thousands of customers. The Vineyard features approximately 135 vineyard blocks across approximately 211 acres, each with a different elevation, soil and exposure to the elements and each producing a unique and diverse grape. The Vineyard also includes the estate residence, two winery buildings, a tasting room, six wells, cisterns, an irrigation system, a historic barn, other outbuildings, winery caves that have been completely finished and utilized for barrel storage and private events. The Debtor's business consists primarily of growing grapes in its 135 vineyard blocks, harvesting those grapes and pressing them into wine in casks, bottling that wine from casks, and storing and selling that wine. The Debtor's revenue comes almost entirely from the sale of wine and grapes.

The Debtor has traditionally financed its operations through secured lending. Prior to October 2018, the Debtor had a loan secured by substantially all of the real and personal property of the Debtor. On October 11, 2018, the Debtor refinanced this debt and entered into a new lending relationship. The Debtor entered into a "Credit and Guaranty Agreement" and numerous related agreements with fourteen lenders, and MGG, as administrative agent and collateral agent for those lenders, pursuant to which Debtor obtained a loan (the "Loan") in the amount of $185 million.

On September 29 ,2022 (the "Petition Date"), the Debtor commenced this bankruptcy case. As more particularly set forth in the Omnibus Declaration of Constantine S. Yannias in Support of Debtor's "First Day" Emergency Motions [Dkt. No. 26], the Debtor's bankruptcy filing was brought about by a number of extraordinary events, including, but not necessarily limited to, the COVID-19

pandemic's effects on the economy of Napa County. The Debtor commenced this reorganization case to restructure its operations and debt. The Debtor continues to manage its affairs and operate its business as a debtor in possessions. No trustee or creditors' committee has been appointed in this case.

As stated above, as part of its agreement with MGG for continued use of cash collateral, the Debtor has retained retain BNP Paribas and Bank of the West ("BNP-BOTW") as its investment banker for the purpose of bringing about a transaction whereby the Debtor's business and assets will be sold. Pursuant to the agreed upon timelines with MGG, the transaction is anticipated to close by April 15, 2023.

**IV.**

**Chapter 11 Filing and Post-Bankruptcy Court Orders and Operations**

**I.**    Chapter 11 Filing and Reasons for its Necessity: The Debtor's Chapter 11 filing was brought about by a number of extraordinary events which, when taken together, have led the Debtor to file its chapter 11 case.

**II.**    Significant Postpetition Events

    A.    First Day Motions

    The Debtor filed the following First Day Motions on or about October 4, 2022:

        (i)    "Debtor's Emergency Motion For Order: (1) Deeming Utility Companies Adequately Assured Of Future Performance; (2) Establishing Procedures For Requests For Additional Assurance; (3) Restraining Utility Companies From Discontinuing, Altering, Or Refusing Service; and (4) Providing For Related Relief; Memorandum Of Points And Authorities In Support Thereof" (Docket No. 15) ("Utilities Motion")

        (ii)    "Emergency Motion of Debtor and Debtor in Possession for Order Authorizing Debtor to Maintain Bank Accounts and Cash Management Systems; Memorandum of Points and Authorities in Support Thereof" (Docket No. 16) ("Cash Management Motion")

        (iii)    "Emergency Motion of Debtor and Debtor in Possession for Order Authorizing Payment and/or Honoring of Prepetition Employee Compensation, Benefits, Reimbursements, Withholding Taxes, Accrued Vacation, and Related Employee Claims;

1 Memorandum of Points and Authorities in Support Thereof" (Docket No. 17) ("Employee

2 Motion")

3            (iv)      "Emergency Motion of Debtor and Debtor in Possession for Order

4 Authorizing Debtor to Pay Prepetition Claims of Certain Companies as Critical Vendors;

5 Memorandum of Points and Authorities in Support Thereof" (Docket No. 18) ("Critical Vendors

6 Motion")

7            (v)      "Emergency Motion to Use Cash Collateral Pursuant to Section 363(c) of

8 the Bankruptcy Code and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure;

9 Memorandum of Points and Authorities in Support Thereof" (Docket No. 19) ("Cash Collateral

10 Motion")

11       Each of these First Day Motions were granted by the Court after Notice and an

12 Opportunity for Hearing to creditors and interested parties.  Orders were entered granting the

13 Utilities Motion (Docket No. 44), an interim order was entered granting the Cash Management

14 Motion (Docket No. 45), an interim order was entered granting the Employee Motion (Docket No.

15 46), an interim order was entered approving the Critical Vendors Motion (Docket No. 47), and an

16 interim order was entered approving a letter agreement (Docket No. 39) regarding temporary cash

17 collateral usage between the Debtor and MGG (Docket No. 48).

18       After further notice and an opportunity for hearing, final orders were entered approving the

19 Employee Motion (Docket No. 64), the Critical Vendors Motion (Docket No. 62), the Cash

20 Management Motion (Docket No. 73) and the cash collateral letter agreement (Docket No. 76-

21 agreement to use cash collateral until November 4, 2022 with further hearing to take place on

22 November 2, 2022).  Further information regarding subsequent cash collateral agreements

23 between the Debtor and MGG are set forth below.

24       B.    Cash Collateral Agreements with MGG California, LLC

25       Debtor and MGG have entered into a number of agreements in this case regarding Debtor's

26 usage of cash collateral. Those agreements and motions and a short description of them follow

27 directly below—

28            (i)      Debtor filed its Emergency Motion for Authorization to Use Cash Collateral

1  and related relief on October 4, 2022.  (Docket No. 19) ("Emergency Cash Collateral Motion")

2  (ii) On October 6, 2022, Debtor and MGG filed their "Notice That Debtor And

3  Lender Have Entered Into A Letter Agreement Regarding The Interim Use Of Cash Collateral"

4  ("First Letter Agreement") (Docket No. 39).

5  (iii) On October 7, 2022, this Court entered its "Interim Order On Debtor's

6  Emergency Motion Pursuant To Section 363(C) Of The Bankruptcy Code And Rule 4001(B) Of

7  The Federal Rules Of Bankruptcy Procedure For Interim Use Of Cash Collateral And Approving

8  Letter Agreement Between the Debtor and MGG California, LLC as Administrative Agent"

9  (Docket No. 48) which approved the First Letter Agreement on an interim basis and set a final

10  hearing on approval of the Interim Order and First Letter Agreement on October 18, 2022 at

11  11:00 a.m.  The Debtor gave notice of this hearing.

12  (iv) In regard to the continued hearing regarding cash collateral usage that was

13  set by the Court for October 18, 2022 at 8:00 a.m., Pacific Time, MGG and the Debtor entered

14  into an agreement which was approved by the "Second Interim Order: (I) Authorizing the Debtor

15  to Utilize Cash Collateral of Prepetition Secured Parties through November 4, 2022; (II) Granting

16  Adequate Protection to Prepetition Secured Parties; and (III) Scheduling a Final Hearing Pursuant

17  to Bankruptcy Rules 4001(b) and 4001(c); and (IV) Granting Related Relief" ("Second Interim

18  Order") (Docket No. 76).  The Second Interim Order completely laid out the agreements between

19  the Debtor and MGG, the treatment of MGG's secured claim under the adequate protection

20  agreement found in the Second Interim Order, provided for other agreements designed to

21  implement the eventual business plan in this Chapter 11 case and otherwise stated for the record

22  what the rights of the Debtor and MGG were in this bankruptcy case.  The Second Interim Order,

23  importantly, also provided for and approved a budget for operations for a period of three weeks

24  covering the weeks of October 17, October 24 and October 31, 2022.  A further hearing regarding

25  cash collateral usage was set for November 2, 2022 at 11:00 a.m.

26  (v) Prior to the November 2, 2022 hearing, the Debtor and MGG entered into

27  the "Final Order Extending to December 31, 2022: Second Interim Order (I) Authorizing the

28  Debtor to Utilize Cash Collateral of Prepetition Secured Parties through November 4, 2022; (II)

Granting Adequate Protection to Prepetition Secured Parties; and (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and 4001(c); and (IV) Granting Related Relief"("Final Order") (Docket No. 92). The Final Order was approved on an interim basis on November 2, 2022 and a further hearing on approval of the Final Order was set for November 10, 2022 at 11:00 a.m. Debtor gave notice of this hearing. There were no objections to the Final Order and the Final Order was approved on November 10, 2022, extending cash collateral usage pursuant to the previously submitted budget, through December 31, 2022. (Docket No. 120).

Among other things, MGG and the Debtor agreed upon a series of sales milestones in connection with the marketing and sale of the Assets. The sale milestones are set forth in Debtor's Cash Collateral Agreement (Docket #92) and the proposed Debtor in Possession Financing Motion (Docket No. 185).

With the expiration of cash collateral usage on December 31, 2022, the parties have extended the final order on the same terms and conditions until January 16, 2023 with the Debtor simply permitted to use cash collateral from its business operations in the normal course according to the terms and conditions of a Budget attached as an Exhibit to the Stipulation between MGG and the Debtor to extend cash collateral usage through January 16, 2022.

Previously, as stated by the Debtor in its original Emergency Cash Collateral Motion, the Debtor indicated that it did not generate enough revenue from its operations to meet its normal course operating expenses, notwithstanding the Debtor's position regarding the value of its assets which was included as evidence along with the Emergency Cash Collateral Motion. In order to provide the necessary funds to underwrite operations from the bankruptcy filing date of September 29, 2022 until December 31, 2022 when current cash collateral usage expires, Debtor received funds from Mr. Jaqui Safra in order to pay its operating costs. The amount of Mr. Safra's advances were approximately $2,050,000 through December 31, 2022. However, as stated above, in consideration of the sale process, Debtor must continue its operations through April 15, 2023, which is the projected closing date of the sale transaction which the Debtor is now seeking through its retained investment banker, BNP Paribas Securities, Inc. Based upon the Approved Budget attached as Exhibit "1" to the DIP Financing Motion covering operations from January 1,

1   2023 through April 15, 2023, the Debtor needs approximately $4.0 Million to pay its operating

2   expenses and related professional fees incurred in this Chapter 11 case.

3       It is this financing which the Debtor seeks approval of on an interim basis at the upcoming

4   hearing on January 11, 2023 at 11:00 a.m., Pacific Time, before this Court which interim approval

5   will be followed by a further noticed final hearing on this financing to take place approximately

6   two weeks after the interim hearing at the convenience of the Court and parties in this case.

7       C.      Employment of Professionals

8       Debtor filed the following Applications to Employ Certain Professionals on October 31,

9   2022.  Those employment applications included:

10          (i)      Application to Employ Cohen Tauber Spievack & Wagner P.C. as Special

11  Litigation Counsel (Docket No. 81).  An order was entered on December 14, 2022 authorizing

12  Cohen Spievack's employment (Docket No. 166).

13          (ii)     Application to Employ Stanzler Law Group as Special Litigation Counsel

14  (Docket No. 82)

15          (iii)    Application to Employ Allen Wine Group LLP as Ordinary Course

16  Professional (Docket No. 83)—later withdrawn

17          (iv)     Application to Employ Jigsaw Advisors LLC to Provide Outside Winery

18  and Management Services (Docket No. 84)

19          (v)      Application to Employ Getzler Henrich & Associates, LLC to Provide

20  Interim Management Services and to Designate Kevin A. Krakora as Chief Restructuring Officer

21  (Docket No. 85)

22          (vi)     Application to Employ Abbott & Kindermann as Special Land Use,

23  Environmental and Real Estate Counsel (Docket No. 86). An order authorizing their employment

24  was entered on December 13, 2022 (Docket No. 164).

25          (vii)    Application to Employ Greenspoon Marder LLP as General Bankruptcy

26  Counsel (Docket No. 87)

27      Later, on November 7, 2022, Debtor filed its Application to Employ BNP Paribas

28  Securities Corp. as Investment Banker Effective as of October 14, 2022 (Docket No. 96).  The

order authorizing the employment of BNP Paribas was granted after the Court permitted a hearing on it to take place on shortened time (Docket No. 161).

D.       Sale Milestones Agreement with MGG California, LLC

The Debtor and MGG have entered into agreements regarding sale milestones in this case in the context of continued cash collateral usage of MGG in this Bankruptcy Case and in the further context of upcoming Debtor in Possession Financing whose approval is being sought on a preliminary basis on January 11, 2023 at 11:00 a.m. The sale milestones are set forth in Debtor's Cash Collateral Agreement (Docket No. 92) and the proposed Debtor in Possession Financing Motion (Docket No. 185).

