

VICTOR A. SAHN (CA Bar No. 97299)
victor.sahn@gmlaw.com
**GREENSPOON MARDER LLP**
333 South Grand Avenue, 34th Floor
Los Angeles, CA 90071
Ph: (213) 626 2311
Fax: (213) 629 4520

Attorneys for Spring Mountain Vineyard, Inc.
Debtor and Debtor in Possession

**CHANGES MADE BY COURT**

**The following constitutes the order of the Court.**
**Signed: January 18, 2023**

_Charles Novack_

**Charles Novack**
**U.S. Bankruptcy Judge**

## UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SANTA ROSA DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| SPRING MOUNTAIN VINEYARD INC., Debtor. | Case No. 22-10381 CN |
| | **INTERIM ORDER:** |
| | **(I) AUTHORIZING SECURED POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364; (II) EXTENDING THE TERM FOR CASH COLLATERAL USAGE PURSUANT TO EXISTING CASH COLLATERAL ORDERS TO APRIL 15, 2023, AND (III) GRANTING RELATED RELIEF** |

Upon the motion, dated December 30, 2022 (Docket Entry No. 185) (the "Motion"),[1] of Spring Mountain Vineyard, Inc., as debtor-in-possession (the "Debtor") in the above referenced chapter 11 case (the "Case"), for entry of an interim order (this "Interim DIP Order") and a final order ("Final Order") under sections 105, 361, 362, 363(c), 363(e), 364(c), 364(d)(1) and 364(e) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"); the Court having entered orders approving the Debtor's use of cash collateral (Docket Entry Nos. 23 (the "First Cash

---

[1] Capitalized terms used herein that are not otherwise defined shall have the meanings given to them in the Motion.

Collateral Order"), 76 (the "Second Cash Collateral Order"), 120 (together with Docket Entry No. 92, the "Third Cash Collateral Order"), 183 (together with Docket Entry No. 181, the "Cash Collateral Stipulation" and, collectively, with the First Cash Collateral Order, the Second Cash Collateral Order, and the Third Cash Collateral Order, the "Cash Collateral Orders")); the Court having reviewed the Motion, the Declaration of Kevin Krakora in Support of the Motion (Docket Entry No. 185) (the "Krakora Declaration"), and all other evidence and all responses to the Motion, the relief sought by the Debtor in this Interim DIP Order includes an order:

(a) authorizing the Debtor to obtain senior secured postpetition financing on a superpriority basis (the "DIP Loan") pursuant to the terms and conditions of this Interim Order and that certain *Debtor in Possession Secured Multi-Draw Term Promissory Note* (the "DIP Note"), attached hereto as **Exhibit A**, in the aggregate, maximum principal amount of up to $4,000,000;[2]

(b) authorizing the Debtor to execute any other documents, agreements, and instruments delivered pursuant thereto or executed or filed in connection therewith, all as may be reasonably requested by the DIP Agent (as the same may be amended, restated, supplemented, or otherwise modified from time to time, and collectively with the DIP Note, the "DIP Loan Documents");

(c) granting the DIP Agent, for itself and for the benefit of the DIP Lenders, first priority security interest in and liens on all of the DIP Collateral (as defined below) to secure the DIP Loan and all obligations owing and outstanding thereunder and under the DIP Loan Documents, as applicable, the Interim Order and the Final Order, as applicable (collectively, the "DIP Obligations");

(d) granting allowed superpriority administrative expense claims to the DIP Agent and the DIP Lenders;

---

[2] The "DIP Lenders" shall mean the lender parties listed in the DIP Note. MGG California, LLC shall serve as the "DIP Agent" for and on behalf of the DIP Lenders.

2

(e)    authorizing the Debtor to use Cash Collateral (as defined in the Cash Collateral Orders) pursuant to the extension of the terms of the Third Cash Collateral Order, as previously extended by the Cash Collateral Stipulation;

(f)    vacating and modifying the automatic stay arising under section 362 of the Bankruptcy Code in accordance with the provisions hereof to the extent necessary to implement and effectuate the terms and provisions of this Interim DIP Order; and

(g)    granting certain related relief.

The Court having considered the Motion, the Krakora Declaration, the other filings and pleadings in the Case and the evidence submitted or adduced and the arguments of counsel made at the interim hearing held on January 11, 2023 (the "Interim Hearing"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001, and 9014; and the Interim Hearing to consider the interim relief requested in the Motion having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and it appearing to the Court that granting the relief set forth herein is necessary to avoid immediate and irreparable harm to the Debtor and its estate, and is otherwise fair and reasonable, in the best interests of the Debtor, its estate, and its creditors and equity holders, and essential for the continued operation of the Debtor's business; and after due deliberation and consideration, and for good and sufficient cause appearing therefor; the following terms are approved as the Interim DIP Financing Order between the Debtor and the DIP Agent:

A.    The Debtor's Stipulations. Pursuant to (i) Paragraph A of Third Cash Collateral Order and (ii) Paragraph G of the Second Cash Collateral Order, the Debtor has agreed to certain stipulations relating to, among other things, the amount and priority of the Administrative Agent's claim in connection with the Debtor's prepetition loan facility pursuant to the Credit Agreement (as defined in the Second Cash Collateral Order), which amount of such claim is not less than $202,315,536.14. The Debtor hereby reaffirms the

3

stipulations contained in Paragraph A of the Final Cash Collateral Order and Paragraph G of the Second Cash Collateral Order, which are incorporated herein by reference, and the amount of the Administrative Agent's claim on account of the Prepetition Obligations (as defined in the Second Cash Collateral Order) in an amount not less than $202,315,536.14.

B. <u>Sale Process Milestones</u>. Notwithstanding anything to the contrary contained in the Cash Collateral Orders, the Debtor agrees to the following terms that will govern its sale process:

(i) <u>Stalking Horse Bid</u>: (a) The Debtor and its advisors shall use their reasonable best efforts to market the Debtor's assets and obtain a stalking horse bid on or before **February 17, 2023**; <u>provided</u>, <u>however</u>, the failure to obtain a stalking horse bid itself shall not be a breach pursuant to the DIP Loan; <u>provided</u>, <u>further</u>, that the Debtor's investment banker shall be allowed, in its sole discretion, to communicate with the DIP Agent and its advisors in connection with the marketing and sale (the "<u>Sale Process</u>") of the Debtor's vineyard property located in St. Helena, CA (the "<u>Vineyard</u>") and wine inventory, and the Chapter 11 case without the Debtor or its counsel present.

(b) The Debtor shall not decide to accept a stalking horse bid, if any, until no earlier than February 17, 2023, unless the DIP Agent otherwise consents in writing. The Debtor shall, consistent with its fiduciary duties, consider all stalking horse bids received, including a stalking horse bid submitted by MGG California, LLC, as administrative agent ("<u>MGG</u>" or the "<u>Administrative Agent</u>"), if any, which bid may be submitted on or after February 17, 2023.

(c) All of MGG's rights are fully reserved, including, without limitation, the filing of any objection and/or other pleadings on or after February 17, 2023 relating to the Debtor's selection of a stalking horse bid, regardless of whether the Debtor decides to accept a stalking horse bid (including a bid by MGG), or to not accept any stalking horse bid at all and proceed to a naked auction.

4

(ii)     Bid Procedures and Sale Motion:  (a) On or before **January 17, 2023**  CN ~~13, 2023~~, the Debtor shall file a motion (the "Bid Procedures Motion") seeking (a) entry into a stalking horse purchase agreement, if any and providing that any stalking horse bid shall be acceptable to the DIP Agent in its sole discretion, (b) approval of bidding procedures for the sale of all or substantially all assets of the Debtor, (c) scheduling the auction, the hearing, and objection deadlines for such sale consistent with the deadlines herein, and (d) seeking related relief consistent with this Interim DIP Order, which Bid Procedures Motion and proposed order in connection therewith (the "Bid Procedures Order") shall each be subject to the DIP Agent's approval in its sole discretion.  After the hearing on the Bid Procedures Motion, presuming that such motion is granted by the Court, the DIP Agent will support the dates provided in the milestones referenced in this Interim DIP Order going forward as long as the Debtor has otherwise complied with this Interim DIP Order.

(iii)     Auction. The auction in connection with the sale of all or substantially all assets of the Debtor shall conclude no later than **March 24, 2023** (*i.e.*, an auction scheduled to occur over multiple days shall conclude no later than March 24, 2023). The DIP Agent's rights are fully reserved, including, without limitation, (i) to participate, including, without limitation, a credit bid of all or any portion of its claim, at the auction, and (ii) to file objections and/or other pleadings in connection with the sale hearing.

(iv)     Sale Hearing.  The hearing to consider approval of the sale of all or substantially all assets of the Debtor shall occur no later than **March 31, 2023**. The DIP Agent's rights are fully reserved, including, without limitation, the filing of objections and/or other pleadings in connection with the sale hearing.  The order approving such sale, and the asset purchase agreement and all exhibits and schedules thereto in connection with such sale, shall each be in form and substance satisfactory to the DIP Agent, in its sole discretion.

5

(v)   <u>Closing of Sale</u>.   The closing of a sale approved by the Bankruptcy Court shall occur no later than **April 15, 2023**.

C.   <u>Necessity for Relief Requested</u>.

(i)   *Postpetition Financing*.  The Debtor requested from the DIP Lenders certain loans, advances, and other financial accommodations on the terms and conditions set forth in this Interim DIP Order and the DIP Loan Documents (as defined below).  The DIP Lenders have indicated a willingness to provide financing to the Debtor subject to the entry of this Interim DIP Order, and conditioned upon the entry of the Final Order, including stipulations that such financing is essential to the Debtor's estate, the DIP Lenders are extending credit to the Debtor as set forth herein in good faith, and that the claims, superpriority claims, security interest, liens, rights, and other protections granted to the DIP Lenders and DIP Agent will have the protections provided in section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument, or reconsideration of this Interim DIP Order, the Final Order, or any other order

(ii)   *Need for Postpetition Financing*. The Debtor has an immediate need for financing to, among other things, preserve and maximize the value of the assets of the Debtor's bankruptcy estate (as defined under section 541 of the Bankruptcy Code, the "Estate") in order to maximize the recovery to all creditors of the Debtor's Estate, absent which immediate and irreparable harm will result to the Debtor, its Estate, and its stakeholders.  Absent the Debtor's ability to obtain postpetition financing, the Debtor will not have sufficient available sources of working capital, including Cash Collateral, or financing and will be unable to pay its payroll and other operating expenses, or maintain its assets to the detriment of its Estate and creditors.

(iii)   *No Credit Available on More Favorable Terms*.  The Debtor is unable to obtain adequate unsecured credit allowable as an administrative expense

6

under section 503 of the Bankruptcy Code, or other sufficient financing under sections 364(c) or (d) of the Bankruptcy Code, on more favorable terms than those set forth herein, based on the totality of the circumstances. A loan in the amount provided by the DIP Loan is not available to the Debtor without granting the DIP Agent, for the benefit of the DIP Lenders, superpriority claims, liens, and security interests, pursuant to sections 364(c)(1), 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, as provided in this Interim DIP Order.

(iv) *Good Faith*. The terms of the DIP Loan Documents, including, without limitation, the interest rates and fees applicable, and intangible factors relevant thereto, are more favorable to the Debtor than those available from alternative sources. The DIP Loan Documents have been negotiated in good faith and at arm's-length among the Debtor, the DIP Lenders, and the DIP Agent under no duress, and without undue influence, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining the requisite approvals of the DIP Loan. Any DIP Obligations and other financial accommodations made to the Debtor by the DIP Agent and the DIP Lenders pursuant to the DIP Loan Documents and this Interim Order shall be deemed to have been extended by the DIP Agent and the DIP Lenders in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and the DIP Agent and the DIP Lenders shall be entitled to all protections afforded thereby.

(v) *Fair Consideration and Reasonably Equivalent Value*. The Debtor has received and will receive fair and reasonable consideration in exchange for access to the DIP Loan and all other financial accommodations provided under the DIP Loan Documents and this Interim Order. The terms of the DIP Loan Documents and this Interim Order are fair and reasonable, reflect the Debtor's exercise of prudent judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

7

D. **Good Cause.** Good cause has been shown for immediate entry of this Interim DIP Order. The relief requested in the Motion, at the Interim Hearing, and the terms set forth herein are (i) critical to the Debtor's ability to maximize the value of the Estate, (ii) in the best interests of the Debtor and its Estate, and (iii) necessary, essential, and appropriate to avoid immediate and irreparable harm to the Debtor and its Estate, stakeholders, assets, goodwill, reputation, and employees. The ability of the Debtor to obtain sufficient working capital and liquidity under the DIP Loan is vital to the Debtor's estate and creditors. Among other things, the relief granted herein will minimize disruption of the Debtor's business and permit the Debtor to meet payroll and other expenses necessary to maximize the value of the Estate. The terms of the proposed adequate protection arrangements, as set forth in this Interim DIP Order, are fair and reasonable under the circumstances and reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties.

E. **Sections 506(c) and 552(b) Waivers.** In exchange for and as a material inducement to the DIP Agent and the DIP Lenders to agree to provide the DIP Loan, and in light of the agreement of the Administrative Agent and the Prepetition Secured Parties to permit their Prepetition Liens (each as defined in the Second Cash Collateral Order) to be subject to prior payment of the DIP Liens and the DIP Superpriority Claim, the DIP Agent, the DIP Lenders, the Administrative Agent, and the Prepetition Secured Parties are each entitled to (a) subject to entry of the Final Order, a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code and (b) subject to entry of the Final Order in the case of the Administrative Agent and the Prepetition Secured Parties, a waiver of the provisions of section 506(c) of the Bankruptcy Code.

F. **Immediate Entry of Interim DIP Order.** The Debtor has requested immediate entry of this Interim DIP Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2). The permission granted herein to enter into the DIP Loan Documents and to obtain funds thereunder is necessary to avoid immediate and irreparable harm to the Debtor. This Court concludes that entry of this Interim DIP Order is in the best interests of the Debtor, its Estate,

8

and creditors as its implementation will, among other things, allow for access to the financing necessary for the continued flow of supplies and services to the Debtor necessary to sustain the operation of the Debtor's existing business and further enhance the Debtor's prospects for a successful reorganization or sale of substantially all of its assets.

Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED that:**

1. <u>Motion Granted</u>.  The relief requested in the Motion and on the record at the Interim Hearing is GRANTED to the extent provided herein. The authorization to obtain financing pursuant to this Interim DIP Order and the DIP Loan Documents shall expire, and the DIP Loan made pursuant to this Interim DIP Order and the DIP Loan Documents will mature, and together with all interest thereon and any other obligations accruing under the DIP Loan Documents, will become due and payable (unless such obligations become due and payable earlier pursuant to the terms of the DIP Loan Documents and this Interim DIP Order by way of acceleration or otherwise) on the Maturity Date (as defined below). Notwithstanding anything to the contrary contained herein or in the DIP Loan Documents, the Court will not entertain any hearing between the entry of this Interim DIP Order and the Final Hearing in connection with an asserted Event of Default (as defined below).

2. <u>Final Hearing</u>.  A hearing on the Debtor's request for a Final Order approving the Motion is scheduled for January 25, 2023 at 11:00 a.m. (prevailing Pacific time) before this Court (the "<u>Final Hearing</u>").  Within three (3) business days after entry of this Interim DIP Order, the Debtor shall serve, or cause to be served, by first class mail or other appropriate method of service, a copy of the Motion (to the extent the Motion was not previously served on a party) and this Interim DIP Order on the Notice Parties.  Any responses or objections to the Motion must be filed on or before January 23, 2023.  Any response to such opposition shall be presented at the time of the Final Hearing.

9

**Authorization for DIP Financing and Use of Cash Collateral**

3. <u>Authorization for DIP Financing</u>. The Debtor is hereby authorized, on an interim basis, to incur DIP Obligations immediately subject to the terms of this Interim DIP Order, the Approved Budget, and the DIP Loan Documents, in the aggregate principal amount of up to $1,000,000.00 for the period up to and including January 29, 2023. Except as provided under this Interim DIP Order, available financing under the DIP Loan Documents shall, on an interim basis, be made to fund, strictly in accordance with the Approved Budget, the payment of accrued and budgeted administrative expenses on or prior to January 29, 2023, including those set forth on budgets approved by the DIP Agent pursuant to the Cash Collateral Orders.

4. <u>Authorization for Use of Cash Collateral</u>. The terms and provisions of the Third Cash Collateral Order, as extended pursuant to the Cash Collateral Stipulation, shall be further extended to January 29, 2023, and, subject to entry of the Final Order, the Maturity Date, and the Debtor shall be permitted to use Cash Collateral solely in accordance with and to the extent set forth in the Approved Budget during the period commencing on the date of this Interim DIP Order through the Maturity Date.

5. <u>Approved Budget</u>.

(a) The Debtor has delivered to the DIP Agent a budget that sets forth projected (i) cash receipts, (ii) cash disbursements (including ordinary course operating expenses, non-operating expenses, bankruptcy-related expenses (including professional fees of the Debtor's professionals and advisors), asset sales and any other fees and expenses), and (iii) net cash flow, on a weekly basis and line-item basis for the time period from and including January 2, 2023 through April 17, 2023, a copy of which is attached hereto as **<u>Exhibit B</u>** (as the same may be updated from time to time with the prior written consent of the DIP Agent in its sole discretion, the "<u>Approved Budget</u>"). The Approved Budget shall at all times be in form and substance acceptable to the DIP Agent, and approved in writing by the DIP Agent in its sole discretion. The Debtor shall provide updates to the Approved Budget and financial

10

reporting with respect to the Debtor in accordance with the terms of this Interim DIP Order and the DIP Loan Documents and shall provide copies of updates to the Approved Budget to the U.S. Trustee and counsel for any Committee. Funds borrowed under the DIP Loan Documents and this Interim DIP Order shall be used by the Debtor strictly in accordance with the DIP Loan Documents, this Interim DIP Order, and the Approved Budget, subject to such variances as are permitted by this Interim DIP Order or agreed to in writing by the DIP Agent. Each budget delivered to the DIP Agent shall be accompanied by such customary supporting documentation as reasonably requested by the DIP Agent and shall be prepared in good faith based upon assumptions the Debtor believes to be reasonable at the time of delivery. The consent of the DIP Agent to any Approved Budget shall not be construed as a commitment to provide the DIP Loan after the Maturity Date under this Interim DIP Order.

