**29UNITED STATES BANKRUPTCY COURT**

**Northern District of California**

| | |
|---|---|
| In re:<br>SPRING MOUNTAIN VINEYARD, INC.<br><br><br>Debtor(s)<br>_____ | )<br>)<br>)<br>)<br>)<br>) | Bankruptcy No.:22-10381<br>R.S. No.:<br>Hearing Date: February 17, 2023<br>Time: 10:00 a.m. |

<u>**Relief From Stay Cover Sheet**</u>

Instructions: Complete caption and Section A for all motions. Complete Section B for mobile homes, motor vehicles, and personal property. Complete Section C for real property. Utilize Section C as necessary. If moving party is not a secured creditor, briefly summarize the nature of the motion in Section D.

(A)    Date Petition Filed:                 <u>09/30/2022</u>     Chapter:    <u>11</u>
         Prior hearings on this obligation:                    Last Day to File §523/§727 Complaints: <u>01/03/2023</u>

(B)    Description of personal property collateral (e.g. 1983 Ford Taurus):

         Secured Creditor  [  ] or lessor [  ]
         Fair market value: $_____   Source of value: _____
         Contract Balance: $_____   Pre-Petition Default: $ _____
         Monthly Payment: $_____             No. of months: _____
         Insurance Advance: $_____   Post-Petition Default: $_____
                                         No. of months: _____

(C)    Description of real property collateral (e.g. Single family residence, Oakland, CA):

         Fair market value: $_____ Source of value:_____  If appraisal, date: _____

         Moving Party's position (first trust deed, second, abstract, etc.):

         Approx. Bal. $_____     Pre-Petition Default: $_____
         As of (date): _____            No. of months: _____
         Mo. payment: $_____   Post-Petition Default: $_____
         Notice of Default (date): _____        No. of months: _____
         Notice of Trustee's Sale:_____  Advances Senior Liens: $_____

         Specify name and status of other liens and encumbrances, if known (e.g. trust deeds, tax liens, etc.):

| Position | | Amount | Mo. Payment | Defaults |
|---|---|---|---|---|
| 1st Trust Deed:_____ | | $ | $ | $ |
| 2nd Trust Deed:_____ | | $ | $ | $ |
| _____: | | | | |
| _____: | | | | |
| _____: | | | | |
| | (Total) | $ | $ | $ |

Other pertinent information: See attachment

Dated:   February 1, 2023

                                         _____
                                              Signature

                                      <u>Michael D. Prough</u>
                                          Print or Type Name

                Attorney for <u>Mt. Hawley Insurance Company</u>

1  Michael D. Prough (SBN 168741)
   mdp@proughlaw.com
2  Dean C. Burnick (SBN 146914)
   dcb@proughlaw.com
3  PROUGH LAW, APC
   1550 Parkside Dr., Ste. 200
4  Walnut Creek, CA 94596
   Telephone: 925-433-5894
5  Facsimile: 925-482-0929

6  Attorneys for Creditor and Movant
   Mt. Hawley Insurance Company
7

8              UNITED STATES BANKRUPTCY COURT

9         NORTHERN DISTRICT OF CALIFORNIA – SANTA ROSA

10

11 In Re: SPRING MOUNTAIN          No. 22-10381 CN 11
   VINEYARD INC.,
12                                 NOTICE OF MOTION; MOTION
                                   FOR RELIEF FROM AUTOMATIC
13        Debtor                   STAY; MEMORANDUM OF
                                   POINTS AND AUTHORITIES IN
14 _____ SUPPORT; DECLARATION OF
                                   MICHAEL D. PROUGH
15                                 [11 U.S.C. § 362(d)(1)]

16
                                   Date:   February 17, 2023
17                                 Time:   10:00 a.m.
                                   Place:  U.S. Bankruptcy Court
18                                         Courtroom 215
                                           1300 Clay Street, Suite 300
19                                         Oakland, CA 94612

20                                 Chief Judge Charles Novack

21

22 **TO THE HONORABLE CHIEF JUDGE CHARLES NOVACK, UNITED**

23 **STATES BANKRUPTCY JUDGE, DEBTOR AND DEBTOR-IN-**

24 **POSSESSION, MGG CALIFORNIA, LLC, THE TWENTY LARGEST**

25 **UNSECURED CREDITORS, THE OFFICE OF THE UNITED STATES**

26 **TRUSTEE, AND ALL PARTIES IN INTEREST:**

27        NOTICE IS HEREBY GIVEN that on February 17, 2023, at 10:00 a.m.,

28 before the Honorable Charles Novack in Courtroom 215 of the United States

PROUGH LAW, APC

Case: 22-10381   Doc# 229   Filed: 02/02/23   Entered: 02/02/23 16:12:13   Page 2 of 167   CASE NO 22-10381

Bankruptcy Court located at 1300 Clay Street, Oakland, CA 94612, creditor and movant Mt. Hawley Insurance Company in the above-captioned matter will move this Court for an order granting relief from automatic stay on the grounds set forth in Movant's Motion for Relief from Automatic Stay filed concurrently herewith. The Motion is further supported by Movant's Memorandum of Points and Authorities, and by the Declaration of Michael D. Prough, filed herewith.

PLEASE TAKE FURTHER NOTICE that Respondents may appear personally or by counsel at the above-captioned hearing and may file responsive pleadings, points and authorities, and declarations. If Respondents fail to appear, default may be entered.

Dated: February 2, 2023

PROUGH LAW, APC

By: */s/ Michael D. Prough*
Michael D. Prough

Attorneys for Creditor and Movant
Mt. Hawley Insurance Company

Case: 22-10381    Doc# 229    Filed: 02/02/23    Entered: 02/02/23 16:12:13    Page 3 of 167

## MOTION FOR RELIEF FROM AUTOMATIC STAY

Mt. Hawley Insurance Company ("Mt. Hawley") hereby moves the Court, pursuant to 11 U.S.C. Section 362(d), for an Order granting, for cause, relief from the automatic stay by terminating, annulling, modifying or conditioning such stay as to the estate, and the debtor and debtor-in-possession Spring Mountain Vineyard Inc. ("Debtor"): to permit Mt. Hawley's pre-petition, New York state law lawsuit against Debtor, for breach of contract and declaratory judgment, pending in the United States District Court for the Southern District of New York, *Mt. Hawley Insurance Company v. Spring Mountain Vineyard, Inc.*, Case No. 1:22-cv-03191-GHW (the "New York Action") to proceed to judgment and any appeal therefrom. so that Debtor's liability to Mt. Hawley, and the amount thereof, can be fixed.

Mt. Hawley does not ask the Court to lift the case stay to collect or enforce any money judgment it may obtain against Debtor in the New York Action, and agrees to seek further relief from this Court concerning collection on, or enforcement of, any money judgment it obtains against Debtor in the future.

The $10 million excess commercial property insurance policy entered into by Debtor and Mt. Hawley contains forum selection and choice of law clauses in favor of New York. On March 21, 2022, Debtors breached the policy by bringing a lawsuit against Mt. Hawley in Napa County, California, seeking coverage for certain alleged wildfire losses at their property. *Spring Mountain Vineyard, Inc. v. Landmark American etc. et al.*, case no. 22CV000270 ("California Action"). On April 19, 2022, Mt. Hawley filed the New York Action against Debtors, and on August 17, 2022 Mt. Hawley filed a First Amended Complaint ("FAC") in that action. (*See* Prough Declaration, Exh. A.) Mt. Hawley seeks, among other things, contract damages for Debtor's breach of the parties' contract, as well as declaratory judgments regarding several disputed issues of coverage under the policy and the governing New York law.

Case: 22-10381    Doc# 229    Filed: 02/02/23    Entered: 02/02/23 16:12:13    Page 4 of 167

Good cause exists to lift the automatic stay to permit the New York Action to proceed in the United States District Court for the Southern District of New York, on liability and damages issues:

1.      The Mt. Hawley policy issued to Debtor contains two forum-selection clauses requiring the parties to litigate any dispute in New York. The Mt. Hawley policy follows form to the primary policy issued by First Specialty that states: "The parties irrevocably submit to the exclusive jurisdiction of the Courts of the State of New York and to the extent permitted by law the parties expressly waive all rights to challenge or otherwise limit such jurisdiction." The Mt. Hawley policy also adds its own forum selection clause, stating: "Any litigation commenced by any Named Insured … against the Company shall be initiated in New York." Both policies also include a New York choice of law clause. The New York forum selection clauses and choice of law clauses are valid and enforceable under federal procedural and New York substantive law, applicable in that action.

2.      Debtor's filing and maintenance of its California Action against Mt. Hawley breached and continues to breach the New York forum selection clauses under the terms of the written insurance contract between Debtor and Mt. Hawley.

3.      The New York Action was automatically stayed pursuant to 11 U.S.C. Section 362(a) on September 30, 2022, when Debtor filed its Chapter 11 Petition (Doc. #1). Before the stay, the New York Action was poised to proceed expeditiously to trial and final judgment. Fact discovery in the case was scheduled to close on December 16, 2022, and expert discovery was scheduled to close on February 24, 2023. The deadline to file dispositive motions was March 27, 2023. Upon relief from stay, Mt. Hawley intends to petition the District Court to promptly re-set litigation deadlines and to press the case to conclusion.

4.      Mt. Hawley's damages claim against Debtor is pleaded in its first claim for relief in its First Amended Complaint, a common law claim for breach of contract under New York law. Debtor's liability to Mt. Hawley for damages for

Debtor's breach of contract under the Mt. Hawley policy are unique to the New York Action. Mt. Hawley's claims in the New York action arise under state law and not under Title 11 or other bankruptcy law.

5. The breach of contract and the insurance coverage issues raised by the New York Action require resolution before Mt. Hawley's claim against the Debtor in this bankruptcy proceeding can be fixed, as to both liability and amount. Mt. Hawley thus submits that the interests of justice and respect for state law are served and promoted by an order under 28 U.S.C. §1334(c)(1) abstaining from hearing the issues raised by the New York Action, and by granting Mt. Hawley relief from the automatic stay for cause under 11 U.S.C. § 362(d), to allow Mt. Hawley's New York Action pending in the United States District Court for the Southern District of New York to proceed to final judgment and any appeal therefrom.

WHEREFORE, Movant prays that the automatic stay be terminated, annulled, modified or conditioned as follows:

A. For an Order granting Mt. Hawley immediate relief from the automatic stay, for cause, under Bankruptcy Rule 362(d)(1), to take any and all actions to resolve the New York Action through judgment and appeal including, but not limited to, all insurance coverage questions and liability and damages questions resulting from Debtor's breach of the Mt. Hawley policy;

B. That the requirements of Bankruptcy Rule 4001(a)(3), be waived;

C. That Mt. Hawley have such other and further relief as the Court may deem just and proper.

Dated: February 2, 2023 PROUGH LAW, APC

By: */s/ Michael D. Prough*
Michael D. Prough

Attorneys for Creditor and Movant
Mt. Hawley Insurance Company

MT. HAWLEY INSURANCE COMPANY'S MOTION FOR RELIEF FROM AUTOMATIC STAY

Case: 22-10381    Doc# 229    Filed: 02/02/23    Entered: 02/02/23 16:12:13    Page 6 of 167

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION AND STATEMENT OF FACTS

Mt. Hawley seeks relief from the automatic stay to allow its insurance coverage and breach of contract action against Debtor Spring Mountain Vineyard Inc. ("Debtor"), pending in the U.S. District Court for the Southern District of New York, *Mt. Hawley Insurance Company v. Spring Mountain Vineyard, Inc.*, Case No. 1:22-cv-03191-GHW (the "New York Action"), to proceed to judgment.

Mt. Hawley filed its lawsuit against Debtor on April 19, 2022, and its First Amended Complaint on August 16, 2022. (*See* Prough Decl., Exh. A, filed herewith.) Mt. Hawley's claims for relief are for breach of contract damages, under New York state law, as well as for declaratory judgment with regard to a number of coverage disputes that had arisen between Debtor and Mt. Hawley arising from a fire loss that occurred at Debtor's property. Mt. Hawley's contract damages claim is premised on Debtor's antecedent and continuing breach of contract in filing and maintaining a lawsuit against Mt. Hawley in Napa County Superior Court, in violation of a contractual forum-selection clause. Mt. Hawley contends that the forum-selection clause is enforceable under the applicable federal and New York state law, and that Debtor's breach of the clause supports a cognizable claim for money damages under New York law. *Wormser Corp. v. L'Oreal USA, Inc.*, 205 A.D.3d 496 (N.Y. App. Div. 2022). Mt. Hawley seeks relief from stay to litigate the merits of its claims (including any trial, if necessary), before that District Court.

Courts have repeatedly found that stay relief is appropriate to permit a pre-petition state law damages claim to be adjudicated and liquidated in state court (or as here, by a District Court sitting in diversity). *See, e.g. In re Merriman*, 616 B.R. 381, 389 (9th Cir. B.A.P. 2020) (identifying factors warranting relief from stay); *In re Tucson Estates, Inc.*, 912 F.2d 1162, 1167 (9th Cir. 1990) (same); *In re Gordon*,

Case: 22-10381    Doc# 229    Filed: 02/02/23    Entered: 02/02/23 16:12:13    CASE NO. 22-10381
Page 7 of
167

646 B.R.903, 908-09 (D. Idaho 2022) (stay relief to permit pre-petition damages claim to go forward in federal district court where it was pending).

Granting Mt. Hawley relief from stay to allow its New York lawsuit to proceed will resolve the question of Debtor's liability, under New York law, for having breached the forum selection clause, and will fix the amount of Mt. Hawley's resulting damages. If Mt. Hawley secures a money judgment against Debtor for breach of contract, Mt. Hawley's claim against Debtor for damages will be fixed and valued, for purposes of its further consideration and treatment by this Court in the claim allowance and distribution process.[1]

The following facts support granting Mt. Hawley relief from the automatic case stay to permit the New York Action to proceed to judgment in New York:

1.      Debtor's property suffered damage in the Glass Fire, which broke out on September 27, 2020. Debtor made claims for recovery under its commercial property insurance policies in force at that time, including Mt. Hawley's Excess Commercial Property Policy MCP0170029. (Prough Decl., Ex. A (First Amended Complaint ("FAC") at Ex. 1 thereto (Mt. Hawley Policy). )

2.      The Mt. Hawley Policy contained two forum-selection clauses requiring the parties to litigate any dispute in New York. Debtor's primary policy issued by First Specialty Insurance Corporation, no. ESP 2004867 00 ("First Specialty Policy") – to which the Mt. Hawley Policy followed form – states: "The parties irrevocably submit to the exclusive jurisdiction of the Courts of the State of New York and to the extent permitted by law the parties expressly waive all rights to challenge or otherwise limit such jurisdiction." Prough Dec., Ex. A at Ex. 3 (First Specialty Policy) (at 13 of 81). The Mt. Hawley Policy adopted that provision and

---

[1] Mt. Hawley does not ask the Court to lift the case stay to collect or enforce any judgment it may obtain against Debtor in the New York Action. Mt. Hawley agrees to seek further relief from this Court concerning collection on, or enforcement of, any final judgment against Debtor as appropriate in the future.

added its own: "Any litigation commenced by any Named Insured … against the Company shall be initiated in New York." *Id*., Ex. A at Ex. 1 (at 22 of 29). The First Specialty Policy and the Mt. Hawley Policy also included New York choice of law provisions. *Id*., Ex. A at Ex. 1 (at 22) and Ex. 3 (at 13).

3.     On March 21, 2022, Debtor served Mt. Hawley with a lawsuit asserting causes of action for declaratory relief, breach of contract and bad faith against Mt. Hawley and five other excess insurers, Debtor's insurance broker and a principal of that brokerage, filed in Napa County Superior Court, entitled *Spring Mountain Vineyard, Inc. v. Landmark American etc. et al.*, Case No. 22CV000270 ("California Action"). Mt. Hawley moved to dismiss the California Action based on the forum selection clauses, which motion was denied by the Superior Court applying California law (a ruling Mt. Hawley will revisit or appeal from in later proceedings if necessary).[2] No trial of the California Action has been set, and that case is in the pleadings and early-discovery stage. The demurrers of Mt. Hawley and three other excess insurer defendants to Debtor's Second Amended Complaint are set for hearing on February 2, 2023.

4.     Mt. Hawley has incurred significant legal fees and costs defending itself against the California Action, which sums will continue to mount as motion practice and multi-party discovery in the California Action ramp up.

5.     Mt. Hawley initiated an action in the United States District Court for the Southern District of New York, invoking the forum selection clauses from the parties' insurance contract. The New York Action was filed on April 19, 2022. Mt. Hawley's FAC, filed in that case on August 17, 2022, seeks to resolve all disputes

---

[2]  The enforceability and effect of the forum-selection clause in the New York Action will be decided under federal procedural and New York substantive state law. *Martinez v. Bloomberg, L.P.*, 740 F.3d 211, 217-28 (2d Cir. 2014). The Napa County Superior Court ruling (under California state law) is not determinative of either. If SMV intends to dispute those issues in the New York Action, that is a merits issue for U.S. District Judge Woods in New York to consider and rule upon.

Case: 22-10381    Doc# 229    Filed: 02/02/23    Entered: 02/02/23 16:12:13    CASE NO. 22-10381    Page 9 of 167

with Debtor over the rights and duties of the parties under the Mt. Hawley Policy. Prough Dec., Ex. 1

6.      Mt. Hawley's FAC asserts a common law breach of contract claim for damages, under New York law, for Debtor's breach of the forum selection clauses. Although Debtor disputes Mt. Hawley's entitlement to relief on that claim, Mt. Hawley contends that the claim is cognizable under New York state law (which governs the contract). The liability and damages issues comprising Mt. Hawley's breach of contract count will fix and value Mt. Hawley's damages claim against Debtor in this case. *Id.*, ¶¶ 63-68.

7.      Mt. Hawley's FAC also seeks judicial declarations resolving the following New York state law insurance coverage issues: (a) Whether all Conditions of Coverage under the Mt. Hawley policy were satisfied (Count 2) (*id.*, ¶¶ 69-74); (b) Whether the limits of liability of each of Debtor's property policies underlying the Mt. Hawley Policy (providing $10 million excess of $10 million in coverage) must be exhausted for Mt. Hawley's excess coverage to be implicated (Count 3) (*id.*, ¶¶ 75-80); (c) Whether other terms and conditions of coverage under the Mt. Hawley Policy bar or limit coverage (Count 4) (*id.*, ¶¶ 81-86); and (d) Whether a meeting of the minds occurred and a contract was effectively entered into between Debtor and Mt. Hawley or, alternatively, if Debtor rejects the Mt. Hawley Policy as issued, whether rescission is warranted (Count 5) (*id.*, ¶¶ 87-93).

8.      Attorney Jay Spievack of Cohen Tauber Spievack & Wagner, P.C., has been specially employed by this Court to represent Debtor in both the "California State Litigation" and the "New York Federal Litigation". (Doc. #166). Mr. Spievack and his firm are located in New York City, where the New York Action is pending. They are handling the dispute for the Debtor on a contingent fee basis.

9       The New York Action was automatically stayed pursuant to 11 U.S.C. Section 362(a) on September 30, 2022, when Debtor filed its Chapter 11 Petition (Doc. #1). U.S. District Court Judge Gregory Woods also ordered the New York

Case: 22-10381    Doc# 229    Filed: 02/02/23    Entered: 02/02/23 16:12:13    CASE NO. 22-10381    Page 10 of 167

Action stayed on that that date. At the time of the case stay, fact discovery in the New York Action was scheduled to close on December 16, 2022, expert discovery was scheduled to close on February 24, 2023, and summary judgment motions were due by March 27, 2023. A significant amount of party and third party discovery had been taken and was underway at the time the case was stayed.

10.     The New York Action is pending between only Mt. Hawley and Debtor. Debtor's California Action names as defendants Mt. Hawley, additional excess property insurers, its insurance broker and an employee of that brokerage. If relief from the automatic stay is ordered so that the New York Action may proceed to judgment, Mt. Hawley anticipates that the New York Action can proceed through trial and final judgment expeditiously. Moreover, New York is the forum Mt. Hawley has selected for the adjudication of its pleaded claims, consistent with the New York forum-selection and choice of law clauses in the Policy.

## II.

## <u>ARGUMENT</u>

A.     <u>Relief From Stay Should Be Granted Under 11 U.S.C.§362(d)(1)</u>

A bankruptcy filing imposes an automatic stay of all litigation against the debtor. 11 U.S.C. §362(a). A bankruptcy court "shall" lift the automatic stay "for cause." 11 U.S.C. §362(d)(1). "Cause" has no clear definition and is determined on a case-by-case basis. *In re Tuscon Estates, Inc.*, 912 F.2d 1162, 1167 (9th Cir. 1990); *In re Kronemyer*, 405 B.R. 915, 921 (9th Cir. B.A.P. 2009). Section 362(d) "gives the bankruptcy court wide latitude in crafting relief from the automatic stay". *In re Schwartz*, 954 F.2d 569, 572 (9th Cir. 1992); *Kronemyer*, 405 B.R. at 919 ("broad discretion").

Bankruptcy courts may, and sometimes must, abstain from hearing disputes that are only tangentially related to the bankruptcy case. *See* 28 USC § 1334(c); *In re Tucson Estates, Inc.*, 912 F2d at 1169. Abstention may constitute "cause" for lifting the stay to allow the action to proceed to judgment in a nonbankruptcy forum

Case: 22-10381   Doc# 229   Filed: 02/02/23   Entered: 02/02/23 16:12:13   Page 11 of 167

(e.g., state court, federal district court, tax court, etc.). *In re Universal Life Church, Inc.* 127 B.R. 453, 455 (ED CA 1991)("The legislative history of § 362(d)(1) states that 'a desire to permit an action to proceed to completion in another tribunal may provide [ ] cause' for relief from a stay. H.R. No. 595, 95th Cong., 1st sess. 343, 1977 U.S. Code Cong. & Admin. News 5787, 6300."); *see*, *generally*, Cal. Prac. Guide: Bankruptcy, §8:1145 (The Rutter Group 2023) ("Rutter Group").

"To obtain relief from the automatic stay, the party seeking relief must first establish a *prima facie* case that 'cause' exists for relief under § 362(d)(1)." *In re Plumberex Specialty Prods., Inc.*, 311 B.R. 551, 557 (Bankr C.D. Cal. 2004); Rutter Group, §§8:1646, 1647. "Once a prima facie case has been established, the burden shifts to the debtor to show that relief from the stay is unwarranted." *Id*.; Rutter Group, §§8:1666 (debtor or trustee "must show that the… 'cause' alleged by the movant does not exist.")

B. <u>"Cause" to Lift the Automatic Stay Exists Under 11 U.S.C.§362(d)(1)</u>

In determining whether "cause" exists to grant relief from the automatic stay to allow a movant to pursue litigation in a non-bankruptcy forum, courts in the Ninth Circuit have called for the consideration and balancing of a number of factors, ultimately bearing upon "judicial economy, the expertise of the state court, prejudice to the parties, and whether exclusively bankruptcy issues are involved." *In re Merriman*, 616 B.R. at 387. In performing that balancing, courts have identified a number of factors (not each is applicable to every case), including those identified in *In re Tucson Estates*, 912 F.2d at 1167 (internal citations omitted):

(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any,

- 11 -

Case: 22-10381   Doc# 229   Filed: 02/02/23   Entered: 02/02/23 16:12:13   Page 12 of 167

other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy; (7) the substance rather than form of an asserted 'core' proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement to be left to the bankruptcy court; (9) the burden of [the bankruptcy court's] docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.[3]

Other courts have discussed and applied slightly different articulations of similar factors, including the so-called "*Curtis* factors",[4] much to the same effect.

---

[3] *In re Tucson Estates* was decided prior to *Stern v. Marshall*, 564 U.S. 462 (2011), of course, so any factors referencing "core" versus "non-core" proceedings, or the jurisdictional effect of a right to a jury trial, must necessarily be viewed through the prism of that subsequent case law development. Mt. Hawley's common law, state law claims, including its breach of contract damages claim, would necessarily be adjudicated only in the District Court under Article III.

[4] *In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984). Those factors are: (1) Whether the relief will result in a partial or complete resolution of the issues; (2) The lack of any connection with or interference with the bankruptcy case; (3) Whether the foreign proceeding involves the debtor as a fiduciary; (4) Whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases; (5) Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation; (6) Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question; (7) Whether the litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties; (8) Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c); (9) Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f); (10) The interests of judicial economy and the expeditious and economical determination of litigation for the parties; (11) Whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and (12) The

- 12 -

Case: 22-10381    Doc# 229    Filed: 02/02/23    Entered: 02/02/23 16:12:13    Page 13 of 167

*In re Kronmeyer*, 405 B.R. at 921 ("the *Curtis* factors are appropriate, nonexclusive, factors to consider in deciding whether to grant relief from the automatic stay"); *In re Landmark Fence Co., Inc.*, 2011 WL 6826253 at *4 (C.D. Cal. Dec. 9, 2011) ("[W]hile the *Curtis* factors are widely used to determine the existence of "cause," not all of the factors are relevant in every case, nor is a court required to give each factor equal weight.") As the Bankruptcy Appellate Panel held in *In re Merriman*, the factors bear upon issues of judicial economy, prejudice to the parties, and whether the bankruptcy court or the non-bankruptcy (state, federal or specialty) court is a proper or, if so, a superior forum to resolve the case.

Consideration of the *In re Tucson Estates* factors supports abstention to the United States District Court for the Southern District of New York to adjudicate and to conduct any trial of the claims in Mt. Hawley's complaint against Debtor Spring Mountain Vineyards, and thus supports granting Mt. Hawley's motion for relief from the stay. The twelve enumerated factors are considered in order:

1. Effect on the Efficient Administration of the Estate. This factor favors stay relief. There would likely be no additional administrative burden on the estate in having the proceedings move forward in the New York federal district court. The New York court's familiarity and experience with overseeing the case for much of 2022 means that it could more quickly and efficiently bring the claim to final judgment (potentially expediting the closure of this bankruptcy case).

According to the first day declaration of Constantine S. Yannias, the Debtor's chairman and president, this bankruptcy was precipitated by three primary factors: (1) the Covid-19 pandemic and a decline in tourism in Napa County, (2) the 2020 Glass Fire in 2020, and (3) difficulties between the Debtor and its primary or only secured lender, MGG California, LLC as agent for several related lenders ("Lenders"). (Doc. #26, at 3-5.) Lenders hold an allowed secured claim as of the

impact of the stay on the parties and the "balance of hurt." *Id*.

MT. HAWLEY INSURANCE COMPANY'S MOTION FOR RELIEF FROM AUTOMATIC STAY

Petition Date of not less than $192,221,090.14, and an Adequate Protection Superpriority Claim and Adequate Protection Liens pursuant to the terms of the Final Cash Collateral Order. (Doc. #92; *see also*, Doc #96 at 4.)

Pursuant to the Final Cash Collateral Order, the Debtor has agreed to a sale process consisting of the following milestones: (a) Marketing the Debtor's assets and securing a stalking horse bid; (b) Obtaining Court approval of bidding procedures for Debtor's assets; (c) Auctioning Debtor's assets for the sale or other disposition by no later than March 24, 2023; (d) Conducting a Sale Hearing by no later than March 31, 2023; and (e) Closing the sale by no later than April 15, 2023 (*see*, *generally*, Doc. #96, at 5). With these goals in mind, Debtor's activities in this case have centered on satisfying its ongoing operating expenses and employing professionals to maximize value for auction or other disposition. Debtors' most recent schedules and disclosures indicate sufficient assets, exceeding liabilities, such that all creditors with allowed claims would be likely to be paid in full.[5]

Mt. Hawley's prosecution of the New York action in order to determine liability and damages will not interfere with or impact any of the above. Indeed, if anything, it will expedite the ultimate valuation and allowance of Mt. Hawley's claim, and thus the sooner closure of the estate and bankruptcy case can occur.

2. <u>The extent to which state law issues predominate over bankruptcy issues</u>.

This factor strongly favors stay relief. Mt. Hawley's claim is entirely premised on state law.

3. <u>The difficulty or unsettled nature of the applicable law</u>. This factor favors stay relief. Any disputed or unsettled issues of New York state law are better

---

[5] It appears from earlier filings in this proceeding, that Debtor has identified total assets of at least $298 million (at Inventory Wholesale) to $377 million (at Inventory Retail). As for liabilities, its lender appears to have a $202 million claim; and the sum total of the claims presently showing on the claims register are approximately $1.2 million. (*see generally* Dkt. Nos. 22, 24, 167-3; 185 at 16.)

Case: 22-10381   Doc# 229   Filed: 02/02/23   Entered: 02/02/23 16:12:13   Page 15 of 167

addressed by the District Court in New York, where the court regularly addresses issues of New York state law, and where the case is already pending.

4. <u>The presence of a related proceeding commenced in state court or other non-bankruptcy court</u>. This factor favors stay relief. Mt. Hawley's claim is already pending in the federal court in New York and has been since April of 2022. The New York federal court is well situated to decide the issues of New York law presented in that action.

Debtor may argue that its lawsuit against Mt. Hawley, pending in Napa County Superior Court, somehow favors this court (or more properly an Article III judge of this Court) retaining Mt. Hawley's claims. It does not. First, Mt. Hawley has pled its claims in a New York court, under New York law, which is the basis for its damages claim. Second, notwithstanding SMV's prosecution of its affirmative claims in Napa County, this Court does not have the authority to transfer a case from New York federal court to Napa County, California state court.

SMV may well argue that Judge Woods in the District Court in New York should dismiss or abstain from hearing Mt. Hawley's New York Action, because of the Napa County action. Indeed, SMV has made such arguments to that Court prior to its petition for bankruptcy. Mt. Hawley disagrees, but again, those are arguments for Judge Woods to address once the automatic stay has been lifted.

