# EXHIBIT 7

1  MICHAEL D. PROUGH (SBN168741)
   mdp@proughlaw.com
2  DEAN C. BURNICK (SBN 146914)
   dcb@proughlaw.com
3  PROUGH LAW, APC
   1550 Parkside Drive, Suite 200
4  Walnut Creek, CA 94596
   Telephone: (925) 433-5894
5  Facsimile: (925) 482-0929

6  Attorneys for Defendant
   MT. HAWLEY INSURANCE COMPANY
7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              COUNTY OF NAPA – UNLIMITED JURISDICTION

10

11  SPRING MOUNTAIN VINEYARD, INC.,     )   Case No.  22CV000270
                                        )
12          Plaintiff,                  )
                                        )   **DEFENDANT MT. HAWLEY**
13     v.                               )   **INSURANCE COMPANY'S NOTICE**
                                        )   **OF DEMURRER AND DEMURRER TO**
14  LANDMARK AMERICAN INSURANCE         )   **PLAINTIFF'S SECOND AMENDED**
    COMPANY, KINSALE INSURANCE          )   **COMPLAINT; MEMORANDUM OF**
15  COMPANY, MT. HAWLEY INSURANCE       )   **POINTS AND AUTHORITIES**
    COMPANY, HALLMARK SPECIALTY         )
16  INSURANCE COMPANY, WESTERN          )
    WORLD INSURANCE COMPANY, AXIS       )   Date:  February 2, 2023
17  SURPLUS INSURANCE COMPANY,          )   Time:  8:30 a.m.
    ARTHUR J. GALLAGHER & CO., and      )   Dept.: A
18  DINA SMITH,                         )
                                        )   Action Filed: March 11, 2022
19          Defendants.                 )
                                        )
20  _____)

21  TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

22          PLEASE TAKE NOTICE that on February 2, 2023 at 8:30 a.m. or as soon thereafter as

23  counsel may be heard in Courtroom A of the above-entitled Court, located at 825 Brown St.,

24  Napa, California 94559 (Historic Courthouse), the Court will hear the demurrer of defendant Mt.

25  Hawley Insurance Company (Mt. Hawley") to the Second, Third, and Fifth Causes of Action in

26  the Second Amended Complaint filed by plaintiff Spring Mountain Vineyard, Inc. ("Plaintiff") on

27  October 24, 2022 (the "SAC").

28          Napa Superior Court uses a Tentative Ruling System. To receive the tentative ruling, visit

                                          1

Case: 22-10381   Doc# 250   Filed: 02/21/23   Entered: 02/21/23 22:37:10   Page 80 of 22   9080

the court's website at http://www.napa.courts.ca.gov or telephone the court at (707) 299-1270 after 3:00 p.m. the court day before the scheduled hearing date. Unless the court directs otherwise, no oral argument will be permitted unless a party or counsel for a party requires a hearing by calling the court and all other parties or counsel no later than 4:00 p.m. the court day before the hearing.

Mt. Hawley's demurrer is brought on the grounds that Plaintiff's Second and Third Causes of Action for Breach of Contract, and Fifth Cause of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing, fail to state facts sufficient to constitute a cause of action against Mt. Hawley pursuant to Code of Civil Procedure section 430.10(e).

Mt. Hawley's demurrer will be based upon this Notice, the Demurrer, the Memorandum of Points and Authorities, the supporting Request for Judicial Notice and Declaration of Michael D. Prough, the SAC, all pleadings, documents, and records on file herein and such other and further materials as may be introduced at the hearing of this matter.

As set forth in the accompanying Declaration of Dean C. Burnick, this Demurrer is filed after the parties met and conferred on November 30, 2022 as required by Code of Civil Procedure section 430.41 and were unable to resolve the dispute.

Dated: December 22, 2022                          PROUGH LAW, APC


                                                  By: /s/*Michael D. Prough*

                                                  Attorneys for Defendant
                                                  Mt. Hawley Insurance Company

2

**DEMURRER**

Defendant Mt. Hawley Insurance Company ("Mt. Hawley") respectfully submit the following demurrer to the Second Amended Complaint filed by plaintiff Spring Mountain Vineyard, Inc. on October 24, 2022 (the "SAC").

### DEMURRER TO SECOND CAUSE OF ACTION

The Second Cause of Action of the SAC fails to state facts sufficient to constitute a cause of action for breach of contract against Mt. Hawley. (Code of Civ. Proc. §430.10(e)).

### DEMURRER TO THIRD CAUSE OF ACTION

The Third Cause of Action of the SAC fails to state facts sufficient to constitute a cause of action for breach of contract against Mt. Hawley. (Code of Civ. Proc. §430.10(e)).

### DEMURRER TO FIFTH CAUSE OF ACTION

The Fifth Cause of Action of the SAC fails to state sufficient facts to constitute a cause of action for breach of the implied covenant of good faith and fair dealing against Mt. Hawley. (Code of Civ. Proc. §430.10(e)).

Dated: December 22, 2022                                    PROUGH LAW, APC


By: /s/*Michael D. Prough*

Attorneys for Defendant
Mt. Hawley Insurance Company

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ………………………………………………………..    1

FACTUAL BACKGROUND ………………………………………………..    3

STANDARDS ………………………………………………………………    5

     A. Demurrer ……………………………………………………………    5

     B. Contract Interpretation ………………………………………………    6

     C. Choice of Law ………………………………………………………    7

LEGAL ARGUMENT ……………………………………………....................    7

     I.    SMV CANNOT STATE A CLAIM FOR BREACH OF CONTRACT……    7

     II.   SMV CANNOT STATE A CLAIM FOR BAD BAITH …………………..    12

CONCLUSION ………………………………………………………..    14

i

GT HAWAII INSURANCE COMPANY'S DEMURRER TO SECOND AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**Cases**                                                                                            **Page(s)**

*Baldwin v. AAA Northern Calif., Nevada & Utah Ins. Exchange*
(2016) 11 Cal.App.5th 545 …………………………………………………………    6

*Bank of the West v. Superior Court*
(1992) 2 Cal.4th 1254 ……………………………………………………………    6

