1  Victor A. Sahn (CA Bar No. 97299)
    victor.sahn@gmlaw.com
2  Mark S. Horoupian (CA Bar No. 175373)
    mark.horoupian@gmlaw.com
3  Steve Burnell (CA Bar No. 286557)
    steve.burnell@gmlaw.com
4  **GREENSPOON MARDER LLP**
   333 South Grand Avenue, Suite 3400
5  Los Angeles, California 90071
   Telephone: 213.626.2311
6  Facsimile: 954.771.9264
7  Attorneys for Debtor in Possession,
   Spring Mountain Vineyard Inc.

8
                    **UNITED STATES BANKRUPTCY COURT**
9
                    **NORTHERN DISTRICT OF CALIFORNIA**
10
                         **SANTA ROSA DIVISION**
11

12  In re                                  Case No. 1:22-bk-10381 CN

13  SPRING MOUNTAIN VINEYARD INC., a        Chapter 11
    Delaware corporation,
14                                          **OPPOSITION TO MOTION FOR RELIEF
                                            FROM AUTOMATIC STAY FILED BY
15  Federal EIN: 36-3844911                 MT. HAWLEY INSURANCE COMPANY**

16              Debtor.                      Filed Concurrently with attached
                                            Memorandum of Points and Authorities, and
17                                          Separately Filed Declaration of Jay B.
                                            Spievack In Support Thereof
18
                                            [Related to Docket no. 229]
19
                                            **Hearing Information:**
20                                          Date:   March 1, 2023
                                            Time:   11:00 a.m.
21                                          Place:  Courtroom 215
                                                    1300 Clay Street
22                                                  Oakland, CA 94612

23

24      TO THE HONORABLE CHARLES NOVACK, UNITED STATES BANKRUPTCY

25  JUDGE, MGG CALIFORNIA LLC, MOVANT MT. HAWLEY INSURANCE COMPANY,

26  THE OFFICE OF THE UNITED STATES TRUSTEE, AND PARTIES ENTITLED TO

27  NOTICE:

28

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

# **TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT ..................................................................1

II.    FACTUAL BACKGROUND ....................................................................4

    A.    Debtor's Prepetition Operations ...................................................4

    B.    The Prepetition Insurance Litigations ..........................................5

    C.    The California Action's Status .....................................................9

    D.    The Motion ...............................................................................12

III.    ARGUMENT ........................................................................................12

    A.    Legal Standard .........................................................................12

        1.    The *Tucson Estates* factors ............................................14

        2.    The *Curtis* factors ........................................................15

    B.    The *Tucson Estates'* Factors Weigh Strongly in the Debtor's Favor .......................16

        1.    Effect on Efficient Administration of the Estate .........................16

        2.    The Extent to Which State Law Issues  Predominate Over Bankruptcy Issues ..................18

        3.    The Difficulty or Unsettled Nature of the Applicable Law .................18

        4.    The Presence of a Related Proceeding Commenced in ...........................19

        5.    The Jurisdictional Basis, if any, Other Than 28 U.S.C. § 1334 ...............19

        6.    The Degree of Relatedness or Remoteness of  The Proceeding to the Main Bankruptcy ..........20

        7.    The Substance Rather than Form of an Asserted "Core" Proceeding .........20

        8.    The Feasibility of Severing State Law Claims  From Core Bankruptcy Matters ...............20

        9.    The Burden on the Bankruptcy Court's Docket ............................20

        10.    The Likelihood That the Commencement of the Proceeding in Bankruptcy Court Involves Forum Shopping by One of the Parties ...........21

        11.    The Existence of a Right of Jury Trial ..................................21

        12.    The Presence in the Proceeding of non-Debtor parties ....................21

**GREENSPOON MARDER LLP**
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

VAS 53426867v1

i

C. The *Curtis* Factors Weigh In Favor of Debtor ..................................................................22

    1. Whether the Relief Will Result in a Partial or Complete Resolution of the Issues ..................................................................22

    2. The Lack of any Connection With or Interference With the Bankruptcy Case ..................................................................22

    3. Whether the Foreign Proceeding Involves the Debtor as a Fiduciary ..................................................................23

    4. Whether a Specialized Tribunal Has Been Established To Hear the Particular Cause of Action and Whether That Tribunal Has the Expertise to Hear Such Cases ..................................................................23

    5. Whether the Debtor's Insurance Carrier Has Assumed Full Financial Responsibility for Defending the Litigation ..................................................................23

    6. Whether the Action Essentially Involves Third Parties, And the Debtor Functions Only as a Bailee or Conduit for the Goods or Proceeds in Question ..................................................................24

    7. Whether the Litigation in Another Forum Would Prejudice the Interests of Other Creditors, the Creditors' Committee and other Interested Parties ..................................................................24

    8. Whether the Judgment Claim Arising From the Foreign Action is Subject to Equitable Subordination under Section 510 (c) ..................................................................24

    9. Whether Movant's Success in the Foreign Proceeding Would Result In a Judicial Lien Avoidable by the Debtor Under Section 522(f) ..................................................................24

    10. The Interests of Judicial Economy and the Expeditious and Economical Determination of Litigation for the Parties ..................................................................25

    11. Whether the Foreign Proceedings Have Progressed to the Point Where the Parties are Prepared for Trial ..................................................................25

    12. The Impact of the Stay on the Parties and the "Balance of Hurt" ..................................................................25

IV. CONCLUSION ..................................................................26

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

VAS 53426867v1

ii

# **TABLE OF AUTHORITIES**

**Page**

**CASES**

*Am. Spectrum*,
    540 B.R. at 737 ............................................................................................... 16

*In re Breitburn Energy Partners LP*,
    571 B.R. 59 (Bankr. S.D.N.Y. 2017) ............................................................. 16

*In re Curtis*,
    40 B.R. 795 (Bankr. D. Utah 1984 ................................................................. 16

*In re Kronemyer*,
    405 B.R. 915 (9th Cir. 2009) .......................................................................... 15

*In re MacDonald*,
    755 F.2d 715 (9th Cir. 1985) .......................................................................... 12

*In re Plumberex Specialty Prod., Inc.*,
    311 B.R. 551(Bankr. C.D. Cal. 2004) ...................................................... 15, 16

*In re Roger*,
    539 B.R. 837, 845 (C.D. Cal. 2015 ......................................................... 15, 16

*In re Tucson Ests., Inc.*,
    912 F.2d 1162 (9th Cir. 1990) ................................................................. 14, 15

*Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*,
    458 U.S. 50 (1982) ......................................................................................... 15

**STATUTES**

11 U.S.C. § 362 ........................................................................................................ 12

11 U.S.C. § 362(a)(1) ............................................................................................... 12

11 U.S.C. § 362(d)(1) ................................................................................. 1, 12, 13, 16

28 U.S.C. § 1334 ...................................................................................................... 14

28 U.S.C. § 1334(c)(1): ....................................................................................... 14, 15

**RULES**

Federal Rules of Civil Procedure
    Rule 15(a) ......................................................................................................... 7

**GREENSPOON MARDER LLP**
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

Case: 22-10381   Doc# 251   Filed: 02/21/23   Entered: 02/21/23 22:46:08   Page 4 of 37

Spring Mountain Vineyard Inc., the debtor in possession in the above-captioned case ("Debtor"), hereby opposes the *Motion For Relief From The Automatic Stay* [Docket no. 229] (the "Motion") filed by Mt. Hawley Insurance Company ("Mt. Hawley") as follows:

## I.

## PRELIMINARY STATEMENT

At the February 15 hearing, Your Honor asked absent bankruptcy, how the Napa County Superior Court, California (the "Superior Court") and the New York Federal Court (the "NY Court") resolve which lawsuit should proceed.[1]  As shown below, the Superior Court resolved this issue.  The California Action will proceed against all defendants (including Mt. Hawley) through final adjudication of the Debtor's claims and the defendants' respective defenses and counterclaims, if any.

The NY Court, on the other hand, has not resolved this issue.  If Mt. Haley's motion is granted, the NY Court will then have to determine whether to dismiss or stay Mt. Hawley's duplicative and costly NY Action or allow it to proceed simultaneously with the California Action despite the risks of piecemeal adjudication and inconsistent rulings.

Mt. Hawley's motion for relief from the automatic stay under 11 U.S.C. § 362(d)(1) (the "Motion") for alleged "good cause" smacks of a bad faith filing.  First, Mt. Hawley waited to file the Motion until four (4) months after the Debtor filed its Chapter 11 Petition (the "Petition Date"), and more than two (2) month after Mt. Hawley received its final unfavorable ruling from the California Supreme Court denying its petition to (i) review of the Superior Court's Order After Hearing Denying Defendant Mt. Hawley Insurance Company's Motion to Dismiss dated August

---

[1] The first-filed more comprehensive California state court lawsuit is captioned *Spring Mountain Vineyards, Inc. v. Landmark American Ins. Co., et. al*, No. 22CV000270 (California Superior Court, Napa County Division, filed March 11, 2022) (the "California Action").  The later filed New York federal district court lawsuit is captioned *Mt. Hawley Insurance Company v. Spring Mountain Vineyard, Inc.*, Case No. 1:22-cv-03191-GHW (S.D.N.Y., filed April 19, 2022) (the "NY Action").  The California Action and the NY Action are collectively referred to herein as the "Litigations."

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

18, 2022 (the "Order") and (ii) stay the California Action pending that review.  Mt. Hawley cannot show any "cause" (good or otherwise) for the Motion, which should be denied in its entirety.  As set forth more fully below, Mt. Hawley filed the Motion to further delay its obligation to answer the Debtor's Second Amended Complaint (the "SAC") in the California Action.

