Michael D. Prough (SBN 168741)
mdp@proughlaw.com
Dean C. Burnick (SBN 146914)
dcb@proughlaw.com
PROUGH LAW, APC
1550 Parkside Dr., Ste. 200
Walnut Creek, CA 94596
Telephone: 925-433-5894
Facsimile: 925-482-0929

Attorneys for Creditor and Movant
Mt. Hawley Insurance Company

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA – SANTA ROSA

| | |
|---|---|
| In Re: SPRING MOUNTAIN VINEYARD INC., <br><br> Debtor | No. 22-10381 CN 11 <br><br> MT HAWLEY INSURANCE COMPANY'S REPLY IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY <br> [11 U.S.C. § 362(d)(1)] <br><br> Date: March 1, 2023 <br> Time: 11:00 a.m. <br> Place: U.S. Bankruptcy Court <br>        Courtroom 215 <br>        1300 Clay Street, Suite 300 <br>        Oakland, CA 94612 <br><br> Chief Judge Charles Novack |

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | STAY RELIEF IS WARRANTED UNDER *TUSCON ESTATES* OR *CURTIS* ………………………………………………………………… | 4 |
| | A. *Tuscon Estates* …………………………………………………. | 5 |
| | B. The *Curtis* Factors ……………………………………………… | 7 |
| |     1. Whether the Relief Will Result in a Partial or Complete Resolution of the Issues …………………………………... | 7 |
| |     2. The Lack of Any Connection with or Interference with the Bankruptcy Case …………………………………………. | 8 |
| |     7. Whether Litigation in Another Forum Would Prejudice the Interests of Other Creditors, the Creditors' Committee and Other Interested Parties …………………………….. | 8 |
| |     10. The Interests of Judicial Economy and the Expeditious and Economical Determination of Litigation for the Parties | 9 |
| |     11. Whether the Foreign Proceedings Have Progressed to the Point Where the Parties Are Prepared for Trial ………… | 10 |
| |     12. The Impact of the Stay on the Parties and the "Balance of Hurt" …………………………………………………………. | 11 |
| II. | EACH UNDERLYING CASE COURT CAN DECIDE ITS OWN CASE | 12 |
| III. | CONCLUSION ………………………………………………………… | 13 |

# TABLE OF AUTHORITIES

Page

**Cases**

*Atlantic Marine Constr. Co. v. United States District Court*
571 U.S. 49 (2013) …………………………………………….. 1, 10

*In Re Curtis*
40 B.R. 795 (Bankr. D. Utah 1984) ………………………………. 2, 4, 7

*In Re Gordon*
646 B.R. 904 (Bankr. D. Idaho 2022)9 ………………………… 4

*In Re Horizon Womens' Care Prof'l LLC*
506 B.R. 553 (Bankr. D. Colo. 2014) ……………………….. 9

*In Re Katz*
2019 WSL 7997242 (C.D. Cal. 2019) ……………………….. 4

*In Re Kronemyer*
504 B.R. 915 (9th Cir. BAP 2009) ………………………….. 7

*In Re Merriman*
616 B.R. 381 (9th Cir. BAP 2020) ………………………….. 2, 4, 7

*In Re Roger*
539 B.R. 837 (Banr. C.D. Ca. 2015) …………….................. 6, 5, 8

*In Re Santa Clara County Fair Assn.*
180 B.R. 564 (9th Cir. BAP 1995) …………………………… 2, 3, 5, 8, 11

*In Re Scarborough-St. James Corp.*
535 B.R. 60 (D. Del. 2015) ………………………………... 3

*In Re Tuscon Estates*
912 F.2d 1162 (9th Cir. 1990) ………………………………… 2, 4, 5, 7, 8

*In Re Universal Life Church*
127 B.R. 453 (E.D. Cal. 1991) …………………………………. 4

*In Re VidAngel, Inc.*
593 B.R. 340 (D. Utah 2018) ………………………………………. 3, 5, 7, 8, 9, 11

*Kanciper v. Suffolk County Soc. For Prev. of Cruelty to Animals, Inc.*
722 F.3d 88 (2nd Cir. 2013) 4

*Martinez v. Bloomberg L.P.*
740 F3d 211 (2nd. Cir. 2014) …………………………………….. 1, 10

*Stern v. Marshall*
564 U.S. 462 (2011) …………………………………………. 1, 10

| | | |
|---|---|---|
| | *Wachovia Bank N.A. v. Encap Gulf Holdings, LLC*<br>690 F.Supp.2d 311 (S.D.N.Y. 2010) …………………………… | 10 |

