

1 | Victor A. Sahn (CA Bar No. 97299)
    victor.sahn@gmlaw.com
2 | Mark S. Horoupian (CA Bar No. 175373) The following constitutes the order of the Court.
    mark.horoupian@gmlaw.com                **Signed: March 6, 2023**
3 | Steve Burnell (CA Bar No. 286557)
    steve.burnell@gmlaw.com
4 | **GREENSPOON MARDER LLP**
    333 South Grand Avenue, Suite 3400
5 | Los Angeles, California 90071
    Telephone: 213.626.2311                 _____
6 | Facsimile: 954.771.9264                 **Charles Novack**
                                            **U.S. Bankruptcy Judge**
7 | Attorneys for Debtor in Possession,
    Spring Mountain Vineyard Inc.

8 |

          **UNITED STATES BANKRUPTCY COURT**

9 |

          **NORTHERN DISTRICT OF CALIFORNIA**

10 |

              **SANTA ROSA DIVISION**

11 |

12 | In re                                  Case No. 1:22-bk-10381 CN

13 | SPRING MOUNTAIN VINEYARD INC., a       Chapter 11
     Delaware corporation,

14 |                                        **ORDER GRANTING DEBTOR'S NOTICE**
                                            **OF MOTION AND MOTION FOR ENTRY**
15 | Federal EIN: 36-3844911                **OF (I) AN ORDER APPROVING**
                                            **AUCTION AND BID PROCEDURES FOR**
16 |         Debtor.                        **THE SALE OF ITS WINE VINEYARD**
                                            **BUSINESS INCLUDING REAL**
17 |                                        **PROPERTY, RIGHTS RUNNING WITH**
                                            **THE CERTAIN REAL PROPERTY, WINE**
18 |                                        **INVENTORY, CERTAIN VINEYARD**
                                            **BUSINESS RIGHTS AND CONTRACT**
19 |                                        **RIGHTS AND (II) GRANTING RELATED**
                                            **RELIEF; DECLARATION IN SUPPORT**
20 |                                        **OF MOTION**

21 |                                        Date:    February 15, 2023
                                            Time:    11:00 a.m.
22 |                                        Place.:  Courtroom 215
                                                     1300 Clay Street
23 |                                                 Oakland, California 94612
                                                     *Videoconference via Zoom*

24 |

25 |

26 |

27 |

28 |

The Court has heard and considered the "Debtor's Notice Of Motion And Motion For Entry Of (I) An Order Approving Auction And Bid Procedures For The Sale Of Its Wine Vineyard Business Including and not limited to Real Property, Rights Running With The Certain Real Property, Wine Inventory, Certain Vineyard Business Rights And Contract Rights And (II) Granting Related Relief" ("<u>Motion</u>" or "<u>Sales Procedures' Motion</u>").[1]  The Debtor sought an order, pursuant to §§105(a) and 363 of the Bankruptcy Code and Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), (i) authorizing the Debtor to implement solicitation, bid, and auction procedures for the sale (the "<u>Sale</u>") of all or substantially all of the Debtor's Assets on the terms set forth in the bidding procedures annexed hereto as <u>**Exhibit 1**</u> (the "<u>Bid Procedures</u>") and (ii) granting related relief; and this Court having determined that the relief set forth in this Order is in the best interests of the Debtor, its estate, creditors, and other parties in interest; and due and adequate notice of the Motion having been given under the circumstances; and upon the entire record in this Chapter 11 Case; and after due deliberation thereon, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is granted to the extent set forth herein.

2. The Bid Procedures, substantially in the form attached as <u>**Exhibit 1**</u>, are approved in their entirety. The Bid Procedures were proposed in good faith, are fair and reasonable and reasonably calculated to produce the best and highest offers for the Assets, and will confer actual benefits upon the Debtor's estate. The Bid Procedures represent an exercise of the Debtor's sound business judgment and will facilitate an orderly Sale process. The Bid Procedures shall govern the submission and analysis of all bids relating to the proposed Sale of the Assets. The Debtor is authorized to take any and all actions necessary to implement the Bid Procedures.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion or the Bid Procedures, as applicable.

3. The Debtor is authorized, but not obligated, in an exercise of their reasonable business judgment and in consultation with MGG, to select one or more Qualified Bidders to act as stalking horse bidder(s) in connection with the Auction (each a "Stalking Horse Bidder"). In connection with any stalking horse agreement with a Stalking Horse Bidder, the Debtor may, subject to the reasonable consent of MGG and upon one (1) days' prior notice to the U.S. Trustee, agree to (x) provide the Stalking Horse Bidder with a reasonable breakup fee, (y) reimburse the Stalking Horse Bidder for the reasonable and documented out of pocket fees and expenses, and/or (z) any other bid protections typically provided to a Stalking Horse Bidder ((x), (y), and (z) collectively, the "Bid Protections"), which Bid Protections shall not be effective until authorized by the Court. In the event the Debtor seeks to provide Bid Protections to a Stalking Horse Bidder, the Debtor shall file a notice with the Court with the requested Bid Protections. If such notice is filed, a hearing shall be scheduled to consider approval of such Bid Protections, with notice of such hearing to be provided to MGG and the U.S. Trustee, and filed on the docket of the Debtor's case.

