Jacquelyn H. Choi (SBN 211560)
RIMON, P.C.
2029 Century Park East, Suite 400N
Los Angeles, CA 90067
Telephone: (310) 525-5859
Facsimile: (310) 525-5859
Email: jacquelyn.choi@rimonlaw.com

Attorneys for Napa County Treasurer – Tax Collector

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SANTA ROSA DIVISION

| | |
|---|---|
| In re: | Case No. 1:22-bk-10381 CN |
| | Chapter 11 |
| SPRING MOUNTAIN VINEYARD INC., a Delaware corporation, | **OBJECTION TO NOTICE OF FILING OF "ORDER (I) AUTHORIZING AND APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS AND (II) GRANTING RELATED RELIEF"** |
| Debtor and Debtor-in-Possession. | |
| | Date: April 7, 2023<br>Time: 11:00 a.m.<br>Place: Courtroom 215<br>1300 Clay Street<br>Oakland, CA 94612 |

**TO THE HONORABLE CHIEF JUDGE CHARLES NOVACK, UNITED STATES BANKRUPTCY JUDGE, DEBTOR AND DEBTOR-IN-POSSESSION, MGG CALIFORNIA, LLC, THE TWENTY LARGEST UNSECURED CREDITORS, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL PARTES IN INTEREST:**

Secured creditor, Napa County Treasurer – Tax Collector (the "**Tax Collector**") hereby submits its *Objection to Notice of Filing of "Order (I) Authorizing and Approving the Sale of Substantially All of the Debtor's Assets and (II) Granting Related Relief* [Docket No. 305] (the "**Sale Order**"), filed by the above-captioned debtor, *In re Spring Mountain Vineyard, Inc.* (the "**Debtor**") on April 3, 2023, and in support thereof, respectfully represents, as follows:[1]

## I.

## **INTRODUCTION**

The Tax Collector is a secured creditor and the holder of a secured ad valorem real property tax claim in the total sum of $218,549.84 as of the Petition Date. The Tax Collector is also owed $163,636.36 during the post-petition period which is due on or before April 10, 2023 reflecting the second installment (the "**Second Installment**") associated with the current year's taxes which are afforded administrative expense status. The Tax Collector previously objected to the Debtor's proposed attempt to prime the Tax Collector's senior, perfected and unavoidable lien position by MGG California, LLC ("**MGG**") and/or its related financing entity because the Debtor sought to alter or otherwise impair the Tax Collector's first priority lien position on the Debtor's nine (9) real properties in direct contravention of California law. By way of the parties' agreement, the Tax Collector's senior lien position was ultimately preserved by the inclusion of the following language set forth in the Final DIP Order:[2]

> 16. Nothing contained in the Motion, the DIP Note, the DIP Loan, the DIP Loan Documents, the Final Order, or any ancillary documents shall prime, alter, impair or otherwise modify any and all past, present or future valid, perfected, and non-avoidable liens of the Napa County Treasurer and Tax Collector (the "County") established in accordance with applicable state law. The Debtor, the DIP Agent, the Administrative Agent, and the County reserve all

---

[1] Unless otherwise defined here, all capitalized terms shall have the same meaning as ascribed to them in them in the Sale Order.
[2] The Final DIP Order consists of the *Final Order: (I) Authoring Secured Postpetition Financing Pursuant to 11 U.S.C. § 364; (II) Extending the Term for Cash Collateral Usage Pursuant to Existing Cash Collateral Orders to April 15, 2023, and (III) Grating Related Relief* (the "**Final DIP Order**") *See* [Docket No. 224] ¶ 16.

rights, arguments, and defenses in connection with any claim asserted by the County.

On April 3, 2023, the Debtor filed the instant proposed Sale Order and disclosed its intent "to seek entry of approval of the form and substance of [the Sale Order] at the hearing on April 7, 2023". *See* Sale Order, p. 1, lns. 27-28. According to the Sale Order, the Debtor represents that it conducted the auction for the sale of substantially all of the Debtor's assets, that the auction resulted in four (4) total bids and that the Debtor determined that MGG was the Successful Bidder based on a forty-two million dollar ($42,000,000.00) credit bid. *See* Sale Order, p. 3, ¶ D. As set forth below, the Tax Collector hereby objects to the form and substance of the proposed Sale Order because it contains contradictory language and purports to invalidate, alter or impair the Tax Collector's first priority lien position.

## II.

## **OBJECTIONS**

Under California law, the Debtor's obligations to the Tax Collector for ad valorem taxes are automatically secured by first priority liens against the Debtor's real properties. Such liens "*have priority over all other liens on the property, regardless of the time of their creation*" and are given priority over any and all other existing liens that may be held by other lenders or secured creditors. *See* Cal. Rev. & Tax. Code § 2192.1. "All tax liens attach annually as of 12:01 a.m. on the first day of January preceding the fiscal year for which the taxes are levied". *See* California Revenue & Taxation Code § 2192. Therefore, with respect to the Second Installment, the Tax Collector's first priority tax lien attached to the Debtor's subject real properties as early as January 1, 2022. Notwithstanding the foregoing, the Debtor appears to seek Court approval of a sale to MGG, free and clear, of the Tax Collector's pre-petition tax liens and those associated with the Second Installment without paying the taxes or satisfying its burden for a sale free and clear of the Tax Collector's interests under Section 363(f) of the Bankruptcy Code. For instance, although the Debtor may sell the estate's property free and clear if "such entity consents", the Tax Collector does not consent.

