Victor A. Sahn (CA Bar No. 97299)
 victor.sahn@gmlaw.com
Mark S. Horoupian (CA Bar No. 175373)
 mark.horoupian@gmlaw.com
Steve Burnell (CA Bar No. 286557)
 steve.burnell@gmlaw.com
**GREENSPOON MARDER LLP**
333 South Grand Avenue, Suite 3400
Los Angeles, California 90071
Telephone: 213.626.2311
Facsimile: 954.771.9264

Attorneys for Debtor in Possession,
Spring Mountain Vineyard Inc.

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA, SANTA ROSA DIVISION

| | |
|---|---|
| In re<br><br>SPRING MOUNTAIN VINEYARD INC., a Delaware corporation,<br><br>Federal EIN: 36-3844911<br><br>Debtor. | Case No. 1:22-bk-10381 CN<br><br>Chapter 11<br><br>**DECLARATION OF PERRY DeLUCA REGARDING SALE OF DEBTOR'S ASSETS AND MARKETING PROCESS CONDUCTED BY BNP PARIBAS SECURITIES, INC., DEBTOR'S INVESTMENT BANKER**<br><br>**Hearing Information:**<br>Date: April 7, 2023<br>Time: 11:00 a.m.<br>Place: Courtroom 215<br>1300 Clay Street<br>Oakland, CA 94612 |

I, Perry DeLuca hereby declare:

1. I am a licensed securities broker at Bank of Montreat ("BMO") and Managing Director in the Beverage Vertical, Mergers & Acquisitions and Financings Group at BMO. I submit this Declaration with regard to the conduct by the Debtor of the marketing and sale process that took place starting last fall and culminating in the auction that took place on March 24, 2023 at the Embassy Suites in Napa, California.

2. I have been employed by or licensed through BMO, through is acquired predecessor BNPP and Bank of the West from 2016 until the present. I previously worked at Beringer Winery, and was a Vice President Consumer Investment Banking at WR Hambrecht + Co from 2002-2006 where I participated in Initial Public Offerings, mergers & acquisitions and several restructuring transactions. Commencing in 2006, I worked as a restructuring consultant for Global Wine Group as a Board Director and Chair of the Finance and Compensation Committees. After working at Global Wine Group, I was a Director/Consumer Banking, National Head of Wine & Spirits, West Coast Food & Beverage at Key Banc Capital Markets ("Key Banc") in San Francisco from 2007-2012. At Key Banc I originated and led deal execution on double-digit completed mergers & acquisitions' transactions. Immediately prior to arriving at BNPP and Bank of the West, I worked for Wells Fargo Bank in San Francisco and Santa Rosa, California from 2012-2016, where I was Senior Vice President/Industry Head Wine, Food & Beverage and led Wells Fargo's wine, food and beverage practice for the Western United States and Canada. Since joining BNPP and Bank of the West in 2016, I have originated several mergers & acquisitions and financing transactions. I also lecture at conferences on these issues and am consulted on business, valuation and financing issues by businesspeople in the wine industry.

3. During this engagement, I worked with a team that has extensive experience and expertise in wine vineyard mergers and acquisitions, as well as substantial mergers and acquisitions' experience in connection with liquor or spirts' businesses, including Adam Beak, Head of Beverage, Managing Director; Gregg Fatzinger, Head of North American Consumer Products Investment Banking; Theophile Angelo, Consumer Investment Banking Associate; Aditya Agarwal, Consumer Investment Banking Analyst; and Eleonore Folliot, Consumer Investment Banking Analyst Intern. The Wine & Beverage Group of the combined BMO/Bank of the West has a $3.0-billion loan portfolio and has advised and/or managed financing on many M&A transactions in the wine industry, including: the sale of A to Z Wineworks to Ste. Michelle Wine Estates (2022), the Acquisition by Treasury Wine Estates of properties from Realty Income (2022), the joint venture between Randal Grahm and E&J Gallo Winery (2021), the sale of Jameson Canyon Vineyard to John Anthony Family of Wines (2021) and the Duckhorn Wine Company/TSG Consumer Partners financing (2016).

