# EXHIBIT 1



Victor A. Sahn (CA Bar No. 97299)
 victor.sahn@gmlaw.com
Mark S. Horoupian (CA Bar No. 175373)
 mark.horoupian@gmlaw.com
Steven F. Werth (CA Bar No. 205434)
 steven.werth@gmlaw.com
Greenspoon Marder LLP
a Florida limited liability partnership
333 South Grand Ave., Suite 3400
Los Angeles, CA 90071
Telephone: 213.626.2311
Facsimile: 954.771.9264

Attorneys for Debtor in Possession
Spring Mountain Vineyard Inc.

The following constitutes the order of the Court.
Signed: December 8, 2022

_____
**Charles Novack**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SANTA ROSA DIVISION

| | |
|---|---|
| In re: | Case No. 1:22-bk-10381 CN |
| SPRING MOUNTAIN VINEYARD INC., a Delaware corporation, | Chapter 11 |
| Debtor. | **ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF BNP PARIBAS SECURITIES CORP. AS INVESTMENT BANKER TO THE DEBTOR AND DEBTOR IN POSSESSION EFFECTIVE AS OF OCTOBER 14, 2022** |
| Federal EIN: 36-3844911 | [Related to Docket No. 96] |
| | **Hearing Information**<br>Date:  December 1, 2022<br>Time:  11:00 a.m.<br>Place:  Courtroom 215<br>   1300 Clay Street<br>   Oakland, CA 94612 |

   Upon the Application (the "Application")[1] of the above-captioned debtor and debtor in

---

[1]   Capitalized terms used and not defined herein shall have the meaning given to them in the Application.

possession (collectively, the "Debtor"), for entry of an order (this "Order") authorizing the Debtor to employ and retain, pursuant to sections 327(a), 328(a), 503(b) and 507(b) of the Bankruptcy Code and Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), BNP Paribas Securities Corp. ("BNPP") as investment banker in connection with the above-captioned matter, effective as of October 14, 2022 and upon the *Declarations of Perry DeLuca and Constantine Yannias in Support of Application Authorizing Employment and Retention of BNP Paribas Securities Corp. as Investment Banker for the Debtor and Debtor in Possession Effective as of October 14, 2022* attached to the Application as Exhibit B (the "DeLuca Declaration" and the "Yannias Declaration"); and the Court being satisfied based on the representations in the Application and DeLuca Declaration that BNPP is "disinterested" as defined in section 101(14) of the Bankruptcy Code, and holds no interest adverse to the Debtor or their estates in connection with the matters for which BNPP is to be retained by the Debtor, as required by section 327(a) of the Bankruptcy Code; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Application is in the best interests of the Debtor, their estates, their creditors and other parties in interest; and the Court having found that the Debtor's notice of the Application and opportunity for a hearing on the Application was appropriate and no other notice need be provided; and the Court having reviewed the Application; and the Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due

VAS 52685323v1

deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT**

1. The Application is GRANTED as provided herein.

2. The Debtor is authorized to retain and employ BNPP as investment banker to the Debtor in this Chapter 11 Case pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, effective as of October 14, 2022, on the terms and conditions set forth in the Application and the Engagement Letter as modified herein.

3. The Engagement Letter (together with all annexes thereto), including without limitation the Fee Structure, is approved as modified herein. All compensation and reimbursement of expenses payable under the Engagement Letter shall be subject to review only pursuant to the standards set forth in Bankruptcy Code section 328(a), and shall not be subject to any other standard of review, including but not limited to, that set forth in Bankruptcy Code section 330. Notwithstanding anything to the contrary herein, the Office of the United States Trustee shall have the right to object to BNPP's interim and final fee applications (including expense reimbursements) on all grounds, including the reasonableness standard provided in section 330 of the Bankruptcy Code.

4. The Debtor is authorized and directed to pay BNPP's Transaction Fee upon consummation of a Transaction and, subject to the limitations in paragraph 5 of this Order, to reimburse BNPP for its reasonable costs and expenses as provided in the Engagement Letter. Notwithstanding the foregoing, BNPP shall file interim and final fee applications, as applicable, for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of this Court; *provided, however*,

VAS 52685323v1

3

that the requirements of the Bankruptcy Code and the Bankruptcy Rules are hereby modified such that BNPP's professionals shall not be required to maintain or submit time records in connection with any interim or final fee application.

5. With regard to the calculation of the Transaction Fee, the Engagement Letter is hereby clarified to mean that BNPP is entitled to the fee that is the greater of "Option 1" or "Option 2" as follows:

(a) Option 1 is a fee of $1,500,000;

(b) Option 2, which only applies in the event of a Sale Transaction, is the sum of:

(i) Two point twenty five percent (2.25%) of the first $200,000,000 of Transaction Value;

(ii) Three point five percent (3.5%) of the next $100,000,000 of Transaction Value; and

(iii) Five percent (5.00%) of the Transaction Value in excess of $300,000,000.

6. Further, in the event a Sale Transaction is consummated exclusively through a credit bid pursuant to section 363(k) of the Bankruptcy Code, BNPP shall only be entitled to Option 1.

