Jeff J. Marwil (admitted *pro hac vice*)
Ashley M. Weringa (admitted *pro hac vice*)
PROSKAUER ROSE LLP
70 West Madison, Suite 3800
Chicago, Illinois 60602
Telephone:  (312) 962-3550
Facsimile:  (312) 962-3551
Email:  jmarwil@proskauer.com
  aweringa@proskauer.com

Peter J. Young (admitted *pro hac vice*)
Steve Ma (CA Bar No. 320997)
PROSKAUER ROSE LLP
2029 Century Park East, Suite 2400
Los Angeles, California 90067
Telephone:  (310) 557-2900
Facsimile:  (310) 557-2193
Email:  pyoung@proskauer.com
  sma@proskauer.com

*Counsel for MGG California, LLC*

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SANTA ROSA DIVISION

| In re:<br><br>SPRING MOUNTAIN VINEYARD INC.,<br>Debtor. | Chapter 11<br><br>Case No. 22-10381 CN<br><br>**Judge Charles Novack**<br><br>**DECLARATION OF PETER S. KAUFMAN IN SUPPORT OF FINDING THAT BUYER HAS PURCHASED IN GOOD FAITH IN ACCORDANCE WITH 11 U.S.C. § 363(M)** |
|---|---|

I, Peter S. Kaufman, declare under penalty of perjury:

I am President and Head of Restructuring and Distressed M&A with Gordian Group, LLC ("Gordian"), a New York-based investment banking firm specializing in financial restructurings, merger and acquisition ("M&A") transactions. Gordian is a FINRA-regulated broker-dealer. I have been Gordian's President since 2007 and have worked with companies across a wide range of industries to facilitate successful restructurings, capital raises, and M&A transactions in and out of bankruptcy. I am also Co-Founder and Managing Partner of Bacchus Capital Management

("Bacchus"), a San Francisco-based investment firm providing strategic capital to, and making equity investments in, US wineries and wine businesses.

In October 2022, MGG Investment Group LP, parent company to MGG California, LLC ("MGG"), as administrative agent and collateral agent, retained Gordian (together with the assistance of Bacchus) to advise on various matters relating to the chapter 11 case (the "Chapter 11 Case") of Spring Mountain Vineyard Inc. ("SMV" or the "Debtor"), including, among other things, the marketing and sale of all or substantially all of SMV's assets. In this role, I and my colleagues at Gordian and Bacchus and MGG's other advisors, have worked diligently and constructively with the Debtor on a value-maximizing sale process contemplated by this Court's *Order After Hearing on Notice of "Final Order Extending to December 31, 2022: Second Interim Order (I) Authorizing the Debtor to Utilize Cash Collateral of Prepetition Secured Parties Through November 4, 2022; (II) Granting Adequate Protection to Pre-Petition Secured Parties; (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and 4001(c); and (IV) Granting Related Relief"* [ECF No. 120] (the "Final Cash Collateral Order").

I submit this Declaration in support of the Debtor's and MGG's request that, in connection with the approval of the sale of substantially all of the Debtor's assets to MGG, the Court find MGG's entry into the *Asset Purchase Agreement* by and between MGG and SMV (the "Purchase Agreement")[1] in good faith and without collusion with other potential bidders and, therefore, that MGG is a good faith buyer within the meaning of section 363(m) of title 11 of the U.S. Code (the "Bankruptcy Code") entitled to the full protection of that provision and has otherwise proceeded in good faith in all respects in connection with the sale and this proceeding.

Unless otherwise stated, all facts and statements included in this Declaration are based upon either information and belief (including my personal knowledge), my review of relevant documents, information provided to me or verified by MGG or MGG's professional advisors

---

[1] On April 3, 2023, the Debtor filed a notice attaching a proposed sale order and the Purchase Agreement with MGG [ECF No. 305].

2

and/or my opinion based upon my knowledge of MGG. I am authorized to submit this Declaration on behalf of MGG and could and would testify competently thereto if called upon to do so.

