CHRISTINA L. GOEBELSMANN (SBN 273379)
Assistant United States Trustee
ELVINA ROFAEL (CA SBN 333919)
Trial Attorney
TREVOR R. FEHR (CA SBN 316699)
Trial Attorney
UNITED STATES DEPARTMENT OF JUSTICE
Office of the U.S. Trustee
450 Golden Gate Ave., Rm. 05-0153
San Francisco, California 94102
Telephone: (415) 705-3333
Facsimile: (415) 705-3379
Email: Elvina.Rofael@usdoj.gov
Email: Trevor.Fehr@usdoj.gov

Attorneys for Tracy Hope Davis
United States Trustee for Region 17

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SANTA ROSA DIVISION**

| | |
|---|---|
| In re:<br><br>SPRING MOUNTAIN VINEYARD INC,<br><br><br><br><br>Debtor. | Case No. 22-10381 CN<br><br>Chapter 11<br><br><br>Date: April 19, 2023<br>Time: 11:00 a.m.<br>Place: In Person or by Zoom<br><br>Judge: Honorable Charles Novack |

**OBJECTION AND RESERVATION OF RIGHTS OF THE UNITED STATES TRUSTEE TO THE FIRST INTERIM FEE APPLICATION OF GREENSPOON MARDER LLP (ECF NO. 289 to 291)**

Tracy Hope Davis, United States Trustee for Region 17 (the "United States Trustee"), by and through her undersigned counsel, hereby files this objection to the first interim fee application (ECF Nos. 289 to 291) (the "First Interim Fee Application") of Greenspoon Marder LLP (the "Firm"), counsel for the debtor in possession (the "Debtor"). In support of her Objection, the United States Trustee respectfully represents as follows:

1

# I. INTRODUCTION

1. The Firm's fee request should be reduced for the following reasons:

   a. the fee request includes approximately **$9,118.50** for the services of four timekeepers who each billed less than ten hours on the case. Absent a satisfactory explanation, the fees incurred by these transitory billers should be denied.

   b. the Firm's time records include approximately 55 entries (totaling approximately $48,257.50) for which the task description may be too vague to allow the Court to make a meaningful assessment of the necessity of the communication and/or services described therein. The fees associated with these time entries should be denied or reduced by 50% (approximately **$24,123.75**). Alternatively, the Firm should be required to amend the First Interim Fee Application to better describe the communications and services at issue.

   c. the Firm's time records include approximately 46 entries (totaling approximately $72,836.00) in which different tasks have been "lumped" together. The fees associated with these time entries should be reduced by 20% or **$14,267.20**.

   d. the Firm's time records include nine entries for which the recorded time exceeds the amount reflected in the underlying task descriptions. Due to the apparent time miscounts, the Firm's fee request should be reduced by **$8,736.50**.

   e. the Firm's time records reflect several instances where multiple attorneys billed time for attending hearings and internal conferences. Absent a satisfactory explanation, the associated fees of **$1,650.00** should be denied.

   f. the Firm's time records reflect several entries for tasks related to bill or invoice preparation. Absent a satisfactory explanation, the associated fees of **$2,825.00** should be denied.

   g. the Firm increased the billing rate for two attorneys, thereby resulting in an excessive rate increase that also appears to have been unauthorized. Accordingly, the **$23,941.75** in fees associated with the increased billing rates should be denied.

2. The United States Trustee reserves her rights to object to any and all amendments and supplements to the First Interim Fee Application.

## II. STATEMENT OF FACTS

3. On September 29, 2022, the Debtor commenced this voluntary case under Chapter 11 of the United States Bankruptcy Code (the "Petition Date"). *See* ECF No. 1. The Debtor is currently a debtor-in-possession under sections 1107 and 1108 of the Bankruptcy Code. *See* Case Docket *generally*.

4. Due to a lack of interest, an Official Committee of Unsecured Creditors has not been appointed by the United States Trustee in this case. *Id*.

5. The meeting of creditors under 11 U.S.C. § 341(a) was held on November 4, 2022 and concluded on the same day. *Id*.

6. On November 8, 2022, the United States Trustee filed a "Notice of Applicability of Large-Case United States Trustee Fee Guidelines." *See* ECF No. 99.

7. The Debtor's business "consists primarily of growing grapes in its 135 vineyard blocks, harvesting those grapes and pressing them into wine in casks, bottling that wine from casks, and storing and selling that wine." ECF No. 26, at p. 6 of 35.[1]

8. On April 7, 2023, the Court approved the sale of substantially all the Debtor's assets to MGG California, LLC, the Debtor's primary secured creditor. *See* ECF No. 318.