**V.**

**Discussion of Proposed Bid Procedures**

The Debtor proposes to implement the Bid Procedures described below in an effort to maximize the realizable value of the Assets for the benefit of the Debtor's estate, creditors, and other interested parties. The Bid Procedures contemplate a solicitation and bid process pursuant to which all interested and qualified parties will have a fair opportunity to perform diligence and bid on the Assets and where all bids will be subject to higher or better offers. The Debtor will present further evidence with respect to the Sale process and the Successful Bid(s) at the Sale Hearing.

Specifically, the Debtor will implement the following Bid Procedures, on substantially the terms set forth below, for the Sale of the Assets:[2]

    a.     Stalking Horse Bid Deadline: February 17, 2023 at 12:00 p.m. (prevailing Pacific time)

    b.     Stalking Horse Bids: The Debtor may, in an exercise of its business judgment, and in consultation with MGG, (a) select one or more Qualified Bidders to act as a stalking horse bidder in connection with the Auction (the "Stalking Horse Bidder") and (b) in connection with any stalking horse agreement with a Stalking Horse Bidder, provide a breakup fee and other bid protections typically provided to a Stalking Horse Bidder (the "Bid Protections"). The Bid Protections shall not be effective until authorized by the Court. The Debtor will require any proposal, solicitation, or offer (each, a "Bid") submitted by

---

[2] In the event of any inconsistency between the terms described in this Motion and the terms described in the Bid Procedures, the Bid Procedures shall govern.

a bidder (a "<u>Bidder</u>") to act as a stalking horse bidder in connection with the Auction (the "<u>Stalking Horse Bidder</u>") to comply with all of the following, in the Debtor's reasonable business judgment and after consultation with MGG (collectively, the "<u>Stalking Horse Requirements</u>"):

i. ***Description of the Bidder***. The Bid must include: (a) description of the company, fund, or entity acting as Bidder, and (b) confirmation that the Bid is either (y) being made solely on behalf of the Bidder and that the Bidder is acting for its own account and not as an agent of any third party or in concert with another person, or (z) otherwise disclose the identity of any agent or third party participating on behalf of such Bidder.

ii. ***Treatment of Management.*** The Bid must include a statement of the Bidder's intentions with respect to the Debtor's existing management and employees.

iii. ***Assets***. The Bid must (a) clearly state which Assets and liabilities that the Bidder is agreeing to purchase and assume, including any debt to be assumed, and (b) any of the Assets and liabilities that are proposed to be excluded from the proposed Sale.

iv. ***Purchase Price***. The Bid must clearly set forth the cash purchase price in US Dollars and liabilities assumed (the "<u>Purchase Price</u>") for the Assets. The Bid should include a detailed description of any critical assumptions and value drivers considered in deriving the Purchase Price, including the valuation methodologies used to derive the Purchase Price, as well as any information and other factors that could potentially increase or decrease the prospective Purchase Price.

v. ***Financing***. To the extent that a Bid is not accompanied by evidence of the Bidder's capacity to consummate the proposed transactions set forth in its Bid with cash on hand, each Bid must include a detailed description of the expected sources of debt and equity financing for the Sale. To the extent such financing is dependent on third-party sources, the Bidder should provide an indication of the anticipated timing and steps required to secure such financing. For Bids that provide for the repayment, in cash, in full of all debt and other obligations owing to MGG as of the closing of the proposed Sale, the Bid should also indicate whether the Bidder is open to a roll-over investment of any portion of the Purchase Price.

vi. ***Due Diligence.*** The goal is to give the Bidder the opportunity to conduct the most thorough due diligence possible before submitting a Bid to act as the Stalking Horse Bidder. Therefore, such Bidder will get immediate access to an online data room and

submit a request list for additional due diligence items that such Bidder would need. Such Bidder shall also have the opportunity to visit and inspect the Assets. Remaining due diligence issues, if any, should be specified in the Bid together with the date by which any due diligence condition will be removed.

vii. ***Approvals and Conditions***. The Bid must (a) indicate what third party approvals, if any, are required to close the Sale, and (b) confirm the Bidder's ability to close the Sale by April 15, 2023.

viii. ***List of Contacts***. The Bid must include the name(s) and contact details of the Bidder's deal team leader(s), external advisors (including financial, legal, accounting, tax and others), if any, that have been or are planned to be engaged to assist the Bidder in the Sale.

c. <u>Bid Deadline</u>: March 17, 2023 at 12:00 p.m. (prevailing Pacific time)

d. <u>Qualified Bids</u>: A Bid submitted by a Bidder will be considered a qualified bid (a "<u>Qualified Bid</u>" and such entity a "<u>Qualified Bidder</u>") only if the Bid is submitted in writing by the Bid Deadline and is deemed to comply with all of the following, in the Debtor's reasonable business judgment and after consultation with MGG (collectively, the "<u>Requirements</u>"):[3]

i. ***Assets***. The Bid must clearly state which Assets and liabilities that the Bidder is agreeing to purchase and assume, including any debt to be assumed. If any Assets or liabilities are excluded from the Sale, the Bid must clearly identify such excluded Assets and liabilities.

ii. ***Purchase Price***. The Bid must (a) clearly set forth the Purchase Price to be paid, and (b) identify separately the cash component of the Purchase Price and each noncash component of the Purchase Price.

iii. ***Deposit***. The Bid must be accompanied by a cash deposit in the amount equal to five (5) percent of the aggregate Purchase Price of the Bid to be held in an interest-bearing escrow account to be identified and established by the Debtor (the "<u>Qualified Bid Deposit</u>"); *provided* that if a Qualified Bidder increases its Bid at the Auction and is the Successful Bidder or Backup Bidder (each as defined herein), such Qualified Bidder must increase its Qualified Bid Deposit to match the proposed Purchase Price

---

[3] MGG shall be deemed a Qualified Bidder for all purposes under these Bid Procedures and at all times, and shall be entitled to participate at the Auction. A Bid submitted by MGG shall be deemed a Qualifying Bid.

submitted at the Auction within three (3) business days after the Auction.

iv. **_Bid Documents_**.   The Bid must include duly executed, non-contingent transaction documents necessary to effectuate the transactions contemplated in the Bid (the "Bid Documents").   The Bid Documents shall include: (a) a purchase agreement setting forth the definitive terms of the proposed Sale (the "Purchase Agreement"), (b) a blackline comparison of the Purchase Agreement against the form of purchase agreement provided by the Debtor or any stalking horse agreement, if applicable, (c) a schedule of assumed executory contracts and unexpired leases to the extent applicable to the Bid, together with evidence of such Bidder's ability to provide adequate assurance of future performance of such executory contracts or unexpired leases (as required by section 365(f)(2)(B) of the Bankruptcy Code), and (d) a statement from the bidder that: (y) it is prepared to enter into and consummate the Sale contemplated in the Bid Documents no later than April 15, 2023  and (z) the Qualified Bid will be irrevocable (whether or not such Qualified Bid is selected as the Successful Bid or the Backup Bid) until the consummation of the Sale.

v. **_Identity_**.   The Bid must fully disclose the legal identity of each person or entity bidding or otherwise participating in connection with such Bid (including each principle, equity holder or financial provider or backer of the bidder if such bidder is an entity formed for the purpose of consummating the proposed transaction(s) contemplated by such Bid), and the complete terms of any such participation, and must also disclose any connections or agreements with the Debtor, any other known Partial Bidder, Bidder, or Qualified Bidder, and/or any officer or director of the foregoing.

vi. **_Backup Bidder_**.   By submitting a Bid, each Bidder agrees to be a Backup Bidder (as defined below) in the event the Debtor selects it as such; _provided_, _however_, MGG shall not have any obligation to serve as Backup Bidder.

vii. **_Demonstrated Financial Capacity_**.   The Bidder must have, in the Debtor's business judgment, in consultation with MGG, the necessary financial capacity to consummate the proposed transactions required by its Bid.   To the extent that Bid is not accompanied by evidence of the Bidder's capacity to consummate the Sale set forth in its Bid with cash on hand, the Bid must include fully committed and firm financing for each component of debt or equity in support of such Bid and other ability to consummate the proposed Sale, in each case acceptable to the Debtor in its business judgment, in consultation with MGG.   Such funding commitment or other financing must be unconditional and must not be subject

to any internal approval, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions reasonably acceptable to the Debtor, in consultation with MGG.

viii. ***Contingencies; No Financing or Diligence Outs***. The Bid shall not be conditioned on (a) the obtaining or the sufficiency of financing, (b) any internal or third-party approval (other than governmental or regulatory approvals), or (c) on the outcome or review of due diligence, but may be subject to the accuracy at the closing of specified representations and warranties or the satisfaction at the closing of specified conditions, which shall be acceptable to the Debtor in its business judgment, in consultation with MGG.

ix. ***Authorization***. The Bid must include (a) evidence satisfactory to the Debtor, in consultation with MGG, that the Bidder is reasonably likely to obtain regulatory approval, if any is required, to purchase the Assets, and (b) the Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtor, in consultation with MGG) with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid, or a representation that no such authorization or approval is required.

x. ***As-Is, Where-is***. The Bid must include a written acknowledgement and representation that:

1. The Bidder has had an opportunity to conduct any and all due diligence regarding the Assets prior to submitting its Bid.

2. The Bidder has relied solely upon its own independent review, investigation and/or inspection of any documents and the Assets in making its Bid or that of any of its legal, financial or other advisors.

3. The Bidder did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the business of the Debtor or the Assets or the proposed transaction, or the completeness or accuracy of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the Purchase Agreement ultimately accepted and executed by the Debtor.

4. All proof of financial ability to consummate a Sale in a timely manner and all information provided to support adequate assurance of future performance is true and correct.

5. The sale of the Assets shall be on an "as is, where is" basis an without representations or warranties of any kind, nature, or description by the Debtor, its agents or estate, or any other party, except to the extent set forth in the Purchase Agreement.

xi. ***Irrevocable***. ALL BIDS SHALL BE DEEMED IRREVOCABLE. IN THE EVENT THAT A BIDDER SEEKS TO REVOKE SUCH BID, THE DEBTOR SHALL BE ENTITLED TO KEEP SUCH BIDDER'S DEPOSIT.

xii. ***Disclaimer of Fees***. The Bid shall not be subject to conditions, representations, or terms that the Debtor determines, in consultation with MGG, to be unacceptable, and shall not be conditioned upon the Court's approval of any Bid Protections (except with respect to a Stalking Horse Bidder), such as a break-up fee, termination fee, expense reimbursement, working fee or similar type of payment (other than in connection with a Stalking Horse Bid); *provided*, *however*, the Debtors may accept a Baseline Bid (as defined below) with such Bid Protections to the extent authorized by the Court according to the procedure outlined below. By submitting a Bid, the Bidder is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code.

xiii. ***Adherence to Bid Procedures.*** By submitting its Bid, each Bidder is agreeing to abide by and honor the terms of these Bid Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction.

xiv. ***Consent to Jurisdiction.*** The Bidder must submit to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to the Debtor's qualification of Bid, the Auction, the construction and enforcement of these Bid Procedures, the Sale documents, and the closing of the Sale, if applicable.

xv. ***Other Information.*** The Bid contains such other information reasonably requested by the Debtor, in consultation with MGG.

e. <u>Auction</u>: If the Debtor receives more than one Qualified Bid by the Bid Deadline, the Debtor shall conduct an auction on March 24, 2023 at 9:00 a.m. (prevailing Pacific Time) or, subject to the consent of MGG, such later time as the Debtor may provide so long as such change is communicated reasonably in advance by the Debtor to all Qualified Bidders and other invitees. The Auction will be conducted in-person, the details of which will

be provided to all Qualified Bidders and other invitees in advance of the Auction.

    f.  <u>Auction Rules</u>: The rules governing the Auction shall include:

        i.  ***Baseline Bid as Price Floor***.  The first round of bidding at the Auction shall commence at the amount of the Baseline Bid.

        ii.  ***Highest and Best Offer***.  After the first round of bidding and between each subsequent round of bidding, the Debtor shall announce the Bid that it believes, in its reasonable business judgment and upon consultation with MGG, to be the highest or otherwise best offer for the Assets (the "<u>Leading Bid</u>").  Each round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a subsequent Bid with full knowledge of the Leading Bid.

        iii.  ***Minimum Overbid***.  Qualified Bidders may submit successive Bids, based on and increased from the Baseline Bid or the Leading Bid (as applicable) (each such Bid, an "<u>Overbid</u>").  Any Qualified Bidder's initial Overbid and each subsequent Overbid shall be (a) at least a $500,000 increase in cash consideration over the Leading Bid *plus* (b) if the Stalking Horse Bidder has the then-Leading Bid, the amount of the Bid Protections (the "<u>Minimum Overbid</u>").