(b)     Any modifications, amendments, revisions, or updates to the Approved Budget must be consented to in writing by the DIP Agent in its sole discretion prior to the implementation thereof and shall not require further notice, hearing, or court order; provided, however, that notice of any such amendment, supplement, or modification shall be provided to the U.S. Trustee and counsel to any Committee.

(c)     The Debtor shall provide to the DIP Agent, at least once every four (4) weeks beginning on February 9, 2023, an updated budget on a rolling 13-week basis, which updated budget shall be subject to the DIP Agent's approval in its sole discretion. Such updated budget approved by the DIP Agent shall be the Approved Budget.

(d)     The DIP Agent and the DIP Lenders (i) may assume the Debtor will comply with the Approved Budget, and (ii) shall have no duty to monitor such compliance. All advances and extensions of credit shall be based upon the terms and conditions of the DIP Loan Documents, as the same may be adjusted from time to time. Subject to the terms and conditions of this Interim DIP Order, the DIP Agent and the DIP Lenders shall have the right, but not the obligation, to extend credit independent of the bi-weekly schedule pursuant to any Approved Budget and the DIP Loan Documents; provided, however, the aggregate principal

11

amount of the DIP Loan, including any such extended credit, shall not exceed $4,000,000, and all such DIP Obligations shall be entitled to the benefits and protections of this Interim DIP Order.

(e)     Not later than 8:00 p.m. (prevailing Eastern time) on the Thursday of each week commencing on January 16, 2023, the Debtor shall furnish to the DIP Agent a weekly report (each, a "Budget Compliance Report") that sets forth, as of the preceding Friday , for the prior week and on a rolling four-week basis (each such reporting period, a "Cash Flow Measurement Period"), the variance, if any, between the Approved Budget and the actual results for each line item set forth in the Approved Budget.

(f)     The Debtor shall be deemed in compliance with the Approved Budget to the extent that (i) the actual amount of "Total Receipts" for any Cash Flow Measurement Period is not less than eighty-five percent (85%) of the amount projected in the "Total Receipts" line item of the Approved Budget for such Cash Flow Measurement Period; and (ii) the actual amount of the "Operating Disbursements" for any Cash Flow Measurement Period does not exceed one hundred fifteen percent (115%) of the amount projected in the "Operating Disbursement" line item of the Approved Budget for such Cash Flow Measurement Period (individually and collectively, the "Permitted Variances").

6.     Authority to Execute and Deliver Necessary Documents.

(a)     The Debtor is authorized to negotiate, prepare, enter into, and deliver the DIP Loan Documents, including any amendments thereto and borrow money under the DIP Loan, on an interim basis in accordance with the terms of this Interim DIP Order and the DIP Loan Documents.  The Debtor is further authorized and directed to negotiate, prepare, enter into and deliver any UCC financing statements, pledge and security agreements, mortgages or deeds of trust, or similar documents or agreements encumbering all of the DIP Collateral and securing the Debtor's obligations under the DIP Loan Documents, each as may be reasonably requested by the DIP Agent, for itself or on behalf of the DIP Lenders, or the DIP Lenders.  The Prepetition Liens shall be deemed continuing liens to secure (i) the DIP

12

Obligations, and (ii) the Prepetition Obligations in accordance with the priorities set forth in this Interim DIP Order. All Loan Documents (as defined in the Second Cash Collateral Order) evidencing the grant, priority and perfection of the Prepetition Liens on the Collateral shall (x) remain in full force and effect and continue to secure the Prepetition Obligations, (y) be deemed, upon entry of this Interim DIP Order, to secure, *mutatis mutandis*, the DIP Obligations for the benefit of the DIP Agent and the DIP Lenders, and (z) inure also to the benefit of, and shall be exercisable exclusively by, the DIP Agent, until all of the DIP Obligations have been indefeasibly paid in full, at which time exclusive control shall automatically revert to the Administrative Agent.

(b)     The Debtor is further authorized to (i) perform all of its obligations under the DIP Loan Documents, and such other agreements as may be required by the DIP Loan Documents to give effect to the terms of the financing provided for therein and in this Interim DIP Order, and (ii) perform all acts required under the DIP Loan Documents and this Interim DIP Order.

7.     <u>Valid and Binding Obligations</u>.  All obligations under the DIP Loan Documents shall constitute valid and binding obligations of the Debtor, enforceable against the Debtor, its Estate, and its successors and assigns, jointly and severally, including, without limitation, any trustee or other estate representative appointed in the Case or any Successor Case (as defined below), in accordance with their terms and the terms of this Interim DIP Order, and no obligation, payment, transfer, or grant of a lien or security interest under the DIP Loan Documents or this Interim DIP Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code) or subject to any avoidance, reduction, set off, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defense, or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity.  The DIP Obligations include all loans and any other indebtedness or obligations, contingent or absolute, now existing or

13

hereafter arising, which may from time to time be or become owing by the Debtor to the DIP Lenders and the DIP Agent under the DIP Loan Documents, including, without limitation, all principal, interest, costs, fees, expenses, and other amounts owed pursuant to the DIP Loan Documents.

8. <u>Termination of DIP Loan Documents</u>. Notwithstanding anything in this Interim DIP Order to the contrary, the authorization to obtain financing pursuant to this Interim DIP Order and the DIP Loan Documents shall expire, and the DIP Loan made pursuant to this Interim DIP Order and the DIP Loan Documents will mature, and together with all interest thereon and any other obligations accruing under the DIP Loan Documents, will become due and payable (unless such obligations become due and payable earlier pursuant to the terms of the DIP Loan Documents and this Interim DIP Order by way of acceleration or otherwise) on the date that is the earliest of: (a) the date of consummation of a sale of all or substantially all of the assets of the Debtor pursuant to section 363 of the Bankruptcy Code or a transaction that results in payment in full, in cash, of the Prepetition Obligations and the DIP Obligations, (b) April 15, 2023, or (c) termination by the DIP Agent (acting at the direction of the DIP Lenders) following the occurrence of an Event of Default under the DIP Loan Documents (the "<u>Maturity Date</u>").

9. <u>Authorization for Payment of DIP Financing Fees and Expenses</u>. All fees paid and payable, and all costs and/or expenses reimbursed or reimbursable (including, without limitation, all fees, costs and expenses referred to in the DIP Loan Documents) by the Debtor to the DIP Agent are hereby approved. The Debtor is hereby authorized and directed to pay all such fees, costs, and expenses in accordance with the terms of the DIP Loan Documents and this Interim DIP Order, without any requirement that any party or their counsel file any further application or other pleading, notice, or document with the Court for approval or payment of such fees, costs, or expenses. Notwithstanding anything to the contrary herein, the fees, costs, and expenses of the DIP Agent and DIP Lenders, including, without limitation,

14

all fees referred to in the DIP Loan Documents and all attorneys' fees and expenses, shall be deemed fully earned and non-refundable as of the date of this Interim DIP Order.

10. <u>Amendments, Consents, Waivers, and Modifications</u>.  The Debtor may enter into any amendments, consents, waivers, or modifications to the DIP Loan Documents in accordance with the terms of the DIP Loan Documents without need for further notice and hearing or any order of this Court; <u>provided</u>, <u>however</u>, that any material amendment, waiver, or modification shall require Court approval.  Copies of all amendments, waivers, modifications, whether or not material, shall be provided by the Debtor to counsel to the Committee, if any, and the U.S. Trustee.

## DIP Liens and DIP Superpriority Claims

11. <u>DIP Liens & Priority</u>.

(a) To secure the DIP Obligations and other obligations of the Debtor under the DIP Loan and DIP Loan Documents, the DIP Agent is hereby granted for the benefit of itself and the DIP Lenders, pursuant to and in accordance with sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, in each case subject to the Carve-Out, valid, enforceable, and fully perfected:

(i) first priority liens on all property of the Debtor's estate in the Case that is not subject to valid, perfect, and non-avoidable liens as of the commencement of the Case on September 29, 2022 (the "<u>Petition Date</u>"), excluding claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code (collectively, "<u>Avoidance Actions</u>"); <u>provided</u>, <u>however</u>, upon entry of the Final Order, liens in favor of the DIP Agent and DIP Lenders shall attach to and be perfected in any proceeds of Avoidance Actions;

(ii) junior liens on all property of the Debtor's estate in the Case, that is subject to valid, perfected, and non-avoidable liens in existence as of the Petition Date or to valid liens in existence at the time of the Petition Date that are perfected subsequent to the Petition Date as permitted by Section 546(b) of the Bankruptcy Code, other than property

15

that is subject to the existing liens that secure obligations under the agreements referred to in subsection (iii) below, which liens shall be primed by the liens to be granted to the DIP Lender as described therein;

(iii) first priority, senior priming liens on all of the property (such property, together with the property described in subsections (i) and (ii) above, the "DIP Collateral") of the Debtor's estate in the Case (including, without limitation, inventory, accounts receivable, general intangibles, chattel paper, owned real estate, real property leaseholds, fixtures and machinery and equipment fixtures and machinery and equipment, deposit accounts, patents, copyrights, trademarks, tradenames, rights under license agreements, and other intellectual property and capital stock of subsidiaries) that is subject to the existing liens that secure the obligations of any other lenders under or in connection with any existing credit agreement and related documents and agreements and all of which existing liens (the "Primed Liens") shall be primed by and made subject and subordinate to the perfected first priority senior liens to be granted to the DIP Agent, for the benefit of itself and the DIP Lenders, which senior priming liens in favor of the DIP Agent shall also prime any liens granted after the Petition Date to provide adequate protection in respect of any of the Primed Liens (subsections (i), (ii), and (iii) collectively, the "DIP Liens").

(b) The DIP Liens shall be effective immediately upon the entry of this Interim DIP Order and shall not at any time be made subject or subordinated to, or made *pari passu* with, any other lien, security interest or claim existing as of the Petition Date, or created under sections 363 or 364(d) of the Bankruptcy Code or otherwise, other than the Carve-Out as provided herein.

(c) The DIP Liens shall be and hereby are deemed fully perfected liens and security interest, effective and perfected upon the date of this Interim DIP Order, without the necessity of execution by the Debtor of mortgages, security agreements, pledge agreements, financing agreements, financing statements, account control agreements, or any other agreements or instruments, such that no additional actions need by taken by the DIP Agent or

16

the DIP Lenders to perfect such interests. Any provision of any lease, loan document, easement, use agreement, proofer, covenant, license, contract, organizational document, or other instrument or agreement that requires the consent or approval of one or more landlords, licensors or other parties, or requires the payment of any fees or obligations to any governmental entity, non-governmental entity or any other person, in order for any of the Debtor to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other collateral, is and shall be deemed to be inconsistent with the provisions of the Bankruptcy Code, and shall have no force or effect with respect to the transactions granting the DIP Agent, for the benefit of itself and the DIP Lenders, a security interest in such fee, leasehold, or other interest or other collateral or the proceeds of any assignment, sale, or other transfer thereof, by the Debtor in favor of the DIP Agent, for the benefit of itself and the DIP Lenders, in accordance with the terms of the DIP Loan Documents.

12.     DIP Lenders' Superpriority Claim. The DIP Agent, for the benefit of itself and the DIP Lenders, is hereby granted an allowed superpriority administrative expense claim (the "DIP Superpriority Claim") pursuant to section 364(c)(1) of the Bankruptcy Code in the Case and in any successor case(s) under the Bankruptcy Code (including any case or cases under chapter 7 of the Bankruptcy Code, the "Successor Case(s)") for all DIP Obligations, having priority over any and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to entry of a Final Order), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114 and any other provision of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed DIP Superpriority Claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtor and all proceeds thereof including, without limitation, any proceeds or property recovered in connection with the pursuit of

17

Avoidance Actions. Except as set forth in this Interim DIP Order, without the written consent of the DIP Agent, no other superpriority claims shall be granted or allowed in the Case or in any Successor Case and the DIP Superpriority Claim shall be senior in all respects to any superpriority claims granted in the Case, other than the Carve-Out as provided herein.

13. Survival of DIP Liens and DIP Superpriority Claim. The DIP Liens, DIP Superpriority Claim, and other rights and remedies granted under this Interim DIP Order to the DIP Agent, for the benefit of itself and the DIP Lenders, shall continue in this and any Successor Case(s) and shall be valid and enforceable against any trustee appointed in the Case and/or upon the dismissal of the Case or any Successor Case(s) and such liens and security interests shall maintain their priority as provided in this Interim DIP Order until all of the DIP Obligations have been indefeasibly paid in full in cash and the DIP Lenders' commitments have been terminated in accordance with the DIP Loan Documents.

14. For purposes hereof, the term "Carve-Out" shall mean the sum of, to the extent allowed at any time pursuant to the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules for the Northern District of California (the "Local Rules"), and any interim or final orders of the Court, (x) all accrued and unpaid fees, disbursements, costs, expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtor pursuant to sections 327, 328, or 363 of the Bankruptcy Code, in an aggregate amount of up to one hundred fifteen percent (115%) of the amount specified for professional fees in the Approved Budget for the period up to the Maturity Date and (y) all fees and expenses of BNP Paribas Securities Corp. to which the pre-petition and post-petition liens and claims of Debtor's lenders are subject to a carveout pursuant to paragraph 10 of the *Order Authorizing the Employment and Retention of BNP Paribas Securities Corp. as Investment Banker to the Debtor and Debtors in Possession Effective as of October 14, 2022* (Docket No. 161).

15. Application of Proceeds of Sale. Proceeds of the sale of Collateral shall first be applied to the DIP Obligations and then be applied to Prepetition Obligations. Any amount

18

credit bid by the DIP Agent shall first be applied to reduce the amount of outstanding DIP Obligations and then be applied to reduce the amount of Prepetition Obligations.

16.    Post-Sale Professional Fees and Expenses.  Upon the consummation of a sale of all or substantially all of the assets of the Debtor, an amount equal to the Debtor's accrued and unpaid professional fees and expenses at such time set forth in the Approved Budget, plus $300,000, shall be reserved from proceeds of the DIP Agent's collateral to satisfy those obligations; provided, however, that following the satisfaction of any such obligations, any remaining balance shall immediately thereafter be distributed to the DIP Agent for application to the DIP Obligations or Prepetition Obligations if such obligations have not been satisfied in full.

17.    Nothing contained in the Motion, the DIP Note, the DIP Loan, the DIP Loan Documents, the Interim DIP Order, or any ancillary documents shall prime, alter, impair or otherwise modify any and all past, present or future valid, perfected, and non-avoidable liens of the Napa County Treasurer and Tax Collector (the "County") established in accordance with applicable state law.  The Debtor, the DIP Agent, the Administrative Agent, and the County reserve all rights, arguments, and defenses in connection with any claim asserted by the County.

**Adequate Protection**

18.    Adequate Protection for Prepetition Secured Parties.

(a)    Adequate Protection Liens.  As adequate protection for and to the extent of the amount of diminution in value from and after the Petition Date, of its interests in the Collateral, including, without limitation, the priming of the Prepetition Liens on and in the Collateral by the DIP Agent or the DIP Lenders (collectively, the "Diminution in Value"), the Administrative Agent, for the benefit of itself, is hereby granted (subject to the DIP Liens, and DIP Superpriority Claim), pursuant to sections 361 and 363 of the Bankruptcy Code, valid, binding, enforceable and perfected replacement and additional liens upon and security interests in all property, real or personal, whether now existing or hereafter arising and

19

wherever located, tangible and intangible, of the Debtor, including insurance policies (and any and all claims thereunder) and the proceeds thereof, commercial tort claims, causes of action, and all substitutions, indemnification rights, all present and future intercompany debt, books and records related to the foregoing, accessions and proceeds of the foregoing, wherever located, including, without limitation, (a) insurance or other proceeds; (b) all proceeds of leased real property; (c) the proceeds of any avoidance actions brought pursuant to Chapter 5 of the Bankruptcy Code or applicable state law equivalents; and (d) the proceeds of the Debtor's rights under section 506(c) and 550 of the Bankruptcy Code, and all Collateral that was not otherwise subject to valid, perfected, enforceable, and unavoidable liens on the Petition Date (collectively, to the extent acquired after the Petition Date, the "Post-Petition Collateral" and, together with the Prepetition Collateral and the Cash Collateral, the "Collateral") to the extent of any Diminution in Value (the "Adequate Protection Liens"). The Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any asset of the Debtor and all rights of payment of all other parties, but shall be subordinate to and subject to the DIP Liens and/or payment of any DIP Obligations on account thereof. Other than as set forth herein, including with respect to the DIP Liens and/or payment of any DIP Obligations, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or with any lien or security interest previously or hereinafter granted in the Case or any Successor Case. The Adequate Protection Liens shall be valid, binding and enforceable against any trustee or other estate representative appointed in the Case, in any Successor Case, and/or upon the dismissal of any Case or Successor Case.

(b)    Adequate Protection Fees.  As Adequate Protection for and to the extent of the amount of diminution in value from and after the Petition Date, of the DIP Agent's and the DIP Lenders' interests in the Collateral, including, without limitation, the priming of the Prepetition Liens on and in the Collateral by the DIP Agent or the DIP Lenders, the Debtor is authorized to reimburse, within ten (10) calendar days of written demand (together with reasonably detailed supporting documentation, which may be redacted to protect privileged

20

or confidential information), the Administrative Agent and the Lenders for reasonable and documented out-of-pocket fees and expenses incurred in connection with efforts to restructure the Debtor, any event of default under the Credit Agreement, and any exercise of remedies in respect thereof (including reasonable documented out-of-pocket prepetition and postpetition fees, charges, and disbursements of legal counsel, financial advisors, and third-party appraisers and consultants advising the Administrative Agent or the Lender incurred in connection with such party's participation in the Chapter 11 Case).

(c) <u>Cash Management</u>. The Debtor shall maintain its cash management arrangements in a manner consistent with that described in the applicable "first day" order.

(d) <u>Adequate Protection Superpriority Claim</u>. As adequate protection for the Diminution in Value of its interest in the Prepetition Collateral (as defined in the Second Cash Collateral Order), the Administrative Agent is hereby granted as and to the extent provided by sections 503 and 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in the Case and any successor bankruptcy case, subject in all respects to the Carve-Out (the "<u>Adequate Protection Superpriority Claim</u>"). The Adequate Protection Superpriority Claim shall have priority over all administrative expense claims, including administrative expenses of the kinds specified in or ordered pursuant to sections 503(b) and 507(b) of the Bankruptcy Code, and unsecured claims against the Debtor and the Estate now existing or hereafter arising, of any kind or nature whatsoever; <u>provided</u>, <u>however</u>, the Adequate Protection Superpriority Claim shall be subordinate to and subject to the DIP Superpriority Claim.