5. <u>The jurisdictional basis, if any, other than 28 U.S.C. § 1334.</u> This factor favors stay relief. Mt. Hawley's claim does not arise under Title 11 nor go to any core issue of bankruptcy law. It is a state law claim.

6. <u>The degree of relatedness or remoteness of the proceeding to the main bankruptcy</u>. This factor favors stay relief. Mt. Hawley's common law lawsuit premised on state law questions under New York law, raises no issues related to the bankruptcy or the administration of the estate.

7. <u>The substance rather than form of an asserted 'core' proceeding</u>. This factor favors stay relief. There is no core proceeding. This is a state law contract

Case: 22-10381    Doc# 229    Filed: 02/02/23    Entered: 02/02/23 16:12:13    Page 16 of 167

action, filed pre-petition. Mt. Hawley is not attempting to have this adjudicated by this bankruptcy court by asserting an alleged "core" claim. To the extent Mt. Hawley has presented a proof of claim, requisite to preserving its claim against any discharge order, that raises no substantive bankruptcy law issue.

8. <u>The feasibility of severing state law claims from core bankruptcy matters</u>. This factor favors stay relief. Again, there is no core proceeding, and Mt. Hawley's claims do not arise under Title 11 or other bankruptcy law. These are solely state law claims. The treatment of Mt. Hawley's proof of claim can be severed from the state law issues. Thus, as noted above, Mt. Hawley seeks relief from stay solely to the extent of adjudicating the merits and determining the value of its state law claims in the New York Action. If a money judgment is entered in favor of Mt. Hawley, that judgment will be submitted for consideration and payment through the present action, via the claim submission and payment process.

9. <u>The burden on the bankruptcy court's docket</u>. This factor favors stay relief. Permitting the contract litigation to proceed in District Court in New York will not burden the bankruptcy court's docket at all.

10. <u>The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties.</u> Not applicable. Debtor presumably had a valid, good faith basis for filing the bankruptcy case here in California, where its property was located. Mt. Hawley submitted a proof of claim in this Court, because it had no choice if it wished to preserve the claim.

11. <u>The existence of a right of jury trial</u>. This factor favors stay relief. Mt. Hawley's common law damages claim for breach of contract, and claims for declaratory relief under New York insurance law and the contract, can only be properly adjudicated and tried in the District Court. *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50,69-72 (1997); *Stern v. Marshall*, 564 U.S. 462, 485-87 (2011).

MT. HAWLEY INSURANCE COMPANY'S MOTION FOR RELIEF FROM AUTOMATIC STAY

Case: 22-10381    Doc# 229    Filed: 02/02/23    Entered: 02/02/23 16:12:13    CASE NO. 22-10381
Page 17 of
167

12. <u>The presence in the proceeding of non-debtor parties.</u> Not applicable. Both Mt. Hawley's claim and the New York Action are between Mt. Hawley and Debtor, exclusively.

Mt. Hawley respectfully submits that the *In re Tucson Estates* factors,[6] on balance, strongly support granting its motion for relief from stay.

### III.
### <u>CONCLUSION</u>

For the forgoing reasons, good cause exists under 11 U.S.C. § 362(d) to grant Movant's motion for relief from automatic stay to allow Mt. Hawley's New York Action to proceed to judgment, and any appeal therefrom, in New York.

Dated: February 2, 2023        PROUGH LAW, APC


By: */s/ Michael D. Prough*
          Michael D. Prough

Attorneys for
Mt. Hawley Insurance Company

---

[6] As noted above, some courts have looked to the "*Curtis* factors" (see footnote 4, above). To the extent those standards look to anything different, they are either inapplicable or support stay relief. For example, (#1) the New York court can effect a complete resolution of all issues in Mt. Hawley's claim; (#3)/(#6) Debtor is not a bailee or a fiduciary; (#7) other creditors and interested parties will be unaffected by the claim proceeding in New York; (#10)/(#11) the New York Action had progressed nearly to the close of discovery and can be quickly and efficiently concluded in that court; and (#12) the impact of the stay has been to delay Mt. Hawley's resolution of its state law claims, and lifting the stay should help to settle the parties' rights and to bring this matter to a more timely resolution.

MT. HAWLEY INSURANCE COMPANY'S MOTION FOR RELIEF FROM AUTOMATIC STAY

## DECLARATION OF MICHAEL D. PROUGH

I, Michael D. Prough, declare:

1. I am an attorney duly licensed to practice before all of the Courts of the State of California, and principal of Prough Law, APC, counsel of record for Mt. Hawley Insurance Company herein. I have personal knowledge of the facts in this Declaration and am competent to testify to them. This Declaration is submitted in support of Mt. Hawley's Motion for Relief From Automatic Stay under 11 U.S.C. § 362(d).

2. I am attorney of record for plaintiff Mt. Hawley in the action entitled *Mt. Hawley Insurance Company v. Spring Mountain Vineyard, Inc.*, United States District Court for the Southern District of New York, Case No. 1:22-cv-03191-GH ("New York Case"). A true and correct copy of Mt Hawley's First Amended Complaint, filed in that case on August 17, 2022 is attached hereto as Exhibit A. The voluminous exhibits to the pleading were not all included (but are available upon request, of course), but Exhibit 1 (a certified copy of the Mt. Hawley Policy) and Exhibit 3 (a copy of the primary First Specialty Policy) are attached.

3. When the New York Action was stayed on September 30, 2022, fact discovery in the litigation was then-scheduled to close on December 16, 2022, expert discovery was scheduled to close on February 24, 2023, and the deadline to file dispositive motions was March 27, 2023. A true and correct copy of Judge Woods' June 29, 2022 Civil Case Management Plan And Scheduling Order setting all case deadlines is attached, marked Exhibit B.

3. I am attorney of record for defendant Mt. Hawley in the action entitled *Spring Mountain Vineyard, Inc. v. Landmark American etc. et al.*, Superior Court for the State of California, County of Napa, Case No. 22CV000270. That action was originally filed on March 21, 2022. The demurrers of Mt. Hawley and of co-defendants Hallmark Specialty Insurance Company, Western World Insurance Company and AXIS Surplus Insurance Company, directed to certain causes of

Case: 22-10381   Doc# 229   Filed: 02/02/23   Entered: 02/02/23 16:12:13   CASE NO. 22-10381   Page 19 of 167

1  action in Debtor's Second Amended Complaint, were presented to the court on

2  February 2, 2023.

3       I declare under penalty of perjury, under the laws of the United States of

4  America that the foregoing is true.

5       Executed this 2nd day of February 2023 at Walnut Creek, California.

6

7                    _/s/Michael D. Prough_____
                    Michael D. Prough

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MT. HAWLEY INSURANCE COMPANY'S MOTION FOR RELIEF FROM AUTOMATIC STAY

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

MT. HAWLEY INSURANCE COMPANY,                    Civil Action No.
an Illinois corporation,                          1:22-cv-03191

                         Plaintiff,       **FIRST AMENDED
                                                  COMPLAINT**

         - against –

SPRING MOUNTAIN VINEYARD, INC.,
a Delaware Corporation,

                         Defendant.

-------------------------------------------------------------------------X

Plaintiff Mt. Hawley Insurance Company ("Mt. Hawley"), by its attorneys, Chartwell Law

and Prough Law, APC, as and for its complaint against defendant Spring Mountain Vineyard, Inc.

("SMV"), respectfully alleges the following:

## <u>INTRODUCTION</u>

1.      Mt. Hawley brings this action for breach of contract damages and for a declaratory

judgment concerning the rights and the obligations of the parties with respect to a $10 million

excess commercial property insurance policy that it issued to SMV, policy no. MCP0170029

("Policy"), which sits excess of $10 million in underlying insurance that SMV procured from other

insurers. SMV sustained certain losses during a wildfire in St. Helena, California, which

commenced on September 27, 2021 (the "Glass Fire"). SMV contends that its covered losses from

the Glass Fire are sufficient to reach and indeed to exhaust the coverage under Mt. Hawley's

Policy. SMV filed a lawsuit against Mt, Hawley in Napa County, California, in breach of the

Policy--which contains provisions mandating that SMV bring any such action in New York--

causing Mt. Hawley damages. An actual, justiciable controversy now exists concerning the parties'

alleged respective rights and obligations under the Policy. Mt. Hawley brings the present action

for breach of contract damages, and for a Declaratory Judgment.

## THE PARTIES

2.      Mt. Hawley is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in Peoria, Illinois. Mt. Hawley is a citizen of Illinois.

3.      SMV is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in St. Helena, California. It is a citizen of Delaware and California.

## JURISDICTION AND VENUE

4.      The Court has original jurisdiction over the present action under 28 U.S.C. § 1332, because there exists complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000. Mt. Hawley's damages from SMV's breach of contract exceed $75,000, exclusive of interest and costs. Additionally, SMV contends that Mt. Hawley owes the full $10 million limits under the Policy. Venue is proper within this District pursuant to 28 U.S.C. §§1391(b)(2), (c)(2) and (d). SMV is subject to personal jurisdiction in this District, and additionally, a substantial part of the events or omissions giving rise to the claim occurred in this District. The parties agreed, contractually, to litigate any dispute under the Policy in New York, thus consenting to personal jurisdiction and venue.

5.      Mt. Hawley's excess Commercial Property Policy issued to its Named Insured SMV, discussed more fully below, includes a New York forum selection clause providing in part:

> any Named Insured... shall submit to the jurisdiction of a court of competent jurisdiction in the State of New York, and shall comply with all the requirements necessary to give such court jurisdiction. Any litigation commenced by any Named Insured … against the Company shall be initiated in New York. Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's right to remove an action to a United States District Court.

6.      The Mt. Hawley excess policy also follows form, in relevant part, to First Specialty Insurance Corporation primary policy no. ESP 2004867 00 issued to SMV, also discussed below.

The First Specialty primary policy also includes a New York forum selection clause providing in part:

> The parties irrevocably submit to the exclusive jurisdiction of the Courts of the State of New York and to the extent permitted by law the parties expressly waive all rights to challenge or otherwise limit such jurisdiction.

## FACTS

### A.   The Mt. Hawley Excess Policy

7.      Mt. Hawley issued Commercial Property Policy MCP0170029, effective July 1, 2020 to July 1, 2021, naming Spring Mountain Vineyard, Inc., as insured (the "Mt. Hawley Policy" or the "Policy"). The Policy insures against risks of direct physical loss or damage to covered property according to its terms and conditions, and according to the terms and conditions of First Specialty's underlying primary policy. Coverage under the Policy "attaches excess of the underlying insurance which, in turn, is subject to specific deductibles."

8.      A true and correct certified copy of the Mt. Hawley Policy is attached hereto, marked **Exhibit 1.**

9.      The Mt. Hawley Policy identifies covered properties by reference to a "Schedule of Locations", also known as a "statement of values", that itemizes by location, building, address and other descriptive information each covered commercial structure. The Schedule lists: (i) a winery and office, Victorian, cottage, shop, barn and cave at "Miravelle – 2805 Spring Mountain Road" in St. Helena (Loc. 1, Bldgs. 1-7); (ii) an historic wine building at "Chevalier – 3101 Spring Mountain Road" in St. Helena (Loc. 2, Bldg. 1); (iii) two winery buildings at "Alba – 2849 Spring Mountain Road" in St. Helena (Loc. 3, Bldgs. 3, 4); and a winery at "La Perla – 2820 Spring Mountain Road" in St. Helena (Loc. 5, Bldg. 3). The Schedule includes a per location "Building

Limit" representing the maximum recoverable amount for a covered total loss at a scheduled location.

10.    A true and correct copy of the Schedule of Locations signed by SMV President Constantine "Don" Yannias is attached hereto, marked **Exhibit 2**.

11.    The Mt. Hawley Policy includes the following relevant provisions:

> **1.    INSURING AGREEMENT**
>
> > In consideration of the payment of premium stated in the declarations and subject to the terms and conditions contained in our policy or endorsed hereon, we agree to insure against risks of direct physical loss or damage to covered property per the terms and conditions of the Underlying Insurance Policy listed in Item 3.B. except as excluded herein.
> >
> > Total Underlying insurance may be provided by a company or companies some of which may have different conditions, limitations and exclusions than the Underlying Insurance Policy. Insurance under this policy is subject to the same conditions, limitations, and exclusions (except as mentioned herein or endorsed onto this policy) as the Underlying Insurance Policy referenced below.
> >
> > The risk of uncollectibility (in whole or in part) of other insurance, whether because of financial impairment or insolvency of an underlying or other insurer or for any other reason, is expressly retained by the insured and is not in any way or under any circumstances insured or assumed by us.
>
> **2.    LIMITS OF LIABILITY**
>
> > Our limit of liability in any one occurrence for loss or damage to Covered Property arising from any one loss or disaster for all coverages and locations insured in this policy combined shall not exceed $10,000,000 part of $10,000,000 excess of $10,000,000. Additionally our limit of liability is subject to separate term aggregate limits as indicated below.
> >
> > * * *
>
> **3.    UNDERLYING INSURANCE**

**A.    LIMITS**: the total amount of Underlying Insurance is $\underline{\$10,000,000}$ plus any deductible amount or self-insured retention or similar plan beneath any underlying insurance for all property and coverages combined.

**B.    UNDERLYING INSURANCE POLICY**: the Underlying Insurance Policy referred to herein is provided by:

Policy: ESP 2004861 00
Carrier: First Specialty Insurance Corporation
Eff Date: 07/01/2020
Exp. Date: 07/01/2021

Any revision to the policy shown above and/or other underlying policy(ies) made after the effective date of the Underlying Insurance Policy shall not be binding on this excess insurance without our consent.

**4.    APPLICATION OF UNDERLYING INSURANCE POLICY**

Our policy insures against loss or damage as per the terms and conditions of the "Underlying Insurance Policy" listed in Item 3.B., except that where our provisions and stipulations are more restrictive or contrary to those of the "Underlying Insurance Policy," our policy will supersede.

\* \* \*

**7.    LOSS PAYMENT**

Liability under our policy for our share of the "Ultimate Net Loss" will not attach until the underlying insurer(s) have paid, admitted liability for, or have been held legally liable for the full amount of their respective participations of the "Ultimate Net Loss." But in no event shall the "Ultimate Net Loss" exceed the less of the following:

**A.    Actual adjusted amount of loss;**

**B.    Total stated value for the property lost or damaged, as shown on the latest statement of values on file with us;

**C.    Your financial interest.

**8.    DEFINITION**

"Ultimate Net Loss" means the actual loss or damage sustained by you (including any Deductible or self-insured retention amount) as a direct result of the perils insured against and the coverages provided for in our policy to Covered Property hereunder arising from any one loss or disaster, after making Deductions for salvage, subrogation and recoveries from any source other than our policy and the underlying and excess insurance policies.

\* \* \*

12.   The Limitation of Liability Endorsement (form CPR 2126 (10/01)) in the Mt. Hawley Policy provides:

The following special terms and conditions apply to this policy:

**A.**   The Limit of Insurance or amount of insurance shown in the Declarations page of this policy is a limit or amount per occurrence, except for "earthquake" and "flood," if covered, where an annual aggregate applies. We will not pay more than this limit or amount in one disaster, casualty, or event, no matter how many locations are involved.

**B.**   The premium for this policy is based on the schedule or statement of values on file with us or attached to this policy. If there is a loss under this policy, we will not pay more than the least of the following:

**1.**   The actual adjusted amount of loss, minus the deductible(s) that applies;

**2.**   The Limit of Insurance or amount of insurance per occurrence shown in the Declarations page of this policy or endorsed onto this policy; or

**3.**   The stated value for the specific property involved in the loss as shown on the latest statement of values on file with us, minus the deductible(s) that applies.

13.   As noted, the Legal Action Conditions Endorsement (form CPR 2311 (04/20)) in the Mt. Hawley Policy provides:

All matters arising hereunder including questions related to the validity, interpretation, performance and enforcement of this Policy shall be determined in accordance with the law and practice of the State of New York (notwithstanding New York's conflicts of law rules).

It is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, any Named Insured, any additional insured,

and any beneficiary hereunder shall submit to the jurisdiction of a court of competent jurisdiction in the State of New York, and shall comply with all the requirements necessary to give such court jurisdiction. Any litigation commenced by any Named Insured, any additional insured, or any beneficiary hereunder against the Company shall be initiated in New York. Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's right to remove an action to a United States District Court.

**B.**     **The Underlying First Specialty Policy**

14.     First Specialty Insurance Corporation issued Policy ESP 2004867 00, effective July 1, 2020 to July 1, 2021, to SMV ("First Specialty Policy"). Like the Mt. Hawley Policy, Item 2 of the First Specialty Policy Declarations also references the Schedule (Exhibit 2) for an itemization of covered property.

15.     A copy of the First Specialty Policy, as provided by counsel for SMV to Mt. Hawley on September 2, 2021, is attached hereto, marked **Exhibit 3**.

16.     The Building and Personal Property Coverage Form in SMV's First Specialty Policy includes the following relevant provisions:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**

**A.**     **Coverage**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

**1.**     **Covered Property**

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.,** and limited in **A.2.** Property Not Covered, if a Limit Of Insurance is shown in the Declarations for that type of property.

**a.**     **Building**, meaning the building or structure described in the Declarations, including:

**(1)**     Completed additions;

**(2)**     Fixtures, including outdoor fixtures;

    **(3)**    Permanently installed:

        (a)    Machinery; and
        (b)    Equipment;

    **(4)**    Personal property owned by you that is used to maintain or service the building or structure or its premises….

        \* \* \*

  **b.**    **Your Business Personal Property** consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure, or within 100 feet of the premises described in the Declarations, whichever distance is greater:

    (1)    Furniture and fixtures;

    (2)    Machinery and equipment;

        \* \* \*

    (3)    All other personal property owned by you or used in your business.

        \* \* \*

**2.**    **Property Not Covered**

Covered Property does not include:

        \* \* \*

**d.**    Bridges, roadways, walks, patios or other paved surfaces;

        \* \* \*

**f.**    The cost of excavations, grading, back-filling or filling;

**g.**    Foundations of buildings, structures, machinery or boilers if their foundations are below:

    **(1)**    The lowest basement floor; or

    **(2)**    The surface of the ground, if there is no basement;

    **h.**    Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetated roof);

* * *

    **k.**    Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

    **l.**    Retaining walls that are not part of a building;

    **m.**    Underground pipes, flues or drains;

* * *

    **q.**    The following property while outside of buildings:

        **(1)**    Grain, hay, straw or other crops;

        **(2)**    Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, trees, shrubs or plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), all except as provided in the Coverage Extensions.

    **3.**    **Covered Causes Of Loss**

    See applicable Causes Of Loss form as shown in the Declarations.

17.    The Business Income (And Extra Expense) Coverage Form of the First Specialty Policy provides in part:

    **A.**    **Coverage**

    **1.**    **Business Income**

* * *

    We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

> With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

* * *

> **3.     Covered Causes Of Loss, Exclusions And Limitations**
>
> See applicable Causes Of Loss form as shown in the Declarations.

18.     The Causes Of Loss – Special Form of the First Specialty Policy provides in part:

> **A.     Covered Causes Of Loss**
>
> When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

19.     The Miscellaneous Unnamed Locations Coverage Extension Endorsement (form SP 4 79 0710) in the First Specialty Policy provides:

> This Policy is hereby extended to insure against loss or damage to Miscellaneous Unnamed Locations as defined below.
>
> **Miscellaneous Unnamed Locations** - Covered Property as insured against by this Policy at any location within the Coverage Territory which is not on described premises or shown on any applicable Schedule of Locations, to the extent of your interest .…
>
> Miscellaneous Unnamed Locations do not include any property insured or excluded under any other item of this Policy or under any other policy issued by us to you. If such property is insured in whole or in part by other insurance, then this Policy shall apply only as excess insurance, and in no event as contributing insurance, and then only after all other insurance has been exhausted.
>
> **Limit of Liability** - Liability for loss under this Miscellaneous Unnamed Locations Coverage Extension Endorsement, arising out of one occurrence, shall not exceed $100,000.

20.     The Commercial Property Conditions of the First Specialty Policy provides in part:

> **A.     CONCEALMENT, MISREPRESENTATION OR FRAUD**
>
> This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other

insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1.      This Coverage Part;

2.      The Covered Property;

3.      Your interest in the Covered Property; or

4.      A claim under this Coverage Part.

21.    The Duties And Requirements In The Event Of Loss Or Damage Endorsement (form SP 5 730 1112) in the First Specialty policy places certain duties upon SMV in the event of loss or damage to covered property, including the following:

**Duties and Requirements in The Event of Loss or Damage**

a.      You must see that the following are done in the event of loss or damage to Covered Property:

\* \* \*

(6)    As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records...

\* \* \*

(8)    Cooperate with us in the investigation or settlement of the claim.

b.      You, as often as may be reasonably required, shall:

\* \* \*

(2)    Submit to examinations under oath by any person named by us, while not in the presence of any other person that might be subject to such an examination, and subscribe the same.

(3)    Present and require any of your officers, directors, investors, managers, employees, public adjuster, experts, consultants, contractors or any other representative relating to the loss or damage, for examinations under oath by any person named by us, while not in the presence of any other person that might be subject to such an examination, and require they subscribe the same.

\* \* \*

(4)    Produce for examination:

    (a)    All books of account;
    (b)    Bills, invoices and other vouchers, or certified copies thereof if originals be lost.

\* \* \*

## C.    The Wildfire and SMV's Fire Loss Claim

22.    SMV's properties are principally comprised of four wineries: (1) Miravelle Ranch; (2) Chateau Chevalier Ranch; (3) La Perla Ranch; and (4) Alba Ranch.

23.    On September 27, 2020, the Glass Fire broke out in Napa County, California, damaging portions of SMV's properties.

24.    On or about September 30, 2021, SMV gave notice of its claim under the Mt. Hawley Policy. Thereafter, SMV's New York based attorneys — Cohen Tauber Spievack & Wagner, P.C. ("CTSW") — with the assistance of SMV's California-based public adjuster, The Greenspan Co. ("Greenspan"), has pursued SMV's claims under the Mt. Hawley Policy and its other property policies for the losses arising from the Glass Fire.

25.    The property insurers including Mt. Hawley retained independent adjuster McLarens to assist in the factual investigation of SMV's property insurance claim. McLarens' role and conduct was to gather facts, information and documentation relating to the claimed losses, including the retention of consultants as appropriate to evaluate particular aspects of the claim. As part of that investigation, McLarens has retained building consultant Young and Associates, developed all documents and information required by Young and Associates to perform its analysis and valuation of SMV's claimed physical losses, coordinated and performed site inspections with Young & Associates, surveyed and documented loss locations, identified and requested documents and other information, retained forensic accounting consultant J.S. Held, solicited SMV's business

income claim, attempted to develop all documents and information required by J.S. Held to perform its analysis and valuation of SMV's claimed business income losses, and communicated as needed with Greenspan.

26.     Mt. Hawley has also undertaken its own investigation and analysis of SMV's claims, for the purpose of determining the existence and amount of coverage that might potentially be owed under the terms of the Mt. Hawley Policy. Mt. Hawley has requested information, documentation and the examination under oath ("EUO") of SMV representatives and agents with regard to the claim. On August 5, 2021, Mt. Hawley requested documentation from SMV as well as the EUO of Constantine "Don" Yiannis, SMV's President, who had signed a recently submitted "proof of loss" claiming over $35 million in covered losses. For nearly one year, however, SMV refused to produce Mr. Yiannis, and/or only agreed to produce him subject to a series of preconditions, including Mt. Hawley's waiver of coverage defenses and pre-payment of a substantial portion of SMV's claims. SMV has instead offered up a series of individuals who could each testify to only some aspects of SMV's claim. Subsequent to the filing of this lawsuit, SMV finally made Mr. Yiannis available for examination.

### D.    The Parties' Claim Correspondence and Coverage Disputes

27.     On July 13, 2021, Tim Larsen (Greenspan) e-mailed McLarens attaching SMV's Proof and Statement of Loss totaling $35,357,883.64, the total sum of all Scheduled values. That correspondence was Mt. Hawley's first notice that SMV's claimed covered losses would implicate Mt. Hawley's layer of excess coverage. Among other things, Mr. Larsen asserted:

> a)    That Mt. Hawley and SMV's other insurers "have agreed with SMV's coverage position that the entire claim... is covered";

b)      That "the Insurers [have] agreed to pay the total loss up to the policies $35,565,435 limit regardless of where the damage occurred on the vineyard property";

c)      That the Mt. Hawley Policy affords "blanket coverage for any loss regardless of where it occurred on the vineyard property";

d)      That "the policies clearly and unambiguously covered the irrigation and trellis systems";

e)      That all insurers "have, in effect, acknowledged their payment obligations for the repair and/or replacement costs associated with" the irrigation and trellis systems; and

f)      That Mt. Hawley has breached SMV's insurance contract.

28.      A true and correct copy of Mr. Larsen's July 13, 2021 correspondence (without enclosures), which was forwarded to Mt. Hawley, is attached, marked **Exhibit 4**.

29.      On August 5, 2021, Mt. Hawley rejected each contention, and requested from SMV certain documentation, information and Mr. Yannias's EUO.

30.      A true and correct copy of Mt. Hawley's August 5, 2021 letter is attached, marked **Exhibit 5**.

31.      On August 10, 2021, CTSW wrote counsel for Mt. Hawley proposing that Mr. Larsen and Ms. Seavoy appear for EUOs, among other things.

32.      A true and correct copy of CTSW's August 10, 2021 letter is attached, marked **Exhibit 6**.

33.      On August 23, 2021, Mr. Larsen wrote McLarens on behalf of SMV's other property insurers which also raised issues relating to the Mt. Hawley Policy.

34.     A true and correct copy of Mr. Larsen's August 23, 2021 letter is attached, marked **Exhibit 7**.

35.     On September 29, 2021, Mt. Hawley, through counsel, responded to CTSW's August 10 letter, to Mr. Larsen's August 23 letter, and to other submissions and e-mails received from SMV between August 26 and September 27.

36.     A true and correct copy of Mt. Hawley's September 29, 2021 letter is attached, marked **Exhibit 8**.

37.     By letter dated October 29, 2021, CTSW wrote McLarens with SMV's revised coverage positions. That letter stated (at fns. 2, 3) that SMV had been paid $7,659.534.86 for its fire loss claim, and asserted the following:

    a)     That its 2020-21 property policies (including the Mt. Hawley policy) afford blanket coverage despite the policy language based on the Schedule (Exhibit 2);

    b)     That $2,238,744 is owed for total loss of an unscheduled barn used for storage, the "Chevalier Red Barn", that SMV argues was appurtenant to, or serviced, the scheduled Chevalier Historic Wine Building (Exhibit 2, Loc. 2, Bldg. 1);

    c)     That the insurers' $102,745 payment for the partially damaged Miravelle Ranch Shop (Loc. 1, Bldg. 4), a maintenance building, was insufficient and that it actually suffered $578,796 in damage;

    d)     That the insurers' total loss calculations are incorrect because the $500,000 wildfire deductible does not, or should not, apply; and

e)      That $6,659,726 is owed for the claimed total loss of SMV's vineyard trellis and irrigation systems, which SMV argues qualify as Covered Property under each property policy.

38.     A true and correct copy of CTSW attorney Jay Spievack's October 29, 2021 letter is attached, marked **Exhibit 9**.

39.     Based in part on CTSW's October 29, 2021 letter, Mt. Hawley conducted the Larsen and Seavoy EUOs on November 17 and 18, 2021, and the Meredith and Rosenbrand EUOs on December 14-15, 2021. Mt. Hawley has also pursued all outstanding documents and information requested but not produced by SMV, a continued examination of former controller Jim Meredith and SMV's current controller (if needed), and the EUO of Mr. Yannias.

40.     By letter dated November 30, 2021, Mt. Hawley requested the EUOs of Mr. Meredith and Mr. Rosenbrand, to occur before December 23.

41.     A true and correct copy of Mt. Hawley's November 30, 2021 letter is attached, marked **Exhibit 10**.

42.     By letter dated December 2, 2021, Mt. Hawley requested by category the documents and information identified and discussed during the Larsen and Seavoy EUOs that SMV had not produced.

43.     A true and correct copy of Mt. Hawley's December 2, 2021 letter is attached, marked **Exhibit 11**.

44.     By letter dated December 22, 2021, Mt. Hawley requested by category the documents and information identified and discussed during the Meredith and Rosenbrand EUOs that SMV had not produced.

45.     A true and correct copy of Mt. Hawley's December 22, 2021 letter is attached, marked **Exhibit 12**.

46.     By letter dated January 12, 2022, CTSW revised SMV's claim downward to $29,153,414.20 and demanded that Mt. Hawley pay its $10 million limit of liability within 30 days. At Footnote 11, SMV noted that the "2020-21 Property Policies provide that a New York state or federal court must resolve all coverage disputes and must apply New York law". To the extent Mt. Hawley understands it, that letter also seems to argue, among other things, that the Mt. Hawley Policy independently obligates Mt. Hawley to pay $4.8 million for SMV's total loss of the La Perla Winery (Exhibit 2, Loc. 5, Bldg. 3) even though the Mt. Hawley Policy follows form, in relevant part, to the primary First Specialty Policy and the $4.8 million Building Limit for the La Perla Winery was already fully paid by First Specialty under its policy.

47.     A true and correct copy of CSTW's January 12, 2022 demand letter is attached, marked **Exhibit 13**.

48.     On February 1, 2022, Mt. Hawley replied again confirming that its investigation was ongoing and that it would render a coverage determination upon its conclusion. That letter also renewed Mt. Hawley's requests for information and solicited dates for Mr. Yannias's EUO.

49.     A true and correct copy of Mt. Hawley's February 1, 2022 letter to CTSW is attached, marked **Exhibit 14**.

50.     CTSW responded by letter dated February 8, 2022. To the extent Mt. Hawley understands it, and among other things, CTSW argued that "SMV has complied with its obligations" under the Mt. Hawley Policy, that Mt. Hawley "has more than enough information to make a coverage determination", and that Mt. Hawley's outstanding EUO requests are "premature" and must be limited.