*Behnke v. State Farm General Insurance Co.*
(2011) 196 Cal.App.4th 1433 ……………………………………………………    2,13

*Buller v. Sutter Health*
(2008) 160 Cal.App.4th 981 ………………………………………………………    5

*Cassis v. Sun Life Assur. Co.*
2018 WL 1358971 (C.D. Cal.) …………………………………………………...    2

*Cobb v. Pacific Mutual Life Ins. Co. of Cal.*
(1935) 4 Cal.2d 565 ……………………………………………………………....    2,11

*Consumer Cause, Inc. v. Arkopharma, Inc.*
(2003) 106 Cal.App.4th 824 ……………………………………………………    5

*Cooper v. Certain Underwriters at Lloyds*
(2018) 716 F.Appx. 735 …………………………………………………………    9

*Core-Mark Intern. Corp. v. Commonwealth Ins. Co.*
2005 WL 1676704 (S.D.N.Y.) …………………………………………………    12

*Denny's, Inc. v. Chicago Insurance Co.*
(1991) 234 Cal.App.3d 1786 ……………………………………………………    8,9

*Diamond v. University of So. California*
(1970) 11 Cal.App.3d 49 …………………………………………………………    2,11

*Forrest Laboratories v. Arch Ins. Co.*
(2012) 953 N.Y.S.2d 460 …………………………………………………………    1,10

*Guebara v. Allstate Insurance Co.*
(2001) 237 F.3d 987 (9th Cir.) …………………………………………………    13

*Harriprashad v. Metropolitan Prop.& Cas. Ins. Co.*
2011 WL 6337699 (E.D.N.Y.) …………………………………………………    12

*Health Net, Inc. v. American International Specialty Lines Ins. Co.*
2015 WL 5845753 (Cal.Ct. App.) (unpub.) …………………………………………    9,11

*J.P. Morgan Chase  Co. v. Indian Harbor Ins. Co.*
(2020) 847 N.Y.S.2d 17 …………………………………………………………    1,10

*Junger v. John v. Dinan Assoc., Inc.*
(2018) 84 N.Y.S.3d 574 (Sup.Ct. N.Y. App. Div.) …………………………………    7

Case: 22-1063   Doc #: 250   Filed: 02/21/23   Entered: 02/21/23 22:37:10   Page 684
of 22

MGM HAWLEY INSURANCE COMPANY'S DEMURRER TO SECOND AMENDED COMPLAINT

*Landec v. Certain Underwriters at Lloyd's*
2021 U.S. Dist. LEXIS 255145 (C.D. Cal.) ……………………………………… 7

*Liberty Surplus Insurance Corp. v. The Segal Company*
2004 WL 2102090 (S.D.N.Y.) ……………………………………………… 2,11

*Love v. Fire Insurance Exchange*
(1990) 221 Cal.App.3d 1135 ……………………………………………… 12,13

*Maryland Casualty Co. v. W. R. Grace & Co.*
1996 WL 306372 (S.D.N.Y.) ……………………………………………… 2,11

*McCall v. PacificCare of Cal., Inc.*
(2001) 25 Cal.4th 412 ……………………………………………………… 5

*Moradi-Shalal v. Fireman's Fund Insurance Company*
(1988) 46 Cal.3d 287 ……………………………………………………… 13

*Nedlloyd Lines B.V. v. Superior Court*
(1992) 3 Cal.4th 459 ……………………………………………………… 7

*Northrup Grumman Corp. v. Factory Mut. Ins. Co.*
(2011) 805 F.Supp.2d 945 (C.D. Cal.)……………………………………... 7

*N.Y. Univ. v. Cont'l Ins. Co.*
(1995) 639 N.Y.S.2d 283 ……………………………………………….. 2,12

*Oasis West Realty, LLC v. Goldman*
(2011) 51 Cal.4th 811 ……………………………………………………… 7

*Pitzer College v. Indian Harbor Ins. Co.*
(2019) 3 Cal.5th 93 ………………………………………………………… 7

*Powerine Oil Co., Inc. v. Superior Court*
(2005) 37 Cal.4th 377 ……………………………………………………… 8

*Qualcomm, Inc. v. Certain Underwriters at Lloyd's, London*
(2008) 161 Cal.App.4th 184 ……………………………………………….. 1,8,9

*Quatlttrocchi v. Allstate Indem. Co.*
(2019) 775 Fed Appx. 330 (9th Cir.) ……………………………………… 8

*San Diego Housing Comm. v. Industrial Indemnity Co.*
(1998) 68 Cal.App.4th 526 ……………………………………………… 13

*Scott v. JP Morgan Chase Bank, NA*
(2013) 214 Cal.App.4th 743 ……………………………………………… 6

*Scottsdale Ins. Co. v. Dickstein Shapiro*
(2019) 389 F. Supp.3d 794 ……………………………………………….. 9

*Secard Pools, Inc. v. Kinsale Ins. Co.*
(2018) 732 Fed.Appx. 616 (9th Cir.) ……………………………………… 13

iii

*Span, Inc. v. Associated International Ins. Co.*
(1991) 227 Cal.App.3d 463 ……………………………………………….. 8

*Starr Indem. & Liability Co. v. Belger*
2016 WL 7646996 (C.D. Cal.) ………………………………………… 9

*10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co.*
(2011) 634 F.3d 112 (2d Cir.) …………………………………………. 6

*Thornton v. California Unemployment Ins. Appeals Bd.*
(2012) 204 Cal.App.4th 1403 …………………………………………. 5

*Travelers v. Actavis, Inc.*
(2017) 16 Cal.App.5th 1026 ………………………………………….. 6

*Violet Realty, Inc. v. Affiliated FM Insurance Co.*
(2017) 267 F.Supp.3d 384 ……………………………………………. 2

*Vitrano v. State Farm Ins. Co.*
2008 WL 2696156 (S.D.N.Y.) …………………………………………. 12

*Waller v. Truck Ins. Exch.*
(1995) 11 Cal. 4th 1 …………………………………………………... 2,6,13

*Washington Mutual Bank v. Superior Court*
(2001) 24 Cal.4th 906 ………………………………………………… 7

*World Trade Ctr. Props. LLC v. Hartford Fire Ins. Co.*
(2003) 345 F.3d 154 ………………………………………………….. 6