Second, Mt. Hawley knows that it did not need to move for this relief because the Debtor would not have objected to Mt. Hawley's efforts to adjudicate its breach of contract claim and its declaratory judgment claims as counterclaims in the California Action.  Mt. Hawley intentionally chose not to go this route, and the simple question is, why not litigate its claims in the same forum where all other claims and defenses are pending and will be fully and finally adjudicated— namely, the California Action.  Indeed, Mt. Hawley's own demurrer shows that it knows that there is no impediment to litigating all of its NY Action claims in the California Action since the Debtor's Action (i) will proceed against all defendants (including Mt. Hawley) regardless of the Motion's outcome; and (ii) can—as Mt. Hawley recently admitted—fully resolves the Debtor's claims and Mt. Hawley's defenses and any alleged claims that it can pursue as counterclaims there.[2]

Third, in the Motion, Mt. Hawley failed to inform the Court that its purported New York State law breach of contract claim and its declaratory judgment claims, if any are viable, can be fully adjudicated, resolved, and liquidated in the California Action.  Mt. Hawley states that it has "good cause" to request stay relief because: (a) its policy's applicable New York forum selection clauses (the "FSCs") designating the state of New York as the proper forum are controlling; (b)

---

[2] On Friday, February 17, 2023, the Superior Court's docket shows that the Honorable Judge Cynthia P. Smith sustained Mt. Hawley's demurrer and dismissed the Debtor's breach of contract claims and implied covenant claim on the grounds that previous policy layer has not been exhausted.  Thus, the Superior Court granted Mt. Hawley the relief it sought in its First Amended Complaint's ("FAC") third claim for relief in the NY Action.  (*See* Declaration of Michael D. Prough dated February 2, 2023 ("Prough Decl.") ¶ 2, Ex. A (FAC at ¶¶ 75-80.)  In that demurrer, Mt. Hawley also admitted that the Superior Court can apply New York law to all of Mt. Hawley's defenses and its purported New York state law claims.  Pursuant to Rule 201(b)-(c), this Court can take judicial notice of Mt. Hawley's court filings and the resulting Orders.  The Debtor's Special Litigation Counsel only received a copy of the Demurrer Order after completing his declaration earlier today and has not had an opportunity to review them since this filing is due today.

Case: 22-10381    Doc# 251    Filed: 02/21/23    Entered: 02/21/23 22:46:08    Page 6 of 37

the substantive law governing Mt. Hawley's claims for relief are governed by New York law: and (c) Mt. Hawley's prepetition claim cannot be liquidated until the NY Action is resolved. (Mt. Hawley's Memorandum of Points and Authorities ("Br.") at 4-5 (Pts. 1-2, 4-5).) But Mt. Hawley fails to inform this Court that: (i) in the California Action, the Superior Court ruled that the FSCs are invalid and Mt. Hawley is subject to the Superior Court's jurisdiction (*See* Br., at 8, ll. 5-11); (ii) subsequent Appellate and Supreme Court rulings denied Mt. Hawley's interlocutory appeals and upheld the Superior Court's rulings; (iii) there is a dispute about what substantive state law (New York or California) should apply to Mt. Hawley's purported claims, and the Debtor contends that, *inter alia*, Mt. Hawley's New York choice of law clause ("CLC") is also invalid because it (like the New York FSCs) was not sufficiently disclosed at or before the policy's Effect Date;[3] and (iv) again, to the extent New York law is applicable (which Debtor does not concede), the Superior Court can (as Mt. Hawley admits) apply that law and fully adjudicate, resolve, and liquidate Mt. Hawley's prepetition claims.

Fourth, Mt. Hawley knowingly falsely claims that its proposed NY Action will impose no administrative burden on the Debtor, the estate (the "Estate"), and its creditors. Given that the California Action will proceed notwithstanding the outcome of the Motion, it cannot be seriously disputed that allowing the NY Action to proceed simultaneously will greatly prejudice the Estate's interests because it will force the Debtor to incur the time and costs of litigating overlapping claims and defenses in both Litigations. Indeed, the Debtor's Special Litigation Counsel conservatively estimates that the Debtor, the Estate, and its creditors will lose at least approximately $1 million if the wholly duplicative NY Action proceeds simultaneously. There is no "good cause" to force the Debtor, the Estate, and its creditors to incur that kind of unnecessary administrative burden especially where, as here, Mt. Hawley's claims can be fully adjudicated in the California Action. .

---

[3] The Debtor has and will argue that the Superior Court should apply California law, and not New York law, to all policy interpretations and disputes at issue between the Debtor and Mt. Hawley. If the NY Action proceeds—and it should not—the Debtor also will argue that the NY Court should apply California law, and not New York law, to this dispute.

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

Fifth, in contrast, Mt. Hawley will suffer no prejudice if it proceeds in California. This Court should not sanction Mt. Hawley's attempt to forum shop and race to *res judicata*, issue preclusion, and inconsistent piecemeal adjudicate simply because Mt. Hawley prefers New York courts and does not like that the Superior Court denied its motion to dismiss or stay the California Action against it and the California Court of Appeals and California Supreme Court denied its interlocutory appeals.

For these reasons and those more fully set forth below, the Motion should be denied. The Debtor respectfully submits that this Court should award the Debtor attorney's fees and costs incurred to oppose the Motion.

## II.

## FACTUAL BACKGROUND[4]

### A.      Debtor's Prepetition Operations

Since 1992, Debtor has owned the Spring Mountain Vineyard in Napa County, California (the "Vineyard"). The Vineyard is the Debtor's primary asset. (*Id*.) Debtor runs an ongoing business with up to 70 employees, millions of dollars in annual sales, and relationships with dozens of suppliers and thousands of customers. (*Id*.) The Vineyard features approximately 135 vineyard blocks across approximately 211 acres, each with a different elevation, soil, and exposure to the elements and each producing a unique and diverse grape. (*Id*.) The Vineyard also was improved with the estate residence, two winery buildings, other historic commercial buildings and structures, a tasting room, six wells, cisterns, an irrigation system, and a historic barn. (*Id*.) The Vineyard also has extensive winery caves that are utilized for barrel storage and private events. (*Id*.) Debtor's business consists primarily of growing grapes in its 135 vineyard blocks, harvesting and pressing the grapes into wine in casks, and bottling, storing, and selling the wine. (*Id*.) Debtor's revenue comes almost entirely from the sale of wine and grapes.

---

[4] The facts are set forth in the Declaration of  B. Spievack ("Spievack Decl.") and Exhibits ("Ex.") 1 to 11 thereto.

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

## B.     The Prepetition Insurance Litigations

On or about September 27, 2020, the wildfire known as the Glass Fire caused severe damage to the Vineyard and several buildings and structures located on its property. (Spievack Decl. ¶ 7). Eight insurance companies provided the Debtor with primary property insurance coverage and four layers of excess coverage for its Vineyard property. (*Id*.) The two primary insurers paid their full $5 million combined policy limit to the Debtor for its property damage and losses incurred due to the Glass Fire. (*Id*.) Unfortunately, the Debtor's first layer excess insurers, Kinsale Insurance Company ("Kinsale") and Landmark American Insurance Company ("Landmark"), agreed to pay only an additional approximately $2.4 million. (*Id*.) As a result, Landmark and Kinsale, in coordination with the Debtor's four other excess insurers (including second layer excess Mt. Hawley) refused to (i) honor their respective policy obligations and (ii) pay the Debtor approximately $28 million more to cover its property damages and losses under their previously issued and already paid-for excess insurance policies (the "Excess Insurance Policies").[5] (*Id*.) The excess insurers' refusal to pay forced the Debtor to take legal action. (*Id*. ¶ 8.)

On March 11, 2022, the Debtor filed a complaint the California Action against all six (6) excess insurers, including Mt. Hawley. (*Id*. ¶¶ 3, 10.) The claims for relief against the excess insurers are for declaratory relief, breach of contract, and breach of the implied covenant of good faith and fair dealing. (*Id*. ¶ 10, 28, Ex. 8.) The Debtor also sued its insurance advisors and brokers Arthur J. Gallagher & Co. ("Gallagher") and Dina C. Smith (collectively with Gallagher,

---

[5] Hallmark Specialty Insurance Company ("Hallmark") and Western World Insurance Company ("Western World") provided the Debtor's third layer property insurance and AXIS Surplus Insurance Company ("AXIS") provided the final fourth layer. (*Id*. ¶ 7.) The total property insurance program provided $35,565,435 in property insurance that covers the overwhelming majority of the Debtor's approximately $38.5 million in damages. (*Id*.)

VAS 53426867v1

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

"AJG") for negligence, negligent misrepresentation, and breach of fiduciary duty.  (*Id*. ¶¶ 10, 25-28, Ex. 8.)

Slightly more than a month later, on April 19, 2022, Mt. Hawley filed the NY Action against the Debtor.  (*Id*.¶¶ 3, 10.)  On May 20, 2022, Mt. Hawley specially appeared to move to dismiss or stay the California Action on the grounds that the FSCs only permitted the Debtor to sue Mt. Hawley in New York.  (*Id*. ¶ 11.)  The Debtor opposed that motion on two grounds.  (*Id.*)  First, the FSCs were invalid because they were *not* disclosed to SMV, let alone freely negotiated and agreed to by the Debtor at or before the policy's July 1, 2020, effective date (the "Effective Date").  (*Id.*)  Second, even if the FSCs  are deemed disclosed, they were unenforceable because New York had no connection to the coverage dispute.  (*Id.*)  None of the parties in the California Action were New York citizens, the property is not located in New York, no witnesses or relevant documents are in New York, and New York did not have jurisdiction over all the defendants in the California Action.  (*Id.*)  The other excess insurers also specially appeared and moved to dismiss the California Action against them, and AJG filed a demurrer against the Debtor's negligent misrepresentation and breach of fiduciary duty claims.  (*Id*. ¶ 11, n.5.)[6] The Debtor opposed the three motions. (*Id*.)