**Statutes**

| | | |
|---|---|---|
| | 11 U.S.C. §362(d) ………………………………………………….. | 13 |
| | 28 U.S.C. §1404 …………………………………………………… | 1 |

**Rules**

| | | |
|---|---|---|
| | Fed. R. Civ. P. 56(e) ……………………………………………….. | 13 |
| | Local Rule 9013-1(d)(1) …………………………………………… | 13 |

**Texts**

| | | |
|---|---|---|
| | J. Eisenberg, et al., *California Practice Guide: Civil Appeals and Writs,*<br>¶¶*15:241,2m* et seq. (The Rutter Group 2020) …………………………… | 1 |

SMV offers no authority that this Court can deny stay relief to a creditor, as a cudgel to coerce that creditor to assert its claims anew in a different, non-bankruptcy forum (here in Napa County). SMV cites no case permitting that remedy. Mt. Hawley has a pre-petition lawsuit against SMV pending in the Southern District of New York (the Hon. Gregory Woods). Mt. Hawley has now filed a proof of claim against the estate, in this District. The question presented by this motion is binary: (a) shall the motion be granted, so Mt. Hawley may resume its suit against SMV in New York; or (b) shall the motion be denied, in which case **this Court** will still ultimately need to deal with Mt. Hawley's claim. Under option (b), however, Mt. Hawley's state law, common law claim (if disputed) would still go to an Article III judge of this Court for final adjudication (per *Stern*). How initiating a new, disputed-claim proceeding with an Article III judge of this District is somehow more efficient than permitting Judge Woods to go forward in New York (with a case he had managed for six months) is not argued, and it would not be. Further, one of the initial steps in any new case in this District would be to transfer venue to New York, invoking the forum selection clause ("FSC") and 28 U.S.C. § 1404. *Atlantic Marine Constr. Co. v. United States District Court*, 571 U.S. 49, 63 (2013) (FSC is "given controlling weight in all but the most exceptional cases" on a section 1404(a) motion). Even if there were some recognized legal basis to freeze the New York case and try to pressure Mt. Hawley to re-file its claim anew in Napa County (there is not), SMV's proposal here flies in the face of the "strong federal public policy supporting the enforcement of forum selection clauses."[1] *Martinez v. Bloomberg* L.P., 740 F.3d 211, 219 (2d Cir. 2014). It would be flatly contrary to federal law.

---

[1] Because enforceability of an FSC presents a question of federal (non-bankruptcy) law to the Article III Court, *Martinez*, 740 F.3d at 218, resolution of that question also belongs with Judge Woods. SMV's suggestion that the issue has been finally decided by the Napa County court (applying what it understood to be California state law) in its case is incorrect. First, the issue in New York is one of both federal law and New York law, not California state law. Second, even in the California action, denial of a motion to dismiss is an interlocutory ruling, which can be revisited later in the case (with the benefit of discovery), and is fully preserved for appeal once a final judgment is entered. Thus, even if SMV were to prevail at trial of its affirmative claims in Napa County, any judgment could well be reversed on appeal when the forum-selection clause is given effect. The summary denial of Mt. Hawley's writ petition is not a merits ruling and has no law of the case or res judicata effect. See J. Eisenberg, et al., *California Practice Guide: Civil Appeals and Writs*, ¶¶ 15:241.2 et seq. (The Rutter Group 2020.)

- 1 -
MT. HAWLEY INSURANCE COMPANY'S REPLY RE STAY RELIEF MOTION
CASE NO. 22-10381

Case: 22-10381    Doc# 253    Filed: 02/27/23    Entered: 02/27/23 17:00:00    Page 5 of 18

SMV's main argument is that granting stay relief will make it incur litigation expense in contesting Mt. Hawley's affirmative claims. That is true. But that is always true, and thus not determinative in the stay relief calculus. *In re Santa Clara County Fair Assn.*, 180 B.R. 564, 566 (9th Cir. BAP 1995) ("litigation costs to a bankruptcy estate do not compel a court to deny stay relief") (collecting authority). The reason for the rule is simple. The estate would have to incur expense to oppose the claim, anyway, whether in bankruptcy court or non-bankruptcy court. "Litigation expense to debtor" is not a factor under *Tucson Estates* or *In re Curtis*, for this reason. SMV seeks to re-characterize this expense as a "burden to the administration of the estate" (the first *Tucson Estates* factor) but that is not what that term means. In fact, as *Tucson Estates* itself noted, granting stay relief to permit the non-bankruptcy case to go forward against the debtor will *ease* (not increase) the ***administrative*** burden to the estate—because it will serve to adjudge and liquidate the creditors' claims against the estate (a necessary step in administration). *In re Tucson Estates*, 912 F.2d 1162, 1169 (9th Cir. 1990); *see also In re Merriman*, 616 B.R. 381, 388 (9th Cir. BAP 2020) (debtor incurring expenses uncovered by insurance was irrelevant, where he "would face the same problem if the case were litigated in bankruptcy court"). So too here. Mt. Hawley's claim must be adjudicated and liquidated, before it can be administered.