4. Notwithstanding Bankruptcy Rules 6004, 6006, or otherwise, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. To the extent applicable, the stays described in Bankruptcy Rules 6004(h) and 6006(d) are waived.

5. All deadlines set forth in the Bidding Procedures are hereby approved.

6. Objections (if any) to approval of a Sale shall be in writing, set forth the name of the objecting party, the basis for the objection and specific grounds therefor, and be filed with the Court on or before March 31, 2023 at 5:00 p.m. (prevailing Pacific time). Any objection not filed and served in accordance with the preceding sentence shall be deemed waived and shall be forever barred, and such party shall be deemed to have consented to the Sale.

7. A hearing to consider approval of the Sale(s) to the Successful Bidder(s) or Backup Bidder(s) (if applicable) shall be held on April 7, 2023 at 11:00 a.m. (prevailing Pacific time).

1        8.      The terms of this Order shall control to the extent of any conflict with the Motion.

2        9.      The Court retains jurisdiction to hear and determine all matters arising from or related

3 to the implementation, interpretation, or enforcement of this Order.

**\* \* \* End of Order \* \* \***

# EXHIBIT 1

| | |
|---|---|
| In re: | Chapter 11 |
| SPRING MOUNTAIN VINEYARD INC., | Case No. 22-10381 CN |
| Debtor. | |

## BID PROCEDURES FOR THE SALE OF
## ALL OR SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS

Spring Mountain Vineyard Inc. (the "Debtor") is seeking to sell (the "Sale") all or substantially all of its assets, which include, without limitation, its wine vineyard business (the "Vineyard Business") consisting of approximately 845 acres of wine vineyard property ("Property") located in Napa, California, the wine-making and processing equipment, bottling equipment, certain rights that run with the Property (such as permits and water rights), approximately 79,000 cases of wine inventory, and the Debtor's contract rights (collectively, the "Assets"), free and clear of all liens, claims, interests, or other encumbrances.

In connection therewith, on February [___], 2023, the United States Bankruptcy Court for the Northern District of California (the "Court") entered the *Order Granting Debtor's Notice of Motion and Motion for Entry of (I) An Order Approving Auction and Bid Procedures for the Sale of Its Wine Vineyard Business Including Real Property, Rights Running With the Certain Real Property, Wine Inventory, Certain Vineyard Business Rights and Contract Rights and (II) Granting Related Relief* [ECF No. ___] (the "Bidding Procedures Order"), by which the Court approved the following solicitation, bid and auction procedures (collectively, the "Bid Procedures"). These Bid Procedures set forth the process by which the Debtor is authorized, in consultation with MGG California, LLC, as administrative agent and DIP agent ("MGG"),[1] to conduct an auction (the "Auction") for the Sale.

These Bid Procedures provide interested parties with the opportunity to qualify for and participate in the Auction to be conducted by the Debtor, and to submit competing bids for the

---

[1] To the extent that the Bid Procedures require the Debtor to consult with MGG or obtain MGG's consent in connection with making a determination or taking any action, or in connection with any other matter related to the Bid Procedures or at the Auction, the Debtor shall do so in a regular and timely manner prior to making such determination or taking any such action. Notwithstanding the foregoing, the Debtor shall not be required to consult with MGG or obtain MGG's consent pursuant to the Bid Procedures if MGG is a bidder at the Auction; *provided*, *however*, if MGG notifies the Debtor in writing that it irrevocably forfeits its rights to be a bidder, the foregoing restriction shall no longer apply with respect to MGG upon the Debtor's receipt of such notice.

Notwithstanding anything herein to the contrary, all consultation, notification, or other rights of MGG are subject to, and expressly qualified by, any confidentiality obligation or agreement entered into with any Potential Bidder (as defined herein).

Assets. The Debtor shall assist interested parties in conducting their respective due diligence investigations.

| Summary of Sale Process Deadlines | |
|---|---|
| **Stalking Horse Bid Deadline:** | The deadline to submit a Stalking Horse Bid (as defined below) shall be **February 17, 2023 at 12:00 p.m. (prevailing Pacific time).** |
| **Bid Deadline:** | The deadline to submit Bids (as defined below) shall be **March 17, 2023 at 12:00 p.m. (prevailing Pacific time).** |
| **Auction Date & Time:** | An Auction (as defined below) will be held on **March 24, 2023 at 9:00 a.m. (prevailing Pacific Time)**. |
| **Sale Hearing:** | The Court will hold a hearing to consider approval of the Sale(s) to the Successful Bidder(s) or Backup Bidder(s) (if applicable) on **April 7, 2023 at 11:00 a.m. (prevailing Pacific time)**. |
| **Proposed Sale Closing:** | **April 15, 2023** |

Additional details regarding, among other thing, the submission of Bids and participation at the Auction are provided below.

> **Copies of the Bidding Procedures Order or other documents related thereto are available upon request to Debtor's investment bankers, BNP Paribas Securities, Inc. ("BNP"), at Perry DeLuca (Perry.DeLuca@bankofthewest.com), Gregg Fatzinger (gregg.fatzinger@us.bnpparibas.com), and Theo Angelo (theophile.angelo@us.bnpparibas.com)**

## I. SOLICITATION PROCESS; DISTRIBUTION OF BID PROCEDURES

The Debtor and/or any agent of the Debtor shall, at the Debtor's direction and in consultation with MGG, distribute these Bid Procedures to any potentially interested bidders for the Assets.