The Tax Collector objects to the following language, as drafted and presented in the Sale Order, and reserves the right to assert further objections at or prior to the hearing:

| Paragraph | Language | Objection |
|---|---|---|
| Sale Order at ¶ 8 (page 11) (emphasis added). | ". . . . other than Assumed Liabilities (as defined in the Purchase Agreement and as described in this Order)", the sale "shall be free and clear of all Liens, Claims, and other interests of any kind or nature whatsoever, except for the Permitted Liens, including but not limited to, ***(a) statutory Liens for current Taxes not yet due and payable or the amount or validity of which is being contested in good faith by appropriate proceedings by Seller or that may thereafter be paid without penalty***, . . . ." [3] | Tax Collector's Second Installment represents "*statutory Liens for current Taxes not yet due and payable or the amount*". The Tax Collector objects to the proposed sale being free and clear of the Tax Collector's Second Installment without satisfying those taxes. |
| Sale Order at ¶ 14 (p. 13) (emphasis added). | ". . . . This Order is and shall be effective as a determination that, on the Closing Date, all Liens, Claims, or other interests of any kind or nature whatsoever existing as to the Acquired Assets prior to the Closing Date, ***other than Assumed Liabilities and Permitted Liens***, or as otherwise provided in this Order, shall have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been effected; provided, that, for the avoidance of doubt and notwithstanding anything | This language appears to imply that the Tax Collector's pre-petition tax liens shall attach "*to the proceeds of the Sale*". Given that the sale involves MGG's $42M credit, the Tax Collector in not aware of any sale "proceeds" and none is defined in the Sale Order or the APA. Therefore, the Tax Collector requires clarification concerning the existence of such sale proceeds and whether or not the Tax Collector's pre-petition liens (other than the Second Installment), shall attach to those proceeds, if any. |

---

[3] The taxes are not considered "Assumed Liabilities" under the APA. *See* APA, Section 2.03.

4

| | | | |
|---|---|---|---|
| | | herein to the contrary, ***such Liens, Claims, and other interests shall attach to the proceeds of the Sale attributable to the Acquired Assets in which the holder thereof has or alleges any Lien, Claim, or other interest, in the same order of priority, with the same validity, force, and effect that such Lien, Claim, or other interest had prior to the Sale, subject to any claims and defenses the Debtor and its estate may possess with respect thereto***." | |
| | Sale Order at ¶ 31 (p. 14) (emphasis added). | "Nothing in this Order shall override, impair, alter, modify, amend, or waive any term, condition, or other provision of the ***Final DIP Order*** and related orders entered at ECF Nos. 48, 76, 92, 120, and 209, the DIP Note, the DIP Loan Documents (each as defined in the Final DIP Order), the terms of which, in each case, shall remain in full force and effect from and after the entry of this Order". | The Tax Collector's first priority interests were preserved under the Final DIP Order and while this language purports to ensure that the Sale Order shall not impair the Tax Collector's interests under the Final DIP Order, the objections raised herein relate to contradictory language purporting to "modify, amend, or waive" the Tax Collector's "past, present or future valid, perfected, and non-avoidable liens". |
| | APA at p. 33 (emphasis added). | ***"Permitted Liens" means (a) statutory Liens for current Taxes not yet due and payable or the amount or validity of which is being contested in good faith by appropriate proceedings by Seller or that may thereafter be paid without penalty***, (b) mechanic's, carriers', workers', repairers', and similar statutory Liens arising or incurred in the ordinary course of business for amounts which are not delinquent, (c) public roads and highways, (d) matters | The Tax Collector's Second Installment is included within the definition of "Permitted Liens" as it relates to current Taxes not yet due". However, this language is directly contradictory to Paragraph 8 of the Sale Order whereby the sale shall be free and clear of the Tax Collector's Second Installment. |

| | | |
|---|---|---|
| | which would be disclosed on an accurate survey of each parcel of real property, (e) Liens arising under worker's compensation, unemployment insurance, social security, retirement, and similar legislation, (f) purchase money Liens and Liens securing rental payments under capital lease arrangements, (g) other Liens arising in the ordinary course of business which are not material in amount and not incurred in connection with the borrowing of money, (h) Liens arising under the Perishable Agricultural Commodities Act (PACA), the Packers and Stockyards Act (PSA) or similar laws in connection with the purchase of agricultural or meat and dairy products in the ordinary course of business ("Agricultural Liens"), and (i) Liens that will be released, discharged or otherwise extinguished pursuant to the Sale Order, which in the case of clauses (a), (b), (e), (f) and (g) . . . . ." | |
| APA at p. 38 (Section 2.01(a)) (emphasis added). | The terms "Acquired Assets" consist of, among other things, "(a) all real property set forth in ***Schedule 2.01(a)***, collectively with all Furnishings and Equipment located therein or thereon (collectively, the "Acquired Real Property") . . . ." | Schedule 2.01(a) was not filed with the Court. Therefore, it is unclear which of the Debtor's real properties are the subject of the sale. |

6

# III.
# CONCLUSION

To the extent the Debtor seeks to prime, modify and/or impair the Tax Collector's first priority real property tax liens, or otherwise sell the properties free and clear of the Tax Collector's liens, the Tax Collector objects.

WHEREFORE, the Tax Collector respectfully requests that the Court:

(i) Deny entry of the Sale Order as drafted; and

(ii) Grant such other and further relief.

Dated: April 5, 2023                              RIMON, P.C.

By: _____
Jacquelyn H. Choi
Attorneys for Napa County Treasurer – Tax Collector