4. Attached as Exhibit "1" to this Declaration is a true and correct copy of the 'Order' authorizing the employment of BNP Paribas. ("Order")

5. After entry of the Order, BNP Paribas commenced a very active marketing campaign for the assets of the Debtor including the vineyard real estate which consists of four parcels known as "Alba", "Chevalier", "Miravalle", and "La Perla". I will refer to these four parcels (which are contiguous to each other) cumulatively as the "Vineyard Properties." We also marketed the Debtor's approximate inventory of 75,000 cases of wine which is held in storage for sale through the Debtor's various sale channels. I will refer to this wine inventory as the "Inventory." Together, the Vineyard Properties and Inventory may be referred to from time to time as the "Vineyard Assets."

6. We immediately established a list of prospective buyers including "financial" buyer and "strategic" buyers. "Strategic" buyers are those potential purchasers who are active in the Wine Vineyard business including the farming of wine grapes, the growing and harvesting of wine grapes, the sale of wine grapes to third parties, and the processing and bottling of the wine grapes to bottled wine. This also includes parties who actively sell bottled wine to third parties through various sale channels including in Wine and liquor stores, food markets and other retail establishments as well as through whole sales including sales over the internet and through sales from their vineyards and through wine clubs that many of these well-known brands have established. "Financial" buyers are those buyers who are in the Debtor's business but are not themselves operators of wine vineyards. These include private equity funds, family offices, and high net worth individuals and similar investors who are known owners of wine vineyards. In both the "strategic" and "financial" buyer categories, there are numerous potential parties, many of them known to me and my team and a number of which I have personal and professional business relationships because of my long career marketing and selling wine vineyards and having worked with a number of them in the past.

7. One of the first things I did was reach out to the representatives in these two groups of buyers with whom I enjoy a personal relationship. I called them, and shared a meal or other personal get-together in order to introduce the wine vineyard, my appointment as its investment banker and the fact that the entirety of the wine vineyard would be offered for sale through BNP Paribas. These interactions were encouraging, and for good reason, the Debtor's wine vineyard is one of the iconic brands in one of the most well-known and well-respected regions for the growing

and bottling of fine wines in the world, the Napa Valley.

8. After reaching out to these prospective buyers who I know personally, my team and I needed to put together information which buyers interested in examining the purchase of the wine vineyard could review and glean important due diligence information from. We commenced the preparation of a 'Confidential Information Memorandum' ("CIM"). This is an extensive document containing confidential information about the wine vineyard including a discussion of each parcel, the characteristics of each parcel including portions of it which are currently planted with vineyards and those portions which are not, sources of water for each parcel, financial information regarding operations of the wine vineyard over the last number of years, information regarding yearly grape production and harvest, information regarding the Debtor's wine processing and bottling equipment and most importantly, detailed and carefully considered information regarding the potential revenues that could be realized from operation of the wine vineyard, and the investment and time that needs to be spent getting to that optimal revenue level. This last aspect of the creation of the CIM took a great deal of work and input from numerous members of my team and from the Debtor's own wine consultant and industry expert, Mr. Peter Ekman.

9. In addition to the CIM, my team set up a data room for prospective buyers to view important information needed to conduct proper due diligence regarding their interest in the Vineyard Assets. In the data room was information regarding historical operations of the Vineyard Business, appraisals of the Vineyard Assets, information regarding water rights with respect to the Vineyard Properties and the Inventory. Additional information in the data room included information about sales, operations, employees, legal, compliance, regulatory, permits, trademarks and other important items. The data room was constantly evaluated and updated with further information that prospective buyers might need in order to more intelligently and thoroughly evaluate and submit offers for the Vineyard Assets.

10. Over the course of the marketing process, which took place between approximately October, 2022 and the present, my team contacted more than 80 potential buyers. These included financial and strategic buyers as defined above. My team contacted buyers in the United States and around the world. We required parties interested in reviewing information in the data room and in seeing the Vineyard Properties with us to sign non-disclosure agreements ("NDA's") typically done

1. for transactions of this nature. There were many NDA's signed by these potential purchasers. For a period of months, BNP Paribas utilized the full-time or nearly full-time efforts of Gregg Fatzinger, Theophile Angelo and Aditya Agarwal. Every week, my team met with the Debtor's representatives to discuss progress and get input regarding the best way to move forward. Every week, my team met separately with the investment bankers hired by MGG from The Gordian Group including Peter Kaufman and David Herman. We were all in constant communication with each other at every point in the process and the timeframe from October until now.