7. The Debtor is authorized and directed to reimburse BNPP for its reasonable expenses, as provided in the Engagement Letter, subject to:

(a) payment must comply with the Debtor's cash collateral budget then in effect, with consent from MGG not to be unreasonably withheld regarding any proposed budget amendments; and

VAS 52685323v1

(b) to the extent any such expenses are unpaid, payment of such expenses shall be made contemporaneously with payment of BNPP's Transaction Fee.

8. The indemnification, contribution, and reimbursement provisions set forth in the Engagement Letter and Annex A are approved, subject during the pendency of this Chapter 11 case to the following modifications:

(a) no Indemnified Parties (as the term is defined in the Engagement Letter and Annex A), shall be entitled to indemnification, contribution or reimbursement for services other than the services provided under the Engagement Letter, unless such services and the indemnification, contribution or reimbursement therefor are approved by the Court;

(b) notwithstanding subparagraph (a) above or any provisions of the Engagement Letter or Annex A to the contrary, the Debtor shall have no obligation to indemnify Indemnified Parties or provide contribution or reimbursement to Indemnified Parties (i) for any claim or expense that is judicially determined (the determination having become final and no longer subject to appeal) to have arisen from such Indemnified Parties' negligence, bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct, (ii) for a contractual dispute in which the Debtor alleges the breach of such Indemnified Parties' contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible, or (iii) for any claim or expense that is settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by this Court, after notice and a hearing, to be a claim or expense for which such Indemnified Parties should not receive indemnity, contribution or reimbursement under the terms of the Engagement Letter and Annex A, as modified by this Order; and

VAS 52685323v1

(c) if, before the earlier of (i) the entry of an order confirming a Chapter 11 plan in this case (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing this Chapter 11 case, any Indemnified Parties believes that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification, contribution and/or reimbursement obligations under the Engagement Letter and Annex A (as modified by this Order), including, without limitation, the advancement of defense costs, such Indemnified Parties must file an application therefor in this Court, and the Debtor may not pay any such amounts to such Indemnified Parties before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period during which the Court shall have jurisdiction over any request for fees and expenses by Indemnified Parties for indemnification, contribution, or reimbursement, and not as a provision limiting the duration of the Debtor's obligation to indemnify, or make contribution or reimbursement to any Indemnified Parties.

9. Notwithstanding anything in the Application or the Engagement Letter to the contrary, BNPP shall (i) to the extent that BNPP uses the services of independent contractors or subcontractors (collectively, the "Contractors") who perform services for the Debtor in this case, pass through the cost of such Contractors to the Debtor at the same rate that BNPP pays the Contractors; and (ii) seek reimbursement for actual costs only. The Debtor shall ensure that any such Contractors are subject to the same conflict checks as required for BNPP and that they shall file with the Court such disclosures as required by Bankruptcy Rule 2014.

10. Notwithstanding any other order entered by this Court, including but not limited to orders authorizing the Debtor to use cash collateral, the pre-petition and post-petition liens and claims of Debtor's lenders shall be subject to carveouts and be junior to BNPP's fees

VAS 52685323v1

and expenses to the extent such fees and expenses are allowed by the Court. BNPP's fees and expenses shall be pari passu to any claims for professional fees that constitute a "Carve-Out" as defined in the order authorizing the Debtor to use cash collateral.

11. Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

12. To the extent that there may be any inconsistency between the terms of the Application, the Engagement Letter, and this Order, the terms of this Order shall govern. Pursuant to the Engagement Letter, BNPP may, in its sole discretion and in its capacity as a retained professional of the Debtor, communicate with MGG California, LLC and its advisors in connection with any Transaction (as defined in the Engagement Letter) without the Debtor or its counsel present.

13. The Debtor acknowledges that, pursuant to the *Final Order Extending to December 31, 2022: Second Interim Order (I) Authorizing the Debtor to Utilize Cash Collateral of PrePetition Secured Parties Through November 4, 2022; (II) Granting Adequate Protection to PrePetition Secured Parties; (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and 4001(c); and (IV) Granting Related Relief* (Docket No. 92) (the "Final Cash Collateral Order"), the Lenders (as defined therein) hold an allowed secured claim as of the Petition Date of not less than $192,221,090.14, and an Adequate Protection Superpriority Claim and Adequate Protection Liens (each as defined in the Final Cash Collateral Order) pursuant to the terms of the Final Cash Collateral Order.

14. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

VAS 52685323v1

7

15. The Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this Order.

16. BNPP shall use reasonable efforts to avoid any duplication of services provided by any of the Debtor's other retained professionals in this Bankruptcy Case.

17. Notwithstanding anything to the contrary in the Application, any of its attachments, the Engagement Letter, Annex A, or any ancillary documents thereto, BNPP shall not seek reimbursement of any fees or costs arising from the defense of any of BNPP's fee applications in this Chapter 11 case.

18. None of the fees payable to BNPP shall constitute a "bonus" or fee enhancement under applicable law.

19. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order. For the avoidance of doubt, notwithstanding any provision in the Engagement Letter to the contrary, during the pendency of this Chapter 11 case, this Court shall have exclusive jurisdiction over the approval of fees due and owing to BNPP for this retention.

**END OF ORDER**

VAS 52685323v1

| | |
|---|---|
| 1 | COURT SERVICE LIST |
| 2 | SERVICE OF THE ORDER IS NOT NECESSARY |