*MGG and the Prepetition Loan*. MGG is administrative agent and collateral agent in connection with a $185 million secured credit facility (the "Loan") pursuant to that certain *Guaranty and Credit Agreement*, dated as of October 11, 2018 (as may have been amended, restated, supplemented, or otherwise modified from time to time, the "Credit Agreement"), among SMV, certain lenders party thereto and MGG. The Loan is secured by, among other things, a deed of trust on the Debtor's approximately 800-acre vineyard in St. Helena, California (the "Vineyard"), and all of the Debtor's personal property, including, without limitation, its wine inventory (the "Wine Inventory") and proceeds of the Debtor's insurance policies (collectively, with the Vineyard and the Wine Inventory, the "Debtor's Property"), and is also personally guaranteed by Jacob ("Jacqui") Safra, the beneficial owner of the Debtor (the "Safra Guaranty"). *See Omnibus Declaration of Constantine S. Yannias in Support of Debtor's "First-Day" Emergency Motions* [ECF No. 26] (the "Yannias Declaration") ¶ 28. As of the commencement of this Chapter 11 Case, the aggregate principal amount outstanding under the Loan was not less than approximately $202,315,536.14.

Notwithstanding its obligations under the Credit Agreement, I understand that (i) SMV failed to make certain payments pursuant to the Credit Agreement and (ii) MGG, as an accommodation to SMV, agreed to enter into that certain *Forbearance Agreement*, dated as of February 22, 2021 relating to the Loan (as may have been amended, restated, supplemented, or otherwise modified from time to time, the "Forbearance Agreement"), providing for, among other things, MGG's and the lenders' forbearance from exercising any remedies until October 11, 2021. I understand that MGG further extended the forbearance period to April 30, 2022, and again to September 30, 2022 (the "Second Amended Forbearance Agreement").

As the September 30, 2022 forbearance period neared, I understand that (i) SMV requested a further extension, which MGG indicated it would agree to, subject to certain pay downs of the Loan balance, consistent with prior agreements to extend the forbearance period and (ii) SMV

3

would not agree to make any additional cash payments as a condition to a further extension of the forbearance period.

On September 28, 2022, I understand that SMV filed an action in the Supreme Court of the State of New York (the "NY Court"), captioned *Spring Mountain Vineyard Inc., et al. v. MGG California, LLC, et al.*, Case No. 653564/2022, seeking to invalidate all or certain portions of the Forbearance Agreement, and seeking a temporary restraining order and preliminary injunction to prevent MGG and the lenders from exercising certain of their rights and remedies under the terms of the Forbearance Agreement with respect to the Debtor's Property. On September 29, 2022, the NY Court denied SMV's request for a temporary restraining order and preliminary injunction, after which SMV commenced the Chapter 11 Case.

I understand that at no time did MGG provide written communication to SMV that it would exercise its rights and remedies following the expiration of the forbearance period on September 30, 2022. Nonetheless, I further understand that SMV failed to provide MGG with any notice whatsoever of its Chapter 11 Case filing, notwithstanding MGG's perfected first-priority lien on all of SMV's assets, including cash.

***Chapter 11 Case***. Notwithstanding the prepetition events, the Debtor's advisors[2] and MGG have worked collaboratively to preserve, and maximize, the value of the Debtor's assets. Following the commencement of the Chapter 11 Case, the Debtor and MGG agreed upon the terms of, and this Court entered, the Final Cash Collateral Order setting forth, among other things, (i) the terms governing the Debtor's use of MGG's cash collateral, (ii) milestones for the marketing and sale of all or substantially all of SMV's assets, (iii) the allowance of MGG's claim in the amount of $202,315,536.14 (the "MGG Claim"), and (iv) that the MGG Claim is secured by valid, perfected and enforceable liens on, and security interests in, all of the Debtor's Property. The Debtor and MGG also agreed upon the terms of, and this Court entered, the *Final Order: (I) Authorizing Secured Postpetition Financing Pursuant to 11 U.S.C. § 364; (II) Extending the Term*

---

[2] Through my involvement with Bacchus, I have a longstanding professional relationship with Mr. Perry DeLuca, the Debtor's investment banker, on matters unrelated to the Debtor.

4

*for Cash Collateral Usage Pursuant to Existing Cash Collateral Orders to April 15, 2023, and (III) Granting Related Relief* [ECF No 224] (the "Final DIP Order") setting forth, among other things, (i) the terms governing postpetition financing, (ii) the grant of a first-priority security interest in and liens on all of the DIP Collateral (as defined in the Final DIP Order), and (iii) the grant of allowed superpriority administrative expense claims to, among others, MGG.