9. On December 22, 2022, the Court approved the Debtor's retention of the Firm, effective as of the Petition Date. *See* ECF No. 173.

10. On March 29, 2023, the Firm filed its First Interim Fee Application for the period between September 29, 2022 through February 28, 2023, requesting $1,110,932.50 in fees and $4,137.26 in expenses. *See* ECF No. 289.

---
[1] References to documents on the Court's docket denote the page numbers of the documents per the Court's docketing stamp.

### III. OBJECTION

11. Bankruptcy Code Section 330(a)(1) provides that:

> [a]fter notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, … an examiner, … or a professional person employed under section 327 or 1103 –
> (A) *reasonable compensation for actual, necessary services* rendered by the trustee, examiner, professional person, … or attorney and by any paraprofessional person employed by any such person; and
> (B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1)(A) and (B) (emphasis added).

12. The fee applicant bears the burden of proof to show entitlement to the requested fees. *See Law Offices of David A. Boone v. Derham-Burk (In re Eliapo)*, 298 B.R. 392, 402 (B.A.P. 9th Cir. 2003), *rev'd in part on other grounds*, 468 F .3d 592 (9th Cir. 2006); *In re Ginji Corp.*, 117 B.R. 983, 990 (Bankr. D. Nev. 1990) ("The applicant … has the burden of proof to show the reasonableness of the fees sought.").

13. A professional person may not be compensated for services that are unnecessarily duplicative. *See* 11 U.S.C. § 330(a)(4)(A)(i); *see also In re Genay-Wolf*, 2012 WL 2064527, at *2 (Bankr. D. Idaho June 7, 2012) ("The Court cannot allow compensation for unnecessary duplication of services ….").

14. Nor may a professional person be compensated for services that are excessive in relation to the task accomplished. *See In re Mohsen*, 473 B.R. 779, 792 (Bankr. N.D. Cal. 2012); *In re SonicBlue Inc.*, 2006 WL 2067882, at *3 (Bankr. N.D. Cal. July 24, 2006) ("Hours that are excessive, redundant, or unnecessary in view of the services performed should not be

4

compensated"). A court may rely on "its own experience" in determining whether billings are excessive. *See In re Rancourt*, 207 B.R. 338, 363 (Bankr. D.N.H. 1997).

A. **The United States Trustee Objects to Allowance of Fees for Services Rendered by Transitory Timekeepers.**

15. The Firm's fee request includes approximately **$9,118.50** for the services of four timekeepers who each billed less than ten hours on the case. *See* ECF No. 289, at p. 34 of 54; *Exhibit A* to the Del Rosario Declaration.

16. Timekeepers who work on large matters for only a few hours are often referred to as "transitory" timekeepers. *Cf. In re Quigley Co.*, 500 B.R. 347, 362 (Bankr. S.D.N.Y. 2013).

17. The primary concern with transitory billing is the cost of bringing attorneys up to speed "to the extent necessary to perform his or her task, and the theory goes that the cost of this education can be saved or minimized if attorneys already familiar with the case perform the service instead. This concern diminishes where the 'transitory' timekeeper provides services on an ad hoc basis within an area of expertise that is not possessed by the attorneys regularly assigned to the case or the task is so focused that it is unnecessary to spend time learning the details of the case." *See id*; *see also In re Jefsaba*, 172 B.R. 786, 801 (Bankr. E.D. Pa. 1994) ("It is inappropriate for each new addition to the team to bill for time spent reviewing the file or otherwise familiarizing him or herself with the matter.").

18. Thus, absent a satisfactory explanation, the United States Trustee requests that the Court reduce the Firm's compensation by **$9,118.50**, which is the amount of fees generated by the transitory timekeepers.

B. **Fees for Services Described in Vague Time Entries Should be Disallowed or Reduced.**

Case: 22-10381    Doc# 323    Filed: 04/12/23    Entered: 04/12/23 14:10:24    Page 5 of 12

19. The Firm's time records include approximately 55 entries for which the task description may be too vague to allow the Court to make a meaningful assessment of the necessity of the communication and/or services described therein. *See Exhibit A* to the Del Rosario Declaration. The corresponding fees total approximately $48,257.50.