        iv.  ***Overbid Alterations***.  An Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable to the Debtor's estate than any prior Qualified Bid or Overbid, as determined in the Debtor's business judgment, in consultation with MGG, but shall otherwise comply with the terms of these Bid Procedures.

        v.  ***Selection of Successful Bidder and Backup Bidder***. Immediately prior to concluding the Auction, the Debtor shall, in consultation with its advisors and MGG, (a) determine and identify the highest or otherwise best Qualified Bid (the "<u>Successful Bid</u>") and the Qualified Bidder submitting such Successful Bid (the "<u>Successful Bidder</u>"); (b) determine and identify the next highest or otherwise best Qualified Bid(s) after the Successful Bid (the "<u>Backup Bid</u>") and the Qualified Bidder submitting such Backup Bid (the "<u>Backup Bidder</u>"); and (c) notify all Qualified Bidders at the Auction of the identify of the Successful Bidder, the amount of the Purchase Price and other material terms of the Successful Bid, the identity of the Backup Bidder, and the amount of the Purchase Price and other material terms of the Backup Bid. The terms of the Successful Bid(s) and the Backup Bid(s) shall be reasonably acceptable to MGG.  Within one (1) business day of the completion of the Auction, the Successful Bidder shall complete and execute all agreements, instruments, or other documents evidencing and containing the terms and conditions upon which the Successful Bid was made.

g. <u>Notice of Successful Bids</u>: Within two (2) business days following the conclusion of the Auction, the Debtor shall file a notice identifying (i) the Successful Bidder(s), (ii) the Purchase Price for the Successful Bid(s), (iii) the Backup Bidder(s), (iv) the Purchase Price for the Backup Bid(s), and (v) a substantially final version of the Purchase Agreement(s).

h. <u>Sale Hearing</u>: The Court will hold a hearing to consider approval of the Sale(s) to the Successful Bidder(s) or Backup Bidder(s) (if applicable) on April [__], 2023 or such other date set by the Court (the "<u>Sale Hearing</u>").

i. <u>Reservation of Rights</u>: The Debtor further reserves the right as it may reasonably determine to be in the best interests of the bankruptcy estate to subject to its fiduciary duties to maximize the value of the Debtor's Estate, in all cases subject to consultation with or the consent of, as the case may be, MGG: (i) determine which bidder(s) are Qualified Bidders; (ii) determine which bids are Qualified Bid(s); (iii) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal, (iv) reject any Bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bid Procedures or the requirements of the Bankruptcy Code or (c) contrary to the best interests of the Debtor and its bankruptcy estate; (iv) waive terms and conditions set forth in these Bid Procedures with respect to all potential bidders; (v) impose additional terms and conditions with respect to all Potential Bidders; (vi) subject to MGG's prior written consent, extend the deadlines set forth herein; (vii) subject to MGG's prior written consent, adjourn or cancel the Auction and/or Sale Hearing in open court without further notice; and (viii) subject to MGG's prior written consent, adopt, implement, amend and/or waive such other, additional or existing procedures or requirements pursuant to the Bid Procedures (including, without limitation, extending any deadlines established pursuant to the Bid Procedures) as they may determine to be in the best interests of their estates and that serves to further an orderly Auction and bid process, without further notice to parties entitled to attend the Auction, as appropriate.

The Debtor believes that the process contemplated by the Bid Procedures will foster a competitive bidding atmosphere that will generate significate value for its estate.

## VI.

## <u>Memorandum of Points and Authorities</u>

Bankruptcy Code section 363(b)(1) provides: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Bankruptcy Code section 105(a) provides: "The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). In pertinent part, Bankruptcy Rule 6004 states that, "all sales not in the ordinary course of

business may be by private sale or by public auction." Fed. R. Bankr. P. 6004(f)(1). With respect to the notice required in connection with a sale, Bankruptcy Rule 2002(c)(1) states, in pertinent part, that:

> the notice of a proposed use, sale or lease of property . . . shall include the time and place of any public sale, the terms and conditions of any private sale and the deadline for filing objections. The notice of a proposed use, sale or lease of property, including real estate, is sufficient if it generally describes the property.

Fed. R. Bankr. P. 2002(c)(1).

To approve the use, sale, or lease of property outside the ordinary course of business, the Court must find an "articulated business justification" for the proposed action. *Committee of Equity Sec. Holders v. Lionel Corp.* (In re Lionel Corp.), 722 F.2d 1063, 1070 (2d Cir. 1983)); *see also In re Nine West Holdings, Inc.*, 588 B.R. 678, 686 (Bankr. S.D.N.Y. 2018) (debtor has broad discretion to use, sell, or lease, other than in the ordinary course of business, property of the estate, so long as such use is supported by a good business reason); *Official Comm. of Unsecured Creditors of LTV Aerospace Def. Co., v. LTV Corp.* (In re Chateaugay Corp.), 973 F.2d 141 (2d Cir. 1992) (holding that a judge reviewing a section 363(b) application must find from the evidence).

Once a court is satisfied that there is a sound business justification for the proposed sale, the court must then determine whether (i) the debtor has provided the interested parties with adequate and reasonable notice, (ii) the sale price is fair and reasonable, and (iii) the purchaser is proceeding in good faith. *Polvay v. B.O. Acquisitions, Inc.* (In re Betty Owens Sch), 1997 WL188127, *4 (S.D.N.Y. Apr. 17, 1997) (citing *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991)).

Here, the Sale of the Assets meets these requirements and, accordingly, and the Debtor submits it should be approved. The Debtor submits that implementation of the Bid Procedures will generate maximum interest in the Assets, thereby yielding the highest or otherwise best bids for such assets. Accordingly, the Debtor submits that the Sale will be the culmination of a thorough and exhaustive marketing process, and that the decision to sell the Assets to the Purchaser(s) is adequately informed, reasonable, and in the best interests of the Debtor, its bankruptcy estate, and other stakeholders.

A.    The Sale Process is a Sound Exercise of the Debtors' Business Judgment.

There is more than ample business justification to sell the Assets as set forth herein, and as such, an order granting the relief requested is a matter within the discretion of the Court and would be consistent with the provisions of the Bankruptcy Code. See 11 U.S.C. § 105(a). Subject to the Purchaser(s) willingness to provide fair and reasonable consideration, the Debtor's estate and creditors will benefit from the approval of the Bid Procedures without the added costs in terms of time and expenses associated with a Court-approved sale process.

B.    The Proposed Bid Procedures Are Fair and Reasonable

The Bid Procedures are designed to maximize the value received for the Assets and will allow for a timely Auction process while providing bidders with ample time and information to submit a timely Qualified Bid. The Bid Procedures are designed to ensure that the Assets will be sold for the highest or otherwise best possible purchase price under the circumstances of this Chapter 11 Case. The Debtor shall continue to subject the value of the Assets to market testing, and by permitting prospective purchasers to bid on the Assets, the Debtor shall ensure that the ultimate Sale price is an accurate reflection of the Asset's true value. Accordingly, the Debtor and all parties in interest can be assured that the consideration received for the Assets will be fair and reasonable

C.    Bid Protections

The Debtor also seeks authority, but not direction, pursuant to the Bid Procedures, in an exercise of its reasonable business judgment and in consultation with MGG, to select one or more Qualified Bidders to act as stalking horse bidder(s) in connection with the Auction (each a "Stalking Horse Bidder"). In connection with any stalking horse agreement with a Stalking Horse Bidder, the Debtor requests that, subject to the reasonable consent of MGG and upon one (1) days' prior notice to the U.S. Trustee, it be authorized to agree to (x) provide the Stalking Horse Bidder with a reasonable breakup fee, (y) reimburse the Stalking Horse Bidder for the reasonable and documented out of pocket fees and expenses, and/or (z) any other bid protections typically provided to a Stalking Horse Bidder ((x), (y), and (z) collectively, the "Bid Protections"), which Bid Protections shall not be effective until authorized by the Court. In the event the Debtor seeks to provide Bid Protections to a Stalking Horse Bidder, the Debtor shall file a notice with the Court with the requested Bid Protections.

In connection therewith, the Debtor requests the Court schedule a hearing on March 15, 2023 at 11:00 a.m. (prevailing Pacific time) (the "Bid Protections Hearing") to consider approval of such Bid Protections, with notice of such hearing to be provided to MGG and the U.S. Trustee, and filed on the docket of the Debtor's case.

Payment of a break-up fee, expense reimbursements and work fees, like those proposed here, in a bidding process for sales is appropriate so long as such payment is a valid exercise of the Debtor's business judgment. Specifically, bid protections like a breakup fee "may be legitimately necessary to convince a `white knight' bidder to enter the bidding by providing some form of compensation for the risks it is undertaking." *In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (quotations omitted); see also *In re Integrated Resources, Inc.*, 147 B.R. 650, 659-660 (Bankr. S.D.N.Y. 1992) (bid protections can prompt bidders to commence negotiations and "ensure that a bidder does not retract its bid").

Under section 105(a) of the Bankruptcy Code, "[t]he court may issue any order that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). In essence, the Court may enter any order safeguarding the value of the debtor's estate if doing so is consistent with the Bankruptcy Code. See, e.g., *Chinichian v. Campolongo* (In re Chinichian), 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *In re Ditech Holding Corporation*, No. 19-10412 (JLG) (ECF No. 456, Bankr. S.D.N.Y. Apr. 23, 2019) (authorizing designation of one or more stalking horse bidders, including the provision of bid protections); *In re Integrated Res.*, 147 B.R. at 659-660 ("Break-up fees are important tools to encourage bidding and to maximize the value of the debtor's assets . . . . [i]n fact, because the . . . corporation has a duty to encourage bidding, break-up fees can be necessary to discharge [such] duties to maximize value."); *In re Hupp Indus.*, 140 B.R. 191, 194 (Bankr. N.D. Ohio 1997) (without any reimbursement, "bidders would be reluctant to make an initial bid for fear that their first bid will be shopped around for a higher bid from another bidder who would capitalize on the initial bidder's. . . due diligence"); *In re Marrose Corp.*, 1992 WL 33848, at *5 (Bankr. S.D.N.Y. 1992) (stating that "agreements to provide reimbursement of fees and expenses are meant to compensate the potential acquirer who serves as a catalyst or `stalking

horse' which attracts more favorable offers").

A proposed bidding incentive should be approved when it is in the best interests of the estate. *In re S.N.A. Nut Co*., 186 B.R. 98, 104 (Bankr. N.D. Ill. 1995); see also *In re 310 Associates*, 346 F.3d 31, 34 (2d Cir. 2003); *In re Bakalis*, 220 B.R. 525, 532 (Bankr. E.D.N.Y. 1998); *In re America West Airlines, Inc.*, 166 B.R. 908 (Bankr. D. Ariz. 1994); *In re Hupp Indus., Inc.*, 140 B.R. 191 (Bankr. N.D. Ohio 1992). Typically, this requires that the bidding incentive provide some benefit to the debtor's estate. *Calpine Corp. v. O'Brien Envtl. Energy, Inc.* (In re O'Brien Envtl. Energy, Inc.), 181 F.3d 527, 533 (3d Cir. 1999) (holding that right to break-up fees and expenses depended on whether bidder provided a benefit to the debtor's estate by promoting competitive bidding or researching the value of the assets at issue to increase the likelihood that the selling price reflected the true value of the company). The Debtor believes that approval of the Bid Procedures will help foster such a competitive bidding process.

The Stalking Horse Bidder's bid will serve as a minimum floor bid upon which other bidders may rely and validate the offering to the market of potentially interested parties. Therefore, the Stalking Horse Bidder has provided a material benefit to the Debtors, their estates and their respective creditors by encouraging bidding and increasing the likelihood that the best possible price for the Purchased Assets will be received. See, e.g., *Integrated Resour*ces, 147 B.R. at 659 (noting that termination payment is an "important tool to encourage bidding and to maximize the value of the debtor's assets"); *In re Comdisco, Inc*., Case No. 01-24795 (RB) (Bankr. N.D. Ill. Aug. 9, 2002) (finding proposed termination fee to be of substantial benefit to the debtor's estate); In re Kmart Corp., Case No. 02-02474 (SPS) (Bankr. N.D. Ill. May 10, 2002).

The Debtor's ability to select a Stalking Horse Bidder will increase the likelihood that the best possible price for the Assets will be received, by permitting other qualified bidders to rely on the diligence performed by the Stalking Horse Bidder, and moreover, by allowing qualified bidders to utilize the Stalking Horse Bidder's form purchase agreement as a platform for negotiations and modifications in the context of a competitive bidding process.