(e) <u>Disposition of Collateral</u>. The Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral outside the ordinary course of business without (i) prior written notice (which writing may be e-mail) to the DIP Agent and the Administrative Agent of such disposition and the terms thereof, and (ii) in each case, an order of this Court.

21

(f)     Further Adequate Protection Reservation.  Notwithstanding anything to the contrary set forth herein, the adequate protection granted by this Interim DIP Order is without prejudice to the Administrative Agent's rights to seek additional adequate protections from this Court.

**Restriction on Use of Funds**

19.     Limitation on Use of Collateral.  No proceeds of the DIP Loan, any DIP Collateral, Collateral, or Cash Collateral may be used in connection with or to finance in any way: (a) obtaining postpetition loans or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code or otherwise, other than from the DIP Agent or DIP Lenders, unless the proceeds of such loans or accommodations are or will be sufficient, and will be used, to indefeasibly pay in full in cash all DIP Obligations and Prepetition Obligations, (b) any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) for the payment of any services rendered by the professionals retained by the Debtor or Committee, or other representative of the Estate, in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment, determination, declaration or similar relief invalidating, setting aside, avoiding or subordinating, in whole or in part, any Prepetition Liens, Prepetition Obligations, DIP Obligations, or DIP Liens (ii) for monetary, injunctive or other affirmative relief against the Administrative Agent, any Prepetition Collateral, the DIP Agent, the DIP Lenders, or the DIP Collateral, or (iii) preventing, hindering or otherwise delaying the exercise by the Administrative Agent or the DIP Agent of any rights under this Interim DIP Order; (c) objecting to or challenging in any way the claims, liens, or interests held by or on behalf of the Administrative Agent, the DIP Agent, or the DIP Lenders; (d) asserting, commencing or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against the Administrative Agent, the DIP Agent, or the DIP Lenders; or (e) prosecuting an objection to,

22

contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the Prepetition Liens, the Prepetition Obligations or any other rights or interest of the Administrative Agent, or the DIP Liens, the DIP Obligations or any other rights or interest of the DIP Agent or the DIP Lenders.

20.    Effect of Debtor's Stipulations on Third Parties.

(a)    Nothing in this Interim DIP Order shall prejudice the rights of any Committee or any other party in interest, if granted standing by the Court, pursuant to Paragraph 18 of the Second Cash Collateral Order.

(b)    Nothing in this Interim DIP Order vests or confers on any person (as defined in the Bankruptcy Code), including any Committee, standing or authority to pursue any cause of action belonging to the Debtor or its Estate, including, without limitation, any Challenge (as defined in the Second Cash Collateral Order) with respect to the DIP Loan Documents or the Prepetition Obligations.

21.    Prohibition on Granting of Additional Liens and Interests. No liens, claims, interests or priority status having a lien or administrative priority superior to or *pari passu* with that of the DIP Liens, the DIP Superpriority Claim, or the Adequate Protection Liens granted by this Interim DIP Order, shall be granted while any portion of the DIP Obligations or Prepetition Obligations remain outstanding, or any commitment under the DIP Loan Documents or Loan Documents remains in effect, without the prior written consent of the DIP Agent and the Administrative Agent.

22.    Release. The release, discharge, waivers, settlements, compromises, and agreements set forth in this Paragraph 22 shall be deemed effective upon entry of the Interim DIP Order, and subject only to the rights set forth in Paragraph 20 above and entry of the Final Order. The Debtor, on behalf of itself and its Estate (including any successor trustee or other estate representative in the Case or any Successor Case) forever and irrevocably (a) release, discharge, and acquit the DIP Agent, the DIP Lenders, the Administrative Agent, the Prepetition Secured Parties and each of their respective former, current or future officers,

23

employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, lenders, financing sources, and predecessors in interest (collectively, the "Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every type, including, without limitation, any claims arising from any actions relating to any aspect of the relationship between the DIP Agent, the DIP Lenders, the Administrative Agent or the Prepetition Secured Parties, on the one hand, and the Debtor and its affiliates, on the other hand, including any equitable subordination claims or defenses, with respect to or relating to the Prepetition Obligations, the Loan Documents, the DIP Loan, the DIP Liens, the DIP Loan Documents, any and all claims and causes of action arising under title 11 of the United States Code, and any and all claims regarding the validity, priority, perfection or avoidability of the liens or secured claims of the Administrative Agent and the Prepetition Secured Parties; and (b) waive any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability and non-avoidability of the Prepetition Obligations.

## Remedies; Modification of Automatic Stay

23. _Event of Default_. Each of the following events, unless waived by the DIP Agent in writing, shall constitute an "Event of Default":

(a) failure by the Debtor to make any payment (whether principal, interest, or otherwise) when such amount becomes due and payable under the DIP Note;

(b) any breach of, or failure to achieve or adhere to a covenant, representation, warranty, or milestone under the DIP Note or the Interim DIP Order, including, without limitation, failure to obtain the DIP Agent's or MGG's consent or approval as required pursuant to the DIP Note or the DIP Order; provided, however, that failure to timely pay the tax claims asserted by the County shall not constitute an Event of Default;

24

(c)     any misrepresentation or omission by the Debtor in or with respect to the DIP Loan in any respect;

(d)     the Debtor's failure to comply with any requirement of the Interim DIP Order or the DIP Note;

(e)     failure by the Debtor to comply with the Approved Budget, subject to the Permitted Variances, without the prior written consent of the DIP Agent;

(f)     the Debtor's filing of a Chapter 11 plan that does not pay, upon consummation of the plan, in full, in cash the DIP Obligations and the Prepetition Obligations;

(g)     the granting, creation, or approval of any lien on Collateral *pari passu* or senior to the DIP Liens granted to the DIP Agent;

(h)     dismissal of the Chapter 11 case or conversion of the Chapter 11 case to a Chapter 7 case or the sale of substantially all of the assets of the Debtor without the advance written consent of the DIP Agent;

(i)     any material adverse change in the business of the Debtor;

(j)     the appointment of a chapter 11 trustee or examiner with expanded powers or other person with expanded powers in the Chapter 11 case;

(k)     the automatic stay shall be modified, reversed, revoked, or vacated in a manner that has a material adverse impact on the rights and interests of the DIP Agent without the prior written consent of the DIP Agent;

(l)     reversal, vacation, or stay of the effectiveness of this Interim DIP Order.

(m)     failure of any of the DIP Liens or DIP Superiority Claims to be valid, perfected, and enforceable in all respects;

(n)     the failure of the Debtor to perform any of the terms, provisions, conditions, covenants, or obligations under this Interim DIP Order or the DIP Note;

25

(o)     any change in the duties and responsibilities of the Debtor's Chief Restructuring Officer (the "CRO"), Jigsaw Advisors LLC, or BNP Paribas Securities Corp. without the prior written consent of the DIP Agent in its sole discretion.

24.     Relief from the Automatic Stay; Other Remedies.

(a)     The automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to permit (i) the Debtor to implement and perform the terms of this Interim DIP Order and (ii) the Debtor to create, and the Administrative Agent or the DIP Agent to perfect, the Adequate Protection Liens, the DIP Liens and other liens granted hereunder, as applicable. The Administrative Agent and the DIP Agent shall not be required to file UCC financing statements or other instruments with any other filing authority to perfect the liens, including the Adequate Protection Liens and the DIP Liens, granted by this Interim DIP Order or to take any other actions to perfect such liens, which shall be deemed automatically perfected by the docketing of this Interim DIP Order by the Clerk of the Court, and deemed to be effective as of the Petition Date. If, however, the Administrative Agent or the DIP Agent shall elect for any reason to file, record or serve any such financing statements or other documents with respect to such liens, then the Debtor shall execute same upon request and the filing, recording or service thereof (as the case may be) shall be deemed to have been made at the time of the commencement of this Case on the Petition Date.

(b)     The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified without further notice, application or order of the Court to the extent necessary to permit the Administrative Agent or the DIP Agent, as applicable, to perform any act authorized or permitted under or by virtue of this Interim DIP Order, the DIP Loan Documents, the other Loan Documents, as applicable, to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the Collateral or the DIP Collateral, as applicable, including any adequate-protection replacement liens.

26

(c)     Upon the occurrence of an Event of Default (or the Maturity Date), (i) subject to extension of the date of such acceleration by the DIP Agent in its sole discretion, the DIP Obligations shall accelerate and become immediately due and payable and enforceable by the DIP Agent, subject to the DIP Agent's filing a motion on two (2) business days' notice seeking relief from the automatic stay pursuant to section 362 of the Bankruptcy Code, at which hearing on such motion, the Debtor shall be limited to argue only that no uncured Event of Default has occurred or is continuing, and (ii) pursuant to section 1121(d) of the Bankruptcy Code, the period during which the Debtor has the exclusive right to file a chapter 11 plan pursuant to section 1121(b) and (c) of the Bankruptcy Code shall terminate solely as it applies to MGG's right to file a chapter 11 plan, and MGG shall be permitted to file a chapter 11 plan for the Debtor at that time.

25.     Reversal, Modification, Vacatur, or Stay.  Pursuant to Bankruptcy Code section 364(e), any reversal, modification, vacatur, or stay of any or all of the provisions of this Interim DIP Order (other than in accordance with this Interim DIP Order) shall not affect the validity or enforceability of any Adequate Protection Liens, the Adequate Protection Superpriority Claim, the DIP Liens, the DIP Superpriority Claim, or any claim, lien, security interest, or priority authorized or created hereby with respect to any Adequate Protection Liens, the Adequate Protection Superpriority Claim, the DIP Liens, the DIP Superpriority Claim incurred prior to the effective date of such reversal, modification, vacatur, or stay. Notwithstanding any reversal, modification, vacatur, or stay (other than in accordance with this Interim DIP Order), (a) this Interim DIP Order shall govern, in all respects, any use of Cash Collateral, Adequate Protection Liens, Adequate Protection Superpriority Claim, DIP Liens, or DIP Superpriority Claim incurred by the Debtor prior to the effective date of such reversal, modification, vacatur, or stay, and (b) the Administrative Agent or the DIP Agent, as applicable, shall be entitled to all the benefits and protections granted by this Interim DIP Order with respect to any such use of Cash Collateral or such Adequate Protection Liens,

27

Adequate Protection Superpriority Claim, the DIP Liens, or the DIP Superpriority Claim incurred by the Debtor.

26. <u>No Waiver for Failure to Seek Relief</u>. The failure or delay of the Administrative Agent or the DIP Agent, as applicable, to seek relief or otherwise exercise any of its rights and remedies under this Interim DIP Order, the DIP Loan Documents, the Credit Agreement, the other Loan Documents or applicable law, as the case may be, shall not constitute a waiver of any rights hereunder, thereunder, or otherwise, by the Administrative Agent or the DIP Agent, as applicable.

27. <u>Section 507(b) Reservation</u>. Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Administrative Agent, hereunder is insufficient to compensate for any Diminution in Value during the Case. Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by the Administrative Agent that the adequate protection granted herein does in fact adequately protect the Administrative Agent against any Diminution in Value of its interests in the Prepetition Collateral (including the Cash Collateral).

**<u>Miscellaneous</u>**

28. <u>Limits on Lender Liability</u>. Subject to entry of the Final Order, nothing in this Interim DIP Order, the DIP Loan Documents, the Loan Documents, or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the Administrative Agent, the Lenders (as defined in the Second Cash Collateral Order), the DIP Agent, or the DIP Lenders, as applicable, of any liability for any claims arising from any activities by the Debtor in the operation of its businesses or in connection with the administration of this Case.

29. <u>Expenses and Indemnification</u>.

(a) The Debtor shall pay (i) all out-of-pocket expenses of the DIP Agent associated with the arrangement of the DIP Loan and the preparation, execution, delivery and

28

administration of the DIP Loan Documents and any amendment or waiver with respect thereto (including the fees, disbursements and other charges of counsels and financial advisors), (b) all out-of-pocket expenses of the DIP Agent and the DIP Lenders (including the reasonable fees, disbursements and other charges of counsels and financial advisors) in connection with the enforcement of the DIP Loan Documents and (c) all other out-of-pocket expenses of the DIP Agent (including, without limitation, the ongoing monitoring of the Case, including attendance at hearings or other proceedings and the on-going review of documents filed with the Court and the preparation of any and all pleadings).

(b)     The Administrative Agent, the Lenders, the DIP Agent, and the DIP Lenders (and their affiliates and their respective officers, directors, employees, partners, members, counsel, professionals, advisors, lenders, financing sources, and agents) will have no liability for, and will be indemnified and held harmless against, any losses, claims, damages, liabilities or expenses incurred in respect of the financing contemplated by the DIP Loan Documents or this Interim DIP Order or the use or the proposed use of proceeds thereof, except to the extent they are found by a final, non-appealable judgment of a court to arise from the gross negligence or willful misconduct of the indemnified party.

30.     _Insurance_. At all times the Debtor shall maintain casualty and loss property insurance coverage for the Collateral on substantially the same basis as maintained prior to the Petition Date. The Debtor shall provide the Administrative Agent and the DIP Agent with proof of the foregoing within five (5) days of written demand and give the Administrative Agent or the DIP Agent reasonable access to Debtor's records in this regard.

31.     _Marshalling_.  Upon entry of this Interim DIP Order, in no event shall the Administrative Agent, the DIP Agent, or the DIP Lenders be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the Collateral or the DIP Collateral.

32.     _552(b) "Equities of the Case" Waiver_.  Subject to entry of the Final Order granting such relief, the Administrative Agent shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code.

29

33.   506(c) Claims.  Subject to entry of the Final Order granting such relief, no costs or expenses of administration which have or may be incurred in the Case shall be charged against the Administrative Agent, the DIP Agent, or the DIP Lenders, their claims or the Collateral or DIP Collateral pursuant to section 506(c) of the Bankruptcy Code without the prior written consent of the Administrative Agent or the DIP Agent, as applicable, and no such consent shall be implied from any other action, inaction or acquiescence by the Administrative Agent or the DIP Agent, as applicable.

34.   Binding Effect.  This Interim DIP Order shall be binding upon and inure to the benefit of the Administrative Agent, the DIP Agent, and the DIP Lenders, and the Debtor and its respective successors and assigns, including, without any limitation, any trustee, responsible officer, examiner, estate administrator or representative, or similar person appointed in a case for the Debtor under any chapter of the Bankruptcy Code. No rights are entered under this Interim DIP Order for the benefit of any creditor of the Debtor, any other party in interest in the Case, or any other person or entities, or any direct, indirect or incidental beneficiaries thereof.

35.   Reporting. Debtor shall provide the Administrative Agent and the DIP Agent with all financial and other information required under the Loan Documents or the DIP Loan Documents, as applicable, and this Interim DIP Order, and such other information as the Administrative Agent or the DIP Agent may from time to time reasonably request.

36.   Inspection and Access to CRO.  The DIP Agent shall have the right, upon three (3) days written notice to the Debtor, at any time during the Debtor's normal business hours, to inspect, audit, examine, check, make copies of or extract from the non-privileged books, accounts, checks, orders, correspondence and other records of the Debtor, and to inspect, audit and monitor all or any part of the DIP Collateral, and the Debtor shall make all of same reasonably available to the Administrative Agent and its representatives, for such purposes. Notwithstanding anything to the contrary herein, (a) the Debtor's CRO is authorized to provide confidential information to the DIP Agent and its advisors subject to all of the rights

30

and privileges that apply to such information including that provided by Federal Rule of Evidence 408 and California Evidence Code 1152, (b) the Debtor authorizes the CRO to communicate directly with the DIP Agent regarding the matters described herein and to participate in discussions and update calls with the DIP Agent, and authorizes the CRO to provide to the DIP Agent copies of reports and other information or materials prepared or reviewed by the CRO as the DIP Agent may reasonably request from time to time subject to all of the rights and privileges that apply to such information and documents including that provided by Federal Rule of Evidence 408 and California Evidence Code 1152, and (c) the DIP Agent is the intended third-party beneficiary of the provisions in this paragraph and the other provisions of this Interim DIP Order that reference a consent, agreement or approval of the DIP Agent, and no such provisions shall be amended or otherwise modified or waived without the written consent of the DIP Agent. Notwithstanding anything to the contrary herein, neither the Debtor nor the CRO shall be required to provide the DIP Agent any communications or materials subject to attorney-client privilege.

37. <u>Limitation of Liability</u>. In extending credit as provided herein and in the DIP Loan Documents, or in exercising any rights or remedies as and when permitted pursuant to this Interim DIP Order the DIP Agent shall not be deemed to be in control of the operations of the Debtor. Furthermore, nothing in this Interim DIP Order shall in any way be construed or interpreted to impose or allow the imposition upon the Administrative Agent or the DIP Agent of any liability for any claims arising from the prepetition or post-petition activities of the Debtor and its affiliates (as defined in section 101(2) of the Bankruptcy Code).

38. <u>Effectiveness</u>. The terms and conditions of this Interim DIP Order shall be (i) effective and immediately enforceable upon its entry by the Clerk of the Court notwithstanding any potential application of Bankruptcy Rule 6004(h), 7062, 9014 or otherwise; and (ii) not be stayed absent (a) an application by a party in interest for such stay in conformance with such Bankruptcy Rule 8007, and (b) a hearing upon notice to all parties

31

that have filed a notice of appearance pursuant to Bankruptcy Rule 2002 (the "Notice Parties").

39.     Survival.  The provisions of this Interim DIP Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (a) converting the Case to a case under chapter 7 of the Bankruptcy Code, (b) dismissing the Case or Successor Case, or (c) pursuant to which this Court abstains from hearing the Case or Successor Case; provided, that in the event there is later entered any order providing for either the conversion or dismissal of the Case, such order(s) shall make express provision, among other things, for the survival and continuing force and effect of the terms and provisions of this Interim DIP Order notwithstanding such conversion or dismissal. The terms and provisions of this Interim DIP Order, as well as the Adequate Protection Superpriority Claim, the Adequate Protection Liens, and all other claims and liens granted by this Interim DIP Order, and the rights provided to the Debtor and its professionals, shall (a) continue in this or any other superseding case under the Bankruptcy Code, (b) be valid and binding on all parties in interest, including, without limitation, any Committee, chapter 11 trustee, examiner or chapter 7 trustee, and (c) continue, notwithstanding any dismissal of any Case or Successor Case (and any such order of dismissal shall so provide), and such claims and liens shall maintain their priority as provided by this Interim DIP Order.