51.     A true and correct copy of CTSW's February 8, 2022 letter is attached, marked **Exhibit 15**.

52.     In response, on March 7, 2022, Mt. Hawley itemized what documents remained outstanding (mostly financial), advised again that it would reconvene Mr. Meredith's examination on financial issues once all documents were received, rejected SMV's unsupported attempt to limit the scope of Mr. Yannias's examination and again solicited dates for it.

53.     A true and correct copy of Mt. Hawley's March 7, 2022 letter to CTSW is attached, marked **Exhibit 16**.

54.     CTSW responded by letter dated March 23, 2022. To the extent Mt. Hawley understands it, SMV again argued that Mt. Hawley is obligated to pay $4.8 million for SMV's loss of the La Perla Winery (despite that Building Limit being already paid by the underlying insurers), and demands that Mt. Hawley immediately pay $525,000 for damage to the Alba Ranch and another $3,176,009 for "all purported resolved items" identified by other insurers. SMV also pre-conditioned the performance of its duties under the Mt. Hawley Policy, including making Mr. Yannias available for an EUO, on two new requirements set forth nowhere in the parties' insurance contract: (a) Mt. Hawley's admission that its "purported liability limitation provisions only limit [its] own respective policy liability for covered loss and damage to the amount indicated on SMV's Statement of Values"; and (ii) Mt. Hawley's payment of SMV's "undisputed loss and damages due to the Glass Fire within the next 30-days."

55.     A true and correct copy of CTSW's March 23, 2022 letter is attached, marked **Exhibit 17**.

56.     On April 8, 2022, Mt. Hawley responded to CTSW's March 23 letter and set Mr. Yannias's EUO for May 12, 2022 in Chicago, Illinois, where Mr. Yannias works.

57.     A true and correct copy of Mt. Hawley's April 8, 2022 letter to CTSW is attached, marked **Exhibit 18**.

58.     SMV thereafter reaffirmed and reiterated its refusal to present Mr. Yannias for an EUO. Following receipt of the Complaint in this action and in advance of the initial status conference in this case, in June of 2022, however, SMV changed its position and agreed finally to make Mr. Yannias available for an EUO. Mr. Yiannis's examination occurred on July 13, 2022.

59.     Mt. Hawley has diligently attempted to complete its coverage investigation. SMV, however, has taken positions concerning the claim and insurance coverage for it, including attempting to impose baseless conditions on Mt. Hawley's investigative rights, that have effectively prevented and delayed Mt. Hawley from completing that investigation. Those changing coverage positions also illustrate the controversies that currently exists between SMV and Mt. Hawley over insurance coverage under the Mt. Hawley Policy for any part of SMV's claimed losses arising from the Glass Fire. Finally, SMV has demanded that Mt. Hawley pay millions of dollars immediately on this claimed loss, notwithstanding the non-exhaustion of the underlying insurance, the ongoing investigation, and the substantial coverage defenses that have been reserved.

**E.      SMV's Lawsuit In California**

60.     On March 21, 2022, in response to Mt. Hawley's March 7, 2022 letter requesting the EUO of Mr. Yiannis, SMV instead filed and served a lawsuit against Mt. Hawley, captioned *Spring Mountain Vineyards, Inc. v. Landmark American Insurance Company, et al.*, Napa County Superior Court Case 22CV000270 ("California Action"). The Complaint in the California Action asserts against Mt. Hawley and others causes of action for declaratory relief (Counts 1, 4), breach

of contract (Counts 2, 3), breach of the implied covenant (Count 5) and negligent misrepresentation (Count 6).

61.     As SMV recognized as recently as CTSW's January 12, 2022 demand letter, "[t]he 2020-21 Property Policies provide that a New York state or federal court must resolve all coverage disputes and must apply New York law." (See Exhibit 13 at 5-6, fn. 11.) Yet SMV filed a lawsuit against Mt. Hawley two months later, in California, in express and knowing breach of contract. Because SMV filed the California Action in violation of the forum selection clauses in the Mt. Hawley Policy and the underlying First Specialty Policy, Mt. Hawley has moved to dismiss the California Action and will continue to take all steps proper and necessary in that action to secure its prompt dismissal. Mt. Hawley seeks recovery in this action of its damages caused by SMV's breach of contract.

62.     Pursuant to the forum selection clauses in the Mt. Hawley Policy and the First Specialty Policy, Mt. Hawley elects to proceed in this forum for breach of contract damages, as well as for judicial declarations that resolve all controversies with SMV over the rights and duties of the parties under the Mt. Hawley Policy.

### FIRST CLAIM FOR RELIEF
**(Breach of Contract)**

63.     Mt. Hawley reiterates and incorporates Paragraphs 1 through 62, above, as though fully set forth herein.

64.     Mt. Hawley herein states a common law claim for breach of contract damages. This claim is not dependent upon nor derivative of the Declaratory Judgment Act nor any of the hereinafter alleged claims for Declaratory Judgment. The written contract between SMV and Mt. Hawley expressly requires that any lawsuit SMV may file against Mt. Hawley "shall be initiated in New York." In addition, SMV agreed to "irrevocably submit to the exclusive jurisdiction of the

Courts of the State of New York and to the extent permitted by law" to "expressly waive all rights to challenge or otherwise limit such jurisdiction."

65.     Mt. Hawley has performed all obligations under the Policy.

66.     SMV has breached the Parties' contract by filing a lawsuit against Mt. Hawley in California. SMV's breach is knowing and willful, as SMV is fully aware of the forum selection clauses and has even invoked them against Mt. Hawley in SMV's own claim correspondence.

67.     SMV has further breached the Parties' contract by filing a motion to challenge or otherwise limit this Court's jurisdiction to hear this dispute, in contravention of its contractual promises to "submit to the jurisdiction of a court of competent jurisdiction in the State of New York" and to "waive all rights to challenge or otherwise limit such jurisdiction."

68.     SMV's breaches of contract have caused damages to Mt. Hawley, in a final amount to be proven at trial, in excess of $75,000.

**SECOND CLAIM FOR RELIEF**
**(Declaratory Judgment: Conditions Of Coverage)**

69.     Mt. Hawley reiterates and incorporates Paragraphs 1 through 62, above, as though fully set forth herein.

70.     The Mt. Hawley Policy insures against risks of direct physical loss or damage to covered property according to its terms and conditions, and according to the terms and conditions of First Specialty's underlying primary policy. The Duties And Requirements In The Event Of Loss Or Damage Endorsement (form SP 5 730 1112) attached to the First Specialty Policy places duties upon SMV in the event of loss or damage to covered property, including:

>    a.     You must see that the following are done in the event of loss or damage to Covered Property:

* * *

(6)    As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records...

\* \* \*

(8)    Cooperate with us in the investigation or settlement of the claim.

**b.**    You, as often as may be reasonably required, shall:

\* \* \*

(2)    Submit to examinations under oath by any person named by us, while not in the presence of any other person that might be subject to such an examination, and subscribe the same.

(3)    Present and require any of your officers, directors, investors, managers, employees, public adjuster, experts, consultants, contractors or any other representative relating to the loss or damage, for examinations under oath by any person named by us, while not in the presence of any other person that might be subject to such an examination, and require they subscribe the same.

\* \* \*

(4)    Produce for examination:

(a)    All books of account;
(b)    Bills, invoices and other vouchers, or certified copies thereof if originals be lost;

At such reasonable time and place as may be designated by us or our representative, and shall permit extracts and copies thereof to be made by us.

71.    On August 5, 2021, Mt. Hawley requested all documents supporting SMV's claim and the examination of SMV President Constantine "Don" Yannias. (Exhibit 5.) Despite Mt. Hawley's repeated requests, SMV declined to make Mr. Yannias available for examination for nearly one year. By March 23, 2022 letter from CTSW, SMV also conditioned making Mr. Yannias available for examination on Mt. Hawley admitting that its "purported liability limitation

provisions only limit [its] own respective policy liability for covered loss and damage to the amount indicated on SMV's Statement of Values", and paying millions that SMV claims is covered loss and damages due to the Glass Fire. (*See* Exhibit 17.) CTSW's March 23, 2022 letter also advised that SMV will not produce to Mt. Hawley that which accounting consultant J.S. Held requested on behalf of all insurers, incorrectly positing that "Mt. Hawley did not request documents regarding SMV's business loss income claim". (*Id*.) SMV has thus breached its duties in the event of loss or damage owed to Mt. Hawley by failing and refusing to cooperate, refusing and then delaying for nearly one year to produce Don Yannias for examination under oath, and to produce all documents supporting its claim. SMV's failure to timely and fully satisfy all preconditions to coverage under the Mt. Hawley Policy is not excused or justified and it has effectively prevented Mt. Hawley from completing its investigation and/or has delayed, impeded and impaired Mt. Hawley's ability to conduct its investigation.

72.     Mt. Hawley is informed and believes and thereon alleges that SMV disputes these contentions, and instead contends that it has fully complied with all duties in the event of loss and damage under the First Specialty Policy. Indeed, SMV contends that Mt. Hawley must immediately pay it millions of dollars and ultimately pay it $10 million, notwithstanding the policy conditions or the substantial coverage issues that have been reserved.

73.     By virtue of the foregoing, there presents a justiciable controversy between Mt. Hawley and SMV regarding the availability of coverage for the Glass Fire under the Mt. Hawley Policy.

74.     Mt. Hawley seeks a judicial declaration, under 28 U.S.C. §§ 2201 et seq., that SMV has breached the Duties And Requirements In The Event Of Loss Or Damage provisions of the First Specialty Policy to which the Mt. Hawley follows form, in relevant part.

## THIRD CLAIM FOR RELIEF
### (Declaratory Judgment: Non-Exhaustion Of Underlying Limits)

75.      Mt. Hawley reiterates and incorporates Paragraphs 1 through 62 and 70 through 74, above, as though fully set forth herein.

76.      The Declarations Page of the Mt. Hawley Policy provides that "Coverage under this policy attaches excess of the underlying insurance which, in turn, is subject to specific deductibles." Section 7 states "Liability under our policy for our share of the 'Ultimate Net Loss' will not attach until the underlying insurer(s) have paid, admitted liability for, or have been held legally liable for the full amount of their respective participations of the 'Ultimate Net Loss.'" Section 2 further provides "Our limit of liability in any one occurrence for loss or damage to Covered Property arising from any one loss or disaster... shall not exceed" $10 million excess of $10 million.

77.      Mt. Hawley is informed and believes, and on that basis alleges that First Specialty and Lloyds have collectively paid their $5 million limit of liability to SMV for losses arising from the Glass Fire. Mt. Hawley is also informed and believes that Kinsale and Landmark have paid SMV $2,695,534 under their first layer excess property policies for SMV's losses arising from the Glass Fire; bringing SMV's total property insurance recovery for the Glass Fire to $7,659.534. Approximately $2.34 million of the liability limits of the Kinsale and Landmark first layer excess policies, however, remain unpaid and available to SMV should it prove added sums in covered loss are owing. Unless and until the full $5 million combined limit of liability of the Kinsale and Landmark first layer excess policies are paid in covered loss, the coverage condition under the Mt. Hawley Policy that all underlying insurance first be exhausted remains unsatisfied. For this reason, the Mt. Hawley policy is not presently implicated or obligated to satisfy any additional,

uncompensated covered loss SMV may prove arose from the Glass Fire. Further, in the event that the underlying insurers are never found to have paid, admitted liability for, or have been held legally liable for the full amount of their respective participations, the Mt. Hawley Policy will not afford coverage.

78.     Mt. Hawley is informed and believes and thereon alleges that SMV disputes these contentions, and instead contends that it has sustained covered losses in excess of the combined limits of liability of the underlying property policies issued by First Specialty, Lloyd's, Kinsale, Landmark, the Mt. Hawley, and the excess insurers above Mt. Hawley's second layer excess policy. Indeed, SMV contends that Mt. Hawley must immediately pay it millions of dollars and ultimately pay it $10 million, and is in bad faith for not doing so, notwithstanding the policy conditions or the substantial coverage issues that have been reserved. SMV has sued Mt. Hawley for damages, including claims of breach of contract and bad faith, premised on its contention that Mt. Hawley owes it an immediate payment obligation. Although SMV has told this Court in written submissions on June 17 and June 22, 2022, and in open Court on June 29, 2022, that it does not contend that Mt. Hawley owes a present payment obligation under the Policy, its August 10, 2022 first amended complaint in Napa County, California, continues to assert claims for breach of contract and bad faith damages against Mt. Hawley for not having paid SMV's asserted claim under the Policy.

79.     By virtue of the foregoing, there presents a justiciable controversy between Mt. Hawley and SMV regarding the availability of coverage for the Glass Fire under the Mt. Hawley Policy, and Mt. Hawley's payment obligations thereunder.

80.     Mt. Hawley seeks a judicial declaration, under 28 U.S.C. §§ 2201 et seq., that the Mt. Hawley Policy's exhaustion requirement has not been satisfied or that it cannot be satisfied under the facts of this loss, and, as a result, Mt. Hawley has no obligation to pay.

### FOURTH CLAIM FOR RELIEF
### (Declaratory Judgment: Coverage Issues Bar Or Limit Recovery)

81.     Mt. Hawley reiterates and incorporates Paragraphs 1  through 62 and 70 through 80, above, as though fully set forth herein.

82.     The Mt. Hawley Policy insures against risks of direct physical loss or damage to covered property according to its terms and conditions, and according to the terms and conditions of First Specialty's underlying primary policy. The Mt. Hawley Insuring Agreement provides that "subject to the terms and conditions contained in our policy or endorsed hereon, we agree to insure against risks of direct physical loss or damage to covered property per the terms and conditions of the Underlying Insurance Policy... except as excluded herein." Exhibit 1 at p.5, Section 1. Section 4 provides that the Mt. Hawley Policy "insures against loss or damage as per the terms and conditions of the [First Specialty]... except that where our provisions and stipulations are more restrictive or contrary to those of the 'Underlying Insurance Policy,' our policy will supersede." The Limitation of Liability Endorsement in the Mt. Hawley Policy makes clear that "The premium for this policy is based on the schedule or statement of values... If there is a loss under this policy, we will not pay more than the least of the following: **1.** The actual adjusted amount of loss, minus the deductible(s) that applies; **2.** The Limit of Insurance or amount of insurance per occurrence...; or **3.** The stated value for the specific property involved in the loss as shown on the latest statement of values..."

83.     Mt. Hawley has reserved its rights and identified a number of substantive coverage issues with regard to SMV's claims and in response to SMV's stated positions under the Policy.

The parties dispute, *inter alia*, (1) whether SMV's coverage for each scheduled building is limited to the scheduled value for the building; (2) whether unscheduled buildings or other unscheduled property is covered; (3) whether SMV's claims for damage to its trellises and irrigation system are covered (and if so in what amount); and (4) whether any other limitations and exclusions from the Policy apply to bar or limit SMV's recovery.

84.     SMV contends that notwithstanding these coverage issues and limitations, Mt. Hawley must immediately pay it millions of dollars and ultimately pay it $10 million.

85.     By virtue of the foregoing, there presents a justiciable controversy between Mt. Hawley and SMV regarding the availability of coverage for the Glass Fire under the Mt. Hawley Policy and the extent, if any, of any such coverage.

86.     Mt. Hawley seeks a judicial declaration, under 28 U.S.C. §§ 2201 et seq., that SMV has not demonstrated an amount of covered loss that would result in coverage under the Mt. Hawley Policy, and/or that exclusions to coverage or limitations of liability apply that would limit the recovery of amounts claimed by SMV.

**FIFTH CLAIM FOR RELIEF**
**(Declaratory Judgment: Contract Formation;**
**or alternatively, Common Law Rescission)**

87.     Mt. Hawley reiterates and incorporates Paragraphs 1  through 62 and 70 through 86, above, as though fully set forth herein.

88.     Mt. Hawley contends that the Policy attached hereto as Exhibit 1 is the written contract of insurance between SMV and Mt. Hawley, duly applied for, procured and accepted by SMV through its authorized agents, and duly issued and delivered by Mt. Hawley. The written contract, by its terms, sets forth the rights and obligations of the Parties. Further, by claiming against and suing upon the Policy (and the underlying Policies), SMV has effected ratification.

89.     SMV, in its letters, sworn testimony, court filings, sworn declarations and its authorized representatives' statements to this Court and to the Napa County Superior Court, has called into question whether a meeting of the minds in fact occurred and a contract was effectively entered into as between SMV and Mt. Hawley, including by the following;

(a)     SMV has disavowed the agency or authority of Risksmith Insurance Services,  the independent insurance broker that worked on its behalf to apply for and procure the Policy for SMV from Mt. Hawley;

(b)     SMV has disavowed the agency or authority of Brown & Riding, an independent insurance broker that worked on its behalf to apply for and procure both the Mt. Hawley Policy and the First Specialty Policy;

(c)     SMV has disavowed the agency or authority of Arthur J. Gallagher, an independent insurance broker that worked on its behalf to apply for and procure both the Mt. Hawley Policy and the First Specialty Policy;

(d)     SMV has proclaimed that it did not consent (and never would) to some of the terms of the insurance policies that were procured by its agents on its behalf, including specific, material terms, that are present in the Policy (and/or underlying Policies), which include provisions describing the application of the limits with respect to each building;

(e)     SMV has proclaimed that it did not consent (and never would) to the New York Choice of Law and New York forum-selection clauses, material terms that were contained within the First Specialty and the Mt. Hawley Policies;

     (f)     SMV has rejected the Mt. Hawley Policy (Exhibit 1) as the binding written contract, while offering no other or different written contract that Mt. Hawley has ever agreed to; and

     (g)     SMV has not sued to rescind or reform the Policy, continuing to claim an entitlement to payment of benefits thereunder while selectively disavowing or ignoring any particular provisions that do not favor its present litigation or claim positions.

90.    Mt. Hawley denies that it has entered into or intended to enter into any contract of insurance with SMV for the July 1, 2020 to July 1, 2021 policy period, other than the exact Policy set forth as Exhibit 1. Mt. Hawley did not and would not have agreed to a Policy for this risk and policy period with so-called "blanket limits," as SMV desires for this claim. Mt. Hawley did not and would not have agreed to a Policy for this risk and policy period lacking its New York choice of law and forum selection clauses.

91.    By virtue of the foregoing, there presents a justiciable controversy between Mt. Hawley and SMV regarding contract formation, or in the alternative, the rescission of the Policy. If Mt. Hawley is correct that the Policy was duly applied for and procured by SMV's authorized agents, and duly issued and delivered by Mt. Hawley, or that SMV has accepted and ratified the Policy by claiming under and suing upon it, then the Policy is and remains in force and effect as written. If SMV is correct that the insurance brokers acting on its behalf were actually unauthorized, that SMV has not ratified the Policies as written, or that SMV never actually or constructively assented to the material terms of the Policy—including its Limitation of Liability provisions or its choice of law and forum selection provisions—then the appropriate remedy is for the Policy to be rescinded or to be declared to have never taken effect.

92.     Mt. Hawley seeks a judicial declaration, under 28 U.S.C. §§ 2201 et seq., that the Policy as written, Exhibit 1 hereto, is in full force and effect as the contract between the parties;

93.     In the alternative, if SMV rejects Exhibit 1 and is not held to have ratified it, and SMV's representations, admissions and the evidence establish that there was actually no meeting of the minds as between SMV and Mt. Hawley as to all material terms, then Mt. Hawley requests that the Court enter the remedy of rescission, an equitable, common law remedy. In the event rescission is deemed to be warranted, Mt. Hawley offers to return SMV's premium.

## PRAYER FOR RELIEF

**WHEREFORE**, Mt. Hawley Insurance Company respectfully prays for relief as follows:

a)     On its First Claim for Relief, for money damages in an amount to be proven at trial, in excess of $75,000;

b)     On its Second Claim for Relief, for an adjudication that SMV has breached the Conditions of coverage under the Mt. Hawley Policy, barring coverage for its claim;

c)     On its Third Claim for Relief, for an adjudication that the Mt. Hawley Policy requirement that all Underlying Insurance first be exhausted through payment of covered loss has not been satisfied or cannot be satisfied, and that, unless and until all underlying insurance limits of liability are properly exhausted, if ever, Mt. Hawley has no obligation to pay;

d)     On its Fourth Claim for Relief, that SMV has not established its entitlement to payment as to any covered loss under the terms and conditions of the Mt. Hawley Policy;

e)     On its Fifth Claim for Relief, for a Declaratory Judgment that the Mt. Hawley Policy, Exhibit 1 hereto, is the operative and legally effective contract between the Parties; or alternatively, that there is no contract between the parties and the Policy shall be rescinded;

f)     For such other and further relief as the Court may deem just and proper.

Dated:  New York, New York
       August 16, 2022

**CHARTWELL LAW**

By:  _____
       Matthew Kraus, Esq. (MK0621)
One Battery Park Plaza, Suite 710
New York, NY 10004
mkraus@chartwell.com
Telephone: (212) 785-0757

**PROUGH LAW, APC**


By: _Michael D. Prough____
      Michael D. Prough, Esq. (*pro hac vice*)
      Dean C. Burnick, Esq. (*pro hac vice*)
1550 Parkside Drive, Suite 200
Walnut Creek, CA 94596
mdp@proughlaw.com
dcb@proughlaw.com
Telephone: (925) 433-5894

*Attorneys for Plaintiff*
*Mt. Hawley Insurance Company*

# EXHIBIT 1

# CERTIFICATION

I, Scott R. Ostericher, do hereby certify that I am the AVP, Claim Operations of Mt. Hawley Insurance Company, a corporation organized and existing under the laws of the State of Illinois, and that to the best of my knowledge the attached is a true and correct copy of Policy No. MCP0170029 (7/1/2020 - 7/1/2021) issued to Named Insured Spring Mountain Vineyard, Inc.

DN: cn=Scott R. Ostericher, o=RLI/Mt. Hawley/CBIC, ou=Claim Department, email=scott.ostericher@rlicorp.com, c=US
Reason: To the best of my knowledge the attached is a true and correct copy of this policy.
Location: Peoria, Illinois
Date: 2021.07.22 10:34:46 -05'00'

Scott R. Ostericher, AVP, Claim Operations, Claims



**Mt. Hawley Insurance Company**
9025 N. Lindbergh Drive
Peoria, Illinois 61615
309-692-1000

# Commercial Property Policy Declarations Page

**Policy No.** MCP0170029

**Named Insured and Mailing Address:**

Spring Mountain Vineyard, Inc.
2805 Spring Mountain Road
St. Helena, CA 94574

**Agent/Broker and Mailing Address:**

Risksmith Insurance Srvs, LLC
8270 Grogans Ferry Road
Atlanta, GA  30350

**Policy Period:** From 07/01/2020   to 07/01/2021    at 12:01 A.M. Standard Time at your mailing address shown above.

**DESCRIPTION OF PREMISES**

Schedule Of Locations Received  _6/29/2020_    On File With Us

**CAUSES OF LOSS:** Special excluding Earthquake and Flood

**LIMITS OF INSURANCE**

**Total coverage (limit) applicable  Limit** $10,000,000          **,  part of** $10,000,000    **Excess Of**  $10,000,000

The above limit applies to the following and is subject to any sublimits stated elsewhere in the policy:

    Building  *
    Business Personal Property  *
    Business Income (and Extra Expense)
* Replacement Cost Applies

**Per Occurrence Loss Limit**

At no time will we pay more than $10,000,000          for a loss due to a single occurrence or event.

Coverage under this policy attaches excess of the underlying insurance which, in turn, is subject to specific deductibles. Please refer to the underlying insurance policy for these amounts.

**FORMS MADE A PART OF THIS POLICY AT TIME OF ISSUE:** See CPR 2150, Applicable Forms & Endorsements

| | |
|---|---|
| **Total Premium** | $ ▮▮▮▮ |
| **Amount Payable At Inception** | $ ▮▮▮▮ |

Authorized Signature

MB  8/28/2020

FRPR 100 (02/02)

Page 1 of 1

**Mt. Hawley Insurance Company**
9025 North Lindbergh Drive, Peoria, IL 61615

## SUPPLEMENTAL DECLARATIONS

Policy No:  MCP0170029

Named Insured and Mailing Address

Spring Mountain Vineyard, Inc.
2805 Spring Mountain Road
St. Helena, CA 94574

Portion of premium attributable to coverage for Certified Acts of Terrorism          $N.A. - Coverage Rejected by Insured

Portion of premium attributable to coverage for Certified Acts of Terrorism
(fire only),  as required by state law

RIL 110B (01/08)

Policy Number: MCP0170029                                    Mt. Hawley Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# APPLICABLE FORMS & ENDORSEMENTS

FORMS AND ENDORSEMENTS LISTED BELOW APPLY TO AND ARE MADE PART OF THIS POLICY AT TIME OF ISSUE.

| | |
|---|---|
| RIL-110B(01/08) | Supplemental Declarations |
| CPR-2002(02/14) | Excess Property Coverage |
| CPR-2200(10/01) | Loss Payee/Additional Insured Endorsement |
| CPR-2212(03/02) | Additional Named Insureds |
| CPR-2273(04/12) | Minimum Earned Premium Endorsement |
| CPR-2276(04/12) | Non-Payment Of Premium |
| CPR-2281(12/14) | Nuclear, Biological, Chemical, or Radioactive Exclusion |
| CPR-2126(10/01) | Limitation of Liability Endorsement |
| CPR-2133(10/01) | Absolute Pollution Exclusion Endorsement |
| CPR-2230(03/08) | Terrorism Exclusion |
| CPR-2269(06/09) | Asbestos Exclusion |
| CPR-2295(04/20) | Windstorm Or Hail Loss Reporting Limitation Addendum |
| CPR-2309(03/20) | Exclusion Of Loss Due To Virus Or Bacteria |
| CPR-2310(04/20) | Appraisal |
| CPR-2311(04/20) | Legal Action Conditions Endorsement |
| CPR-2313(06/20) | Cyber And Computer Related Loss Exclusion |
| RIL-099(04/20) | Service Of Suit |
| ILF-0001C(04/16) | Signature Page |

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

CPR 2150 (10/01)                                                            Page  1 of 1

Insured

Policy Number: MCP0170029                                            Mt. Hawley Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCESS PROPERTY COVERAGE

## (Following Form)

Throughout the policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company.

**1. INSURING AGREEMENT**

In consideration of the payment of premium stated in the declarations and subject to the terms and conditions contained in our policy or endorsed hereon, we agree to insure against risks of direct physical loss or damage to covered property per the terms and conditions of the Underlying Insurance Policy listed in Item **3.B.** except as excluded herein

Total Underlying insurance may be provided by a company or companies some of which may have different conditions, limitations and exclusions than the Underlying Insurance Policy. Insurance under this policy is subject to the same conditions, limitations, and exclusions (except as mentioned herein or endorsed onto this policy) as the Underlying Insurance Policy referenced below.

The risk of uncollectibility (in whole or in part) of other insurance, whether because of financial impairment or insolvency of an underlying or other insurer or for any other reason, is expressly retained by the insured and is not in any way or under any circumstances insured or assumed by us.

**2. LIMITS OF LIABILITY**

Our limit of liability in any one occurrence for loss or damage to Covered Property arising from any one loss or disaster for all coverages and locations insured in this policy combined shall not exceed $10,000,000 part of $10,000,000 excess of $10,000,000. Additionally our limit of liability is subject to separate term aggregate limits as indicated below.

**A.** $Not Covered in any one policy term for loss or damage to Covered Property hereunder arising from flood for all coverages and locations insured hereunder combined;

**B.** $Not Covered in any one policy term for loss or damage to Covered Property hereunder arising from earthquake/earthquake sprinkler leakage for all coverages and locations insured hereunder combined.

Our percentage of participation for the layer on which we participate is 100% and our liability is limited to the same proportion for any loss hereunder. We will not pay for more than our pro rata share of the "Ultimate Net Loss" in excess of the total amount of underlying insurance indicated herein arising from any one loss or disaster.

**3. UNDERLYING INSURANCE**

**A. LIMITS**:     the total amount of Underlying Insurance is $10,000,000

plus any deductible amount or self-insured retention or similar plan beneath any underlying insurance for all property and coverages combined.

Case: 22-10381   Doc# 229   Filed: 02/02/23   Entered: 02/02/23 16:12:13   Page 58 of 167

**B.   UNDERLYING INSURANCE POLICY**:  the Underlying Insurance Policy referred to herein is provided by:

Policy No.:  ESP 2004861 00

Carrier:     First Specialty Insurance Corporation

Eff Date:   07/01/2020
Exp Date:   07/01/2021

Any revision to the policy shown above and/or other underlying policy(ies) made after the effective date of the Underlying Insurance Policy shall not be binding on this excess insurance without our consent.

**4.   APPLICATION OF UNDERLYING INSURANCE POLICY**

Our policy insures against loss or damage as per the terms and conditions of the "Underlying Insurance Policy" listed in Item **3.B.**, except that where our provisions and stipulations are more restrictive or contrary to those of the "Underlying Insurance Policy," our policy will supersede.

**5.   EXCEPTIONS TO THE UNDERLYING INSURANCE POLICY**

Our policy insures against the same perils and provides coverage in the same territory as the "Underlying Insurance Policy" listed in Item **3.B.** unless specified or restricted below:

**A.   Perils Insured**:  This policy insures against direct physical loss or damage from the following Peril(s) only. Losses from any other perils insured by the "Underlying Insurance Policy" are excluded.

Special excluding Earthquake, Flood and Equipment Breakdown, including Wildfire.

**B.   Territory**:    This policy insures property located in the following territory(ies) only. Any location outside of the stated territory(ies) is not covered regardless of whether it is listed on a schedule of locations or statement of values provided to this company. Additionally, any location within the territory(ies) indicated below which has not been submitted to the company for coverage and for which a premium has not been charged does not have coverage under this policy.