**Statutes**

Cal. Civ. Code § 1440 ………………………………………………… 2

Cal. Civ. Code §1639 ………………………………………………. 6

Cal. Civ. Code § 3294 ………………………………………………… 5

Cal. Code Civ. Proc. § 430.30(a) ……………………………………. 5

Cal. Ins. Code § 790.03(h) …………………………………………… 5,13

Evid. Code § 452(d) …………………………………………………… 5

**Texts**

Croskey, Heeseman & Ehrlich, *California Practice Guide: Insurance Litigation*
§§ 8.227-9:227.1 (Rutter Group 2022) …………………………………... 9

Weil & Brown, *Civil Procedure Before Trial*, § 7:14 (Rutter Group 2022) ……….. 5

iv

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

SMV does not, and cannot, allege that the policies underlying Mt. Hawley's layer of excess coverage have exhausted. Mt. Hawley's policy attaches above $10 million. The underlying insurers have paid $7.66 million. Mt. Hawley's "Loss Payment" provision is clear, that its liability "will not attach ***until the underlying insurer(s) have paid, admitted liability for, or have been held legally liable for the full amount*** of their respective participations…." That has not happened. It may never happen. It is unclear if SMV can prove another dollar of covered loss. Much less $2.34 million. Regardless, no payment is owed by Mt. Hawley presently, as a matter of law. On these facts, SMV can state no viable claim for breach of contract, nor for bad faith.[1]

That is true whether New York law applies (per the policy's choice of law clauses) or California law applies (as SMV argues). The leading national case enforcing actual-exhaustion language, *Qualcomm, Inc. v. Certain Underwriters at Lloyd's, London* (2008) 161 Cal.App.4th 184, has been followed in New York,[2] California and across the country. Its fundamental premise, that the explicit contract language must be given effect, is much the rule everywhere.

SMV admits that Landmark and Kinsale have not exhausted their underlying policy limits. (SAC, ¶ 6, 152, 166.) SMV admits that Mt. Hawley's payment obligation has not been triggered (SAC, ¶ 7, 153, 167) ("***when*** triggered"). SMV has also stated this, repeatedly, to the federal court in New York. (Req. Jud. Notice ("RJN"), Ex. C (at p.2, § B) ("(1) SMV agrees that Mt. Hawley has no present legal obligation to pay SMV any sums for loss or damage because the purported first-layer excess policies … have not been exhausted….").[3] SMV tries to sidestep

---

[1] This demurrer is not directed at the declaratory relief (first and fourth) causes of action. SMV has alleged a controversy exists, under CCP § 1060, regarding proper interpretation of the contract(s).

[2] *See J.P. Morgan Chase & Co. v. Indian Harbor Ins. Co.* (2012) 847 N.Y.S.2d 17, 24-26 (following *Qualcomm*); *Forrest Laboratories v. Arch Ins. Co.* (2012) 953 N.Y.S.2d 460, 465-466 (same).

[3] Likewise, SMV stated in open court: "the policy language that [Mt. Hawley] has in its policy means that I have no claim against them under that until the underlying policy is exhausted…. And I agree with them on that. I don't know under New York law yet whether that is the same law. I think that the contract clearly states it." (RJN, Ex. D at 16:8-14.) And again in a motion filed September 23, 2022: "Moreover, given that Mt. Hawley's coverage obligations are not triggered until the exhaustion of the first-layer excess policies…." (RJN, Ex. E at 14:1-3.) A party's admissions contained within a judicially noticeable

1

1   *Qualcomm*, with an "anticipatory breach" theory. But that exception would swallow the

2   *Qualcomm* rule, in this context, and it fundamentally misapplies the doctrine. For an anticipatory

3   repudiation excuses only the promisee's future performance of any yet-unperformed conditions; it

4   does not otherwise change or accelerate the (allegedly) repudiating promisor's obligations under

5   the contract.[4] Here, under the plain terms of the parties' contract, a necessary precondition to Mt.

6   Hawley owing any payment (the exhaustion of the underlying policies), has not occurred.

7        SMV's lack of a viable breach of contract claim also forecloses its bad faith claim. <u>First</u>,

8   under the governing New York law, as SMV has already acknowledged, its claim for bad faith

9   breach of the insurance contract is non-cognizable. *See* SMV's 7/8/22 Opp. Brf. at 14 (arguing

10   that New York courts would not recognize its claim for bad faith); *N.Y. Univ. v. Cont'l Ins. Co.*

11   (1995) 639 N.Y.S.2d 283, 287-90; *Violet Realty, Inc. v. Affiliated FM Insurance Co.* (2017) 267

12   F.Supp.3d 384, 388 (W.D.N.Y.). <u>Second</u>, even under California law, SMV's claim fails where

13   there has been no unreasonable denial of benefits owed under the policy. *Waller v. Truck Ins.*

14   *Exch.* (1995) 11 Cal.4th 1, 35 (bad faith claim "cannot be maintained unless policy benefits are

15   due under the contract."); *Behnke v. State Farm General Insurance Co.* (2011) 196 Cal.App.4th

16   1433, 1470 (with "no viable breach of contract claim," the "claim for bad faith denial of

17   insurance benefits fails as a matter of law.")

18        SMV cannot state a viable claim for breach of contract or for bad faith. The second, third

19   and fifth causes of action should be dismissed, without leave to amend.

20

21   document may properly be considered in ruling upon a demurrer. *Del E. Webb Corp. v. Structural Materials Co.* (1981) 123 Cal.App.3d 593, 604-05. Regardless, SMV has said this clearly, formally (in

22   court), and repeatedly, because it is ***correct***. Mt. Hawley, in fact, owes no present payment obligation.

    [4] *See* Cal. Civil Code § 1440; *Cobb v. Pacific Mutual Life Ins. Co. of Cal.* (1935) 4 Cal.2d 565,

23   573 ("there can be no anticipatory breach of a unilateral contract") (SMV has pled its own performance); *Diamond v. University of So. California* (1970) 11 Cal.App.3d 49, 53-54 (plaintiff that has already

24   performed "is not prejudiced by having to wait for the arrival of the defendant's time for performance in order to sue for breach"); *Cassis v. Sun Life Assur. Co.*, 2018 WL 1358971, *8-9 (C.D. Cal.) (following

25   *Cobb* and collecting recent authority) (once plaintiff performs, "contract has become unilateral, and there can be no claim for breach in advance of Defendant's time for performance"). New York law is in accord.