In the NY Action, on July 28, 2022, the Debtor filed its motion to dismiss or stay pursuant to the *Brillhart/Wilton* abstention doctrine (the "Abstention Motion").  (*Id.* ¶ 12.)  Pursuant to that doctrine, New York federal courts typically will stay a limited federal declaratory judgment action until the state court decides whether to enforce a mandatory FSC and dismiss or stay a first-filed more comprehensive state court action.  (*Id*. ¶ 12 (at n. 6), Ex. 1.)[7]  According to the NY Court's

---

[6] Under California procedure, the excess insurer defendants filed special appearances to indicate they were opposing jurisdiction of the California court and not consenting to its general jurisdiction.  (*Id*. ¶ 17, n.10.)

[7] The Debtor Spring Mountain Vineyard, Inc.'s Memorandum of Law in Support of Its Motion to

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

briefing schedule, the Debtor's abstention motion was required to be fully submitted on September 1, 2022. (*Id*. ¶ 12.)

On August 16, 2022, Mt. Hawley filed its First Amended Complaint ("FAC") as of right pursuant to Fed. R. Civ. P. 15(a), adding a claim for breach of the FSCs and an additional declaratory judgment claim. (*Id*. ¶ 13.)[8] On August 17, 2022, the NY Court denied the Debtor's abstention motion as moot. (*Id*.)

By Order dated August 18, 2022, the Superior Court denied defendant Mt. Hawley's motion to dismiss or stay the California State Action. (*Id*. ¶ 14, Ex. 2 (at 3-10).) The Superior Court rejected Mt. Hawley's arguments (which it attempts to raise again before this Court) that the FSCs mandated that Debtor sue Mt. Hawley in New York. (*Id*. Ex. 2 (at 3-10).) The Superior Court held that the FSCs were invalid because Mt. Hawley had failed to sufficiently disclose them to the Debtor at or before the Effective Date and that it has jurisdiction over Mt. Hawley "to adjudicate disputes under the contract" because Mt. Hawley purposely availed itself of activities in California. (*Id*.) Since the Superior Court found that the FSCs were invalid, it held that "it need not address SMV's alternative arguments that the Motion to Dismiss should be denied because the forum selection clause is unfair and unreasonable and denies SMV substantive rights." (*Id*. Ex. 2 (at 11, n. 1).) On August 18, 2022, the Superior Court also denied the other excess insurers' motion to dismiss the California State Action. (*Id*.,¶ 14, Ex. 3.)[9]

_____

Dismiss or, Alternatively, Stay This [NY] Action sets forth the federal case law relevant to abstention under both the *Brillhart/Wilton* and the *Colorado River/Moses Cone* doctrines. (*Id*.)

[8] Based on the August 4, 2022, hearing before the Superior Court on its motion to dismiss or stay the California Action and the other insurer defendants' motion to dismiss, Mt. Hawley knew that the Court likely would deny both motions. (*Id*.) As a result, Mt. Hawley subsequently added its perfunctory breach of contract claim to its New York complaint, trying to avoid the application of the *Brillhart/Wilton* abstention doctrine. (*Id*.) The hearing transcript is voluminous, but the Debtor can make it available to the Court upon request. (*Id*.)

[9] On August 31, 2022, Mt. Hawley filed a petition for writ to the California Court of Appeals and

VAS 53426867v1

On September 23, 2022, the Debtor filed its second motion to dismiss or stay the NY Action pursuant to the *Brillhart/Wilton* and/or *Colorado River/Moses Cone* abstention doctrines. (*Id.* ¶ 15, Ex. 1.)

On September 29, 2022, the Debtor filed its Chapter 11 Bankruptcy Petition. (*Id.* ¶ 16.) By the Petition Date, seven (7) of the eight (8) defendants had submitted to the jurisdiction of the Superior Court to adjudicate the Debtor's claim and the California Court of Appeals had denied Mt. Hawley's writ petition and request for a stay of the California Action against Mt. Hawley. (*Id.*) Therefore, as of the Petition Date, the Superior Court had decided that the California Action will proceed against all defendants (including Mt. Hawley). (*Id.* ¶¶ 16, 21.)

The NY Court stayed the NY Action and directed the Clerk of the Court to terminate the Debtor's second abstention motion. (*Id.* ¶ 17.) Absent Debtor's Bankruptcy filing, the NY Court would have decided the Debtor's second abstention motion. (*Id.*) Beyond that, it is impossible to accurately predict what else would have happened in the NY Action absent the automatic stay. (*Id.*)

On September 29, 2022, Mt. Hawley renewed its request for a one-month extension (from October 14, 2022, until November 14, 2022) to respond to the Debtor's motion to dismiss or stay so that it could allegedly take unrestricted deposition discovery to oppose the Debtor's motion. (*Id.* ¶ 18.) Mt. Hawley, however, did not inform the NY Court that on September 27, 2022, the California Court of Appeals summarily denied Mt. Hawley's petition for a writ and request for a stay of the California Action pending consideration of its writ petition. (*Id.*, at Ex. 4.) Mt. Hawley also did not inform the NY Court that (a) none of the other excess insurer defendants had

---

requested a stay of the California Action pending a resolution of its petition. (*Id.*, ¶ 14 (at n.8).) Unlike Mt. Hawley, none of the other excess insurers appealed the Superior Court's denial of their motion and submitted to the general jurisdiction of the Superior Court. (*Id.* ¶ 14 (at n.9).)

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

appealed the Superior Court's denial of their motion to dismiss; (b) all of them had consented to the jurisdiction of the Superior Court; and (c) the California Action presently was proceeding against all defendants.  (*Id*.)

The NY Court, without the benefit of Debtor's reply, granted in part and denied in part Mt. Hawley's Application.  (*Id*., ¶ 19, Ex. 5.)  Mt. Hawley clearly intended to (a) aggressively litigate the NY Action; (b) oppose the Debtor's second abstention motion; and (c) continue to resist any efforts by the Debtor to stay all or most fact discovery pending resolution of the second abstention motion.  (*Id*. ¶ 20.)  For its part, the Debtor not only would have renewed its request to stay all or most discovery pending the NY Court's resolution of its abstention motion, but also would have informed the court of the procedural events omitted by Mt. Hawley.  (*Id*.)[10]  The automatic stay, of course, preempted the foregoing from occurring.

### C.    The California Action's Status

On October 7, 2020, after the automatic stay went into effect, Mt. Hawley filed a petition for review and requested a stay of the California Action pending the California Supreme Court's review of the Superior Court's Order.  (*Id*., ¶ 23)  The Debtor prepared and filed its opposition to Mt. Hawley's petition and on November 23, 2022, the California Supreme Court denied Mt. Hawley's petition for review and a stay of the California Action.  (*Id*. Ex. 6.)  As a result, Mt. Hawley had to submit to the general jurisdiction of the Superior Court.  (*Id*. ¶¶ 23-24.)

In the California Action, Mt. Hawley, Hallmark, Western World and AXIS (the second

---

[10] It is impossible to predict whether the NY Court would have stayed or further limited discovery pending resolution of the second abstention motion based on the facts cited above.  (*Id*. ¶ 20 (at n.11).)  On August 29, 2022 (a month earlier), the NY Court denied the Debtor's second request to stay discovery pending resolution of its second abstention motion notwithstanding the Superior Court's Order.  (*Id*. ¶¶ 20-21, n.11)  At that time, the NY Court stated, however, that it would consider whether "good cause" existed for such a stay once the second abstention motion was fully submitted in mid-October 2022. (*Id*.)

9

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

through fourth layer excess insurers) filed a demurrer to the SAC's second, third and fifth causes of action (breach of contract and the implied covenant claims). (*Id.* ¶ 26.) Mt. Hawley argued, *inter alia*, that the Superior Court should dismiss those claims pursuant to NY law. (*Id.* ¶ 27, Ex. 7 (at 1-2, 6-13).) Thus, Mt. Hawley concedes that the Superior Court can apply New York law to Mt. Hawley's defenses and its purported New York state law claims if it pursues them as counterclaims in the California Action. (*Id.*)[11]

On February 2, 2023, the Superior Court heard oral argument on the respective demurrers filed by Mt. Hawley, Hallmark, Western World and AXIS, subsequently issuing Orders After Hearing Sustaining (a) the Demurrer of Hallmark, Western World and AXIS; and (b) Mt. Hawley's Demurrer (the "Demurrer Orders"). (*Id.* ¶ 28.)[12] Since Mt. Hawley, Hallmark, Western World and AXIS did not file a demurrer against the Debtor's first and fourth causes of action, they have to submit their respective answers to those claims, affirmative defenses, and counterclaims (including Mt. Hawley's purported New York state breach of contract claim and declaratory judgment claims in the NY Action). (*Id.* ¶ 28 and n.13.) Kinsale, Landmark, and AJG have answered the SAC and asserted various affirmative defenses. (*Id.*)

Moreover, discovery is proceeding apace in the California Action. (*Id.*, ¶ 29.) The Debtor

---

[11] Pursuant to Rule 201(b)-(c) of the Federal Rules of Evidence, this Court can take judicial notice of Mt. Hawley's demurrer. (Ex. 7.)