Regardless, SMV does not dispute it is a solvent estate (with some $100 million in surplus assets over liabilities). No creditor's claim will be impaired, even if SMV must incur some litigation expense to defend against Mt. Hawley's claim (which SMV would have to do in this Court anyway if stay relief were denied). As for creditor MGG's suggestion, in its separate opposition, that its rights might be impaired (Dkt. # 252, at 1, 10-11), because money it loans to the estate may be used to pay SMV's lawyers, it does not explain how. MGG is a fully-secured creditor; and its DIP financing will be recovered back from the estate, with interest on whatever terms it demanded. MGG's claim is not reduced. MGG's loan gets repaid in full, plus profit.

Further, SMV's and MGG's stated concern for containing litigation costs is difficult to square with their excessive expenditure of sums in pursuit of their affirmative claims, paying New York counsel to fly across the country to litigate an insurance case that could be well handled by any number of northern California law firms (and should not have been filed in California in the

Case: 22-10381    Doc# 253    Filed: 02/27/23    Entered: 02/27/23 17:00:00    Page 6 of 18

first place). SMV's stated concern for hard costs including travel expenses, airfare, hotel rooms and meals is noted. Those costs are **self-inflicted** because SMV sued in California, using New York lawyers, despite the forum-selection clause. SMV could simply answer and counterclaim in New York, even now. Its lawyers could walk a few blocks to the courthouse, all its professed concern about travel costs, hotel bills and duplicative proceedings put to rest. And whatever money judgment it might ultimately obtain in New York, if any, would not be susceptible to reversal on appeal, years hence, due to an early, mistaken ruling on the FSC (one risk to proceeding in California).

SMV is seemingly using this bankruptcy as a sword, not a shield, to try to win a pre-petition venue dispute by forcing Mt. Hawley to litigate in SMV's preferred forum (one that violates the parties' contractual FSC at that). SMV freely, actively litigates its affirmative claims against Mt. Hawley, at great expense and with little apparent regard to cost, but invokes the automatic stay to keep Mt. Hawley from pursuing its own claims against SMV. As one bankruptcy court held (granting stay relief): "Thus, it appears that Debtor is not shying away from litigation; rather, Debtor seeks to litigate only those issues of its choosing and in its preferred forum. Debtor is using its bankruptcy as a 'sword' and not a 'shield.'" *In re VidAngel, Inc.*, 593 B.R. 340, 351 (D. Utah 2018), *citing In re Scarborough-St. James Corp.*, 535 B.R. 60, 70 (D. Del. 2015). A solvent estate with a $100 million surplus is presumably free to spend its money on offensive litigation (or however else it wants); but it cannot rightly claim poverty and invoke the automatic stay when it is playing defense. *In re Santa Clara Cty.*, 180 B.R. at 567 (Congress did not intend that a debtor use the stay "to defer or deflect resolution of claims against it by another forum with proper jurisdiction'").

- 3 -
MT. HAWLEY INSURANCE COMPANY'S REPLY RE STAY RELIEF MOTION
CASE NO. 22-10381

Case: 22-10381    Doc# 253    Filed: 02/27/23    Entered: 02/27/23 17:00:00    Page 7 of 18

# I. STAY RELIEF IS WARRANTED UNDER *TUCSON ESTATES* OR *CURTIS*

Both SMV and MGG take exception to Mt. Hawley's citation to the *Tucson Estates* factors, though neither can plainly articulate why. Perhaps misled by the word "abstention,"[2] they suggest that the doctrine only applies when the pre-petition lawsuit was pending in **state** court—maybe to imply that stay relief cannot be granted in favor of a **federal** district court proceeding (as here)? It is unclear why that would be. For the same lawsuit can often be filed either in a state court or across the street in a federal court. Regardless, there is no such limitation on a grant of stay relief. A bankruptcy court granting stay relief (or "abstaining") can do so in order to defer to a state, federal or specialty court, or even an arbitration. What matters here is federal district court, where Mt. Hawley's suit against SMV is pending. (*See* cases cited in footnote 2).