## II. PARTICIPATION REQUIREMENTS

### A. Potential Bidders.

To participate in the bidding process or otherwise be considered for any purpose under these Bid Procedures, a person or entity interested in the Assets must deliver to each of the Debtor's

advisors the following documents and information (unless the Debtor, in consultation with MGG, chooses to waive any of the following requirements for such party):

1. an executed Non-Disclosure Agreement on terms acceptable to the Debtor, in consultation with MGG; and

2. any other evidence the Debtor, in consultation with MGG, may reasonably request to evaluate the bidder.

The Debtor, in consultation with its advisors and MGG, will determine and notify such party whether such party has satisfied the foregoing requirements, in which case it shall be deemed a "Potential Bidder".

All substantive communications related to the Sale between and amongst Potential Bidders shall exclusively be through the Debtor and its advisors. Communications between and amongst Potential Bidders is expressly prohibited unless the Debtor expressly consents in writing to such communication; *provided* that, notwithstanding anything to the contrary in these Bid Procedures, MGG shall have the right to communicate with Potential Bidders and *vice versa*.

### B. Due Diligence Information.

The Debtors, with their advisors, shall establish an electronic data room (the "Data Room") that provides standard and customary diligence materials, including the necessary information to allow Potential Bidders to submit a Qualified Bid (as defined below) and to seek and obtain commitments for debt financing.

Only Potential Bidders shall be eligible to receive diligence materials and access to the Data Room and to additional non-public information regarding the Debtor and the Assets. The Debtor (with the assistance of its advisors) shall coordinate all reasonable requests from Potential Bidders for additional information and due diligence access; *provided that* (i) the Debtor shall have the right to reasonably limit the information and due diligence provided to competitors if, in consultation with MGG, the Debtor believes that providing such information or access would be detrimental to the interests of the Debtor's estate, and (ii) the Debtor may decline to provide such information to Potential Bidders who, at such time and in the Debtor's reasonable business judgment, after consultation with MGG, have not established, or who have raised doubt, that such Potential Bidder intends in good faith to, or has the capacity to, consummate a proposed Sale.

The due diligence period will end on the Bid Deadline and subsequent to the Bid Deadline the Debtors shall have no obligation to furnish any due diligence information. Additional due diligence will not be provided after the Bid Deadline, unless otherwise deemed reasonably appropriate by the Debtor in consultation with MGG. The Debtor and their advisors, and MGG and its advisors, are not responsible for, and will bear no liability with respect to, any information obtained by any Potential Bidder in connection with any Sale.

**All due diligence requests must be direct to the Debtor's investment bankers, BNP, at Perry DeLuca (Perry.DeLuca@bankofthewest.com), Gregg Fatzinger (gregg.fatzinger@us.bnpparibas.com), and Theo Angelo (theophile.angelo@us.bnpparibas.com).**

3

### C.    Selection of Stalking Horse Bid and Bid Protections.

Pursuant to the Bidding Procedures Order, the Debtor is authorized, but not obligated, in an exercise of its business judgment, and in consultation with MGG, to (a) select one or more Qualified Bidders to act as a stalking horse bidder in connection with the Auction (the "Stalking Horse Bidder") and (b) in connection with any stalking horse agreement with a Stalking Horse Bidder, provide a breakup fee and other bid protections typically provided to a Stalking Horse Bidder (the "Bid Protections"), which Bid Protections shall not be effective until authorized by the Court; *provided*, *however*, that any Bid Protections are reasonably acceptable to MGG.  In the event the Debtor seeks to provide Bid Protections to the Stalking Horse Bidder, the Debtor shall file a notice with the Court with the requested Bid Protections and, pursuant to the Bidding Procedures Order, a hearing is scheduled on **March 3, 2023 at 11:00 a.m. (prevailing Pacific time)** to consider approval of such Bid Protections.

A bidder that desires to submit a stalking horse bid (each, a "Stalking Horse Bid") must (i) comply with the Stalking Horse Requirements (as defined below), and (ii) transmit via email (in .pdf or similar format) or deliver written copies of its bid to the following parties so as to be received not later than **February 17, 2023 at 12:00 p.m. (prevailing Pacific time)** (the "Stalking Horse Bid Deadline"):

1. The Debtor's bankruptcy counsel—
   Victor A. Sahn (victor.sahn@gmlaw.com),
   Mark S. Horoupian (mark.horoupian@gmlaw.com),
   Steven Burnell (steve.burnell@gmlaw.com).

2. The Debtor's investment bankers, BNP—
   Perry DeLuca (Perry.DeLuca@bankofthewest.com),
   Gregg Fatzinger (gregg.fatzinger@us.bnpparibas.com),
   Theo Angelo (theophile.angelo@us.bnpparibas.com).

The Debtor will provide copies of all Stalking Horse Bids via electronic mail as soon as reasonably practicable to MGG and its advisors, subject to any confidentiality obligation or agreement entered with the Potential Bidders.