11. As a result of the foregoing, my team's efforts focused both on potential purchasers of the entirety of the Vineyard Assets as well as upon purchasers interested in one or more of the Vineyard Properties and in the Inventory. We marketed the Vineyard Assets to all of these groups of purchasers. This required us, without limitation, to become much more involved in the water rights attendant to the Vineyard Properties because certain parcels have their own water sources while other parcels do not. This could result, for example, in one buyer for certain parcels and a different buyer for other parcels---such an outcome would necessitate a water sharing agreement between these adjoining landowners and also, potentially, arrangement for ingress and egress in order to access the water from the particular parcel or parcels that had water that could be provided to the other parcels who do not have their own water source.

12. Under the Bidding Procedures approved by the Court, bids for the Vineyard Assets were due on March 17, 2023. As detailed in paragraph 16(a) through 16(e), below, bids were received from five different prospective purchasers. None of these bids were for the entirety of the Vineyard Assets. Four of the bids were for one or more of the Vineyard Properties and one bid was only for the inventory. None of the other four bids included a bid for the inventory, only for the real property parcels.

13. Consistent with the Bankruptcy Court's sale procedures, the Chapter 11 Debtor noticed the auction sale to prospective bidders for March 24, 2023. Pursuant to the Bid Procedures approved by this Court, the Debtor's retained investment banker, BNP Paribas Securities, Inc. ("BNP") gave potential bidders the bid location at the Embassy Suites Hotel, 1075 California Boulevard, Napa, California 94559. A true and correct copy of the Bid Procedures which were attached as an Exhibit to this Court's *Order Granting Debtor's Notice Of Motion And*

*Motion For Entry Of (i) An Order Approving Auction And Bid Procedures For The Sale Of Its Wine Vineyard Business Including Real Property, Rights Running With The Certain Real Property, Wine Inventory, Certain Vineyard Business Rights And Contract Rights And (ii) Granting Related Relief; Declaration In Support Of Motion*" (Docket No. 261) ("Bid Procedures") is attached hereto as Exhibit 2.

14. Prior to the sale, the following parties submitted bids (some names are by description versus the exact entity name) ("Bidding Group"):

    (a) The Jackson Family (affiliated with the Kendall-Jackson Winery)
    (b) The Robert Lieff/Susan Leeds-Lieff/Ben Leeds Group
    (c) The Laird Group
    (d) Third Leaf Capital
    (e) Birch Lake

Prior to the commencement of actual bidding, Birch Lake withdrew their bid. The Bidding Group convened at approximately 9:00 a.m., Pacific Time on March 24. Also in attendance were representatives from MGG California, LLC ("MGG"), the Debtor's primary secured creditor and from the Debtor, the Debtor's Chief Restructuring Officer, Kevin Krakora, the Debtor's special wine business and operations consultant, Peter Ekman, the Debtor's investment bankers from BMO Capital Markets and BNP Paribas Perry DeLuca and Gregg Fatzinger, Theopile Angelo and Aditya Agarwal and Debtor's counsel, Victor A. Sahn.

### Bidding During the Day on March 24

15. During the day, the Debtor's Investment Bankers met with the Bidding Group individually as each was in their own conference room. After a number of hours passed, it was decided that all of the bidders would adjourn to one of the available conference rooms and bid against each other until a high bidder was reached. The open bidding went on for about 1.5 hours and there was a bid from The Lieff/Leeds Group for the Miravalle Property, a bid from The Laird Group for the Alba, Chevalier and La Perla Properties, and a bid by Third Leaf Capital for the inventory. At the conclusion of their bid, which cumulatively was for the entirety of the Debtor's assets, MGG submitted a credit bid (as they had during the course of the bidding)

for $500,000 more than the amount of the cumulative bids-their bid was $42 Million. At this point, the Debtor adjourned the auction.

I declare the foregoing to be true under the penalty of perjury.

Executed this 6th day of April, 2023 at _____, California.

*Perry DeLuca*
_____
Perry DeLuca

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264