**Sales Process**. MGG and its advisors worked diligently with the Debtor on a value-maximizing sale process contemplated by the Final Cash Collateral Order and this Court's *Order Granting Debtor's Notice of Motion and Motion for Entry of (I) An Order Approving Auction and Bid Procedures for the Sale of Its Wine Vineyard Business Including Real Property, Rights Running with the Certain Real Property, Wine Inventory, Certain Vineyard Business Rights and Contract Rights and (II) Granting Related Relief* [ECF No. 261] (the "Bidding Procedures Order"). Pursuant to the Bidding Procedures Order, MGG was permitted to communicate with potential bidders. MGG communicated with potential bidders as authorized by the Debtor's advisors, almost exclusively through Gordian and in the presence of the Debtor's advisors, with the goal of promoting a robust and value-maximizing sale process.

**Auction.** An auction for the sale of SMV's assets was held on March 24, 2023 (the "Auction"). Four parties that submitted bids and MGG attended the Auction. As reflected on the record, after discussions with the bidders and MGG, the Debtor and its advisors conducted an open auction. At such open auction, after multiple rounds of bidding, MGG submitted the highest and best offer for all of SMV's assets at $42 million. During the entire process through the completion of the Auction, MGG fully complied with the Bidding Procedures Order. MGG's negotiations with the Debtor and its representatives and advisors were at arm's length at all times. MGG does not have any understanding or agreement with another bidder or any other person or entity with respect to the Debtor's assets that is intended to affect the price paid for the Debtor's assets.

At all times during the sale process, MGG's actions, communications, and negotiations with the Debtor were in good faith and at arms'-length.

MGG has not engaged in any fraudulent or collusive behavior in its efforts to acquire the Debtor's assets. Pursuant to the Bidding Procedures Order, MGG was entitled to credit bid all or a portion of its secured claim for its collateral and exercised its right to do so at the Auction.

***MGG's Pre and Postpetition Relationships with Certain Parties.*** To the best of MGG's knowledge, MGG is not affiliated with any of (i) the bidders who participated in the Auction, (ii) the Debtor's current or former officers, directors, agents, or employees, or (iii) any of the Debtor's major creditors. As noted above, MGG is the Debtor's secured lender pursuant to the Credit Agreement, which is personally guaranteed by the Debtor's ultimate beneficial owner, Mr. Safra. The Debtor's advisors informed MGG and its advisors that Birch Lake Fund Management, LP, on behalf of its affiliate, Birch Lake Warehouse VIII, LLC ("Birch Lake"), submitted a bid for certain of the Debtor's assets (the "Birch Lake Bid"), which was withdrawn on March 23, 2023. Based upon information provided in the Birch Lake Bid, Mr. Safra and Constantine S. Yannias, the President and sole director of SMV, are affiliated with Birch Lake.

***MGG's Post-Sale Relationship with the Debtor's Current or Former Officers, Directors, Agents, and Employees.*** I understand that, pursuant to the proposed License Transfer and Transition Services Agreement by and among MGG, SMV, and DNAW SPV CA Vineyard LLC (the "TSA") to be entered into together with the Purchase Agreement, in order to advance the sale process, the Debtor will provide to MGG the services of certain of its employees for some period following consummation of the sale pursuant to the Purchase Agreement.

***Offers of Employment and Compensation***. I understand that, as set forth in the Purchase Agreement, MGG proposes to offer employment to certain of the Debtor's employees. No other offers of employment or compensation have been made to any of the Debtor's current or former officers, directors, agents or employees and I understand that the Purchase Agreement contains no other special treatment of the Debtor, its estate, MGG or their respective affiliates or insiders.

***Consideration in Connection with the Sale***. MGG has not and does not contemplate providing consideration in connection with the sale to anyone other than the Debtor.

MGG has at all times engaged and negotiated with the Debtor at arm's length and acted in good faith with respect to the sale.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 6, 2023

                                           */s/ Peter S. Kaufman*
                                           Peter S. Kaufman
                                           President, Gordian Group, LLC

7