20. For instance: (i) on October 7, 2022, Mr. Sahn billed 0.40 hours for "Centerview Partners discussion materials"; (ii) on October 12, 2022, Mr. Horoupian billed 0.20 hours for "[c]all with Steven Werth regarding case management"; (iii) on October 24, 2022, Mr. Shan billed 0.40 for "[m]emorandum to Mr. Safra and counsel"; (iv) on November 30, 2022, Ms. Bhullar billed 1.40 hours to "[r]eview and analyze client documents in connection with bankruptcy; emails and conferences regarding same"; (v) on December 6, 2022, Mr. Sahn billed 0.60 for "[f]orm of asset purchase agreement etc"; and (vi) on February 19, 2023, Mr. Babala billed 2.10 hours for "[a]ctions in connection with time and responsibility checklist." *See Exhibit A* to the Del Rosario Declaration.

21. The fees associated with these time entries should be denied or reduced by 50% — approximately **$24,123.75**. *See, e.g., In re SonicBlue Inc.*, 2006 WL 2067882, at *8 (Bankr. N.D. Cal. July 24, 2006) ("To enable the court to determine whether the services are compensable, the timekeeper is also expected to identify the other party to the conference, meeting, telephone call, or correspondence. Where the time entry omits some critical element describing the services performed, it is not compensable. Time entries that contain such vague characterization of the services performed as 'attention to' and 'work on' fail to adequately describe the services provided."); *In re Virissimo*, 354 B.R. 284, 293 (Bankr. D. Nev. 2006) ("Vague entries … are not compensable."); *In re Bennett Funding Group, Inc.*, 213 B.R. 234, 244–45 (Bankr. N.D.N.Y. 1997) ("[T]ime entries for telephone calls must indicate the parties involved and the purpose and

Case: 22-10381    Doc# 323    Filed: 04/12/23    Entered: 04/12/23 14:10:24    Page 6 of 12

length of the conversation…. Entries such as 'telephone call with Mr. X' are insufficient descriptions of services ….") (emphasis added); *U.S. Bankruptcy Court for the Northern District of California, Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees* (effective February 19, 2014), No. 13.

22. Alternatively, if the Court is inclined to consider these time entries, then the Firm should be required to amend the First Interim Fee Application to better describe the subject matter of the communications and services at issue. The United States Trustee reserves her rights to object to any and all amendments and supplements to the First Interim Fee Application.[2]

**C. Fees for Services Described in "Lumped" Entries Should be Disallowed or Reduced.**

23. The Firm's time records include instances of "block-billing" in which different tasks have been "lumped" into a single billing entry. There are approximately 46 entries of at least 1 hour each that fall into this category. *See Exhibit A* to the Del Rosario Declaration. The corresponding fees total approximately $72,836.00.

24. "Lumping" multiple services into a single billing entry is "universally disapproved" by bankruptcy courts. *See In re Thomas*, 2009 WL 7751299, at *5 (B.A.P. 9th Cir. July 6, 2009). "Lumping" prevents courts from assessing the reasonableness of the time spent on each of the activities. *See id.* at *7; *In re Dutta*, 175 B.R. 41, 46−47 (B.A.P. 9th Cir. 1994); *NDCA*

---

[2] In particular, the United States Trustee is concerned that certain fees related to the drafting and preparing of bankruptcy schedules, the ex parte application to extend time to file schedules, the motion to seal the key employee retention plan, and the drafting of various employment applications may appear excessive in relation to the task accomplished and, absent further clarification, may require a reduction of fees. *Cf. In re SonicBlue Inc.*, 2006 WL 2067882, at *3 ("Hours that are excessive, redundant, or unnecessary in view of the services performed should not be compensated"); *see also In re The Colad Grp., Inc.*, 336 B.R. 36, 38 (Bankr. W.D.N.Y. 2005) ("[T]he reasonableness of a category of service is not necessarily defined by its percentage of all services rendered…. Nonetheless …. [w]here the time spent in preparing an employment application represents a seemingly disproportional percentage of services, the Trustee properly alerts the court to *a need for special scrutiny*.") (emphasis added). The United States Trustee reserves all her rights.

*U.S. Bankruptcy Court for the Northern District of California, Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees* (effective February 19, 2014), No. 14.

25. Courts may reduce compensation for "lumped" entries. *See In re Thomas*, 2009 WL 7751299, at *6; *see also In re Virissimo*, 354 B.R. at 293 (Bankr. D. Nev. 2006) ("[E]ntries … that lump together different services are not compensable.").