Accordingly, the Debtor requests that the Court authorize the Debtor, after consultation with MGG, to select a Stalking Horse Bidder and provide it with certain Bid Protections in the

event the Stalking Horse Bidder is not the successful bidder at the Auction, subject to the Court's approval at the Bid Protections Hearing.

## VII.

### Conclusion

WHEREFORE, the Debtor respectfully requests that the Court (1) approve the Bid Procedures and (2) grant such other and further relief as is just and appropriate in the circumstances.

DATED: January 17, 2023                    Respectfully submitted,

**GREENSPOON MARDER LLP**


By:      _/s/ Victor A. Sahn_
         Victor A. Sahn
         Mark S. Horoupian
         Steven Burnell
         Attorneys for Attorneys for Spring Mountain
         Vineyard, Inc.

**<u>Declaration Of Kevin A. Krakora In Support Of Motion For For Entry Of (I) An Order Approving Auction And Bid Procedures For The Sale Of Its Wine Vineyard Business Including Real Property, Rights Running With The Certain Real Property, Wine Inventory, Certain Vineyard Business Rights And Contract Rights</u>**

I, Kevin A. Krakora, hereby declare:

1.      I am over the age of 18 years.

2.      I am a managing director of Getzler Henrich & Associates LLC ("<u>Getzler Henrich</u>").

3.      I am a Certified Turnaround Professional with over thirty years of executive experience specializing in corporate turnarounds, strategic consulting, financial and operational restructurings, and debtor bankruptcy situations.

4.      I have extensive experience advising both companies and senior lenders in complex debt restructurings, financings and workouts. I have served as chief restructuring officer and independent director in many complex restructuring situations.

5.      I specialize in advising and working with under-performing companies to develop and implement business transformation strategies, operational and financial improvements, and turnaround plans. I have worked with financially distressed companies to address liquidity issues, improve working capital, develop cost containment programs, implement process improvements and improve profitability.

6.      In addition, I have directed and been responsible for running sales processes in out-of-court matters and in other bankruptcy cases, including but not limited to *In re Fluid Routing Solutions Intermediate Holding Corp., et al.* (Case No. 09-10384-CSS (Bankr. D. Del) and *In re Stant Parent Corp., et al.* (Case No. 09-12647-BLS (Bankr. D. Del). While the Debtor has retained BNP Paribas as the investment banker to run its sale process, I submit this as evidence of my experience in similar sales processes and with bidding procedures.

7.      I am the Chief Restructuring Officer ("CRO") of Spring Mountain Vineyard, Inc., a Delaware corporation, the debtor in possession in the above captioned case (the "Debtor"). I have served in this capacity for the Debtor since my appointment on August 22, 2022.

8.      I submit this Declaration ("<u>Declaration</u>") in Support of the "*"Debtor's Notice Of*

*Motion And Motion For Entry Of (I) An Order Approving Auction And Bid Procedures For The Sale Of Its Wine Vineyard Business Including Real Property, Rights Running With The Certain Real Property, Wine Inventory, Certain Vineyard Business Rights And Contract Rights And (II) Granting Related Relief"* (the "<u>Motion</u>" or "<u>Sales Procedures Motion</u>").  I submit this Declaration based upon my personal knowledge and if called as a witness, would testify completely to each of the matters stated herein under the penalty of perjury, including matters stated based upon information and belief.

9.       By the Motion, the Debtor seeks entry of (i) an order, substantially in the form attached as **<u>Exhibit A</u>** to the Motion (the "<u>Bid Procedures Order</u>"), pursuant to sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "<u>Bankruptcy Code</u>"), and Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") authorizing the Debtor to implement solicitation, bid, and auction procedures as set forth in **<u>Exhibit 1</u>** to the Bid Procedures Order (the "<u>Bid Procedures</u>")[4]  for the sale (the "<u>Sale</u>") of all or substantially all of its assets (the "<u>Assets</u>"), which include, without limitation, its wine vineyard business (the "<u>Vineyard Business</u>") consisting of approximately 845 acres of wine vineyard property ("<u>Property</u>") located in Napa, California, the wine-making and processing equipment, bottling equipment, certain rights that run with the Property (such as permits and water rights), approximately 79,000 cases of wine inventory, and the Debtor's contract rights, free and clear of all liens, claims, interests, or other encumbrances, to the winning bidder for the assets (such entity or entities each, a "<u>Purchaser</u>") that submits the highest or otherwise best offer for the Assets as determined by the Debtor in its business judgment and in consultation with MGG California, LLC, as administrative agent and DIP agent ("<u>MGG</u>") pursuant to the Bid Procedures,

10.      <u>The Debtor's Secured Creditor</u>: MGG, as agent for a number of related lenders, is the Debtor's primary or only secured creditor/lender. Pursuant to the "Final Order Extending to December 31, 2022: Second Interim Order (I) Authorizing the Debtor to Utilize Cash Collateral of

---

[4] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Bid Procedures or the Motion, as applicable.

1  Pre-Petition Secured Parties Through November 4, 2022; (II) Granting Adequate Protection to

2  Pre-Petition Secured Parties; (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rules

3  4001(b) and 4001(c); and (IV) Granting Related Relief"(Docket No. 92) (the "<u>Final Cash</u>

4  <u>Collateral Order</u>"), and the Stipulation Between Chapter 11 Debtor and MGG California, LLC

5  Regarding Extension of Cash Collateral Usage Deadline from Current Epxiration Date of

6  December 31, 2022 Until January 16, 2023 (Docket Entry No. 181), the Lenders (as defined

7  therein) hold an allowed secured claim as of the Petition Date of not less than $202,315,536.14,

8  and an Adequate Protection Superpriority Claim and Adequate Protection Liens (each as defined

9  in the Final Cash Collateral Order) pursuant to the terms of the Final Cash Collateral Order.

10      11.      <u>Sale Milestones Agreed Upon with MGG California, LLC</u>: The Debtor and MGG

11  have entered into agreements regarding sale milestones in this case in the context of continued

12  cash collateral usage of MGG in this Bankruptcy Case and in the further context of upcoming

13  Debtor in Possession Financing whose approval was obtained on a preliminary basis on January

14  11, 2023 at 11:00 a.m.  The sale milestones are set forth in Debtor's Cash Collateral Agreement

15  (Docket No. 92) and the proposed Debtor in Possession Financing Motion (Docket No. 185).

16      12.      <u>Proposed Bid Procedures:</u>  By the Motion, the Debtor proposes to implement the

17  Bid Proceduresfor the Sale of the Assets[5].  The Motion sets forth the proposed Bid Procedures in

18  detail.

19      13.      The Debtor and its professionals negotiated the proposed Bid Procedures with

20  MGG and its professionals.  I have read the proposed Bid Procedures, and in my opinion, the

21  foregoing Bid Procedures are in the best interest of the Debtor and its bankruptcy estate and will

22  maximize the opportunities to solicit interest from prospective buyers and obtain the best possible

23  price for the Assets.

24      14.      Based on my experience as CRO and in running similar sales processes, I believe

25  the proposed Bid Procedures are fair and reasonable.

26

27  [5] In the event of any inconsistency between the terms described in this Declaration and the terms

28  described in the Bid Procedures, the Bid Procedures shall govern.

1   I declare the foregoing to be true under the penalty of perjury.

2   Executed this $\underline{16}$ day of January, 2023 at Chicago, Illinois.

3

4

5                                    _____

6                                    Kevin A. Krakora

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT "A"**

**PROPOSED ORDER GRANTING BID PROCEDURES' MOTION**

1  Victor A. Sahn (CA Bar No. 97299)
     victor.sahn@gmlaw.com
2  Mark S. Horoupian (CA Bar No. 175373)
     mark.horoupian@gmlaw.com
3  Steve Burnell (CA Bar No. 286557)
     steve.burnell@gmlaw.com
4  **GREENSPOON MARDER LLP**
   333 South Grand Avenue, Suite 3400
5  Los Angeles, California 90071
   Telephone: 213.626.2311
6  Facsimile: 954.771.9264

7  Attorneys for Debtor in Possession,
   Spring Mountain Vineyard Inc.

8                    **UNITED STATES BANKRUPTCY COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**

10                         **SANTA ROSA DIVISION**

11  | In re | Case No. 1:22-bk-10381 CN |
12  | | Chapter 11 |
    | SPRING MOUNTAIN VINEYARD INC., a | |
13  | Delaware corporation, | **ORDER GRANTING DEBTOR'S NOTICE** |
    | | **OF MOTION AND MOTION FOR ENTRY** |
14  | | **OF (I) AN ORDER APPROVING** |
    | Federal EIN: 36-3844911 | **AUCTION AND BID PROCEDURES FOR** |
15  | | **THE SALE OF ITS WINE VINEYARD** |
    | Debtor. | **BUSINESS INCLUDING REAL** |
16  | | **PROPERTY, RIGHTS RUNNING WITH** |
    | | **THE CERTAIN REAL PROPERTY, WINE** |
17  | | **INVENTORY, CERTAIN VINEYARD** |
    | | **BUSINESS RIGHTS AND CONTRACT** |
18  | | **RIGHTS AND (II) GRANTING RELATED** |
    | | **RELIEF; DECLARATION IN SUPPORT** |
19  | | **OF MOTION** |

20

21                                         Date:     March 1, 2023
                                           Time:     11:00 a.m.
22                                         Place.:   Courtroom 215
                                                     1300 Clay Street
23                                                   Oakland, California 94612
                                                     *Videoconference via Zoom*

24

25

26

27

28

The Court has heard and considered the "Debtor's Notice Of Motion And Motion For Entry Of (I) An Order Approving Auction And Bid Procedures For The Sale Of Its Wine Vineyard Business Including and not limited to Real Property, Rights Running With The Certain Real Property, Wine Inventory, Certain Vineyard Business Rights And Contract Rights And (II) Granting Related Relief" ("<u>Motion</u>" or "<u>Sales Procedures' Motion</u>").[1]  The Debtor sought an order, pursuant to §§105(a) and 363 of the Bankruptcy Code and Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), (i) authorizing the Debtor to implement solicitation, bid, and auction procedures for the sale (the "<u>Sale</u>") of all or substantially all of the Debtor's Assets on the terms set forth in the bidding procedures annexed hereto as **<u>Exhibit 1</u>** (the "<u>Bid Procedures</u>") and (ii) granting related relief; and this Court having determined that the relief set forth in this Order is in the best interests of the Debtor, its estate, creditors, and other parties in interest; and due and adequate notice of the Motion having been given under the circumstances; and upon the entire record in this Chapter 11 Case; and after due deliberation thereon, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted to the extent set forth herein.

2.      The Bid Procedures, substantially in the form attached as **<u>Exhibit 1</u>**, are approved in their entirety. The Bid Procedures were proposed in good faith, are fair and reasonable and reasonably calculated to produce the best and highest offers for the Assets, and will confer actual benefits upon the Debtor's estate. The Bid Procedures represent an exercise of the Debtor's sound business judgment and will facilitate an orderly Sale process. The Bid Procedures shall govern the submission and analysis of all bids relating to the proposed Sale of the Assets. The Debtor is authorized to take any and all actions necessary to implement the Bid Procedures.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion or the Bid Procedures, as applicable.

3.     The Debtor is authorized, but not obligated, in an exercise of their reasonable business judgment and in consultation with MGG, to select one or more Qualified Bidders to act as stalking horse bidder(s) in connection with the Auction (each a "Stalking Horse Bidder"). In connection with any stalking horse agreement with a Stalking Horse Bidder, the Debtor may, subject to the reasonable consent of MGG and upon one (1) days' prior notice  to the U.S. Trustee, agree to (x) provide the Stalking Horse Bidder with a reasonable breakup fee, (y) reimburse the Stalking Horse Bidder for the reasonable and documented out of pocket fees and expenses, and/or (z) any other bid protections typically provided to a Stalking Horse Bidder ((x), (y), and (z) collectively, the "Bid Protections"), which Bid Protections shall not be effective until authorized by the Court. In the event the Debtor seeks to provide Bid Protections to a Stalking Horse Bidder, the Debtor shall file a notice with the Court with the requested Bid Protections.  A hearing shall be held on March [3], 2023 at [___]:[___] [a.m. / p.m.] (prevailing Pacific time) to consider approval of such Bid Protections, with notice of such hearing to be provided to MGG and the U.S. Trustee, and filed on the docket of the Debtor's case.