40.     Rights Preserved.  Notwithstanding anything herein to the contrary, the entry of this Interim DIP Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the Administrative Agent to seek any other relief in respect of the Debtor (including the right to seek additional adequate protection); (b) the Administrative Agent's right to seek the payment by the Debtor of post-petition interest pursuant to section 506(b) of the Bankruptcy Code; or (c) any rights of the Administrative Agent under the Bankruptcy Code or under non-bankruptcy law, including the right to (i) request modification of the automatic stay pursuant to section 362 of the Bankruptcy Code, (ii) request dismissal of the Case or Successor Case, conversion of the Case to a case under chapter 7 of the

32

Bankruptcy Code, or appointment of a chapter 11 trustee or an examiner (with or without expanded powers), (iii) propose a chapter 11 plan or plans of reorganization, subject to section 1121 of the Bankruptcy Code, or (iv) other than as expressly set forth in this Interim DIP Order, any other rights claims or privileges (whether legal, equitable or otherwise) of the Administrative Agent are preserved. Except as expressly provided in this Interim DIP Order, all rights of the Debtor under the Bankruptcy Code, Bankruptcy Rules, and Local Rules governing practice and procedure in the United States Bankruptcy Court for the Northern District of California are preserved.

41. <u>United States Trustee Objections.</u> The Objections filed by the United States Trustee to the DIP Financing Motion and this Order (Docket No. 197) are preserved and may constitute continuing United States Trustee objections at the Final Hearing on this DIP Financing Motion set for January 25, 2023 at 11:00 a.m.

42. <u>Retention of Jurisdiction</u>. The Court has and will retain jurisdiction to enforce this Interim DIP Order in accordance with its terms and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Interim DIP Order.

43. <u>Controlling Effect of this Interim DIP Order</u>. To the extent any provision of this Interim DIP Order conflicts or is inconsistent with any provision of the Motion, the DIP Loan Documents, or the Cash Collateral Orders, the provisions of this Interim DIP Order shall control to the extent of such conflict.

**\* END OF ORDER \***

33

APPROVED AS TO FORM AND CONTENT:


By: _____
       Jeff J. Marwil
       Peter J. Young
       Steve Ma
       Attorneys for MGG California, LLC
       As Administrative Agent and DIP Agent

34

**Exhibit A**

**DIP Note**

## DEBTOR IN POSSESSION
## SECURED MULTI-DRAW TERM PROMISSORY NOTE

$4,000,000

New York, New York
January [__], 2023

On September 29, 2022 (the "Petition Date"), SPRING MOUNTAIN VINEYARD, INC., a Delaware corporation (the "Borrower" or the "Debtor") commenced a chapter 11 case, Case No. 22-10381 (the "Chapter 11 Case") by filing a voluntary petition for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), with the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Court"). The Debtor continues to operate its business and manage its property as debtor and debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Borrower has requested that MGG California, LLC, as agent (in such capacity, the "DIP Agent") for the lenders (the "DIP Lenders") from time to time party to this Debtor in Possession Secured Multi-Draw Term Promissory Note (as amended, restated, amended and restated, supplemented, waived, extended, or otherwise modified from time to time, this "Note"), make term loans (the "DIP Loans") from time to time evidenced by this Note. The Borrower intends to utilize the DIP Loans to (i) fund general corporate needs, including without limitation working capital and other needs, and (ii) pay costs, premiums, fees, and expenses incurred to administer or related to of the Chapter 11 Case, including fees and expenses of professionals, in each case in accordance with the Approved Budget, subject to any Permitted Variance. Capitalized terms used herein and not otherwise defined herein shall have the meanings provided in Section 18 of this Note.

1.      DIP Loans.

(a)      Subject to the terms and conditions hereof including the DIP Agent's receipt of a Borrowing Request (as defined below) and the entry of the Interim DIP Order, the DIP Lenders agree to provide the Borrower with a term loan on the Closing Date in the principal amount of $1,000,000 (the "Initial Loan"). Subject to the terms and conditions hereof, after the date of entry of the Interim DIP Order and upon the DIP Agent's receipt of a Borrowing Request, the DIP Lenders agree to provide the Borrower with one or more additional term loans not more frequently than once every two weeks pursuant to the Approved Budget in an aggregate principal amount not to exceed the amount specified in the line item "MGG DIP Advances" in the Approved Budget for the applicable two week period (the "Additional Loans"). The Borrower may request the Initial Loan and the Additional Loans pursuant to written notice (which may be by email) delivered to the DIP Agent (x) one (1) Business Day prior to the proposed borrowing day of the Initial Loan and (y) twelve (12) days prior to the proposed borrowing date of the Additional Loan (or, in each case, such shorter period as the DIP Agent may agree) (a "Borrowing Request"). The Borrowing Request shall be in a form reasonably satisfactory to the DIP Agent. Each DIP Lender shall provide each DIP Loan in an aggregate amount not to exceed its Commitment with respect to such DIP Loan and the obligation of each DIP Lender to make the DIP Loans under this Note shall be several and not joint and several. Upon receipt of a Borrowing Request with respect to any DIP Loan, subject to the satisfaction of the conditions set forth in this Note, each DIP Lender shall simultaneously and proportionately to its Pro Rata Share of its Commitment with respect to such DIP Loan, make the proceeds of such DIP Loan available to the Borrower or the DIP Agent on the

applicable date of funding of such DIP Loan by transferring immediately available funds equal to such proceeds to an account designated in writing by the Borrower consistent with its existing cash management system (or to the DIP Agent, which will then transfer such funds to the Borrower). The relevant Commitment of each DIP Lender shall be permanently reduced upon the making of the relevant DIP Loan in an amount equal to such DIP Loan advanced by such DIP Lender. Any principal amount of the DIP Loan which is repaid or prepaid may not be reborrowed.

(b)     The aggregate principal amount of DIP Loans outstanding shall not exceed $4,000,000, subject to any limitation of credit extensions under this Note and the DIP Orders (the "Maximum Amount").

(c)     The DIP Agent shall be entitled to rely upon, and shall be fully protected in relying upon, the Borrowing Request or similar notice believed by the DIP Agent to be genuine. The DIP Agent may assume that each Person executing and delivering any such notice was duly authorized, unless the responsible individual acting thereon for the DIP Agent has actual knowledge to the contrary.

(d)     The Borrower shall utilize the proceeds of DIP Loans to (i) fund general corporate needs, including without limitation working capital and other needs, and (ii) pay costs, premiums, fees, and expenses incurred to administer or related to the Chapter 11 Case, including fees and expenses of professionals, in each case in accordance with the Approved Budget, subject to any Permitted Variance, this Note, the Bankruptcy Code, and the DIP Orders; provided, that, unless otherwise provided in the Approved Budget, subject to any Permitted Variance, or approved by the DIP Agent, no portion of any DIP Loan shall be used, directly or indirectly: (a) except as permitted by Section 15(d), to finance or make any Restricted Payment, (b) to pay any fees or similar amounts payable to any Person who has proposed or may propose to purchase interests in the Borrower or who otherwise has proposed or may propose to invest in the Borrower (including so-called "topping fees," "exit fees," and similar amounts), or (c) to make any distribution under a plan of reorganization in the Chapter 11 Case or any similar proceeding of the Borrower.

2.     Certain Conditions to the DIP Loan. No DIP Lender shall be obligated to fund the DIP Loan, if, as of the date thereof:

(a)     the Borrower shall not have paid any Obligations then payable hereunder (including the fees and expenses of counsel to the DIP Agent) or under any other DIP Document;

(b)     the Borrower shall not have delivered corporate resolutions, incumbency certificates and similar documents, in form and substance reasonably satisfactory to the DIP Agent with respect to this Note and the other DIP Documents and the transactions contemplated hereby and thereby;

(c)     any representation or warranty by the Borrower contained herein or in any other DIP Document shall be untrue or incorrect in any material respect (except that such materiality qualifier shall not be applicable to any representations and warranties that already are qualified or modified by materiality in the text thereof) as of such date, except to the extent that such representation or warranty expressly relates to an earlier date;

2

036

(d)      with respect to the Initial Loan (i) the Bankruptcy Court shall not have entered the Interim DIP Order; or (ii) the Interim DIP Order shall have been stayed, vacated, reversed, modified or amended without the DIP Agent's consent;

(e)      with respect to the Additional Loans, the Interim DIP Order or the Final Order, as applicable, shall have been stayed, vacated, reversed, modified or amended without the DIP Agent's consent;

(f)      any Default or Event of Default shall have occurred and be continuing or would result after giving effect to any DIP Loan;

(g)      after giving effect to any DIP Loan, the outstanding principal amount of all DIP Loans would exceed the lesser of (i) the Maximum Amount, or (ii) the amount permitted to be borrowed on a cumulative basis from the date hereof through the date of such requested DIP Loan as set forth in the Approved Budget and the DIP Orders;

(h)      the DIP Agent shall not have received and approved updated  budgets in accordance with this Note and the DIP Orders;

(i)      the Borrower shall not have provided reasonable access for, and reasonable cooperation with, the DIP Agent's advisors;

(j)      the Borrower shall have filed pleadings with the Bankruptcy Court, which pleadings could adversely affect the rights or remedies of the DIP Agent and the DIP Lenders under this Note and the DIP Orders, and such pleadings shall not be in form and substance reasonably acceptable to the DIP Agent; or

(k)      the Bankruptcy Court shall have entered orders, which orders could materially and adversely affect the rights or remedies of the DIP and the DIP Lenders under this Note and the DIP Orders, and such orders shall not be in form and substance reasonably acceptable to the DIP Agent.

The request and acceptance by the Borrower of the proceeds of the DIP Loan shall be deemed to constitute, as of the date of such request, acceptance or incurrence, (i) a representation and warranty by the Borrower that the conditions in this Section 2 have been satisfied and (ii) an affirmation by the Borrower of the granting and continuance of the DIP Liens granted in favor of the DIP Agent on behalf of the DIP Lenders, pursuant to the DIP Orders.

3.      <u>Payment of Principal</u>.  FOR VALUE RECEIVED, the Borrower promises to pay to the DIP Agent, the lesser of (x) $4,000,000 and (y) the unpaid principal amount of all DIP Loans made by the DIP Agent on behalf of the DIP Lenders to the Borrower, on the Maturity Date, together with all accrued and unpaid interest, fees and expenses to the extent provided in this Note.

4.      <u>Payment of Interest</u>.

(a)      Subject to the terms of this Note, the DIP Loan or any portion thereof shall be a LIBOR Loan and shall bear interest on the principal amount thereof from time

3

037

to time outstanding, from the date of the DIP Loan until repaid, at a rate per annum equal to the LIBOR plus 8.00%.

(b)     [Interest on the DIP Loan shall be payable monthly, in arrears, on the last Business Day of each month, commencing on the last Business Day of the month in which the applicable DIP Loan is made. / Interest on the DIP Loan shall be payable on the Maturity Date, in arrears. Accrued, unpaid interest on the DIP Loans shall be compounded on the last day of each calendar month.] If any payment of any of the Obligations becomes due and payable on a day other than a Business Day, the maturity thereof will be extended to the next succeeding Business Day and, with respect to payments of principal, interest thereon shall be payable at the then applicable rate during such extension.

(c)     All computations of fees and interest shall be made by the DIP Agent on the basis of a 360-day year, in each case for the actual number of days occurring in the period for which such fees or interest are payable. Each determination by the DIP Agent of an interest rate hereunder shall be final, binding and conclusive on the Borrower (absent manifest error).

(d)     So long as an Event of Default shall have occurred and be continuing, and at the election of the DIP Agent, the interest rate applicable to the Obligations shall be increased by two percentage points (2.00%) per annum above the rate of interest otherwise applicable hereunder (the "Default Rate"), and all outstanding Obligations shall bear interest at the Default Rate applicable to such Obligations. Interest at the Default Rate shall accrue from the date of such Event of Default until such Event of Default is cured or waived and shall be payable upon demand.

(e)     It is the intention of the parties hereto that the DIP Agent and each DIP Lender shall conform strictly to usury laws applicable to it. Accordingly, if the transactions contemplated hereby or by any other DIP Document would be usurious as to the DIP Agent or any DIP Lender under laws applicable to it (including the laws of the United States of America, the State of California, and the State of New York or any other jurisdiction whose laws may be mandatorily applicable to the DIP Agent or such DIP Lender notwithstanding the other provisions of this Note), then, in that event, notwithstanding anything to the contrary in this Note or any other DIP Document or any agreement entered into in connection with or as security for the Obligations, it is agreed as follows: (i) the aggregate of all consideration which constitutes interest under law applicable to the DIP Agent or any DIP Lender that is contracted for, taken, reserved, charged or received by the DIP Agent or such DIP Lender under this Note or any other DIP Document or agreements or otherwise in connection with the Obligations shall under no circumstances exceed the maximum amount allowed by such applicable law, any excess shall be canceled automatically and if theretofore paid shall be credited by the DIP Agent or such DIP Lender on the principal amount of the Obligations (or, to the extent that the principal amount of the Obligations shall have been or would thereby be paid in full, refunded by the DIP Agent or such DIP Lender, as applicable, to the Borrower). If at any time and from time to time (x) the amount of interest payable to the DIP Agent or any DIP Lender on any date shall be computed at the highest lawful rate applicable to the DIP Agent or such DIP Lender pursuant to this Section 4(e) and (y) in respect of any subsequent interest computation period the amount of interest otherwise payable to the DIP Agent or such DIP Lender would be less than the amount of interest payable to the DIP Agent or

Case: 22-10381     Doc# 209     Filed: 01/18/23     Entered: 01/18/23 13:09:19     Page 39 of 70

such DIP Lender computed at the highest lawful rate applicable to the DIP Agent or such DIP Lender, then the amount of interest payable to the DIP Agent or such DIP Lender in respect of such subsequent interest computation period shall continue to be computed at the highest lawful rate applicable to the DIP Agent or such DIP Lender until the total amount of interest payable to the DIP Agent or such DIP Lender shall equal the total amount of interest which would have been payable to the DIP Agent or such DIP Lender if the total amount of interest had been computed without giving effect to this Section 4(e).

(f)     If, after the date hereof, the DIP Lenders determine that (1) the adoption of or change in any law, rule, regulation or guideline regarding capital requirements for banks or bank holding companies, or any change in the interpretation or application thereof by any governmental authority charged with the administration thereof, or (2) compliance by the DIP Lenders or its parent bank holding company with any guideline, request, or directive of any such entity regarding capital adequacy (whether or not having the force of law), has the effect of reducing the return on the DIP Lender's or such holding company's capital as a consequence of the DIP Lender's DIP Loan hereunder to a level below that which the DIP Lender or such holding company could have achieved but for such adoption, change, or compliance (taking into consideration the DIP Lender's or such holding company's then existing policies with respect to capital adequacy and assuming the full utilization of such entity's capital) by any amount reasonably deemed by the DIP Lender to be material, then the DIP Lender may notify the Borrower thereof.  Following receipt of such notice, the Borrower agrees to pay the DIP Lender on demand the amount of such reduction of return of capital as and when such reduction is determined, payable promptly after presentation by the DIP Lender to the Borrower of a statement in the amount and setting forth in reasonable detail the DIP Lender's calculation thereof and the assumptions upon which such calculation was based (which statement shall be deemed true and correct absent manifest error).  In determining such amount, the DIP Lender may use any reasonable averaging and attribution methods.

5.     <u>Payments</u>.  All payments of principal and interest in respect of this Note shall be made in lawful money of the United States of America in same day funds to the DIP Agent at the account as shall be designated in a written notice delivered by the DIP Agent to the Borrower. Each payment made hereunder shall be credited first to interest then due and payable and the remainder of such payment shall be credited to principal, and interest shall thereupon cease to accrue upon the principal so repaid.  The Borrower shall make each payment required under this Note prior to 12:00 noon New York City time on the date when due, in immediately available funds.  Any amounts received after such time on any date may, in the sole discretion of the DIP Agent, be deemed to have been received on the next succeeding Business Day for purposes of calculating interest thereon.

6.     <u>Optional Prepayments</u>.  Subject to the terms and conditions of the DIP Orders, the Borrower shall have the right at any time and from time to time to prepay the DIP Loan under this Note in whole or in part (without premium or penalty) upon two (2) Business Days' written notice to the DIP Agent; <u>provided</u> that each such prepayment shall be in a minimum amount of $100,000.  Notice of prepayment having been given as aforesaid, the principal amount specified in such notice shall become due and payable on the prepayment date specified therein in the aggregate principal amount specified therein unless such repayment is conditioned on the receipt of any third party funds which are not received.  Any prepayment or repayment hereunder shall be

Case: 22-10381    Doc# 209    Filed: 01/18/23    Entered: 01/18/23 13:09:19    Page 40 of 70

accompanied by interest on the principal amount of the Note being prepaid or repaid to the date of prepayment or repayment.

7.     Mandatory Prepayments.  In each case, subject to the terms and conditions of the DIP Orders and the Approved Budget, upon not less than one (1) Business Day prior written notice by the Borrower to the DIP Agent by 1:00 p.m. New York City time:

(a)     Immediately upon receipt by the Borrower of cash proceeds of any sale or other disposition of any collateral or other assets of the Borrower, unless (i) the DIP Agent agrees otherwise in writing or (ii) such sale is in the ordinary course as reflected in an Approved Budget, the Borrower shall prepay the DIP Loans in an amount equal to all such proceeds, net of (1) commissions and other reasonable and customary transaction costs, fees and expenses properly attributable to such transaction and payable by the Borrower in connection therewith (in each case, paid to non-affiliates), and (2) transfer, sales, or similar taxes (such net proceeds, the "Net Cash Proceeds").

(b)     If any Loan Party issues any debt securities (other than all Permitted Indebtedness approved by the DIP Agent in its sole discretion), no later than the Business Day following the date of receipt of the cash proceeds thereof, the Borrower shall prepay the DIP Loan in an amount equal to all such proceeds, net of underwriting discounts and commissions and other reasonable costs or fees paid to non-affiliates in connection therewith.