California locations as per our schedule on file received 06/29/2020

**6.   MAINTENANCE OF UNDERLYING INSURANCE**

It is a condition of our policy that the total amount of Underlying Insurance specified in Item **3.A.** be maintained in full force and effect during the currency of our policy.

The total amount of underlying insurance will be deemed applicable even in the event of:

CPR 2002 (02/14)                                                                                                    Page 2 of 4

Insured

**A.** Your failure to comply with any condition of any underlying insurance policy;

**B.** Insolvency of any insurer providing underlying insurance;

**C.** Cancellation or endorsement of any policy or part of a policy providing underlying insurance to our policy;

**D.** Reduction or exhaustion of any limits, sub-limits, or aggregate Limits of Insurance or deductible or self-insured retention plans of any policy providing underlying insurance to our policy, by reason of losses paid or incurred thereunder.

## 7. LOSS PAYMENT

Liability under our policy for our share of the "Ultimate Net Loss" will not attach until the underlying insurer(s) have paid, admitted liability for, or have been held legally liable for the full amount of their respective participations of the "Ultimate Net Loss." But in no event shall the "Ultimate Net Loss" exceed the less of the following:

**A.** Actual adjusted amount of loss;

**B.** Total stated value for the property lost or damaged, as shown on the latest statement of values on file with us;

**C.** Your financial interest.

## 8. DEFINITION

"Ultimate Net Loss" means the actual loss or damage sustained by you (including any Deductible or self-insured retention amount) as a direct result of the perils insured against and the coverages provided for in our policy to Covered Property hereunder arising from any one loss or disaster, after making Deductions for salvage, subrogation and recoveries from any source other than our policy and the underlying and excess insurance policies.

## 9. CHANGES

Notice to or knowledge possessed by any agent or other person will not constitute a waiver or change in any part of this policy or stop us from asserting any rights under the terms of our policy. The terms of this policy cannot be waived or changed, except by endorsement issued to form a part of this policy.

## 10. CANCELLATIONS

**A.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation stating when thereafter the cancellation will be effective.

**B.** If we cancel this policy for nonpayment of premium, we will give you notice at least 10 days before the cancellation is effective. If we cancel this policy for any other reason, we will give you notice at least 30 days in advance of cancellation.

**C.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**D.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**E.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be computed pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

Case: 22-10381   Doc# 229   Filed: 02/02/23   Entered: 02/02/23 16:12:13   Page 60 of
Insured   167

**11.  SALVAGE AND RECOVERIES**

All salvages, recoveries and payments excluding proceeds from underlying and excess insurance and subrogation, recovered or received subsequent to a loss settlement under our policy will be applied as if recovered or received prior to such settlement and all necessary adjustments will be made between you and us.

**12.  SOLE AGENT**

The insured first named in the Declarations is authorized to act on behalf of all insureds with respect to giving or receiving notice of cancellation, receiving unearned premium, and agreeing to any changes in our policy.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Insured

Policy Number: MCP0170029                                    Mt. Hawley Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYEE/ADDITIONAL INSURED ENDORSEMENT

Loss payee(s) and/or additional insured(s) are added as follows:

**LOSS PAYEE**

Cresco Equipment Rentals
800 E. Airway Blvd.
Livermore, CA  94551-0000


CNH Capital
PO Box 3600
Lancaster, PA  17604-0000


AT&T Capital Services, Inc.
2000 W. AT&T Center Drive
Hoffman Estates, IL  60192-0000
#As Respects:  2805 Spring Mt. Rd, St. Helena, CA


BCT Solutions
1240 Century Court, Suite A
Santa Rosa, CA  95403-0000
#As Respects: Rented/Leased Equipment


Blueline Rental LLC
8401 New Trails Drive Ste. 150
The Woodlands, TX  77381-0000
#As Respects: Rented/Leased Equipment


**ADDITIONAL INSURED**

MGG California, LLC As Collateral Agent ISAOA
One Penn Plaza, Suite 5320
New York, NY  10119-0000
#As Respects: 2805 Spring Mt. Rd, St Helena, CA


**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

CPR 2200 (10/01)                                              Page 1 of 1

Policy Number:  MCP0170029     Mt. Hawley Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL NAMED INSUREDS

The following are added to this policy as Named Insureds:

Spring Mountain Vineyard, INC.
Chateau Chevalier
Good Wine Company, A Delaware Corp

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

CPR 2212 (03/02)     Page 1 of 1
Insured

Policy Number:   MCP0170029                                                    Mt. Hawley Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ASBESTOS EXCLUSION

It is agreed that this policy does not insure against loss or damage arising from asbestos material, including but not limited to costs or expenses incurred by the Insured as a result of any of the following:

**(1)** asbestos material removal, containment, or other abatement;

**(2)** demolition or increased cost of construction, repair, debris removal, or loss of use necessitated by the enforcement of any law or ordinance regulating asbestos material; and/or

**(3)** any governmental direction or request declaring that such asbestos material present in or part of or utilized on any undamaged portion of the insured's property can no longer be used for the purpose for which it was intended or installed and must be removed or modified;

Nor does any coverage provided by this policy apply to payment for the investigation or defense of any loss, damage or any cost, loss of use expense, fine or penalty or for any expense or claim or suit related to any of the above.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

CPR 2269 (06/09)                                                                           Page 1 of 1

Insured

Policy Number:  MCP0170029         Mt. Hawley Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIMITATION OF LIABILITY ENDORSEMENT

The following special terms and conditions apply to this policy:

**A.** The Limit of Insurance or amount of insurance shown in the Declarations page of this policy is a limit or amount per occurrence, except for "earthquake" and "flood," if covered, where an annual aggregate applies. We will not pay more than this limit or amount in one disaster, casualty, or event, no matter how many locations are involved.

**B.** The premium for this policy is based on the schedule or statement of values on file with us or attached to this policy. If there is a loss under this policy, we will not pay more than the least of the following:

    **1.** The actual adjusted amount of loss, minus the deductible(s) that applies;

    **2.** The Limit of Insurance or amount of insurance per occurrence shown in the Declarations page of this policy or endorsed onto this policy; or

    **3.** The stated value for the specific property involved in the loss as shown on the latest statement of values on file with us, minus the deductible(s) that applies.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Insured

Policy Number:  MCP0170029                                          Mt. Hawley Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ABSOLUTE POLLUTION EXCLUSION ENDORSEMENT

This endorsement replaces any existing terms and/or exclusions regarding pollution liability within this policy.

We will not pay for loss, damage, cost or expense caused directly or indirectly by any of the following. Such loss, damage, cost or expense is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:

**A.** Property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of "pollutants," or contaminants;

    **1.** At or from premises owned, leased, rented or occupied by you,

    **2.** At or from any site or location used by or for you or others for the handling, storage, disposal, processing or treatment of waste,

    **3.** Which are at any time transported, handled, stored, treated, disposed of or processed as waste by or for you or any person or organization for whom you may be legally responsible, or,

    **4.** At or from any site or location on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations;

        **a.** If the "pollutants" are brought on or to the site or location in connection with such operations, or

        **b.** If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the "pollutants."

**B.** Any loss, damage, cost or expense arising out of any governmental direction or request that you test for, monitor, clean up, treat, remove, detoxify or neutralize "pollutants" or in any way respond to or assess the effects of "pollutants."

This includes loss or damage caused by or resulting from contributing to or made worse by actual, alleged or threatened release, discharge, escape or dispersal of contaminants and/or pollutants, all of which direct or indirect, proximate or remote, or in whole or in part, caused by, contributed to, or aggravated by any damage insured by the policy.

**"Pollutants"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. In addition to "pollutants" to be disposed of, waste also includes materials to be recycled, reconditioned or reclaimed. It also includes any material which after its release, dispersal or discharge, can cause or threaten damage to human health and/or human welfare, or causes or threatens damage, deteriorations, loss of value, marketability and/or loss of use, to insured property; including, but not limited to bacteria, fungi, virus, or hazardous substances as listed in the Federal Pollution Control Act, Clean Air Act, Resource Conservation and Recovery Act of 1976 and/or Toxic Substances Control Act or as designated by the U.S. Environmental Protection Agency.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

CPR 2133 (10/01)                                                                                         Page 1 of 1

Insured

Policy Number: MCP0170029                                    Mt. Hawley Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TERRORISM EXCLUSION

1.  We will not pay for loss, damage, cost or expense caused directly or indirectly by "terrorism" including "certified acts of terrorism," as defined in the Terrorism Risk Insurance Act, as amended, unless specifically provided by endorsement to this policy or any action taken to control, prevent, or suppress terrorism. Such loss, damage, cost or expense is excluded regardless of any other cause or event that contributes concurrently or in any sequence to this loss.

2.  The following definition is added and applies under this endorsement wherever the term "terrorism" is used.

    "Terrorism" means activities against persons, organizations or property of any nature:

    A.  That involve the following or preparation for the following:

        1.  Use or threat of force or violence; or

        2.  Commission or threat of a dangerous act; or

        3.  Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

    B.  When one or both of the following applies:

        1.  The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

        2.  It appears that the intent is to intimidate or coerce a government, or to further polictical, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

3.  Fire Exception

    The following provision applies only where relevant state law requires coverage for fire losses resulting from acts of terrorism, and where a premium for such has been paid.

    If an act of terrorism results in fire, we will pay for the loss or damage caused by that fire. This exception for fire applies only to direct loss or damage by fire to covered property. This exception does not apply to coverage for business income, extra expense, or fire legal liability.

4.  Neither the terms of this endorsement nor the terms of any other terrorism endorsement attached to this policy provide coverage for any loss that would otherwise be excluded by this policy under:

    A.  Exclusions that address war, military action, or nuclear hazard; or

    B.  Any other exclusion.

5.  The absence of any other terrorism endorsement does not imply coverage for any loss that would otherwise be excluded by this policy under:

    A.  Exclusions that address war, military action, or nuclear hazard; or

    B.  Any other exclusion.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Policy Number: MCP0170029                                        Mt. Hawley Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MINIMUM EARNED PREMIUM ENDORSEMENT

This endorsement changes Cancellation conditions elsewhere in the policy as follows:

This policy is subject to a minimum earned premium of 35% of the annual policy premium or $███████ whichever is greater.

When you request that the policy be cancelled, the total earned premium will be the calculated premium for the term of the policy or the minimum earned premium as calculated above, whichever is greater.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

CPR 2273 (04/12)                                                                        Page 1 of 1

Insured

Policy Number: MCP0170029                                   Mt. Hawley Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NON-PAYMENT OF PREMIUM

Your failure to make a timely payment of any premium due either at inception of this policy or for any subsequent endorsement will be considered a request by you to us to cancel the policy.

If we cancel for non-payment of premium, the minimum earned premium, as determined by the Minimum Earned Premium Endorsement included in this policy, will be immediately due and payable.

At our discretion, we may consider reinstating coverage if you pay us the full amount of premium due prior to the effective date of cancellation.

However, payment of overdue premium by you will not guarantee the reinstatement of coverage. Should we decide not to reinstate coverage, any unearned premium will be refunded accordingly.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Policy Number: MCP0170029                                         Mt. Hawley Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR, BIOLOGICAL, CHEMICAL OR RADIOACTIVE EXCLUSION

We will not pay for loss, damage, cost, or expense directly or indirectly from:

**1)**   The use or threatened use of nuclear, biological, chemical, radioactive substances or the like, however caused.

**2)**   The accidental discharge of nuclear, biological, chemical, radioactive substances or the like, however caused.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Insured

Policy Number: MCP0170029                                          Mt. Hawley Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WINDSTORM OR HAIL LOSS REPORTING LIMITATION ADDENDUM

Regardless of anything to the contrary in the policy to which this endorsement is attached, the following limitations apply in reference to reporting of claims under this policy:

With respect to loss or damage caused by windstorm or hail, including any named storm, you must give us prompt notice of the loss or damage and include a description of the property involved, and as soon as possible give us a description of how, when and where the loss or damage occurred.  In no event may a claim be filed with us later than one year after the date of the loss or damage that is the subject of the claim.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

CPR 2295 (04/20)                                                                            Page 1 of 1

Policy Number: MCP0170029                                    Mt. Hawley Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

**A.**   The exclusion set forth in Paragraph **B.** applies to all coverage under all forms and endorsements that comprise this policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense, action of civil authority, contingent business income, business income and/or extra expense from dependent properties, ingress and egress, or utility services.

**B.**   We will not pay for loss or damage caused directly or indirectly by or resulting from any virus, bacterium or other microorganism. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. This exclusion applies whether or not the loss event results in widespread damage or affects a substantial area.

**C.**   With respect to any loss or damage subject to the exclusion in Paragraph **B.**, the application of such exclusion supersedes the application of any exclusion relating to "pollutants".

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Policy Number: MCP0170029                                    Mt. Hawley Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# APPRAISAL

This endorsement replaces the Appraisal Condition in the coverage form.

**Appraisal**

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree on an umpire, either may request that selection be made by a judge of a federal court having jurisdiction. The appraisers will state separately the amount of loss, including an itemized determination of (1) the actual cash value for each damaged item included in the claim, and (2) the replacement cost value, if applicable under the policy, for each damaged item included in the claim. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding, and the decision must be itemized as specified in (1) and (2) above. Each party will:

**a.**   Pay its chosen appraiser; and

**b.**   Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

Under no circumstance is appraisal allowed under this policy to determine causation or the existence or non-existence of coverage. Appraisal is also not allowed where coverage for the claimed loss has been denied in its entirety. You cannot invoke appraisal after suit has been filed.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Policy Number: MCP0170029                                    Mt. Hawley Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LEGAL ACTION CONDITIONS ENDORSEMENT

This endorsement adds the following to LEGAL ACTION AGAINST US elsewhere in the policy:

All matters arising hereunder including questions related to the validity, interpretation, performance and enforcement of this Policy shall be determined in accordance with the law and practice of the State of New York (notwithstanding New York's conflicts of law rules).

It is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, any Named Insured, any additional insured, and any beneficiary hereunder shall submit to the jurisdiction of a court of competent jurisdiction in the State of New York, and shall comply with all the requirements necessary to give such court jurisdiction. Any litigation commenced by any Named Insured, any additional insured, or any beneficiary hereunder against the Company shall be initiated in New York. Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's right to remove an action to a United States District Court.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Mt. Hawley Insurance Company

# CYBER AND COMPUTER RELATED LOSS EXCLUSION

## THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED. PLEASE READ IT CAREFULLY.

**A.**  We will not pay for any loss, damage, expense, or threat, whether direct or indirect, to "computer data and related equipment":

**1.**  Arising from "computer virus" or "computer hacking";

**2.**  Caused by the transfer or delivery of covered property from a covered location or your computer to a person or place outside of a covered location on the basis of unauthorized or fraudulent instructions, including but not limited to instructions transmitted by a computer, whether or not owned by you, or via any telecommunications trans- mission method;

**3.**  Arising from electrical disturbance including electromagnetic pulse, solar flare, magnetic damage, disturbance of electronic recordings, or erasure of electronic recordings;

**4.**  Arising from power supply disturbance including interruption of power supply, power surge, blackout, or brownout;

**5.**  Arising from the failure, malfunction or inadequacy of:

**a.**  Such "computer data and related equipment" whether belonging to you or to others; or

**b.**  Any products, and any services, data or functions that directly or indirectly use or rely on, in any manner, such "computer data and related equipment" due to the inability to correctly recognize, process, distinguish, interpret, or accept one or more dates or times.

**6.**  Any actual or alleged loss of goods, money or securities resulting from "Social Engineering"; or

**7.**  Arising from any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replace- ment or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in this endorsement.

Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.

**B.**  However, if direct physical loss or damage not otherwise excluded by this policy results, then subject to all of its terms and conditions, we will only pay for the resulting direct physical loss or damage.

**C.  DEFINITIONS**

**1.**  "Computer virus" means the introduction of an electronic data processing code or other programming that:

**a.**  Results in the deletion, destruction, generation, access, or modification of data;

**b.**  Alter, contaminate, corrupt, degrade, or destroy the integrity, quality, or performance of data;

**c.**  Damage, destroy, or cause malfunction, inadequacy, degradation, or corruption of any hardware or proces- sing, recording, or storage media used with hardware; or

**d.**  Result in the denial of access to or denial of services from your computer, your computer network, or web site.

**e.**  Malware, including but not limited to, ransomware, spyware, worms, Trojan Horses, or any other harmful code or similar instruction designed to damage, destroy, disrupt, or gain access to "computer data and related equipment";

**2.** "Computer hacking" means an intrusion by an individual or group of individuals, whether employed by you or not, into "computer data and related equipment" that can:

**a.** Result in the deletion, destruction, generation, access, or modification of data;

**b.** Alter, contaminate, corrupt, degrade, or destroy the integrity, quality, or performance of data;

**c.** Result in the scanning or copying of data;

**d.** Cause damage, destruction, inadequacy, malfunction, degradation, or corruption of any hardware or processing, recording, or storage media used with hardware; or

**e.** Result in the denial of access to or denial of services from your computer, your computer network, or web site.

**3.** "Computer data and related equipment" includes the following items:

**a.** Computer hardware, including microprocessors;

**b.** Computer application software;

**c.** Computer operating systems, data, applications, code, or related software;

**d.** Computer networks, including but not limited to network facilities, cloud network, internet, intranet, and virtual private networks (VPN);

**e.** Microprocessors (computer chips) not part of any computer system;

**f.** Any other electronic equipment, communications system, or electronic device or components; or

**g.** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in items **a.** through **f.** above. This includes any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential problems with items listed in **a.** through **f.** above.

**4.** "Social Engineering" means the reliance upon a deceptive misrepresentation which you believe to be genuine.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Policy Number: MCP0170029

## Mt. Hawley Insurance Company
Peoria, Illinois 61615

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SERVICE OF SUIT ENDORSEMENT

It is agreed that service of process in any suit against the Company may be made upon the Superintendent, Commissioner, or Director of Insurance or other person specified for that purpose in the statute or his successor or successors in office as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of any Named Insured or any additional insured or any beneficiary hereunder arising out of this contract of insurance.

The Company hereby designates Craig W. Kliethermes, President,

**Mt. Hawley Insurance Company**

9025 N. Lindbergh Drive, Peoria, Illinois 61615 as the person to whom the said Superintendent, Commissioner, or Director of Insurance is authorized to mail such process or a true copy thereof, in compliance with the applicable statutes governing said service of process in the state or jurisdiction.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

# SIGNATURE PAGE

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

Corporate Secretary                                             President & COO

ILF 0001C (04/16)

Insured

Policy Number: MCP0170029                                                    Mt. Hawley Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CHANGE ENDORSEMENT

ENDORSEMENT EFFECTIVE DATE: 1/12/2021          (12:01 a.m.)          ☐ ADDITIONAL PREMIUM    $

ENDORSEMENT NUMBER:   1                                                            ☐ RETURN PREMIUM       $

INSURED NAME:                                                                              ☒ NIL                             $

Spring Mountain Vineyard, Inc.                                                   ☐                                   $

                                                                                                       ☐                                   $

                                                                                                       ☐                                   $  _____

                                                                                                                              **TOTAL**  $   Nil

IT IS UNDERSTOOD AND AGREED THAT:

| | | | | | | |
|---|---|---|---|---|---|---|
| ☐ | 1. | PREMIUM | ☒ | 7. | COVERAGE | ☐ 13. COVERAGE IS CANCELLED |
| | | | | | | ☐   SHORT RATE |
| ☐ | 2. | DEPOSIT PREMIUM | ☐ | 8. | INCEPTION DATE | ☐   PRO RATE |
| | | | | | | ☐   MINIMUM PREMIUM APPLIES |
| ☐ | 3. | MINIMUM PREMIUM | ☐ | 9. | EXPIRATION DATE | |
| ☐ | 4. | RATE | ☐ | 10. | TERMS | ☐ 14.  ADDITIONAL INSURED BUT ONLY |
| | | | | | | AS RESPECTS THE OPERATIONS |
| ☐ | 5. | INSTALLMENT | ☐ | 11. | NAME OF INSURED | OF THE NAMED INSURED |
| ☐ | 6. | AUDIT | ☐ | 12. | ADDRESS OF INSURED | |

☐  IS CHARGED FOR THE PERIOD:          ☒  IS AMENDED TO READ AS FOLLOWS:

It is agreed the following Loss Payee is added to the policy:

MGG California LLC, as Collateral Agent and its successors and/or assigns
One Penn Plaza, Suite 5320
New York, NY 10119

Revised Form, CPR-2200(10/01), Loss Payee/Additional Insured Endorsement, is attached.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

                                                                            BY:

DATE OF ISSUE:  MB  2/5/2021

Policy Number: MCP0170029                                    Mt. Hawley Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYEE/ADDITIONAL INSURED ENDORSEMENT

Loss payee(s) and/or additional insured(s) are added as follows:

**LOSS PAYEE**

Cresco Equipment Rentals
800 E. Airway Blvd.
Livermore, CA  94551-0000


CNH Capital
PO Box 3600
Lancaster, PA  17604-0000


AT&T Capital Services, Inc.
2000 W. AT&T Center Drive
Hoffman Estates, IL  60192-0000
#As Respects:  2805 Spring Mt. Rd, St. Helena, CA


BCT Solutions
1240 Century Court, Suite A
Santa Rosa, CA  95403-0000
#As Respects: Rented/Leased Equipment


Blueline Rental LLC
8401 New Trails Drive Ste. 150
The Woodlands, TX  77381-0000
#As Respects: Rented/Leased Equipment


MGG California LLC, as Collateral Agent and its successors and/or assigns
One Penn Plaza, Suite 5320
New York, NY  10119-0000


**ADDITIONAL INSURED**


**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

CPR 2200 (10/01)                                           Page 1 of 2

Policy Number:  MCP0170029                                     Mt. Hawley Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYEE/ADDITIONAL INSURED ENDORSEMENT

Loss payee(s) and/or additional insured(s) are added as follows:

MGG California, LLC As Collateral Agent ISAOA
One Penn Plaza, Suite 5320
New York, NY  10119-0000
#As Respects: 2805 Spring Mt. Rd, St Helena, CA

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

CPR 2200 (10/01)                                                        Page 2 of 2

# EXHIBIT 3



**SP 5 3 6 9 0 5 1 4**

Insurance Products underwritten by Westport Insurance Corporation, First Specialty Insurance Corporation, North American Capacity Insurance Company, North American Specialty Insurance Company, North American Elite Insurance Company, Washington International Insurance Company, or Swiss Re International S.E.

Swiss Re Corporate Solutions offers innovative, high-quality insurance capacity for single and multi-line programmes worldwide, either on a standalone basis or as part of structured and tailor-made solutions. In addition, it provides customised risk transfer solutions to mid-sized and large, multinational corporations across the globe to assist in mitigating their risk exposure. Swiss Re Corporate Solutions serves more than 50 000 customers across nearly 40 offices worldwide and is backed by the financial strength of the Swiss Re Group. For more information about Swiss Re Corporate Solutions, please visit: www.swissre.com/corporatesolutions

©2014 Swiss Re. All rights reserved.

GS 04867



# *First Specialty Insurance Corporation*

**Property Insurance Policy**
**Prepared for:**

SPRING MOUNTAIN VINEYARD, INC

GS 04868

Form PCN 3 Ed. 5/10

## POLICY NOTICE

**THIS POLICY PROVIDES NO COVERAGE FOR LOSS DUE TO TERRORISM**

In accordance with the instructions received by the Company, this policy DOES NOT provide coverage for "Insured Loss" due to a act of terrorism that is certified ("Certified Act of Terrorism") pursuant to the Terrorism Risk Insurance Act or for any other loss due to terrorism.

### APPLIES TO U.S. LOCATIONS ONLY

By accepting this Policy, the Insured and its authorized representatives acknowledge and confirm that:   (1) coverage for "Insured Loss" due to a "Certified Act of Terrorism," was offered to the Insured by the Company in writing (the "Coverage"); (2) the offer of Coverage included a clear and conspicuous statement of the proposed premium charge for the Coverage, written advice concerning the United States Government, Department of the Treasury's program for reimbursing a portion of such Insured Loss and written advice concerning the cap on insurer participation in the payment of terrorism losses; (3) the Insured does not desire to purchase the Coverage and has declined the offer; (4) no part of any premium paid to the Company by or on behalf of the Insured is for the Coverage; and (5) the Company is under no obligation to offer this coverage to the Insured again during the policy period to which this Policy applies.

GS 04869

### *First Specialty Insurance Corporation*

## IMPORTANT NOTICE:

1. **The insurance policy that you have purchased is being issued by an insurer that is not licensed by the State of California. These companies are called "nonadmitted" or "surplus line" insurers.**

2. **The insurer is not subject to the financial solvency regulation and enforcement that apply to California licensed insurers.**

3. **The insurer does not participate in any of the insurance guarantee funds created by California law. Therefore, these funds will not pay your claims or protect your assets if the insurer becomes insolvent and is unable to make payments as promised.**

4. **The insurer should be licensed either as a foreign insurer in another state in the United States or as a non-United States (alien) insurer. You should ask questions of your insurance agent, broker, or "surplus line" broker or contact the California Department of Insurance at the toll-free number 1-800-927-4357 or internet website www.insurance.ca.gov. Ask whether or not the insurer is licensed as a foreign or non-United States (alien) insurer and for additional information about the insurer. You may also visit the NAIC's internet website at www.naic.org. The NAIC—the National Association of Insurance Commissioners—is the regulatory support organization created and governed by the chief insurance regulators in the United States.**

5. **Foreign insurers should be licensed by a state in the United States and you may contact that state's department of insurance to obtain more information about that insurer. You can find a link to each state from this NAIC internet website: https://naic.org/state_web_map.htm.**

GS 04870

6.  **For non-United States (alien) insurers, the insurer should be licensed by a country outside of the United States and should be on the NAIC's International Insurers Department (IID) listing of approved nonadmitted non-United States insurers. Ask your agent, broker, or "surplus line" broker to obtain more information about that insurer.**

7.  **California maintains a "List of Approved Surplus Line Insurers (LASLI)." Ask your agent or broker if the insurer is on that list, or view that list at the internet website of the California Department of Insurance:**

    **http://www.insurance.ca.gov/01-consumers/120-company/07-lasli.cfm.**

8.  **If you, as the applicant, required that the insurance policy you have purchased be effective immediately, either because existing coverage was going to lapse within two business days or because you were required to have coverage within two business days, and you did not receive this disclosure form and a request for your signature until after coverage became effective, you have the right to cancel this policy within five days of receiving this disclosure. If you cancel coverage, the premium will be prorated and any broker's fee charged for this insurance will be returned to you**

GS 04871

# *First Specialty Insurance Corporation*

### LOSS REPORTING PROCEDURES

Welcome to  First Specialty Insurance Corporation, a member company of Swiss Re Corporate Solutions. We would like to take this opportunity to share our loss-reporting procedures.  In the event of a loss or potential loss, please immediately complete and forward a First Notice of Loss on an ACORD Loss Form.  If you do not use the ACORD Loss Form please otherwise provide the following information:

- Your Name and Contact Information (including e-mail address)
- Name of Insured/Policy Holder and/or Policy Number
- Contact Details of Insured Representative and Preferred Method of Contact
- Date of Loss
- Location of Loss
- Brief Summary of the Loss
- Contact Name(s) and e-Mail Address(es) for New Loss Acknowledgement Letter

Forward the New Loss Details by one of the following methods:

By e-mail:   ClaimsNAProperty_CorporateSolutions@swissre.com

By Mail:    First Specialty Insurance Corporation
Attention:  Corporate Solutions Claims
1200 Main Street, Suite 800
Kansas City, MO 64105

Please visit us on our website:  www.swissre.com/corporatesolutions

This notice is for information only and does not become a part or condition of the policy.

EP CRP (11/18)                                                                                      Page 1 of 1

GS 04872

# *First Specialty Insurance Corporation*

## SCHEDULE OF FORMS AND ENDORSEMENTS

### THIS SCHEDULE CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The following Parts all attach to and form a part of Policy No. ESP 2004861 00

**Form Name**

SP 4 745 0710 Schedule of Forms and Endorsements

SP 4 735 0116 Policy Declarations

SP 3 881 0307 Signature Page

SP 5 385 0215 Special Terms and Conditions Endorsement

SP 4 742 0420 Participation Endorsement

SP 4 751 0714 Occurrence Limit of Liability Endorsement

SP 4 748 0710 Sublimit(s) of Liability Endorsement

SP 4 739 0710 Miscellaneous Unnamed Locations Coverage Extension Endorsement

IL 00 17 1198 Common Policy Conditions

CP 00 90 0788 Commercial Property Conditions

CP 10 30 1012 Causes of Loss - Special Form

CP 00 10 1012 Building and Personal Property Coverage Form

CP 00 30 1012 Business Income (and Extra Expense) Coverage Form

CP 04 05 1012 Ordinance or Law Coverage

SP 4 732 0113 Building Ordinance Endorsement

CP 04 17 0607 Utility Services - Direct Damage

CP 15 45 0607 Utility Services - Time Element

SP 9 662 1214 Exclusions - Loss Due To An Act of Terrorism

SP 4 738 0110 War and Military Action Exclusion Endorsement

SP 4 741 0710 Nuclear, Chemical and Biological Exclusion Endorsement

SP 17 744 0719 Cyber Risk Exclusion

SP 4 750 0710 Hurricane Minimum Premium Endorsement

SP 5 730 1112 Duties and Requirements in the Event of Loss or Damage Endorsement

SP 4 749 0112 Economic or Trade Sanctions or United Nations Resolutions Endorsement

SP 4 747 0110 Service of Suit Clause Endorsement

SP 5 749 0714 Special Terms and Conditions for Roofs, Roofing Systems or Roof Coverings

MF 5 587 0612 Communicable Disease Exclusion

# *First Specialty Insurance Corporation*

**Policy Number:** ESP 2004861 00

## POLICY DECLARATIONS

Administrative Address: 1200 Main Street, Suite 800, Kansas City, MO 64105

Domiciliary Address: 237 East High Street, Jefferson City, MO 65102

| Named Insured & Address: | Agent/Producer Name & Address: |
|---|---|
| SPRING MOUNTAIN VINEYARD, INC<br>2805 SPRING MOUNTAIN ROAD<br>ST. HELENA, CA 94574 | BROWN & RIDING INSURANCE SERVICES, INC.<br>777 SOUTH FIGUEROA STREET, SUITE 2550<br>LOS ANGELES, CA 90017 |

**Item 1.  POLICY PERIOD:**

**Policy Effective Date:** 07/01/2020         **Policy Expiration Date:**  07/01/2021

Both dates at 12:01 A.M., Standard Time at Named Insured's Mailing Address shown above.