26   *Liberty Surplus Insurance Corp. v. The Segal Company*, 2004 WL 2102090, *3-*4 (S.D.N.Y.) (rejecting claim for anticipatory breach: "the time set for Liberty's performance occurs upon the exhaustion of the

27   Underlying Policies"); *Maryland Casualty Co. v. W.R. Grace & Co.*, 1996 WL 306372, *1-2 (S.D.N.Y.) (rejecting claim for anticipatory breach against excess insurers: "there are as yet no damages to be assessed

28   against the defendant-insurers … because the policies underlying these insurers are not exhausted.")

# FACTUAL BACKGROUND

SMV operates vineyards and wineries on acreage near St. Helena, California. (SAC, ¶¶32, 33.) On September 27, 2020, the Glass Fire broke out in Napa County, damaging or destroying some of the buildings and other infrastructure on SMV's properties. (*Id.*, ¶¶66, 67.)

SMV's property insurance policies for the policy period of July 1, 2020 to July 1, 2021 were in effect at the time of the fire. (SAC, ¶¶1, 79.) Those policies included a lead, primary policy for $5 million issued by First Specialty / Swiss Re (the "Swiss Re Policy") (SAC, ¶¶80), first layer excess coverage (shared by Landmark and Kinsale) providing the next $5 million in coverage, (*id.*, ¶¶82, 83), and Mt. Hawley's second layer excess policy providing the next $10 million in coverage (*id.*, ¶¶85, 86; RJN at Ex. A).[5] Mt. Hawley's excess policy generally follows form to the lead, Swiss Re Policy, except where its "provisions and stipulations are more restrictive or contrary to those of" that policy. (Ex. A at MTD 10, § 4.) (*See also* SAC, ¶ 86 (policy applies "per the terms and conditions of the [Swiss Re] policy").)

The Declarations Page of the Mt. Hawley Policy states that the total coverage limit is $10 million excess of $10 million, and that "Coverage under this policy attaches excess of the underlying insurance". Ex. A at MTD 6. The Policy's Section 7, "Loss Payment", provides that:

> Liability under our policy for our share of the "Ultimate Net Loss" will not attach until the underlying insurer(s) have paid, admitted liability for, or have been held legally liable for the full amount of their respective participations of the "Ultimate Net Loss."

[*Id.*, at MTD 11.]

Both the Swiss Re Policy and the Mt. Hawley Policy contain New York choice of law clauses. The Swiss Re policy reads: "The laws of the State of New York … shall govern the construction, effect and interpretation of this insurance agreement." (RJN, Ex. B at MTD 50.) The Mt. Hawley Policy reads: "All matters arising hereunder including questions relating to the validity, interpretation, performance and enforcement of this Policy shall be determined in

---

[5] A certified copy of the Mt. Hawley Policy was included as Exhibit 4 to the Declaration of Adam Kotara in Support of Mt. Hawley's Motion to Dismiss or Stay Action, filed May 23, 2022, and is thus part of the record in this action. Another copy is filed herewith for ease of reference, as Exhibit A. The Swiss Re Policy is likewise in evidence as Exhibit 6. Relevant pages are filed herewith as Exhibit B, for ease of reference. As noted below, the contract at issue may properly be considered by the Court on a demurrer. *Scott v. JP Morgan Chase Bank, NA* (2013) 214 Cal.App.4th 743, 754-755.

3

accordance with the law and practice of the State of New York." (Ex. A at MTD 25.)

SMV made claims against its property insurers for its losses sustained during the Glass Fire. (SAC, ¶¶1, 2.) SMV pled it has collected, to date, approximately $7.66 million in policy benefits under the primary ($5M) and first-layer excess ($5M xs $5M) policies (SAC, ¶¶ 3, 4 and 6). That is the amount of SMV's loss that those insurers concluded was covered. The first-layer excess insurers, Landmark and Kinsale, have denied coverage for SMV's claim for additional benefits beyond those payments, under their policy. (SAC, ¶¶ 6, 152, 166.)

On March 11, 2022, SMV filed its Complaint in this case against Mt. Hawley, the other insurer defendants and certain broker defendants. On October 24, 2022, SMV filed its SAC in this case, asserting five causes of action against Mt. Hawley: (1) Declaratory Judgment; (2) Breach of Contract; (3) Alternative Breach of Contract; (4) Alternative Declaratory Judgment; and (5) Breach of the Implied Covenant of Good Faith and Fair Dealing. In support, SMV generally alleges that: (i) It suffered in excess of $38 million in covered property damage (SAC, ¶68); (ii) SMV's primary insurers (First Specialty and Beazley) paid their combined $5 million limit (*id.*, ¶¶3, 95, 96); (iii) SMV's first layer excess carriers, defendants Landmark and Kinsale, paid $2,659,534.32 on SMV's insurance claim but have wrongfully failed to pay their remaining policy limits, totaling $2,340,465.68. (*id.*, ¶¶ 6, 119, 121); (iv) Mt. Hawley has "denied coverage" (*id.*, ¶126) and "anticipatorily breached its coverage obligations owed to SMV… as it will not pay SMV's losses." (*Id.*, ¶¶7, 126.); and (v) Mt. Hawley has failed to promptly pay all undisputed amounts owing to SMV in breach of the implied covenant of good faith and fair dealing (*id.*, ¶99) and acted unreasonably under California law. (*Id.*, ¶100; *see also* ¶126).

In its Second Cause of Action, for Breach of Contract, SMV alleges that it fully complied with all preconditions to coverage (SAC, ¶¶148-150). SMV claims that Landmark and Kinsale breached their policies because, among other things, "they denied coverage ***and refused to exhaust*** their respective $2.5 ($5 million together) policy limit…" (*Id.*, ¶152; emphasis added.) SMV also alleges that Mt. Hawley breached its policy because it "indicated it anticipatorily intends to, among other things, refuse to exhaust its $10 million policy limit ***when triggered***…." (*Id.*, ¶153; emphasis added.)