[12] The Demurrer Orders are noted on the California Action's docket, but the Debtor's Special Litigation Counsel has not received or obtain them prior to executing his declaration. (*See Id.*, ¶ 28.) In its FAC, Mt. Hawley's Third Claim for Relief seeks a declaratory judgment that it is not obligated to pay the Debtor for its Glass Fire related losses because the underlying Kinsale and Landmark policies have not been exhausted. (*See* Declaration of Michael D. Prough dated February 2, 2023 ("Prough Decl.") ¶ 2, Ex. A (at ¶¶ 75-80).) In its demurrer, Mt. Hawley moved to dismiss the Debtor's breach of contract claims and implied covenant claims on the same grounds. (*Id.*, ¶ 27, Ex. 7 (1-2, 6-13).) As more fully discussed herein, Mt. Hawley cannot seriously dispute that its NY Action claims can be adjudicated and fully resolved in the California Action as defenses and counterclaims.

VAS 53426867v1

has requested the production of documents from (a) all defendants; (b) Mt. Hawley's producer RiskSmith Insurance Services, Inc. ("Risksmith"); (c) the excess insurer defendants' claim adjustor McLarens Insurance ("McLarens"); (d) a wholesale broker Brown & Riding; and (e) primary insurer First Specialty. (*Id*.) Well more than 75 thousand pages already have been produced in the California Action and the Debtor still awaits the production of additional documents. (*Id*.)[13] On February 9, 2022, AIG served its first request for production to the Debtor. (*Id*.) Since their respective jurisdictional motions were denied, the Insurer Defendants (including Mt. Hawley) could have served the Debtor with document requests in the California Action but have chosen not to. (*Id*.)[14]

On February 2, 2023, the Superior Court scheduled its next Case Management Conference ("CMC") for April 14, 2023. (*Id*. ¶ 30.) The Debtor (and the Superior Court) expects that, by that date, the remaining defendants' initial answers would be filed, and the Debtor would seek to set discovery deadlines and a trial date. (*Id*.) Mt. Hawley did not inform the Debtor or the Superior Court before, during or after the February 2 CMC that it intended to file the Motion in this Court later that day. (*Id*.)[15]

---

[13] The Insurer Defendants have refused to produce any documents in response to the Debtor's Second Request for Production. (*Id*. ¶ 29 (at n.14).) The Debtor and those defendants (including Mt. Hawley) agreed to meet and confer shortly after the Superior Court decides the demurrers (which, according to the docket, happened late last week). (*Id*.) The Debtor will file a motion to compel document production if the meet and confer is unsuccessful. (*Id*.)

[14] As shown above, Mt. Hawley's jurisdictional objection was fully resolved when the California Supreme Court denied its petition for review on November 23, 2022, and the other excess insurer defendants submitted to the jurisdiction of the Superior Court after it denied their motion to dismiss on August 18, 2022.

[15] Since it was filed, Mt. Hawley sought to delay the California Action. (*Id*. ¶ 30, n.15.) That Mt. Hawley waited until 4 months after the Petition Date and until its demurrer was almost decided to file the Motion shows that this Motion is but another mechanism to further delay the California Action. (*Id*.) However, now that the Demurrer Orders have been decided, Mt. Hawley must answer the SAC and assert any counterclaims, if any. (*Id*.) In other words, Mt. Hawley can no longer delay its filing of a responsive pleading in the California Action, notwithstanding any last-

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

The Debtor also plans to commence depositions no later than May or early June 2023. (*Id.* ¶ 31.) No depositions have been conducted in the NY Action and the significant amount of party and third-party discovery that Mt. Hawley claimed had been taken there was no greater than what has currently been done in the California Action. (*See* Mt. Hawley's Memorandum of Points and Authorities ("Br.") at 9-10 (at point 9 ll. 4-5).)

**D.    The Motion**

On February 2, 2023, Mt. Hawley filed proof of claim no. 15 (the "Mt. Hawley Claim") in the general unsecured amount of $338,371.52 for "Damages for Prepetition Breach of Contract." (*Id.* ¶ 40, Ex. 12.) It then filed the Motion.

**III.**

**ARGUMENT**

**A.    Legal Standard**

Under 11 U.S.C. § 362(a)(1), the filing of a bankruptcy petition stays the "…continuation … of a judicial…action or proceeding against the debtor that was…commenced before the commencement of the case under this title[.]" Pursuant to 11 U.S.C. § 362(d)(1), however, the court may grant relief from the automatic stay "for cause." "A decision to lift the automatic stay under 11 U.S.C. § 362 is within the discretion of the bankruptcy judge and reviewed for an abuse of discretion." *In re MacDonald*, 755 F.2d 715, 716-17 (9th Cir. 1985). Thus, "[b]ecause there is no clear definition of what constitutes 'cause,' discretionary relief from the stay must be determined on a case by case basis." *Id.*

Here, no "cause" (good or otherwise) exists for the relief sought in Mt. Hawley's instant Motion. Mt. Hawley's Motion is not an abstention motion pursuant to *Tucson Estates* factors

_____

ditch efforts it undoubtedly will attempt. (*Id.*)

VAS 53426867v1

despite its attempt to characterize it as such. (*See* Br., at 13:10-14.) Mt. Hawley does not—and cannot—seriously contest that (i) it is a party-defendant in the first filed, more comprehensive California Action and (ii) the Superior Court can resolve all its defenses and claims as counterclaims there. (*See* Spievack Decl. ¶¶ 2, 26-28, Ex. 7.) Nor can it seriously dispute that it could have requested the Debtor's consent that this Court grant it stay relief to assert its purported breach of contract and declaratory judgment claims as counterclaims in the California Action. (*Id.*, ¶ 2.) Indeed, the Debtor would have consented or so stipulated to that stay relief if Mt. Hawley had requested it. (*Id.*) Mt. Hawley, however, did not ever request it; and, in fact, intentionally avoided making such a request. (*Id.*)

Mt. Hawley's nonetheless contends that "cause" exists for lifting the automatic stay under 11 U.S.C. § 362(d)(1) so it simultaneously proceed with its wholly duplicative and costly NY Action. Neither the *Tucson Estate* factors nor the *Curtis* factors are intended to allow a potential creditor (insurance company) to pursue duplicative and costly litigation when its overlapping claims can be fully presented and adjudicated in a single lawsuit. Therefore, this Court should deny Mt. Hawley's instant Motion.

Moreover, this Court has permitted the Debtor to retain Special Litigation Counsel to pursue the California Action. (*See* Spievack Decl. ¶ 33, n.19, Ex. 9.) To the extent Mt. Hawley needs this Court's permission to assert its defenses and claims in the California Action, this Court can fashion its automatic stay relief (unopposed by the Debtor) to allow Mt. Hawley to file any counterclaims it wishes in the California Action subject to its continued agreement that it will seek further relief from this Court concerning the collection on, or enforcement of, any money judgment it may obtain, if any, on its counterclaims against the Debtor in the future. (Mot. 3:12-

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

15.)[16]

Finally, as detailed more fully below, the *Tucson Estates* and *Curtis* factors together strongly militate in favor of a single insurance litigation lawsuit and only permitting Mt. Hawley to pursue counterclaims in the California Action. The enormous costs of duplicative litigation, piecemeal adjudication of Mt. Hawley's defenses and claims and the possibility of inconsistent rulings that will make a complete resolution of this dispute impossible, all justify Mt. Hawley only getting leave to file any counterclaims in the ongoing California Action.

### 1. The *Tucson Estates* factors

"Where a bankruptcy court may abstain from deciding issues in favor of an imminent state court trial involving the same issues, cause may exist for lifting the stay as to the state court trial." *In re Tucson Ests., Inc.*, 912 F.2d 1162, 1166 (9th Cir. 1990). The Ninth Circuit has described the twelve (12) factors that courts should consider when determining whether to permissively abstain under 28 U.S.C. § 1334(c)(1):

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

---

[16] Because the *Tucson Estates* abstention factors are **not applicable**, Mt. Hawley's reliance on inapplicable legal authorities is further grounds for denying the instant Motion since Mt. Hawley carries the burden to establish "good cause." But to the extent the *Tucson Estates* factors are even applicable, Mt. Hawley cannot show that those factors entitled it to pursue a duplicative and costly second lawsuit when all its claims can be brought as defenses and counterclaims in a one lawsuit outside this Court's jurisdiction. The *Curtis* factors lead to the same conclusion.

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

VAS 53426867v1

14

*Id.* at 1166-67.

The *Tucson Estates* factors are inapplicable here. The Ninth Circuit explained that such basis for stay relief under the doctrine of abstention was based in part on the 1984 amendments to the Bankruptcy Act of 1978 to remedy the constitutional infirmities of the Bankruptcy Act's jurisdictional provisions pursuant to *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982). *Id.* (referring to "imminent state court trial"). Here, the issue of abstention is before the District Court in the NY Action, and Mt. Hawley seeks to improperly obtain a ruling from this Court on the same abstention issue pursuant to the Motion—by the Motion itself, Mt. Hawley has created a platform for inconsistent rulings on abstention issues by attempting to present this Motion for evaluation under the abstention factors while there is already an abstention motion pending in the New York Action. Additionally, Mt. Hawley is seeking stay relief to pursue litigation in **federal court**. Accordingly, the abstention considerations that form the basis for stay relief in *Tucson Estates* are not present here—*i.e.*, state court litigation (the California Action) is already proceeding and *this Court* is not being asked to decide any issues in connection with the California Action or NY Action. Instead, the core issue of the Motion is whether "cause" exists for stay relief to allow duplicative litigation to proceed, which should be decided under the *Curtis* factors below.