If SMV/MGG imply that *Tucson Estates* is no longer the law of the Circuit or it was somehow supplanted by *Curtis* (9 years earlier), that too is mistaken. Indeed, both decisions seem to be followed by courts presently, including a fair number of recent cases that cite to and follow *both*. *In re Merriman*, 616 B.R. at 381, 389, 394 (Ninth Circuit BAP in 2020 citing and following both); *In re Gordon*, 646 B.R. at 909 (bankruptcy court in 2022 applying *Tucson Estates* factors to grant stay relief in favor of a federal district court lawsuit); *In re Katz*, 2019 WL 7997242 (C.D. Cal. 2019) (applying *Tucson Estates* to grant of stay relief, in a matter handled by Mr. Sahn). For they are not truly in conflict, employing slightly different wording to get at the same

---

[2] There are innumerable, distinct "abstention" doctrines in different areas of the law (*Colorado River*; *Younger*; *Brillhart*; *Landis*; etc.) some of which involve federal deference to state rights. The abstention effected by granting stay relief can apply, however, even when the other forum is a federal district court, a specialty court, or an arbitration. *See, e.g., In re Santa Clara Cty.*, 180 B.R. 564 (stay relief to permit federal district court lawsuit to proceed); *In re Gordon*, 646 B.R. 903 (D. Idaho 2022) (same); *In re Universal Life Church*, 127 B.R. 453 (E.D. Cal. 1991) (stay relief in deference to tax court proceedings). The present motion has nothing to do with the *Brillhart* abstention motion that SMV filed (and plans to renew) before Judge Woods. (Exh. 1 to the Spievack Declaration). SMV's suggestion that Mt. Hawley's stay relief motion seeks to tie Judge Woods' hands on that motion in New York is both unclear and unfounded. Mt. Hawley will oppose and address SMV's *Brillhart* abstention motion, on its merits, in New York, once stay relief is granted and that case returns to active litigation. This is no empty exercise, for generally, *Brillhart* abstention is foreclosed where a common law damages claim (like breach of contract) is in the case. *Kanciper v. Suffolk County Soc. For Prevention of Cruelty to Animals, Inc.*, 722 F.3d, 88, 93-94 (2nd Cir. 2013).

- 4 -
MT. HAWLEY INSURANCE COMPANY'S REPLY RE STAY RELIEF MOTION
CASE NO. 22-10381

underlying, governing principles.

    A.    *Tucson Estates*

Mt. Hawley worked through each of the *Tucson Estates* factors in its opening brief (at pages 11-17) and will not repeat that discussion herein. On most factors, SMV responds by arguing that its alleged litigation expense[3] of having to respond to Mt. Hawley's New York lawsuit flips the factor into SMV's column (against stay relief). For example, as for factor #1, the effect or lack thereof on the efficient administration of the estate, SMV sidesteps the actual factor completely (the administration of the estate), and instead argues for pages about all the legal expense it might have to incur defending the New York case. (SMV Opp. at 16-18 (factor #1).

But litigation expense that a debtor must incur in response to a claim has nothing to do with that (or any) factor bearing on the consideration of a stay relief motion. *In re Santa Clara Cty.*, 180 B.R. at 566 ("Ordinarily, litigation costs to a bankruptcy estate do not compel a court to deny stay relief") (collecting authority); *In re Roger*, 539 B.R. at 848 (reversing bankruptcy court order denying stay relief, for considering alleged litigation expense to estate: "such a determination is both legally impermissible and factually unsupported"); *In re VidAngel*, 593 B.R. at 348 ("The Court also agrees with those cases holding that the costs of continuing with pending litigation is not a dispositive factor in granting relief from stay.") In fact, in *Tucson Estates*, the Court found that granting stay relief (so a class action lawsuit could go forward against the debtor)—plainly something that would cost the estate litigation expense—would **support** the efficient administration of the estate. 912 F.2d at 1169 ("the state litigation would not interfere

---

[3] Mt. Hawley does not dispute that SMV will incur some additional litigation expense by virtue of having to defend the New York lawsuit, just as it would if it had to defend a disputed claim proceeding before this Court and/or an Article III judge of this Court. But SMV's speculative estimates of those expenses are far from agreed. For example, SMV assumes that a full deposition of every one of 65 people listed on Mt. Hawley's "initial disclosures" would occur. Typically, a small fraction of witnesses listed on disclosures are ever actually deposed. Moreover, Mt. Hawley, SMV, and the other parties to the California action have every shared incentive to work together to coordinate depositions and minimize unnecessary duplication, where it is practicable. As for the other estimates, including $40,000-$60,000 to file a renewed notice of the motion to dismiss SMV prepared and filed just before the stay, those are unexplained and difficult to accept at face value (a renewed notice of a prior-filed motion might take about one hour). They come to some big numbers, but lacking substantiation.

with the bankruptcy proceedings but would in fact facilitate them" by liquidating claims). That is the case here, as well. The estate cannot be administered until and unless the claims are liquidated; granting stay relief expedites that occurring. It will expedite the allowance and payment of claims, and thus the ultimate closure of this bankruptcy. Denying stay relief will not extinguish Mt. Hawley's claim. It is still on the register, indeed growing each day as SMV drives up the expense in the Napa County action. The way to move it along is to grant stay relief.