The Stalking Horse Bidder will have a priority treatment in the due diligence process and in access to the Debtor's management and representatives.  Following the selection of a Stalking Horse Bid, the Debtor shall communicate the minimum purchase price to all interested parties. MGG shall be deemed to consent to the Debtor's selection of a Stalking Horse Bid that (i) will produce net cash proceeds sufficient[2] to pay in full MGG's claims as of the closing of the proposed Sale, and (ii) provides for such cash payment be made at closing.

Parties that submitted a Stalking Horse Bid that were not accepted shall be able to (a) continue their due diligence in accordance with the Bid Procedures, (b) benefit from the progress

---

[2] The sufficiency of net cash proceeds includes, without limitation, the financial wherewithal of such Stalking Horse Bidder to consummate the proposed Sale.

on due diligence from the selected Stalking Horse Bid, and (c) submit an Overbid pursuant to the Bid Procedures.

### D. Bid Deadline.

A bidder that desires to make a Bid, other than a Stalking Horse Bid, must transmit via email (in .pdf or similar format) or deliver written copies of its bid to the following parties so as to be received not later than **March 17, 2023 at 12:00 p.m. (prevailing Pacific time)** (the "Bid Deadline"):

1. The Debtor's bankruptcy counsel—
   Victor A. Sahn (victor.sahn@gmlaw.com),
   Mark S. Horoupian (mark.horoupian@gmlaw.com),
   Steven Burnell (steve.burnell@gmlaw.com).

2. The Debtor's investment bankers, BNP—
   Perry DeLuca (Perry.DeLuca@bankofthewest.com),
   Gregg Fatzinger (gregg.fatzinger@us.bnpparibas.com),
   Theo Angelo (theophile.angelo@us.bnpparibas.com).

The Debtor will provide copies of all Bids via electronic mail as soon as reasonably practicable to MGG and its advisors, subject to any confidentiality obligation or agreement entered with the Potential Bidders.

## III. STALKING HORSE BIDS; QUALIFIED BIDS

### A. Requirements for Stalking Horse Bids.

Any proposal, solicitation, or offer (each, a "Bid") submitted by a bidder (a "Bidder") to act as the Stalking Horse Bidder must comply with all of the following, in the Debtor's reasonable business judgment and after consultation with MGG (collectively, the "Stalking Horse Requirements"):

1. ***Description of the Bidder***.  The Bid must include: (a) description of the company, fund, or entity acting as Bidder, and (b) confirmation that the Bid is either (y) being made solely on behalf of the Bidder and that the Bidder is acting for its own account and not as an agent of any third party or in concert with another person, or (z) otherwise disclose the identity of any agent or third party participating on behalf of such Bidder.

2. ***Treatment of Management.***  The Bid must include a statement of the Bidder's intentions with respect to the Debtor's existing management and employees.

3. ***Assets***.  The Bid must (a) clearly state which Assets and liabilities that the Bidder is agreeing to purchase and assume, including any debt to be assumed, and (b) any of the Assets and liabilities that are proposed to be excluded from the proposed Sale.

009

4. ***Purchase Price***.  The Bid must clearly set forth the cash purchase price in US Dollars and liabilities assumed (the "Purchase Price") for the Assets. The Bid should include a detailed description of any critical assumptions and value drivers considered in deriving the Purchase Price, including the valuation methodologies used to derive the Purchase Price, as well as any information and other factors that could potentially increase or decrease the prospective Purchase Price.

5. ***Financing***.  To the extent that a Bid is not accompanied by evidence of the Bidder's capacity to consummate the proposed transactions set forth in its Bid with cash on hand, each Bid must include a detailed description of the expected sources of debt and equity financing for the Sale. To the extent such financing is dependent on third-party sources, the Bidder should provide an indication of the anticipated timing and steps required to secure such financing. For Bids that provide for the repayment, in cash, in full of all debt and other obligations owing to MGG as of the closing of the proposed Sale, the Bid should also indicate whether the Bidder is open to a roll-over investment of any portion of the Purchase Price.

6. ***Due Diligence.***  The goal is to give the Bidder the opportunity to conduct the most thorough due diligence possible before submitting a Bid to act as the Stalking Horse Bidder. Therefore, such Bidder will be given immediate access to an online data room and submit a request list for additional due diligence items that such Bidder would need. Such Bidder shall also have the opportunity to visit and inspect the Assets.  Remaining due diligence issues, if any, should be specified in the Bid together with the date by which any due diligence condition will be removed.

7. ***Approvals and Conditions***.   The Bid must (a) indicate what third party approvals, if any, are required to close the Sale, and (b) confirm the Bidder's ability to close the Sale by April 15, 2023.

8. ***List of Contacts***.  The Bid must include the name(s) and contact details of the Bidder's deal team leader(s), external advisors (including financial, legal, accounting, tax and others), if any, that have been or are planned to be engaged to assist the Bidder in the Sale.

**B.      Requirements for Qualified Bid.**

A Bid submitted by a Bidder will be considered a qualified bid (a "Qualified Bid" and such entity a "Qualified Bidder") only if the Bid is submitted in writing by the Bid Deadline and is deemed to comply with all of the following, in the Debtor's reasonable business judgment and after consultation with MGG (collectively, the "Requirements"):[3]

---

[3]   MGG shall be deemed a Qualified Bidder for all purposes under these Bid Procedures and at all times, and shall be entitled to participate at the Auction.  A Bid submitted by MGG shall be deemed a Qualifying Bid.