26. To do so, courts routinely apply across the board reductions in the number of hours. *See, e.g.*, *In re Thomas,* 2009 WL 7751299, at *6-7 ("In setting a percentage penalty for lumping, most courts 'typically make an adjustment ranging from 5% to over 30%, which is consistent with the finding of the California State Bar's Committee on Mandatory Fee Arbitration that block billing may increase time by 10% to 30%.'") (citations omitted).

27. Accordingly, the fees associated with the Firm's "lumped" time entries should be reduced by 20% or **$14,267.20**. *Cf. In re Stewart*, 2008 WL 8462960, at *6 (B.A.P. 9th Cir. Mar. 14, 2008) (bankruptcy court's reduction of time entries by 20% for lumping was not an abuse of discretion).

D. **Only Fees for Services that were Actually Rendered Should be Awarded.**

28. The Firm's time records include approximately 9 entries for which the recorded time either: (i) exceeds the amount reflected in the underlying task descriptions; (ii) is a duplicate of a fee entry billed on the same day by the same timekeeper; or (iii) includes a time value discrepancy for conferences and hearings. These entries include: (i) Mr. Burnell's time record for November 18, 2022 (1.00 hours recorded vs. .9 hours in the task description); and (ii) Ms. Hami's time record for October 2, 2022 (4.0 hours recorded vs. 2.8 hours in the task description). *See Exhibit A* to the Del Rosario Declaration.

29. The Firm's fee request should be reduced by **$8,736.50** to reflect the apparent time

miscounts. *See* 11 U.S.C. § 330(a)(1)(A) (services must be "actual, necessary"); *see also In re Nucorp Energy, Inc.*, 764 F.2d 655, 658 (9th Cir. 1985) ("[I]n reviewing the propriety of the bankruptcy court's decision to disallow compensation for services related to fee application preparation, *it is necessary to determine whether such services are 'actual and necessary'* ….") (emphasis added); *In re Temple Ret. Cmty., Inc.*, 97 B.R. 333, 336 (Bankr. W.D. Tex. 1989) ("The award of fees is discretionary, bounded by (1) whether the compensation is reasonable and (2) whether the services were *actually rendered* and were necessary.") (emphasis added).

### E. The First Interim Fee Application Reflects Several Instances Where Multiple Timekeepers Billed for Attending Hearings or Conferences.

30. The Firm's time records reflect several instances where multiple timekeepers billed time for attending hearings or conferences, in which the timekeepers either did not actively participate in the hearings or an excessive number of timekeepers from the Firm billed to attend internal conferences. *See Exhibit A* to the Del Rosario Declaration. Flagged hearings include the following: (i) time billed by Mr. Werth on September 30, 2022 to attend a conference with five other timekeepers; (ii) time billed by Ms. Hami on September 30, 2022 to attend a conference with five other timekeepers; and (iii) time billed by Mr. Werth on October 6, 2022 to attend a hearing with three other timekeepers. *Id*.

31. The fees associated with these entries total **$1,650.00**. *See Exhibit A* to the Del Rosario Declaration. Absent an explanation, these fees should be denied. *See, e.g., In re Ginji Corp.*, 117 B.R. at 993 ("When the necessity for multiple attorneys at a hearing has not been shown, such expense is not reasonable"); *In re Sonicblue Inc.*, 2006 WL 2067882, at *6 ("Absent an explanation, participation by multiple attorneys in the same meeting, conference, or hearing constitutes non-compensable duplicative services."); *U.S. Bankruptcy Court for the Northern*

*District of California, Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees* (effective February 19, 2014), No. 16.

**F.     Fees for Non-Reimbursable Overhead Activity Related to Bill or Invoice Preparation Should be Disallowed.**

32.     The Firm's time records reflect several entries for which the firm is billing for tasks related bill or invoice preparation. *See Exhibit A* to the Del Rosario Declaration. The fees associated with these entries total **$2,825.00.** *Id*.

33.     Billing the estate for time spent preparing a bill or invoice is not permissible. *See In re Ginji Corp.,* 117 B.R. at 993 n.5 ("While preparation for fee applications is compensable, this Court does not believe that such a rule extends to granting compensation for preparing an intelligible bill for services."). Accordingly, absent an explanation, fees of **$2,825.00** associated with time entries related to preparing a bill or invoice should be disallowed.