4.     Notwithstanding Bankruptcy Rules 6004, 6006, or otherwise, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. To the extent applicable, the stays described in Bankruptcy Rules 6004(h) and 6006(d) are waived.

5.     All deadlines set forth in the Bidding Procedures are hereby approved.

6.     Objections (if any) to approval of a Sale shall be in writing, set forth the name of the objecting party, the basis for the objection and specific grounds therefor, and be filed with the Court on or before [March 31], 2023 at [___]:[___] [a.m. / p.m.] (prevailing Pacific time). Any objection not filed and served in accordance with the preceding sentence shall be deemed waived and shall be forever barred, and such party shall be deemed to have consented to the Sale.

7.     A hearing to consider approval of the Sale(s) to the Successful Bidder(s) or Backup Bidder(s) (if applicable) shall be held on [April 7], 2023 at [___]:[___] [a.m. / p.m.] (prevailing Pacific

1   time).

2       8.      The terms of this Order shall control to the extent of any conflict with the Motion.

3       9.      The Court retains jurisdiction to hear and determine all matters arising from or related

4   to the implementation, interpretation, or enforcement of this Order.

5                           **\* \* \* End of Order \* \* \***

1  COURT SERVICE LIST

2

3  SERVICE OF THE ORDER IS NOT NECESSARY.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**EXHIBIT "1"**

2

**BID PROCEDURES TO BE SHOWN TO PROSPECTIVE BIDDERS**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SANTA ROSA DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| SPRING MOUNTAIN VINEYARD INC., | Case No. 22-10381 CN |
| Debtor. | |

**BID PROCEDURES FOR THE SALE OF**
**ALL OR SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS**

Spring Mountain Vineyard Inc. (the "Debtor") is seeking to sell (the "Sale") all or substantially all of its assets, which include, without limitation, its wine vineyard business (the "Vineyard Business") consisting of approximately 845 acres of wine vineyard property ("Property") located in Napa, California, the wine-making and processing equipment, bottling equipment, certain rights that run with the Property (such as permits and water rights), approximately 79,000 cases of wine inventory, and the Debtor's contract rights (collectively, the "Assets"), free and clear of all liens, claims, interests, or other encumbrances.

In connection therewith, on [___], 2023, the United States Bankruptcy Court for the Northern District of California (the "Court") entered the *Order Granting Debtor's Notice of Motion and Motion for Entry of (I) An Order Approving Auction and Bid Procedures for the Sale of Its Wine Vineyard Business Including Real Property, Rights Running With the Certain Real Property, Wine Inventory, Certain Vineyard Business Rights and Contract Rights and (II) Granting Related Relief* [ECF No. ___] (the "Bidding Procedures Order"), by which the Court approved the following solicitation, bid and auction procedures (collectively, the "Bid Procedures"). These Bid Procedures set forth the process by which the Debtor is authorized, in consultation with MGG California, LLC, as administrative agent and DIP agent ("MGG"),[1] to conduct an auction (the "Auction") for the Sale.

These Bid Procedures provide interested parties with the opportunity to qualify for and participate in the Auction to be conducted by the Debtor, and to submit competing bids for the

---

[1] To the extent that the Bid Procedures require the Debtor to consult with MGG or obtain MGG's consent in connection with making a determination or taking any action, or in connection with any other matter related to the Bid Procedures or at the Auction, the Debtor shall do so in a regular and timely manner prior to making such determination or taking any such action. Notwithstanding the foregoing, the Debtor shall not be required to consult with MGG or obtain MGG's consent pursuant to the Bid Procedures if MGG is a bidder at the Auction; *provided*, *however*, if MGG notifies the Debtor in writing that it irrevocably forfeits its rights to be a bidder, the foregoing restriction shall no longer apply with respect to MGG upon the Debtor's receipt of such notice.

Notwithstanding anything herein to the contrary, all consultation, notification, or other rights of MGG are subject to, and expressly qualified by, any confidentiality obligation or agreement entered into with any Potential Bidder (as defined herein).

Case: 22-10381    Doc# 204    Filed: 01/17/23    Entered: 01/17/23 17:33:43    Page 39 of
59

030

Assets.  The Debtor shall assist interested parties in conducting their respective due diligence investigations.

| Summary of Sale Process Deadlines | |
|---|---|
| **Stalking Horse Bid Deadline:** | The deadline to submit a Stalking Horse Bid (as defined below) shall be **February 17, 2023 at 12:00 p.m. (prevailing Pacific time).** |
| **Bid Deadline:** | The deadline to submit Bids (as defined below) shall be **March 17, 2023 at 12:00 p.m. (prevailing Pacific time).** |
| **Auction Date & Time:** | An Auction (as defined below) will be held on **March 24, 2023 at 9:00 a.m. (prevailing Pacific Time)**. |
| **Sale Hearing:** | The Court will hold a hearing to consider approval of the Sale(s) to the Successful Bidder(s) or Backup Bidder(s) (if applicable) on **April __, 2023 at [__]:[__] [a.m. / p.m.] (prevailing Pacific time)**. |
| **Proposed Sale Closing:** | **April 15, 2023** |

Additional details regarding, among other thing, the submission of Bids and participation at the Auction are provided below.

> **Copies of the Bidding Procedures Order or other documents related thereto are available upon request to Debtor's investment bankers, BNP Paribas Securities, Inc. ("BNP"), at**
> **Perry DeLuca (Perry.DeLuca@bankofthewest.com),**
> **Gregg Fatzinger (gregg.fatzinger@us.bnpparibas.com), and**
> **Theo Angelo (theophile.angelo@us.bnpparibas.com)**

## I.    SOLICITATION PROCESS; DISTRIBUTION OF BID PROCEDURES

The Debtor and/or any agent of the Debtor shall, at the Debtor's direction and in consultation with MGG, distribute these Bid Procedures to any potentially interested bidders for the Assets.

## II.    PARTICIPATION REQUIREMENTS

### A.    Potential Bidders.

To participate in the bidding process or otherwise be considered for any purpose under these Bid Procedures, a person or entity interested in the Assets must deliver to each of the Debtor's

031

advisors the following documents and information (unless the Debtor, in consultation with MGG, chooses to waive any of the following requirements for such party):

1. an executed Non-Disclosure Agreement on terms acceptable to the Debtor, in consultation with MGG; and

2. any other evidence the Debtor, in consultation with MGG, may reasonably request to evaluate the bidder.

The Debtor, in consultation with its advisors and MGG, will determine and notify such party whether such party has satisfied the foregoing requirements, in which case it shall be deemed a "Potential Bidder".

All substantive communications related to the Sale between and amongst Potential Bidders shall exclusively be through the Debtor and its advisors. Communications between and amongst Potential Bidders is expressly prohibited unless the Debtor expressly consents in writing to such communication; *provided* that, notwithstanding anything to the contrary in these Bid Procedures, MGG shall have the right to communicate with Potential Bidders and *vice versa*.

### B. Due Diligence Information.

The Debtors, with their advisors, shall establish an electronic data room (the "Data Room") that provides standard and customary diligence materials, including the necessary information to allow Potential Bidders to submit a Qualified Bid (as defined below) and to seek and obtain commitments for debt financing.

Only Potential Bidders shall be eligible to receive diligence materials and access to the Data Room and to additional non-public information regarding the Debtor and the Assets. The Debtor (with the assistance of its advisors) shall coordinate all reasonable requests from Potential Bidders for additional information and due diligence access; *provided that* (i) the Debtor shall have the right to reasonably limit the information and due diligence provided to competitors if, in consultation with MGG, the Debtor believes that providing such information or access would be detrimental to the interests of the Debtor's estate, and (ii) the Debtor may decline to provide such information to Potential Bidders who, at such time and in the Debtor's reasonable business judgment, after consultation with MGG, have not established, or who have raised doubt, that such Potential Bidder intends in good faith to, or has the capacity to, consummate a proposed Sale.

The due diligence period will end on the Bid Deadline and subsequent to the Bid Deadline the Debtors shall have no obligation to furnish any due diligence information. Additional due diligence will not be provided after the Bid Deadline, unless otherwise deemed reasonably appropriate by the Debtor in consultation with MGG. The Debtor and their advisors, and MGG and its advisors, are not responsible for, and will bear no liability with respect to, any information obtained by any Potential Bidder in connection with any Sale.

All due diligence requests must be direct to the Debtor's investment bankers, BNP, at Perry DeLuca (**Perry.DeLuca@bankofthewest.com**), Gregg Fatzinger (**gregg.fatzinger@us.bnpparibas.com), and** Theo Angelo (**theophile.angelo@us.bnpparibas.com**).

Case: 22-10381    Doc# 204    Filed: 01/17/23    Entered: 01/17/23 17:33:43    Page 41 of 59    032

**C.** **Selection of Stalking Horse Bid and Bid Protections.**

Pursuant to the Bidding Procedures Order, the Debtor is authorized, but not obligated, in an exercise of its business judgment, and in consultation with MGG, to (a) select one or more Qualified Bidders to act as a stalking horse bidder in connection with the Auction (the "Stalking Horse Bidder") and (b) in connection with any stalking horse agreement with a Stalking Horse Bidder, provide a breakup fee and other bid protections typically provided to a Stalking Horse Bidder (the "Bid Protections"), which Bid Protections shall not be effective until authorized by the Court; *provided*, *however*, that any Bid Protections are reasonably acceptable to MGG. In the event the Debtor seeks to provide Bid Protections to the Stalking Horse Bidder, the Debtor shall file a notice with the Court with the requested Bid Protections and, pursuant to the Bidding Procedures Order, a hearing is scheduled on **March [__], 2023 at [__]:[__] [a.m. / p.m.] (prevailing Pacific time)** to consider approval of such Bid Protections.

A bidder that desires to submit a stalking horse bid (each, a "Stalking Horse Bid") must (i) comply with the Stalking Horse Requirements (as defined below), and (ii) transmit via email (in .pdf or similar format) or deliver written copies of its bid to the following parties so as to be received not later than **February 17, 2023 at 12:00 p.m. (prevailing Pacific time)** (the "Stalking Horse Bid Deadline"):

    1.   The Debtor's bankruptcy counsel—
        Victor A. Sahn (victor.sahn@gmlaw.com),
        Mark S. Horoupian (mark.horoupian@gmlaw.com),
        Steven Burnell (steve.burnell@gmlaw.com).

    2.   The Debtor's investment bankers, BNP—
        Perry DeLuca (Perry.DeLuca@bankofthewest.com),
        Gregg Fatzinger (gregg.fatzinger@us.bnpparibas.com),
        Theo Angelo (theophile.angelo@us.bnpparibas.com).

The Debtor will provide copies of all Stalking Horse Bids via electronic mail as soon as reasonably practicable to MGG and its advisors, subject to any confidentiality obligation or agreement entered with the Potential Bidders.

The Stalking Horse Bidder will have a priority treatment in the due diligence process and in access to the Debtor's management and representatives. Following the selection of a Stalking Horse Bid, the Debtor shall communicate the minimum purchase price to all interested parties. MGG shall be deemed to consent to the Debtor's selection of a Stalking Horse Bid that (i) will produce net cash proceeds sufficient[2] to pay in full MGG's claims as of the closing of the proposed Sale, and (ii) provides for such cash payment be made at closing.

Parties that submitted a Stalking Horse Bid that were not accepted shall be able to (a) continue their due diligence in accordance with the Bid Procedures, (b) benefit from the progress

---

[2] The sufficiency of net cash proceeds includes, without limitation, the financial wherewithal of such Stalking Horse Bidder to consummate the proposed Sale.

on due diligence from the selected Stalking Horse Bid, and (c) submit an Overbid pursuant to the Bid Procedures.

**D.  Bid Deadline.**

A bidder that desires to make a Bid, other than a Stalking Horse Bid, must transmit via email (in .pdf or similar format) or deliver written copies of its bid to the following parties so as to be received not later than **March 17, 2023 at 12:00 p.m. (prevailing Pacific time)** (the "Bid Deadline"):

    1.  The Debtor's bankruptcy counsel—
        Victor A. Sahn (victor.sahn@gmlaw.com),
        Mark S. Horoupian (mark.horoupian@gmlaw.com),
        Steven Burnell (steve.burnell@gmlaw.com).

    2.  The Debtor's investment bankers, BNP—
        Perry DeLuca (Perry.DeLuca@bankofthewest.com),
        Gregg Fatzinger (gregg.fatzinger@us.bnpparibas.com),
        Theo Angelo (theophile.angelo@us.bnpparibas.com).