(c)     Nothing in this Section 7 shall be construed to constitute the DIP Agent's or any DIP Lender's consent to any transaction that is not permitted by other provisions of this Note or the other DIP Documents.

8.     Fees.  Borrower shall pay to the DIP Agent for the account of the DIP Lenders the following fees:

(a)     Agency Fee.  On the date of funding of the Initial Loan, the Borrower agrees and shall be obligated to pay to the DIP Agent an agency fee (the "Agency Fee") equal to $80,000, which shall be fully earned upon the entry of the Interim DIP Order, payable on the Maturity Date and non-refundable when paid.

(b)     Closing Fee.  On the date of funding of the Initial Loan, the Borrower agrees and shall be obligated to pay to the DIP Agent a closing fee (the "Closing Fee") equal to $80,000, which shall be fully earned upon the entry of the Interim DIP Order, payable on the Maturity Date and non-refundable when paid.

9.     Indemnity.

(a)     The Borrower shall indemnify and hold harmless the DIP Agent and each DIP Lender and each of their respective affiliates, and each such Person's respective officers, directors, employees, attorneys, agents, lenders, financing sources, and representatives (each, an "Indemnified Person"), from and against any and all suits, actions, proceedings, claims, damages, losses, liabilities and expenses (including reasonable attorneys' fees and disbursements and other costs of investigation or defense, including those incurred upon any appeal but limited in each case to one firm of outside counsel for all similarly situated Indemnified Parties) that may be instituted

6

040

or asserted against or incurred by any such Indemnified Person as the result of credit having been extended, suspended or terminated under this Note and the other DIP Documents and the administration of such credit, and in connection with or arising out of the transactions contemplated hereunder and thereunder and any actions or failures to act in connection therewith, and legal costs and expenses arising out of or incurred in connection with disputes between the DIP Agent and the DIP Lenders on the one hand and the Borrower on the other hand; provided, that (i) the Borrower shall not be liable for any indemnification to an Indemnified Person to the extent that any such suit, action, proceeding, claim, damage, loss, liability or expense results solely from that Indemnified Person's gross negligence or willful misconduct as determined by a final, non-appealable judgment of a court of competent jurisdiction and (ii) this Section 9 shall not apply with respect to taxes other than any taxes that represent losses, claims, damages, etc. arising from any non-tax claim. **NO INDEMNIFIED PERSON SHALL BE RESPONSIBLE OR LIABLE TO ANY OTHER PARTY TO ANY DIP DOCUMENT, ANY SUCCESSOR, ASSIGNEE OR THIRD PARTY BENEFICIARY OF SUCH PERSON OR ANY OTHER PERSON ASSERTING CLAIMS DERIVATIVELY THROUGH SUCH PARTY, FOR INDIRECT, PUNITIVE, EXEMPLARY OR CONSEQUENTIAL DAMAGES THAT MAY BE ALLEGED AS A RESULT OF CREDIT HAVING BEEN EXTENDED, SUSPENDED OR TERMINATED UNDER ANY DIP DOCUMENT OR AS A RESULT OF ANY OTHER TRANSACTION CONTEMPLATED HEREUNDER OR THEREUNDER.**

10.    _Adjustments for Withholding, Capital Adequacy Etc._ All payments to the DIP Agent by the Borrower under this Note shall be made free and clear of and without deduction or withholding for any and all taxes, duties, levies, imposts, deductions, charges or withholdings and all related liabilities (all such taxes, duties, levies, imposts, deductions, charges, withholdings and liabilities being referred to as "Taxes") imposed by the United States of America or any other nation or jurisdiction (or any political subdivision or taxing authority of either thereof), unless such Taxes are required by applicable law to be deducted or withheld. If the Borrower shall be required by applicable law to deduct or withhold any such Taxes from or in respect of any amount payable under this Note other than taxes imposed on the DIP Agent or any DIP Lender's overall net income, then (A) if such Tax is an Indemnified Tax, the amount payable shall be increased as may be necessary so that after making all required deductions or withholdings, (including deductions or withholdings applicable to any additional amounts paid under this Note) the DIP Agent receives an amount equal to the amount it would have received if no such deduction or withholding had been made, (B) the Borrower shall make such deductions or withholdings, and (C) the Borrower shall timely pay the full amount deducted or withheld to the relevant governmental entity in accordance with applicable law.

If the effect of the adoption, effectiveness, phase-in or applicability after the date hereof of any law, rule or regulation (including without limitation any tax, duty, charge or withholding on or from payments due from the Borrower (but excluding Indemnified Taxes, Excluded Taxes, and taxation on the overall net income of the DIP Lenders)), or any change therein or in the interpretation or administration thereof by any governmental authority, central bank or comparable agency charged with the interpretation or administration thereof, is to reduce the rate of return on the capital of the DIP Agent with respect to this Note or to increase the cost to the DIP Agent of making or maintaining amounts available under this Note, the Borrower agrees to pay to the DIP Agent such additional amount or amounts as will compensate the DIP Agent on an after-tax basis for such reduction or increase.

7

The Borrower agrees to timely pay any present or future stamp or documentary taxes or any other excise or property taxes, charges, financial institutions duties, debits taxes or similar levies (all such taxes, charges, duties and levies being referred to as "Other Taxes") which arise from any payment made by the Borrower under this Note or from the execution, delivery or registration of, or otherwise with respect to, this Note.

The Borrower shall indemnify the DIP Agent and each of the DIP Lenders for the full amount of Indemnified Taxes (including, without limitation, any Indemnified Taxes imposed by any jurisdiction on amounts payable by the Borrower hereunder) paid by the DIP Agent or any DIP Lender or any liability (including penalties, interest and expenses) arising from or with respect to such Indemnified Taxes, whether or not they were correctly or legally asserted, excluding taxes imposed on the DIP Agent or any DIP Lender's overall net income. Payment under this indemnification shall be made upon demand. A certificate as to the amount of such Indemnified Taxes submitted to the Borrower by the DIP Agent shall be conclusive evidence, absent manifest error, of the amount due from the Borrower to the DIP Lenders.

The Borrower shall furnish to the DIP Lenders the original or a certified copy of a receipt evidencing any payment of Taxes made by the Borrower pursuant to this Section 10 within thirty (30) days after the date of any such payment. If any Recipient becomes aware that it has received a refund of any Taxes with respect to which the Borrower has paid any amount pursuant to this Section 10, such Recipient shall pay the amount of such refund (but only to the extent of indemnity payments made under this Section with respect to the Taxes giving rise to such refund), net of all out-of-pocket expenses (including Taxes) of such Recipient and without interest (other than any interest received from the relevant governmental authority with respect thereto), to the Borrower promptly after receipt thereof.

Any Recipient of a payment hereunder shall, to the extent it is legally entitled to do so, deliver to the Borrower on or prior to the date hereof (and from time to time thereafter upon the reasonable request of the Borrower), two properly completed and executed copies of IRS Forms W-8 or W-9 and properly completed and executed copies of any other form prescribed by applicable law as a basis for claiming exemption from or a reduction in U.S. federal withholding tax, together with such supplementary documentation as may be prescribed by applicable law to permit the Borrower to determine the withholding or deduction (if any) required to be made. In addition, any such Recipient, if reasonably requested by the Borrower, shall deliver such other documentation prescribed by applicable law or reasonably requested by the Borrower as will enable the Borrower to determine whether or not such Recipient is subject to backup withholding or information reporting requirements. Each Recipient agrees that if any form or certification it previously delivered expires or becomes obsolete or inaccurate in any respect, it shall timely update such form or certification or promptly notify the Borrower in writing of its legal inability to do so.

11.    Priority of Obligations and DIP Lenders' Liens.

(a)    To secure all of the Borrower's Obligations now existing or hereafter arising, the DIP Agent is granted for the benefit of itself and the DIP Lenders, (i) a super-priority administrative claim against the Borrower pursuant to section 364(c)(1) of the Bankruptcy Code, and except as set forth in the DIP Orders, having a priority over all other costs and expenses of

8

administration of any kind, including those specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 363, 364, 503, 506, 507, 546, 726, 1113 or 1114 or any other provision of the Bankruptcy Code or otherwise (whether incurred in the Chapter 11 Case and any Successor Case), and, except as set forth in the DIP Orders, shall at all times be senior to the rights of the Borrower, any successor trustee or estate representative, or any other creditor or party in interest in the Chapter 11 Case or any Successor Case, and (ii) pursuant to Sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code, Liens on, and security interests in, the Collateral, which Liens and security interest in the Collateral shall be senior to all Liens existing on the Collateral and for so long as any Obligations shall be outstanding pursuant to Section 364(d) of the Bankruptcy Code, subject only to the Carve Out, as set forth in the DIP Orders. The security interests and Liens granted to the DIP Agent hereunder pursuant to Sections 364(c)(2) shall not be (i) subject to any Lien or security interest which is avoided and preserved for the benefit of the Borrower's estate under Section 551 of the Bankruptcy Code, or (ii) except as set forth in the DIP Orders, subordinated to or made pari passu with any other Lien or security interest under Section 364(d) of the Bankruptcy Code or otherwise.

(b) The priority of the DIP Agent's Liens on the Collateral shall be as set forth in the DIP Orders.

(c) Notwithstanding anything herein to the contrary (i) all proceeds received by the DIP Agent and the DIP Lenders from the Collateral subject to the Liens granted in this Section 11 and in each other DIP Document and by the DIP Orders shall be subject to the Carve Out, and (ii) no Person entitled to the Carve Out shall be entitled to sell, or otherwise dispose, or seek or object to the sale or other disposition of, any Collateral.

(d) The Borrower agrees that the Obligations of such Person shall constitute allowed administrative expenses in the Chapter 11 Case, having priority over all administrative expenses of and unsecured claims against such Person now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, all administrative expenses of the kind specified in, or arising or ordered under, Sections 105, 326, 328, 503(b), 506(c), 507(a), 507(b), 546(c) and 1114 of the Bankruptcy Code, except as set forth in the DIP Orders.

(e) The DIP Agent's Liens on the Collateral and the super-priority administrative claim under Section 364(c) of the Bankruptcy Code afforded the Obligations shall be subject to the Carve Out, in accordance with the DIP Orders.

12. <u>Further Assurances</u>. The Borrower agrees that it shall, at the Borrower's expense and upon the reasonable request of the DIP Agent, duly execute and deliver or cause to be duty executed and delivered, to the DIP Agent or such DIP Lender, as the DIP Agent shall direct such Borrower such further instruments and do and cause to be done such further acts as may be necessary or proper in the reasonable opinion of the DIP Agent to carry out more effectively the provisions and purposes of this Note or any other DIP Document, including, upon the written request of the DIP Agent and in form and substance reasonably satisfactory to the DIP Agent, security agreements, UCC-l financing statements and other Collateral Documents confirming and perfecting the granting to the DIP Agent, on behalf of the DIP Lenders, of the Liens (subject to the Financing Orders) in the Collateral to secure the Obligations.

Case: 22-10381   Doc# 209   Filed: 01/18/23   Entered: 01/18/23 13:09:19   Page 44 of 70   043

13.    Compliance with Approved Budget.

(a)    The Borrower agrees that it shall deliver (which delivery may be made by electronic communication (including email)) to the DIP Agent, each of items set forth below at the following times in form satisfactory to the DIP Agent:

| At least once every four (4) weeks beginning on February 9, 2023. | An updated budget on a rolling 13-week basis, which updated budget shall be subject to the DIP Agent's approval in its sole discretion. Such updated budget approved by the DIP Agent shall be the Approved Budget.<br><br>Each budget delivered to the DIP Agent shall be accompanied by such customary supporting documentation as reasonably requested by the DIP Agent and shall be prepared in good faith based upon assumptions the Borrower believes to be reasonable at the time of delivery. |
| --- | --- |
| Not later than 8:00 p.m. (prevailing Eastern time) on the Thursday of each week commencing on January 19, 2023. | The Borrower shall furnish to the DIP Agent a weekly report (each, a "<u>Budget Compliance Report</u>") that sets forth, as of the preceding Friday , for the prior week and on a rolling four-week basis thereafter (each such reporting period, a "<u>Cash Flow Measurement Period</u>"), the actual results compared to each line item set forth in the Approved Budget. |

(b)    The Borrower shall comply with the Approved Budget and shall be deemed in compliance with the Approved Budget to the extent that (i) the actual amount of "Total Receipts" for any Cash Flow Measurement Period is not less than eighty-five percent (85%) of the amount set forth in the "Total Receipts" line item of the Approved Budget for such Cash Flow Measurement Period; and (ii) the actual amount of the "Operating Disbursements" for any Cash Flow Measurement Period does not exceed one hundred fifteen percent (115%) of the amount set forth in the "Operating Disbursement" line item of the Approved Budget for such Cash Flow Measurement Period (such variances, individually and collectively, the "<u>Permitted Variances</u>").

14.    Affirmative Covenants.

The Borrower agrees that:

(a)    Upon reasonable request of the DIP Agent, the Borrower will permit any officer, employee, attorney or accountant or agent of the DIP Agent to audit, review, make extracts from or copy, at the Borrower's expense, any and all corporate and financial and other books and records of the Borrower at all times during ordinary business hours and, in the absence of an Event of Default, upon reasonable advance notice and to discuss the Borrower's affairs with any of its directors, officers, employees, attorneys, or accountants. The Borrower will permit the DIP Agent, or any of its officers, employees, accountants, attorneys or agent, to examine and inspect any Collateral or any other property of the Borrower at any time during ordinary business hours and, in the absence of an Event of Default, upon reasonable prior notice. Notwithstanding the foregoing,

Case: 22-10381   Doc# 209   Filed: 01/18/23   Entered: 01/18/23 13:09:19   Page 45 of 70   044

the Borrower be required to disclose information to the DIP Agent (or any agent or representative thereof) that is prohibited by applicable law or is subject to attorney-client or similar privilege or constitutes attorney work product.

(b)　(A) The Borrower will comply in all material respects with all requirements of applicable material law and (B) the Borrower will obtain, maintain in effect and comply with all permits, licenses and similar approvals necessary for the operation of its business as now or hereafter conducted other than to the extent contemplated by the Approved Budget, the Bid Procedures Motion or the DIP Orders.

(c)　The Borrower will pay or discharge, when due, (i) all material taxes, assessments and governmental charges levied or imposed upon it or upon its income or profits, upon any property of the Borrower (including, without limitation, the Collateral) or upon or against the creation, perfection or continuance of the security interest, prior to the date on which penalties attach thereto, except in each case (1) where the same are being contested in good faith by appropriate proceedings diligently conducted and adequate reserves in accordance with GAAP are being maintained by the Borrower and (2) taxes the nonpayment of which is permitted or required by the Bankruptcy Code or this Note, (ii) all federal, state and local taxes required to be withheld by it, and (iii) all lawful claims for labor, materials and supplies which, if unpaid, might by law become a lien or charge upon any property of the Borrower.

(d)　(i) The Borrower will keep and maintain the Collateral and all of its other property necessary or useful in its business in good condition, repair and working order (normal wear and tear excepted) other than to the extent contemplated by the Approved Budget, the Bid Procedures Motion or the DIP Orders, (ii) the Borrower will defend the Collateral against all claims or demands of all Persons (other than Permitted Encumbrances) claiming the Collateral or any interest therein, and (iii) the Borrower will keep all Collateral free and clear of all security interests, liens and encumbrances, except Permitted Encumbrances.

(e)　At all times the Borrower shall maintain casualty and loss property insurance coverage for the Collateral as required by the Prepetition Credit Agreement. The Borrower shall provide the DIP Agent with proof of the foregoing within five (5) days of written demand and give the DIP Agent reasonable access to Borrower's records in this regard.

(f)　The Borrower will preserve and maintain its existence and all of its rights, privileges and franchises necessary or desirable in the normal conduct of its business, except to the extent contemplated by the Approved Budget, the Bid Procedures Motion or the DIP Orders.

(g)　The Borrower shall at all times operate its business in a manner consistent with the Approved Budget except to the extent of any Permitted Variance.

(h)　The Borrower agrees that it shall take all actions necessary to cause each of the following to occur (each a "<u>Milestone</u>" and collectively, the "<u>Milestones</u>"):

(1)　<u>Entry of Interim DIP Order</u>.  No later than January 16, 2023, 2023, the Interim DIP Order approving the Note shall be entered by the Bankruptcy Court.

(2)     Stalking Horse Bid.  The Borrower and its advisors shall use their reasonable best efforts to market the Borrower's assets and obtain a stalking horse bid on or before February 17, 2023; provided, however, the failure to obtain a stalking horse bid itself shall not be an Event of a Default; provided, further, that the Borrower's investment banker shall be allowed, in its sole discretion, to communicate with the DIP Agent and its advisors in connection with the marketing  and sale (the "Sale Process") of the Borrower's vineyard property located in St. Helena, CA (the "Vineyard") and wine inventory, and the Chapter 11 Case without the Borrower or its counsel present.

The Borrower shall not accept a stalking horse bid, if any, prior to  February 17, 2023, unless the DIP Agent otherwise consents in writing.  The Borrower shall, consistent with its fiduciary duties, consider all stalking horse bids received, including a stalking horse bid submitted by the DIP Agent, if any, which bid may be submitted on or after February 17, 2023.

(3)     Bid Procedures and Sale Motion:  On or before January 13, 2023, the Borrower shall file a motion (the "Bid Procedures Motion") seeking (a) entry into a stalking horse purchase agreement, if any, and providing that any stalking horse bid shall be acceptable to the DIP Agent in its sole discretion, (b) approval of bidding procedures for the sale of all or substantially all assets of the Borrower, (c) scheduling the auction, the hearing, and objection deadlines for such sale consistent with the deadlines herein, and (d) seeking related relief consistent with this Interim DIP Order, which Bid Procedures Motion and proposed order in connection therewith (the "Bid Procedures Order") shall each be subject to the DIP Agent's approval in its sole discretion.

(4)     Auction. The auction in connection with the sale of all or substantially all assets of the Borrower shall conclude no later than March 24, 2023 (*i.e.*, an auction scheduled to occur over multiple days shall conclude no later than March 24, 2023).