**Item 2.  PREMISES DESCRIBED:**

☒ **Schedule on file received by us on:** 06/25/2020         ☐ **See attached Schedule of Locations**

**Item 3.**  COVERAGES & LIMITS PROVIDED: – *Insurance at the described premises applies only for coverages for which a limit of Insurance is shown.*

| Prem. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|
| Per Item 2. "Premises Described" | ☒ Buildings<br>☒ Your Business Personal Property<br>☒ Personal Property of Others<br>☒ Business Income Including "Rental Value"<br>☐ Extra Expense | $5,000,000 Combined | Special | PD  NIL<br><br>TE  NIL |
| Per Item 2. "Premises Described" | Extra Expense | See Sublimit(s) of Liability Endorsement | Special | |

SP 4 735 0116                 Includes copyrighted material of Insurance Services Office, Inc. with its permission.                 Page 1 of 3

| OPTIONAL COVERAGES - *applicable only when entries are made in the schedule below* | | | | | | | |
|---|---|---|---|---|---|---|---|
| Prem. No. | Bldg. No. | Agreed Value | | | Inflation Guard | | ☒ Replacement Cost: |
| Per Item 2. "Premises Described" | | Exp. Date: | Coverage: | Amount: | Building: | Personal Property: | ☒ Building/ Your Bus. Per. Property ☐ Incl. "Stock" ☒ Personal Property (Others) |
| Prem. No. | Bldg. No. | Maximum Period of Indemnity | | Monthly Limit of Indemnity | Business Income Agreed Value | | Extended Period of Indemnity |
| | | | | | | | |

**Item 4.** DEDUCTIBLE(S):

All loss or damage arising out of one occurrence shall be adjusted as a single claim, and we shall not be liable unless you sustain a loss in excess of the amount designated below and then only for our share of such excess.

$100,000 Building and Personal Property Coverage and Business Income/Extra Expense coverage, if provided, combined for each occurrence insured against by this policy.

$500,000 Building and Personal Property Coverage and Business Income/Extra Expense coverage, if provided, combined for each occurrence insured against by this policy as respects Wildfire.

**Application of Deductibles** - For the purposes of applying the following provisions, "specific type of coverage" shall mean that coverage provided under Coverage Part(s) that is (are) part of this policy.

1.   Stated dollar deductibles or time exclusion deductibles which are related to a specific type of coverage shall be deducted separately with respect to such coverages.  If two or more separate deductible amounts apply to the same specific type of coverage, the total to be deducted shall be the largest applicable deductible amount arising out of one Occurrence.

2.   Deductibles which are not designated as applying to a specific type of coverage are combined deductibles and shall be deducted from the total loss arising out of one Occurrence from all applicable coverages.

SP 4 735 0116          Includes copyrighted material of Insurance Services Office, Inc. with its permission.          Page 2 of 3

Page No. 3 of 74          FSIC Policy Number ESP 2004861 00

3.    If loss arising out of one Occurrence is subject to any combination of deductibles, then the amount to be deducted shall be the larger of the following:

    a.    The deductible amounts as provided for in paragraph 1. above; or

    b.    The largest applicable combined deductible.

4.    The deductible amount(s) as determined under paragraph 3. above shall be deducted from the total loss suffered by the Insured arising out of one Occurrence regardless of the number of Locations involved, unless otherwise stated herein.

5.    Business Income deductibles expressed as a number of hours or days, and which are not otherwise more specifically defined or which are not intended to be converted into monetary equivalents, shall be applied so that in the event of physical loss or damage as insured against, the "Company" shall not be liable for the amount of Business Income loss sustained during the number of stated hours or days which immediately follow the physical loss or damage.

6.    If this policy includes **Actual Daily Value** deductibles, then the **Actual Daily Value** shall be the total 100% Business Income value that would have been earned for the Period of Recovery had no physical loss or damage occurred, divided by the number of working days in the Period of Recovery.

**Item 5.** FORMS AND ENDORSEMENTS:

Form(s) and Endorsement(s) made a part of this policy at time of issue:
**See Schedule of Forms and Endorsements**

**Item 6.** SPECIAL TERMS AND CONDITIONS:
The Policy to which these Declarations hereby attach, is modified to the extent as follows:
**See Special Terms and Conditions Endorsement**

**Item 7.** PREMIUM: – *In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.*

**GROSS PREMIUM (Our Share):**  $104,210

**Issue Date:  08/05/2020**

These Declarations together with the Coverage Declarations, Common Policy Conditions and Coverage Conditions (if applicable), Coverage Form(s) and Forms and Endorsements, if any, issued to form a part thereof, complete the above numbered policy.

| | |
|---|---|
| Premium | $104,210.00 |
| Company Fee | $0.00 |
| Broker Fee | $8,000.00 |
| Inspection Fee | $0.00 |
| State Tax | $3,126.30 |
| Stamp Fee | $260.53 |
| **Total** | **$115,596.83** |
| **CA SL Lic.#0592033** | |

SP 4 735 0116          Includes copyrighted material of Insurance Services Office, Inc. with its permission.          Page 3 of 3

Page No. 4 of 74          FSIC Policy Number ESP 2004861 00

GS 04876

**In Witness Whereof,** *the issuing Company has caused this policy to be signed officially below.*

<br/>
<br/>

_____
President

_____
Secretary

<br/>
<br/>

_____

***First Specialty Insurance Corporation***

<br/>
<br/>

# *First Specialty Insurance Corporation*

## SPECIAL TERMS AND CONDITIONS ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### Utility Services Waiting Period

If the Utility Services – Direct Damage or Utility Services – Time Element Endorsements are endorsed to this Policy, such coverage is hereby revised to include the following Waiting Period provision:

#### Utility Services Waiting Period

With respect to any Utility Services - Direct Damage or Utility Services - Time Element Endorsements, the **"interruption in utility service"** referred to in the Endorsement(s) must be in excess of <u>24</u> hours which is a continuous period of time which must elapse before there is any liability for loss under the Utility Services Endorsement(s) and then:

1. coverage shall apply only to the location(s) where the duration of such interruption is in excess of the waiting period; and

2. such loss is subject to all terms and conditions of this policy including the deductibles.

### Applicable Law; Court Jurisdiction

The laws of the State of New York, without regard to any conflict of laws rules that would cause the application of the laws of any other jurisdiction, shall govern the construction, effect, and interpretation of this insurance agreement.

The parties irrevocably submit to the exclusive jurisdiction of the Courts of the State of New York and to the extent permitted by law the parties expressly waive all rights to challenge or otherwise limit such jurisdiction.

### Minimum Earned Premium

In consideration of the premium charged and subject to the terms, exclusions, limits and conditions of this policy, not in conflict herewith, it is agreed that the minimum earned premium due to the Company is (25.0%) of the total invoiced annual policy premium, including any applicable taxes and surcharges, regardless of the actual term of this policy.

However, if this policy is canceled by the Companies prior to the expiration date, the earned premium shall be computed pro-rata and the terms and conditions of this minimum earned premium provision shall be null and void.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, or limitations of the policy to which this provision is attached other than as above stated.

### Coverage Territory Revision

The Policy Period, Coverage Territory provision of the Commercial Property Conditions attached to this Policy is hereby deleted and the following is substituted.

#### POLICY PERIOD, COVERAGE TERRITORY

Under this Coverage Part:

1. We cover loss or damage commencing:

   a. During the policy period shown in the Declarations; and

   b. Within the coverage territory.

GS 04878

    **2.**      The coverage territory is:

          **a.**      The United States of America;

          **b.**      Puerto Rico;

          **c.**      The United States Virgin Islands.

## Legal Action Against Us Revision

The Legal Action Against Us provision of the Commercial Property Conditions attached to this Policy is hereby deleted and the following is substituted.

### LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Part unless:

**1.**      There has been full compliance with all of the terms of this Coverage Part; and

**2.**      The action is brought within 12 months after the date on which the direct physical loss or damage occurred.

## Conditions Suspending Or Restricting Insurance

The Commercial Property Conditions of this Policy are hereby amended to include the following provision.

### CONDITIONS SUSPENDING OR RESTRICTING INSURANCE

Unless otherwise provided in writing added hereto we shall not be liable for loss occurring while the hazard is increased by any means within your control or knowledge.

## Certificates Wording

Please be advised that Swiss Re does not review Certificates of Insurance issued by you, or by any party, relating to this policy of insurance either for content or accuracy. Accordingly, we request that you do not provide copies of certificates to us for review or for our records. Authority is granted to you for the limited purpose of issuing unmodified ACORD 24, 27 or 28 Certificates only. It is your responsibility to see that any Certificate provides an accurate representation of the coverage form and endorsements applicable to this policy at the time the Certificate is issued. Any modification of the approved ACORD forms specifically set forth above, or the issuance of a non-approved Certificate of Insurance ACORD or other is prohibited. Certificates of Insurance may only be issued as a matter of information.

You have no authority by virtue of a Certificate or otherwise, to amend, extend or otherwise alter coverage afforded under this policy. Certificates of Insurance are never recognized as endorsements or policy change requests. You must submit a separate written request if an endorsement or policy change (including but not limited to adding additional insureds, loss payees and mortgagees and/or alteration of notice requirements for cancellation) is requested. In the event a policy change is requested, the underwriter will advise if the request is acceptable to the Company.

## Waiver Provisions

The Commercial Property Conditions of this Policy are hereby amended to include the following provision.

### WAIVER PROVISIONS

No permission affecting this insurance shall exist, or waiver of any provision be valid, unless granted herein or expressed in writing added hereto. No provision, stipulation or forfeiture shall be held to be waived by any requirement or proceeding on our part relating to appraisal or to any examination provided for herein.

**Errors and Omissions Clause**

In consideration of increased premium and subject to all terms, conditions and stipulations of this policy, not in conflict herewith, this policy is extended to cover loss or damage to property of the type covered by this policy at any location within the United States if such loss or damage is not payable under this policy solely because of the Insured's:

a.    error or unintentional omission in the description or location of property declared for coverage, which error or unintentional omission was discovered after the inception date of this policy; or

b.    error or unintentional omission in the description or location of property declared for coverage in any subsequent endorsements to this policy, which error or unintentional omission was discovered after the inception date of said endorsement; or

c.    failure through error or unintentional omission to report any location for coverage under this policy which was acquired after the inception date of this policy,

only to the extent this policy would have provided coverage had such error or unintentional omission not been made.

It is a condition of coverage under this provision that such error or unintentional omission shall be reported in writing to the Company within 5 business days after discovery.  This provision shall not be construed to provide or expand coverage at location(s) scheduled or otherwise insured herein.

No coverage will be provided under the provisions of this clause for loss or damage as insured against by the Earthquake, Flood or Boiler and Machinery endorsement(s), if any, attached to this policy.

This provision shall not increase any amounts or limits of insurance provided by this policy.

Limit of Liability - Liability for loss under this Errors and Omissions provision arising out of one Occurrence shall not exceed $100,000.

**Expediting Expense**

This policy covers the reasonable extra costs, not to exceed $100,000, for temporary repairs of property damaged and for expediting the permanent repairs or permanent replacement; whichever is less, of property damaged, as insured against by this policy, including overtime wages and the extra cost of express or other rapid means of transportation.  Expediting expenses shall not include the costs incurred by the Insured for the temporary rental of property or temporary replacement of damaged property.

**Ingress or Egress**

This policy is extended to insure against Time Element loss during the length of time, not exceeding four (4) weeks from the date of such physical damage referred to in the latter part of this sentence, when, as a direct result of physical damage of the type insured against at Described Premises or within **1 mile** of it, ingress to or egress from such Described Premises is prevented, provided the length of time access is prevented exceeds 72 hours.  The policy deductible shall apply once the waiting period triggers the coverage.

Liability for loss under this Ingress or Egress provision arising out of one Occurrence shall not exceed $100,000.

**Property In Transit Exclusion**

This policy hereby excludes Property In Transit as described in Form CP 10 30 10 12 - Causes of Loss - Special Form, Section F.1.

Case: 22-10381   Doc# 229   Filed: 02/02/23   Entered: 02/02/23 16:12:13   Page 96 of 167   GS 04880

**Wildfire Definition**

A WILDFIRE  is a partially or wholly uncontrolled wildland or wilderness fire, human or naturally caused. Wildfire, as herein defined, shall include escaped prescribed fires, brush fires, bushfires, desert fires, forest fires, grass fires, hill  fires, peat fires, vegetation fires, veld fires, and any embers arising from such fire, when such embers themselves result in covered fire loss or damage, and any smoke, soot, or ash remediation expenses as insured by this POLICY, to INSURED PROPERTY at INSURED LOCATION(S).

**Prior and Subsequent Loss**

The Company is not liable hereunder for any loss or damage:
1. occurring before the policy becomes effective; or
2. arising from an occurrence which is in progress at the time this policy becomes effective, even if such loss or damage occurs after this policy becomes effective; or
3. occurring after the expiration of this policy, except loss or damage arising from an occurrence in progress at the time this policy expires.

**Claims Notifications**

To report a claim for this policy:

**Email Address:**   ClaimsNAProperty_CorporateSolutions@swissre.com
**Fax Number:**    860.902.7149

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY SHALL REMAIN UNCHANGED.

Case: 22-10381    Doc# 229    Filed: 02/02/23    Entered: 02/02/23 16:12:13    Page 97 of GS 04881
                                                       167

# *First Specialty Insurance Corporation*

### PARTICIPATION ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

The Limit of Insurance amount(s) or any Sublimit(s) of Liability provided in the Policy Declarations and in any Coverage Part(s) or endorsements attached to this Policy represent 100% and are from ground-up.  Our share of such stated Limit(s) of Insurance or Sublimit(s) of Liability shall be restricted by the application of the "Participation" provisions as described below.

**Participation**

In the event of loss, and your expressed interest to purchase and maintain other contributing insurance, this Policy's retained proportionate share of the Limit of Insurance or any Sublimit(s) of Liability shall not exceed:

50.000% (that being $2,500,000) part of  $5,000,000, per occurrence.

The amount of loss shall be determined by the terms of this policy after the application of any deductible, coinsurance or contribution features which may be a part of this policy.  The Other Insurance provision of this policy is void as respects other participating (Program) Insurers.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY SHALL REMAIN UNCHANGED.

# *First Specialty Insurance Corporation*

## OCCURRENCE LIMIT OF LIABILITY ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

The following is hereby added to the Policy:

### Occurrence Limit of Liability

It is understood and agreed that the following special terms and conditions apply to this Policy:

1.      The limit of liability of Insurance shown herein or endorsed onto this policy, is the total Program Limit of Liability applicable to each occurrence in respect to all individual insureds or members combined. Notwithstanding any other terms and conditions of this Policy to the contrary, in no event shall the liability of the Company exceed our proportionate program share of this limit or amount irrespective of the number of locations, individual insured's or members involved.  Limits of liability are not on a per individual Insured or per member basis but rather apply regardless of the number of locations, individual Insured's or members involved.

The term "occurrence" shall mean any one loss, disaster, casualty or series of losses, disasters, or casualties, arising out of one event except as specified elsewhere in the policy with regards to flood or earthquake coverage.

When the term applies to loss or losses from the perils of tornado, cyclone, hurricane, windstorm, hail, volcanic eruption, riot, riot attending a strike, civil commotion, and vandalism and malicious mischief one event shall be construed to be all losses arising during a continuous period of 72 hours. When filing proof of loss, you may elect the moment at which the 72 hour period shall be deemed to have commenced, which shall not be earlier than the first loss to the covered property occurs and must commence within the policy term.

2.      The premium for this Policy is based upon the Statement of Values on file with us, or attached to this Policy. In the event of loss hereunder, the total Program Limit of Liability, subject to the terms of paragraph one (1) above, shall be limited to the least of the following:

   a.      The actual adjusted amount of loss, less applicable deductible(s),

   b.      The total stated value for the property involved, as shown on the latest Statement of Values on file with us, less applicable deductible(s),

   c.      The limit of Liability or Limit of Insurance shown on the face of this Policy or endorsed onto this Policy.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY SHALL REMAIN UNCHANGED.

# *First Specialty Insurance Corporation*

### SUBLIMIT(S) OF LIABILITY ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

Liability for all loss or damage arising out of one occurrence, or in the aggregate where specifically noted, shall not exceed this Policy's retained proportionate share of the Limit of Insurance or of any Sublimit(s) of Liability shown below or elsewhere in this Policy.

All limits are per occurrence unless otherwise noted.  "Annual Aggregate" shall mean liability for all losses in any one policy year as insured against by the Coverage or Sublimit whose title is set next to the limit.

### Section I

Subject to the terms and conditions of this Policy, not in conflict herewith, the sublimit(s) of liability amounts appearing in this Policy are modified only in respect to the following:

| | |
|---|---|
| **$10,000** | per occurrence and in the annual aggregate for Electronic Data as described in Form CP 00 10 10 12 - Building and Personal Property Coverage Form, Section A.4.f. |
| **$250,000** | per occurrence for Extra Expense as described in form CP 00 30 10 12 - Business Income (and Extra Expense) Coverage Form. |
| **$10,000** | per occurrence for Fire Department Service Charge as described in Form CP 00 10 10 12 - Building and Personal Property Coverage Form, Section A.4.c. |
| **$250,000** | per occurrence for any coverage provided under the Newly Acquired or Constructed Property sections of the Property and Business Income coverage forms, if any, on a combined basis - 30 Days Reporting - excluding Earthquake and Flood. |
| **$10,000** | per occurrence, not more than $250 for any one tree, shrub or plant for Outdoor Property as described in Form CP 00 10 10 12 - Building and Personal Property Coverage Form, Section A.5.e. |
| **$25,000** | per occurrence for Pollutant Cleanup and Removal as described in Form CP 00 10 10 12 - Building and Personal Property Coverage Form, Section A.4.d. |
| **$10,000** | per occurrence for Personal Effects and Property of Others as described in Form CP 00 10 10 12 - Building and Personal Property Coverage Form, Section A.5.b. |
| **$25,000** | per occurrence for Valuable Papers and Records (Other than Electronic Data) as described in Form CP 00 10 10 12 - Building and Personal Property Coverage Form, Section A.5.c. |
| **$10,000** | per occurrence for Non-Owned Detached Trailers as described in Form CP 00 10 10 12 - Building and Personal Property Coverage Form, Section A.5.f. |
| **$250,000** | or 25% of the loss, whichever is less, per occurrence for Debris Removal as described in Form CP 00 10 10 12 - Building and Personal Property Coverage Form, Section A.4.a. |
| **$25,000** | per occurrence for Additional Coverage - Limited Coverage for Fungus, Wet Rot, Dry Rot and Bacteria as described in Form CP 10 30 10 12 - Causes of Loss - Special Form, Section E. |
| **NCP** | Communicible Disease |

**Section II**

The sublimits of liability shown above are included in the overall Limit of Insurance appearing on the POLICY DECLARATIONS and shall not be considered an additional Limit of Insurance.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY SHALL REMAIN UNCHANGED.

SP 4 748 0710                                                                                          Page 2 of 2

GS 04885

## *First Specialty Insurance Corporation*

**MISCELLANEOUS UNNAMED LOCATIONS COVERAGE EXTENSION ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This Policy is hereby extended to insure against loss or damage to Miscellaneous Unnamed Locations as defined below.

**Miscellaneous Unnamed Locations** - Covered Property as insured against by this Policy at any location within the Coverage Territory which is not on described premises or shown on any applicable Schedule of Locations, to the extent of your interest in.  No coverage is provided under this provision on property while in transit or waterborne; nor while on the premises of any exhibition, exposition, fair or trade show.

Miscellaneous Unnamed Locations do not include any property insured or excluded under any other item of this Policy or under any other policy issued by us to you.  If such property is insured in whole or in part by other insurance, then this Policy shall apply only as excess insurance, and in no event as contributing insurance, and then only after all other insurance has been exhausted.

**Limit of Liability** - Liability for loss under this Miscellaneous Unnamed Locations Coverage Extension Endorsement, arising out of one occurrence, shall not exceed $100,000.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY SHALL REMAIN UNCHANGED.

GS 04886

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Case: 22-10381    Doc# 229    Filed: 02/02/23    Entered: 02/02/23 16:12:13    Page 103 of 167    GS 04887

COMMERCIAL PROPERTY

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

## A. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**1.** This Coverage Part;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this Coverage Part.

## B. CONTROL OF PROPERTY

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

## C. INSURANCE UNDER TWO OR MORE COVERAGES

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

## D. LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Part unless:

**1.** There has been full compliance with all of the terms of this Coverage Part; and

**2.** The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

## E. LIBERALIZATION

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

## F. NO BENEFIT TO BAILEE

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

## G. OTHER INSURANCE

**1.** You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

**2.** If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

## H. POLICY PERIOD, COVERAGE TERRITORY

Under this Coverage Part:

**1.** We cover loss or damage commencing:

   **a.** During the policy period shown in the Declarations; and

   **b.** Within the coverage territory.

**2.** The coverage territory is:

   **a.** The United States of America (including its territories and possessions);

   **b.** Puerto Rico; and

   **c.** Canada.

Case: 22-10381   Doc# 229   Filed: 02/02/23   Entered: 02/02/23 16:12:13   Page 104 of 167  GS 04888

**I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

**1.** Prior to a loss to your Covered Property or Covered Income.

**2.** After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

**a.** Someone insured by this insurance;

**b.** A business firm:

**(1)** Owned or controlled by you; or

**(2)** That owns or controls you; or

**c.** Your tenant.

This will not restrict your insurance.

Copyright, ISO Commercial Risk Services, Inc., 1983, 1987          **CP 00 90 07 88** ☐

FSIC Policy Number ESP 2004861 00

Case: 22-10381    Doc# 229    Filed: 02/02/23    Entered: 02/02/23 16:12:13    Page 105 of 167    GS 04889

# CAUSES OF LOSS – SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning. Refer to Section **G.** Definitions.

## A. Covered Causes Of Loss

When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

## B. Exclusions

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

   **a. Ordinance Or Law**

   The enforcement of or compliance with any ordinance or law:

   (1) Regulating the construction, use or repair of any property; or

   (2) Requiring the tearing down of any property, including the cost of removing its debris.

   This exclusion, Ordinance Or Law, applies whether the loss results from:

   (a) An ordinance or law that is enforced even if the property has not been damaged; or

   (b) The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

   **b. Earth Movement**

   (1) Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

   (2) Landslide, including any earth sinking, rising or shifting related to such event;

   (3) Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

   (4) Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

   But if Earth Movement, as described in **b.(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

   (5) Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or Volcanic Action, we will pay for the loss or damage caused by that fire, building glass breakage or Volcanic Action.

   Volcanic Action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

   (a) Airborne volcanic blast or airborne shock waves;

   (b) Ash, dust or particulate matter; or

   (c) Lava flow.

   With respect to coverage for Volcanic Action as set forth in **(5)(a)**, **(5)(b)** and **(5)(c)**, all volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

   Volcanic Action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

   This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused.

© Insurance Services Office, Inc., 2011

Page No. 18 of 74

FSIC Policy Number ESP 2004861 00

GS 04890

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e. Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

**(1)** Originates away from the described premises; or

**(2)** Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

**f. War And Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using

military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

**(1)** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

**(a)** Foundations, walls, floors or paved surfaces;

**(b)** Basements, whether paved or not; or

**(c)** Doors, windows or other openings; or

**(5)** Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **(1)**, **(3)** or **(4)**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs **(1)** through **(5)**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

**h. "Fungus", Wet Rot, Dry Rot And Bacteria**

Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.

But if "fungus", wet or dry rot or

Case: 22-10381   Doc# 229   Filed: 02/02/23   Entered: 02/02/23 16:12:13   Page 107 GS 04891
of 167

bacteria result in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

**(1)** When "fungus", wet or dry rot or bacteria result from fire or lightning; or

**(2)** To the extent that coverage is provided in the Additional Coverage, Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria, with respect to loss or damage by a cause of loss other than fire or lightning.

Exclusions **B.1.a.** through **B.1.h.** apply whether or not the loss event results in widespread damage or affects a substantial area.

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a.** Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

**(1)** Electrical or electronic wire, device, appliance, system or network; or

**(2)** Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

**(a)** Electrical current, including arcing;

**(b)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

**(c)** Pulse of electromagnetic energy; or

**(d)** Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by that fire.

**b.** Delay, loss of use or loss of market.

**c.** Smoke, vapor or gas from agricultural smudging or industrial operations.

**d.(1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals.

**(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator collision, we will pay for the loss or damage caused by that elevator collision.

**(7)** The following causes of loss to personal property:

**(a)** Dampness or dryness of atmosphere;

**(b)** Changes in or extremes of temperature; or

**(c)** Marring or scratching.

But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**e.** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**f.** Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**g.** Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

**(1)** You do your best to maintain heat in the building or structure; or

**(2)** You drain the equipment and shut off the supply if the heat is not

maintained.

**h.** Dishonest or criminal act (including theft) by you, any of your partners, members, officers, managers, employees (including temporary employees and leased workers), directors, trustees or authorized representatives, whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

This exclusion:

**(1)** Applies whether or not an act occurs during your normal hours of operation;

**(2)** Does not apply to acts of destruction by your employees (including temporary employees and leased workers) or authorized representatives; but theft by your employees (including temporary employees and leased workers) or authorized representatives is not covered.

**i.** Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**j.** Rain, snow, ice or sleet to personal property in the open.

**k.** Collapse, including any of the following conditions of property or any part of the property:

**(1)** An abrupt falling down or caving in;

**(2)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

**(3)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to **(1)** or **(2)** above.

But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

This exclusion, **k.,** does not apply:

**(a)** To the extent that coverage is provided under the Additional Coverage, Collapse; or

**(b)** To collapse caused by one or more of the following:

**(i)** The "specified causes of loss";

**(ii)** Breakage of building glass;

**(iii)** Weight of rain that collects on a roof; or

**(iv)** Weight of people or personal property.

**l.** Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion, **l.,** does not apply to damage to glass caused by chemicals applied to the glass.

**m.** Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**3.** We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a.** Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **1.** above to produce the loss or damage.

**b.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c.** Faulty, inadequate or defective:

**(1)** Planning, zoning, development, surveying, siting;

**(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**(3)** Materials used in repair, construction, renovation or remodeling; or

**(4)** Maintenance;

of part or all of any property on or off the described premises.

**4. Special Exclusions**

The following provisions apply only to the

© Insurance Services Office, Inc., 2011

FSIC Policy Number ESP 2004861 00

GS 04893

specified Coverage Forms:

**a.  Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, Or Extra Expense Coverage Form**

We will not pay for:

(1) Any loss caused by or resulting from:

(a) Damage or destruction of "finished stock"; or

(b) The time required to reproduce "finished stock".

This exclusion does not apply to Extra Expense.

(2) Any loss caused by or resulting from direct physical loss or damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

(3) Any increase of loss caused by or resulting from:

(a) Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

(b) Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period Of Indemnity Optional Coverage or any variation of these.

(4) Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

(5) Any other consequential loss.

**b.  Leasehold Interest Coverage Form**

(1) Paragraph **B.1.a.**, Ordinance Or Law, does not apply to insurance under this Coverage Form.

(2) We will not pay for any loss caused by:

(a) Your cancelling the lease;

(b) The suspension, lapse or cancellation of any license; or

(c) Any other consequential loss.

**c.  Legal Liability Coverage Form**

(1) The following exclusions do not apply to insurance under this Coverage Form:

(a) Paragraph **B.1.a.** Ordinance Or Law;

(b) Paragraph **B.1.c.** Governmental Action;

(c) Paragraph **B.1.d.** Nuclear Hazard;

(d) Paragraph **B.1.e.** Utility Services; and

(e) Paragraph **B.1.f.** War And Military Action.

(2) The following additional exclusions apply to insurance under this Coverage Form:

(a) **Contractual Liability**

We will not defend any claim or "suit", or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement. But this exclusion does not apply to a written lease agreement in which you have assumed liability for building damage resulting from an actual or attempted burglary or robbery, provided that:

(i) Your assumption of liability was executed prior to the accident; and

(ii) The building is Covered Property under this Coverage Form.

(b) **Nuclear Hazard**

We will not defend any claim or "suit", or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

**5.  Additional Exclusion**

The following provisions apply only to the specified property:

**Loss Or Damage To Products**

---

Case: 22-10381   Doc# 229   Filed: 02/02/23   Entered: 02/02/23 16:12:13   Page 110 of 167          GS 04894

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**C. Limitations**

The following limitations apply to all policy forms and endorsements, unless otherwise stated:

**1.** We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

   **a.** Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

   **b.** Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

   **c.** The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

      **(1)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

      **(2)** The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

   **d.** Building materials and supplies not attached as part of the building or

structure, caused by or resulting from theft.