The Third Cause of Action, for Alternative Breach of Contract, focusses on SMV's position that the 2020-21 property policies, including the Mt. Hawley Policy, provide "blanket open property coverage" and that the Insurer defendants, including Mt. Hawley, are wrongfully pushing "a purported interpretation of those policies… that significantly deviate from the property coverages that they promised to SMV." (SAC, ¶¶162, 165.) SMV again alleges that Landmark and Kinsale have "breached their respective 20-21 first layer excess property policies because they denied coverage ***and refused to exhaust*** their respective policy limits…." (*Id*., ¶166; emphasis added.) SMV also alleges that Mt. Hawley breached its policy because, among other things, "it anticipatorily intends to refuse to advance legitimate amounts due and owing to SMV for its Glass Fire-related damages ***when triggered***…." (*Id*., ¶167; emphasis added.)

In its Fifth Cause of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing, SMV claims that Mt. Hawley has acted in bad faith by, among other things, unreasonably delaying and refusing to pay covered losses, and by allegedly conducting "a sham coverage investigation" -- entitling SMV to punitive damages under California Civil Code § 3294. (SAC, ¶¶178, 179, 183.) SMV also claims that Mt. Hawley has violated "applicable Insurance Codes and Regulations… including… Cal. Ins. Code § 790.03(h)." (*Id*., ¶180.)

## STANDARDS

### A.  Demurrer

A demurrer tests the legal sufficiency of the factual allegations of a complaint to state a cause of action. *Thornton v. California Unemployment Ins. Appeals Bd.* (2012) 204 Cal.App.4th 1403, 1411; *McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415. It is properly sustained where "the complaint fails to plead, or . . . the defendant negates [] any essential element of a particular cause of action." *Consumer Cause, Inc. v. Arkopharma, Inc.* (2003) 106 Cal.App.4th 824, 827. Courts assume the truth of properly pleaded *facts*, but not contentions, deductions, or conclusions of law. *Buller v. Sutter Health* (2008) 160 Cal.App.4th 981, 985-986. Courts may consider judicially noticed facts and documents—including the essential documents upon which the Plaintiffs' claims are premised. CCP §430.30(a). Judicially noticeable matters include records of "any court of this state" (Ev. C. § 452(d)), including records in the pending

action. Weil & Brown, Civil Procedure Before Trial, §7:14 (Rutter Group 2022).

> Where judicial notice is requested of a legally operative document – like a contract – the court may take notice not only of the fact of the document and its recording or publication, but also facts that clearly derive from its legal effect… Moreover, whether the fact derives from the legal effect of a document or from a statement within a document, the fact may be judicially noticed where … the fact is not reasonably subject to dispute.

*Scott v. JP Morgan Chase Bank, NA* (2013) 214 Cal.App.4th 743, 754-755. Where the operative document is susceptible to only one reasonable interpretation, the Court may properly give it effect. *Baldwin v. AAA Northern Calif., Nevada & Utah Ins. Exch.* (2016) 11 Cal.App.5th 545, 553 (demurrer sustained under plain meaning of contract, without leave to amend).

**B. <u>Contract Interpretation</u>**

The contract interpretation standards of New York and California law do not differ materially, for purposes of this motion. Both give effect to plain contract language.

Under New York law, "The cardinal principle for the construction and interpretation of insurance contracts—as with all contracts—is that the intentions of the parties should control. Unless otherwise indicated, words should be given the meanings ordinarily ascribed to them and absurd results should be avoided. As we have stated before, the meaning of particular language found in insurance policies should be examined in light of the business purposes sought to be achieved by the parties and the plain meaning of the words chosen by them to effect those purposes." *World Trade Ctr. Props., L.L.C. v. Hartford Fire Ins. Co.* (2003) 345 F.3d 154, 184 (2d Cir.) (internal quotation marks omitted); *see also 10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co.* (2011) 634 F.3d 112, 119 (2d Cir.)… (instructing that courts must give 'unambiguous provisions of an insurance contract ... their plain and ordinary meaning')."

Under California law, insurance contracts are construed according to the same general rules that govern the interpretation of any contract. *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1265-66. "The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the 'mutual intention' of the parties." *Travelers v. Actavis, Inc.*, (2017) 16 Cal.App.5th 1026, 1037. Such intent "is to be inferred, if possible, solely from the written provisions of the contract." *Id.* (*citing* Cal. Civil Code §1639). The "clear and explicit meaning of these provisions, interpreted in their 'ordinary and popular

Case: 22-1031 HAWLEY INSURANCE COMPANY'S DEMURRER TO SECOND AMENDED COMPLAINT Page: 092
Doc: # 260-7 Filed: 12/20/23 Entered: 10/31/20 12:11:19 Page: 14 of 22

sense" are generally to be applied. *Id.*; *Waller*, 11 Cal.4th at 18-19.

## C. <u>Choice of Law</u>

Both the lead Swiss Re Policy (to which Mt. Hawley follows form) and Mt. Hawley's excess policy contain New York choice of law clauses. Such clauses are strongly presumed to be valid and enforceable in California courts. *Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 917 (California law "reflects strong policy considerations favoring the enforcement of freely negotiated choice of law clauses"); *Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459, 462. A party resisting enforcement must "establish both that the chosen law is contrary to a fundamental policy of California and that California has a materially greater interest in the determination of the particular issue." *Id.* at 917. Only an applicable, fundamental public policy may be invoked in attempting to override the contractual choice of law as to a particular issue. *Pitzer College v. Indian Harbor Ins. Co.* (2019) 8 Cal.5th 93, 105; *Landec v. Certain Underwriters at Lloyds* 2021 U.S. Dist. LEXIS 255145, *8 (C.D. Cal.). California's recognition of a tort cause of action for breach of the implied covenant of good faith and fair dealing ("bad faith") "is not a fundamental public policy of California." *Pitzer*, 8 Cal.5th at 105.

New York law governs "All matters arising" under the Policy, including "questions related to the validity, interpretation, performance and enforcement" of the contract between SMV and Mt. Hawley, (Ex. A at MTD 25), and therefore, all claims in this case.