### 2. The *Curtis* factors

"The Ninth Circuit has recognized that "the *Curtis* factors are appropriate, nonexclusive, factors to consider in deciding whether to grant relief from the automatic stay to allow pending litigation to continue in another forum." *In re Roger*, 539 B.R. 837, 845 (C.D. Cal. 2015) (citing *In re Kronemyer*, 405 B.R. 915, 921 (9th Cir. 2009). "These factors are closely related to those [Tucson Estates factors] that a bankruptcy court must consider in deciding whether to exercise permissive abstention under 28 U.S.C. § 1334(c)(1)." *In re Plumberex Specialty Prod., Inc.*, 311 B.R. 551, 558 (Bankr. C.D. Cal. 2004). The twelve (12) nonexclusive Curtis factors are:

1. Whether the relief will result in a partial or complete resolution of the issues; 2. The lack of any connection with or interference with the bankruptcy case; 3. Whether the foreign proceeding involves the debtor as a fiduciary; 4. Whether a

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases; 5. Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation; 6. Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question; 7. Whether the litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties; 8. Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c); 9. Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f); 10. The interests of judicial economy and the expeditious and economical determination of litigation for the parties; 11. Whether the foreign proceedings have progressed to the point where the parties are prepared for trial, and 12. The impact of the stay on the parties and the "balance of hurt"

*Plumberex*, 311 B.R. at 559 (*citing In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984). "While the *Curtis* factors are widely used to determine the existence of "cause," not all of the factors are relevant in every case, nor is a court required to give each factor equal weight." *Roger*, 539 B.R. at 845. The movant bears the initial burden of establishing cause,[17] and when the movant is not a secured claimholder asserting a lack of adequate protection, that burden is a high one. *See In re Breitburn Energy Partners LP*, 571 B.R. 59, 65 (Bankr. S.D.N.Y. 2017).

**B.**    **The *Tucson Estates'* Factors Weigh Strongly in the Debtor's Favor**

Turning to each of the *Tucson* (and Curtis) Factors, the applicable factors weight heavily in Debtor's favor:

    **1.**    **Effect on Efficient Administration of the Estate**

This factor weighs heavily in favor of Debtor. Mt. Hawley's claim that "there would likely be no administrative burden on the estate" if the NY Action proceeds" is pure sophistry. (Br. at 13-14.)

Granting Mt. Hawley stay relief to proceed in the NY Action will severely affect the efficient administration of the Estate because it will saddle the Debtor and the Estate with unnecessary and duplicative litigation costs. The Debtors' Special Litigation Counsel

---

[17] *Am. Spectrum*, 540 B.R. at 737 ("To obtain relief from the automatic stay the party seeking relief must first establish a prima facie case that 'cause' exists for relief under § 362(d)(1)." (internal quotations omitted) (citing *Plumerex*, 311 B.R. at 557)).

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

conservatively estimated that Mt. Hawley's instant Motion if granted would subject the Debtor to approximately $1 million or more in largely, if not exclusively, duplicative litigation costs. (*See* Spievack Decl. ¶¶ 5, 33-43, Ex. 10.)

The additional fees and costs if the NY Action proceeds include: (i) $4,500 to $6,000 for each duplicative fact deposition taken for the approximately 65 potential witnesses that Mt. Hawley identified in its Amended Rule 26 Initial Disclosure (which will equal or exceed $200,000 in total) (*Id*. ¶¶ 36-38, Ex. 10); (ii) roughly $60,000 to $100,000 in litigation costs that will be incurred in the NY Action while the Debtor's third abstention motion is pending (*Id*. ¶¶ 32, 35, n.18); (iii) $250,000 to $300,000 for a motion to dismiss one or more of Mt. Hawley's claims and the duplicative discovery and summary judgment or partial summary judgment motions ((*Id*., ¶¶ 35, 39-41); (iv) roughly $125,000 to $175,000 for expert discovery; and (v) approximately $250,000 to $325,000 for pre-trail motions and trial (*Id*. ¶ 43.)

The additional fees reflect each additional hour of CTSW attorney and paralegal time that potentially increases CTSW's fees while reducing the Debtor's and the Estate's recovery because of the hourly billing component of CTSW's compensation. (*Id*. ¶ 33, n.17, Ex. 9.)[18] By way of example, if the Debtor recovers $15 million and CTSW's total hourly fees in the California Action are $3 million, under the fee arrangement, CTSW's contingency fee is capped at $5 million (33 1/3 percent of the recovery). (*Id*. ¶ 34.) Under this scenario, CTSW's fee would be limited to the $3 million total hourly invoices (subject to Your Honor's review and approval). (*Id*.) The Estate would recover $12 million minus expenses. (*Id*.) Should, however, the Motion be granted, CTSW's attorney and paralegal work necessarily will increase to perhaps more than $4 million, in which case the Debtor's Estate's recovery would be $11 million or less minus expenses. (*Id*., ¶ 35.)

Notably, the Debtor must pay its own litigation costs and expenses, which will be

---

[18] The Motion points out that the Debtor retained CTSW pursuant to a contingency fee arrangement but omitted this key component of the arrangement. (*Id*., ¶ 33.) In its retention application, CTSW represented that the Debtor expected to recover some or all of the approximately $28 million sought in the California Action. (*Id*., ¶¶ 7, 33, n.17.)

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

substantially increased if the Motion is granted. (*Id*. ¶ 33.) Expenses include, but are not limited to, court reporter transcript costs and videographers, expert fees, airfare, food, and lodging, hearing and trial transcript costs and ESI data hosting costs. (*Id*.)

In contrast, barely any increased fees will result if the Motion is denied and Mt. Hawley pursues its claims in California. (*Id*., ¶¶ 3-6, 22-44, Exs. 2-4, 6-7, 10.) Therefore, Mt. Hawley will not be prejudice if it proceeded in California. (*Id*., ¶¶ 23-28, 44.)

## 2. The Extent to Which State Law Issues <u>Predominate Over Bankruptcy Issues</u>

There is no doubt that state law issues predominate over bankruptcy issues here, but the California Action can and will resolve the state law claims involving the excess Insurer Defendants. (*Id*. ¶¶ 3, 6, 9, 23-28.) Mt. Hawley has admitted that the Superior Court can apply New York law to its purported claims and there is nothing that would prevent it from resolving Mt. Hawley's FSC claims pursuant to *Wormser Corp. v. L'Oreal USA, Inc.*, 205 A.D.3d 496 (1st Dep't 2022). (*Id*. ¶¶ 3, 23-28, Ex. 7 (at 1-2, 6-13).)[19] Moreover, given that the excess insurer defendants' defenses, including Mt. Hawley's, are intertwined because Mt. Hawley and the third-and-fourth layer excess insurers have successfully persuaded the Superior Court no layer is triggered until the layer below is exhausted, only the California Court can resolve the interplay between the subject excess insurance policies at issue. (*Id*. ¶¶ 23-28, Ex. 7.)

Therefore, this factor strongly militates in favor of this Court denying the Motion and granting stay relief to assert defenses and claims (as counterclaims) in the California Action.

## 3. <u>The Difficulty or Unsettled Nature of the Applicable Law</u>

There is no doubt that the unsettled nature of state law favors stay relief, but only the Superior Court can resolve the difficult and unsettled state law coverage issues because the

---

[19] Mt. Hawley's purported NY Action breach of contract claim and recission claim also are likely not viable under either New York or California Law. (*Id*. ¶ 12, n. 6 (at Ex. 1 (at 16-19).)

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

California Action alone has all the parties before it.

Therefore, this factor also weights in favor of denying the Motion and granting stay relief to assert defenses and claims (as counterclaims) in the California Action. For instance, the California Action alone will decide if the underlying first layer policies' limits are exhausted and Mt. Hawley's policy is triggered.[20] Moreover, the proper construction of the underlying first layer excess policies will be decided pursuant to California state law, so only the Superior Court can decide the complex issues that involve the potential interplay of both California and New York law. Finally, to the extent that the legal questions are difficult or unsettled, granting stay relief to allow Mt. Hawley to pursue a second duplicative lawsuit increases the risk of inconsistent rulings. (*Id.*, ¶¶ 6, 20-21, 26-28, 32, 38 (at n. 18), 40-43.)

### 4. The Presence of a Related Proceeding Commenced in State Court or Other Non-Bankruptcy Court

This factor also strongly weighs in favor of this Court denying the Motion. It is undisputed that the California Action is proceeding apace and can and will resolve all claims and defenses. (*Id.* ¶¶ 3, 6, 23-28, Exs. 2-4, 6-7.) Moreover, Mt. Hawley's claim that "this Court does not have the authority to transfer a case from New York federal court to Napa County, California state court" is a red herring. (*See* Br., at 15:12-14.)

This Court has the power to deny the Motion because a second, duplicative, and costly lawsuit is unnecessary; denial of the Motion will necessarily result in the continued stay of the NY Action. This Court can—and the Debtor will not oppose—grant Mt. Hawley stay relief to pursue its breach of contract and declaratory judgment claims in the related California Action. (*Id.*, ¶¶ 3-4, 22-28.) Moreover, considerations of judicial economy weigh heavily in favor of denying the Motion because the California Action can fully adjudicate, resolve, and liquidate all of Mt. Hawley's affirmative claims. (*Id.*)

### 5. The Jurisdictional Basis, if any, Other Than 28 U.S.C. § 1334

---

[20] Landmark and Kinsale are not parties to the NY Action and the NY Court cannot resolve coverage issues pertaining to their policies and whether their combined policy limit is exhausted. (*See* Prough Decl. ¶ 2, Ex. A.)