On other factors, SMV shifts the discussion to its concerns over duplicative litigation, inconsistent rulings, and the like, premised on the juxtaposition of SMV's lawsuit in Napa County relative to Mt. Hawley's lawsuit against SMV in New York.[4] (SMV Opp. at 18-19.) Again, those arguments sidestep the actual factors, which look to interference and inter-relatedness between **the bankruptcy case** and the stayed litigation (the New York action). Here, there is virtually none. The New York litigation is a state law insurance lawsuit. Other than fixing the amount of Mt. Hawley's claim, it has nothing to do with the bankruptcy. On factor #6 (degree of relatedness or remoteness of the proceeding to the main bankruptcy), SMV discusses the alleged importance of *its own Napa County action* to the bankruptcy. (SMV Opp. at 20). That is not the question. That lawsuit is not the subject of this stay relief motion. It is already unstayed. Though even that lawsuit has nothing to do with the bankruptcy case—other than setting the value of a claimed asset (the lawsuit). There are plainly sufficient assets to satisfy all creditors (including Mt. Hawley), even if SMV loses the California lawsuit.

As for factors 10, 11 & 12 (SMV Opp. at 20-22), again, SMV discusses the factors as if its California lawsuit (not Mt. Hawley's New York action) was the subject of the motion. Mt. Hawley's state law common law breach of contract and rescission counts are plainly within the jurisdiction and must be tried and finally adjudicated by an Article III court, weighing in favor of

---

[4] It is worth noting that SMV's California lawsuit against Mt. Hawley is now limited to claims for declaratory relief (the breach of contract and bad faith claims were dismissed on demurrer). It is less comprehensive than Mt. Hawley's New York lawsuit against SMV, which includes claims of breach of contract and rescission (common law claims and remedies), in addition to claims for declaratory relief. Mt. Hawley's common law claims against SMV are not pending in the Napa County action. Deferring to the Napa County action will not get those claims resolved. They exist only in New York.

- 6 -
MT. HAWLEY INSURANCE COMPANY'S REPLY RE STAY RELIEF MOTION
CASE NO. 22-10381

stay relief. Likewise, for factor #12 (the presence of non-debtor parties), none are present in the New York action. That said, SMV is certainly within its rights, when it answers that case, to seek to add the other insurers as cross-defendants, if it wishes to do so.

B. The *Curtis* Factors

As Mt. Hawley noted in its motion, and SMV and MGG argued in their responses, some courts also look to the "*Curtis*" factors in evaluating a stay relief motion. *In re Merriman*, 616 B.R. at 389; *In re Kronemyer*, 405 B.R. 915, 921 (9th Cir. BAP 2009); *see generally*, *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984).[5] The parties appear to agree that factors 3, 4, 5, 6, 8 & 9 are inapplicable here. The remaining factors largely overlap *Tucson Estates* factors. Mt. Hawley addressed them briefly in its opening brief. (Brf. at 12 & fn 4; 17 & fn. 6.) They are discussed further herein, to respond to SMV's and MGG's opposition arguments.

1. Whether the Relief Will Result in a Partial of Complete Resolution of the Issues

This factor favors relief from stay. Granting relief will result in a complete resolution of the issues affecting Mt. Hawley's claim against SMV. For purposes relevant to the bankruptcy case, it will resolve the important threshold issues of the viability and liquidation of Mt. Hawley's claim against the estate. *In re VidAngel,* 593 B.R. at 346 ("The Debtor may owe the [Plaintiff] the full amount of the Claim, or nothing, or something in between. Liquidating the amount of the Claim would fully resolve the underlying dispute.") SMV again looks to its own, California

---

[5] Those factors are: (1) Whether the relief will result in a partial or complete resolution of the issues; (2) The lack of any connection with or interference with the bankruptcy case; (3) Whether the foreign proceeding involves the debtor as a fiduciary; (4) Whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases; (5) Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation; (6) Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question; (7) Whether the litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties; (8) Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c); (9) Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f); (10) The interests of judicial economy and the expeditious and economical determination of litigation for the parties; (11) Whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and (12) The impact of the stay on the parties and the "balance of hurt." *In re Curtis*, 40 B.R. at 799-800.