1. *Assets*.  The Bid must clearly state which Assets and liabilities that the Bidder is agreeing to purchase and assume, including any debt to be assumed.  If any Assets or liabilities are excluded from the Sale, the Bid must clearly identify such excluded Assets and liabilities.

2. *Purchase Price*.  The Bid must (a) clearly set forth the Purchase Price to be paid, and (b) identify separately the cash component of the Purchase Price and each noncash component of the Purchase Price.

3. *Deposit*.  The Bid must be accompanied by a cash deposit in the amount equal to five (5) percent of the aggregate Purchase Price of the Bid to be held in an interest-bearing escrow account to be identified and established by the Debtor (the "Qualified Bid Deposit"); *provided* that if a Qualified Bidder increases its Bid at the Auction and is the Successful Bidder or Backup Bidder (each as defined herein), such Qualified Bidder must increase its Qualified Bid Deposit to match the proposed Purchase Price submitted at the Auction within three (3) business days after the Auction.

4. *Bid Documents*.  The Bid must include duly executed, non-contingent transaction documents necessary to effectuate the transactions contemplated in the Bid (the "Bid Documents").  The Bid Documents shall include: (a) a purchase agreement setting forth the definitive terms of the proposed Sale (the "Purchase Agreement"), (b) a blackline comparison of the Purchase Agreement against the form of purchase agreement provided by the Debtor or any stalking horse agreement, if applicable, (c) a schedule of assumed executory contracts and unexpired leases to the extent applicable to the Bid, together with evidence of such Bidder's ability to provide adequate assurance of future performance of such executory contracts or unexpired leases (as required by section 365(f)(2)(B) of the Bankruptcy Code), and (d) a statement from the bidder that: (y) it is prepared to enter into and consummate the Sale contemplated in the Bid Documents no later than April 15, 2023  and (z) the Qualified Bid will be irrevocable (whether or not such Qualified Bid is selected as the Successful Bid or the Backup Bid) until the consummation of the Sale.

5. *Identity*.  The Bid must fully disclose the legal identity of each person or entity bidding or otherwise participating in connection with such Bid (including each principle, equity holder or financial provider or backer of the bidder if such bidder is an entity formed for the purpose of consummating the proposed transaction(s) contemplated by such Bid), and the complete terms of any such participation, and must also disclose any connections or agreements with the Debtor, any other known Partial Bidder, Bidder, or Qualified Bidder, and/or any officer or director of the foregoing.

6. *Backup Bidder*.  By submitting a Bid, each Bidder agrees to be a Backup Bidder (as defined below) in the event the Debtor selects it as such; *provided*, *however*, MGG shall not have any obligation to serve as Backup Bidder.

7. ***Demonstrated Financial Capacity***.  The Bidder must have, in the Debtor's business judgment, in consultation with MGG, the necessary financial capacity to consummate the proposed transactions required by its Bid.  To the extent that Bid is not accompanied by evidence of the Bidder's capacity to consummate the Sale set forth in its Bid with cash on hand, the Bid must include fully committed and firm financing for each component of debt or equity in support of such Bid and other ability to consummate the proposed Sale, in each case acceptable to the Debtor in its business judgment, in consultation with MGG.  Such funding commitment or other financing must be unconditional and must not be subject to any internal approval, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions reasonably acceptable to the Debtor, in consultation with MGG.

8. ***Contingencies; No Financing or Diligence Outs***.  The Bid shall not be conditioned on (a) the obtaining or the sufficiency of financing, (b) any internal or third-party approval (other than governmental or regulatory approvals), or (c) on the outcome or review of due diligence, but may be subject to the accuracy at the closing of specified representations and warranties or the satisfaction at the closing of specified conditions, which shall be acceptable to the Debtor in its business judgment, in consultation with MGG.

9. ***Authorization***.  The Bid must include (a) evidence satisfactory to the Debtor, in consultation with MGG, that the Bidder is reasonably likely to obtain regulatory approval, if any is required, to purchase the Assets, and (b) the Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtor, in consultation with MGG) with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid, or a representation that no such authorization or approval is required.

10. ***As-Is, Where-is***.  The Bid must include a written acknowledgement and representation that:

    i. The Bidder has had an opportunity to conduct any and all due diligence regarding the Assets prior to submitting its Bid.

    ii. The Bidder has relied solely upon its own independent review, investigation and/or inspection of any documents and the Assets in making its Bid or that of any of its legal, financial or other advisors.

    iii. The Bidder did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the business of the Debtor or the Assets or the proposed transaction, or the completeness or accuracy of any information provided in connection therewith, except as expressly stated in the representations and

warranties contained in the Purchase Agreement ultimately accepted and executed by the Debtor.

    iv.  All proof of financial ability to consummate a Sale in a timely manner and all information provided to support adequate assurance of future performance is true and correct.

    v.  The sale of the Assets shall be on an "as is, where is" basis an without representations or warranties of any kind, nature, or description by the Debtor, its agents or estate, or any other party, except to the extent set forth in the Purchase Agreement.

11. ***Irrevocable***. ALL BIDS SHALL BE DEEMED IRREVOCABLE. IN THE EVENT THAT A BIDDER SEEKS TO REVOKE SUCH BID, THE DEBTOR SHALL BE ENTITLED TO KEEP SUCH BIDDER'S DEPOSIT.