**G.     Unauthorized and Excessive Billing Rate Increases Should be Disallowed.**

34.     The Firm's time records reflect instances of "rate increases" in which two attorneys' billing rates increased during the application period. Ms. Bhullar's billing rate increased from $365.00 per hour at the start of the application period to $495.00 per hour, starting on December 2, 2022.[3] *See Exhibit A* to the Del Rosario Declaration. Mr. Burnell's billing rate increased from $475.00 per hour at the start of the application period to $525.00 per hour, starting on December 1, 2022. *Id*. These rate increases reflect a 36% and 11% rate increase, respectively.

35.     As required by 28 U.S.C. § 586(a)(3)(A), the United States Trustee Program has adopted Guidelines for Reviewing Applications for Compensation and Reimbursement of

---

[3]     Ms. Bhullar's increased rate may have been in effect on December 1, 2022. However, Ms. Bhullar did not bill in this case in December until December 2, 2022. *See* ECF No. 291 *generally*.

Case: 22-10381   Doc# 323   Filed: 04/12/23   Entered: 04/12/23 14:10:24   Page 10 of 12

Expenses filed under 11 U.S.C. § 330 (the "United States Trustee Guidelines").[4] The United States Trustee Guidelines are intended to promote consistency and predictability in bankruptcy cases by directing United States Trustees to exercise their discretion in a uniform manner when determining whether to object to professional fees.

36. Among the disclosures required under the United States Trustee Guidelines are increases in billing rates. Specifically, the Appendix B guidelines attached to the United States Trustee Guidelines (the "Appendix B Guidelines") direct professionals to provide disclosures regarding any increases during the case from the billing rates recited in the professional's retention application, in order that the reasonableness and justification (if any) for such increases may be investigated in a timely manner. *See* ECF No. 99, at pp. 5-33 of 33.

37. Here, the Firm's billing rates were disclosed in the employment application. *See* ECF No. 87, at p. 25 of 40. Mr. Burnell's hourly rate was disclosed as $475.00 per hour.[5] *Id*.

38. One of the inquiries required by the United States Trustee Guidelines asks:

*If the fee application includes any rate increases since retention:*

*a. Did your client review and approve those rate increases in advance?*

*b. Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11–458?*

39. The Firm's response to this inquiry was "[t]here has not been a rate increase so the answer to this question is not applicable." *See* ECF No. 289, at pp. 22–23 of 54.

---

[4] On November 8, 2022, the United States Trustee filed a notice of applicability of large-case fee guidelines. *See* ECF No. 99.

[5] Ms. Bhullar's hourly rate was not disclosed in the Firm's employment application. *See* ECF No. 87 *generally*. However, Ms. Bhullar's hourly rate in November 2022, according to the First Interim Fee Application, was $365.00. *See* ECF No. 291, at p. 71 of 154.

40. As both Ms. Bhullar's and Mr. Burnell's increase billing rates reflect an unauthorized and an excessive increase, Ms. Bhullar's rates were capped at $365.00 and Mr. Burnell's rates were capped at $475.00. *See Exhibit A* to the Del Rosario Declaration.

41. Thus, the United States Trustee requests that the Court reduce the Firm's compensation by **$23,941.75**, which encompasses the difference in fees for Ms. Bhullar and Mr. Burnell when their rates are capped at $365 and $475, respectively.

## IV. CONCLUSION

42. Based on the foregoing, the United States Trustee respectfully requests that the Court sustain the Objection and deny the First Interim Fee Application to the extent it seeks (a) allowance of fees for transitory timekeepers; (b) allowance of fees related to services that are insufficiently described; (c) allowance of fees for which different tasks have been "lumped" together; (d) allowance of fees for which the recorded time exceeds the amounts reflected in the underlying task descriptions; (e) allowance of fees for multiple professionals to attend hearings without making an appearance; (f) allowance of fees for tasks related to bill or invoice preparation; and (g) allowance of fees for two professionals whose billing rate excessively increased during the billing period and was unauthorized.

43. The United States Trustee reserves her rights to object to any and all amendments and supplements to the First Interim Fee Application.

Dated: April 12, 2023　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　TRACY HOPE DAVIS
　　　　　　　　　　　　　　　　　　　　UNITED STATES TRUSTEE, REGION 17

　　　　　　　　　　　　　　　　　　　　By:　/s/ Elvina Rofael
　　　　　　　　　　　　　　　　　　　　　　Elvina Rofael
　　　　　　　　　　　　　　　　　　　　　　Trevor R. Fehr
　　　　　　　　　　　　　　　　　　　　　　Trial Attorneys for United States Trustee