The Debtor will provide copies of all Bids via electronic mail as soon as reasonably practicable to MGG and its advisors, subject to any confidentiality obligation or agreement entered with the Potential Bidders.

## III.  STALKING HORSE BIDS; QUALIFIED BIDS

**A.  Requirements for Stalking Horse Bids.**

Any proposal, solicitation, or offer (each, a "Bid") submitted by a bidder (a "Bidder") to act as the Stalking Horse Bidder must comply with all of the following, in the Debtor's reasonable business judgment and after consultation with MGG (collectively, the "Stalking Horse Requirements"):

    1.  ***Description of the Bidder***.  The Bid must include: (a) description of the company, fund, or entity acting as Bidder, and (b) confirmation that the Bid is either (y) being made solely on behalf of the Bidder and that the Bidder is acting for its own account and not as an agent of any third party or in concert with another person, or (z) otherwise disclose the identity of any agent or third party participating on behalf of such Bidder.

    2.  ***Treatment of Management.***  The Bid must include a statement of the Bidder's intentions with respect to the Debtor's existing management and employees.

    3.  ***Assets***.  The Bid must (a) clearly state which Assets and liabilities that the Bidder is agreeing to purchase and assume, including any debt to be assumed, and (b) any of the Assets and liabilities that are proposed to be excluded from the proposed Sale.

4. ***Purchase Price***.  The Bid must clearly set forth the cash purchase price in US Dollars and liabilities assumed (the "Purchase Price") for the Assets. The Bid should include a detailed description of any critical assumptions and value drivers considered in deriving the Purchase Price, including the valuation methodologies used to derive the Purchase Price, as well as any information and other factors that could potentially increase or decrease the prospective Purchase Price.

5. ***Financing***.  To the extent that a Bid is not accompanied by evidence of the Bidder's capacity to consummate the proposed transactions set forth in its Bid with cash on hand, each Bid must include a detailed description of the expected sources of debt and equity financing for the Sale. To the extent such financing is dependent on third-party sources, the Bidder should provide an indication of the anticipated timing and steps required to secure such financing. For Bids that provide for the repayment, in cash, in full of all debt and other obligations owing to MGG as of the closing of the proposed Sale, the Bid should also indicate whether the Bidder is open to a roll-over investment of any portion of the Purchase Price.

6. ***Due Diligence.***  The goal is to give the Bidder the opportunity to conduct the most thorough due diligence possible before submitting a Bid to act as the Stalking Horse Bidder. Therefore, such Bidder will get immediate access to an online data room and submit a request list for additional due diligence items that such Bidder would need. Such Bidder shall also have the opportunity to visit and inspect the Assets.  Remaining due diligence issues, if any, should be specified in the Bid together with the date by which any due diligence condition will be removed.

7. ***Approvals and Conditions***.   The Bid must (a) indicate what third party approvals, if any, are required to close the Sale, and (b) confirm the Bidder's ability to close the Sale by April 15, 2023.

8. ***List of Contacts***.  The Bid must include the name(s) and contact details of the Bidder's deal team leader(s), external advisors (including financial, legal, accounting, tax and others), if any, that have been or are planned to be engaged to assist the Bidder in the Sale.

**B.      Requirements for Qualified Bid.**

A Bid submitted by a Bidder will be considered a qualified bid (a "Qualified Bid" and such entity a "Qualified Bidder") only if the Bid is submitted in writing by the Bid Deadline and is deemed to comply with all of the following, in the Debtor's reasonable business judgment and after consultation with MGG (collectively, the "Requirements"):[3]

---

[3]   MGG shall be deemed a Qualified Bidder for all purposes under these Bid Procedures and at all times, and shall be entitled to participate at the Auction.  A Bid submitted by MGG shall be deemed a Qualifying Bid.

1. ***Assets***.  The Bid must clearly state which Assets and liabilities that the Bidder is agreeing to purchase and assume, including any debt to be assumed.  If any Assets or liabilities are excluded from the Sale, the Bid must clearly identify such excluded Assets and liabilities.

2. ***Purchase Price***.  The Bid must (a) clearly set forth the Purchase Price to be paid, and (b) identify separately the cash component of the Purchase Price and each noncash component of the Purchase Price.

3. ***Deposit***.  The Bid must be accompanied by a cash deposit in the amount equal to five (5) percent of the aggregate Purchase Price of the Bid to be held in an interest-bearing escrow account to be identified and established by the Debtor (the "Qualified Bid Deposit"); *provided* that if a Qualified Bidder increases its Bid at the Auction and is the Successful Bidder or Backup Bidder (each as defined herein), such Qualified Bidder must increase its Qualified Bid Deposit to match the proposed Purchase Price submitted at the Auction within three (3) business days after the Auction.

4. ***Bid Documents***.  The Bid must include duly executed, non-contingent transaction documents necessary to effectuate the transactions contemplated in the Bid (the "Bid Documents").  The Bid Documents shall include: (a) a purchase agreement setting forth the definitive terms of the proposed Sale (the "Purchase Agreement"), (b) a blackline comparison of the Purchase Agreement against the form of purchase agreement provided by the Debtor or any stalking horse agreement, if applicable, (c) a schedule of assumed executory contracts and unexpired leases to the extent applicable to the Bid, together with evidence of such Bidder's ability to provide adequate assurance of future performance of such executory contracts or unexpired leases (as required by section 365(f)(2)(B) of the Bankruptcy Code), and (d) a statement from the bidder that: (y) it is prepared to enter into and consummate the Sale contemplated in the Bid Documents no later than April 15, 2023  and (z) the Qualified Bid will be irrevocable (whether or not such Qualified Bid is selected as the Successful Bid or the Backup Bid) until the consummation of the Sale.

5. ***Identity***.  The Bid must fully disclose the legal identity of each person or entity bidding or otherwise participating in connection with such Bid (including each principle, equity holder or financial provider or backer of the bidder if such bidder is an entity formed for the purpose of consummating the proposed transaction(s) contemplated by such Bid), and the complete terms of any such participation, and must also disclose any connections or agreements with the Debtor, any other known Partial Bidder, Bidder, or Qualified Bidder, and/or any officer or director of the foregoing.

6. ***Backup Bidder***.  By submitting a Bid, each Bidder agrees to be a Backup Bidder (as defined below) in the event the Debtor selects it as such; *provided*, *however*, MGG shall not have any obligation to serve as Backup Bidder.

VAS 52972210v1

7. **Demonstrated Financial Capacity**. The Bidder must have, in the Debtor's business judgment, in consultation with MGG, the necessary financial capacity to consummate the proposed transactions required by its Bid. To the extent that Bid is not accompanied by evidence of the Bidder's capacity to consummate the Sale set forth in its Bid with cash on hand, the Bid must include fully committed and firm financing for each component of debt or equity in support of such Bid and other ability to consummate the proposed Sale, in each case acceptable to the Debtor in its business judgment, in consultation with MGG. Such funding commitment or other financing must be unconditional and must not be subject to any internal approval, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions reasonably acceptable to the Debtor, in consultation with MGG.

8. **Contingencies; No Financing or Diligence Outs**. The Bid shall not be conditioned on (a) the obtaining or the sufficiency of financing, (b) any internal or third-party approval (other than governmental or regulatory approvals), or (c) on the outcome or review of due diligence, but may be subject to the accuracy at the closing of specified representations and warranties or the satisfaction at the closing of specified conditions, which shall be acceptable to the Debtor in its business judgment, in consultation with MGG.

9. **Authorization**. The Bid must include (a) evidence satisfactory to the Debtor, in consultation with MGG, that the Bidder is reasonably likely to obtain regulatory approval, if any is required, to purchase the Assets, and (b) the Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtor, in consultation with MGG) with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid, or a representation that no such authorization or approval is required.

10. **As-Is, Where-is**. The Bid must include a written acknowledgement and representation that:

   i. The Bidder has had an opportunity to conduct any and all due diligence regarding the Assets prior to submitting its Bid.

   ii. The Bidder has relied solely upon its own independent review, investigation and/or inspection of any documents and the Assets in making its Bid or that of any of its legal, financial or other advisors.

   iii. The Bidder did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the business of the Debtor or the Assets or the proposed transaction, or the completeness or accuracy of any information provided in connection therewith, except as expressly stated in the representations and

Case: 22-10381    Doc# 204    Filed: 01/17/23    Entered: 01/17/23 17:33:43    Page 46 of
59

037

warranties contained in the Purchase Agreement ultimately accepted and executed by the Debtor.

    iv.  All proof of financial ability to consummate a Sale in a timely manner and all information provided to support adequate assurance of future performance is true and correct.

    v.  The sale of the Assets shall be on an "as is, where is" basis an without representations or warranties of any kind, nature, or description by the Debtor, its agents or estate, or any other party, except to the extent set forth in the Purchase Agreement.

11. ***Irrevocable***. ALL BIDS SHALL BE DEEMED IRREVOCABLE. IN THE EVENT THAT A BIDDER SEEKS TO REVOKE SUCH BID, THE DEBTOR SHALL BE ENTITLED TO KEEP SUCH BIDDER'S DEPOSIT.

12. ***Disclaimer of Fees***. The Bid shall not be subject to conditions, representations, or terms that the Debtor determines, in consultation with MGG, to be unacceptable, and shall not be conditioned upon the Court's approval of any Bid Protections (except with respect to a Stalking Horse Bidder), such as a break-up fee, termination fee, expense reimbursement, working fee or similar type of payment (other than in connection with a Stalking Horse Bid); *provided*, *however*, the Debtors may accept a Baseline Bid (as defined below) with such Bid Protections to the extent authorized by the Court according to the procedure outlined below. By submitting a Bid, the Bidder is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code.

13. ***Adherence to Bid Procedures***. By submitting its Bid, each Bidder is agreeing to abide by and honor the terms of these Bid Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction.

14. ***Consent to Jurisdiction***. The Bidder must submit to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to the Debtor's qualification of Bid, the Auction, the construction and enforcement of these Bid Procedures, the Sale documents, and the closing of the Sale, if applicable.

15. ***Other Information***. The Bid contains such other information reasonably requested by the Debtor, in consultation with MGG.

**C.**    **Review of Bid and Designation of Qualified Bidders.**

The Debtor shall evaluate the Bids received and determine, in its reasonable business judgment and after consultation with MGG, whether such Bids meet the requirements set forth in the Bidding Procedures to be considered a Qualified Bid. A Bidder whose Bid is a Qualified Bid shall be considered a "Qualified Bidder."

VAS 52972210v1

The Debtor, in consultation with MGG, will make a determination regarding which Bids qualify as Qualified Bids, and will notify Potential Bidders whether they have been selected as Qualified Bidders on or before **March 22, 2023** (the "Qualified Bid Designation Date").[4] The Debtor reserves the right to (but has no obligation to, subject to the Debtor's fiduciary duties to maximize the value of the Debtor's estate) cooperate with any Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed to be a Qualified Bid.

Between the date that the Debtor notifies a Bidder that it is a Qualified Bidder and the Auction, the Debtor may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Without the prior written consent of the Debtor (in consultation with MGG), a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bid Procedures; *provided that* any Qualified Bid may be improved at the Auction as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bid Procedures.

Each Qualified Bidder shall comply with all reasonable requests for additional information by the Debtor and its advisors in connection with the Qualified Bidder's financial wherewithal to consummate and perform obligations in connection with the proposed transactions required by its Bid. Failure by a Bidder to comply with requests for additional information may be a basis for the Debtor, in consultation with MGG, to determine that such Bidder is not a Qualified Bidder and shall not be entitled to participate at the Auction.

The Debtor may, with MGG's consent, amend or waive the conditions precedent to being a Qualified Bidder at any time, in its reasonable business judgment, in a manner consistent with its fiduciary duties and applicable law, and may engage in negotiations with Potential Bidders who submitted Bids complying with the preceding section as the Debtors deem appropriate in the exercise of their business judgment, based upon the Debtors' evaluation of the content of each Bid.

Pursuant to the Non-Disclosure Agreement, Potential Bidders may not disclose to any third party the fact that they are engaged in the evaluation of the Assets and that no discussion, negotiation, undertaking or agreement may be entered into directly or indirectly by Potential Bidders with any third party (other than MGG and its advisors) in connection with the Sale or any similar transaction without the prior written consent of the Debtor in consultation with MGG.

### D.  Right to Credit Bid.

MGG shall have the right to credit bid all or a portion of its secured claim for its collateral (a "Credit Bid") pursuant to section 363(k) or section 1129(b) of the Bankruptcy Code. A Credit Bid shall not require a Qualified Bid Deposit and shall be considered a Qualified Bid.