(5)     Sale Hearing.  The hearing to consider approval of the sale of all or substantially all assets of the Borrower shall occur no later than **March 31, 2023**.

(6)     Closing of Sale.  The closing of a sale of all or substantially all of the assets of the Borrower approved by the Bankruptcy Court shall occur no later than April 15, 2023.

15.     Negative Covenants.

The Borrower agrees that, without the prior written consent of the DIP Agent:

(a)     The Borrower shall not directly or indirectly, by operation of law or otherwise, (i) form or acquire any subsidiary, or (ii) merge with, consolidate with, acquire all or substantially all of the assets or equity interests of, or otherwise combine with or acquire, any Person.

12

(b)     The Borrower shall not create, incur, assume or permit to exist any Indebtedness, except (without duplication), to the extent not prohibited by the DIP Orders, Permitted Indebtedness.

(c)     The Borrower shall not create, incur, assume or permit to exist any Lien on or with respect to any of its properties or assets (whether now owned or hereafter acquired) except for Permitted Encumbrances.

(d)     The Borrower shall not (a) make any Restricted Payment and (b) make any payment in respect of, or repurchase, redeem, retire or defease any, prepetition Indebtedness, except pursuant to the terms of the DIP Orders.

(e)     The Borrower shall not assume, guarantee, endorse or otherwise become directly or contingently liable in connection with any obligations of any other Person.

(f)     The Borrower shall not convey, sell, lease, assign, transfer or otherwise dispose of any of its property, business or assets, whether now owned or hereinafter acquired other than (a) the sale of Inventory in the ordinary course of business, (b) the sale or disposition of obsolete equipment, and (c) the sale of other property or assets on terms acceptable to the DIP Agentand  approved by an order of the Bankruptcy Court.

(g)     The Borrower shall not consent to any amendment, supplement or other modification of any of the terms or provisions contained in, or applicable to, the DIP Orders. Except for (i) claims of employees for unpaid wages, bonuses, accrued vacation and sick leave time, business expenses and contributions to employee benefit plans for the period immediately preceding the Petition Date and prepetition severance obligations, in each case to the extent permitted to be paid by order of the Bankruptcy Court, and (ii) payments permitted by the DIP Orders and the Approved Budget, subject to Permitted Variance, the Borrower shall not make any payment in respect of, or repurchase, redeem, retire or defease any, prepetition Indebtedness, except for other payments consented to by the DIP Agent in writing.

(h)     The Borrower shall not make any investment in, or make loans or advances of money to, any Person, through the direct or indirect lending of money, holding of securities or otherwise.

16.     Events of Default; Rights and Remedies.  Notwithstanding the provisions of Section 362 of the Bankruptcy Code and without application or motion to the Bankruptcy Court, the occurrence of any one or more of the following events (regardless of the reason therefor) shall constitute an "Event of Default" hereunder:

A.     failure by the Borrower to make  any payment (whether principal, interest, or otherwise) when such amount becomes due and payable under the Note;

B.     any breach of, or failure to achieve or adhere to, any covenant, representation, warranty, or Milestone under the Note or the DIP Orders, including, without limitation, failure to obtain the DIP Agent's consent or approval as required pursuant to the Note or the DIP Order;

C.　　any misrepresentation or omission by the Borrower in or with respect to the DIP Loans in any respect;

D.　　the Borrower's failure to comply with any requirement of the DIP Orders or the Note;

E.　　failure by the Borrower to comply with the Approved Budget, subject to the Permitted Variances, without the prior written consent of the DIP Agent;

F.　　the Borrower's filing of a Chapter 11 plan that does not pay, upon consummation of the plan, in full, in cash the DIP Obligations and the Prepetition Obligations ;

G.　　the granting, creation, or approval of any Lien on Collateral *pari passu* or senior to the Liens granted to the DIP Agent and the DIP Lenders or the Lien granted in favor of the Prepetition Secured Parties to secure the Prepetition Obligations;

H.　　dismissal of the Chapter 11 Case or conversion of the Chapter 11 Case to a Chapter 7 case or the sale of substantially all of the assets of the Borrower without the advance written consent of the DIP Agent and the agent under the Prepetition Credit Agreement;

I.　　any change in the business of the Borrower that would have a Material Adverse Effect;

J.　　the appointment of a chapter 11 trustee or examiner with expanded powers or other person with expanded powers in the Chapter 11 Case;

K.　　the automatic stay shall be modified, reversed, revoked, or vacated in a manner that has a material adverse impact on the rights and interests of the DIP Agent or the Prepetition Secured Parties without the prior written consent of the DIP Agent and the agent under the Prepetition Credit Agreement;

L.　　reversal, vacation, or stay of the effectiveness of DIP Orders.

M.　　failure of any of the Liens granted to the DIP Agent or DIP Lenders, or DIP Superpriority Claims to be valid, perfected, and enforceable in all respects;

N.　　the failure of the Borrower to perform any of the terms, provisions, conditions, covenants, or obligations under the DIP Orders or the Note; or

O.　　the termination, or any change in the duties and responsibilities, of the Borrower's Chief Restructuring Officer, Jigsaw Advisors LLC, or BNP Paribas Securities Corp. without the prior written consent of the DIP Agent in its sole discretion.

Upon the occurrence of an Event of Default (or Maturity Date), (i) subject to extension of the date of such acceleration by the DIP Agent in its sole discretion, the Obligations shall accelerate and become immediately due and payable and enforceable by the DIP Agent, subject to the DIP Agent's filing a motion on two business days' notice seeking to lift the automatic stay pursuant to section 362 of the Bankruptcy Code, and if such Event of Default has not been

Case: 22-10381　Doc# 209　Filed: 01/18/23　Entered: 01/18/23 13:09:19　Page 49 of 70　048

cured by the time of the commencement of the hearing, at such hearing on the motion the Borrower shall be limited to argue only that no Event of Default has occurred and is continuing, and (ii) pursuant to section 1121(d) of the Bankruptcy Code, the period during which the Borrower has the exclusive right to file a chapter 11 plan pursuant to section 1121(b) and (c) of the Bankruptcy Code shall terminate solely as it applies to the DIP Agent's right to file a chapter 11 plan, and the DIP Agent shall be permitted to file a chapter 11 plan for the Borrower at that time.

Except as otherwise provided for in this Note or by applicable law, the Borrower waives: (a) presentment, demand and protest and notice of presentment, dishonor, notice of intent to accelerate, notice of acceleration, protest, default, nonpayment, maturity, release, compromise, settlement, extension or renewal of any or all commercial paper, accounts, contract rights, documents, instruments, chattel paper and guaranties at any time held by the DIP Agent on which the Borrower may in any way be liable, and hereby ratifies and confirms whatever the DIP Agent may do in this regard; (b) all rights to notice and a hearing prior to the DIP Agent taking possession or control of, or DIP Agent's replevy, attachment or levy upon, the Collateral or any bond or security that might be required by any court prior to allowing DIP Agent to exercise any of its remedies; and (c) the benefit of all valuation, appraisal, marshaling and exemption laws.

To the extent permitted by law and subject in all respects to the terms of the DIP Orders, the DIP Agent's sole duty with respect to the custody, safekeeping and physical preservation of the Collateral in its possession, under section 9-207 of the Uniform Commercial Code or otherwise, shall be to deal with it in the same manner as DIP Agent deals with similar securities and property for its own account, the DIP Agent's duty of care with respect to Collateral in the custody or possession of a bailee or other third person shall be deemed fulfilled if the DIP Agent exercises reasonable care in the selection of the bailee or other third person, and the DIP Agent need not otherwise preserve, protect, insure or care for any Collateral, and the DIP Agent shall not be obligated to preserve any rights the Borrower may have against prior parties.

Any amount or payment received by the DIP Agent or any DIP Lender from the Borrower or from the proceeds of Collateral (subject to the terms of the DIP Orders) (i) on or after the Maturity Date, (ii) following any acceleration of the Obligations under this Note or (iii) at the direction of the DIP Agent or the Required Lenders after any Event of Default, shall be applied to the DIP Lenders on account of the Obligations in proportion to each DIP Lender's Pro Rata Share.

17.    <u>Reference Agreements</u>.  This Note evidences the DIP Loans that may be made to Borrower from time to time in the aggregate principal amount outstanding of up to $4,000,000 and is issued pursuant to and entitled to the benefits of the DIP Orders, to which reference is hereby made for a more complete statement of the terms and conditions under which the DIP Loans evidenced by this Note are made and are to be repaid.

18.    <u>Definitions</u>.  The following terms used in this Note shall have the following meanings (and any of such terms may, unless the context otherwise requires, be used in the singular or the plural depending on the reference):

"<u>Agency Fee</u>" shall have the meaning given such term in Section 8 of this Note.

Case: 22-10381    Doc# 209    Filed: 01/18/23    Entered: 01/18/23 13:09:19    Page 50 of 70
049

"Approved Budget" means a budget depicting, on a weekly basis and line-item basis, (i) projected cash receipts, (ii) projected disbursements (including ordinary course operating expenses, non-operating expenses, bankruptcy-related expenses (including professional fees of the Borrower's professionals and advisors), asset sales and any other fees and expenses), and (iii) net cash flow, for each thirteen (13) week period commencing from the Petition Date, as such budget shall be updated from time to time pursuant to Section 13(a) of this Note, which budget, as updated from time to time, shall be approved by, and in form and substance satisfactory to the DIP Agent, in its sole discretion. The Approved Budget for the first thirteen (13) week period from the Petition Date (the "Initial Approved Budget") is attached hereto as Exhibit A.

"Bankruptcy Code" shall have the meaning given such term in the recital to this Note.

"Bankruptcy Court" shall have the meaning given such term in the recital to this Note.

"Bid Procedures Motion" shall have the meaning given such term in Section 14 of this Note.

"Borrower" shall have the meaning given such term in the recital to this Note.

"Business Day" means any day other than a Saturday, Sunday or legal holiday under the laws of the State of New York or any other day on which banking institutions located in the State of New York are authorized or required by law or other governmental action to close.

"Carve-Out" shall have the meaning given such term in the DIP Orders.

"Cash Collateral" shall mean "cash collateral" as that phrase is defined in Section 363(a) of the Bankruptcy Code.

"Chapter 11 Case" shall have the meaning given such term in the recital to this Note.

"Closing Date" means the Business Day when each of the conditions applicable to the Initial Funding and listed in Section 2 of this Note shall have been satisfied or waived in a manner satisfactory to the DIP Agent in its sole discretion.

"Closing Fee" shall have the meaning given such term in Section 8 of this Note.

"Collateral Documents" shall mean any agreement entered into pursuant to Section 12 hereof and all similar agreements entered into guaranteeing payment of, or granting a Lien upon property as security for payment of, the Obligations, including the DIP Orders.

"Collateral" shall mean the assets and property covered by the DIP Orders and the other Collateral Documents and any other assets and property, real or personal, tangible or intangible, now existing or hereafter acquired, that may at any time be or become subject to a security interest or Lien in favor of the DIP Agent on behalf of the DIP Lenders, to secure the Obligations. Without limiting the foregoing, the Collateral shall include all present and future

Case: 22-10381   Doc# 209   Filed: 01/18/23   Entered: 01/18/23 13:09:19   Page 51 of 70

050

property of the Borrower under Section 541(a) of the Bankruptcy Code (including, without limitation, the proceeds of avoidance actions upon entry of the Final DIP Order) and all proceeds thereof.

"Commitment" means, with respect to each DIP Lender, the commitment of such DIP Lender to make its portion of the DIP Loans to the Borrower in the principal amount set forth on the signature page to the Note for each DIP Lender, as the same may be terminated or reduced from time to time in accordance with the terms of this Note.

"Debtor"shall have the meaning given to such term in the recital to this Note.

"Default Rate" shall have the meaning given such term in Section 4(d) of this Note.

"Default" means an event which, with the giving of notice or the lapse of time or both, would constitute an Event of Default.

"DIP Documents" shall mean the Note, the Collateral Documents, and all other agreements, instruments, documents and certificates executed and delivered to, or in favor of the DIP Agent in connection with this Note and including all other pledges, powers of attorney, consents, assignments, contracts, notices, and all other written matter whether heretofore, now or hereafter executed by or on behalf of the Borrower, or any employee of the Borrower, and delivered to the DIP Agent in connection with this Note or the transactions contemplated thereby. Any reference in this Note or any other DIP Document to a DIP Document shall include all appendices, exhibits or schedules thereto, and all amendments, restatements, supplements or other modifications thereto, and shall refer to such DIP Document as the same may be in effect at any and all times such reference becomes operative.

"DIP Lenders" shall have the meaning given such term in the recital to this Note.

"DIP Loans" shall have the meaning given such term in Section 1 of this Note.

"DIP Orders" shall mean, collectively, the Interim DIP Order and the Final DIP Order.

"DIP Superpriority Claims" shall have the meaning given such term in the DIP Orders.

"Dollars" or "$" shall mean lawful currency of the United States of America.

"Event of Default" shall have the meaning given such term in Section 16 of this Note.

"Excluded Taxes" means any of the following Taxes imposed on or with respect to a Recipient or required to be withheld or deducted from a payment to a Recipient, (a) Taxes imposed on or measured by net income (however denominated), franchise Taxes, and branch profits Taxes, in each case, imposed as a result of such Recipient being organized under the laws of, or having its principal office or, in the case of any DIP Lender, its applicable lending office located in, the jurisdiction imposing such Tax (or any political subdivision thereof), (b) in the case of a DIP Lender, federal withholding Taxes imposed on amounts payable to or for the account of

17

such DIP Lender with respect to an applicable interest in a DIP Loan or Commitment pursuant to a law in effect on the date on which (i) such DIP Lender acquires such interest in the DIPLoan or Commitment or (ii) such DIP Lender changes its lending office, except in each case to the extent that, pursuant to Section 10, amounts with respect to such Taxes were payable either to such DIP Lender's assignor immediately before such DIP Lender became a party hereto or to such DIP Lender immediately before it changed its lending office, (c) Taxes attributable to such Recipient's failure to provide the Borrower with the tax documentation described in Section 10 hereof and (d) any withholding Taxes imposed under FATCA.

"FATCA" means Sections 1471 through 1474 of the Internal Revenue Code, as of the date of this Note (or any amended or successor version that is substantively comparable and not materially more onerous to comply with), any current or future regulations or official interpretations thereof, any agreements entered into pursuant to Section 1471(b)(1) of the Internal Revenue Code and any fiscal or regulatory legislation, rules or practices adopted pursuant to any intergovernmental agreement, treaty or convention among governmental authorities and implementing such Sections of the Internal Revenue Code.

"Final DIP Order" shall mean the order of the Bankruptcy Court entered in the Chapter 11 Case after a final hearing pursuant to Section 364 of the Bankruptcy Code and Bankruptcy Rule 4001, satisfactory in form and substance to the DIP Agent in its sole discretion, together with all extensions, modifications and amendments thereto, authorizing the Borrower to obtain credit, incur Indebtedness, and grant Liens under this Note and the other DIP Documents, all as set forth in such order.

"GAAP" shall mean generally accepted accounting principles in the United States of America.

"Indebtedness" shall have the meaning given such term in the Prepetition Credit Agreement whether or not such agreement remains in effect.

"Indemnified Person" shall have the meaning given such term in Section 9 of this Note.

"Indemnified Taxes" means (a) Taxes, other than Excluded Taxes, imposed on or with respect to any payment made by or on account of any obligation of the Borrower under any DIP Document and (b) to the extent not otherwise described in (a), Other Taxes.

"Interim DIP Order" shall mean the interim order of the Bankruptcy Court entered in the Chapter 11 Case after an interim hearing (assuming satisfaction of the standards prescribed in Section 364 of the Bankruptcy Code and Bankruptcy Rule 4001 and other applicable law), together with all extensions, modifications and amendments thereto, satisfactory in form and substance to the DIP Agent in its sole discretion, authorizing, on an interim basis, the Borrower to execute and perform under the terms of this Note and the other DIP Documents.

"Inventory" shall have the meaning given such term in the Prepetition Credit Agreement whether or not such agreement remains in effect.

Case: 22-10381   Doc# 209   Filed: 01/18/23   Entered: 01/18/23 13:09:19   Page 53 of 70
052

"LIBOR Loan" means the DIP Loan that bears interest at a rate determined by reference to LIBOR.

"Lien" shall mean any mortgage or deed of trust, pledge, hypothecation, assignment, deposit arrangement, lien, charge, claim, security interest, easement or encumbrance, or preference, priority or other security agreement or preferential arrangement of any kind or nature whatsoever (including any lease or any financing lease having substantially the same economic effect as any of the foregoing, and the filing of, or agreement to give, any financing statement perfecting a security interest under the Uniform Commercial Code or comparable law of any jurisdiction).

"Material Adverse Effect" means a material adverse effect on (i) the operations, business, assets, properties or condition (financial or otherwise) of the Borrower taken as a whole, (ii) the ability of the Borrower to perform payment or other material obligations under any DIP Document, (iii) the legality, validity or enforceability of this Note or any other DIP Document, (iv) the rights and remedies of the DIP Agent and the DIP Lenders under any DIP Document, or (v) the validity, perfection or priority of a Lien in favor of DIP Lenders on any of the Collateral.

"Maturity Date" means the earliest to occur of (i) the date of consummation of a sale of all or substantially all of the assets of the Borrower pursuant to section 363 of the Bankruptcy Code or a transaction that results in payment in full, in cash, of the Prepetition Obligations and the DIP Obligations, (ii) April 15, 2023, or (iii) termination by the DIP Agent (acting at the direction of the DIP Lenders) following the occurrence of an Event of Default pursuant to Section 16.

"Maximum Amount" shall have the meaning given such term in Section 1 of this Note.

"Milestones" shall have the meaning given such term in Section 14 of this Note.

"Note" shall have the meaning given such term in the recital to this Note.

"Obligations" shall mean all loans, advances, debts, liabilities and obligations for the performance of covenants, tasks or duties or for payment of monetary amounts (whether or not such performance is then required or contingent, or such amounts are liquidated or determinable) owing by the Borrower to the DIP Lenders arising under the Note or any of the other DIP Documents, and all covenants and duties regarding such amounts, of any kind or nature, present or future, arising under the Note or any of the other DIP Documents. This term includes all principal, interest, fees, charges, expenses, attorneys' fees and any other sum chargeable to Borrower under the Note or any of the other DIP Documents.