However, this limitation does not apply to:

   **(1)** Building materials and supplies held for sale by you, unless they are insured under the Builders Risk Coverage Form; or

   **(2)** Business Income Coverage or Extra Expense Coverage.

   **e.** Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

   **f.** Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

   **g.** Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

      **(1)** Dampness or dryness of atmosphere or of soil supporting the vegetation;

      **(2)** Changes in or extremes of temperature;

      **(3)** Disease;

      **(4)** Frost or hail; or

      **(5)** Rain, snow, ice or sleet.

**2.** We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

   **a.** Animals, and then only if they are killed or their destruction is made necessary.

   **b.** Fragile articles such as statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

      **(1)** Glass; or

      **(2)** Containers of property held for sale.

   **c.** Builders' machinery, tools and equipment owned by you or entrusted to you, provided such property is Covered Property.

However, this limitation does not apply:

      **(1)** If the property is located on or within 100 feet of the described premises, unless the premises is insured under the Builders Risk Coverage Form; or

Case: 22-10381   Doc# 229   Filed: 02/02/23   Entered: 02/02/23 16:12:13   Page 111 GS 04895
of 167

**(2)** To Business Income Coverage or to Extra Expense Coverage.

**3.** The special limit shown for each category, **a.** through **d.**, is the total limit for loss of or damage to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are (unless a higher limit is shown in the Declarations):

**a.** $2,500 for furs, fur garments and garments trimmed with fur.

**b.** $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

**c.** $2,500 for patterns, dies, molds and forms.

**d.** $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

This limitation, **C.3.**, does not apply to Business Income Coverage or to Extra Expense Coverage.

**4.** We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire-extinguishing equipment if the damage:

**a.** Results in discharge of any substance from an automatic fire protection system; or

**b.** Is directly caused by freezing.

However, this limitation does not apply to Business Income Coverage or to Extra Expense Coverage.

**D. Additional Coverage – Collapse**

The coverage provided under this Additional Coverage, Collapse, applies only to an abrupt collapse as described and limited in **D.1.** through **D.7.**

**1.** For the purpose of this Additional Coverage, Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**2.** We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:

**a.** Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

**b.** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

**c.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

**d.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

**(1)** A cause of loss listed in **2.a.** or **2.b.;**

**(2)** One or more of the "specified causes of loss";

**(3)** Breakage of building glass;

**(4)** Weight of people or personal property; or

**(5)** Weight of rain that collects on a roof.

**3.** This **Additional Coverage – Collapse** does **not** apply to:

**a.** A building or any part of a building that is in danger of falling down or caving in;

**b.** A part of a building that is standing, even if it has separated from another part of the building; or

**c.** A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**4.** With respect to the following property:

**a.** Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

**b.** Awnings, gutters and downspouts;

**c.** Yard fixtures;

Case: 22-10381   Doc# 229   Filed: 02/02/23   Entered: 02/02/23 16:12:13   Page 112 of 167   GS 04896

d. Outdoor swimming pools;

e. Fences;

f. Piers, wharves and docks;

g. Beach or diving platforms or appurtenances;

h. Retaining walls; and

i. Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in **2.a.** through **2.d.,** we will pay for loss or damage to that property only if:

(1) Such loss or damage is a direct result of the abrupt collapse of a building insured under this Coverage Form; and

(2) The property is Covered Property under this Coverage Form.

5. If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

a. The collapse of personal property was caused by a cause of loss listed in **2.a.** through **2.d.;**

b. The personal property which collapses is inside a building; and

c. The property which collapses is not of a kind listed in **4.,** regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **5.** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

6. This Additional Coverage, Collapse, does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

7. This Additional Coverage, Collapse, will not increase the Limits of Insurance provided in this Coverage Part.

8. The term Covered Cause of Loss includes the Additional Coverage, Collapse, as described and limited in **D.1.** through **D.7.**

E. **Additional Coverage — Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria**

1. The coverage described in **E.2.** and **E.6.** only applies when the "fungus", wet or dry rot or bacteria are the result of one or more of the following causes that occur during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence:

a. A "specified cause of loss" other than fire or lightning; or

b. Flood, if the Flood Coverage Endorsement applies to the affected premises.

This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

2. We will pay for loss or damage by "fungus", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

a. Direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including the cost of removal of the "fungus", wet or dry rot or bacteria;

b. The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria; and

c. The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot or bacteria are present.

3. The coverage described under **E.2.** of this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) and Flood which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungus", wet or dry rot or bacteria continue to be present or active, or recur, in a later policy period.

4. The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of In-

surance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungus", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus", wet or dry rot or bacteria cause an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

5. The terms of this Limited Coverage do not increase or reduce the coverage provided under Paragraph **F.2.** (Water Damage, Other Liquids, Powder Or Molten Material Damage) of this Causes Of Loss form or under the Additional Coverage, Collapse.

6. The following, **6.a.** or **6.b.**, applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable Business Income and/or Extra Expense Coverage Form:

   a. If the loss which resulted in "fungus", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to loss or damage to property caused by "fungus", wet or dry rot or bacteria, then our payment under Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

   b. If a covered "suspension" of "operations" was caused by loss or damage other than "fungus", wet or dry rot or bacteria but remediation of "fungus", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

F. **Additional Coverage Extensions**

   1. **Property In Transit**

      This Extension applies only to your personal property to which this form applies.

      a. You may extend the insurance provided by this Coverage Part to apply to your personal property (other than property

in the care, custody or control of your salespersons) in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

   b. Loss or damage must be caused by or result from one of the following causes of loss:

      (1) Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

      (2) Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the roadbed.

      (3) Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

   c. The most we will pay for loss or damage under this Extension is $5,000.

   This Coverage Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

2. **Water Damage, Other Liquids, Powder Or Molten Material Damage**

   If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes. This Coverage Extension does not increase the Limit of Insurance.

3. **Glass**

   a. We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

   b. We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

   This Coverage Extension **F.3.** does not increase the Limit of Insurance.

G. **Definitions**

CP 10 30 10 12 © Insurance Services Office, Inc., 2011 **Page 9 of 10**

GS 04898

1. "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

2. "Specified causes of loss" means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

   a. Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

      (1) The cost of filling sinkholes; or

      (2) Sinking or collapse of land into man-made underground cavities.

   b. Falling objects does not include loss or damage to:

      (1) Personal property in the open; or

      (2) The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

   c. Water damage means:

      (1) Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam; and

      (2) Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe that is located off the described premises and is part of a municipal potable water supply system or municipal sanitary sewer system, if the breakage or cracking is caused by wear and tear.

But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion. Therefore, for example, there is no coverage under this policy in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

To the extent that accidental discharge or leakage of water falls within the criteria set forth in c.(1) or c.(2) of this definition of "specified causes of loss," such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the surface of the ground.

 GS 04899

COMMERCIAL PROPERTY
CP 00 10 10 12

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H.** Definitions.

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.**, and limited in **A.2.** Property Not Covered, if a Limit Of Insurance is shown in the Declarations for that type of property.

**a. Building,** meaning the building or structure described in the Declarations, including:

(1) Completed additions;

(2) Fixtures, including outdoor fixtures;

(3) Permanently installed:

(a) Machinery; and

(b) Equipment;

(4) Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

(a) Fire-extinguishing equipment;

(b) Outdoor furniture;

(c) Floor coverings; and

(d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

(5) If not covered by other insurance:

(a) Additions under construction, alterations and repairs to the building or structure;

(b) Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

**b. Your Business Personal Property** consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater:

(1) Furniture and fixtures;

(2) Machinery and equipment;

(3) "Stock";

(4) All other personal property owned by you and used in your business;

(5) Labor, materials or services furnished or arranged by you on personal property of others;

(6) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

(a) Made a part of the building or structure you occupy but do not own; and

(b) You acquired or made at your expense but cannot legally remove;

(7) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property Of Others.

**c. Personal Property Of Others** that is:

(1) In your care, custody or control; and

CP 00 10 10 12 © Insurance Services Office, Inc., 2011 **Page 1 of 16**

FSIC Policy Number ESP 2004861 00

GS 04900

**(2)** Located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater.

However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**2. Property Not Covered**

Covered Property does not include:

**a.** Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

**b.** Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

**c.** Automobiles held for sale;

**d.** Bridges, roadways, walks, patios or other paved surfaces;

**e.** Contraband, or property in the course of illegal transportation or trade;

**f.** The cost of excavations, grading, backfilling or filling;

**g.** Foundations of buildings, structures, machinery or boilers if their foundations are below:

**(1)** The lowest basement floor; or

**(2)** The surface of the ground, if there is no basement;

**h.** Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetated roof);

**i.** Personal property while airborne or waterborne;

**j.** Bulkheads, pilings, piers, wharves or docks;

**k.** Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

**l.** Retaining walls that are not part of a building;

**m.** Underground pipes, flues or drains;

**n.** Electronic data, except as provided under the Additional Coverage, Electronic Data. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data. This paragraph, **n.,** does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system;

**o.** The cost to replace or restore the information on valuable papers and records, including those which exist as electronic data. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems. Refer to the Coverage Extension for Valuable Papers And Records (Other Than Electronic Data) for limited coverage for valuable papers and records other than those which exist as electronic data;

**p.** Vehicles or self-propelled machines (including aircraft or watercraft) that:

**(1)** Are licensed for use on public roads; or

**(2)** Are operated principally away from the described premises.

This paragraph does not apply to:

**(a)** Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

**(b)** Vehicles or self-propelled machines, other than autos, you hold for sale;

**(c)** Rowboats or canoes out of water at the described premises; or

(d) Trailers, but only to the extent provided for in the Coverage Extension for Non-owned Detached Trailers; or

q. The following property while outside of buildings:

(1) Grain, hay, straw or other crops;

(2) Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, trees, shrubs or plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), all except as provided in the Coverage Extensions.

**3. Covered Causes Of Loss**

See applicable Causes Of Loss form as shown in the Declarations.

**4. Additional Coverages**

**a. Debris Removal**

(1) Subject to Paragraphs **(2)**, **(3)** and **(4)**, we will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

(2) Debris Removal does not apply to costs to:

(a) Remove debris of property of yours that is not insured under this policy, or property in your possession that is not Covered Property;

(b) Remove debris of property owned by or leased to the landlord of the building where your described premises are located, unless you have a contractual responsibility to insure such property and it is insured under this policy;

(c) Remove any property that is Property Not Covered, including property addressed under the Outdoor Property Coverage Extension;

(d) Remove property of others of a type that would not be Covered Property under this Coverage Form;

(e) Remove deposits of mud or earth from the grounds of the described premises;

(f) Extract "pollutants" from land or water; or

(g) Remove, restore or replace polluted land or water.

(3) Subject to the exceptions in Paragraph **(4)**, the following provisions apply:

(a) The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

(b) Subject to **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $5,000 at each location.

(4) We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

(a) The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

(b) The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if **(4)(a)** and/or **(4)(b)** applies, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

**(5) Examples**

The following examples assume that there is no Coinsurance penalty.

**Example 1**

| | | |
|---|---|---|
| Limit of Insurance: | $ | 90,000 |
| Amount of Deductible: | $ | 500 |
| Amount of Loss: | $ | 50,000 |
| Amount of Loss Payable: | $ | 49,500 |
| | ($50,000 − $500) | |
| Debris Removal Expense: | $ | 10,000 |
| Debris Removal Expense Payable: | $ | 10,000 |
| ($10,000 is 20% of $50,000.) | | |

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3)**.

**Example 2**

| | | |
|---|---|---|
| Limit of Insurance: | $ | 90,000 |
| Amount of Deductible: | $ | 500 |
| Amount of Loss: | $ | 80,000 |
| Amount of Loss Payable: | $ | 79,500 |
| | ($80,000 − $500) | |
| Debris Removal Expense: | $ | 40,000 |
| Debris Removal Expense Payable | | |
| Basic Amount: | $ | 10,500 |
| Additional Amount: | $ | 25,00 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000, capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($40,000) exceeds 25% of the loss payable plus the deductible ($40,000 is 50% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $40,000 = $119,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $25,000, the maximum payable under Paragraph **(4)**. Thus, the total payable for debris removal expense in this example is $35,500; $4,500 of the debris removal expense is not covered.

**b. Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for service at each premises described in the Declarations, unless a higher limit is shown in the Declarations. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This Additional Coverage applies to your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

No Deductible applies to this Additional Coverage.

**d. Pollutant Clean-up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing

within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

**e. Increased Cost Of Construction**

(1) This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

(2) In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in **e.(3)** through **e.(9)** of this Additional Coverage.

(3) The ordinance or law referred to in **e.(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises and is in force at the time of loss.

(4) Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

(a) You were required to comply with before the loss, even when the building was undamaged; and

(b) You failed to comply with.

(5) Under this Additional Coverage, we will not pay for:

(a) The enforcement of or compliance with any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation

of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

(b) Any costs associated with the enforcement of or compliance with an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

(6) The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable Coinsurance percentage.

The amount payable under this Additional Coverage is additional insurance.

(7) With respect to this Additional Coverage:

(a) We will not pay for the Increased Cost of Construction:

(i) Until the property is actually repaired or replaced at the same or another premises; and

(ii) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

(b) If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost

of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the same premises.

(c) If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

**(9)** The costs addressed in the Loss Payment and Valuation Conditions and the Replacement Cost Optional Coverage, in this Coverage Form, do not include the increased cost attributable to enforcement of or compliance with an ordinance or law. The amount payable under this Additional Coverage, as stated in **e.(6)** of this Additional Coverage, is not subject to such limitation.

**f.   Electronic Data**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Property Not Covered, Electronic Data. This Additional Coverage does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

**(2)** Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

**(3)** The Covered Causes of Loss applicable to Your Business Personal Property apply to this Additional Coverage, Electronic Data, subject to the following:

(a) If the Causes Of Loss — Special Form applies, coverage under this Additional Coverage, Electronic Data, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

(b) If the Causes Of Loss — Broad Form applies, coverage under this Additional Coverage, Electronic Data, includes Collapse as set forth in that form.

(c) If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Electronic Data.

(d) The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

**(4)** The most we will pay under this Additional Coverage, Electronic Data, is $2,500 (unless a higher limit is shown in the Declarations) for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust

this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**5. Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

If a Coinsurance percentage of 80% or more, or a Value Reporting period symbol, is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**a. Newly Acquired Or Constructed Property**

**(1) Buildings**

If this policy covers Building, you may extend that insurance to apply to:

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at locations, other than the described premises, intended for:

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**(2) Your Business Personal Property**

**(a)** If this policy covers Your Business Personal Property, you may extend that insurance to apply to:

**(i)** Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions; or

**(ii)** Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

**(b)** This Extension does not apply to:

**(i)** Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

**(ii)** Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

**(3) Period Of Coverage**

With respect to insurance provided under this Coverage Extension for Newly Acquired Or Constructed Property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

**b. Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

**(1)** Personal effects owned by you, your officers, your partners or members, your managers or your employees. This Extension does not apply to loss or damage by theft.

**(2)** Personal property of others in your care, custody or control.

---

**CP 00 10 10 12**     © Insurance Services Office, Inc., 2011     **Page 7 of 16**

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**c. Valuable Papers And Records (Other Than Electronic Data)**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist. But this Extension does not apply to valuable papers and records which exist as electronic data. Electronic data has the meaning described under Property Not Covered, Electronic Data.

**(2)** If the Causes Of Loss — Special Form applies, coverage under this Extension is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(3)** If the Causes Of Loss — Broad Form applies, coverage under this Extension includes Collapse as set forth in that form.

**(4)** Under this Extension, the most we will pay to replace or restore the lost information is $2,500 at each described premises, unless a higher limit is shown in the Declarations. Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist) and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and, therefore, coverage of such costs is not additional insurance.

**d. Property Off-premises**

**(1)** You may extend the insurance provided by this Coverage Form to apply to your Covered Property while it is away from the described premises, if it is:

**(a)** Temporarily at a location you do not own, lease or operate;

**(b)** In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or

**(c)** At any fair, trade show or exhibition.

**(2)** This Extension does not apply to property:

**(a)** In or on a vehicle; or

**(b)** In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

**(3)** The most we will pay for loss or damage under this Extension is $10,000.

**e. Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), trees, shrubs and plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

Subject to all aforementioned terms and limitations of coverage, this Coverage Extension includes the expense of removing from the described premises the debris of trees, shrubs and plants which are the property of others, except in the situation in which you are a tenant and such property is owned by the landlord of the described premises.

**f. Non-owned Detached Trailers**

**(1)** You may extend the insurance that applies to Your Business Personal

Case: 22-10381   Doc# 229   Filed: 02/02/23   Entered: 02/02/23 16:12:13   Page 123 **GS 04907**
of 167

Property to apply to loss or damage to trailers that you do not own, provided that:

(a) The trailer is used in your business;

(b) The trailer is in your care, custody or control at the premises described in the Declarations; and

(c) You have a contractual responsibility to pay for loss or damage to the trailer.

(2) We will not pay for any loss or damage that occurs:

(a) While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

(b) During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

(3) The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

(4) This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

g. **Business Personal Property Temporarily In Portable Storage Units**

(1) You may extend the insurance that applies to Your Business Personal Property to apply to such property while temporarily stored in a portable storage unit (including a detached trailer) located within 100 feet of the building or structure described in the Declarations or within 100 feet of the premises described in the Declarations, whichever distance is greater.

(2) If the applicable Covered Causes of Loss form or endorsement contains a limitation or exclusion concerning loss or damage from sand, dust, sleet, snow, ice or rain to property in a structure, such limitation or exclusion also applies to property in a portable storage unit.

(3) Coverage under this Extension:

(a) Will end 90 days after the business personal property has been placed in the storage unit;

(b) Does not apply if the storage unit itself has been in use at the described premises for more than 90 consecutive days, even if the business personal property has been stored there for 90 or fewer days as of the time of loss or damage.

(4) Under this Extension, the most we will pay for the total of all loss or damage to business personal property is $10,000 (unless a higher limit is indicated in the Declarations for such Extension) regardless of the number of storage units. Such limit is part of, not in addition to, the applicable Limit of Insurance on Your Business Personal Property. Therefore, payment under this Extension will not increase the applicable Limit of Insurance on Your Business Personal Property.

(5) This Extension does not apply to loss or damage otherwise covered under this Coverage Form or any endorsement to this Coverage Form or policy, and does not apply to loss or damage to the storage unit itself.

Each of these Extensions is additional insurance unless otherwise indicated. The Additional Condition, Coinsurance, does not apply to these Extensions.

**B. Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**C. Limits Of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

The most we will pay for loss or damage to out door signs, whether or not the sign is attached to a building, is $2,500 per sign in any one occurrence.

The amounts of insurance stated in the following Additional Coverages apply in accordance with the terms of such coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage:

1. Fire Department Service Charge;

2. Pollutant Clean-up And Removal;

Case: 22-10381    Doc# 229    Filed: 02/02/23    Entered: 02/02/23 16:12:13    Page 124 of 167    GS 04908

**3.** Increased Cost Of Construction; and

**4.** Electronic Data.

Payments under the Preservation Of Property Additional Coverage will not increase the applicable Limit of Insurance.

**D. Deductible**

In any one occurrence of loss or damage (here-inafter referred to as loss), we will first reduce the amount of loss if required by the Co-insurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and sep-arate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

**Example 1**

(This example assumes there is no Coinsurance penalty.)

| | | |
|---|---|---|
| Deductible: | $ | 250 |
| Limit of Insurance – Building 1: | $ | 60,000 |
| Limit of Insurance – Building 2: | $ | 80,000 |
| Loss to Building 1: | $ | 60,100 |
| Loss to Building 2: | $ | 90,000 |

The amount of loss to Building 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Building 1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Building 1:

| | | |
|---|---|---|
| $ | 60,100 | |
| – | 250 | |
| $ | 59,850 | Loss Payable – Building 1 |

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Building 2. Loss pay-able for Building 2 is the Limit of Insurance of $80,000.

Total amount of loss payable:

$59,850 + $80,000 = $139,850

**Example 2**

(This example, too, assumes there is no Coinsur-ance penalty.)

The Deductible and Limits of Insurance are the same as those in Example 1.

| | | |
|---|---|---|
| Loss to Building 1: | $ | 70,000 |
| (Exceeds Limit of Insurance plus Deductible) | | |
| Loss to Building 2: | $ | 90,000 |
| (Exceeds Limit of Insurance plus Deductible) | | |
| Loss Payable – Building 1: | $ | 60,000 |
| (Limit of Insurance) | | |
| Loss Payable – Building 2: | $ | 80,000 |
| (Limit of Insurance) | | |
| Total amount of loss payable: | $ | 140,000 |

**E. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Com-mercial Property Conditions:

**1. Abandonment**

There can be no abandonment of any prop-erty to us.

**2. Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties In The Event Of Loss Or Damage**

**a.** You must see that the following are done in the event of loss or damage to Covered Property:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a de-scription of how, when and where the loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further

damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4.** **Loss Payment**

**a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

**b.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**c.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**d.** We will not pay you more than your financial interest in the Covered Property.

**e.** We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

**(1)** We have reached agreement with you on the amount of loss; or

**(2)** An appraisal award has been made.

**h.** A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will

Case: 22-10381   Doc# 229   Filed: 02/02/23   Entered: 02/02/23 16:12:13   Page 126 **GS 04910**
of 167

pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance, the Valuation and Coinsurance Conditions and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

**5. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**6. Vacancy**

**a. Description Of Terms**

(1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

(a) When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

(b) When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

(i) Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/or

(ii) Used by the building owner to conduct customary operations.

(2) Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

(1) We will not pay for any loss or damage caused by any of the following, even if they are Covered Causes of Loss:

(a) Vandalism;

(b) Sprinkler leakage, unless you have protected the system against freezing;

(c) Building glass breakage;

(d) Water damage;

(e) Theft; or

(f) Attempted theft.

(2) With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**7. Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

a. At actual cash value as of the time of loss or damage, except as provided in **b., c., d.** and **e.** below.

b. If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

However, the following property will be valued at the actual cash value, even when attached to the building:

(1) Awnings or floor coverings;

(2) Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

(3) Outdoor equipment or furniture.

c. "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

d. Glass at the cost of replacement with safety-glazing material **if** required by law.

e. Tenants' Improvements and Betterments at:

    (1) Actual cash value of the lost or damaged property if you make repairs promptly.

    (2) A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

        (a) Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

        (b) Divide the amount determined in **(a)** above by the number of days from the installation of improvements to the expiration of the lease.

        If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

    (3) Nothing if others pay for repairs or replacement.

**F. Additional Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1. Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies:

a. We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

    (1) Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

    (2) Divide the Limit of Insurance of the property by the figure determined in Step **(1)**;

    (3) Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step **(2)**; and

    (4) Subtract the deductible from the figure determined in Step **(3)**.

We will pay the amount determined in Step **(4)** or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example 1 (Underinsurance)**

| When: | The value of the property is: | $ 250,000 |
|---|---|---|
| | The Coinsurance percentage for it is: | 80% |
| | The Limit of Insurance for it is: | $ 100,000 |
| | The Deductible is: | $ 250 |
| | The amount of loss is: | $ 40,000 |

| Step **(1)**: | $250,000 x 80% = $200,000 |
|---|---|
| | (the minimum amount of insurance to meet your Coinsurance requirements) |
| Step **(2)**: | $100,000 ÷ $200,000 = .50 |
| Step **(3)**: | $40,000 x .50 = $20,000 |
| Step **(4)**: | $20,000 − $250 = $19,750 |

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example 2 (Adequate Insurance)**

| When: | The value of the property is: | $ 250,000 |
|---|---|---|
| | The Coinsurance percentage for it is: | 80% |
| | The Limit of Insurance for it is: | $ 200,000 |
| | The Deductible is: | $ 250 |
| | The amount of loss is: | $ 40,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this example is adequate, and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

b. If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example 3**

| When: | The value of the property is: | |
|---|---|---|
| | Building at Location 1: | $ 75,000 |

GS 04912

| | | |
|---|---|---|
| Building at Location 2: | $ | 100,000 |
| Personal Property at Location 2: | $ | 75,000 |
| | $ | 250,000 |
| The Coinsurance percentage for it is: | | 90% |
| The Limit of Insurance for Buildings and Personal Property at Locations 1 and 2 is: | $ | 180,000 |
| The Deductible is: | $ | 1,000 |
| Building at Location 2: | $ | 30,000 |
| Personal Property at Location 2: | $ | 20,000 |
| | $ | 50,000 |

Step **(1):** $250,000 x 90% = $225,000

(the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step **(2):** $180,000 ÷ $225,000 = .80

Step **(3):** $50,000 x .80 = $40,000

Step **(4):** $40,000 − $1,000 = $39,000

We will pay no more than $39,000. The remaining $11,000 is not covered.

**2. Mortgageholders**

**a.** The term mortgageholder includes trustee.

**b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

**(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substan-

tial change in risk known to the mortgageholder.

All of the terms of this Coverage Part will then apply directly to the mortgageholder.

**e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)** The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**G. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item:

**1. Agreed Value**

**a.** The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

**b.** If the expiration date for this Optional Coverage shown in the Declarations is

Case: 22-10381   Doc# 229   Filed: 02/02/23   Entered: 02/02/23 16:12:13   Page 129 **GS 04913** of 167

not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

**c.** The terms of this Optional Coverage apply only to loss or damage that occurs:

(1) On or after the effective date of this Optional Coverage; and

(2) Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

**2. Inflation Guard**

**a.** The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

**b.** The amount of increase will be:

(1) The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

(2) The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

(3) The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

**Example**

If: The applicable Limit of Insurance is:  $100,000
The annual percentage increase is:  8%
The number of days since the beginning of the policy year (or last policy change) is:  146
The amount of increase is:
$100,000 x .08 x 146 ÷ 365 =  $  3,200

**3. Replacement Cost**

**a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.

**b.** This Optional Coverage does not apply to:

(1) Personal property of others;

(2) Contents of a residence;

(3) Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; or

(4) "Stock", unless the Including "Stock" option is shown in the Declarations.

Under the terms of this Replacement Cost Optional Coverage, tenants' improvements and betterments are not considered to be the personal property of others.

**c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

**d.** We will not pay on a replacement cost basis for any loss or damage:

(1) Until the lost or damaged property is actually repaired or replaced; and

(2) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

With respect to tenants' improvements and betterments, the following also apply:

(3) If the conditions in **d.(1)** and **d.(2)** above are not met, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set forth in the Valuation Loss Condition of this Coverage Form; and

(4) We will not pay for loss or damage to tenants' improvements and betterments if others pay for repairs or replacement.

**e.** We will not pay more for loss or damage on a replacement cost basis than the least of (1), (2) or (3), subject to **f.** below:

(1) The Limit of Insurance applicable to the lost or damaged property;

(2) The cost to replace the lost or damaged property with other property;

Case: 22-10381   Doc# 229   Filed: 02/02/23   Entered: 02/02/23 16:12:13   Page 130 of 167          GS 04914

**(a)** Of comparable material and quality; and

**(b)** Used for the same purpose; or

**(3)** The amount actually spent that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost described in **e.(2)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

**f.** The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**4. Extension Of Replacement Cost To Personal Property Of Others**

**a.** If the Replacement Cost Optional Coverage is shown as applicable in the Declarations, then this Extension may also be shown as applicable. If the Declarations show this Extension as applicable, then Paragraph **3.b.(1)** of the Replacement Cost Optional Coverage is deleted and all other provisions of the Replacement Cost Optional Coverage apply to replacement cost on personal property of others.

**b.** With respect to replacement cost on the personal property of others, the following limitation applies:

If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

**H. Definitions**

**1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**3.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

© Insurance Services Office, Inc., 2011

FSIC Policy Number ESP 2004861 00

GS 04915

# BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F.** Definitions.

## A. Coverage

### 1. Business Income

Business Income means the:

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

**b.** Continuing normal operating expenses incurred, including payroll.

For manufacturing risks, Net Income includes the net sales value of production.

Coverage is provided as described and limited below for one or more of the following options for which a Limit Of Insurance is shown in the Declarations:

**(1)** Business Income Including "Rental Value".

**(2)** Business Income Other Than "Rental Value".

**(3)** "Rental Value".

If option **(1)** above is selected, the term Business Income will include "Rental Value". If option **(3)** above is selected, the term Business Income will mean "Rental Value" only.

If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in

a vehicle, the described premises include the area within 100 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises means:

**(a)** The portion of the building which you rent, lease or occupy;

**(b)** The area within 100 feet of the building or within 100 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

**(c)** Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

### 2. Extra Expense

**a.** Extra Expense Coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income Coverage applies at that premises.

**b.** Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

We will pay Extra Expense (other than the expense to repair or replace property) to:

**(1)** Avoid or minimize the "suspension" of business and to continue

operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.

**(2)** Minimize the "suspension" of business if you cannot continue "operations".

We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

**3. Covered Causes Of Loss, Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**4. Additional Limitation — Interruption Of Computer Operations**

**a.** Coverage for Business Income does not apply when a "suspension" of "operations" is caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage, Interruption Of Computer Operations.

**b.** Coverage for Extra Expense does not apply when action is taken to avoid or minimize a "suspension" of "operations" caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage, Interruption Of Computer Operations.

**c.** Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**d.** This Additional Limitation does not apply when loss or damage to electronic data involves only electronic data which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

**5. Additional Coverages**

**a. Civil Authority**

In this Additional Coverage, Civil Authority, the described premises are premises to which this Coverage Form applies, as shown in the Declarations.

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

**(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

**(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

**(1)** Four consecutive weeks after the date of that action; or

**(2)** When your Civil Authority Coverage for Business Income ends;

whichever is later.

Case: 22-10381   Doc# 229   Filed: 02/02/23   Entered: 02/02/23 16:12:13   Page 133 of 167            GS 04917

**b. Alterations And New Buildings**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur due to direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss to:

**(1)** New buildings or structures, whether complete or under construction;

**(2)** Alterations or additions to existing buildings or structures; and

**(3)** Machinery, equipment, supplies or building materials located on or within 100 feet of the described premises and:

  **(a)** Used in the construction, alterations or additions; or

  **(b)** Incidental to the occupancy of new buildings.

If such direct physical loss or damage delays the start of "operations", the "period of restoration" for Business Income Coverage will begin on the date "operations" would have begun if the direct physical loss or damage had not occurred.