## **<u>LEGAL ARGUMENT</u>**

## I. <u>SMV CANNOT STATE A CLAIM FOR BREACH OF CONTRACT</u>

The basic elements of a common law cause of action for breach of contract are the same under New York and California law: (1) the existence of a contractual duty; (2) plaintiff's performance or excuse for performance; (3) defendant's breach of the contractual duty; and (4) resulting damages. *See generally, e.g., Junger v. John V. Dinan Assoc., Inc.* (2018) 84 N.Y.S.3d 574 (Sup. Ct. N.Y. App. Div.) (New York law); *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821 (California law). Absent a controlling policy provision, in order to trigger an excess insurer's duty to pay, the duty lies with the insured to establish a primary policy's exhaustion. *Northrop Grumman Corp. v. Factory Mut. Ins. Co.* (2011) 805 F.Supp.2d 945, 954

1    (C.D. Cal.) (citations omitted). SMV has not pled and cannot show elements (1) (duty), (3)

2    (breach) or (4) (contract damages).[6] The lack of exhaustion of the underlying policies, which is

3    undisputed, means that Mt. Hawley has owed (and still owes) no duty to pay any sums under the

4    Policy; it cannot have breached a duty to pay (since no payment is owed); and SMV has sustained

5    no contract damages. In sum, the exhaustion of the underlying policies is a condition precedent to

6    Mt. Hawley owing any payment obligation under its excess policy with SMV. Its non-occurrence

7    bars any claim for duty, breach or damages, under the contract.

8       The Court of Appeal's decision in *Qualcomm* is instructive. (As noted above in footnote

9    2, New York courts have followed *Qualcomm*). The Court of Appeal affirmed the Superior Court

10    sustaining a demurrer by an excess insurer, Certain Underwriters, where the plaintiff's "pleadings

11    establish the primary insurer neither paid the 'full amount' of its liability limit nor had it become

12    legally obligated to pay the full amount of the primary liability limit…" *Qualcomm*, 161

13    Cal.App.4th at 188. The court noted the general understanding and purpose of excess insurance,

14    "coverage whereby, under the terms of the policy, liability attaches only after a predetermined

15    amount of primary coverage has been exhausted." *Id.* at 193-94 (internal citations omitted). It is

16    "expressly understood by both the insurer and insured to be secondary to specific underlying

17    coverage which will not begin until after that underlying coverage is exhausted and which does

18    not broaden that underlying coverage." *Id.* at 194 (internal citations omitted). Thus, "California

19    case law has consistently protected the limited and shielded position of the excess carrier when

20    the obligations of the excess carriers are set in clear phrases." *Id.*

21       The language at issue in *Qualcomm* provided that the excess insurer, "Underwriters"

22    would "be liable only after the insurers under each of the Underlying policies ***have paid or have***

23    ***been held liable to pay the full amount***" of their underlying limits. *Id.* at 195. [Under the Mt.

24    Hawley excess policy, liability "will not attach until the underlying insurer(s) ***have paid, admitted***

25    ***liability for, or have been held legally liable for the full amount***" of their respective limits.] As

26

27       [6] SMV pled its own performance under the contract. (SAC, ¶ 148-50). For purposes of this

28    demurrer, that element of the breach of contract claim is not being addressed. The lack of exhaustion of the underlying policies (admitted by SMV) affects the other three elements, as discussed above.

8

for the "have paid … the full amount" clause, the *Qualcomm* court found "it cannot have any

other reasonable meaning other than actual payment of no less than the $20 million underlying

limit." *Id., citing Powerine Oil Co., Inc. v. Superior Court (Powerine II)* (2005) 37 Cal.4th 377,

402-03 & fn. 10; *Denny's, Inc. v. Chicago Insurance Co.* (1991) 234 Cal.App.3d 1786, 1790.

Thus, "Underwriter's liability—it's reimbursement obligation—did not arise until [an underlying

insurer] actually paid the *full $20 million amount* of its underlying limit." *Id.* at 196 (emphasis in

original); *see also*, *Span, Inc. v. Associated International Ins. Co.* (1991) 227 Cal. App. 3d 463

(language of excess policy was not ambiguous where it required exhaustion of underlying limit

by payment before excess insurer was obligated).

As for the "have been held liable to pay" clause, the court held that it too was not

satisfied, for "Qualcomm's complaint does not allege (nor does Qualcomm argue) that the

settlement between it and [underlying insurer] required it to accept responsibility or liability for

the *full amount* of the $20 million limit on the underlying policy." *Qualcomm.* at 196 (emphasis

in original). Nor did the complaint allege that the underlying insurer was "obligated to pay the

$20 million pursuant to a court order or judgment," so to satisfy the "held liable to pay"

requirement. Thus, "Underwriters is under no obligation to provide excess coverage." *Id.* at 196-

97.  The court canvassed case law from around the country and considered several "public

policy" arguments made by Qualcomm, before ultimately concluding that no legal basis existed

for declining to enforce the plain contract language of the excess policy. *Id.* at 197-204. "If

contractual language in an insurance contract is clear and unambiguous, it governs, and we do not

rewrite it for any purpose." *Id.* at 204 (citations omitted).

*Qualcomm* has been widely followed both within California[7] and by courts around the

---

[7]  Courts applying California law have regularly followed *Qualcomm* and enforced exhaustion requirements. *Quattrocchi v. Allstate Indem. Co.* (2019) 775 Fed.Appx.330 (9th Cir.) (quoting *Qualcomm*; "a court's 'assessment of the policy language must be made in the context of the nature of [the] policy as an excess insurance policy…'"); *Cooper v. Certain Underwriters at Lloyds* (2018) 716 Fed.Appx.735, 736 (C.D. Cal.) (citing *Qualcomm*; "Plaintiffs do not identify any material differences between New York and California in interpreting the disputed insurance policy, and the result is the same under the laws of both states. The excess policy unambiguously requires exhaustion of underlying policy limits 'by reason of the payment... by the insurers of the Underlying Policies.' This forecloses the possibility of exhaustion through payment by parties other than the underlying insurers."); *Scottsdale Ins. Co. v. Dickstein Shapiro*

9

country, including New York. In *Forrest Laboratories*, 953 N.Y.S.2d at 465, the court cited to cases from around the country, including *Qualcomm*, and held that an excess insurer had no obligation to pay until "after the underlying insurers pay up to their policy limits." Similarly, in *JP Morgan Chase*, 947 N.Y.S.2d at 22-26, the court followed *Qualcomm* and granted summary judgment for the excess insurer, holding that "a 'paid or have been held liable to pay' provision required primary insurance to be exhausted or depleted by actual payment of losses by the underlying insurer."