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

This factor appears to be neutral, and neither supports Mt. Hawley nor the Debtor. This Court is not exercising jurisdiction over either the California Action or the New York Action. This factor, however, also certainly does not support Mt. Hawley's Motion as it contends (Br., at 15:20-22) for all of the reasons that the Debtor states herein.

### 6. The Degree of Relatedness or Remoteness of The Proceeding to the Main Bankruptcy

There is a significant degree of relatedness between Debtor's California Action and the Debtor's Bankruptcy. This Court approved Special Litigation Counsel's retention because, in significant part, CTSW represented that the Debtor expected to recover some or all of the approximately $28 million sought in the California Action. (*Id*. ¶¶ 28 (at Ex. 8), 33 (at n. 17).) Recovery in the California Action is crucial to the administration of the bankruptcy estate and to the Debtor's successful reorganization and emergence from Chapter 11. (*Id*. ¶ 33 (at n.17).) Fighting on two fronts will undermine that objective. (*Id*. ¶¶ 4, 32-43, Ex. 10.) Accordingly, this factor strongly supports denying Mt. Hawley's instant Motion.

### 7. The Substance Rather than Form of an Asserted "Core" Proceeding

This factor is neutral because it is not applicable. The claims for relief asserted in both the California Action and the NY Action are "non-core" proceedings since they involve state law claims related to, in part, Mt. Hawley's failure to honor its obligations under Mt. Hawley's second layer excess policy. This factor, however, also certainly does not support Mt. Hawley's Motion as it contends (Br., at 15-16:27-4) for all of the reasons that the Debtor states herein.

### 8. The Feasibility of Severing State Law Claims From Core Bankruptcy Matters

This factor is neutral because it is not applicable. No "core" bankruptcy matters are implicated in the California Action or the NY Action. Again, this factor also does not support Mt. Hawley's Motion as it contends (Br., at 16:5-13) for all of the reasons that the Debtor states herein.

### 9. The Burden on the Bankruptcy Court's Docket

This factor is neutral because it is not applicable. Neither the California Action nor the NY Action will cause any extra burden on this Court's docket. The underlying insurance litigation is

not before this Court. And this factor also again does not support Mt. Hawley's Motion as it contends (Br., at 16:14-16) for all of the reasons that the Debtor states herein.

**10.     The Likelihood That the Commencement of the Proceeding in Bankruptcy Court Involves Forum Shopping by One of the Parties**

This factor is neutral because it is not applicable. No proceeding in this Court has been commenced. The underlying insurance litigation is not before this Court. However, Mt. Hawley's Motion is forum shopping because the Superior Court is going to adjudicate all issues, regardless of the outcome of this Motion. (*Id*. ¶¶ 3, 6, 23-28, Exs. 2-4, 6-7.)

Pursuing this Motion to continue the duplicative NY Action is classic forum shopping and granting the Motion will reward and further Mt. Hawley's transparent effort in that regard. This factor weighs decidedly in the Debtor's favor and against granting Mt. Hawley's Motion. Mt. Hawley hopes to use the NY Action to engage in abusive and unnecessary litigation, replete with repetitive and expensive duplicative discovery. (*Id*. ¶¶ 3-6, 9, 22-44, Ex. 2-4. 6-8. 10-11.)

**11.     The Existence of a Right of Jury Trial**

This factor also weighs decidedly in the Debtor's favor and against granting Mt. Hawley's Motion. In the California Action, the Debtor requests to try, among others, its breach of contract and implied covenant claims against defendants Kinsale and Landmark and may have the right to pursue a jury trial against Mt. Hawley if this first layer excess is exhausted through judgment or settlement. (*Id*. ¶ 28, Ex. 8 (at 60-61:27-10).) The Debtor could not try these claims in the NY Action because Kinsale and Landmark are not parties to that Action. (*See* Prough Decl. ¶ 2, Ex. A.) On the other hand, Mt. Hawley clearly can try its breach of contract claim (as a counterclaim) to a jury in the California Action if it wishes and there is no impediment to it do so. (Spievack Decl. ¶¶ 3-4, 9, 22-28, Ex. 2-4, 6-8, 11.)

**12.     The Presence in the Proceeding of non-Debtor parties**

This factor weighs heavily in favor of Debtor and against granting Mt. Hawley's Motion. As explained above, the presence of all additional, necessary parties is vital for a complete resolution of Debtor's insurance claims for relief arising out of the Glass Fire. (*Id*. ¶¶ 3, 6, 9, 23-

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

28, Ex.1-4, 6-8, 11.)  The California Action provides the forum for a complete resolution (*Id*); the NY Action does not and cannot. (Prough Decl. ¶ 2, Ex. A.)

In sum, since factors 1 through 4, 6 and 10 through 12 weigh heavily in Debtor's favor and the remaining factors are neutral at best, the cumulative weight of the *Tucson Estates* factors mandate denial of the Motion.

**C.   The *Curtis* Factors Weigh In Favor of Debtor**

Contrary to Mt. Hawley's  unsupported arguments that the *Curtis* factors also support granting relief from stay (*see* Br., 17:22-28), the *Curtis* factors also weigh heavily in favor of this Court denying Mt. Hawley's Motion for any or all of the following reasons:

**1.   Whether the Relief Will Result in a Partial
or Complete Resolution of the Issues**

This factor mandates denial of Mt. Hawley's Motion.  Allowing the NY Action to proceed, at best, runs the risk of inconsistent judgments regarding the disputes between Mt. Hawley and Debtor. (Spievack Decl. ¶¶ 3, 21-24, 26-28, 38 (at n.18), 40-43, Ex. 1-4, 6-8, 11.)  To be clear, even if the Motion were granted, the California Action will not be stayed and two parallel actions would proceed.  (*Id*.)  Moreover, because none of the excess Insurer Defendants (except for Mt. Hawley) and AJG are parties to the NY Action, a complete resolution cannot be achieved in the NY Action because necessary parties are missing.  (Prough Decl. ¶ 2, Ex. A.).  Only the California Action can achieve a complete resolution of all the issues in dispute. (Spievack Decl. ¶¶ 3, 21-24, 26-28, 38 (at n.18), 40-43, Ex. 1-4, 6-8, 11.)

**2.   The Lack of any Connection With or
Interference With the Bankruptcy Case**

This factor calls for an order denying Mt. Hawley's Motion.  The California Action is connected to the Bankruptcy Case because it can generate a recovery of up to approximately $28 million for the Estate. (*Id*., ¶¶ 7, 33, n.17.)  This factor also certainly does not support Mt. Hawley's Motion as it contends (Br., at 17:22-28 ) for all of the reasons that the Debtor states herein.

Requiring the Debtor to defend against duplicative litigation in the NY Action would require the Debtor to unnecessarily expend additional funds when the issues underlying the NY

22

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

1    Action can be addressed in the pending Californai Action.  Indeed, there is a "strong bankruptcy

2    code policy that favors centralized and efficient administration of all claims in the bankruptcy

3    court . . . ."  *See Publicker Indus. Inc. v. United States* (*In re Cuyahoga Equip. Corp.*), 980 F.2d

4    110, 117 (2d Cir. 1992) (citations omitted); *see also In re BFW Liquidation, LLC*, No. 09-00634-

5    BGC-11, 2009 WL 8003536, at *3 (Bankr. N.D. Ala. Sept. 14, 2009) ("[T]he effect of lifting the

6    stay for all such claimants and requiring debtors to defend lawsuits in diverse forums merely to

7    establish what share, if any, the claimants filing those suits will have in whatever is left of

8    bankruptcy estates would hinder the goals of the automatic stay and the summary process for

9    adjudicating and liquidating claims.").

10           **3.**        <u>**Whether the Foreign Proceeding Involves the Debtor as a Fiduciary**</u>

11          This factor is neutral because it is not applicable.  Neither the California Action nor the NY

12    Action involves the Debtor as a fiduciary. This factor also, however, certainly does not support

13    Mt. Hawley's Motion as it contends (Br., at 17:22-28 ) for all of the reasons that the Debtor states

14    herein.

15           **4.**        **Whether a Specialized Tribunal Has Been Established**

16                   **To Hear the Particular Cause of Action and Whether**
<u>**That Tribunal Has the Expertise to Hear Such Cases**</u>

17          This factor is neutral because it is not applicable.  There is no specialized tribunal

18    established to hear the underlying insurance litigation claims.  This factor, however, certainly does

19    not support Mt. Hawley's Motion as it contends (Br., at 17:22-28 ) for all of the reasons that the

20    Debtor states herein.

21           **5.**        **Whether the Debtor's Insurance Carrier Has Assumed**

22                   <u>**Full Financial Responsibility for Defending the Litigation**</u>

23          This factor is neutral because it is not applicable.  Debtor is in litigation against its

24    insurance carriers.  Therefore, this factor certainly does not support Mt. Hawley's Motion as it

25    contends (Br., at 17:22-28 ) for all of the reasons that the Debtor states herein.

26

27

28

Case: 22-10381   Doc# 251   Filed: 02/21/23   Entered: 02/21/23 22:46:08   Page 27 of 37

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

**6.      Whether the Action Essentially Involves Third Parties, And the Debtor Functions Only as a Bailee or Conduit for the Goods or Proceeds in Question**

This factor is neutral because it is not applicable.  Neither the California Action nor the NY Action involves the Debtor functioning only as a bailee or conduit for goods or proceeds.  This factor, however, also certainly does not support Mt. Hawley's Motion as it contends (Br., at 17:22-28 ) for all of the reasons that the Debtor states herein. *See In re Residential Capital, LLC*, 2012 Bankr. LEXIS 3641, at *20 (Bankr. S.D.N.Y. Aug 8, 2012) ("The court should not grant relief from the stay under the sixth Sonnax factor if the debtor is the main party to the litigation.")