- 7 -
MT. HAWLEY INSURANCE COMPANY'S REPLY RE STAY RELIEF MOTION

lawsuit, as if that were the subject of this motion (SMV Opp. at 22). It is not, nor is it the subject of Mt. Hawley's claim against the estate (which does matter for the purpose of administering this bankruptcy). MGG argues that Mt. Hawley "misapplied" this factor, because some courts have characterized the factor as whether the non-bankruptcy proceeding would result in "the resolution of preliminary bankruptcy issues." (MGG Opp. at 10, fn. 6.) But the proper adjudication and liquidation of Mt. Hawley's claim against SMV is a preliminary issue that must be decided before this bankruptcy can conclude. For "liquidating claims and allowing (or disallowing) them 'are wholly separate matters'" and "granting relief from stay will result in complete resolution" of the non-bankruptcy court litigation. *Id.* at 346 (internal citation omitted).

### 2. The Lack of any Connection With or Interference With the Bankruptcy Case

This factor overlaps *Tucson Estates* factors #1 and #6 (going to administration of the estate, and the degree of relatedness of the proceeding to the main bankruptcy). Likewise, they favor stay relief. Mt. Hawley's lawsuit against SMV, the subject of this motion, has nothing to do with bankruptcy law or any issue in the bankruptcy case (other than to liquidate the claim, as noted above). SMV argues this factor, yet again, by reference to *its own lawsuit* – but that lawsuit is not subject to the automatic stay. (SMV Opp. at 2.) The state law contract issues to be decided by Judge Woods in New York do not involve bankruptcy law, and far from interfering with the bankruptcy case it will facilitate and expedite its closure to have the claim adjudicated and liquidated in the federal district court in New York.

### 7. Whether Litigation in Another Forum Would Prejudice the Interests of Other Creditors, the Creditors' Committee and other Interested Parties

This factor also supports stay relief. There is no indication that permitting the New York lawsuit to go forward will prejudice the interests of other creditors (there is no Creditors' Committee) or interested parties. SMV argues the litigation costs it must incur to respond to Mt. Hawley's claim may prejudice the creditors of the estate "by a significantly reduced potential recovery." (SMV Opp. at 24:15.) It is unclear what is meant, and the only evidence citation is to SMV's outside counsel's argumentative declaration speculating about future litigation expenses. Those alleged litigation expenses are not determinative to this motion. *In re Santa Clara Cty.*, 180
- 8 -
MT. HAWLEY INSURANCE COMPANY'S REPLY RE STAY RELIEF MOTION
CASE NO. 22-10381

B.R at 566; *In re Roger*, 539 B.R. at 847-48; *In re VidAngel*, 593 B.R. at 348, 351. Further, "the fact that litigation may dilute the ultimate return to other creditors does not constitute legal prejudice to the rights of such creditors." *In re VidAngel*, 593 B.R. at 349, *citing In re Horizon Womens' Care Prof'l LLC*, 506 B.R. 553, 559 (Bankr. D. Colo. 2014).

The filings in the record in this bankruptcy case, submitted by SMV (and MGG), reveal a fully solvent estate, with over $300 million in assets and approximately $200 million in liabilities (almost entirely MGG's secured claim). Mt. Hawley made this point in its motion, and neither SMV nor MGG disagreed. Given this fact, all creditors with allowed claims will be paid in full. SMV's incremental expense from having to oppose Mt. Hawley's New York lawsuit (which it would have to incur to oppose Mt. Hawley's Claim anyway), is not nearly enough to put a dent in any creditor's recovery. MGG expresses concern that it may somehow suffer prejudice, by virtue of its position as a lender providing DIP financing to SMV. (MGG Opp. at 10-11). First, that has no bearing on MGG's status as a creditor; as the major secured creditor of the estate, its position is still protected. Second, even in its status as a provider of DIP financing, MGG"s position is protected, whether claiming as an administrative expense of the estate or by virtue of the fact that the Debtor's assets outstrip its liabilities. MGG makes money off of the sums that it lends the estate (whatever the estate spends it on). There is no demonstrated loss to MGG.

### 10. The Interests of Judicial Economy and the Expeditious and Economical Determination of Litigation for the Parties

This factor also favors stay relief, so the case may proceed to final judgment in the federal district court in New York. Denial of stay relief would result in additional, wasteful and avoidable litigation expense. For any disputed claim proceeding in this bankruptcy case would result in a withdrawal and/or ultimate review of the proceeding to an Article III judge of this Court. That would result in an entirely new proceeding before an Article III judge of the Northern District of California—starting at square one. An early motion in that new case would be a Section 1404(a) venue transfer motion, to transfer the case to the Southern District of New York (where it could then be related to Judge Woods). An Article III federal judge, of either court, would presumably follow the U.S. Supreme Court's and the U.S. Circuit Courts' overwhelming, uniform authority