12. ***Disclaimer of Fees***. The Bid shall not be subject to conditions, representations, or terms that the Debtor determines, in consultation with MGG, to be unacceptable, and shall not be conditioned upon the Court's approval of any Bid Protections (except with respect to a Stalking Horse Bidder), such as a break-up fee, termination fee, expense reimbursement, working fee or similar type of payment (other than in connection with a Stalking Horse Bid); *provided*, *however*, the Debtors may accept a Baseline Bid (as defined below) with such Bid Protections to the extent authorized by the Court according to the procedure outlined below. By submitting a Bid, the Bidder is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code.

13. ***Adherence to Bid Procedures***. By submitting its Bid, each Bidder is agreeing to abide by and honor the terms of these Bid Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction.

14. ***Consent to Jurisdiction***. The Bidder must submit to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to the Debtor's qualification of Bid, the Auction, the construction and enforcement of these Bid Procedures, the Sale documents, and the closing of the Sale, if applicable.

15. ***Other Information***. The Bid contains such other information reasonably requested by the Debtor, in consultation with MGG.

**C.**     **Review of Bid and Designation of Qualified Bidders.**

The Debtor shall evaluate the Bids received and determine, in its reasonable business judgment and after consultation with MGG, whether such Bids meet the requirements set forth in the Bidding Procedures to be considered a Qualified Bid. A Bidder whose Bid is a Qualified Bid shall be considered a "Qualified Bidder."

9

The Debtor, in consultation with MGG, will make a determination regarding which Bids qualify as Qualified Bids, and will notify Potential Bidders whether they have been selected as Qualified Bidders on or before **March 22, 2023** (the "Qualified Bid Designation Date").[4]  The Debtor reserves the right to (but has no obligation to, subject to the Debtor's fiduciary duties to maximize the value of the Debtor's estate) cooperate with any Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed to be a Qualified Bid.

Between the date that the Debtor notifies a Bidder that it is a Qualified Bidder and the Auction, the Debtor may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder.  Without the prior written consent of the Debtor (in consultation with MGG), a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bid Procedures; *provided that* any Qualified Bid may be improved at the Auction as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bid Procedures.

Each Qualified Bidder shall comply with all reasonable requests for additional information by the Debtor and its advisors in connection with the Qualified Bidder's financial wherewithal to consummate and perform obligations in connection with the proposed transactions required by its Bid.  Failure by a Bidder to comply with requests for additional information may be a basis for the Debtor, in consultation with MGG, to determine that such Bidder is not a Qualified Bidder and shall not be entitled to participate at the Auction.

The Debtor may, with MGG's consent, amend or waive the conditions precedent to being a Qualified Bidder at any time, in its reasonable business judgment, in a manner consistent with its fiduciary duties and applicable law, and may engage in negotiations with Potential Bidders who submitted Bids complying with the preceding section as the Debtors deem appropriate in the exercise of their business judgment, based upon the Debtors' evaluation of the content of each Bid.

Pursuant to the Non-Disclosure Agreement, Potential Bidders may not disclose to any third party the fact that they are engaged in the evaluation of the Assets and that no discussion, negotiation, undertaking or agreement may be entered into directly or indirectly by Potential Bidders with any third party (other than MGG and its advisors) in connection with the Sale or any similar transaction without the prior written consent of the Debtor in consultation with MGG.

### D. Right to Credit Bid.

MGG shall have the right to credit bid all or a portion of its secured claim for its collateral (a "Credit Bid") pursuant to section 363(k) or section 1129(b) of the Bankruptcy Code.  A Credit Bid shall not require a Qualified Bid Deposit and shall be considered a Qualified Bid.

---

[4]  If only one Qualified Bid is received, MGG shall have the right to submit a Qualified Bid (which may include a Credit Bid) on or before **March 23, 2023 at 12:00 p.m. (prevailing Pacific time)** and the Auction shall be held as provided below.

E.  **Expenses; Disclaimer of Fees.**

Each Potential Bidder will bear all costs and expenses of their own investigation and evaluation, including the fees and disbursements of their own legal counsel and other advisors. The Debtor, its affiliates, representatives and related parties, and BNP disclaim any and all liability for all materials and other information supplied to any Potential Bidder and/or their representatives, and no representation or warranty, whether express or implied (including as to the accuracy or completeness of any information provided or statements made, whether in written, electronic, oral or other form), other than those that may be expressly made to such Potential Bidder in a final definitive, binding written agreement with respect to the Sale, if and only when executed by all parties thereto. By submitting a Stalking Horse Bid or a Bid, a Potential Bidder acknowledges that it is relying solely upon its own independent investigation and evaluation of the Debtor and its Assets. If and until a final definitive binding written agreement is executed and delivered by all parties thereto, and such agreement is submitted to and approved by the Court, neither the Debtor nor any other person or entity shall have any obligations or liability to any Potential Bidder with respect to the Sale or otherwise, and following such time, the Debtor's only obligations will be those set forth in such final definitive binding written agreement.

## IV.  THE AUCTION

The Debtor shall conduct an auction (the "Auction") to determine the Successful Bidder pursuant to the procedures below.