---

[4] If only one Qualified Bid is received, MGG shall have the right to submit a Qualified Bid (which may include a Credit Bid) on or before **March 23, 2023 at 12:00 p.m. (prevailing Pacific time)** and the Auction shall be held as provided below.

Case: 22-10381    Doc# 204    Filed: 01/17/23    Entered: 01/17/23 17:33:43    Page 48 of 59
039

E.    **Expenses; Disclaimer of Fees.**

Each Potential Bidder will bear all costs and expenses of their own investigation and evaluation, including the fees and disbursements of their own legal counsel and other advisors. The Debtor, its affiliates, representatives and related parties, and BNP disclaim any and all liability for all materials and other information supplied to any Potential Bidder and/or their representatives, and no representation or warranty, whether express or implied (including as to the accuracy or completeness of any information provided or statements made, whether in written, electronic, oral or other form), other than those that may be expressly made to such Potential Bidder in a final definitive, binding written agreement with respect to the Sale, if and only when executed by all parties thereto. By submitting a Stalking Horse Bid or a Bid, a Potential Bidder acknowledges that it is relying solely upon its own independent investigation and evaluation of the Debtor and its Assets. If and until a final definitive binding written agreement is executed and delivered by all parties thereto, and such agreement is submitted to and approved by the Court, neither the Debtor nor any other person or entity shall have any obligations or liability to any Potential Bidder with respect to the Sale or otherwise, and following such time, the Debtor's only obligations will be those set forth in such final definitive binding written agreement.

## IV.    THE AUCTION

The Debtor shall conduct an auction (the "Auction") to determine the Successful Bidder pursuant to the procedures below.

A.    **Determination and Announcement of Baseline Bid.**

In consultation with MGG, the Debtor shall make a determination regarding the highest or best Qualified Bid (or collection of Qualified Bids) determined for the Assets (a "Baseline Bid", and such bidder or group of bidders, a "Baseline Bidder") to serve as the starting point at the Auction for the Assets. On or before **March 23, 2023**, the Debtor will provide copies of the Baseline Bid and the applicable Bid Documents supporting the Baseline Bid to all Qualified Bidders.

B.    **Auction Participation**.

Date, Time, and Location of Auction; Adjournment of Auction. The Auction shall take place on **March 24, 2023 at 9:00 a.m. (prevailing Pacific Time)** at a location or otherwise by video conference as determined by the Debtor in consultation with MGG, details of which will be provided to Qualified Bidders in advance of the Auction. Subject to the consent of MGG, the auction may be adjourned to a later date, so long as such change is communicated reasonably in advance by the Debtor to all Qualified Bidders and other invitees.

Case: 22-10381    Doc# 204    Filed: 01/17/23    Entered: 01/17/23 17:33:43    Page 49 of
59

Participation and Attendees: Only Qualified Bidders are eligible to participate the Auction.[5] Qualified Bidders participating in the Auction must appear in person at the Auction, or through a duly authorized representative.

## C. Auction Rules.

The Debtor (in consultation with its advisors) shall direct and preside over the Auction in consultation with MGG. At the start of the Auction, the Debtor shall describe the terms of the Baseline Bid. All incremental Bids shall be Overbids (as defined below) and shall be made and received on an open basis in the presence of all other Qualified Bidders, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders; *provided* that the Debtor, with the consent of MGG, reserves the right to modify the Auction rules to require Qualified Bidders to submit sealed Overbids. Qualified Bidders will be permitted to increase their Overbids, and Overbidding at the Auction will continue until such time as the highest or otherwise best offer is determined in accordance with these Bid Procedures, in consultation with MGG, or until such Auction is adjourned by the Debtor, in consultation with MGG.

1. Baseline Bid as Price Floor. The first round of bidding at the Auction shall commence at the amount of the Baseline Bid.

2. Highest and Best Offer. After the first round of bidding and between each subsequent round of bidding, the Debtor shall announce the Bid that it believes, in its reasonable business judgment and upon consultation with MGG, to be the highest or otherwise best offer for the Assets (the "Leading Bid"). Each round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a subsequent Bid with full knowledge of the Leading Bid.

3. Minimum Overbid. Qualified Bidders may submit successive Bids, based on and increased from the Baseline Bid or the Leading Bid (as applicable) (each such Bid, an "Overbid"). Any Qualified Bidder's initial Overbid and each subsequent Overbid shall be (a) at least a $500,000 increase in cash consideration over the Leading Bid *plus* (b) if the Stalking Horse Bidder has the then-Leading Bid, the amount of the Bid Protections (the "Minimum Overbid").

4. Overbid Alterations. An Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable to the Debtor's estate than any prior Qualified Bid or Overbid, as determined in the Debtor's business judgment, in consultation with MGG, but shall otherwise comply with the terms of these Bid Procedures.

---

[5] Unless the Court orders or direct otherwise, only the Debtor's representatives, MGG, and any Qualified Bidders and the professionals for each of the foregoing shall be entitled to attend the Auction; *provided* that only Qualified Bidders shall be entitled to bid at the Auction.

Case: 22-10381    Doc# 204    Filed: 01/17/23    Entered: 01/17/23 17:33:43    Page 50 of
59

041

**D.    No Collusion; Good-Faith *Bona Fide* Offer.**

Each Qualified Bidder participating at the Auction will be required to confirm in writing at the Auction that: (i) it has not engaged in any collusion with respect to the bidding, the Auction, or the Sale; and (ii) its Qualified Bid is a good-faith *bona fide* offer and it intends to consummate the proposed transaction if selected as the Successful Bidder; *provided* that, notwithstanding anything to the contrary in the foregoing, each Qualified Bidder shall have the right to communicate with MGG with respect the bidding, the Auction, and Sale, and MGG shall have the right to communicate with any other Qualified Bidder regarding the same.

**E.    Selection of Successful Bidder and Backup Bidder.**

Immediately prior to concluding the Auction, the Debtor shall, in consultation with its advisors and MGG, (a) determine and identify the highest or otherwise best Qualified Bid (the "Successful Bid") and the Qualified Bidder submitting such Successful Bid (the "Successful Bidder"); (b) determine and identify the next highest or otherwise best Qualified Bid(s) after the Successful Bid (the "Backup Bid") and the Qualified Bidder submitting such Backup Bid (the "Backup Bidder"); and (c) notify all Qualified Bidders at the Auction of the identity of the Successful Bidder, the amount of the Purchase Price and other material terms of the Successful Bid, the identity of the Backup Bidder, and the amount of the Purchase Price and other material terms of the Backup Bid.

The terms of the Successful Bid(s) and the Backup Bid(s) shall be reasonably acceptable to MGG.

Within one (1) business day of the completion of the Auction, the Successful Bidder shall complete and execute all agreements, instruments, or other documents evidencing and containing the terms and conditions upon which the Successful Bid was made.

Within two (2) business days following the conclusion of the Auction, the Debtor shall file a notice identifying (i) the Successful Bidder(s), (ii) the Purchase Price for the Successful Bid(s), (iii) the Backup Bidder(s), (iv) the Purchase Price for the Backup Bid(s), and (v) a substantially final version of the Purchase Agreement(s).

**F.    Notice Parties.**

The "Notice Parties" as used in the Bid Procedures are:

1.  the Debtor's bankruptcy counsel, Victor A. Sahn (victor.sahn@gmlaw.com), Mark S. Horoupian (mark.horoupian@gmlaw.com), Steven Burnell (steve.burnell@gmlaw.com)

2.  counsel for MGG California, LLC, as Administrative Agent and DIP Agent, Jeff J. Marwil (jmarwil@proskauer.com), Peter J. Young (pyoung@proskauer.com), Steve Ma (sma@proskauer.com)

3.  counsel to the United States Trustee, Elvina Rofael (Elvina.Rofael@usdoj.gov) and Trevor Fehr (Trevor.Fehr@usdoj.gov)

4. the Debtor's Investment Banker, Perry DeLuca (Perry.DeLuca@bankofthewest.com), Gregg Fatzinger (gregg.fatzinger@us.bnpparibas.com), Theophile Angelo (theophile.angelo@us.bnpparibas.com)

5. the Debtor's Chief Restructuring Officer, Kevin A. Krakora (kkrakora@getzlerhenrich.com)

## G.    Sale Hearing.

The Court will hold a hearing to consider approval of the Sale(s) to the Successful Bidder(s) or Backup Bidder(s) (if applicable) on **April [__], 2023** (the "Sale Hearing").

## H.    Consent To Jurisdiction.

All Potential Bidders, Bidders, and Qualified Bidders shall be deemed to have consented to the exclusive jurisdiction of the United States Bankruptcy Court for the Northern District of California in the Bankruptcy Case and waived any right to a jury trial in connection with any disputes relating to the Auction, the construction and enforcement of these Bid Procedures, and/or the Bid Documents, as applicable.

## I.    Return of Deposit.

The Qualified Bidder Deposit of the Successful Bidder or the Backup Bidder, as the case may be, shall be applied to the Purchase Price of such transaction at closing. The Deposits for each Qualified Bidder shall be held in one or more accounts on terms acceptable to the Debtors in their sole discretion and shall be returned (other than with respect to the Successful Bidder and the Backup Bidder) on or before the date that is five (5) business days after entry of an order approving the Successful Bid and Backup Bid.

The Backup Bidder's Qualified Bidder Deposit shall be held in escrow until the closing of the Sale with the Successful Bidder. In the event the Successful Bidder fails to consummate the Sale set forth in the Successful Bid and the Debtor opts to close on the Sale set forth in the Backup Bid, the Backup Bidder's Deposit shall be applied to the Purchase Price of such transaction(s) at closing. In the event of a breach or failure to consummate a Sale by the Successful Bidder or the Backup Bidder, as applicable, the defaulting Successful Bidder's Deposit or Backup Bidder's Deposit, as applicable, shall be additionally forfeited to the Debtor, and the Debtor specifically reserves the right to seek all available remedies against the defaulting Successful Bidder or Backup Bidder, as applicable.

## J.    Reservation of Rights.

The Debtor further reserves the right as it may reasonably determine to be in the best interests of the bankruptcy estate to subject to its fiduciary duties to maximize the value of the Debtor's Estate, in all cases subject to consultation with or the consent of, as the case may be, MGG: (i) determine which bidder(s) are Qualified Bidders; (ii) determine which bids are Qualified Bid(s); (iii) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal, (iv) reject any Bid that is (a) inadequate or insufficient,

(b) not in conformity with the requirements of the Bid Procedures or the requirements of the Bankruptcy Code or (c) contrary to the best interests of the Debtor and its bankruptcy estate; (iv) waive terms and conditions set forth in these Bid Procedures with respect to all potential bidders; (v) impose additional terms and conditions with respect to all Potential Bidders; (vi) subject to MGG's prior written consent, extend the deadlines set forth herein; (vii) subject to MGG's prior written consent, adjourn or cancel the Auction and/or Sale Hearing in open court without further notice; and (viii) subject to MGG's prior written consent, adopt, implement, amend and/or waive such other, additional or existing procedures or requirements pursuant to the Bid Procedures (including, without limitation, extending any deadlines established pursuant to the Bid Procedures) as they may determine to be in the best interests of their estates and that serves to further an orderly Auction and bid process, without further notice to parties entitled to attend the Auction, as appropriate.  Upon the payment of MGG's claims, in full, in cash, MGG's consultation and consent rights pursuant to these Bid Procedures shall no longer be applicable.

Case: 22-10381   Doc# 204   Filed: 01/17/23   Entered: 01/17/23 17:33:43   Page 53 of
59

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 333 South Grand Avenue, Suite 3400, Los Angeles, CA 90071.