"Other Taxes" shall have the meaning given such term in Section 10 of this Note.

"Participant Register" shall have the meaning given such term in Section 21 of this Note.

"Payment Office" means such office or offices of the DIP Agent as may be designated in writing from time to time by the DIP Agent to Borrower.

Case: 22-10381    Doc# 209    Filed: 01/18/23    Entered: 01/18/23 13:09:19    Page 54 of 70

053

"Permitted Encumbrances" shall mean the following encumbrances: (a) Liens for taxes or assessments or other governmental charges (i) not yet due and payable, (ii) that are being contested in good faith by appropriate proceedings diligently conducted and adequate reserves with respect thereto are maintained on the books of the applicable Person in accordance with GAAP, or (iii) the nonpayment of which is permitted or required by the Bankruptcy Code; (b) pledges or deposits of money securing statutory obligations under workmen's compensation, unemployment insurance, social security or public liability laws or similar legislation (excluding Liens under ERISA); (c) pledges or deposits of money securing bids, tenders, contracts (other than contracts for the payment of money) or leases to which the Borrower is a party as lessee made in the ordinary course of business; (d) carriers', warehousemen's, suppliers' or other similar possessory liens arising in the ordinary course of business; (e) deposits securing, or in lieu of, surety, appeal or customs bonds in proceedings to which the Borrower is a party; (f) zoning restrictions, easements, licenses, or other restrictions on the use of any real estate or other minor irregularities in title (including leasehold title) thereto so long as the same do not materially impair the use, value, or marketability of such real estate; (g) the DIP Agent's and DIP Lenders' Liens; (h) Liens existing on the Petition Date (to the extent valid, enforceable, perfected and not subject to avoidance as of the Petition Date or perfected after the Petition Date pursuant to section 546(b) of the Bankruptcy Code); (i) Liens in favor of the Prepetition Secured Parties and other Liens granted pursuant to the DIP Orders (including, to the extent constituting a Lien, the Carve-Out); and (j) to the extent constituting Liens, Liens on goods delivered to the Borrower after the Petition Date under any consignment or similar title retention agreements.

"Permitted Indebtedness" shall mean: (a) current Indebtedness incurred in the ordinary course of business for inventory, supplies, equipment, services, taxes or labor; (b) Indebtedness arising under this Note and the other DIP Documents; (c) Prepetition Obligations; (d) deferred taxes and other expenses incurred in the ordinary course of business; (e) any Indebtedness existing on the Petition Date; and (f) administrative expenses of Borrower for which the Bankruptcy Court has not directed payment.

"Permitted Variances" shall have the meaning given such term in Section 13.    of this Note.

"Person" shall mean any individual, sole proprietorship, partnership, joint venture, trust, unincorporated organization, association, corporation, limited liability company, institution, public benefit corporation, other entity or government (whether federal, state, county, city, municipal, local, foreign, or otherwise, including any instrumentality, division, agency, body or department thereof).

"Petition Date" shall have the meaning given such term in the recital to this Note.

"Prepetition Credit Agreement" means that certain Credit and Guaranty Agreement, dated as of October 11, 2018, as amended, restated, supplemented, or otherwise modified from time to time.

"Prepetition Obligations" shall have the meaning given such term in the DIP Orders.

"Prepetition Secured Parties" shall mean the lenders from time to time party to the Prepetition Credit Agreement and MGG California, LLC, as collateral agent for such lenders pursuant to the Prepetition Credit Agreement.

"Pro Rata Share" means (i) with respect to a DIP Lender's obligation to make DIP Loans and receive payments of fees with respect thereto, the percentage obtained by dividing (a) such DIP Lender's Commitment by (b) the DIP Commitments of all Lenders, (ii) with respect to a DIP Lender's right to receive payments of interest, fees and principal with respect to its DIP Loans, the percentage obtained by dividing (a) the principal amount of such DIP Lender's DIP Loans by (b) the principal amount of all DIP Loans, and (iii) with respect to all other matters, the percentage obtained by dividing (a) such DIP Lender's undrawn Commitment plus the principal amount of such DIP Lender's DIP Loans by (b) the undrawn DIP Commitments of all Lenders plus the principal amount of all DIP Loans.

"Recipient" means the DIP Agent or any DIP Lender, as applicable.

"Register" shall have the meaning given such term in Section 21 of this Note.

"Registered Loan" shall have the meaning given such term in Section 21 of this Note.

"Related Fund" shall mean, with respect to any Person, an affiliate of such Person, or a fund or account managed by such Person or an affiliate of such Person.

"Related Parties" shall mean, with respect to any specified Person, such Person's affiliates and the respective managers, administrators, trustees, partners, investors, directors, officers, employees, agents, advisors, sub-advisors or other representatives of such Person and such Person's affiliates.

"Required Lenders" shall mean, at any time, DIP Lenders whose aggregate Pro Rata Shares exceed 50%.

"Restricted Payment" shall have the meaning given such term in the Prepetition Credit Agreement whether or not such agreement remains in effect.

"Successor Case" shall have the meaning given such term in the DIP Orders.

"Taxes" shall have the meaning given such term in Section 10 of this Note.

19.     Representations and Warranties.  The Borrower represents as follows:

(a)     the Borrower is duly formed and/or organized and validly existing under the laws of its jurisdiction of incorporation or formation;

(b)     upon entry of the DIP Orders, the execution and delivery of this Note and the other DIP Documents and the performance by the Borrower of the Borrower's obligations hereunder and under the other DIP Documents are within its corporate powers, have been duly authorized by all necessary corporate action of the Borrower, have received all necessary

bankruptcy, insolvency or governmental approvals, and do not and will not contravene or conflict with any provisions of applicable law or of the Borrower's corporate charter or by-laws or of any agreements binding upon or applicable to the Borrower or any of its Subsidiaries or any of their properties;

(c)     upon entry of the DIP Orders, this Note and each other DIP Document is the legal, valid and binding obligation, enforceable against the Borrower in accordance with its terms except as limited by equitable principles relating to enforceability.

(d)     the Borrower has good and marketable title to, or valid leasehold interests in, all of its material property and assets; none of the properties and assets of the Borrower are subject to any Liens other than Permitted Encumbrances;

(e)     no information contained in this Note, any of the other DIP Document, any projections, financial statements or collateral reports or other reports from time to time delivered hereunder or any written statement furnished by or on behalf of the Borrower to the DIP Agent pursuant to the terms of this Note or otherwise, when taken as a whole, contains any untrue statement of a material fact or omits to state a material fact necessary to make the statements contained herein or therein not misleading in light of all of the circumstances under which they were made;

(f)     the Liens granted to the DIP Lenders pursuant to the Collateral Documents and the DIP Orders will at all times be fully perfected Liens in and to the Collateral described therein, subject, as to priority, only to Liens permitted to have such priority under the DIP Orders;

(g)     except for proceedings in the Chapter 11 Case, no action, claim, lawsuit, demand, investigation or proceeding is now pending or, to the knowledge of the Borrower, threatened against the Borrower before any governmental authority or before any arbitrator or panel of arbitrators that challenges the rights or powers of the Borrower to enter into or perform any of its obligations under the DIP Documents to which it is a party, or the validity or enforceability of any DIP Document or any action taken thereunder; and

(h)     except for the Chapter 11 Case, there is no order, notice, claim, litigation, proceeding or investigation pending or threatened against or in any way affecting the Borrower, whether or not covered by insurance, that would reasonably be expected to have a Material Adverse Effect.

(i)     the Borrower has filed all material federal, state and other tax returns and reports required to be filed, and have paid all material federal, state and other taxes, assessments, fees and other governmental charges levied or imposed upon them or their properties, income or assets otherwise due and payable.

20.     DIP Agent.

(a)     Appointment.  Each DIP Lender hereby irrevocably appoints and authorizes the DIP Agent to perform the duties of the DIP Agent as set forth in this Note including:  (i) to receive on behalf of each DIP Lender any payment of principal of or interest on the DIP Loans outstanding hereunder and all other amounts accrued hereunder for the account of the DIP Lenders

Case: 22-10381     Doc# 209     Filed: 01/18/23     Entered: 01/18/23 13:09:19     Page 57 of 70

056

and paid to the DIP Agent, and to distribute promptly to each DIP Lender its Pro Rata Share of all payments so received; (ii) to distribute to each DIP Lender copies of all material notices and agreements received by the DIP Agent; (iii) to maintain, in accordance with its customary business practices, ledgers and records reflecting the status of the Obligations, the DIP Loans, and related matters and to maintain, in accordance with its customary business practices, ledgers and records reflecting the status of the Collateral and related matters; (iv) to execute or file any and all notices, amendments, renewals, supplements, documents, instruments, proofs of claim, notices and other written agreements with respect to this Note or any other DIP Document; (v) to perform, exercise, and enforce any and all other rights and remedies of the DIP Lenders with respect to the Borrower, the Obligations, or otherwise related to any of same to the extent reasonably incidental to the exercise by the DIP Agent of the rights and remedies specifically authorized to be exercised by the DIP Agent by the terms of this Note or any other DIP Document; (vi) to incur and pay such fees necessary or appropriate for the performance and fulfillment of its functions and powers pursuant to this Note or any other DIP Document; and (vii) to take such action as the DIP Agent deems appropriate on its behalf to administer the DIP Loans and the DIP Documents and to exercise such other powers delegated to the DIP Agent by the terms hereof or the other DIP Documents together with such powers as are reasonably incidental thereto to carry out the purposes hereof and thereof. The DIP Agent may perform any of its duties hereunder or under the other DIP Documents by or through any one or more sub-agents or attorneys-in-fact appointed by the DIP Agent. The DIP Agent and any such sub-agent or attorney-in-fact may perform any and all of its duties and exercise its rights and powers through their respective Related Parties. The exculpatory provisions set forth in this Section 20 shall apply to any such sub-agent or attorney-in-fact and the Related Parties of the DIP Agent, any such sub-agent and any such attorney-in-fact and shall apply to their respective activities in connection with the syndication of the credit facilities provided for herein as well as activities as Agent.

(b)     <u>Nature of Duties</u>.  The DIP Agent shall have no duties or responsibilities except those expressly set forth in this Note or in the other DIP Documents.

(c)     <u>Rights, Exculpation, Etc</u>.  The DIP Agent and its directors, officers, agents or employees shall not be liable for any action taken or omitted to be taken by them under or in connection with this Note or the other DIP Documents, except for their own gross negligence or willful misconduct as determined by a final judgment of a court of competent jurisdiction.

(d)     <u>Reliance</u>.  The DIP Agent shall be entitled to rely upon any written notices, statements, certificates, orders or other documents or any telephone message believed by it in good faith to be genuine and correct and to have been signed, sent or made by the proper Person, and with respect to all matters pertaining to this Note or any of the other DIP Documents and its duties hereunder or thereunder, upon advice of counsel selected by it.

(e)     <u>Indemnification</u>.  To the extent that the DIP Agent is not reimbursed and indemnified by the Borrower, the DIP Lenders will reimburse and indemnify the DIP Agent from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses, advances or disbursements of any kind or nature whatsoever which may be imposed on, incurred by, or asserted against the DIP Agent in any way relating to or arising out of this Note or any of the other DIP Documents or any action taken or omitted by the DIP Agent

Case: 22-10381   Doc# 209   Filed: 01/18/23   Entered: 01/18/23 13:09:19   Page 58 of 70

057

under this Note or any of the other DIP Documents, in proportion to each DIP Lender's Pro Rata Share.

        (f)    <u>Collateral Matters</u>.

        (1)    The DIP Lenders hereby irrevocably authorize the DIP Agent, at its option and in its discretion, to release any Lien granted to or held by the DIP Agent upon any Collateral upon cancellation of the Note and payment and satisfaction of the DIP Loans and all other Obligations which have matured and which the DIP Agent has been notified in writing are then due and payable; or constituting property being sold or disposed of in the ordinary course of the Borrower's business or otherwise in compliance with the terms of this Note and the other DIP Documents; or if approved, authorized or ratified in writing by the DIP Lenders.

        (2)    Without in any manner limiting the DIP Agent's authority to act without any specific or further authorization or consent by the DIP Lenders, each DIP Lender agrees to confirm in writing, upon request by the DIP Agent, the authority to release Collateral conferred upon the DIP Agent under paragraph (f)(1) above.

        The DIP Agent shall have no obligation whatsoever to any DIP Lender to assure that the Collateral exists or is owned by the Borrower, or is cared for, protected or insured or has been encumbered or that the Lien granted to the DIP Agent pursuant to this Note or any other DIP Document has been properly or sufficiently or lawfully created, perfected, protected or enforced or is entitled to any particular priority, or to exercise at all or in any particular manner or under any duty of care, disclosure or fidelity, or to continue exercising, any of the rights, authorities and powers granted or available to the DIP Agent in this section or in any other DIP Document, it being understood and agreed that in respect of the Collateral, or any act, omission or event related thereto, the DIP Agent may act in any manner it may deem appropriate, in its sole discretion, given the DIP Agent's own interest in the Collateral  and that the DIP Agent shall have no duty or liability whatsoever to any other DIP Lender, except as otherwise provided herein.

        21.    <u>Miscellaneous</u>.

        (a)    All notices and other communications provided for hereunder shall be in writing (including facsimile communication) and mailed, emailed or delivered as follows:

        If to Borrower:        [____]

        with copies to:        [____]

        If to DIP Agent or        MGG California, LLC
        any DIP Lender:        One Penn Plaza, Suite 5320

New York, New York 10119
Email: creditagreementnotices@mgginv.com

with copies to:        Proskauer Rose LLP
11 Times Square
New York, New York 10036
Attn: Frederic L. Ragucci
Email: fragucci@proskauer.com

Proskauer Rose LLP
70 West Madison, Suite 3800
Chicago, Illinois 60602-4342
Attn: Jeff J. Marwil
Email: jmarwil@proskauer.com

All such notices and communications shall, when mailed or sent by overnight courier, be effective when deposited in the mails or delivered to the overnight courier, as the case may be, or when sent by email be effective when received.

(b)      The Borrower shall reimburse the DIP Agent for all reasonable out-of-pocket expenses incurred in connection with the negotiation and preparation of the DIP Documents and the obtaining of approval of the DIP Documents by the Bankruptcy Court (including the reasonable fees and expenses of outside counsel for DIP Agent, all of its special local counsel, fees for one financial advisor for the DIP Agent and the DIP Lenders, and auditors retained in connection with the DIP Documents and advice in connection therewith). Subject to the foregoing, the Borrower shall reimburse the DIP Agent for all reasonable fees, costs and expenses, including the reasonable fees, costs and expenses of counsel or other advisors for advice, assistance, or other representation in connection with:

(1)      any amendment, modification or waiver of, consent with respect to, or termination or enforcement of, any of the DIP Documents or advice in connection with the administration of the DIP Loans made pursuant hereto or its rights hereunder or thereunder;

(2)      the review of pleadings and documents related to the Chapter 11 Case and any subsequent Chapter 7 case, attendance at meetings related to the Chapter 11 Case and any subsequent Chapter 7 case, and general monitoring of the Chapter 11 Case and any subsequent Chapter 7 case;

(3)      any litigation, contest, dispute, suit, proceeding or action (whether instituted by the DIP Agent, the Borrower or any other Person, and whether as a party, witness or otherwise) in any way relating to the Collateral, any of the DIP Documents or any other agreement to be executed or delivered in connection herewith or therewith, including any litigation, contest, dispute, suit, case, proceeding or action, and any appeal or review thereof, in connection with a case commenced by or against Borrower or any other Person that may be obligated to the DIP Agent by virtue of the DIP Documents, including any such litigation, contest, dispute, suit, proceeding or action arising in

25

connection with any work-out or restructuring of the Term Loans during the pendency of one or more Events of Default;

(4)     any attempt to enforce any remedies of the DIP Agent against any or all of the Borrower or any other Person that may be obligated to the DIP Agent by virtue of any of the DIP Documents, including any such attempt to enforce any such remedies in the course of any work-out or restructuring of the DIP Loans during the pendency of one or more Events of Default;

(5)     any work-out or restructuring of the DIP Loans during the pendency of one or more Events of Default; and

(6)     any efforts to (A) monitor the DIP Loans or any of the other Obligations, (B) evaluate, observe or assess any of the Borrower or their respective affairs, (C) verify, protect, evaluate, assess, appraise, collect, sell, liquidate or otherwise dispose of any of the Collateral and (D) monitor any sales;

including, as to each of clauses (1) through (6) above, all attorneys' and other professional and service providers' fees arising from such services, including those in connection with any appellate proceedings, and all expenses, costs, charges and other fees incurred by such counsel and others in connection with or relating to any of the events or actions described in this Section 20(b), all of which shall be payable, on demand, by the Borrower to the DIP Agent on behalf of the DIP Lenders.  Without limiting the generality of the foregoing, such expenses, costs, charges and fees may include: fees, costs and expenses of accountants, appraisers, investment bankers, management and other consultants and paralegals; court costs and expenses; photocopying and duplication expenses; court reporter fees, costs and expenses; long distance telephone charges; air express charges;; and expenses for travel, lodging and food paid or incurred in connection with the performance of such legal or other advisory services.  All expenses incurred by the DIP Agent shall receive super-priority administrative expense status per Section 364 of the Bankruptcy Code (subject to the DIP Orders).

(c)     No failure or delay on the part of the DIP Agent or any other holder of this Note to exercise any right, power or privilege under this Note and no course of dealing between Borrower and the DIP Agent shall impair such right, power or privilege or operate as a waiver of any default or an acquiescence therein, nor shall any single or partial exercise of any such right, power or privilege preclude any other or further exercise thereof or the exercise of any other right, power or privilege.  The rights and remedies expressly provided in this Note are cumulative to, and not exclusive of, any rights or remedies that the DIP Agent would otherwise have. No notice to or demand on the Borrower in any case shall entitle the Borrower to any other or further notice or demand in similar or other circumstances or constitute a waiver of the right of the DIP Agent to any other or further action in any circumstances without notice or demand.

(d)     Borrower and any endorser of this Note hereby consent to renewals and extensions of time at or after the maturity hereof without notice, and hereby waive diligence, presentment, protest, demand and notice of every kind and, to the full extent permitted by law, the right to plead any statute of limitations as a defense to any demand hereunder.

(e)     If any provision in or obligation under this Note shall be invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions or obligations, or of such provision or obligation in any other jurisdiction, shall not in any way be affected or impaired thereby.