**c. Extended Business Income**

**(1) Business Income Other Than "Rental Value"**

If the necessary "suspension" of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

  **(a)** Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

  **(b)** Ends on the earlier of:

   **(i)** The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or

   **(ii)** 60 consecutive days after the date determined in **(1)(a)** above.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**(2) "Rental Value"**

If the necessary "suspension" of your "operations" produces a "Rental Value" loss payable under this policy, we will pay for the actual loss of "Rental Value" you incur during the period that:

  **(a)** Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

  **(b)** Ends on the earlier of:

   **(i)** The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct physical loss or damage had occurred; or

   **(ii)** 60 consecutive days after the date determined in **(2)(a)** above.

However, Extended Business Income does not apply to loss of "Rental Value" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of "Rental Value" must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**d. Interruption Of Computer Operations**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Additional Limitation — Interruption Of Computer Operations.

---

**(2)** Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of electronic data due to a Covered Cause of Loss. However, we will not provide coverage under this Additional Coverage when the Additional Limitation — Interruption Of Computer Operations does not apply based on Paragraph **A.4.d.** therein.

**(3)** With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

**(a)** If the Causes Of Loss — Special Form applies, coverage under this Additional Coverage, Interruption Of Computer Operations, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(b)** If the Causes Of Loss — Broad Form applies, coverage under this Additional Coverage, Interruption Of Computer Operations, includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Interruption Of Computer Operations.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, maintain, repair or replace that system.

**(4)** The most we will pay under this Additional Coverage, Interruption Of Computer Operations, is $2,500 (unless a higher limit is shown in the Declarations) for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

**(5)** This Additional Coverage, Interruption Of Computer Operations, does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in **(4)** above has not been exhausted.

**6.** **Coverage Extension**

If a Coinsurance percentage of 50% or more is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**Newly Acquired Locations**

**a.** You may extend your Business Income and Extra Expense Coverages to apply to property at any location you acquire other than fairs or exhibitions.

**b.** The most we will pay under this Extension, for the sum of Business Income loss and Extra Expense incurred, is $100,000 at each location, unless a higher limit is shown in the Declarations.

Case: 22-10381    Doc# 229    Filed: 02/02/23    Entered: 02/02/23 16:12:13    Page 135 **GS 04919**
of 167

c. Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

(1) This policy expires;

(2) 30 days expire after you acquire or begin to construct the property; or

(3) You report values to us.

We will charge you additional premium for values reported from the date you acquire the property.

The Additional Condition, Coinsurance, does not apply to this Extension.

## B. Limits Of Insurance

The most we will pay for loss in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

Payments under the following coverages will not increase the applicable Limit of Insurance:

1. Alterations And New Buildings;

2. Civil Authority;

3. Extra Expense; or

4. Extended Business Income.

The amounts of insurance stated in the interruption Of Computer Operations Additional Coverage and the Newly Acquired Locations Coverage Extension apply in accordance with the terms of those coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage.

## C. Loss Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

1. **Appraisal**

If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

2. **Duties In The Event Of Loss**

a. You must see that the following are done in the event of loss:

(1) Notify the police if a law may have been broken.

(2) Give us prompt notice of the direct physical loss or damage. Include a description of the property involved.

(3) As soon as possible, give us a description of how, when and where the direct physical loss or damage occurred.

(4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

(5) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(6) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(7) Cooperate with us in the investigation or settlement of the claim.

(8) If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the

CP 00 30 10 12 © Insurance Services Office, Inc., 2011 **Page 5 of 9**

FSIC Policy Number ESP 2004861 00

claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**3. Loss Determination**

    **a.** The amount of Business Income loss will be determined based on:

        **(1)** The Net Income of the business before the direct physical loss or damage occurred;

        **(2)** The likely Net Income of the business if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

        **(3)** The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

        **(4)** Other relevant sources of information, including:

            **(a)** Your financial records and accounting procedures;

            **(b)** Bills, invoices and other vouchers; and

            **(c)** Deeds, liens or contracts.

    **b.** The amount of Extra Expense will be determined based on:

        **(1)** All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

            **(a)** The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

            **(b)** Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

        **(2)** Necessary expenses that reduce the Business Income loss that otherwise would have been incurred.

    **c. Resumption Of Operations**

        We will reduce the amount of your:

        **(1)** Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

        **(2)** Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

    **d.** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**4. Loss Payment**

    We will pay for covered loss within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

    **a.** We have reached agreement with you on the amount of loss; or

    **b.** An appraisal award has been made.

**D. Additional Condition**

**COINSURANCE**

If a Coinsurance percentage is shown in the Declarations, the following condition applies in addition to the Common Policy Conditions and the Commercial Property Conditions.

We will not pay the full amount of any Business Income loss if the Limit of Insurance for Business Income is less than:

**1.** The Coinsurance percentage shown for Business Income in the Declarations; times

**2.** The sum of:

    **a.** The Net Income (Net Profit or Loss before income taxes), and

    **b.** Operating expenses, including payroll expenses,

that would have been earned or incurred (had no loss occurred) by your "operations" at the described premises for the 12 months following the inception, or last previous anniversary date, of this policy (whichever is later).

Instead, we will determine the most we will pay using the following steps:

Step **(1)**: Multiply the Net Income and operating expense for the 12 months following the inception, or last previous anniversary date, of this policy by the Coinsurance percentage;

Step **(2)**: Divide the Limit of Insurance for the described premises by the figure determined in Step **(1)**; and

Step **(3)**: Multiply the total amount of loss by the figure determined in Step **(2)**.

We will pay the amount determined in Step **(3)** or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

In determining operating expenses for the purpose of applying the Coinsurance condition, the following expenses, if applicable, shall be deducted from the total of all operating expenses:

**(1)** Prepaid freight – outgoing;

**(2)** Returns and allowances;

**(3)** Discounts;

**(4)** Bad debts;

**(5)** Collection expenses;

**(6)** Cost of raw stock and factory supplies consumed (including transportation charges);

**(7)** Cost of merchandise sold (including transportation charges);

**(8)** Cost of other supplies consumed (including transportation charges);

**(9)** Cost of services purchased from outsiders (not employees) to resell, that do not continue under contract;

**(10)** Power, heat and refrigeration expenses that do not continue under contract (if Form **CP 15 11** is attached);

**(11)** All payroll expenses or the amount of payroll expense excluded (if Form **CP 15 10** is attached); and

**(12)** Special deductions for mining properties (royalties unless specifically included in coverage; actual depletion commonly known as unit or cost depletion — not percentage depletion; welfare and retirement fund charges based on tonnage; hired trucks).

**Example 1 (Underinsurance)**

When: The Net Income and perating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been: $  400,000

The Coinsurance percentage is:  50%

The Limit of Insurance is:  $  150,000

The amount of loss is:  $  80,000

Step **(1)**: $400,000 x 50% = $200,000

(the minimum amount of insurance to meet your Coinsurance requirements)

Step **(2)**: $150,000 ÷ $200,000 = .75

Step **(3)**: $80,000 x .75 = $60,000

We will pay no more than $60,000. The remaining $20,000 is not covered.

**Example 2 (Adequate Insurance)**

When: The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been: $  400,000

The Coinsurance percentage is:  50%

The Limit of Insurance is:  $  200,000

The amount of loss is:  $  80,000

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($400,000 x 50%). Therefore, the Limit of Insurance in this example is adequate and no penalty applies. We will pay no more than $80,000 (amount of loss).

This condition does not apply to Extra Expense Coverage.

**E.  Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

**1.  Maximum Period Of Indemnity**

**a.** The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

**b.** The most we will pay for the total of Business Income loss and Extra Expense is the lesser of:

---

**CP 00 30 10 12**                    © Insurance Services Office, Inc., 2011                    **Page 7 of 9**

(1) The amount of loss sustained and expenses incurred during the 120 days immediately following the beginning of the "period of restoration"; or

(2) The Limit Of Insurance shown in the Declarations.

**2. Monthly Limit Of Indemnity**

a. The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

b. The most we will pay for loss of Business Income in each period of 30 consecutive days after the beginning of the "period of restoration" is:

(1) The Limit of Insurance, multiplied by

(2) The fraction shown in the Declarations for this Optional Coverage.

**Example**

When: The Limit of Insurance is: $ 120,000

The fraction shown in the Declarations for this Optional Coverage is: 1/4

The most we will pay for loss in each period of 30 consecutive days is: $ 30,000

($120,000 x 1/4 = $30,000)

If, in this example, the actual amount of loss is:

| | |
|---|---|
| Days 1–30: | $ 40,000 |
| Days 31–60: | $ 20,000 |
| Days 61–90: | $ 30,000 |
| | $ 90,000 |

We will pay:

| | |
|---|---|
| Days 1–30: | $ 30,000 |
| Days 31–60: | $ 20,000 |
| Days 61–90: | $ 30,000 |
| | $ 80,000 |

The remaining $10,000 is not covered.

**3. Business Income Agreed Value**

a. To activate this Optional Coverage:

(1) A Business Income Report/Work Sheet must be submitted to us and must show financial data for your "operations":

(a) During the 12 months prior to the date of the Work Sheet; and

(b) Estimated for the 12 months immediately following the inception of this Optional Coverage.

(2) The Declarations must indicate that the Business Income Agreed Value Optional Coverage applies, and an Agreed Value must be shown in the Declarations. The Agreed Value should be at least equal to:

(a) The Coinsurance percentage shown in the Declarations; multiplied by

(b) The amount of Net Income and operating expenses for the following 12 months you report on the Work Sheet.

b. The Additional Condition, Coinsurance, is suspended until:

(1) 12 months after the effective date of this Optional Coverage; or

(2) The expiration date of this policy;

whichever occurs first.

c. We will reinstate the Additional Condition, Coinsurance, automatically if you do not submit a new Work Sheet and Agreed Value:

(1) Within 12 months of the effective date of this Optional Coverage; or

(2) When you request a change in your Business Income Limit of Insurance.

d. If the Business Income Limit of Insurance is less than the Agreed Value, we will not pay more of any loss than the amount of loss multiplied by:

(1) The Business Income Limit of Insurance; divided by

(2) The Agreed Value.

**Example**

When: The Limit of Insurance is: $ 100,000

The Agreed Value is: $ 200,000

The amount of loss is: $ 80,000

Step (1): $100,000 ÷ $200,000 = .50

Step (2): .50 x $80,000 = $40,000

We will pay $40,000. The remaining $40,000 is not covered.

**4. Extended Period Of Indemnity**

Under Paragraph **A.5.c., Extended Business Income**, the number 60 in Subparagraphs **(1)(b)** and **(2)(b)** is replaced by the number shown in the Declarations for this Optional Coverage.

Case: 22-10381   Doc# 229   Filed: 02/02/23   Entered: 02/02/23 16:12:13   Page 139 GS 04923 of 167

**F. Definitions**

1. "Finished stock" means stock you have manufactured.

   "Finished stock" also includes whiskey and alcoholic products being aged, unless there is a Coinsurance percentage shown for Business Income in the Declarations.

   "Finished stock" does not include stock you have manufactured that is held for sale on the premises of any retail outlet insured under this Coverage Part.

2. "Operations" means:

   a. Your business activities occurring at the described premises; and

   b. The tenantability of the described premises, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

3. "Period of restoration" means the period of time that:

   a. Begins:

      (1) 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

      (2) Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

      caused by or resulting from any Covered Cause of Loss at the described premises; and

   b. Ends on the earlier of:

      (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

      (2) The date when business is resumed at a new permanent location.

   "Period of restoration" does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

      (1) Regulates the construction, use or repair, or requires the tearing down, of any property; or

      (2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

   The expiration date of this policy will not cut short the "period of restoration".

4. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

5. "Rental Value" means Business Income that consists of:

   a. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the described premises which is occupied by you; and

   b. Continuing normal operating expenses incurred in connection with that premises, including:

      (1) Payroll; and

      (2) The amount of charges which are the legal obligation of the tenant(s) but would otherwise be your obligations.

6. "Suspension" means:

   a. The slowdown or cessation of your business activities; or

   b. That a part or all of the described premises is rendered untenantable, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

GS 04924

POLICY NUMBER: ESP 2004861 00

**COMMERCIAL PROPERTY**
**CP 04 05 10 12**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
# ORDINANCE OR LAW COVERAGE

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
STANDARD PROPERTY POLICY

**SCHEDULE\***

| Prem. No./ Bldg. No. | Cov. A | Cov. B Limit Of Insur. | | Cov. C Limit Of Insur. | | Cov. B And C Combined Limit Of Insur. | |
|---|---|---|---|---|---|---|---|
| \*   /   \* | \* | $ | \* | $ | \* | $ | \* |
|    / | [   ] | $ | | $ | | $ | |
|    / | [   ] | $ | | $ | | $ | |

\*Information required to complete the Schedule, if not shown on this endorsement, will be shown in the Declarations or on the Building Ordinance Endorsement attached to this policy.

**A.** Each Coverage — Coverage **A,** Coverage **B** and Coverage **C** — is provided under this endorsement only if that Coverage(s) is chosen by entry in the above Schedule and then only with respect to the building identified for that Coverage(s) in the Schedule.

**B.** **Application Of Coverage(s)**

The Coverage(s) provided by this endorsement applies only if both **B.1.** and **B.2.** are satisfied and are then subject to the qualifications set forth in **B.3.**

   **1.** The ordinance or law:

   **a.** Regulates the demolition, construction or repair of buildings, or establishes zoning or land use requirements at the described premises; and

   **b.** Is in force at the time of loss.

   But coverage under this endorsement applies only in response to the minimum requirements of the ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered under this endorsement.

   **2.a.** The building sustains direct physical damage that is covered under this policy and as a result of such damage, you are required to comply with the ordinance or law; or

   **b.** The building sustains both direct physical damage that is covered under this policy and direct physical damage that is not covered under this policy, and as a result of the building damage in its entirety, you are required to comply with the ordinance or law.

   **c.** But if the building sustains direct physical damage that is not covered under this policy, and such damage is the subject of the ordinance or law, then there is no coverage under this endorsement even if the building has also sustained covered direct physical damage.

GS 04925

3. In the situation described in **B.2.b.** above, we will not pay the full amount of loss otherwise payable under the terms of Coverages **A**, **B**, and/or **C** of this endorsement. Instead, we will pay a proportion of such loss, meaning the proportion that the covered direct physical damage bears to the total direct physical damage.

(Section **H.** of this endorsement provides an example of this procedure.)

However, if the covered direct physical damage, alone, would have resulted in a requirement to comply with the ordinance or law, then we will pay the full amount of loss otherwise payable under the terms of Coverages **A**, **B** and/or **C** of this endorsement.

**C.** We will not pay under Coverage **A**, **B** or **C** of this endorsement for:

1. Enforcement of or compliance with any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

2. The costs associated with the enforcement of or compliance with any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

**D. Coverage**

1. **Coverage A — Coverage For Loss To The Undamaged Portion Of The Building**

   With respect to the building that has sustained covered direct physical damage, we will pay under Coverage **A** for the loss in value of the undamaged portion of the building as a consequence of a requirement to comply with an ordinance or law that requires demolition of undamaged parts of the same building.

   Coverage **A** is included within the Limit Of Insurance shown in the Declarations as applicable to the covered building. Coverage **A** does not increase the Limit of Insurance.

2. **Coverage B – Demolition Cost Coverage**

   With respect to the building that has sustained covered direct physical damage, we will pay the cost to demolish and clear the site of undamaged parts of the same building as a consequence of a requirement to comply with an ordinance or law that requires demolition of such undamaged property.

   The Coinsurance Additional Condition does not apply to Demolition Cost Coverage.

3. **Coverage C — Increased Cost Of Construction Coverage**

   **a.** With respect to the building that has sustained covered direct physical damage, we will pay the increased cost to:

      **(1)** Repair or reconstruct damaged portions of that building; and/or

      **(2)** Reconstruct or remodel undamaged portions of that building, whether or not demolition is required;

   when the increased cost is a consequence of a requirement to comply with the minimum standards of the ordinance or law.

   However:

      **(1)** This coverage applies only if the restored or remodeled property is intended for similar occupancy as the current property, unless such occupancy is not permitted by zoning or land use ordinance or law.

      **(2)** We will not pay for the increased cost of construction if the building is not repaired, reconstructed or remodeled.

   The Coinsurance Additional Condition does not apply to Increased Cost of Construction Coverage.

   **b.** When a building is damaged or destroyed and Coverage **C** applies to that building in accordance with **3.a.** above, coverage for the increased cost of construction also applies to repair or reconstruction of the following, subject to the same conditions stated in **3.a.**:

      **(1)** The cost of excavations, grading, backfilling and filling;

Case: 22-10381    Doc# 229    Filed: 02/02/23    Entered: 02/02/23 16:12:13    Page 142 **GS 04926**
of 167

(2) Foundation of the building;

(3) Pilings; and

(4) Underground pipes, flues and drains.

The items listed in **b.(1)** through **b.(4)** above are deleted from Property Not Covered, but only with respect to the coverage described in this provision, **3.b.**

E. **Loss Payment**

1. All following loss payment provisions, **E.2.** through **E.5.**, are subject to the apportionment procedures set forth in Section **B.3.** of this endorsement.

2. When there is a loss in value of an undamaged portion of a building to which Coverage **A** applies, the loss payment for that building, including damaged and undamaged portions, will be determined as follows:

   a. If the Replacement Cost Coverage Option applies and the property is being repaired or replaced, on the same or another premises, we will not pay more than the lesser of:

      (1) The amount you would actually spend to repair, rebuild or reconstruct the building, but not for more than the amount it would cost to restore the building on the same premises and to the same height, floor area, style and comparable quality of the original property insured; or

      (2) The Limit Of Insurance shown in the Declarations as applicable to the covered building.

   b. If the Replacement Cost Coverage Option applies and the property is **not** repaired or replaced, or if the Replacement Cost Coverage Option does **not** apply, we will not pay more than the lesser of:

      (1) The actual cash value of the building at the time of loss; or

      (2) The Limit Of Insurance shown in the Declarations as applicable to the covered building.

3. Unless Paragraph **E.5.** applies, loss payment under Coverage **B** — Demolition Cost Coverage will be determined as follows:

   We will not pay more than the lesser of the following:

   a. The amount you actually spend to demolish and clear the site of the described premises; or

   b. The applicable Limit Of Insurance shown for Coverage **B** in the Schedule above.

4. Unless Paragraph **E.5.** applies, loss payment under Coverage **C** — Increased Cost Of Construction Coverage will be determined as follows:

   a. We will not pay under Coverage **C**:

      (1) Until the property is actually repaired or replaced, at the same or another premises; and

      (2) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

   b. If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay under Coverage **C** is the lesser of:

      (1) The increased cost of construction at the same premises; or

      (2) The applicable Limit Of Insurance shown for Coverage **C** in the Schedule above.

   c. If the ordinance or law requires relocation to another premises, the most we will pay under Coverage **C** is the lesser of:

      (1) The increased cost of construction at the new premises; or

      (2) The applicable Limit Of Insurance shown for Coverage **C** in the Schedule above.

5. If a Combined Limit Of Insurance is shown for Coverages **B** and **C** in the Schedule above, Paragraphs **E.3.** and **E.4.** of this endorsement do not apply with respect to the building that is subject to the Combined Limit, and the following loss payment provisions apply instead:

   The most we will pay, for the total of all covered losses for Demolition Cost and Increased Cost of Construction, is the Combined Limit Of Insurance shown for Coverages **B** and **C** in the Schedule above. Subject to this Combined Limit of Insurance, the following loss payment provisions apply:

Case: 22-10381    Doc# 229    Filed: 02/02/23    Entered: 02/02/23 16:12:13    Page 143 GS 04927
of 167

**a.** For Demolition Cost, we will not pay more than the amount you actually spend to demolish and clear the site of the described premises.

**b.** With respect to the Increased Cost of Construction:

**(1)** We will not pay for the increased cost of construction:

**(a)** Until the property is actually repaired or replaced, at the same or another premises; and

**(b)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

**(2)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the increased cost of construction is the increased cost of construction at the same premises.

**(3)** If the ordinance or law requires relocation to another premises, the most we will pay for the increased cost of construction is the increased cost of construction at the new premises.

**F.** The terms of this endorsement apply separately to each building to which this endorsement applies.

**G.** Under this endorsement we will not pay for loss due to any ordinance or law that:

**1.** You were required to comply with before the loss, even if the building was undamaged; and

**2.** You failed to comply with.

**H.** Example of proportionate loss payment for Ordinance Or Law Coverage Losses (procedure as set forth in Section **B.3.** of this endorsement).

Assume:

- Wind is a Covered Cause of Loss; Flood is an excluded Cause of Loss
- The building has a value of $200,000
- Total direct physical damage to building: $100,000
- The ordinance or law in this jurisdiction is enforced when building damage equals or exceeds 50% of the building's value
- Portion of direct physical damage that is covered (caused by wind): $30,000
- Portion of direct physical damage that is not covered (caused by flood): $70,000
- Loss under Ordinance Or Law Coverage **C** of this endorsement: $60,000

**Step 1:** Determine the proportion that the covered direct physical damage bears to the total direct physical damage.

$30,000 ÷ $100,000 = .30

**Step 2:** Apply that proportion to the Ordinance Or Law loss.

$60,000 x .30 = $18,000

In this example, the most we will pay under this endorsement for the Coverage **C** loss is $18,000, subject to the applicable Limit of Insurance and any other applicable provisions.

**Note:** The same procedure applies to losses under Coverages **A** and **B** of this endorsement.

**I.** The following definition is added:

"Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

GS 04928

# *First Specialty Insurance Corporation*

**BUILDING ORDINANCE ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

In consideration of the premium charged, it is agreed that the Limit(s) of Insurance applicable for coverage provided under Ordinance or Law Coverage Endorsement CP 04 05 are hereby amended as follows and shall apply as sub-limits of liability which are part of and not in addition to the Policy's overall occurrence Limit of Insurance.

Premises No. <u>All</u>  / Building No. <u>All</u>

| | |
|---|---|
| Included | Per occurrence sub-limit applies to Coverage A |
| $1,000,000 | Per occurrence sub-limit applies to Coverage B&C Combined.<br>In no event will we pay more than $1,000,000 in any one occurrence for Coverage B & C combined, regardless of the number of locations involved in any one occurrence. |

It is further agreed that Paragraph F. on Page 4 of 4 of the Ordinance or Law Coverage Endorsement Form CP 04 05 is deleted in its entirety.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY SHALL REMAIN UNCHANGED.

SP 4 732 0113

Page 1 of 1

FSIC Policy Number ESP 2004861 00

GS 04929

POLICY NUMBER: ESP 2004861 00

**COMMERCIAL PROPERTY**
**CP 04 17 06 07**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
# UTILITY SERVICES – DIRECT DAMAGE

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
BUILDERS' RISK COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
STANDARD PROPERTY POLICY
TOBACCO SALES WAREHOUSES COVERAGE FORM

### SCHEDULE

| Prem. No. | Bldg. No. | Utility Services Limit Of Insurance | Enter "X" for each applicable Property | | | | |
|---|---|---|---|---|---|---|---|
| | | | Water Supply Property | Commu-nication Supply Property (including overhead transmis-sion lines) | Commu-nication Supply Property (not including overhead transmis-sion lines) | Power Supply Property (including overhead transmis-sion lines) | Power Supply Property (not including overhead transmis-sion lines) |
| | | $100,000 Combined Direct Damage and Time Element | X | | X | | X |
| Covered Property: Per Policy Declarations | | | | | | | |
| Causes Of Loss Form Applicable: | | | | | | | |
| | | $ | | | | | |
| Covered Property: | | | | | | | |
| Causes Of Loss Form Applicable: | | | | | | | |
| | | $ | | | | | |
| Covered Property: | | | | | | | |
| Causes Of Loss Form Applicable: | | | | | | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | | | | |

**CP 04 17 06 07**

© ISO Properties, Inc., 2007

**Page 1 of 2**

GS 04930

**A. Coverage**

We will pay for loss of or damage to Covered Property described in the Schedule, caused by an interruption in utility service to the described premises. The interruption in utility service must result from direct physical loss or damage by a Covered Cause of Loss (as indicated in the Schedule) to the property described in Paragraph **C.** if such property is indicated by an "X" in the Schedule.

**B. Exception**

Coverage under this endorsement for loss or damage to Covered Property does not apply to loss or damage to electronic data, including destruction or corruption of electronic data. The term electronic data has the meaning set forth in the Coverage Form to which this endorsement applies.

**C. Utility Services**

**1. Water Supply Services,** meaning the following types of property supplying water to the described premises:

**a.** Pumping stations; and

**b.** Water mains.

**2. Communication Supply Services,** meaning property supplying communication services, including telephone, radio, microwave or television services to the described premises, such as:

**a.** Communication transmission lines, including optic fiber transmission lines;

**b.** Coaxial cables; and

**c.** Microwave radio relays except satellites.

It does not include overhead transmission lines unless indicated by an "X" in the Schedule.

**3. Power Supply Services,** meaning the following types of property supplying electricity, steam or gas to the described premises:

**a.** Utility generating plants;

**b.** Switching stations;

**c.** Substations;

**d.** Transformers; and

**e.** Transmission lines.

It does not include overhead transmission lines unless indicated by an "X" in the Schedule.

**D.** If a Utility Services Limit Of Insurance is shown in the Schedule, such limit is part of, not in addition to, the Limit of Insurance stated in the Declarations or in the Separation Of Coverage endorsement as applicable to the Covered Property.

If no Limit of Insurance is shown for Utility Services, coverage under this endorsement is subject to the applicable Limit of Insurance on the Covered Property as shown in the Declarations or in the Separation Of Coverage endorsement. But this Utility Services endorsement does not increase the applicable Limit of Insurance.

© ISO Properties, Inc., 2007

FSIC Policy Number ESP 2004861 00

GS 04931

POLICY NUMBER: ESP 2004861 00

**COMMERCIAL PROPERTY**
**CP 15 45 06 07**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# UTILITY SERVICES – TIME ELEMENT

This endorsement modifies insurance provided under the following:

BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM
BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM
EXTRA EXPENSE COVERAGE FORM

### SCHEDULE

| | | | Enter **"X"** for each applicable Property | | | | |
|---|---|---|---|---|---|---|---|
| **Prem. No.** | **Bldg. No.** | **Utility Services Limit Of Insurance** | **Water Supply Property** | **Commu-nication Supply Property (including overhead transmis-sion lines)** | **Commu-nication Supply Property (not including overhead transmis-sion lines)** | **Power Supply Property (including overhead transmis-sion lines)** | **Power Supply Property (not including overhead transmis-sion lines)** |
| All | | $100,000 Combined Time Element and Direct Damage | X | | X | | X |
| **Causes Of Loss Form Applicable:** | | | | | | | |
| | | $ | | | | | |
| **Causes Of Loss Form Applicable:** | | | | | | | |
| | | $ | | | | | |
| **Causes Of Loss Form Applicable:** | | | | | | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | | | | |

**A. Coverage**

Your coverage for Business Income and/or Extra Expense, as provided and limited in the applicable Coverage Form, is extended to apply to a "suspension" of "operations" at the described premises caused by an interruption in utility service to that premises. The interruption in utility service must result from direct physical loss or damage by a Covered Cause of Loss (as indicated in the Schedule) to the property described in Paragraph **C.** if such property is indicated by an "X" in the Schedule.

**B. Exception**

Coverage under this endorsement does not apply to Business Income loss or Extra Expense related to interruption in utility service which causes loss or damage to electronic data, including destruction or corruption of electronic data. The term electronic data has the meaning set forth in the Coverage Form to which this endorsement applies.

**CP 15 45 06 07**              © ISO Properties, Inc., 2007              **Page 1 of 2**

GS 04932

C. **Utility Services**

    1. **Water Supply Services,** meaning the following types of property supplying water to the described premises:

        **a.** Pumping stations; and

        **b.** Water mains.

    2. **Communication Supply Services,** meaning property supplying communication services, including telephone, radio, microwave or television services, to the described premises, such as:

        **a.** Communication transmission lines, including optic fiber transmission lines;

        **b.** Coaxial cables; and

        **c.** Microwave radio relays except satellites.

    It does not include overhead transmission lines unless indicated by an "X" in the Schedule.

    3. **Power Supply Services,** meaning the following types of property supplying electricity, steam or gas to the described premises:

        **a.** Utility generating plants;

        **b.** Switching stations;

        **c.** Substations;

        **d.** Transformers; and

        **e.** Transmission lines.

    It does not include overhead transmission lines unless indicated by an "X" in the Schedule.

D. The **Coinsurance** Additional Condition does not apply to this endorsement.

E. The Utility Services Limit Of Insurance, as shown in the Schedule, is the only Limit which applies to the coverage provided under this endorsement, and is part of, not in addition to, the Limit of Insurance stated in the Declarations as applicable to the described premises.

# *First Specialty Insurance Corporation*

## EXCLUSIONS – LOSS DUE TO AN ACT OF TERRORISM; LOSS FROM CHEMICAL, BIOLOGICAL & RADIOLOGICAL EXPOSURE

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

A.  Notwithstanding any provision in this Policy or any endorsement thereto to the contrary, this policy does not insure against any loss, damage, cost or expense caused by or resulting from any of the following, regardless of any other cause or event contributing concurrently or in any other sequence thereto:

(1)  **Terrorism**, or any action in hindering, combating or defending against the same, regardless of who commits or threatens the commission of the act or acts, and regardless of any other cause or event contributing concurrently or in any other sequence thereto.  As used in the foregoing sentence, **"Terrorism"** shall mean any act or threatened act of unlawful force or violence including, but not limited to, property destruction, murder, kidnapping, hostage-taking, hijacking, piracy or any other unlawful conduct which is dangerous to or destructive of human life, property or commerce, by any person or group of persons, whether acting alone or in concert with others, when such act reasonably appears to have been done or threatened for political, religious, ideological or similar purposes including, but not limited to: the desire to protest the actions, laws, policies or decisions of any government or sovereign power (de jure or de facto); the desire to destabilize, overthrow, coerce, intimidate, alter or eliminate any government or sovereign power (de facto or de jure); the desire to incite, intimidate or coerce a civilian population or any segment thereof; the desire to inflict economic loss upon, or disrupt any segment of one or more national or regional economies.