Applying the plain language of Mt. Hawley's Policy, consistent with *Qualcomm*, SMV has not stated and cannot state a viable breach of contract claim against Mt. Hawley. For no contractual payment duty is owed, none has been breached, and SMV has no contractual damages (since nothing is owed to it under the contract). Mt. Hawley's liability under its policy has not attached and will not attach (even assuming SMV otherwise proves an entitlement to additional coverage) "until the underlying insurer(s) have paid, admitted liability for, or have been held legally liable for the full amount" of their policies. In fact, however, as SMV admits and has pled, the "full amount" ($5 million) of the first-layer excess policy, of Landmark and Kinsale, has not been "paid," only $2.66 million of it has been. (SAC, ¶¶ 6, 152, 166.) Nor have those insurers "admitted liability" for the rest; rather, they denied coverage. (*Id.*) Nor have Landmark and Kinsale "been held legally liable for the full amount" of their policy. They have answered, denied liability, and remain active party defendants in this action. For these reasons, each of SMV's

(2019) 389 F.Supp.3d 794, 821-822 (C.D. Cal.) (Applying *Qualcomm* and *Denny's* to find underlying exhaustion; "California courts analyzing similar 'have paid' language in excess insurance policies—also referred to as 'loss payable' clauses—have concluded that such language unambiguously makes the excess insurance policy attach when and only when the full amount of the underlying insurance policies has actually been paid by the primary insurers."); *Starr Indem. & Liability Co. v. Belger*, 2016 WL 7646996 (C.D. Cal.) (Applying *Qualcomm* to find underlying exhaustion; "It is clear that the underlying policy must be exhausted before the excess insurance pays out"); *see, generally*, Croskey, Heeseman & Ehrlich, *California Practice Guide: Insurance Litigation*, §§8.227-8:227.1 (Rutter Group 2022). *See also, e.g.*, *Health Net, Inc. v. American International Specialty Lines Ins. Co.*, 2016 WL 5845753, *16 (Cal. Ct. App.) (unpub.) (following *Qualcomm*; "The exhaustion clauses in the excess policies dictate the same result here. Each of the policies provides the Excess Insurers' reimbursement obligation is not triggered until 'exhaustion of all of the limits of liability of such Underlying Insurance solely as the result of *actual payment* of claims or losses thereunder.'" [Original emphasis.] Health Net's complaint admits AISLIC has not made 'actual payment' of its $25 million limit. Accordingly, Health Net did not allege an essential element of its breach of contract claim.")

breach of contract claims, its Second and Third Causes of Action, fail as a matter of law.

SMV tries to plead around *Qualcomm*, and the plain contract language, by alleging that Mt. Hawley has committed an "anticipatory breach" (by investigating the claim and *not* denying coverage before it is even on the risk). That doctrine does not apply in these circumstances, and it cannot be invoked to short-circuit the exhaustion provisions and impose heightened obligations on Mt. Hawley (to make it owe payment notwithstanding the lack of exhaustion). Courts have repeatedly rejected SMV's gambit. In *Liberty Surplus*, 2004 WL 2102090 (New York law), the insured (Segal) tried to plead "anticipatory breach" against the excess insurer, notwithstanding the fact the underlying insurance had not been exhausted. The court rejected the claim. "A contract 'is not breached until the time set for performance has expired…. In this case, the time set for Liberty's performance occurs upon the exhaustion of the Underlying Policies. Because Segal has presented no evidence showing that this event has occurred, its claim for anticipatory breach is premature…. [¶] Moreover, Segal has presented no evidence that the Underlying Policies have been exhausted, making any assessment of damages inappropriate." *Id.*, at *3-4. In *Maryland Casualty*, 1996 WL 306372 (New York), the insured sued several excess insurers, notwithstanding the non-exhaustion of underlying policies. The court dismissed the breach of contract claims and rejected the insured's "anticipatory breach" theory. While noting that a defensive pleading was not "an unequivocal intent to forego performance," the court also held that "there are as yet no damages to be assessed against the defendant-insurers … because the policies underlying those insurers are not exhausted." *Id.* at *2. And in *Health Net*, 2016 WL 5845753 (California), a demurrer was sustained for excess insurers on a breach of contract claim, where the primary insurer had not exhausted its limits (the amount of the underlying loss, if covered, far exceeded all available limits). The court rejected the anticipatory breach theory:

> Here, regardless of the character of the Excess Insurers' alleged repudiations, the conditions precedent to their performance—the underlying insurers' 'actual payment' of their policy limits—preclude Health Net from immediately seeking recovery for breach of contract. This is because an anticipatory repudiation excuses only the promisee's performance, it does not otherwise expand the promisee's rights or the repudiating promisor's obligations under the contract. [Citations omitted]. Notwithstanding the Excess Insurers' alleged repudiations, Health Net has no contractual right to payment under the excess policies until there has been 'actual payment' by each respective underlying insurer, and it cannot recover damages for breach of contract until that condition is

satisfied. The trial court did not err in sustaining the demurrer.

*Id.*, 2016 WL 5845753, *17.[8] *See also Cobb*, 4 Cal.2d at 573 ("there can be no anticipatory

breach of a unilateral contract"); *Diamond*, 11 Cal.App.3d at 53-54 (where the plaintiff "has no

future obligations to perform, he is not prejudiced by having to wait for the arrival of the

defendant's time for performance in order to sue for breach").[9]

SMV's deficient claims for breach of contract cannot be salvaged by invoking the

anticipatory breach doctrine. Mt. Hawley does not owe and has not breached any payment

obligation under its Policy, under any viable legal theory.