**7.      Whether the Litigation in Another Forum Would Prejudice the Interests of Other Creditors, the Creditors' Committee and other Interested Parties**

This factor weighs heavily in favor of the denial of Mt. Hawley's Motion.  As discussed above, if relief from stay is granted, the Estate will be forced to incur additional attorneys' fees and costs in duplicative litigation in the NY Action that is unnecessary because all claims can be resolved in the California Action.  (Spievack Decl. ¶¶ 5, 32-43.)  Accordingly, creditors of the Estate will be prejudiced by a significantly reduced potential recovery. (*Id*.)  All disputes between the parties can only be resolved in one forum, and that is the Superior Court. (Spievack Decl. ¶¶ 3, 21-24, 26-28, 38 (at n.18), 40-43, Ex. 1-4, 6-8, 11.)

**8.      Whether the Judgment Claim Arising From the Foreign Action is Subject to Equitable Subordination under Section 510 (c)**

This factor is neutral because it is not applicable.  The claims in the underlying insurance litigation are not subject to equitable subordination.  It cannot be seriously dispute that this factor does not as Mt. Hawley contends (Br., at 17:22-28 ) favor it for all of the reasons that the Debtor states herein.

**9.      Whether Movant's Success in the Foreign Proceeding Would Result In a Judicial Lien Avoidable by the Debtor Under Section 522(f)**

This factor is neutral because it is not applicable.  Mt. Hawley will not obtain a judicial lien that is avoidable by Debtor under Section 522(f).  This factor, however, also certainly does not support Mt. Hawley's Motion as it contends (Br., at 17:22-28 ) for all of the reasons that the

VAS 53426867v1

Debtor states herein.

### 10. The Interests of Judicial Economy and the Expeditious and Economical Determination of Litigation for the Parties

This factor also weighs heavily in favor of the denial of Mt. Hawley's Motion. Judicial economy dictates that the California Action move forward since that is the only litigation that is capable of fully resolving all claims arising from the multiple, insurance policies. (*See* Spievack Decl. ¶¶ 3, 5, 21-23, 26-28, 32, 40-43.) And because all necessary parties are only named in the California Action, the insurance litigation can be more expeditiously resolved in that forum. (*Id*.) Finally, it is economical for all parties, including Debtor and Mt. Hawley, to resolve their disputes in one centralized forum.

### 11. Whether the Foreign Proceedings Have Progressed to the Point Where the Parties are Prepared for Trial

This factor is neutral because neither the California Action nor the NY Action has progressed to the point where Debtor or Mt. Hawley are prepared for trial. This factor also certainly does not support Mt. Hawley's Motion as it contends (Br., at 17:22-28 ) for all of the reasons that the Debtor states herein.

### 12. The Impact of the Stay on the Parties and the "Balance of Hurt"

"The most important factor in determining whether to grant relief from the automatic stay to permit litigation against the debtor in another forum is the effect of such litigation on the administration of the estate. Even slight interference with the administration may be enough to preclude relief in the absence of a commensurate benefit." *In re Roger*, 539 B.R. at 845.

In this case, if relief from the automatic stay is granted, the "balance of hurt" will be unfairly borne by Debtor and the Estate because the Estate will be forced to incur additional attorneys' fees and costs necessitated by duplicative NY Action, which could total $1 million or more if the two Litigations both proceed. All of the parties' rights and claims can be adjudicated in the California Action; thus, there is no prejudice to Mt. Hawley if the Motion were denied.

The Court should consider asking Mt. Hawley another rhetorical question: if the NY Action were not filed prior to the filing of the Chapter 11 case, and Mt. Hawley sought relief from

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

VAS 53426867v1

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

stay to file a new action in New York, what should the Bankruptcy Court do about a relief from

stay request timed in this manner? Would there be any doubt, after applying all of the *Tucson* and

*Curtis* factors and considering what benefit would be achieved by filing the NY Action, as to the

Court's conclusion? Once this Court understood that all disputes between the parties could be

adjudicated in the Superior Court including those currently pending in the NY Action, could this

Court reach any conclusion other than deny stay relief? The NY Action achieves nothing when

the Superior Court, with appeals up to the California Supreme Court, has ruled that the FSCs are

invalid.

Once the FSCs were invalidated by the California Superior Court as has now been done,

the NY Action is an irrelevancy. The New York Action is an irrelevancy and Mt. Hawley is

bound by those final rulings as *res judicata.* Mt. Hawley's efforts to squeeze the NY Action into

either the *Tucson* or *Curtis* factors is a square peg into a round hole. Mt. Hawley has strategically

waited from September 29 until now to suddenly seek to revive the NY Action. Why did they

wait almost five months to do that; there is no explanation for their conduct, as they have waited,

attending every hearing, saying nothing at any of them, and now suddenly urging this Court that

their rights are somehow compromised by the continuance of the automatic stay respecting the NY

Action? However, when put to the test of enumerating that prejudice or identifying what rights

are being violated, they have no answer except for multiplying this Debtor's administrative

expenses to its Special Litigation Counsel and delaying the adjudication of their responsibility

under the Mt Hawley insurance policy. Those are not legitimate bases for stay relief in this case.

In sum, since factors 1 and 2, 7, 10, and 12 weigh heavily against granting Mt. Hawley's

Motion and the remaining factors are neutral, the cumulative weight of the *Curtis* factors mandates

that the Motion be denied.

## IV.

## <u>CONCLUSION</u>

For the foregoing reasons, Debtor requests that the Motion be denied in its entirety.

DATED: February 21, 2023

Respectfully submitted,

**GREENSPOON MARDER LLP**

By:     _/s/ Victor A. Sahn_
       Victor A. Sahn
       Mark S. Horoupian
       Steve Burnell
       Attorneys for Debtor in Possession,
       Spring Mountain Vineyard Inc.

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

VAS 53426867v1

27

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is

333 South Grand Avenue, Suite 3400, Los Angeles, CA 90071.

A true and correct copy of the foregoing document entitled (*specify*): **OPPOSITION TO MOTION FOR RELIEF FROM AUTOMATIC STAY FILED BY  MT. HAWLEY INSURANCE COMPANY** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) February 21, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) February 21, 2023, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)  February 21, 2023 , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 21, 2023 | Patricia Dillamar | *Patricia Dillamar* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

CC 52274685v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

# 1. <u>SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")</u>

Steve Burnell on behalf of Debtor Spring Mountain Vineyard Inc.
steve.burnell@gmlaw.com

Dean C. Burnick on behalf of Interested Party Mt. Hawley Insurance Company **(RSN)**
dcb@proughlaw.com

Jacquelyn H. Choi on behalf of Creditor Napa County Treasurer-Tax Collector **(RSN)**

Trevor Ross Fehr on behalf of U.S. Trustee Office of the U.S. Trustee / SR
trevor.fehr@usdoj.gov

Mark S Horoupian on behalf of Debtor Spring Mountain Vineyard Inc.
mark.horoupian@gmlaw.com, cheryl.caldwell@gmlaw.com

Thomas Philip Kelly, III on behalf of Creditor Central Valley Builders Supply Inc. **(RSN)**
tomkelly@sonic.net

Steve Ma on behalf of Creditor MGG California, LLC
sma@proskauer.com

Jeff J. Marwil on behalf of Creditor MGG California, LLC
jmarwil@proskauer.com

Randall P. Mroczynski on behalf of Creditor Ford Motor Credit Company LLC **(RSN)**
rmroczynski@cookseylaw.com

Office of the U.S. Trustee / SR
USTPRegion17.SF.ECF@usdoj.gov

Elvina Rofael on behalf of U.S. Trustee Office of the U.S. Trustee / SR
elvina.rofael@usdoj.gov, Katina.Umpierre@usdoj.gov,GemMil.Langit@usdoj.gov

Victor A. Sahn on behalf of Debtor Spring Mountain Vineyard Inc.
victor.sahn@gmlaw.com, Karen.Files@gmlaw.com

Michael St. James on behalf of Interested Party Arcade Capital, LLC **(RSN)**
ecf@stjames-law.com

John G. Warner on behalf of Creditor Francois Freres USA Inc. **(RSN)**
warnerwest@aol.com

Ashley M. Weringa on behalf of Creditor MGG California, LLC
aweringa@proskauer.com

Steven F. Werth on behalf of Debtor Spring Mountain Vineyard Inc.
steven.werth@gmlaw.com, Patricia.Dillamar@gmlaw.com

Peter J Young on behalf of Creditor MGG California, LLC
pyoung@proskauer.com

CC 52274685v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012      F 9013-3.1.PROOF.SERVICE

Case: 22-10381    Doc# 251    Filed: 02/21/23    Entered: 02/21/23 22:46:08    Page 33 of 37

**SERVED BY EMAIL OR UNITED STATES MAIL**

**Debtor's Financial Advisor And Chief Restructuring Officer**
Attn: Kevin A. Krakora, Managing Director
Getzler Henrich & Associates LLC, a Hilco Global Company
150 S. Wacker Drive | 24th Floor
Chicago, IL 60606
Tel: (312) 283-8071
email: kkrakora@getzlerhenrich.com
pekman@hilcoglobal.com

**Secured Creditor**
Imperial PFS aka IPFS
49 Stevenson St. #127
San Francisco, CA 94105-2909
(877) 687-9826
Lisa Chandler, Litigation and Bankruptcy
Recovery Manager
lisa.chandler@ipfs.com