- 9 -
MT. HAWLEY INSURANCE COMPANY'S REPLY RE STAY RELIEF MOTION
CASE NO. 22-10381

Case: 22-10381    Doc# 253    Filed: 02/27/23    Entered: 02/27/23 17:00:00    Page 13 of 18

mandating the enforcement of contractual FSC's (like the ones present in the written contract between SMV and Mt. Hawley). *Atlantic Marine*, 571 U.S. at 64-66; *Martinez v. Bloomberg LP*, 740 F.3d at 219-220 (*Atlantic Marine* "plainly reaffirms *Bremen*'s identification of a strong federal public policy supporting the enforcement of forum selection clauses"). Indeed, to deny stay relief and force a creditor to pursue their claim in bankruptcy in a district other than that selected in the FSC, itself cuts against that strong federal law. Thus, forum-selection clauses are generally given effect in non-core cases (which all agree this is). *See generally Wachovia Bank N.A. v. Encap Gulf Holdings, LLC* 690 F.Supp.2d 311, 329-31 (S.D.N.Y. 2010).[6]

SMV has identified certain motions it intends to renew or to bring before Judge Woods, if stay relief is granted, including asking Judge Woods to abstain, stay or dismiss his case, in favor of the California state court case. SMV is free to bring any proper motion it likes. The purpose of this motion is not to ask this Court to prejudge those motions. It is to get the automatic bankruptcy stay lifted, so that Judge Woods may first decide SMV's motions, and then proceed to adjudicate the merits of Mt. Hawley's contract-based common law claims against SMV.

11. Whether the Foreign Proceedings Have Progressed to the Point Where the Parties are Prepared for Trial

At the time it was stayed, the New York action had progressed through an amended pleading, initial disclosures, document discovery, and a number of case management conferences and scheduling orders. Approximately two months remained of the discovery period, with expert disclosures and summary judgment motions to follow. (Prough Decl., Exh. B.) The case was not going to trial imminently. But it was certainly more advanced than the alternative scenario—if stay relief is denied—where a contested claim may be presented as a brand new matter, before an Article III judge of this Court. To the extent that factor #11 looks to determine whether the case

---

[6] Following *Stern v. Marshall*, 564 U.S. 462 (2011), the former core vs non-core nomenclature is less precise, as the logical dividing line is between issues that an Article I bankruptcy court may finally adjudicate and those it cannot because they must be decided by an Article III court. Nevertheless, here, Mt. Hawley's New York state law contract law claims against SMV are squarely both "non-core" and within the adjudicative authority of the Article III court. *Id.* at 484 ("Congress may not 'withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty.'") Commercial contract disputes are and were classic common law suits.

- 10 -
MT. HAWLEY INSURANCE COMPANY'S REPLY RE STAY RELIEF MOTION
CASE NO. 22-10381

Case: 22-10381    Doc# 253    Filed: 02/27/23    Entered: 02/27/23 17:00:00    Page 14 of 18

could more efficiently be handled in the district where the bankruptcy is pending, rather than the district where the pre-petition litigation was pending, that comparison would favor stay relief.

### 12. The Impact of the Stay on the Parties and the "Balance of Hurt"

This factor also favors stay relief. Continuing delay to the resolution of Mt. Hawley's claim benefits neither the Debtor nor Mt. Hawley. Both sides will benefit from expediting the judicial resolution of their dispute. SMV has benefitted from the automatic stay for almost half a year; but during that time, it has unilaterally and vigorously pressed its own litigation interests in the California action. It is unfair to permit one litigant to commercial litigation to proceed, litigating at will, while its counterparty is restrained by the automatic stay. This dynamic echoes that which was present *In re VidAngel*, wherein "a debtor protected by the stay actively pursued its litigation interests" against parties who were subject to the stay. The court granted stay relief, noting that "Debtor is using its bankruptcy case as a 'sword' and not a 'shield.'" *Id.*, 593 B.R. at 351.

Permitting the New York action to proceed will bring the parties' dispute one step closer to its ultimate resolution. If SMV is confident in its positions in that action, procedurally and substantively, it can seek their prompt resolution in its own favor. Likewise, Mt. Hawley is optimistic that a quick, streamlined merits determination and/or trial can be completed in New York, if necessary, with its outcome potentially putting this entire dispute behind it and SMV. Leaving the action stayed, indefinitely, advances nobody's proper interests, and would just leave it to this Court (and an Article III judge of this Court) to seek to address these issues itself, when and if SMV objects to Mt. Hawley's bankruptcy claim. The merits will be joined, either in this Court or more likely in a transferred action to New York—placing the parties in the same place they would be if this motion were granted, but with several months more of delay. It would be much simpler and more efficient to simply abstain and defer to the district court in New York now, by granting stay relief as requested by Mt. Hawley. The purpose of the bankruptcy laws is not to permit "that the debtor can use the bankruptcy forum to defer or deflect resolution of claims against it by another forum with proper jurisdiction." *In re Santa Clara Cty.*, 180 B.R. at 567.