A.  **Determination and Announcement of Baseline Bid.**

In consultation with MGG, the Debtor shall make a determination regarding the highest or best Qualified Bid (or collection of Qualified Bids) determined for the Assets (a "Baseline Bid", and such bidder or group of bidders, a "Baseline Bidder") to serve as the starting point at the Auction for the Assets.  On or before **March 23, 2023**, the Debtor will provide copies of the Baseline Bid and the applicable Bid Documents supporting the Baseline Bid to all Qualified Bidders.

B.  **Auction Participation**.

Date, Time, and Location of Auction; Adjournment of Auction.  The Auction shall take place on **March 24, 2023 at 9:00 a.m. (prevailing Pacific Time)** at a location or otherwise by video conference as determined by the Debtor in consultation with MGG, details of which will be provided to Qualified Bidders in advance of the Auction.  Subject to the consent of MGG, the auction may be adjourned to a later date, so long as such change is communicated reasonably in advance by the Debtor to all Qualified Bidders and other invitees.

Case: 22-10381   Doc# 261   Filed: 03/06/23   Entered: 03/06/23 15:55:33   Page 16 of 21  015

      <u>Participation and Attendees</u>:  Only Qualified Bidders are eligible to participate the Auction.[5]  Qualified Bidders participating in the Auction must appear in person at the Auction, or through a duly authorized representative.

### C.    Auction Rules.

      The Debtor (in consultation with its advisors) shall direct and preside over the Auction in consultation with MGG.  At the start of the Auction, the Debtor shall describe the terms of the Baseline Bid.  All incremental Bids shall be Overbids (as defined below) and shall be made and received on an open basis in the presence of all other Qualified Bidders, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders; *provided* that the Debtor, with the consent of MGG, reserves the right to modify the Auction rules to require Qualified Bidders to submit sealed Overbids.  Qualified Bidders will be permitted to increase their Overbids, and Overbidding at the Auction will continue until such time as the highest or otherwise best offer is determined in accordance with these Bid Procedures, in consultation with MGG, or until such Auction is adjourned by the Debtor, in consultation with MGG.

1. <u>Baseline Bid as Price Floor</u>.  The first round of bidding at the Auction shall commence at the amount of the Baseline Bid.

2. <u>Highest and Best Offer</u>.  After the first round of bidding and between each subsequent round of bidding, the Debtor shall announce the Bid that it believes, in its reasonable business judgment and upon consultation with MGG, to be the highest or otherwise best offer for the Assets (the "<u>Leading Bid</u>").  Each round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a subsequent Bid with full knowledge of the Leading Bid.

3. <u>Minimum Overbid</u>.  Qualified Bidders may submit successive Bids, based on and increased from the Baseline Bid or the Leading Bid (as applicable) (each such Bid, an "<u>Overbid</u>").  Any Qualified Bidder's initial Overbid and each subsequent Overbid shall be (a) at least a $500,000 increase in cash consideration over the Leading Bid *plus* (b) if the Stalking Horse Bidder has the then-Leading Bid, the amount of the Bid Protections (the "<u>Minimum Overbid</u>").

4. <u>Overbid Alterations</u>.  An Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable to the Debtor's estate than any prior Qualified Bid or Overbid, as determined in the Debtor's business judgment, in consultation with MGG, but shall otherwise comply with the terms of these Bid Procedures.

---

[5]   Unless the Court orders or direct otherwise, only the Debtor's representatives, MGG, and any Qualified Bidders and the professionals for each of the foregoing shall be entitled to attend the Auction; *provided* that only Qualified Bidders shall be entitled to bid at the Auction.

**D.        No Collusion; Good-Faith *Bona Fide* Offer.**

Each Qualified Bidder participating at the Auction will be required to confirm in writing at the Auction that: (i) it has not engaged in any collusion with respect to the bidding, the Auction, or the Sale; and (ii) its Qualified Bid is a good-faith *bona fide* offer and it intends to consummate the proposed transaction if selected as the Successful Bidder; *provided* that, notwithstanding anything to the contrary in the foregoing, each Qualified Bidder shall have the right to communicate with MGG with respect the bidding, the Auction, and Sale, and MGG shall have the right to communicate with any other Qualified Bidder regarding the same.

**E.        Selection of Successful Bidder and Backup Bidder.**

Immediately prior to concluding the Auction, the Debtor shall, in consultation with its advisors and MGG, (a) determine and identify the highest or otherwise best Qualified Bid (the "Successful Bid") and the Qualified Bidder submitting such Successful Bid (the "Successful Bidder"); (b) determine and identify the next highest or otherwise best Qualified Bid(s) after the Successful Bid (the "Backup Bid") and the Qualified Bidder submitting such Backup Bid (the "Backup Bidder"); and (c) notify all Qualified Bidders at the Auction of the identify of the Successful Bidder, the amount of the Purchase Price and other material terms of the Successful Bid, the identity of the Backup Bidder, and the amount of the Purchase Price and other material terms of the Backup Bid.

The terms of the Successful Bid(s) and the Backup Bid(s) shall be reasonably acceptable to MGG.

Within one (1) business day of the completion of the Auction, the Successful Bidder shall complete and execute all agreements, instruments, or other documents evidencing and containing the terms and conditions upon which the Successful Bid was made.