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S NOTICE OF MOTION AND MOTION FOR ENTRY OF (I) AN ORDER APPROVING AUCTION AND BID PROCEDURES FOR THE SALE OF ITS WINE VINEYARD BUSINESS INCLUDING REAL PROPERTY, RIGHTS RUNNING WITH THE CERTAIN REAL PROPERTY, WINE INVENTORY, CERTAIN VINEYARD BUSINESS RIGHTS AND CONTRACT RIGHTS AND (II) GRANTING RELATED RELIEF; DECLARATION KEVIN A. KRAKORA, CHIEF RESTRUCTURING OFFICER, IN SUPPORT OF MOTION** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) January 17, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) January 17, 2023, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)  January 17, 2023 , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 17, 2023 | Patricia Dillamar | *Patricia Dillamar* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

CC 52274685v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**

## 1.  SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")

Dean C. Burnick on behalf of Interested Party Mt. Hawley Insurance Company **(RSN)**
dcb@proughlaw.com

Jacquelyn H. Choi on behalf of Creditor Napa County Treasurer-Tax Collector **(RSN)**

Trevor Ross Fehr on behalf of U.S. Trustee Office of the U.S. Trustee / SR
trevor.fehr@usdoj.gov

Mark S Horoupian on behalf of Debtor Spring Mountain Vineyard Inc.
mark.horoupian@gmlaw.com, cheryl.caldwell@gmlaw.com

Thomas Philip Kelly, III on behalf of Creditor Central Valley Builders Supply Inc. **(RSN)**
tomkelly@sonic.net

Steve Ma on behalf of Creditor MGG California, LLC
sma@proskauer.com

Jeff J. Marwil on behalf of Creditor MGG California, LLC
jmarwil@proskauer.com

Randall P. Mroczynski on behalf of Creditor Ford Motor Credit Company LLC **(RSN)**
rmroczynski@cookseylaw.com

Office of the U.S. Trustee / SR
USTPRegion17.SF.ECF@usdoj.gov

Elvina Rofael on behalf of U.S. Trustee Office of the U.S. Trustee / SR
elvina.rofael@usdoj.gov, Katina.Umpierre@usdoj.gov,GemMil.Langit@usdoj.gov

Victor A. Sahn on behalf of Debtor Spring Mountain Vineyard Inc.
victor.sahn@gmlaw.com, Karen.Files@gmlaw.com

Michael St. James on behalf of Interested Party Arcade Capital, LLC **(RSN)**
ecf@stjames-law.com

John G. Warner on behalf of Creditor Francois Freres USA Inc. **(RSN)**
warnerwest@aol.com

Ashley M. Weringa on behalf of Creditor MGG California, LLC
aweringa@proskauer.com

Steven F. Werth on behalf of Debtor Spring Mountain Vineyard Inc.
steven.werth@gmlaw.com, Patricia.Dillamar@gmlaw.com

Peter J Young on behalf of Creditor MGG California, LLC
pyoung@proskauer.com

CC 52274685v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                          **F 9013-3.1.PROOF.SERVICE**

Case: 22-10381    Doc# 204    Filed: 01/17/23    Entered: 01/17/23 17:32:43    Page 55 of 59

**SERVED BY EMAIL OR UNITED STATES MAIL**

**Debtor's Financial Advisor And Chief Restructuring Officer**
Attn: Kevin A. Krakora, Managing Director
Getzler Henrich & Associates LLC, a Hilco Global Company
150 S. Wacker Drive | 24th Floor
Chicago, IL 60606
Tel: (312) 283-8071
email: kkrakora@getzlerhenrich.com
pekman@hilcoglobal.com

**Secured Creditor**
Imperial PFS aka IPFS
49 Stevenson St. #127
San Francisco, CA 94105-2909
(877) 687-9826
Lisa Chandler, Litigation and Bankruptcy Recovery Manager
lisa.chandler@ipfs.com

**Largest Unsecured Creditors**
Allen Wine Group LLP
Attn: Timothy Allen, CPA - Managing Partner
120 Stony Point Road, #230
Santa Rosa, CA 95401
(707) 528-3860
tim@allenwine.com
Tim@allengroupllp.com
Brent Garrison
Brent@allengroupllp.com

Bartelt Engineering
Attn: Paul Bartelt
1303 Jefferson St #200B
Napa, CA 94559
(707) 258-1301
paulb@barteltengineering.com

Belkorp AG, LLC
Attn: Laura Correll, Accounting
2413 Crows Landing Rd
Modesto, CA 95358
(209) 205-3706
ar@belkorpag.com
AR@BelkorpAg.com
ldunhouse@belkorpag.com

Brown's Auto Parts
Attn Dan Beltramai, Owner
1218 Main St.
Saint Helena, CA 94574-1901
(707) 963-3638
brownsauto169@gmail.com

Castino Restaurant Equipment And Supply
50 Utility Ct.
Rohnert Park, CA 94928-1659
(707) 585-3566
sales@castinosolutions.com

Central Valley
Administrative Offices
1804 Soscol Ave., #205
Napa, CA 94559
Attn: Gerry Cruz, Accounting Mgr.
(707) 261-7900
gerryc@central-valley.com

Chubb Group of Insurance Companies
P.O. Box 777-1630
Philadelphia, PA 19175-0001
(800) 372-4822
**Returned – Box Closed**

Conway Beverage Group, LLC
Dba: Elite Brands
Elite Brokerage
3238 Old Heather Rd.
San Diego, CA 92111-7716
Attn: Mr. Jay Conway
Jayconway@elitebrands.biz

Famille Sylvain
855 Bordeaux Way #239
Napa, CA 94558-7549
(707) 492-3308
contactusa@famillesylvain.com

Tonnellerie Sylvain
855 Bordeaux Way
Napa, CA 94558
(707) 492-3308
contactusa@famillesylvain.com

CC 52274685v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                 F 9013-3.1.PROOF.SERVICE

Case: 22-10381    Doc# 204    Filed: 01/17/23    Entered: 01/17/23 17:33:43    Page 56 of
59

Francois Freres USA Inc.
1403 Jefferson St.
Napa, CA 94559-1708
(707) 294-2204
office@francoisfreresusa.com
julie@francoisfreresusa.com
accounting@francoisfreresusa.com
assistant@francoisfreresusa.com

G3 Enterprises Inc.
(Tapp Labels)
580 Gateway Dr.
Napa, CA 94558
(707) 252-8300
jeff.licht@tapplabel.com

Napa County Treasurer
1195 3rd St. #108
Napa, CA 94559-3035
(707) 253-4314
Dawnette.martindale@countyofnapa.org
Napa County Treasurer-Tax Collector
Bob.Minahen@countyofnapa.org
Napa County Attorney
Wendy.dau@countyofnapa.org

Napa Ford Lincoln
170 Soscol Ave.
Napa, CA 94559
(707) 255-2580
**Via Regular Mail**

Ford Motor Credit Company
National Bankruptcy Service Center
P O Box 62180
Colorado Springs CO 80962-2180
(800) 955-8232
fcffald@ford.com

Napa Valley Petroleum
P.O. Box 2670
Napa, CA 94558-0528
(707) 252-6888
kamh@napavalleypetroleum.com

Napa Valley Vintners Association
P.O. Box 141
Saint Helena, CA 94574
(707) 963-3388
Attn: Steve Tradewell, CFO
stradewell@napavinters.com

Ramondin U.S.A. Inc.
Tammy Frandsen
Finance Manager
541 Technology Way
Napa, CA 94558
(707) 944-2277
tfrandsen@ramondin.com

Stanzler Law Group
Attn: Jordan S. Stanzler
390 Bridge Pkwy #220
Redwood City, CA 94065
(650) 739-0200
Jstanzler@stanzlerlawgroup.com

Wilbur Ellis Company LLC
c/o Registered Agent Solutions Inc.
720 14th St.
Sacramento, CA 95814-1905
(707) 963-3495
KZavala@wilburellis.com
MHAMMETT@wilburellis.com

Wine Service Cooperative
1150 Dowdell Lane
Saint Helena, CA 94574
Attn:  Steven Tamburelli
General Manager
Tel: (707) 963-9474
Fax: (707) 963 9359
Steve@wineservicecoop.com

Bright Event Rental
22674 Broadway # A
Sonoma, CA 95476
(707) 940-6060
Attn:  Michelle Minsk, Acctg.
accountsreceivable@bright.com

CC 52274685v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.
June 2012

F 9013-3.1.PROOF.SERVICE

CNH Capital
Dept. 1801104747435
P.O. Box 78004
Phoenix, AZ 85062
Attn: Steve Wright, Bankruptcy Dept.
(717) 355-5790
**Via Regular Mail**

CNH Industrial Capital America, LLC
PO Box 71264
Philadelphia, PA 19176-6264
Attn: John Chiavacci, HRBK Analyst
(717) 355-5913
john.chiavacci@cnhind.com

ETS Laboratories
c/o Marjorie Burns 899 Adams Street #A
Saint Helena, CA 94574-1160
(707) 963-4806
Attn Accounts Receivable Team
ar@etslabs.com
accounts@etslabs.com

Matheson Tri-Gas Inc.
Dept. LA 23793
Pasadena, CA 91185
(707) 963-4307
**Via Regular Mail**

Sovos Compliance LLC
200 Ballardvale St. Bldg 1 4th Fl.
Wilmington, MA 01887
(866) 890-3970
**Via Regular Mail**

Wine Technology America
aka Wine Technology, Inc.
474 Walten Way
aka Vinwizard
Windsor, CA 95492
(707) 703-5919
Attn: Kelly Graves, Director
(720) 284-2059
kelly@vinwizard.us

Wine Technology America Inc.
c/o Lloyd Matthews, Agent
1899 Larkspur St.
Yountville, CA 94599-1237
**Via Regular Mail**

Wyatt Irrigation Co.
4407 Solano Ave.
Napa, CA 94558
(707) 578-3747
Lynne Colombano, Acct Receivable Mgr.
lynne@wyattsupply.com

Wyatt Irrigation Co.
c/o CSC - Lawyers Incorporating Service
2710 Gateway Oaks Dr. #150N
Sacramento, CA 95833-3502
**Via Regular Mail**

**Request for Special Notice**
Alcohol & Tobacco Tax & Trade Bureau
U.S. Department of the Treasury
Attn: Daniel Paralta, Senior Counsel,
Field Operations
1436 2nd Street #531
Napa, CA 94559
(513) 684-2509
(202) 453-2412
Daniel.Peralta@ttb.gov

Dept. of the Treasury, Alcoholic Beverage Control
Attn: Tracie Parker, Lic. Rep. I
50 D Street Room 130
Santa Rosa, CA. 95404
Phone: (707) 576-2165
Fax: (707) 638-9537
tracie.parker@abc.ca.gov

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346
(800) 973-0424
**Via Regular Mail**

California Department of Tax and Fee
Administration
Special Operations Bankruptcy Team MIC: 74
P.O. Box 942879
Sacramento, CA 94279-0074
(800) 400-7115
**Via Regular Mail**

CC 52274685v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Franchise Tax Board
Attn: Vivian Ho
Bankruptcy Section, MS A-340
P.O. Box 2952
Sacramento, CA 95812-2952
916-845-7069
Vivian.Ho@ftb.ca.gov

Employment Development Department
Bankruptcy Unit-MIC 92E
P.O. Box 826880
Sacramento, CA 94280-0001
**Via Regular Mail**

Employment Development Department
Attn: MIC 53
800 Capital Mall
Sacramento, CA 95814
**Via Regular Mail**

Piper/Sandler
1251 Avenue of the Americas, 39th Floor
New York, N.Y. 10020
Attn.: Mr. Leonard Sheer and Mr. Mike Dillahunt
Leonard.sheer@psc.com
Michael.dillahunt@psc.com
**Via Regular Mail & Email**

Will Densberger
Pavi Micheli
Engel & Voelkers
25 East Napa Street
Sonoma, California
Will@nvwineestates.com
pavimicheli@icloud.com
**Via Regular Mail & Email**

**Courtesy Email**

Jay B. Spievack, Esq.
Cohen Tauber Spievack & Wagner P.C.
420 Lexington Ave., Suite 2400
New York NY 10170-2499
(212) 381-8735
email:  jspievack@ctswlaw.com

Joseph Vann, Esq.
Cohen Tauber Spievack & Wagner P.C.
420 Lexington Ave., Suite 2400
New York NY 10170-2499
(212) 381-8724
email:  jvann@ctswlaw.com

Will Densenberger
Engel & Volkers St. Helena - Napa Valley
1111 Main Street, Suite A
St. Helena, CA 94574
(707) 302-8133
email:  will@nvwineestates.com

John C. Vaughan
Newmark Knight Frank
4675 MacArthur Court, Suite 1600
Newport Beach, CA 92660
(808) 797-0148
email:  john.vaughan@nmrk.com

Mark Kasowitz:  MKasowitz@kasowitz.com

Gavin D. Schryver:  GSchryver@kasowitz.com

Attorneys for Napa County Treasurer
Jacquelyn H. Choi
jacquelyn.choi@rimonlaw.com,
docketing@rimonlaw.com

Luckey McDowell
luckey.mcdowell@shearman.com

Jonathan Dunworth
jonathan.dunworth@shearman.com

CC 52274685v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                                                F 9013-3.1.PROOF.SERVICE

Case: 22-10381    Doc# 204    Filed: 01/17/23    Entered: 01/17/23 17:32:43    Page 59 of
59