(f)     **THIS NOTE AND THE RIGHTS AND OBLIGATIONS OF THE BORROWER AND THE DIP AGENT HEREUNDER SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK INCLUDING WITHOUT LIMITATION SECTION 5-1401 OF TUE GENERAL OBLIGATIONS LAW OF THE STATE OF NEW YORK), WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES.**

(g)     Each party hereto hereby irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction of the Bankruptcy Court and, if the Bankruptcy Court does not have (or abstains from) jurisdiction, the Supreme Court of the State of New York sitting in New York County and of the United States District Court of the Southern District of New York, and any appellate court from any thereof, in any action or proceeding arising out of or relating to this Note or any DIP Document, and each of the parties hereto hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding may be heard and determined in such New York State or, to the extent permitted by law, in such Federal court.

(h)     **THE BORROWER AND, BY ITS ACCEPTANCE OF THIS NOTE, THE DIP AGENT, ANY DIP LENDER AND ANY SUBSEQUENT HOLDER OF THIS NOTE, HEREBY IRREVOCABLY AGREE TO WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS NOTE OR ANY DEALINGS BETWEEN THEM RELATING TO THE SUBJECT MATTER OF THIS NOTE AND THE DIP AGENT'S/BORROWER RELATIONSHIP THAT IS BEING ESTABLISHED**.  The scope of this waiver is intended to be all-encompassing of any and all disputes that may be filed in any court and that relate to the subject matter of this transaction, including without limitation contract claims, tort claims, breach of duty claims and all other common law and statutory claims.  The Borrower and, by their acceptance of this Note, the DIP Agent, any DIP Lender and any subsequent holder of this Note, each (i) acknowledges that this waiver is a material inducement to enter into a business relationship, that each has already relied on this waiver in entering into this relationship, and that each will continue to rely on this waiver in their related future dealings and (ii) further warrants and represents that each has reviewed this waiver with its legal counsel and that each knowingly and voluntarily waives its jury trial rights following consultation with legal counsel.  **THIS WAIVER IS IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING) THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS OF THIS NOTE**.  In the event of litigation, this provision may be filed as a written consent a trial by the court.

(i)     The Borrower hereby waives the benefit of any statute or rule of law or judicial decision which would otherwise require that the provisions of this Note be construed or interpreted most strongly against the party responsible for the drafting thereof.

Case: 22-10381    Doc# 209    Filed: 01/18/23    Entered: 01/18/23 13:09:19    Page 62 of 70

061

(j)     The Borrower shall not have the right to assign its obligations or liabilities under this Note without the prior written consent of the DIP Agent.  The DIP Lenders may, with the prior written consent of the DIP Agent, assign to one or more entitles all or any part of, or may grant participation's to one or more entities in or to all or any part of, the amounts outstanding hereunder, and to the extent of any such assignment or participation (unless otherwise stated therein) the assignee or participant shall have the same rights and benefits hereunder as it would have if it were a DIP Lender hereunder.  An assigning DIP Lender shall notify the DIP Agent and the Borrower of any such assignment (other than an assignment to an affiliate of such DIP Lender or a Related Fund) which notice shall include a description of the assignment and include customary instructions from the DIP Lender and such assignee with respect to the making of payments and other communications with the DIP Lender and such assignee.

(k)     The DIP Agent shall, acting solely for this purpose as a non-fiduciary agent of Borrower, maintain, or cause to be maintained at the Payment Office, a copy of each assignment notice delivered to and accepted by it and a register (the "Register") for the recordation of the names and addresses of the Persons, if any, that take an assignment from it and the principal amount of the DIP Loans and stated interest thereon (the "Registered Loans") owing to each DIP Lender from time to time.  The entries in the Register shall be conclusive and binding for all purposes, absent manifest error, and the Borrower and the DIP Agent may treat each Person whose name is recorded in the Register as a DIP Lender hereunder for all purposes of this Note.  The Register shall be available for inspection by Borrower and the DIP Lenders at any reasonable time and from time to time upon reasonable prior notice.

(l)     Upon receipt by the DIP Agent of an assignment notice, the DIP Agent shall accept such assignment and record the information contained therein in the Register.

(m)     A Registered Loan may be assigned or sold in whole or in part only by registration of such assignment or sale on the Register.  Any assignment or sale of all or part of such Registered Loan may be effected only by registration of such assignment or sale on the Register.  Prior to the registration of assignment or sale of any Registered Loan, the DIP Agent shall treat the Person in whose name such Registered Loan is registered as the owner thereof for the purpose of receiving all payments thereon and for all other purposes, notwithstanding notice to the contrary.

(n)     In the event that a DIP Lender sells participations in a Registered Loan, such DIP Lender shall maintain a register for this purpose as a non-fiduciary agent of Borrower on which it enters the name of all participants in the Registered Loans held by it and the principal amount (and stated interest thereon) of the portion of the Registered Loan that is the subject of the participation (the "Participant Register").  A Registered Loan may be participated in whole or in part only by registration of such participation on the Participant Register.  Any participation of such Registered Loan may be effected only by the registration of such participation on the Participant Register.  The Participant Register shall be available for inspection by the Borrower and the DIP Lenders at any reasonable time and from time to time upon reasonable prior notice.

(o)     No provision of this Note may be amended or waived unless such amendment or waiver is in writing and is signed by the Borrower, and the DIP Agent and the Required Lenders.

28

062

(p)     Any provision of this Note which is prohibited or unenforceable shall be ineffective to the extent such prohibition or unenforceability without invalidating the remaining provisions hereof.

(q)     This Note, the other DIP Documents, and all Liens created hereby or pursuant to the Collateral Documents or any other DIP Document shall be binding upon the Borrower, the estate of the Borrower, and any trustee or successor in interest of the Borrower in the Chapter 11 Case or any subsequent case commenced under Chapter 7 of the Bankruptcy Code, and shall not be subject to Section 365 of the Bankruptcy Code.  This Note and the other DIP Documents and the DIP Orders shall be binding upon, and inure to the benefit of, the successors of the DIP Agent and the DIP Lenders and each of their respective assigns, transferees and endorsees.  The Liens created by this Note, and the other DIP Documents shall be and remain valid and perfected in the event of the substantive consolidation or conversion of the Chapter 11 Case or any other bankruptcy case of the Borrower to a case under chapter 7 of the Bankruptcy Code or in the event of dismissal of the Chapter 11 Case or the release of any Collateral from the jurisdiction of the Bankruptcy Court for any reason, without the necessity that the DIP Agent file financing statements or otherwise perfect its security interests or Liens under applicable law.

(r)     In the event of any inconsistency between the terms and conditions of this Note and the DIP Orders, the provisions of the DIP Orders shall govern and control.

(s)     THIS WRITTEN PROMISSORY NOTE REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES, AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.  THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

*     *     *     *     *

Case: 22-10381     Doc# 209     Filed: 01/18/23     Entered: 01/18/23 13:09:19     Page 64 of 70

063

IN WITNESS WHEREOF, the Borrower have caused this Note to be executed and delivered by its duly authorized officer as of the day and year and at the place first above written.

SPRING MOUNTAIN VINEYARD, INC., as
Debtor and Debtor in Possession

By: _____
    Name:
    Title

064

**Acknowledged and Agreed:**

MGG CALIFORNIA, LLC, as DIP Agent

By: _____
    Name:
    Title: Authorized Signer

[_____], as DIP Lender

By: _____
    Name:
    Title: Authorized Signer

    Commitment Amount:
      Initial Loan: $[___]
      Additional Loans: $[___]

[_____], as DIP Lender

By: _____
    Name:
    Title: Authorized Signer

    Commitment Amount:
      Initial Loan: $[___]
      Additional Loans: $[___]

<u>EXHIBIT A</u>

Initial Approved Budget

**Exhibit B**

**Approved Budget**

# SPRING MOUNTAIN VINEYARD
## WEEKLY CASH FLOWS
### ($000s)

All week columns are Forecast. Weeks start on Mondays (W/O).

| | 14 1/2/2023 | 15 1/9/2023 | 16 1/16/2023 | 17 1/23/2023 | 18 1/30/2023 | 19 2/6/2023 | 20 2/13/2023 | 21 2/20/2023 | 22 2/27/2023 | 23 3/6/2023 | 24 3/13/2023 | 25 3/20/2023 | 26 3/27/2023 | 27 4/3/2023 | 28 4/10/2023 | 29 4/17/2023 | TOTAL 16 weeks |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Operating Receipts** | | | | | | | | | | | | | | | | | |
| US Wholesale | 16.7 | 22.8 | 0.7 | 34.6 | 21.3 | | 33.1 | | 8.6 | 93.8 | 2.2 | 26.1 | 26.7 | 6.6 | 25.6 | 110.2 | 429.0 |
| Export | | | | | | | | | | | | | | | | | - |
| Tasting Room (POS, Web, Events) | 11.8 | 7.2 | 18.5 | 27.2 | 29.0 | 13.7 | 22.2 | 13.6 | 17.8 | 25.3 | 21.1 | 29.6 | 18.8 | 18.8 | 20.8 | 27.1 | 322.4 |
| Club | | | 5.5 | 0.3 | 67.9 | 604.4 | | | | 51.2 | 117.9 | | | 73.3 | 604.1 | | 1,524.7 |
| Other (Bulk, Grape, Misc.) | | | | | 209.4 | | | | | | | | 125.0 | | | | 334.4 |
| **Total Operating Receipts** | 28.5 | 30.1 | 24.7 | 62.1 | 327.6 | 618.1 | 55.3 | 13.6 | 26.4 | 170.3 | 141.2 | 55.6 | 170.5 | 98.7 | 650.6 | 137.3 | 2,610.6 |
| **Operating Disbursements** | | | | | | | | | | | | | | | | | |
| Total Payroll | 121.0 | 22.5 | 121.0 | 42.5 | 136.0 | 22.5 | 121.0 | 42.5 | 121.0 | 22.5 | 233.3 | 42.5 | 137.8 | 17.5 | 157.8 | 192.5 | 1,553.9 |
| Total Farm & Vineyards | 13.0 | 17.0 | 13.0 | 17.0 | 13.0 | 17.0 | 13.0 | 13.0 | 23.0 | 13.0 | 13.0 | 13.0 | 23.0 | 13.0 | 13.0 | 13.0 | 240.0 |
| Total Winemaking & Production | 4.0 | 6.0 | 6.0 | 4.0 | 6.0 | 4.0 | 6.0 | 6.0 | 4.0 | 6.0 | 6.0 | 6.0 | 4.0 | 6.0 | 4.0 | 6.0 | 84.0 |
| Elite (Sales Broker) | | | | | | | | | | | | | | | | | 155.0 |
| Licensing Fees/DTC Sales Tax | | | | | | | | | | | | | | | | | 150.0 |
| Warehouse/Shipping | | | | | | | | | | | | | | | | | 515.0 |
| Misc. | | | | | | | | | | | | | | | | | 20.0 |
| **Total Sales & Shipping** | 35.0 | 106.0 | 1.0 | 44.5 | 30.0 | 111.0 | 2.0 | 73.5 | 55.0 | 96.0 | 2.0 | 73.5 | 30.0 | 26.0 | 82.0 | 72.5 | 840.0 |
| Utilities | 2.0 | 3.0 | 2.0 | 2.0 | 2.0 | 3.0 | 2.0 | 2.0 | 2.0 | 3.0 | 2.0 | 2.0 | 2.0 | 3.0 | 2.0 | 2.0 | 36.0 |
| Book Keeping Services | | 30.0 | | 30.0 | | | 25.0 | | 25.0 | | 25.0 | | 25.0 | | 25.0 | | 185.0 |
| Property Tax | | | | | | | | | | | 163.6 | | | | | | 163.6 |
| Corporate Insurance/Financing | 248.0 | | | | 248.0 | | | | 248.0 | | | | 248.0 | | | | 992.0 |
| Other, Misc. | 2.3 | 2.3 | 2.3 | 2.3 | 2.3 | 2.3 | 2.3 | 2.3 | 2.3 | 2.3 | 2.3 | 2.3 | 2.3 | 2.3 | 2.3 | 2.3 | 36.8 |
| **Total Corporate/Overhead** | 252.3 | 35.3 | 4.3 | 34.3 | 252.3 | 5.3 | 29.3 | 4.3 | 277.3 | 5.3 | 192.9 | 4.3 | 277.3 | 5.3 | 29.3 | 4.3 | 1,413.4 |
| **Total Operating Disbursements** | 425.3 | 186.8 | 145.3 | 142.3 | 437.3 | 159.8 | 171.3 | 139.3 | 480.3 | 142.8 | 447.2 | 139.3 | 472.1 | 67.8 | 286.1 | 288.3 | 4,131.3 |
| **Net Operating Cash Flows** | (396.8) | (156.7) | (120.6) | (80.2) | (109.7) | 458.3 | (116.0) | (125.7) | (453.9) | 27.5 | (306.0) | (83.7) | (301.6) | 30.9 | 364.5 | (151.0) | (1,520.8) |
| Capital Expenditures/Repairs | | 25.0 | | | 25.0 | | 25.0 | | | | 25.0 | | | | | | 100.0 |
| BNP Paribas | | | | 15.0 | | | | | | | | 10.0 | | | | | 25.0 |
| Greenspoon & Marder | | | | 120.0 | | | | 140.0 | 127.0 | | | 160.0 | | | | 220.0 | 767.0 |
| Special Counsel - CTSW | | | | 32.0 | | | | 20.0 | 12.0 | | | 30.0 | | | | 32.0 | 126.0 |
| Special Counsel - Standler | | | | 16.0 | | | | 8.0 | 6.0 | | | 12.0 | | | | 12.0 | 54.0 |
| Special Counsel - Abbott-Kindermann | | | | 16.0 | | | | 8.0 | 6.0 | | | 8.0 | | | | 8.0 | 46.0 |
| Geisler Henrich | | | | 125.0 | | | 32.5 | 162.5 | 32.5 | 32.5 | 36.3 | 36.3 | 36.3 | 36.3 | 33.3 | 33.3 | 596.7 |
| Jigsaw Advisors | | | 196.0 | 80.0 | | | | 80.0 | 89.0 | | | 80.0 | | | | 96.0 | 621.0 |
| Legal - Unsecured Creditors Comm | | | | | | | | | | | | | | | | | |
| Appraisal Firm - TBD | | | | | | | | 28.0 | 7.0 | | | | | | | | 35.0 |
| Accounting Firm - Dal Piggetto | | | | | | | | 8.0 | 2.0 | | | 12.0 | | | | 12.0 | 34.0 |
| Tax Advisory Firm - TBD | | | | | | | | 20.0 | 5.0 | | | 20.0 | | | | 20.0 | 65.0 |
| UST Trustee Fees | | | 36.0 | | | | | | | | | | | | | 59.9 | 95.9 |
| Utility/CA Sales Tax Req Deposits | | | | | | | | | | | | | | | | | |
| Interest / Principal | | | | | | | | | | | | | | | | | |
| **Total Non-Operating Disbursements** | | 25.0 | 232.0 | 404.0 | 25.0 | | 57.5 | 474.5 | 286.5 | 32.5 | 61.3 | 368.3 | 36.3 | 36.3 | 33.3 | 493.3 | 2,565.6 |
| **Total Operating & Non-Operating Disb.** | 425.3 | 211.8 | 377.3 | 546.3 | 462.3 | 159.8 | 228.8 | 613.8 | 766.8 | 175.3 | 508.5 | 507.6 | 508.4 | 104.1 | 319.4 | 781.6 | 6,696.9 |
| **Net Cash Flows** | (396.8) | (181.7) | (352.7) | (484.2) | (134.7) | 458.3 | (173.5) | (600.2) | (740.4) | (5.0) | (367.3) | (451.9) | (337.9) | (5.4) | 331.1 | (644.3) | (4,086.4) |
| Beg Bank Balance (Est.) | 776.3 | 379.5 | 197.8 | 845.1 | 361.0 | 226.3 | 684.6 | 511.0 | 1,310.9 | 570.5 | 565.5 | 198.2 | 746.3 | 408.5 | 403.1 | 734.2 | 776.3 |
| Net Cash Flows | (396.8) | (181.7) | (352.7) | (484.2) | (134.7) | 458.3 | (173.5) | (600.2) | (740.4) | (5.0) | (367.3) | (451.9) | (337.9) | (5.4) | 331.1 | (644.3) | (4,086.4) |
| Owner Advances | | | | | | | | | | | | | | | | | |
| MGG DIP Advances | | | 1,000.0 | | | | | 1,400.0 | | | | 1,000.0 | | | | | 3,400.0 |
| MGG DIP (Repayments) | | | | | | | | | | | | | | | | | |
| End Bank Balance (Est.) | 379.5 | 197.8 | 845.1 | 361.0 | 226.3 | 684.6 | 511.0 | 1,310.9 | 570.5 | 565.5 | 198.2 | 746.3 | 408.5 | 403.1 | 734.2 | 90.0 | 90.0 |
| Beg DIP Loan Balance | | | | 1,000.0 | 1,000.0 | 1,000.0 | 1,000.0 | 1,000.0 | 2,400.0 | 2,400.0 | 2,400.0 | 2,400.0 | 3,400.0 | 3,400.0 | 3,400.0 | 3,400.0 | |
| MGG DIP Advances | | | 1,000.0 | | | | | 1,400.0 | | | | 1,000.0 | | | | | 3,400.0 |
| MGG DIP (Repayments) | | | | | | | | | | | | | | | | | |
| End DIP Loan Balance | | | 1,000.0 | 1,000.0 | 1,000.0 | 1,000.0 | 1,000.0 | 2,400.0 | 2,400.0 | 2,400.0 | 2,400.0 | 3,400.0 | 3,400.0 | 3,400.0 | 3,400.0 | 3,400.0 | 3,400.0 |
| Beg Loan Balance (Est.)* | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 |
| MGG Advances | | | | | | | | | | | | | | | | | |
| MGG (Repayments) | | | | | | | | | | | | | | | | | |
| End Loan Balance (Est.)* | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 |

*Note: MGG Loan balances are estimated and subject to change and reconciliation.*

1          COURT SERVICE LIST

2

3    SERVICE OF THE ORDER IS NOT NECESSARY

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**GREENSPOON MARDER LLP**
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

1