(2)  The unlawful possession, use, release, discharge, dispersal or disposal of any **chemical, bacteriological, viral, radioactive or similar agents or matter** regardless of who is responsible for the act and whether war has been declared or not, and regardless of any other cause or event contributing concurrently or in any other sequence thereto.

(3)  **The unlawful possession, use, release, discharge, detonation, dispersal or disposal of any device or material capable of producing a nuclear reaction or the spread of radioactivity, regardless of who is responsible for the act and whether war has been declared or not, and regardless of any other cause or event contributing concurrently or in any other sequence thereto.**

B.  **Exception Covering Certain Fire Losses**

If direct physical loss or damage by fire results from Terrorism (unless committed by or on behalf of the Insured) to property insured by this policy that is located in a jurisdiction whose statutory law requires such resulting direct physical loss or damage to be covered by a standard fire policy,  the "Company" will pay for the loss or damage caused by that fire, but only to the extent of the Actual Cash Value of the resulting direct physical loss or damage by fire to insured property, subject to all applicable policy provisions including the Limit of Liability on the affected property. Such coverage for fire applies only to direct loss or damage by fire to covered property. Therefore, for example, the coverage does not apply to insurance provided under Time Element, Business Interruption and/or Extra Expense coverage parts or endorsements that apply to those coverage parts, or to Leasehold Interest Coverage.

C.  In any action, suit or other proceeding where the "Company" alleges that, by reason of any provision in this endorsement, some or all loss or damage is not insured by this policy, the burden of proving that such loss or damage is not excluded shall be upon the Insured.

All other terms and conditions of this policy shall remain unchanged.

SP 9 662 1214                                                                                               Page 1 of 1

GS 04934

# *First Specialty Insurance Corporation*

**WAR AND MILITARY ACTION EXCLUSION ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

The "War And Military Action" exclusion under Paragraph B.1.f. on page 2 of 10 of the Causes of Loss – Special Form CP 10 30 attached to this Policy is hereby deleted and the following is substituted.

**B.1.f.    War And Military Action**

    **(1)**    War, including undeclared or civil war;

    **(2)**    Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    **(3)**    Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

Provided, however, with respect to any action that comes within the terms of this exclusion and involves nuclear reaction or radiation, or radioactive contamination, this War And Military Action Exclusion supersedes the Nuclear Hazard Exclusion.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY SHALL REMAIN UNCHANGED.

# *First Specialty Insurance Corporation*

**NUCLEAR, CHEMICAL AND BIOLOGICAL EXCLUSION ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

The following exclusions are added to the Policy or Coverage Part.

This insurance does not apply to:

A.   Loss or damage arising directly or indirectly from nuclear detonation, reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, or due to any act or condition incident to any of the foregoing, whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by, any physical loss or damage insured against by this Policy or Coverage Part, however such nuclear detonation, reaction, nuclear radiation or radioactive contamination may have been caused.  This exclusion replaces any other nuclear detonation, nuclear reaction, nuclear radiation or radioactive contamination exclusions found elsewhere in this Policy.

B.   Loss or damage arising directly or indirectly from the possession, use, dispersal, application or release of, or exposure to, chemical or biological materials or agents, all whether controlled or uncontrolled, or due to any act or condition incident to any of the foregoing, whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by, any physical loss or damage insured against by this Policy or Coverage Part, however such possession, use, dispersal, application, release or exposure may have been caused.

Such loss or damage noted above is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY SHALL REMAIN UNCHANGED.

# *First Specialty Insurance Corporation*

## CYBER RISK EXCLUSION

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**1.**   **Electronic Data Exclusion**

The following Exclusion shall apply to this **Policy:**

a)   This Policy does not insure, loss, damage, destruction, distortion, erasure, corruption or alteration of ELECTRONIC DATA from any cause whatsoever (including but not limited to COMPUTER VIRUS) or loss of use, reduction in functionality, cost, expense of whatsoever nature resulting therefrom, regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

ELECTRONIC DATA means facts, concepts and information converted to a form useable for communications, interpretation or processing by electronic and electromechanical data processing or electronically controlled equipment and includes programs, software, and other coded instructions for the processing and manipulation of data or the direction and manipulation of such equipment.

COMPUTER VIRUS means a set of corrupting, harmful or otherwise unauthorized instructions or code including a set of maliciously introduced unauthorized instructions or code, programmatic or otherwise, that propagate themselves through a computer system or network of whatsoever nature. COMPUTER VIRUS includes but is not limited to 'Trojan Horses', 'worms' and 'time or logic bombs'.

b)   However, in the event that a peril listed below results from any of the matters described in paragraph a) above, this Policy, subject to all its terms, conditions and exclusions will cover physical damage occurring during the Policy period to property insured by this Policy directly caused by such listed peril.

Listed Perils:
- Fire
- Explosion

**2.**   **Electronic Data Processing Media Valuation**

Notwithstanding any provision to the contrary within the Policy or any endorsement thereto, it is understood and agreed as follows:

Should electronic data processing media insured by this Policy suffer physical loss or damage insured by this Policy, then the basis of valuation shall be the cost to repair, replace or restore such media to the condition that existed immediately prior to such loss or damage, including the cost of reproducing any ELECTRONIC DATA contained thereon, providing such media is repaired, replaced or restored. Such cost of reproduction shall include all reasonable and necessary amounts, not to exceed $25,000 any one loss, incurred by the Assured in recreating, gathering and assembling such ELECTRONIC DATA. If the media is not repaired, replaced or restored the basis of valuation shall be the cost of the blank media. However; this Policy does not insure any amount pertaining to the value of such ELECTRONIC DATA to the Assured or any other party, even if such ELECTRONIC DATA cannot be recreated, gathered or assembled.

Nothing herein contained shall vary, alter or extend any agreement, provision, general condition or declaration of this **Policy** other than as above stated.

All other terms and conditions of this policy shall remain unchanged.

GS 04937

# *First Specialty Insurance Corporation*

### HURRICANE MINIMUM PREMIUM ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

The following terms and conditions will apply to this policy and hereby supersede and replace the terms and conditions of the "Minimum Earned Premium" provision of this Policy ONLY in respect to location(s) described here in this Endorsement:

1.  If you cancel this policy, remove a location or reduce the amount of insurance on a location that is within 100 miles of the Atlantic Ocean and/or the Gulf of Mexico and/or the Hawaii Islands, and coverage existed any time during the period of June 1st to November 30th, the amount of premium we will return will be the Unearned Premium for the location.  The Unearned Premium is the annual premium for the policy (or for the location removed or coverage reduced, as applicable) multiplied by the Unearned Factor noted below.  The location premium is the 100% annual rate multiplied by the location value as scheduled in the most current Statement of Values on file with the Company.

### 1 Year Policy

| Days Policy In Force | Unearned Factor |
|---|---|
| 1 to 180 | 20% |
| 181 to 210 | 15% |
| 211 to 240 | 10% |
| 241 to 270 | 7.5% |
| 271 to 300 | 5.0% |
| 301 to 330 | 2.5% |
| 331 to 365 | 0.0% |

2.  If a Location that is within 100 miles of the Atlantic Ocean and/or the Gulf of Mexico and/or the Hawaii Islands is added during the term of the policy and coverage exists any time during the period of June 1st to November 30th, the rate will be calculated as 100% of the annual rate, less the Unearned Factor as calculated in No. 1 above based upon the number of days remaining in the policy term.

The provisions of this endorsement replace any short rate provisions stipulated in this policy for all locations that are within 100 miles of the Atlantic Ocean and/or the Gulf of Mexico and/or the Hawaii Islands and coverage existed any time during the period of June 1st to November 30th.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY SHALL REMAIN UNCHANGED.

Case: 22-10381    Doc# 229    Filed: 02/02/23    Entered: 02/02/23 16:12:13    Page 154 of 167

GS 04938

# *First Specialty Insurance Corporation*

**DUTIES AND REQUIREMENTS IN THE EVENT OF LOSS OR DAMAGE ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

The policy provisions regarding your duties and obligations in the event of a loss appearing anywhere in the Policy are hereby superseded by the following.

**Duties and Requirements in The Event of Loss or Damage**

**a.**   You must see that the following are done in the event of loss or damage to Covered Property:

  **(1)**   Notify the police if a law may have been broken.

  **(2)**   Give us prompt notice of the loss or damage and include a description of the property involved.

  **(3)**   As soon as possible, give us a description of how, when and where the loss or damage occurred.

  **(4)**   Take all reasonable steps to protect the Covered Property from further damage, including separating the damaged and undamaged property and putting it in the best possible order for examination, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss.

  **(5)**   At our request, give us complete inventories of the destroyed, damaged and undamaged property, showing in detail quantities, costs, replacement and actual cost values and amount of loss claimed.

  **(6)**   As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records. Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

  **(7)**   Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within sixty (60) days after our request, unless such time is extended in writing by us. We will supply you with the necessary forms; your responses will include your knowledge and belief as to the following:

   **(a)**   The time and origin of the loss;

   **(b)**   Your interest and of all others in the property;

   **(c)**   The actual cash value of each item thereof and the amount of loss thereof;

   **(d)**   All encumbrances thereon;

   **(e)**   All other contracts of insurance, whether valid or not covering any of said property;

   **(f)**   Any changes in the title, use, occupation, location, possession or exposures of said property since the issuing of this Policy,

   **(g)**   By whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss

   **(h)**   Whether the damaged property was owned or leased

   and furnish a copy of all the descriptions and schedules in all policies or on file with us and, if required, verified plans and specifications of any building, fixtures, machinery or other property destroyed or damaged.

  **(8)**   Cooperate with us in the investigation or settlement of the claim.

GS 04939

**b.**   You, as often as may be reasonably required, shall:

    **(1)**   Exhibit to any person designated by us or our representative all that remains of any property herein described.

    **(2)**   Submit to examinations under oath by any person named by us, while not in the presence of any other person that might be subject to such an examination, and subscribe the same.

    **(3)**   Present and require any of your officers, directors, investors, managers, employees, public adjuster, experts, consultants, contractors or any other representative relating to the loss or damage, for examinations under oath by any person named by us, while not in the presence of any other person that might be subject to such an examination, and require they subscribe the same.

        **(a)**   In the event that any of your officers, directors, investors, managers, employees, public adjuster or any other representative fails to submit to an examination, we will treat that refusal as your refusal to submit to examination and our ability to investigate your claim will be prejudiced.

        **(b)**   In the event that any of your experts, consultants or contractors fails to cooperate in this examination, we may, at our option, disregard their findings and conclusions.

    **(4)**   Produce for examination:

        **(a)**   All books of account;

        **(b)**   Bills, invoices and other vouchers, or certified copies thereof if originals be lost;

        **(c)**   Estimates for the repair or replacement of the lost or damaged property;

        **(d)**   Any and all records relating to prior ownership of the property, prior loss and damage to the property, prior insurance claims you or any other owner of the property has made in the past;

    At such reasonable time and place as may be designated by us or our representative, and shall permit extracts and copies thereof to be made by us.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY SHALL REMAIN UNCHANGED.

# *First Specialty Insurance Corporation*

**ECONOMIC OR TRADE SANCTIONS OR UNITED NATIONS RESOLUTIONS ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

The following is hereby added to the Policy:

The Company will not be deemed to have provided coverage and will not be liable to pay any claim or provide any benefit to the extent that payment of such claim or provision of such benefit would expose the Company to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of any jurisdiction applicable to the Company.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY SHALL REMAIN UNCHANGED.

SP 4 749 0112                                                                                                          Page 1 of 1

GS 04941

# *First Specialty Insurance Corporation*

### SERVICE OF SUIT CLAUSE ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

Service of process in any lawsuit, or mandated alternative dispute resolution (ADR) proceeding instituted against us may be made upon:

Legal Department
First Specialty Insurance Corporation
1200 Main Street, Suite 800
Kansas City, MO 64105

The above party is authorized and directed to accept service of process on behalf of us in any suit or ADR proceeding, and/or, upon your request, agrees to give a written undertaking to you that he/she will enter a general appearance upon our behalf should a lawsuit, or ADR proceeding be instituted.

Further, pursuant to any law of any state, the District of Columbia, territory, or protectorate of the United States which makes provision therefore, we hereby designate the Superintendent, Commissioner, Director of Insurance, deputy, or department employee specified as attorney or agent for receipt of lawful service of process or ADR proceeding, in the law, instituted by or on your behalf or any beneficiary within this contract, the above is hereby authorized as our designee upon whom the service of process may be served.

Nothing contained herein shall limit or abridge the right to serve any process, notice or demand upon us in any other manner permitted or required by law.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY SHALL REMAIN UNCHANGED.

SP 4 747 0110                                                                                                    Page 1 of 1

GS 04942

# *First Specialty Insurance Corporation*

**SPECIAL TERMS AND CONDITIONS FOR ROOFS, ROOFING SYSTEMS OR ROOF COVERINGS**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

Notwithstanding any provision in this Policy or any endorsement thereto to the contrary, insurance provided under this Policy is hereby amended in the following particulars:

In the event of direct physical loss or damage to any and all roofs, roof coverings, or roofing systems as insured against by this Policy as Covered Property, the Policy provisions are hereby superseded by the following:

In the event of direct physical loss or damage caused by or resulting from wind or hail, the following terms and conditions will apply to all roofs, roof systems and roof coverings.

**A.  Valuation**

**1.  Actual Cash Value**

    **a.** Roofs, roof coverings or roofing systems shall be valued at Actual Cash Value, as defined in this endorsement, at the time and place of loss or damage.

**2.  Optional Coverage - Replacement Cost**

    **a.** If shown as applicable in the Declarations, Replacement Cost (as defined in this endorsement) replaces Actual Cash Value in the Valuation condition of this endorsement for roofs, roof coverings or roofing systems which are of ten (10) years or less in age, but only in the event that we have been provided with historical documentation which verifies and confirms the age of the roofs, roof coverings and roofing systems involved in the loss to be eligible in accordance with this Optional Coverage – Replacement Cost provision.

    **b.** You may make a claim for loss or damage covered by this insurance on an Actual Cash Value basis instead of on a Replacement Cost basis. In the event you elect to have loss or damage settled on an Actual Cash Value basis, you may still make a claim for the additional coverage this Optional Coverage – Replacement Cost provides if you notify us of your intent to do so within 180 days after the loss or damage.

    **c.** We will not pay on a Replacement Cost basis for any loss or damage:

        **i.** Until the lost or damaged property is actually repaired or replaced; and

        **ii.** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

    **d.** We will not pay more for loss or damage on a Replacement Cost basis than the least of **i, ii** or **iii**, subject to **e.** below:

        **i.** The Limit of Insurance applicable to the lost or damaged property;

        **ii.** The cost to replace the lost or damaged property with other property:

            **(a).** Of comparable material and quality;

              and

            **(b).** Used for the same purpose; or

        **iii.** The amount actually spent that is necessary to repair or replace the lost or damaged property.

    **e.** The cost of repair or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

GS 04943

**B. Exclusions**

   **1. Types of Loss or Damage**

     We will not pay for the following types of loss or damage:

     **a.** Cosmetic Damage or other damage that does not reduce the functionality of the roof, roof covering or roofing system.

     **b.** Aesthetic or visual damage.

     **c.** Uniformity or matching.

   **2. Ordinance Or Law**

     We will not pay for any increased cost of construction loss or any increased costs incurred to comply with the enforcement of any ordinance or law which may arise in the course of repairing, rebuilding or replacement of damaged roofs, roof coverings or roofing systems.  Notwithstanding the foregoing, in the event such lost or damaged roof, roof covering or roofing system is Covered Property and is eligible to be valued at Replacement Cost as outlined in A.2. above, we will pay for the increased cost of construction loss or the necessary increased costs incurred to comply with the enforcement of any ordinance or law which may arise in the course of repairing, rebuilding or replacement of such roof, roof covering or roofing system in accordance with the terms and conditions of the Increased Cost of Construction provision of this Policy, subject to the limit(s) of liability provided in the Building or Personal Property Coverage Form or the Ordinance or Law Coverage Endorsement (if attached to this policy), whichever is greater.

     This Ordinance Or Law provision shall not cover any loss due to any law or ordinance with which you were required to comply with prior to the loss, nor shall this provision increase any amounts or limits of insurance provided by this Policy.

     All other policy provisions relating to coverage for increased cost of construction due to enforcement of law or ordinance will remain unchanged

   **3. Undamaged Property**

     **a.** We will not pay for repair or replacement of undamaged property.

   **4. Property Not Covered**

     For the purposes of this endorsement, Covered Property does not include:

     **a.** Roofs, roof coverings, or roofing systems greater in age than 30 years on the date coverage under this policy began.

     **b.** Roofs, roof coverings, or roofing systems with loss or direct physical damage that was the subject of prior insurance claims, under this Policy or any other policy with any insurer, which has not been repaired or replaced in a manner consistent with the settlement of that claim.

**C. Definitions**

   The following definitions are applicable to the terms and conditions of this endorsement.

   **1.** "Actual Cash Value" means the Replacement Cost less deduction for Depreciation.  The valuation of Covered Property on an Actual Cash Value basis, in accordance with the provisions of this endorsement and the Policy to which this endorsement hereby attaches thereto, shall apply whether or not such property has sustained partial or total loss or damage.

   **2.** "Cosmetic Damage" means all loss or damage which does not result in a loss of expected long-term life or a reduction in water shedding ability.

 © 2012 First Specialty Insurance Corporation.  All rights reserved.

FSIC Policy Number ESP 2004861 00

GS 04944

3. "Depreciation" as used in this endorsement means the decrease in value of the insured roofs, roofing systems and roof coverings over a period of time due to actual physical wear and tear from use, and deterioration over time, and is calculated by the following formula:

   a. L – Manufacturer's lifespan or warranty rating in years

   b. A – The lesser of the age of the roof in years at the time and place of loss or damage or twenty (20) years if the age cannot be confirmed by historical documentation.

   c. RC – Replacement Cost of the lost or damaged Covered Property

   d. $\frac{A}{L} * RC = Depreciation$

   With A/L not to exceed fifty percent (50%)

   **EXAMPLE:**

   Subject to the terms of the Policy and this endorsement, if there is direct physical loss or damage covered by this Policy to an insured roof which requires total replacement of the roof, roof system or roof covering and the following factors apply:

   **L** is equal to 30 Years

   **A** is equal to 12 Years

   **RC** is equal to $65,000

   Then Depreciation will be calculated as follows:

   $$\frac{12}{30} = 40\%$$
   $$40\% * \$65,000 = \$26,000$$
   $$Depreciation = 26,000$$

4. "Replacement Cost" means the cost to replace the damaged covered property with new of like kind, quality and construction including all charges, taxes and fees.

All other terms and conditions of this policy shall remain unchanged.

SP 5 749 0714                    © 2012 First Specialty Insurance Corporation.  All rights reserved.                    Page 3 of 3

# *First Specialty Insurance Corporation*

**COMMUNICABLE DISEASE EXCLUSION ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

The following provision(s) is (are) hereby attached to and made a part of this policy.

This policy is hereby amended to include the following exclusion condition:

**Communicable Disease Exclusion**

Notwithstanding anything to the contrary in this insurance, this insurance does not insure against:

Loss, damage, cost, expense or TIME ELEMENT of any type whatsoever that is related in any way to or caused directly or indirectly by any actual, suspected or potential COMMUNICABLE DISEASE regardless of whether any other cause contributes concurrently or in any sequence to the loss, damage, cost, expense or TIME ELEMENT.

COMMUNICABLE DISEASE means a contagious disease or illness arising out of or in any manner related to a bacterial infection or infectious or biological virus or agent or the toxic products which are transmitted or spread, directly or indirectly, to a person from an infected person, plant, animal or anthropoid, or through the agency of an intermediate animal, host or vector of the inanimate environment or transmitted or spread by instrument or any other method of transmission. COMMUNICABLE DISEASE shall include and not be limited to, for example, Acquired Immunodeficiency Syndrome (AIDS) or Human Immunodeficiency Virus (HIV), any type or strain of Severe Acute Respiratory Syndrome (SARS) or Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2), Middle East Respiratory Syndrome (MERS), West Nile Disease, Zika virus, chicken pox, any type or strain of influenza or infectious respiratory illness (including, but not limited to avian flu, Corona Virus or COVID-19), pneumonia, legionella, hepatitis, measles, meningitis, mononucleosis, whooping cough, cholera, Ebola hemorrhagic fever, bubonic plagues, anthrax and any variant(s) of the foregoing.

TIME ELEMENT means any type of loss which is measured, in whole or in part, by a period or the passage of time.  TIME ELEMENT shall include, but are not limited to, Gross Earnings, Gross Profits, Business Interruption, Business Income, Extra Expense, Rental Insurance, Contingent Time Element, Contingent Business Interruption, Contingent Business Income, Contingent Extra Expense, Service Interruption – Time Element, Leasehold Interest, Commissions, Licensing Fees and Royalties, Ingress/Egress, Order of Civil or Military Authority, and Soft Costs. In the event that the language and/or terms used above to identify any TIME ELEMENT coverage is not an identical replication of the language/terms used in this policy, this will not negate application of this exclusion.

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

MF 5 587 0612                                                                                                      Page 1 of 1

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

MT. HAWLEY INSURANCE COMPANY,

                             Plaintiff(s),

      -against -

SPRING MOUNTAIN VINEYARD, INC.

                          Defendant(s).

---------------------------------------------------------------X

| USDC SDNY |
|---|
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: 6/29/2022 |

1: 22    -cv- 03191 -GHW

<u>CIVIL CASE MANAGEMENT
PLAN AND SCHEDULING
ORDER</u>

GREGORY H. WOODS, United States District Judge:

    This Civil Case Management Plan is submitted by the parties in accordance with Fed. R. Civ. P. 26(f)(3).

1.    All parties [consent _____ / do not consent ☑] to conducting all further proceedings before a United States Magistrate Judge, including motions and trial.  28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences.  [*If all parties consent, the remaining paragraphs need not be completed.  Instead, the parties should submit to the Court a fully executed Notice, Consent, and Reference of a Civil Action to a Magistrate Judge, available at* https://nysd.uscourts.gov/sites/default/files/2018-06/AO-3.pdf.]

2.    The parties [have ☑ / have not _____] conferred pursuant to Fed. R. Civ. P. 26(f).

3.    Alternative Dispute Resolution/Settlement

    a.    Settlement discussions [have _____ / have not ☑] taken place.

    b.    Counsel for the parties have discussed an informal exchange of information in aid of early settlement of this case and have agreed upon the following:
        N/A

    c.    Counsel for the parties have discussed the use of the following alternate dispute resolution mechanisms for use in this case:  (i) a settlement conference before a Magistrate Judge; (ii) participation in the District's Mediation Program; and/or (iii) retention of a private mediator.  Counsel for the parties propose the following alternate dispute resolution mechanism for this case:
        Private mediation

d.      Counsel for the parties recommend that the alternate dispute resolution mechanism designated in paragraph 3(c) be employed at the following point in the case (*e.g.*, within the next 60 days; after the deposition of plaintiff is completed (specify date); after the close of fact discovery): Completion of all discovery

e.      The use of any alternative dispute resolution mechanism does not stay or modify any date in this Order.

4.      Except for amendments permitted by Fed. R. Civ. P. 15(a)(1) and this Court's Individual Rules of Practice in Civil Cases ("Individual Rules"), amended pleadings may not be filed and additional parties may not be joined except with leave of the Court.  Any motion to amend or to join additional parties shall be filed within 30 days from the date of this Order.  [*Absent exceptional circumstances, a date not more than 30 days following the initial pretrial conference.*]

5.      Initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1) shall be completed no later than 14 days from the date of this Order.  [*Absent exceptional circumstances, within 14 days of the parties' conference pursuant to Rule 26(f).*]

6.      [*If applicable*]  The plaintiff(s) shall provide HIPAA-compliant medical records release authorizations to the defendant(s) no later than N/A. [*Absent exceptional circumstances, a date not more than 10 days following the initial pretrial conference.*]

7.      Fact Discovery

a.      All fact discovery shall be completed no later than December 16, 2022. [*A period not to exceed 120 days, unless the Court finds that the case presents unique complexities or other exceptional circumstances.*]

b.      Initial requests for production of documents pursuant to Fed. R. Civ. P. 34 shall be served by July 29, 2022.

c.      Interrogatories pursuant to Rule 33.3(a) of the Local Civil Rules of the Southern District of New York shall be served by July 29, 2022.  No Rule 33.3(a) interrogatories need be served with respect to disclosures automatically required by Fed. R. Civ. P. 26(a).

d.      Unless otherwise ordered by the Court, contention interrogatories pursuant to Rule 33.3(c) of the Local Civil Rules of the Southern District of New York must be served no later than thirty (30) days before the close of discovery.  No other interrogatories are permitted without prior express permission of the Court.

e.      Depositions pursuant to Fed. R. Civ. P. 30, 31 shall be completed by December 16, 2022.

f.      Requests to admit pursuant to Fed. R. Civ. P. 36 shall be served by November 14, 2022. [*Absent exceptional circumstances, a date not less than 30 days prior to the date set forth in paragraph 7(a).*]

g.      Any of the deadlines in paragraphs 7(b), (c), (e), and (f) may be extended by the written consent of all parties without application to the Court, provided that all fact discovery is completed by the date set forth in paragraph 7(a).

8.      Expert Discovery

a.      Anticipated types of experts, if any:
Depending on SMV's defenses, Mt. Hawley anticipates a potential need for expert testimony on the following subjects: 1) construction; 2) repair costs and estimation; 3) accountant/economist; and 4) insurance brokers and insurance products

b.      All expert discovery shall be completed no later than February 24, 2023 _____.
[*Absent exceptional circumstances, a date 45 days from the date set forth in paragraph 7(a). Omit unless types of experts are identified.*]

c.      Every party-proponent of a claim (including any counterclaim, cross-claim, or third-party claim) that intends to offer expert testimony in respect of such claim must make the disclosures required by Fed. R. Civ. P. 26(a)(2) by January 13, 2023 _____.
[*Absent exceptional circumstances, the date set forth in paragraph 7(a).*] Every party-opponent of such claim that intends to offer expert testimony in opposition to such claim must make the disclosures required by Fed. R. Civ. P. 26(a)(2) by January 27, 2023 _____. [*Absent exceptional circumstances, a date two weeks following the preceding date.*]

d.      No expert testimony (whether designated as "rebuttal" or otherwise) will be permitted by other experts or beyond the scope of the opinions covered by the aforesaid disclosures without the Court's express prior leave, application for which must be made no later than 10 days after the date specified in the immediately preceding sentence. All experts may be deposed, but such depositions must occur within the time limit set forth for expert discovery in paragraph 8(b).

9.      All counsel must confer to discuss settlement within 14 days following the close of fact discovery.

10.     Motions for summary judgment, if any, shall be filed no later than March 27, 2023 _____.
[*Absent exceptional circumstances, 30 days from the date in paragraph 8(b) (i.e., the completion of discovery).*] Pursuant to the authority of Fed. R. Civ. P. 16(c)(2) and the Court's Individual Rule 2(C), any motion for summary judgment will be deemed untimely unless a request for a pre-motion conference relating thereto is made in writing within one week after the close of discovery. The parties should review the Court's Individual Rule 2(C) for further details on the submission of, and responses to, pre-motion letters. In cases where the Court sets a post-discovery status conference, the parties may request that the previously scheduled conference also serve as the pre-motion conference.

11.     The joint pretrial order shall be due 30 days from the close of discovery, or if any dispositive motion is filed, 21 days from the Court's decision on such motion. The filing of the joint pretrial order and additional submissions shall be governed by Fed. R. Civ. P. 26(a)(3) and the Court's Individual Rule 5.

12.     The parties expect that this case [is ____ / is not [✔] ] to be tried to a jury.

13.     Counsel for the parties have conferred and their present best estimate of the length of trial is
        ~~ten (10) days~~                .

14.     Other issues to be addressed at the Initial Pretrial Conference, including those set forth in
        Fed. R. Civ. P. 26(f)(3), are set forth below.
        Stipulated Confidentiality Agreement and Protective Order


Counsel for the Parties:

Michael D. Prough                               Jay B. Spievack

Prough Law, APC                                 Cohen Tauber Spievack & Wagner, P.C.


        [*TO BE COMPLETED BY THE COURT:*]

        The Court will hold a status conference on  March 15, 2023 at 2:00 p.m.                .
A joint letter updating the Court on the status of the case shall be filed on ECF by
 March 8, 2023           .  The letter should include the following information in separate paragraphs:

        (1) all existing deadlines, due dates, and/or cut-off dates;

        (2) a brief description of any outstanding motions;

        (3) a brief description of the status of discovery and of any additional discovery that remains
            to be completed;

        (4) the status of settlement discussions;

        (5) the anticipated length of trial and whether the case is to be tried to a jury;

        (6) whether the parties anticipate filing motions for summary judgment; and

        (7) any other issue that the parties would like to address at the pretrial conference or any
            other information that the parties believe may assist the Court.


        This Order may not be modified or the dates herein extended, except by further Order of
this Court for good cause shown.  Any application to modify or extend the dates herein (except as
provided in paragraph 7(g)) shall be made in a written application in accordance with the Court's
Individual Rule 1(E) and shall be made no less than 2 business days prior to the expiration of the
date sought to be extended.

        SO ORDERED.

Dated: June 29, 2022                            _____
New York, New York                              GREGORY H. WOODS
                                                United States District Judge

4