## II.     SMV CANNOT STATE A CLAIM FOR BAD FAITH

New York law governs this action. New York does not recognize an independent cause of

action in tort for a first-party insurer's alleged breach of the implied covenant of good faith and

fair dealing, the tort of insurance "bad faith." Outside the context of certain third-party claims

(inapplicable here), "New York law does not recognize an independent cause of action for bad

faith denial of insurance coverage." *Vitrano v. State Farm Ins. Co.*, 2008 WL 2696156, *3

(S.D.N.Y.) (renters policy); *see also* *N.Y. University*, 639 N.Y.S.2d at 287-90 (rejecting punitive

damages in first party insurance case on grounds that no independent cause of action exists for

bad faith breach of first-party insurance contract); *Harriprashad v. Metropolitan Prop. & Cas.*

*Ins. Co.*, 2011 WL 6337699 (E.D.N.Y.) (New York does not recognize a separate claim of bad

faith with respect to insurance contracts); *Core-Mark Intern. Corp. v. Commonwealth Ins. Co.*,

2005 WL 1676704, at *3 (S.D.N.Y.) ("New York law does not recognize the tort of bad faith

denial of insurance coverage."). SMV admitted this point in its arguments before this court, in its

July 8, 2022 Opposition to Mt. Hawley's motion to dismiss (p. 14): "SMV would be deprived of

its right in California to seek damages for Mt. Hawley's bad faith breach of the implied covenant

---

[8] *Health Net* is an unpublished decision (in a hundred million dollar case); it collects authority and discusses California statutory and case law on anticipatory breach in considerable detail (and in this context). Thus, while not controlling authority, it is offered for its persuasive value and reasoning.

[9] As noted above, SMV has pled that it has performed and owes no further performance under the contract. (SAC, ¶¶ 148-150.) Regardless, even if that were incorrect, any (alleged) "anticipatory breach" would only excuse SMV's own future performance. It would not enhance or accelerate Mt. Hawley's contractual obligations (if any).

of good faith and fair dealing (a claim recognized in California **but not** in New York"). Thus, SMV's fifth cause of action fails to state a claim, as a matter of law.

Even if California law applied (as SMV argues), however, the bad faith claim still must be dismissed. In California, the tort for breach of the implied covenant of good faith and fair dealing, or bad faith, does not exist as a stand-alone claim, untethered from the insurance contract. Rather, "there are at least two separate requirements to establish breach of the implied covenant: (1) benefits due under the policy must have been withheld; and (2) the reason for withholding benefits must have been unreasonable or without proper cause." *Love v. Fire Insurance Exchange* (1990) 221 Cal.App.3d 1136, 1151. In other words, "because a contractual obligation is the underpinning of a bad faith claim, such a claim cannot be maintained unless policy benefits are due under the contract." *Waller* 11 Cal.4th at 35; *see also Guebara v. Allstate Insurance Co.* (2001) 237 F.3d 987 (9th Cir.) (following *Love*). As the Supreme Court held, *Love*'s conclusion "that a bad faith claim cannot be maintained unless policy benefits are due is in accord with the policy in which the duty of good faith is [firmly] rooted.... Absent that contractual right, however, the implied covenant has nothing upon which to act as a supplement, and 'should not be endowed with an existence independent of its contractual underpinnings." *Waller*, 11 Cal.4th at 36.

Accordingly, "[w]here a breach of contract cannot be shown, there is no basis for a finding of breach of the implied covenant." *San Diego Housing Comm. v. Industrial Indemnity Co.* (1998) 68 Cal.App.4th 526, 544 (1998); *see also Behnke v. State Farm General Insurance Co.* (2011) 196 Cal.App.4th 1443, 1470 (with "no viable breach of contract claim," the "claim for bad faith denial of insurance benefits fails as a matter of law"); *Secard Pools, Inc. v. Kinsale Ins. Co.* (2018) 732 Fed.Appx. 616, 617 (9th Cir.) ("because Kinsale did not breach the insurance agreement, plaintiffs' claim for breach of the implied covenant of good faith and fair dealing also fails as a matter of law.").

As argued above, SMV cannot maintain its breach of contract causes of action (its second and third causes of action) against Mt. Hawley, because the underlying policies are not exhausted and Mt. Hawley therefore owes no payment obligation under its Policy. Because SMV cannot state a breach of contract count, it also cannot state a cause of action against Mt. Hawley for

| | |
|---|---|
| 1 | breach of the implied covenant of good faith and fair dealing. *Love*, 221 Cal.App.3d at 1151; |
| 2 | *Waller*, 11 Cal.4th at 36; *San Diego Housing Comm.*, 68 Cal.App.4th at 544; *Behnke*, 196 |
| 3 | Cal.App.4th at 1470; *Secard Pools*, 732 Fed.Appx. at 617. Finally, to the extent that SMV seeks |
| 4 | to salvage its fifth cause of action by its passing reference to alleged and unspecified violations of |
| 5 | Insurance Code section 790.03(h) and related regulations, (SAC, ¶ 180), it has been settled |
| 6 | California law for over 30 years that those do not give rise to a private right of action. *Moradi-* |
| 7 | *Shalal v. Fireman's Fund Insurance Company* (1988) 46 Cal.3d 287, 304 ("Neither section |
| 8 | 790.03 nor section 790.09 was intended to create a private cause of action against an insurer…."); |
| 9 | *Zephyr Park v. Superior Court* (1989), 213 Cal.App.3d 833, 837-38 (confirming *Moradi-Shalal* |
| 10 | applies to first-party claims). |
| 11 | Mt. Hawley's demurrer to SMV's fifth cause of action, for breach of the implied covenant |
| 12 | of good faith and fair dealing, should be sustained, without leave to amend. |
| 13 | **CONCLUSION** |
| 14 | For the foregoing reasons, Mt. Hawley's Demurrer to the Second, Third and Fifth Causes |
| 15 | of Action in the Second Amended Complaint should be sustained, without leave to amend. |
| 16 | Dated: December 22, 2022 PROUGH LAW, APC |
| 17 | |
| 18 | By: /s/*Michael D. Prough* |
| 19 | Attorneys for Defendant |
| 20 | Mt. Hawley Insurance Company |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

14