**Largest Unsecured Creditors**
Allen Wine Group LLP
Attn: Timothy Allen, CPA - Managing Partner
120 Stony Point Road, #230
Santa Rosa, CA 95401
(707) 528-3860
tim@allenwine.com
Tim@allengroupllp.com
Brent Garrison
Brent@allengroupllp.com

Bartelt Engineering
Attn: Paul Bartelt
1303 Jefferson St #200B
Napa, CA 94559
(707) 258-1301
paulb@barteltengineering.com

Belkorp AG, LLC
Attn: Laura Correll, Accounting
2413 Crows Landing Rd
Modesto, CA 95358
(209) 205-3706
ar@belkorpag.com
AR@BelkorpAg.com
ldunhouse@belkorpag.com

Brown's Auto Parts
Attn Dan Beltramai, Owner
1218 Main St.
Saint Helena, CA 94574-1901
(707) 963-3638
brownsauto169@gmail.com

Castino Restaurant Equipment And Supply
50 Utility Ct.
Rohnert Park, CA 94928-1659
(707) 585-3566
sales@castinosolutions.com

Central Valley
Administrative Offices
1804 Soscol Ave., #205
Napa, CA 94559
Attn: Gerry Cruz, Accounting Mgr.
(707) 261-7900
gerryc@central-valley.com

Chubb Group of Insurance Companies
P.O. Box 777-1630
Philadelphia, PA 19175-0001
(800) 372-4822
**Returned – Box Closed**

Conway Beverage Group, LLC
Dba: Elite Brands
Elite Brokerage
3238 Old Heather Rd.
San Diego, CA 92111-7716
Attn: Mr. Jay Conway
Jayconway@elitebrands.biz

Famille Sylvain
855 Bordeaux Way #239
Napa, CA 94558-7549
(707) 492-3308
contactusa@famillesylvain.com

Tonnellerie Sylvain
855 Bordeaux Way
Napa, CA 94558
(707) 492-3308
contactusa@famillesylvain.com

CC 52274685v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

Francois Freres USA Inc.
1403 Jefferson St.
Napa, CA 94559-1708
(707) 294-2204
office@francoisfreresusa.com
julie@francoisfreresusa.com
accounting@francoisfreresusa.com
assistant@francoisfreresusa.com

G3 Enterprises Inc.
(Tapp Labels)
580 Gateway Dr.
Napa, CA 94558
(707) 252-8300
jeff.licht@tapplabel.com

Napa County Treasurer
1195 3rd St. #108
Napa, CA 94559-3035
(707) 253-4314
Dawnette.martindale@countyofnapa.org
Napa County Treasurer-Tax Collector
Bob.Minahen@countyofnapa.org
Napa County Attorney
Wendy.dau@countyofnapa.org

Napa Ford Lincoln
170 Soscol Ave.
Napa, CA 94559
(707) 255-2580
**Via Regular Mail**

Ford Motor Credit Company
National Bankruptcy Service Center
P O Box 62180
Colorado Springs CO 80962-2180
(800) 955-8232
fcffald@ford.com

Napa Valley Petroleum
P.O. Box 2670
Napa, CA 94558-0528
(707) 252-6888
kamh@napavalleypetroleum.com

Napa Valley Vintners Association
P.O. Box 141
Saint Helena, CA 94574
(707) 963-3388
Attn: Steve Tradewell, CFO
stradewell@napavinters.com

Ramondin U.S.A. Inc.
Tammy Frandsen
Finance Manager
541 Technology Way
Napa, CA 94558
(707) 944-2277
tfrandsen@ramondin.com

Stanzler Law Group
Attn: Jordan S. Stanzler
390 Bridge Pkwy #220
Redwood City, CA 94065
(650) 739-0200
Jstanzler@stanzlerlawgroup.com

Wilbur Ellis Company LLC
c/o Registered Agent Solutions Inc.
720 14th St.
Sacramento, CA 95814-1905
(707) 963-3495
KZavala@wilburellis.com
MHAMMETT@wilburellis.com
SPRIM@wilburellis.com

Wine Service Cooperative
1150 Dowdell Lane
Saint Helena, CA 94574
Attn: Steven Tamburelli
General Manager
Tel: (707) 963-9474
Fax: (707) 963 9359
Steve@wineservicecoop.com

Bright Event Rental
22674 Broadway # A
Sonoma, CA 95476
(707) 940-6060
Attn: Michelle Minsk, Acctg.
accountsreceivable@bright.com

CC 52274685v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                F 9013-3.1.PROOF.SERVICE

Case: 22-10381    Doc# 251    Filed: 02/21/23    Entered: 02/21/23 22:46:08    Page 35 of
37

CNH Capital
Dept. 1801104747435
P.O. Box 78004
Phoenix, AZ 85062
Attn: Steve Wright, Bankruptcy Dept.
(717) 355-5790
**Via Regular Mail**

CNH Industrial Capital America, LLC
PO Box 71264
Philadelphia, PA 19176-6264
Attn: John Chiavacci, HRBK Analyst
(717) 355-5913
john.chiavacci@cnhind.com

ETS Laboratories
c/o Marjorie Burns 899 Adams Street #A
Saint Helena, CA 94574-1160
(707) 963-4806
Attn Accounts Receivable Team
ar@etslabs.com
accounts@etslabs.com

Matheson Tri-Gas Inc.
Dept. LA 23793
Pasadena, CA 91185
(707) 963-4307
**Via Regular Mail**

Sovos Compliance LLC
200 Ballardvale St. Bldg 14th Fl.
Wilmington, MA 01887
(866) 890-3970
lori.bradshaw@sovos.com

Wine Technology America
aka Wine Technology, Inc.
474 Walten Way
aka Vinwizard
Windsor, CA 95492
(707) 703-5919
Attn: Kelly Graves, Director
(720) 284-2059
kelly@vinwizard.us

Wine Technology America Inc.
c/o Lloyd Matthews, Agent
1899 Larkspur St.
Yountville, CA 94599-1237
**Via Regular Mail**

Wyatt Irrigation Co.
4407 Solano Ave.
Napa, CA 94558
(707) 578-3747
Lynne Colombano, Acct Receivable Mgr.
lynne@wyattsupply.com

Wyatt Irrigation Co.
c/o CSC - Lawyers Incorporing Service
2710 Gateway Oaks Dr. #150N
Sacramento, CA 95833-3502
**Via Regular Mail**

**Request for Special Notice**
Alcohol & Tobacco Tax & Trade Bureau
U.S. Department of the Treasury
Attn: Daniel Paralta, Senior Counsel,
Field Operations
1436 2nd Street #531
Napa, CA 94559
(513) 684-2509
(202) 453-2412
Daniel.Peralta@ttb.gov

Dept. of the Treasury, Alcoholic Beverage Control
Attn: Tracie Parker, Lic. Rep. I
50 D Street Room 130
Santa Rosa, CA. 95404
Phone: (707) 576-2165
Fax: (707) 638-9537
tracie.parker@abc.ca.gov

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346
(800) 973-0424
**Via Regular Mail**

California Department of Tax and Fee
Administration
Special Operations Bankruptcy Team MIC: 74
P.O. Box 942879
Sacramento, CA 94279-0074
(800) 400-7115
**Via Regular Mail**

CC 52274685v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Franchise Tax Board
Attn: Vivian Ho
Bankruptcy Section, MS A-340
P.O. Box 2952
Sacramento, CA 95812-2952
916-845-7069
Vivian.Ho@ftb.ca.gov

Employment Development Department
Bankruptcy Unit-MIC 92E
P.O. Box 826880
Sacramento, CA 94280-0001
**Via Regular Mail**

Employment Development Department
Attn: MIC 53
800 Capital Mall
Sacramento, CA 95814
**Via Regular Mail**

Piper/Sandler
1251 Avenue of the Americas, 39th Floor
New York, N.Y. 10020
Attn.: Mr. Leonard Sheer and Mr. Mike Dillahunt
Leonard.sheer@psc.com
Michael.dillahunt@psc.com
**Via Regular Mail & Email**

Will Densberger
Pavi Micheli
Engel & Voelkers
25 East Napa Street
Sonoma, California
Will@nvwineestates.com
pavimicheli@icloud.com
**Via Regular Mail & Email**

**Courtesy Email**

Jay B. Spievack, Esq.
Cohen Tauber Spievack & Wagner P.C.
420 Lexington Ave., Suite 2400
New York NY 10170-2499
(212) 381-8735
email:  jspievack@ctswlaw.com

Joseph Vann, Esq.
Cohen Tauber Spievack & Wagner P.C.
420 Lexington Ave., Suite 2400
New York NY 10170-2499
(212) 381-8724
email:  jvann@ctswlaw.com

John C. Vaughan
Newmark Knight Frank
4675 MacArthur Court, Suite 1600
Newport Beach, CA 92660
(808) 797-0148
email:  john.vaughan@nmrk.com

Mark Kasowitz:  MKasowitz@kasowitz.com

Gavin D. Schryver:  GSchryver@kasowitz.com

Attorneys for Napa County Treasurer
Jacquelyn H. Choi
jacquelyn.choi@rimonlaw.com,
docketing@rimonlaw.com

Luckey McDowell
luckey.mcdowell@shearman.com

Jonathan Dunworth
jonathan.dunworth@shearman.com

Attorneys for Creditor Francois Freres USA Inc.
John G. Warner
warnerwest@aol.com

CC 52274685v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

Case: 22-10381    Doc# 251    Filed: 02/21/23    Entered: 02/21/23 22:46:08    Page 37 of 37