## II. EACH UNDERLYING CASE COURT CAN DECIDE ITS OWN CASE

The Court inquired, at the February 15 scheduling hearing, what would happen if there were no bankruptcy case? The answer is that SMV's claims would proceed in California state court through conclusion; while Mt. Hawley's claims would likewise proceed in New York—subject, of course, to each Court's consideration of any Party's request, to one court or the other, to dismiss, stay or enter a final judgment in its specific case. That is what was happening here, as of the petition date. Although unusual, it is not unheard-of for party litigants to have more than one case pending between them in unrelated jurisdictions. The scenario sometimes arises, as here, where one party initiates a suit in contravention of a contractual FSC (or with an argument for its inapplicability), while the other party seeks to proceed in the contracted-for forum.[7] There is no single court system that oversees both Napa County Superior Court and the United States District Court for the Southern District of New York, of course. In such a scenario, if a final judgment on the merits is entered by one court or the other, it may (potentially) give rise to some claim- or issue-preclusive effect, depending on the applicable law. For purposes of the present motion, it is noted that Mt. Hawley's claims against SMV are pending only in the federal district court in New York (and now herein to the extent of the claim). Mt. Hawley has not counterclaimed in Napa County (nor has SMV counterclaimed in New York—which it could). Mt. Hawley contends that either the trial or appellate court in California may reasonably decide to enforce the FSC, ultimately, in later proceedings;[8] and in any event, Mt. Hawley has not waived its applicability.

SMV and MGG both, in their briefing and in the lengthy, argumentative declaration of

---

[7] Of course, it may also occur that one forum applies legal standards less favorable than the other, as to the enforceability of an FSC. Here, the California state court applied California state law standards; while the New York federal court will apply federal (and New York state) law standards. Although Mt. Hawley disagrees with the correctness of the California court's ruling, there are also some potential distinctions between the respective standards.

[8] As with Mt. Hawley, nothing forecloses the other co-defendant insurers from challenging the interlocutory state trial court ruling denying their motions to dismiss under their FSCs, on appeal following the entry of a final judgment in the state court case. (Not seeking writ relief does not bar a later appeal.) SMV may express confidence in its position that the FSCs are unenforceable, but an alternate possible outcome is that the entire California state court action may become mooted by such an appellate ruling--returning the parties to square one.

SMV's litigation counsel, take various *ad hominem* swipes at Mt. Hawley and its counsel, bearing on positions taken by the parties in the respective proceedings (or alleging improper purposes for certain of the litigation filings, amendments, etc.). Those are unnecessary and not relevant to the present motion, and suffice it to say, they are categorically disputed.

Finally, it is noted that SMV submitted not only a 26-page opposition brief, but also a 19-page declaration (Dkt. # 250) by its litigation counsel (44 paragraphs and 21 footnotes) that is argumentative throughout, replete with legal opinions, conclusions, and aspersions. One effect is to functionally circumvent the Court's 25-page limit on the opposition brief, by making arguments throughout the declaration (and its footnotes), and then citing to those (as "evidence") throughout the main brief. A separate Objection is filed herewith. On a broader scale, Bankruptcy Local Rule 9013-1(d)(1) generally provides that "Affidavits and declarations shall contain only facts, shall conform as far as possible to the requirements of Fed.R.Civ.P. 56(e), and shall avoid conclusions and argument." Giving effect to the Rule, much of the Declaration is improper. On top of this, MGG submitted a 10-page opposition two days after SMV's, which Mt. Hawley has also sought to reply to herein (as noted) to the extent it makes any additional arguments. Nothing unaddressed or not specifically responded to within these 55-pages of opposition (and in particular the many *ad hominem* swipes at Mt. Hawley or its counsel) is intended to be conceded.

III. CONCLUSION

For the forgoing reasons, good cause exists under 11 U.S.C. § 362(d) to grant Movant's motion for relief from automatic stay to allow Mt. Hawley's New York Action to proceed to judgment, and any appeal therefrom, in New York.

Dated: February 27, 2023                    PROUGH LAW, APC


                                            By: */s/ Michael D. Prough*
                                                    Michael D. Prough

                                            Attorneys for
                                            Mt. Hawley Insurance Company

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system and served upon all parties receiving notice pursuant to the CM/ECF system on this 27th day of February 2023.

                                                  */s/  Michael D. Prough*
                                                     Michael D. Prough