Within two (2) business days following the conclusion of the Auction, the Debtor shall file a notice identifying (i) the Successful Bidder(s), (ii) the Purchase Price for the Successful Bid(s), (iii) the Backup Bidder(s), (iv) the Purchase Price for the Backup Bid(s), and (v) a substantially final version of the Purchase Agreement(s).

**F.        Notice Parties.**

The "Notice Parties" as used in the Bid Procedures are:

1.   the Debtor's bankruptcy counsel, Victor A. Sahn (victor.sahn@gmlaw.com), Mark S. Horoupian (mark.horoupian@gmlaw.com), Steven Burnell (steve.burnell@gmlaw.com)

2.   counsel for MGG California, LLC, as Administrative Agent and DIP Agent, Jeff J. Marwil (jmarwil@proskauer.com), Peter J. Young (pyoung@proskauer.com), Steve Ma (sma@proskauer.com)

3.   counsel to the United States Trustee, Elvina Rofael (Elvina.Rofael@usdoj.gov) and Trevor Fehr (Trevor.Fehr@usdoj.gov)

4. the Debtor's Investment Banker, Perry DeLuca ([Perry.DeLuca@bankofthewest.com](mailto:Perry.DeLuca@bankofthewest.com)), Gregg Fatzinger ([gregg.fatzinger@us.bnpparibas.com](mailto:gregg.fatzinger@us.bnpparibas.com)), Theophile Angelo ([theophile.angelo@us.bnpparibas.com](mailto:theophile.angelo@us.bnpparibas.com))

5. the Debtor's Chief Restructuring Officer, Kevin A. Krakora ([kkrakora@getzlerhenrich.com](mailto:kkrakora@getzlerhenrich.com))

## G. Sale Hearing.

The Court will hold a hearing to consider approval of the Sale(s) to the Successful Bidder(s) or Backup Bidder(s) (if applicable) on **April 7, 2023 at 11:00 a.m. (prevailing Pacific time)** (the "Sale Hearing").

## H. Consent To Jurisdiction.

All Potential Bidders, Bidders, and Qualified Bidders shall be deemed to have consented to the exclusive jurisdiction of the United States Bankruptcy Court for the Northern District of California in the Bankruptcy Case and waived any right to a jury trial in connection with any disputes relating to the Auction, the construction and enforcement of these Bid Procedures, and/or the Bid Documents, as applicable.

## I. Return of Deposit.

The Qualified Bidder Deposit of the Successful Bidder or the Backup Bidder, as the case may be, shall be applied to the Purchase Price of such transaction at closing. The Deposits for each Qualified Bidder shall be held in one or more accounts on terms acceptable to the Debtors in their sole discretion and shall be returned (other than with respect to the Successful Bidder and the Backup Bidder) on or before the date that is five (5) business days after entry of an order approving the Successful Bid and Backup Bid.

The Backup Bidder's Qualified Bidder Deposit shall be held in escrow until the closing of the Sale with the Successful Bidder. In the event the Successful Bidder fails to consummate the Sale set forth in the Successful Bid and the Debtor opts to close on the Sale set forth in the Backup Bid, the Backup Bidder's Deposit shall be applied to the Purchase Price of such transaction(s) at closing. In the event of a breach or failure to consummate a Sale by the Successful Bidder or the Backup Bidder, as applicable, the defaulting Successful Bidder's Deposit or Backup Bidder's Deposit, as applicable, shall be additionally forfeited to the Debtor, and the Debtor specifically reserves the right to seek all available remedies against the defaulting Successful Bidder or Backup Bidder, as applicable.

## J. Reservation of Rights.

The Debtor further reserves the right as it may reasonably determine to be in the best interests of the bankruptcy estate to subject to its fiduciary duties to maximize the value of the Debtor's Estate, in all cases subject to consultation with or the consent of, as the case may be, MGG: (i) determine which bidder(s) are Qualified Bidders; (ii) determine which bids are Qualified Bid(s); (iii) determine which Qualified Bid is the highest or otherwise best proposal and which is

Case: 22-10381   Doc# 261   Filed: 03/06/23   Entered: 03/06/23 15:55:33   Page 19 of 21
018

the next highest or otherwise best proposal, (iv) reject any Bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bid Procedures or the requirements of the Bankruptcy Code or (c) contrary to the best interests of the Debtor and its bankruptcy estate; (iv) waive terms and conditions set forth in these Bid Procedures with respect to all potential bidders; (v) impose additional terms and conditions with respect to all Potential Bidders; (vi) subject to MGG's prior written consent, extend the deadlines set forth herein; (vii) subject to MGG's prior written consent, adjourn or cancel the Auction and/or Sale Hearing in open court without further notice; and (viii) subject to MGG's prior written consent, adopt, implement, amend and/or waive such other, additional or existing procedures or requirements pursuant to the Bid Procedures (including, without limitation, extending any deadlines established pursuant to the Bid Procedures) as they may determine to be in the best interests of their estates and that serves to further an orderly Auction and bid process, without further notice to parties entitled to attend the Auction, as appropriate. Upon the payment of MGG's claims, in full, in cash, MGG's consultation and consent rights pursuant to these Bid Procedures shall no longer be applicable.

COURT SERVICE LIST

SERVICE OF THE ORDER IS NOT NECESSARY.