1  Victor A. Sahn (CA Bar No. 97299)
     victor.sahn@gmlaw.com
2  Mark S. Horoupian (CA Bar No. 175373)
     mark.horoupian@gmlaw.com
3  Steve Burnell (CA Bar No. 286557)
     steve.burnell@gmlaw.com
4  **GREENSPOON MARDER LLP**
   1875 Century Park East, Suite 1900
5  Los Angeles, CA 90067
   Telephone: 213.626.2311
6  Facsimile: 954.771.9264

7  Attorneys for Debtor in Possession,
   Spring Mountain Vineyard Inc.

8
                **UNITED STATES BANKRUPTCY COURT**
9
                **NORTHERN DISTRICT OF CALIFORNIA**
10
                     **SANTA ROSA DIVISION**
11

| | |
|---|---|
| In re | Case No. 1:22-bk-10381 CN |
| SPRING MOUNTAIN VINEYARD INC, | Chapter 11 |
| Debtor. | **NOTICE OF (1) PROPOSED ORDER AMENDING FINAL DIP FINANCING ORDER; (2) AMENDED FINAL DIP FINANCING ORDER; (3) REDLINE OF AMENDED FINAL DIP FINANCING ORDER; (4) REDLINE OF PROPOSED ORDER AMENDING FINAL DIP FINANCING ORDER; (5) DIP FINANCING BUDGET** |
| | [Hearing Set on Shortened Notice] |
| | **Hearing Information:** |
| | Date:    May 30, 2023 |
| | Time:    11:00 a.m. |
| | Place.:   Courtroom 215 |
| |         1300 Clay Street |
| |         Oakland, California 94612 |

**TO THE HONORABLE CHARLES NOVACK, UNITED STATES BANKRUPTCY JUDGE,**

**MGG CALIFORNIA LLC, THE TWENTY LARGEST UNSECURED CREDITORS, THE**

**OFFICE OF THE UNITED STATES TRUSTEE, AND PARTIES ENTITLED TO NOTICE:**

      **PLEASE TAKE NOTICE** that in connection with the Debtor's "*Motion to Amend Motion*

*To Amend The Final Order Authorizing Debtor-In-Possession Financing And Other Related Relief*

*Entered On January 27, 2023"* ("Motion to Amend") filed as document number 383 in this Bankruptcy Case, the Chapter 11 Debtor now files the following documents in connection with the hearing set on the Motion to Amend which hearing is taking place on May 30, 2023 at 11:00 a.m.

1. **Exhibit 1:** "Order Amending Final Order: (I) Authorizing Secured Postpetition Financing Pursuant To 11 U.S.C. § 364; (II) Extending The Term For Cash Collateral Usage Pursuant To Existing Cash Collateral Orders To April 15, 2023, And (III) Granting Related Relief"

2. **Exhibit 2:** "Amended Final Order: (I) Authorizing Secured Post-Petition Financing Pursuant To 11 U.S.C. § 364; (II) Extending The Term For Cash Collateral Usage Pursuant To Existing Cash Collateral Orders To April 15, 2023, and (III) Granting Related Relief"

3. **Exhibit 3:** Redline of "Amended Final Order: (I) Authorizing Secured Post-Petition Financing Pursuant To 11 U.S.C. § 364; (II) Extending The Term For Cash Collateral Usage Pursuant To Existing Cash Collateral Orders To April 15, 2023, and (III) Granting Related Relief"

4. **Exhibit 4:** Redline of "Order Amending Final Order: (I) Authorizing Secured Postpetition Financing Pursuant To 11 U.S.C. § 364; (II) Extending The Term For Cash Collateral Usage Pursuant To Existing Cash Collateral Orders To April 15, 2023, And (III) Granting Related Relief"

5. **Exhibit 5:** DIP Financing Budget in Support of Motion to Amend.

DATED: May 26, 2023                    Respectfully submitted,

                                       **GREENSPOON MARDER LLP**


                                       By:  _____*/s/ Victor A. Sahn*_____
                                            Victor A. Sahn
                                            Steve Burnell
                                            Attorneys for Debtor in Possession

# EXHIBIT 1

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SANTA ROSA DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| SPRING MOUNTAIN VINEYARD INC., | Case No. 22-10381 CN |
| Debtor. | RE: Docket Entry No. 224 |

**ORDER AMENDING FINAL ORDER: (I) AUTHORIZING SECURED POSTPETITION FINANCING PURSUANT TO 11 U.S.C. § 364; (II) EXTENDING THE TERM FOR CASH COLLATERAL USAGE PURSUANT TO EXISTING CASH COLLATERAL ORDERS TO APRIL 15, 2023, AND (III) GRANTING RELATED RELIEF**

Upon the motion, dated May 15, 2023 (Docket Entry No. 383) (the "Motion"),[1] of Spring Mountain Vineyard Inc., as debtor in possession (the "Debtor") in the above-referenced chapter 11 case (the "Case"), for entry of an order (this "Order") under sections 105, 361, 362, 363(c), 363(e), 364(c), 364(d)(1) and 364(e) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"); the Court having entered the

---

[1] Capitalized terms used herein that are not otherwise defined shall have the meanings given to them in the Motion or the Final DIP Order (defined below), as applicable.

1

*Final Order: (I) Authorizing Secured Postpetition Financing Pursuant to 11 U.S.C. § 364; (II) Extending the Term for Cash Collateral Usage Pursuant to Existing Cash Collateral Orders to April 15, 2023, and (III) Granting Related Relief* (Docket Entry No. 224) (the "<u>Final DIP Order</u>"); the Court having reviewed and considered the Motion and all other evidence and all responses to the Motion, all responses to the Motion, and the evidence submitted or adduced and the arguments of counsel made at the hearing held on May 30, 2023 (the "<u>Hearing</u>"); and notice of the Hearing having been given in accordance with Bankruptcy Rules 2002 and 9014; and the Hearing to consider the relief requested in the Motion having been held and concluded; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and it appearing to the Court that granting the relief set forth herein is necessary to avoid immediate and irreparable harm to the Debtor and its estate, and is otherwise fair and reasonable, in the best interests of the Debtor, its estate, and its creditors and equity holders, and essential for the continued operation of the Debtor's business; and after due deliberation and consideration, and for good and sufficient cause appearing therefor; the Debtor and the DIP Agent have agreed upon the following terms:

      A.   <u>The Debtor's Stipulations</u>.  Pursuant to Paragraphs 9 and 41 of the Final DIP Order, the Debtor and the DIP Agent agree and acknowledge that the DIP Note is deemed amended to provide for and reflect the amendments in this Order, including, without limitation, the Extended Maturity Date and Upsized DIP Obligations (each as defined below).

      Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Court at the Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED that:**

      1.   <u>Motion Granted</u>.  The relief requested in the Motion and on the record at the Hearing is GRANTED to the extent provided herein.  Any objection to the entry of this Order, to the extent not withdrawn, waived, or resolved, is hereby overruled on its merits.  The effectiveness of this Order and the amendments to the Final DIP Order specified herein are conditioned upon, and MGG shall not be obligated to make any advances pursuant to the Final

004

DIP Order (as amended pursuant to this Order), unless all documents with respect to the consummation of the sale of all or substantially all of the assets of the Debtor to MGG pursuant to the *Order (I) Authorizing and Approving the Sale of Substantially all of the Debtor's Assets and (II) Granting Related Relief* (ECF No. 318) are executed, and all exhibits and schedules thereto are competed, and delivered to MGG on or before the commencement of the Hearing. Such documents include, without limitation, the Asset Purchase Agreement, the License Transfer and Transition Services Agreement, the Bill of Sale and Assumption Agreement, the Intellectual Property Assignment and Assumption Agreement, the Grant Deed, and any other documents reasonably requested by MGG.

2. Paragraph B(v) of the Final DIP Order is hereby amended to read as follows:

> "Closing of Sale. The closing of a sale approved by the Bankruptcy Court shall occur no later than *July 7, 2023*."

3. Paragraph B of the Final DIP Order is hereby amended to add new section B(vi), which shall read as follows:

> "Contract Assumption and Assignment.
>
> (a) On or before **May 30, 2023**, the Debtor shall file a motion to assume and assign executory contracts (the "Contract Assumption Motion"), which Contract Assumption Motion and proposed order in connection therewith shall each be subject to the DIP Agent's approval in its sole discretion.
>
> (b) On or before **June 23, 2023**, the Debtor shall obtain entry of an order approving the Contract Assumption Motion."

4. Paragraph 2 of the Final DIP Order is hereby amended to increase the aggregate principal amount of the DIP Obligations to $20,000,000.00 (the "Upsized DIP Obligations") and read as follows:

3

"Authorization for DIP Financing. The Debtor is hereby authorized … to incur DIP Obligations … in the aggregate principal amount of up to $*20,000,000.00* …"

The Upsized DIP Obligations are inclusive of the amounts borrowed pursuant to the Final DIP Order and the *Interim Order: (I) Authorizing Secured Postpetition Financing Pursuant to 11 U.S.C. § 364; (II) Extending the Term for Cash Collateral Usage Pursuant to Existing Cash Collateral Orders to April 15, 2023, and (III) Granting Related Relief* (Docket Entry No. 209).

5.     Paragraph 4(a) of the Final DIP Order is hereby amended to read as follows and Exhibit B thereto is replaced with the Approved Budget attached hereto as **Exhibit A**:

". . . (iii) net cash flow, on a weekly basis and line-item basis for the time period from and including *April 17*, 2023 through *July 10*, 2023, a copy of which is attached hereto as **Exhibit B** (as the same may be updated from time to time with the prior written consent of the DIP Agent in its sole discretion, the "Approved Budget")."

6.     Paragraph 4(c) of the Final DIP Order is hereby amended to read as follows:

"… Such updated budget approved by the DIP Agent shall be the Approved Budget*; provided, however, the DIP Agent may, in its sole discretion, revoke its approval of the Approved Budget, in whole or in part, at any time*."

7.     The reference to "$4,000,000" in Paragraph 4(d) is hereby replaced with "$20,000,000".

8.     Paragraph 7 of the Final DIP Order is hereby amended to modify the termination of the DIP Loan Documents and extend the Maturity Date (the "Extended Maturity Date") and read as follows:

"Termination of DIP Loan Documents. … on the date that is the earliest of: (a) *the date on which the "Release Price" pursuant to that certain Binding Settlement Agreement, dated as of April 6, 2023, is paid on or before June 28, 2023, (b) the date of consummation of the sale of all or substantially all of the assets of the Debtor pursuant to the Order (I) Authorizing and Approving the Sale of Substantially all of the Debtor's Assets and (II) Granting Related Relief (ECF No. 318)*, or (c) termination by the DIP Agent (acting at the direction of the DIP Lenders) following the occurrence of an Event of Default under the DIP Loan Documents (the "Maturity Date")."

9.     Paragraph 15 of the Final DIP Order is hereby amended to read as follows:

4

"Post-Sale Professional Fees and Expenses. Upon the consummation of a sale of all or substantially all of the assets of the Debtor, an amount equal to the Debtor's accrued and unpaid professional fees and expenses at such time set forth in the Approved Budget, plus *the amount specified in the Approved Budget (as may be amended from time to time) under line item "Wind Down Budget Funding" (collectively, the "Wind-Down Reserve")*, shall be reserved from proceeds of the DIP Agent's collateral to satisfy those obligations *and to provide for the winding down of the Debtor's chapter 11 case (the "Wind-Down") pursuant to the Approved Budget*; provided, however, that following the satisfaction of any such obligations *and the Wind-Down*, any remaining balance *in the Wind-Down Reserve* shall immediately thereafter be distributed to the DIP Agent for application to the DIP Obligations or Prepetition Obligations if such obligations have not been satisfied in full*; provided, further, that the funding of the Wind-Down Reserve in accordance with the Approved Budget shall not guarantee or otherwise ensure that such funds will prove to be sufficient for the Debtor to fund the Wind-Down*."

10.     Paragraph 16 of the Final DIP Order is hereby amended to read as follows:

Nothing contained in the Motion, the DIP Note, the DIP Loan, the DIP Loan Documents, the Final Order, *the Final Order (as amended)*, or any ancillary documents shall prime, alter, impair or otherwise modify any and all past, present or future valid, perfected, and non-avoidable liens of the Napa County Treasurer and Tax Collector (the "County") established in accordance with applicable state law. The Debtor, the DIP Agent, the Administrative Agent, and the County reserve all rights, arguments, and defenses in connection with any claim asserted by the County.

11.     Paragraph 22 of the Final DIP Order is hereby amended to add new section 22(p), which shall read as follows:

"any direct or indirect modification or amendment, without MGG's written consent, to that certain *Minutes of Action and Resolution Taken by Unanimous Written Consent of the Board of Directors of Spring Mountain Vineyard Inc. (f/k/a Good Wine Company) in Lieu of Special Meeting*, dated April 6, 2023."

12.     Solely for reference purposes only, attached hereto as **Exhibit B** is a copy of the Final DIP Order reflecting the amendments contained in this Order.

13.     This Court has and will retain jurisdiction to enforce this Order and the Final DIP Order (as amended pursuant to this Order) in accordance with its terms and to

5

adjudicate any and all matters arising from or related to the interpretation or implementation of this Order and the Final DIP Order (as amended pursuant to this Order).

**\*\* END OF ORDER \*\***

6

# EXHIBIT 2

VICTOR A. SAHN (CA Bar No. 97299)
victor.sahn@gmlaw.com
**GREENSPOON MARDER LLP**
333 South Grand Avenue, 34th Floor
Los Angeles, CA 90071
Ph: (213) 626 2311
Fax: (213) 629 4520
Attorneys for Spring Mountain Vineyard, Inc
Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SANTA ROSA DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| SPRING MOUNTAIN VINEYARD INC., Debtor. | Case No. 22-10381 CN |
| | **AMENDED** FINAL ORDER: |
| | **(I) AUTHORIZING SECURED POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364; (II) EXTENDING THE TERM FOR CASH COLLATERAL USAGE PURSUANT TO EXISTING CASH COLLATERAL ORDERS TO APRIL 15, 2023, AND (III) GRANTING RELATED RELIEF** |

Upon the motion, dated December 30, 2022 (Docket Entry No. 185) (the "Motion"),[1] of Spring Mountain Vineyard, Inc., as debtor-in-possession (the "Debtor") in the above referenced chapter 11 case (the "Case"), for entry of an interim order and a final order (this "Final Order") under sections 105, 361, 362, 363(c), 363(e), 364(c), 364(d)(1) and 364(e) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy

---

[1] Capitalized terms used herein that are not otherwise defined shall have the meanings given to them in the Motion.

Code"), and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"); the Court having entered orders approving the Debtor's use of cash collateral (Docket Entry Nos. 23 (the "First Cash Collateral Order"), 76 (the "Second Cash Collateral Order"), 120 (together with Docket Entry No. 92, the "Third Cash Collateral Order"), 183 (together with Docket Entry No. 181, the "Cash Collateral Stipulation" and, collectively, with the First Cash Collateral Order, the Second Cash Collateral Order, and the Third Cash Collateral Order, the "Cash Collateral Orders")); the Court having reviewed the Motion, the Declaration of Kevin Krakora in Support of the Motion (Docket Entry No. 185) (the "Krakora Declaration"), and all other evidence and all responses to the Motion, and having entered an interim order (the "Interim DIP Order") (Docket No. 209) granting interim authority to obtain postpetition financing and use cash collateral, the relief sought by the Debtor in this Final Order includes an order:

    (a)    authorizing the Debtor to obtain senior secured postpetition financing on a superpriority basis (the "DIP Loan") pursuant to the terms and conditions of this Final Order and that certain *Debtor in Possession Secured Multi-Draw Term Promissory Note* (the "DIP Note"), attached hereto as **Exhibit A**, in the aggregate, maximum principal amount of up to $4,000,000;[2]

    (b)    authorizing the Debtor to execute any other documents, agreements, and instruments delivered pursuant thereto or executed or filed in connection therewith, all as may be reasonably requested by the DIP Agent (as the same may be amended, restated, supplemented, or otherwise modified from time to time, and collectively with the DIP Note, the "DIP Loan Documents");

    (c)    granting the DIP Agent, for itself and for the benefit of the DIP Lenders, first priority security interest in and liens on all of the DIP Collateral (as defined below) to secure the DIP Loan and all obligations owing and outstanding

---

[2]  The "DIP Lenders" shall mean the lender parties listed in the DIP Note. MGG California, LLC shall serve as the "DIP Agent" for and on behalf of the DIP Lenders.

2

010

thereunder and under the DIP Loan Documents, as applicable, the Interim Order and the Final Order, as applicable (collectively, the "DIP Obligations");

    (d)    granting allowed superpriority administrative expense claims to the DIP Agent and the DIP Lenders;

    (e)    authorizing the Debtor to use Cash Collateral (as defined in the Cash Collateral Orders) pursuant to the extension of the terms of the Third Cash Collateral Order, as previously extended by the Cash Collateral Stipulation;

    (f)    vacating and modifying the automatic stay arising under section 362 of the Bankruptcy Code in accordance with the provisions hereof to the extent necessary to implement and effectuate the terms and provisions of this Final Order; and

    (g)    granting certain related relief.

The Court having considered the Motion, the Krakora Declaration, the other filings and pleadings in the Case and the evidence submitted or adduced and the arguments of counsel made at the final hearing held on January 25, 2023 (the "Final Hearing"); and notice of the Final Hearing having been given in accordance with Bankruptcy Rules 2002, 4001, and 9014; and the Final Hearing to consider the final relief requested in the Motion having been held and concluded; and all objections, if any, to the final relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and it appearing to the Court that granting the relief set forth herein is necessary to avoid immediate and irreparable harm to the Debtor and its estate, and is otherwise fair and reasonable, in the best interests of the Debtor, its estate, and its creditors and equity holders, and essential for the continued operation of the Debtor's business; and after due deliberation and consideration, and for good and sufficient cause appearing therefor; the following terms are approved as the Final Order between the Debtor and the DIP Agent:

    A.    <u>The Debtor's Stipulations</u>.  Pursuant to (i) Paragraph A of Third Cash Collateral Order and (ii) Paragraph G of the Second Cash Collateral Order, the Debtor has agreed to

3

certain stipulations relating to, among other things, the amount and priority of the Administrative Agent's claim in connection with the Debtor's prepetition loan facility pursuant to the Credit Agreement (as defined in the Second Cash Collateral Order), which amount of such claim is not less than $202,315,536.14. The Debtor hereby reaffirms the stipulations contained in Paragraph A of the Final Cash Collateral Order and Paragraph G of the Second Cash Collateral Order, which are incorporated herein by reference, and the amount of the Administrative Agent's claim on account of the Prepetition Obligations (as defined in the Second Cash Collateral Order) in an amount not less than $202,315,536.14.

B. <u>Sale Process Milestones</u>. Notwithstanding anything to the contrary contained in the Cash Collateral Orders, the Debtor agrees to the following terms that will govern its sale process:

(i) <u>Stalking Horse Bid</u>: (a) The Debtor and its advisors shall use their reasonable best efforts to market the Debtor's assets and obtain a stalking horse bid on or before **February 17, 2023**; <u>provided</u>, <u>however</u>, the failure to obtain a stalking horse bid itself shall not be a breach pursuant to the DIP Loan; <u>provided</u>, <u>further</u>, that the Debtor's investment banker shall be allowed, in its sole discretion, to communicate with the DIP Agent and its advisors in connection with the marketing and sale (the "<u>Sale Process</u>") of the Debtor's vineyard property located in St. Helena, CA (the "<u>Vineyard</u>") and wine inventory, and the Chapter 11 case without the Debtor or its counsel present.

(b) The Debtor shall not decide to accept a stalking horse bid, if any, until no earlier than February 17, 2023, unless the DIP Agent otherwise consents in writing. The Debtor shall, consistent with its fiduciary duties, consider all stalking horse bids received, including a stalking horse bid submitted by MGG California, LLC, as administrative agent ("<u>MGG</u>" or the "<u>Administrative Agent</u>"), if any, which bid may be submitted on or after February 17, 2023.

4

(c) All of MGG's rights are fully reserved, including, without limitation, the filing of any objection and/or other pleadings on or after February 17, 2023 relating to the Debtor's selection of a stalking horse bid, regardless of whether the Debtor decides to accept a stalking horse bid (including a bid by MGG), or to not accept any stalking horse bid at all and proceed to a naked auction.

(ii)     <u>Bid Procedures and Sale Motion</u>:  (a) On or before **January 17, 2023**, the Debtor shall file a motion (the "<u>Bid Procedures Motion</u>") seeking (a) entry into a stalking horse purchase agreement, if any and providing that any stalking horse bid shall be acceptable to the DIP Agent in its sole discretion, (b) approval of bidding procedures for the sale of all or substantially all assets of the Debtor, (c) scheduling the auction, the hearing, and objection deadlines for such sale consistent with the deadlines herein, and (d) seeking related relief consistent with this Final Order, which Bid Procedures Motion and proposed order in connection therewith (the "<u>Bid Procedures Order</u>") shall each be subject to the DIP Agent's approval in its sole discretion.  After the hearing on the Bid Procedures Motion, presuming that such motion is granted by the Court, the DIP Agent will support the dates provided in the milestones referenced in this Final Order going forward as long as the Debtor has otherwise complied with this Final Order.

(iii)     <u>Auction</u>. The auction in connection with the sale of all or substantially all assets of the Debtor shall conclude no later than **March 24, 2023** (*i.e.*, an auction scheduled to occur over multiple days shall conclude no later than March 24, 2023). The DIP Agent's rights are fully reserved, including, without limitation, (i) to participate, including, without limitation, a credit bid of all or any portion of its claim, at the auction, and (ii) to file objections and/or other pleadings in connection with the sale hearing.

(iv)     <u>Sale Hearing</u>.  The hearing to consider approval of the sale of all or substantially all assets of the Debtor shall occur no later than **March 31, 2023**.

5

The DIP Agent's rights are fully reserved, including, without limitation, the filing of objections and/or other pleadings in connection with the sale hearing. The order approving such sale, and the asset purchase agreement and all exhibits and schedules thereto in connection with such sale, shall each be in form and substance satisfactory to the DIP Agent, in its sole discretion.

(v)     <u>Closing of Sale</u>.    The closing of a sale approved by the Bankruptcy Court shall occur no later than **July 7, 2023.**

(vi)     <u>Contract Assumption and Assignment</u>.

(a)     On or before **May 30, 2023**, the Debtor shall file a motion to assume and assign executory contracts (the "<u>Contract Assumption Motion</u>"), which Contract Assumption Motion and proposed order in connection therewith shall each be subject to the DIP Agent's approval in its sole discretion.

(b)     On or before **June 23, 2023**, the Debtor shall obtain entry of an order approving the Contract Assumption Motion.

C.     <u>Necessity for Relief Requested</u>.

(i)     *Postpetition Financing*.    The Debtor requested from the DIP Lenders certain loans, advances, and other financial accommodations on the terms and conditions set forth in this Final Order and the DIP Loan Documents (as defined below).    The DIP Lenders have indicated a willingness to provide financing to the Debtor subject to the entry of this Final Order, and conditioned upon the entry of the Final Order, including stipulations that such financing is essential to the Debtor's estate, the DIP Lenders are extending credit to the Debtor as set forth herein in good faith, and that the claims, superpriority claims, security interest, liens, rights, and other protections granted to the DIP Lenders and DIP Agent will have the protections provided in section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument, or reconsideration of the Interim DIP Order, this Final Order, or any other order

6

(ii)     *Need for Postpetition Financing*. The Debtor has an immediate need for financing to, among other things, preserve and maximize the value of the assets of the Debtor's bankruptcy estate (as defined under section 541 of the Bankruptcy Code, the "Estate") in order to maximize the recovery to all creditors of the Debtor's Estate, absent which immediate and irreparable harm will result to the Debtor, its Estate, and its stakeholders.  Absent the Debtor's ability to obtain postpetition financing, the Debtor will not have sufficient available sources of working capital, including Cash Collateral, or financing and will be unable to pay its payroll and other operating expenses, or maintain its assets to the detriment of its Estate and creditors.

(iii)    *No Credit Available on More Favorable Terms*.  The Debtor is unable to obtain adequate unsecured credit allowable as an administrative expense under section 503 of the Bankruptcy Code, or other sufficient financing under sections 364(c) or (d) of the Bankruptcy Code, on more favorable terms than those set forth herein, based on the totality of the circumstances.  A loan in the amount provided by the DIP Loan is not available to the Debtor without granting the DIP Agent, for the benefit of the DIP Lenders, superpriority claims, liens, and security interests, pursuant to sections 364(c)(1), 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, as provided in this Final Order.

(iv)    *Good Faith*.  The terms of the DIP Loan Documents, including, without limitation, the interest rates and fees applicable, and intangible factors relevant thereto, are more favorable to the Debtor than those available from alternative sources.  The DIP Loan Documents have been negotiated in good faith and at arm's-length among the Debtor, the DIP Lenders, and the DIP Agent under no duress, and without undue influence, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining the requisite approvals of the DIP Loan.  Any DIP Obligations and other

7

financial accommodations made to the Debtor by the DIP Agent and the DIP Lenders pursuant to the DIP Loan Documents and this Final Order shall be deemed to have been extended by the DIP Agent and the DIP Lenders in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and the DIP Agent and the DIP Lenders shall be entitled to all protections afforded thereby.

(v) *Fair Consideration and Reasonably Equivalent Value*.  The Debtor has received and will receive fair and reasonable consideration in exchange for access to the DIP Loan and all other financial accommodations provided under the DIP Loan Documents and this Final Order.  The terms of the DIP Loan Documents and this Final Order are fair and reasonable, reflect the Debtor's exercise of prudent judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

D.  <u>Good Cause</u>.  Good cause has been shown for immediate entry of this Final Order.  The relief requested in the Motion, at the Final Hearing, and the terms set forth herein are (i) critical to the Debtor's ability to maximize the value of the Estate, (ii) in the best interests of the Debtor and its Estate, and (iii) necessary, essential, and appropriate to avoid immediate and irreparable harm to the Debtor and its Estate, stakeholders, assets, goodwill, reputation, and employees.  The ability of the Debtor to obtain sufficient working capital and liquidity under the DIP Loan is vital to the Debtor's estate and creditors.  Among other things, the relief granted herein will minimize disruption of the Debtor's business and permit the Debtor to meet payroll and other expenses necessary to maximize the value of the Estate. The terms of the proposed adequate protection arrangements, as set forth in this Final Order, are fair and reasonable under the circumstances and reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties.

E.  <u>Sections 506(c) and 552(b) Waivers</u>.  In exchange for and as a material inducement to the DIP Agent and the DIP Lenders to agree to provide the DIP Loan, and in light of the agreement of the Administrative Agent and the Prepetition Secured Parties to

8

permit their Prepetition Liens (each as defined in the Second Cash Collateral Order) to be subject to prior payment of the DIP Liens and the DIP Superpriority Claim, the DIP Agent, the DIP Lenders, the Administrative Agent, and the Prepetition Secured Parties are each entitled to (a) subject to entry of the Final Order, a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code and (b) subject to entry of the Final Order in the case of the Administrative Agent and the Prepetition Secured Parties, a waiver of the provisions of section 506(c) of the Bankruptcy Code.

Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Court at the Final Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED that:**

1. <u>Motion Granted</u>. The relief requested in the Motion and on the record at the Final Hearing is GRANTED on a final basis to the extent provided herein. Any objection to the entry of this Final Order, to the extent not withdrawn, waived or resolved, is hereby overruled on its merits. The authorization to obtain financing pursuant to this Final Order and the DIP Loan Documents shall expire, and the DIP Loan made pursuant to this Final Order and the DIP Loan Documents will mature, and together with all interest thereon and any other obligations accruing under the DIP Loan Documents, will become due and payable (unless such obligations become due and payable earlier pursuant to the terms of the DIP Loan Documents and this Final Order by way of acceleration or otherwise) on the Maturity Date (as defined below).

<u>**Authorization for DIP Financing and Use of Cash Collateral**</u>

2. <u>Authorization for DIP Financing</u>. The Debtor is hereby authorized, on a final basis, to incur DIP Obligations immediately subject to the terms of this Final Order, the Approved Budget, and the DIP Loan Documents, in the aggregate principal amount of up to $20,000,000.00 (inclusive of the DIP Obligations incurred pursuant to the Interim DIP Order). Except as provided under this Final Order, available financing under the DIP Loan

9

Documents shall, on a final basis, be made to fund, strictly in accordance with the Approved Budget, the payment of accrued and budgeted administrative expenses prior to the Maturity Date, including those set forth on budgets approved by the DIP Agent pursuant to the Cash Collateral Orders.

3. <u>Authorization for Use of Cash Collateral</u>. The terms and provisions of the Third Cash Collateral Order, as extended pursuant to the Cash Collateral Stipulation, shall be further extended to the Maturity Date, and the Debtor shall be permitted to use Cash Collateral solely in accordance with and to the extent set forth in the Approved Budget during the period commencing on the date of this Final Order through the Maturity Date.

4. <u>Approved Budget</u>.

(a) The Debtor has delivered to the DIP Agent a budget that sets forth projected (i) cash receipts, (ii) cash disbursements (including ordinary course operating expenses, non-operating expenses, bankruptcy-related expenses (including professional fees of the Debtor's professionals and advisors), asset sales and any other fees and expenses), and (iii) net cash flow, on a weekly basis and line-item basis for the time period from and including April 17, 2023 through July 10, 2023, a copy of which is attached hereto as **<u>Exhibit B</u>** (as the same may be updated from time to time with the prior written consent of the DIP Agent in its sole discretion, the "<u>Approved Budget</u>"). The Approved Budget shall at all times be in form and substance acceptable to the DIP Agent, and approved in writing by the DIP Agent in its sole discretion. The Debtor shall provide updates to the Approved Budget and financial reporting with respect to the Debtor in accordance with the terms of this Final Order and the DIP Loan Documents and shall provide copies of updates to the Approved Budget to the U.S. Trustee and counsel for any Committee. Funds borrowed under the DIP Loan Documents and this Final Order shall be used by the Debtor strictly in accordance with the DIP Loan Documents, this Final Order, and the Approved Budget, subject to such variances as are permitted by this Final Order or agreed to in writing by the DIP Agent. Each budget delivered to the DIP Agent shall be accompanied by such customary supporting documentation as

10

018

reasonably requested by the DIP Agent and shall be prepared in good faith based upon assumptions the Debtor believes to be reasonable at the time of delivery. The consent of the DIP Agent to any Approved Budget shall not be construed as a commitment to provide the DIP Loan after the Maturity Date under this Final Order.

(b)     Any modifications, amendments, revisions, or updates to the Approved Budget must be consented to in writing by the DIP Agent in its sole discretion prior to the implementation thereof and shall not require further notice, hearing, or court order; provided, however, that notice of any such amendment, supplement, or modification shall be provided to the U.S. Trustee and counsel to any Committee.

(c)     The Debtor shall provide to the DIP Agent, at least once every four (4) weeks beginning on February 9, 2023, an updated budget on a rolling 13-week basis, which updated budget shall be subject to the DIP Agent's approval in its sole discretion. Such updated budget approved by the DIP Agent shall be the Approved Budget; provided, however, the DIP Agent may, in its sole discretion, revoke its approval of the Approved Budget, in whole or in part, at any time.

(d)     The DIP Agent and the DIP Lenders (i) may assume the Debtor will comply with the Approved Budget, and (ii) shall have no duty to monitor such compliance. All advances and extensions of credit shall be based upon the terms and conditions of the DIP Loan Documents, as the same may be adjusted from time to time. Subject to the terms and conditions of this Final Order, the DIP Agent and the DIP Lenders shall have the right, but not the obligation, to extend credit independent of the bi-weekly schedule pursuant to any Approved Budget and the DIP Loan Documents; provided, however, the aggregate principal amount of the DIP Loan, including any such extended credit, shall not exceed $20,000,000, and all such DIP Obligations shall be entitled to the benefits and protections of this Final Order.

(e)     Not later than 8:00 p.m. (prevailing Eastern time) on the Thursday of each week commencing on January 16, 2023, the Debtor shall furnish to the DIP Agent a

11

weekly report (each, a "Budget Compliance Report") that sets forth, as of the preceding Friday , for the prior week and on a rolling four-week basis (each such reporting period, a "Cash Flow Measurement Period"), the variance, if any, between the Approved Budget and the actual results for each line item set forth in the Approved Budget.

(f)     The Debtor shall be deemed in compliance with the Approved Budget to the extent that (i) the actual amount of "Total Receipts" for any Cash Flow Measurement Period is not less than eighty-five percent (85%) of the amount projected in the "Total Receipts" line item of the Approved Budget for such Cash Flow Measurement Period; and (ii) the actual amount of the "Operating Disbursements" for any Cash Flow Measurement Period does not exceed one hundred fifteen percent (115%) of the amount projected in the "Operating Disbursement" line item of the Approved Budget for such Cash Flow Measurement Period (individually and collectively, the "Permitted Variances").

5.     Authority to Execute and Deliver Necessary Documents.

(a)     The Debtor is authorized to negotiate, prepare, enter into, and deliver the DIP Loan Documents, including any amendments thereto and borrow money under the DIP Loan, on final basis in accordance with the terms of this Final Order and the DIP Loan Documents.  The Debtor is further authorized and directed to negotiate, prepare, enter into and deliver any UCC financing statements, pledge and security agreements, mortgages or deeds of trust, or similar documents or agreements encumbering all of the DIP Collateral and securing the Debtor's obligations under the DIP Loan Documents, each as may be reasonably requested by the DIP Agent, for itself or on behalf of the DIP Lenders, or the DIP Lenders. The Prepetition Liens shall be deemed continuing liens to secure (i) the DIP Obligations, and (ii) the Prepetition Obligations in accordance with the priorities set forth in this Final Order. All Loan Documents (as defined in the Second Cash Collateral Order) evidencing the grant, priority and perfection of the Prepetition Liens on the Collateral shall (x) remain in full force and effect and continue to secure the Prepetition Obligations, (y) be deemed, upon entry of this Final Order, to secure, *mutatis mutandis*, the DIP Obligations for the benefit of the DIP

12

Agent and the DIP Lenders, and (z) inure also to the benefit of, and shall be exercisable exclusively by, the DIP Agent, until all of the DIP Obligations have been indefeasibly paid in full, at which time exclusive control shall automatically revert to the Administrative Agent.

(b) The Debtor is further authorized to (i) perform all of its obligations under the DIP Loan Documents, and such other agreements as may be required by the DIP Loan Documents to give effect to the terms of the financing provided for therein and in this Final Order, and (ii) perform all acts required under the DIP Loan Documents and this Final Order.

6. <u>Valid and Binding Obligations</u>. All obligations under the DIP Loan Documents shall constitute valid and binding obligations of the Debtor, enforceable against the Debtor, its Estate, and its successors and assigns, jointly and severally, including, without limitation, any trustee or other estate representative appointed in the Case or any Successor Case (as defined below), in accordance with their terms and the terms of this Final Order, and no obligation, payment, transfer, or grant of a lien or security interest under the DIP Loan Documents or this Final Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code) or subject to any avoidance, reduction, set off, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defense, or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity. The DIP Obligations include all loans and any other indebtedness or obligations, contingent or absolute, now existing or hereafter arising, which may from time to time be or become owing by the Debtor to the DIP Lenders and the DIP Agent under the DIP Loan Documents, including, without limitation, all principal, interest, costs, fees, expenses, and other amounts owed pursuant to the DIP Loan Documents.

7. <u>Termination of DIP Loan Documents</u>. Notwithstanding anything in this Final Order to the contrary, the authorization to obtain financing pursuant to this Final Order and

13

021

the DIP Loan Documents shall expire, and the DIP Loan made pursuant to this Final Order and the DIP Loan Documents will mature, and together with all interest thereon and any other obligations accruing under the DIP Loan Documents, will become due and payable (unless such obligations become due and payable earlier pursuant to the terms of the DIP Loan Documents and this Final Order by way of acceleration or otherwise) on the date that is the earliest of: (a) the date on which the "Release Price" pursuant to that certain Binding Settlement Agreement, dated as of April 6, 2023, is paid on or before June 28, 2023, (b) the date of consummation of the sale of all or substantially all of the assets of the Debtor pursuant to the Order (I) Authorizing and Approving the Sale of Substantially all of the Debtor's Assets and (II) Granting Related Relief (ECF No. 318), or (c) termination by the DIP Agent (acting at the direction of the DIP Lenders) following the occurrence of an Event of Default under the DIP Loan Documents (the "Maturity Date").

8. **Authorization for Payment of DIP Financing Fees and Expenses**. All fees paid and payable, and all costs and/or expenses reimbursed or reimbursable (including, without limitation, all fees, costs and expenses referred to in the DIP Loan Documents) by the Debtor to the DIP Agent are hereby approved. The Debtor is hereby authorized and directed to pay all such fees, costs, and expenses in accordance with the terms of the DIP Loan Documents and this Final Order, without any requirement that any party or their counsel file any further application or other pleading, notice, or document with the Court for approval or payment of such fees, costs, or expenses. Notwithstanding anything to the contrary herein, the fees, costs, and expenses of the DIP Agent and DIP Lenders, including, without limitation, all fees referred to in the DIP Loan Documents and all attorneys' fees and expenses, shall be deemed fully earned and non-refundable as of the date of this Final Order.

9. **Amendments, Consents, Waivers, and Modifications**. The Debtor may enter into any amendments, consents, waivers, or modifications to the DIP Loan Documents in accordance with the terms of the DIP Loan Documents without need for further notice and hearing or any order of this Court; provided, however, that any material amendment, waiver,

14

or modification shall require Court approval. Copies of all amendments, waivers, modifications, whether or not material, shall be provided by the Debtor to counsel to the Committee, if any, and the U.S. Trustee.

### DIP Liens and DIP Superpriority Claims

10. <u>DIP Liens & Priority</u>.

(a) To secure the DIP Obligations and other obligations of the Debtor under the DIP Loan and DIP Loan Documents, the DIP Agent is hereby granted for the benefit of itself and the DIP Lenders, pursuant to and in accordance with sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, in each case subject to the Carve-Out, valid, enforceable, and fully perfected:

(i) first priority liens on all property of the Debtor's estate in the Case that is not subject to valid, perfect, and non-avoidable liens as of the commencement of the Case on September 29, 2022 (the "<u>Petition Date</u>"), excluding claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code (collectively, "<u>Avoidance Actions</u>"); <u>provided</u>, <u>however</u>, upon entry of the Final Order, liens in favor of the DIP Agent and DIP Lenders shall attach to and be perfected in any proceeds of Avoidance Actions;

(ii) junior liens on all property of the Debtor's estate in the Case, that is subject to valid, perfected, and non-avoidable liens in existence as of the Petition Date or to valid liens in existence at the time of the Petition Date that are perfected subsequent to the Petition Date as permitted by Section 546(b) of the Bankruptcy Code, other than property that is subject to the existing liens that secure obligations under the agreements referred to in subsection (iii) below, which liens shall be primed by the liens to be granted to the DIP Lender as described therein;

(iii) first priority, senior priming liens on all of the property (such property, together with the property described in subsections (i) and (ii) above, the "<u>DIP Collateral</u>") of the Debtor's estate in the Case (including, without limitation, inventory,

15

accounts receivable, general intangibles, chattel paper, owned real estate, real property leaseholds, fixtures and machinery and equipment fixtures and machinery and equipment, deposit accounts, patents, copyrights, trademarks, tradenames, rights under license agreements, and other intellectual property and capital stock of subsidiaries) that is subject to the existing liens that secure the obligations of any other lenders under or in connection with any existing credit agreement and related documents and agreements and all of which existing liens (the "Primed Liens") shall be primed by and made subject and subordinate to the perfected first priority senior liens to be granted to the DIP Agent, for the benefit of itself and the DIP Lenders, which senior priming liens in favor of the DIP Agent shall also prime any liens granted after the Petition Date to provide adequate protection in respect of any of the Primed Liens (subsections (i), (ii), and (iii) collectively, the "DIP Liens").

(b) The DIP Liens shall be effective immediately upon the entry of this Final Order and shall not at any time be made subject or subordinated to, or made *pari passu* with, any other lien, security interest or claim existing as of the Petition Date, or created under sections 363 or 364(d) of the Bankruptcy Code or otherwise, other than the Carve-Out as provided herein.

(c) The DIP Liens shall be and hereby are deemed fully perfected liens and security interest, effective and perfected upon the date of this Final Order, without the necessity of execution by the Debtor of mortgages, security agreements, pledge agreements, financing agreements, financing statements, account control agreements, or any other agreements or instruments, such that no additional actions need by taken by the DIP Agent or the DIP Lenders to perfect such interests. Any provision of any lease, loan document, easement, use agreement, proofer, covenant, license, contract, organizational document, or other instrument or agreement that requires the consent or approval of one or more landlords, licensors or other parties, or requires the payment of any fees or obligations to any governmental entity, non-governmental entity or any other person, in order for any of the Debtor to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold

16

interest or the proceeds thereof or other collateral, is and shall be deemed to be inconsistent with the provisions of the Bankruptcy Code, and shall have no force or effect with respect to the transactions granting the DIP Agent, for the benefit of itself and the DIP Lenders, a security interest in such fee, leasehold, or other interest or other collateral or the proceeds of any assignment, sale, or other transfer thereof, by the Debtor in favor of the DIP Agent, for the benefit of itself and the DIP Lenders, in accordance with the terms of the DIP Loan Documents.

11. <u>DIP Lenders' Superpriority Claim</u>. The DIP Agent, for the benefit of itself and the DIP Lenders, is hereby granted an allowed superpriority administrative expense claim (the "<u>DIP Superpriority Claim</u>") pursuant to section 364(c)(1) of the Bankruptcy Code in the Case and in any successor case(s) under the Bankruptcy Code (including any case or cases under chapter 7 of the Bankruptcy Code, the "<u>Successor Case(s)</u>") for all DIP Obligations, having priority over any and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to entry of a Final Order), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114 and any other provision of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed DIP Superpriority Claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtor and all proceeds thereof including, without limitation, any proceeds or property recovered in connection with the pursuit of Avoidance Actions. Except as set forth in this Final Order, without the written consent of the DIP Agent, no other superpriority claims shall be granted or allowed in the Case or in any Successor Case and the DIP Superpriority Claim shall be senior in all respects to any superpriority claims granted in the Case, other than the Carve-Out as provided herein.

12. <u>Survival of DIP Liens and DIP Superpriority Claim</u>. The DIP Liens, DIP Superpriority Claim, and other rights and remedies granted under this Final Order to the DIP

17

Agent, for the benefit of itself and the DIP Lenders, shall continue in this and any Successor Case(s) and shall be valid and enforceable against any trustee appointed in the Case and/or upon the dismissal of the Case or any Successor Case(s) and such liens and security interests shall maintain their priority as provided in this Final Order until all of the DIP Obligations have been indefeasibly paid in full in cash and the DIP Lenders' commitments have been terminated in accordance with the DIP Loan Documents.

13.  For purposes hereof, the term "Carve-Out" shall mean the sum of, to the extent allowed at any time pursuant to the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules for the Northern District of California (the "Local Rules"), and any interim or final orders of the Court, (x) all accrued and unpaid fees, disbursements, costs, expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtor pursuant to sections 327, 328, or 363 of the Bankruptcy Code, in an aggregate amount of up to one hundred fifteen percent (115%) of the amount specified for professional fees in the Approved Budget for the period up to the Maturity Date, (y) all fees and expenses of BNP Paribas Securities Corp. to which the pre-petition and post-petition liens and claims of Debtor's lenders are subject to a carveout pursuant to paragraph 10 of the *Order Authorizing the Employment and Retention of BNP Paribas Securities Corp. as Investment Banker to the Debtor and Debtors in Possession Effective as of October 14, 2022* (Docket No. 161), and (z) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate.

14.  Application of Proceeds of Sale.  Proceeds of the sale of Collateral shall first be applied to the DIP Obligations and then be applied to Prepetition Obligations.  Any amount credit bid by the DIP Agent shall first be applied to reduce the amount of outstanding DIP Obligations and then be applied to reduce the amount of Prepetition Obligations.

15.  Post-Sale Professional Fees and Expenses.  Upon the consummation of a sale of all or substantially all of the assets of the Debtor, an amount equal to the Debtor's accrued

18

026

and unpaid professional fees and expenses at such time set forth in the Approved Budget, plus the amount specified in the Approved Budget (as may be amended from time to time) under line item "Wind Down Budget Funding" (collectively, the "Wind-Down Reserve"), shall be reserved from proceeds of the DIP Agent's collateral to satisfy those obligations and to provide for the winding down of the Debtor's chapter 11 case (the "Wind-Down") pursuant to the Approved Budget; provided, however, that following the satisfaction of any such obligations and the Wind-Down, any remaining balance in the Wind-Down Reserve shall immediately thereafter be distributed to the DIP Agent for application to the DIP Obligations or Prepetition Obligations if such obligations have not been satisfied in full; provided, further, that the funding of the Wind-Down Reserve in accordance with the Approved Budget shall not guarantee or otherwise ensure that such funds will prove to be sufficient for the Debtor to fund the Wind-Down.

16.    Nothing contained in the Motion, the DIP Note, the DIP Loan, the DIP Loan Documents, the Final Order, the Final Order (as amended), or any ancillary documents shall prime, alter, impair or otherwise modify any and all past, present or future valid, perfected, and non-avoidable liens of the Napa County Treasurer and Tax Collector (the "County") established in accordance with applicable state law. The Debtor, the DIP Agent, the Administrative Agent, and the County reserve all rights, arguments, and defenses in connection with any claim asserted by the County.

**Adequate Protection**

17.    Adequate Protection for Prepetition Secured Parties.

(a)    Adequate Protection Liens. As adequate protection for and to the extent of the amount of diminution in value from and after the Petition Date, of its interests in the Collateral, including, without limitation, the priming of the Prepetition Liens on and in the Collateral by the DIP Agent or the DIP Lenders (collectively, the "Diminution in Value"), the Administrative Agent, for the benefit of itself, is hereby granted (subject to the DIP Liens, and DIP Superiority Claim), pursuant to sections 361 and 363 of the Bankruptcy Code,

19

027

valid, binding, enforceable and perfected replacement and additional liens upon and security interests in all property, real or personal, whether now existing or hereafter arising and wherever located, tangible and intangible, of the Debtor, including insurance policies (and any and all claims thereunder) and the proceeds thereof, commercial tort claims, causes of action, and all substitutions, indemnification rights, all present and future intercompany debt, books and records related to the foregoing, accessions and proceeds of the foregoing, wherever located, including, without limitation, (a) insurance or other proceeds; (b) all proceeds of leased real property; (c) the proceeds of any avoidance actions brought pursuant to Chapter 5 of the Bankruptcy Code or applicable state law equivalents; and (d) the proceeds of the Debtor's rights under section 506(c) and 550 of the Bankruptcy Code, and all Collateral that was not otherwise subject to valid, perfected, enforceable, and unavoidable liens on the Petition Date (collectively, to the extent acquired after the Petition Date, the "Post-Petition Collateral" and, together with the Prepetition Collateral and the Cash Collateral, the "Collateral") to the extent of any Diminution in Value (the "Adequate Protection Liens"). The Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any asset of the Debtor and all rights of payment of all other parties, but shall be subordinate to and subject to the DIP Liens and/or payment of any DIP Obligations on account thereof. Other than as set forth herein, including with respect to the DIP Liens and/or payment of any DIP Obligations, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or with any lien or security interest previously or hereinafter granted in the Case or any Successor Case. The Adequate Protection Liens shall be valid, binding and enforceable against any trustee or other estate representative appointed in the Case, in any Successor Case, and/or upon the dismissal of any Case or Successor Case.

(b)  Adequate Protection Fees.  As Adequate Protection for and to the extent of the amount of diminution in value from and after the Petition Date, of the DIP Agent's and the DIP Lenders' interests in the Collateral, including, without limitation, the priming of the Prepetition Liens on and in the Collateral by the DIP Agent or the DIP Lenders, the Debtor is

20

028

authorized to reimburse, within ten (10) calendar days of written demand (together with reasonably detailed supporting documentation, which may be redacted to protect privileged or confidential information), the Administrative Agent and the Lenders for reasonable and documented out-of-pocket fees and expenses incurred in connection with efforts to restructure the Debtor, any event of default under the Credit Agreement, and any exercise of remedies in respect thereof (including reasonable documented out-of-pocket prepetition and postpetition fees, charges, and disbursements of legal counsel, financial advisors, and third-party appraisers and consultants advising the Administrative Agent or the Lender incurred in connection with such party's participation in the Chapter 11 Case).

(c) <u>Cash Management</u>. The Debtor shall maintain its cash management arrangements in a manner consistent with that described in the applicable "first day" order.

(d) <u>Adequate Protection Superpriority Claim</u>. As adequate protection for the Diminution in Value of its interest in the Prepetition Collateral (as defined in the Second Cash Collateral Order), the Administrative Agent is hereby granted as and to the extent provided by sections 503 and 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in the Case and any successor bankruptcy case, subject in all respects to the Carve-Out (the "<u>Adequate Protection Superpriority Claim</u>"). The Adequate Protection Superpriority Claim shall have priority over all administrative expense claims, including administrative expenses of the kinds specified in or ordered pursuant to sections 503(b) and 507(b) of the Bankruptcy Code, and unsecured claims against the Debtor and the Estate now existing or hereafter arising, of any kind or nature whatsoever; <u>provided</u>, <u>however</u>, the Adequate Protection Superpriority Claim shall be subordinate to and subject to the DIP Superpriority Claim.

(e) <u>Disposition of Collateral</u>. The Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral outside the ordinary course of business without (i) prior written notice (which writing may be e-mail) to the DIP Agent and

21

the Administrative Agent of such disposition and the terms thereof, and (ii) in each case, an order of this Court.

(f)    _Further Adequate Protection Reservation_.  Notwithstanding anything to the contrary set forth herein, the adequate protection granted by this Final Order is without prejudice to the Administrative Agent's rights to seek additional adequate protections from this Court.

**Restriction on Use of Funds**

18.    _Limitation on Use of Collateral_.  No proceeds of the DIP Loan, any DIP Collateral, Collateral, or Cash Collateral may be used in connection with or to finance in any way: (a) obtaining postpetition loans or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code or otherwise, other than from the DIP Agent or DIP Lenders, unless the proceeds of such loans or accommodations are or will be sufficient, and will be used, to indefeasibly pay in full in cash all DIP Obligations and Prepetition Obligations, (b) any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) for the payment of any services rendered by the professionals retained by the Debtor or Committee, or other representative of the Estate, in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment, determination, declaration or similar relief invalidating, setting aside, avoiding or subordinating, in whole or in part, any Prepetition Liens, Prepetition Obligations, DIP Obligations, or DIP Liens (ii) for monetary, injunctive or other affirmative relief against the Administrative Agent, any Prepetition Collateral, the DIP Agent, the DIP Lenders, or the DIP Collateral, or (iii) preventing, hindering or otherwise delaying the exercise by the Administrative Agent or the DIP Agent of any rights under this Final Order; (c) objecting to or challenging in any way the claims, liens, or interests held by or on behalf of the Administrative Agent, the DIP Agent, or the DIP Lenders; (d) asserting, commencing or prosecuting any claims or causes of action whatsoever, including, without

22

limitation, any actions under chapter 5 of the Bankruptcy Code, against the Administrative Agent, the DIP Agent, or the DIP Lenders; or (e) prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the Prepetition Liens, the Prepetition Obligations or any other rights or interest of the Administrative Agent, or the DIP Liens, the DIP Obligations or any other rights or interest of the DIP Agent or the DIP Lenders.

19.     <u>Effect of Debtor's Stipulations on Third Parties</u>.

(a)     Nothing in this Final Order shall prejudice the rights of any Committee or any other party in interest, if granted standing by the Court, pursuant to Paragraph 18 of the Second Cash Collateral Order.

(b)     Nothing in this Final Order vests or confers on any person (as defined in the Bankruptcy Code), including any Committee, standing or authority to pursue any cause of action belonging to the Debtor or its Estate, including, without limitation, any Challenge (as defined in the Second Cash Collateral Order) with respect to the DIP Loan Documents or the Prepetition Obligations.

20.     <u>Prohibition on Granting of Additional Liens and Interests</u>. No liens, claims, interests or priority status having a lien or administrative priority superior to or *pari passu* with that of the DIP Liens, the DIP Superpriority Claim, or the Adequate Protection Liens granted by this Final Order, shall be granted while any portion of the DIP Obligations or Prepetition Obligations remain outstanding, or any commitment under the DIP Loan Documents or Loan Documents remains in effect, without the prior written consent of the DIP Agent and the Administrative Agent.

21.     <u>Release</u>. The release, discharge, waivers, settlements, compromises, and agreements set forth in this Paragraph 21 shall be deemed effective upon entry of the Final Order, and subject only to the rights set forth in Paragraph 19 above and entry of the Final Order. The Debtor, on behalf of itself and its Estate (including any successor trustee or other estate representative in the Case or any Successor Case) forever and irrevocably (a) release,

23

031

discharge, and acquit the DIP Agent, the DIP Lenders, the Administrative Agent, the Prepetition Secured Parties and each of their respective former, current or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, lenders, financing sources, and predecessors in interest (collectively, the "Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every type, including, without limitation, any claims arising from any actions relating to any aspect of the relationship between the DIP Agent, the DIP Lenders, the Administrative Agent or the Prepetition Secured Parties, on the one hand, and the Debtor and its affiliates, on the other hand, including any equitable subordination claims or defenses, with respect to or relating to the Prepetition Obligations, the Loan Documents, the DIP Loan, the DIP Liens, the DIP Loan Documents, any and all claims and causes of action arising under title 11 of the United States Code, and any and all claims regarding the validity, priority, perfection or avoidability of the liens or secured claims of the Administrative Agent and the Prepetition Secured Parties; and (b) waive any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability and non-avoidability of the Prepetition Obligations.

**Remedies; Modification of Automatic Stay**

22.    Event of Default. Each of the following events, unless waived by the DIP Agent in writing, shall constitute an "Event of Default":

(a)    failure by the Debtor to make any payment (whether principal, interest, or otherwise) when such amount becomes due and payable under the DIP Note;

(b)    any breach of, or failure to achieve or adhere to a covenant, representation, warranty, or milestone under the DIP Note, the Interim DIP Order, or the Final Order, including, without limitation, failure to obtain the DIP Agent's or MGG's consent or approval as required pursuant to the DIP Note or the DIP Order; provided, however, that

24

failure to timely pay the tax claims asserted by the County shall not constitute an Event of Default;

(c) any misrepresentation or omission by the Debtor in or with respect to the DIP Loan in any respect;

(d) the Debtor's failure to comply with any requirement of the Final Order or the DIP Note;

(e) failure by the Debtor to comply with the Approved Budget, subject to the Permitted Variances, without the prior written consent of the DIP Agent;

(f) the Debtor's filing of a chapter 11 plan that does not pay, upon consummation of the plan, in full, in cash the DIP Obligations and the Prepetition Obligations;

(g) the granting, creation, or approval of any lien on Collateral *pari passu* or senior to the DIP Liens granted to the DIP Agent;

(h) dismissal of the Chapter 11 case or conversion of the Chapter 11 case to a Chapter 7 case;

(i) any material adverse change in the business of the Debtor;

(j) the appointment of a chapter 11 trustee or examiner with expanded powers or other person with expanded powers in the Chapter 11 case;

(k) the automatic stay shall be modified, reversed, revoked, or vacated in a manner that has a material adverse impact on the rights and interests of the DIP Agent without the prior written consent of the DIP Agent;

(l) reversal, vacation, or stay of the effectiveness of this Final Order.

(m) failure of any of the DIP Liens or DIP Superpriority Claims to be valid, perfected, and enforceable in all respects;

(n) the failure of the Debtor to perform any of the terms, provisions, conditions, covenants, or obligations under this Final Order or the DIP Note;

25

(o)    any reduction in the duties and responsibilities of the Debtor's Chief Restructuring Officer (the "CRO"), Jigsaw Advisors LLC, or BNP Paribas Securities Corp. without the prior written consent of the DIP Agent in its sole discretion;

(p)    any direct or indirect modification or amendment, without MGG's written consent, to that certain *Minutes of Action and Resolution Taken by Unanimous Written Consent of the Board of Directors of Spring Mountain Vineyard Inc. (f/k/a Good Wine Company) in Lieu of Special Meeting*, dated April 6, 2023.

23.    Relief from the Automatic Stay; Other Remedies.

(a)    The automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to permit (i) the Debtor to implement and perform the terms of this Final Order and (ii) the Debtor to create, and the Administrative Agent or the DIP Agent to perfect, the Adequate Protection Liens, the DIP Liens and other liens granted hereunder, as applicable. The Administrative Agent and the DIP Agent shall not be required to file UCC financing statements or other instruments with any other filing authority to perfect the liens, including the Adequate Protection Liens and the DIP Liens, granted by this Final Order or to take any other actions to perfect such liens, which shall be deemed automatically perfected by the docketing of this Final Order by the Clerk of the Court, and deemed to be effective as of the Petition Date. If, however, the Administrative Agent or the DIP Agent shall elect for any reason to file, record or serve any such financing statements or other documents with respect to such liens, then the Debtor shall execute same upon request and the filing, recording or service thereof (as the case may be) shall be deemed to have been made at the time of the commencement of this Case on the Petition Date.

(b)    The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified without further notice, application or order of the Court to the extent necessary to permit the Administrative Agent or the DIP Agent, as applicable, to perform any act authorized or permitted under or by virtue of this Final Order, the DIP Loan Documents, the

26

034

other Loan Documents, as applicable, to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the Collateral or the DIP Collateral, as applicable, including any adequate-protection replacement liens.

(c)     Upon the occurrence of an Event of Default (or the Maturity Date), (i) subject to extension of the date of such acceleration by the DIP Agent in its sole discretion, the DIP Obligations shall accelerate and become immediately due and payable and enforceable by the DIP Agent, subject to the DIP Agent's filing a motion on two (2) business days' notice seeking relief from the automatic stay pursuant to section 362 of the Bankruptcy Code, at which hearing on such motion, the Debtor shall be limited to argue only that no uncured Event of Default has occurred or is continuing, and (ii) pursuant to section 1121(d) of the Bankruptcy Code, the period during which the Debtor has the exclusive right to file a chapter 11 plan pursuant to section 1121(b) and (c) of the Bankruptcy Code shall terminate solely as it applies to MGG's right to file a chapter 11 plan, and MGG shall be permitted to file a chapter 11 plan at that time.

24.     Reversal, Modification, Vacatur, or Stay.  Pursuant to Bankruptcy Code section 364(e), any reversal, modification, vacatur, or stay of any or all of the provisions of this Final Order (other than in accordance with this Final Order) shall not affect the validity or enforceability of any Adequate Protection Liens, the Adequate Protection Superpriority Claim, the DIP Liens, the DIP Superpriority Claim, or any claim, lien, security interest, or priority authorized or created hereby with respect to any Adequate Protection Liens, the Adequate Protection Superpriority Claim, the DIP Liens, the DIP Superpriority Claim incurred prior to the effective date of such reversal, modification, vacatur, or stay. Notwithstanding any reversal, modification, vacatur, or stay (other than in accordance with this Final Order), (a) this Final Order shall govern, in all respects, any use of Cash Collateral, Adequate Protection Liens, Adequate Protection Superpriority Claim, DIP Liens, or DIP Superpriority Claim incurred by the Debtor prior to the effective date of such reversal, modification, vacatur, or stay, and (b) the Administrative Agent or the DIP Agent, as

27

applicable, shall be entitled to all the benefits and protections granted by this Final Order with respect to any such use of Cash Collateral or such Adequate Protection Liens, Adequate Protection Superpriority Claim, the DIP Liens, or the DIP Superpriority Claim incurred by the Debtor.

25. <u>No Waiver for Failure to Seek Relief</u>. The failure or delay of the Administrative Agent or the DIP Agent, as applicable, to seek relief or otherwise exercise any of its rights and remedies under this Final Order, the DIP Loan Documents, the Credit Agreement, the other Loan Documents or applicable law, as the case may be, shall not constitute a waiver of any rights hereunder, thereunder, or otherwise, by the Administrative Agent or the DIP Agent, as applicable.

26. <u>Section 507(b) Reservation</u>. Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Administrative Agent, hereunder is insufficient to compensate for any Diminution in Value during the Case. Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by the Administrative Agent that the adequate protection granted herein does in fact adequately protect the Administrative Agent against any Diminution in Value of its interests in the Prepetition Collateral (including the Cash Collateral).

**<u>Miscellaneous</u>**

27. <u>Limits on Lender Liability</u>. Subject to entry of the Final Order, nothing in this Final Order, the DIP Loan Documents, the Loan Documents, or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the Administrative Agent, the Lenders (as defined in the Second Cash Collateral Order), the DIP Agent, or the DIP Lenders, as applicable, of any liability for any claims arising from any activities by the Debtor in the operation of its businesses or in connection with the administration of this Case.

28

28. <u>Expenses and Indemnification</u>.

(a) The Debtor shall pay (i) all out-of-pocket expenses of the DIP Agent associated with the arrangement of the DIP Loan and the preparation, execution, delivery and administration of the DIP Loan Documents and any amendment or waiver with respect thereto (including the fees, disbursements and other charges of counsels and financial advisors), (b) all out-of-pocket expenses of the DIP Agent and the DIP Lenders (including the reasonable fees, disbursements and other charges of counsels and financial advisors) in connection with the enforcement of the DIP Loan Documents and (c) all other out-of-pocket expenses of the DIP Agent (including, without limitation, the ongoing monitoring of the Case, including attendance at hearings or other proceedings and the on-going review of documents filed with the Court and the preparation of any and all pleadings).

(b) The Administrative Agent, the Lenders, the DIP Agent, and the DIP Lenders (and their affiliates and their respective officers, directors, employees, partners, members, counsel, professionals, advisors, lenders, financing sources, and agents) will have no liability for, and will be indemnified and held harmless against, any losses, claims, damages, liabilities or expenses incurred in respect of the financing contemplated by the DIP Loan Documents or this Final Order or the use or the proposed use of proceeds thereof, except to the extent they are found by a final, non-appealable judgment of a court to arise from the gross negligence or willful misconduct of the indemnified party.

29. <u>Insurance</u>. At all times the Debtor shall maintain casualty and loss property insurance coverage for the Collateral on substantially the same basis as maintained prior to the Petition Date. The Debtor shall provide the Administrative Agent and the DIP Agent with proof of the foregoing within five (5) days of written demand and give the Administrative Agent or the DIP Agent reasonable access to Debtor's records in this regard.

30. <u>Marshalling</u>. Upon entry of this Final Order, in no event shall the Administrative Agent, the DIP Agent, or the DIP Lenders be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the Collateral or the DIP Collateral.

29

31. <u>552(b) "Equities of the Case" Waiver</u>. Subject to entry of the Final Order granting such relief, the Administrative Agent shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code.

32. <u>506(c) Claims</u>. Subject to entry of the Final Order granting such relief, no costs or expenses of administration which have or may be incurred in the Case shall be charged against the Administrative Agent, the DIP Agent, or the DIP Lenders, their claims or the Collateral or DIP Collateral pursuant to section 506(c) of the Bankruptcy Code without the prior written consent of the Administrative Agent or the DIP Agent, as applicable, and no such consent shall be implied from any other action, inaction or acquiescence by the Administrative Agent or the DIP Agent, as applicable.

33. <u>Binding Effect</u>. This Final Order shall be binding upon and inure to the benefit of the Administrative Agent, the DIP Agent, and the DIP Lenders, and the Debtor and its respective successors and assigns, including, without any limitation, any trustee, responsible officer, examiner, estate administrator or representative, or similar person appointed in a case for the Debtor under any chapter of the Bankruptcy Code. No rights are entered under this Final Order for the benefit of any creditor of the Debtor, any other party in interest in the Case, or any other person or entities, or any direct, indirect or incidental beneficiaries thereof.

34. <u>Reporting</u>. Debtor shall provide the Administrative Agent and the DIP Agent with all financial and other information required under the Loan Documents or the DIP Loan Documents, as applicable, and this Final Order, and such other information as the Administrative Agent or the DIP Agent may from time to time reasonably request.

35. <u>Inspection and Access to CRO</u>. The DIP Agent shall have the right, upon three (3) days written notice to the Debtor, at any time during the Debtor's normal business hours, to inspect, audit, examine, check, make copies of or extract from the non-privileged books, accounts, checks, orders, correspondence and other records of the Debtor, and to inspect, audit and monitor all or any part of the DIP Collateral, and the Debtor shall make all of same reasonably available to the Administrative Agent and its representatives, for such purposes.

30

038

Notwithstanding anything to the contrary herein, (a) the Debtor's CRO is authorized to provide confidential information to the DIP Agent and its advisors subject to all of the rights and privileges that apply to such information including that provided by Federal Rule of Evidence 408 and California Evidence Code 1152, (b) the Debtor authorizes the CRO to communicate directly with the DIP Agent regarding the matters described herein and to participate in discussions and update calls with the DIP Agent, and authorizes the CRO to provide to the DIP Agent copies of reports and other information or materials prepared or reviewed by the CRO as the DIP Agent may reasonably request from time to time subject to all of the rights and privileges that apply to such information and documents including that provided by Federal Rule of Evidence 408 and California Evidence Code 1152, and (c) the DIP Agent is the intended third-party beneficiary of the provisions in this paragraph and the other provisions of this Final Order that reference a consent, agreement or approval of the DIP Agent, and no such provisions shall be amended or otherwise modified or waived without the written consent of the DIP Agent. Notwithstanding anything to the contrary herein, neither the Debtor nor the CRO shall be required to provide the DIP Agent any communications or materials subject to attorney-client privilege.

36.   <u>Limitation of Liability</u>.  In extending credit as provided herein and in the DIP Loan Documents, or in exercising any rights or remedies as and when permitted pursuant to this Final Order the DIP Agent shall not be deemed to be in control of the operations of the Debtor. Furthermore, nothing in this Final Order shall in any way be construed or interpreted to impose or allow the imposition upon the Administrative Agent or the DIP Agent of any liability for any claims arising from the prepetition or post-petition activities of the Debtor and its affiliates (as defined in section 101(2) of the Bankruptcy Code).

37.   <u>Effectiveness</u>.  The terms and conditions of this Final Order shall be (i) effective and immediately enforceable upon its entry by the Clerk of the Court notwithstanding any potential application of Bankruptcy Rule 6004(h), 7062, 9014 or otherwise; and (ii) not be stayed absent (a) an application by a party in interest for such stay in conformance with such

31

Bankruptcy Rule 8007, and (b) a hearing upon notice to all parties that have filed a notice of appearance pursuant to Bankruptcy Rule 2002 (the "Notice Parties").

38.    Survival.  The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (a) converting the Case to a case under chapter 7 of the Bankruptcy Code, (b) dismissing the Case or Successor Case, or (c) pursuant to which this Court abstains from hearing the Case or Successor Case; provided, that in the event there is later entered any order providing for either the conversion or dismissal of the Case, such order(s) shall make express provision, among other things, for the survival and continuing force and effect of the terms and provisions of this Final Order notwithstanding such conversion or dismissal. The terms and provisions of this Final Order, as well as the Adequate Protection Superpriority Claim, the Adequate Protection Liens, and all other claims and liens granted by this Final Order, and the rights provided to the Debtor and its professionals, shall (a) continue in this or any other superseding case under the Bankruptcy Code, (b) be valid and binding on all parties in interest, including, without limitation, any Committee, chapter 11 trustee, examiner or chapter 7 trustee, and (c) continue, notwithstanding any dismissal of any Case or Successor Case (and any such order of dismissal shall so provide), and such claims and liens shall maintain their priority as provided by this Final Order.

39.    Rights Preserved.  Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the Administrative Agent to seek any other relief in respect of the Debtor (including the right to seek additional adequate protection); (b) the Administrative Agent's right to seek the payment by the Debtor of post-petition interest pursuant to section 506(b) of the Bankruptcy Code; or (c) any rights of the Administrative Agent under the Bankruptcy Code or under non-bankruptcy law, including the right to (i) request modification of the automatic stay pursuant to section 362 of the Bankruptcy Code, (ii) request dismissal of the Case or Successor Case, conversion of the Case to a case under chapter 7 of the Bankruptcy

32

Code, or appointment of a chapter 11 trustee or an examiner (with or without expanded powers), (iii) propose a chapter 11 plan or plans of reorganization, subject to section 1121 of the Bankruptcy Code, or (iv) other than as expressly set forth in this Final Order, any other rights claims or privileges (whether legal, equitable or otherwise) of the Administrative Agent are preserved. Except as expressly provided in this Final Order, all rights of the Debtor under the Bankruptcy Code, Bankruptcy Rules, and Local Rules governing practice and procedure in the United States Bankruptcy Court for the Northern District of California are preserved.

40. <u>Retention of Jurisdiction</u>. The Court has and will retain jurisdiction to enforce this Final Order in accordance with its terms and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Final Order.

41. <u>Controlling Effect of this Final Order</u>. To the extent any provision of this Final Order conflicts or is inconsistent with any provision of the Motion, the DIP Loan Documents, or the Cash Collateral Orders, the provisions of this Final Order shall control to the extent of such conflict.

**\* END OF ORDER \***

APPROVED AS TO FORM AND CONTENT:


By:_____
     Jeff J. Marwil
     Peter J. Young
     Steve Ma
     Attorneys for MGG California, LLC
     As Administrative Agent and DIP Agent

33

**Exhibit A**

**DIP Note**

**Exhibit B**

**Approved Budget**

# EXHIBIT 3

VICTOR A. SAHN (CA Bar No. 97299)
victor.sahn@gmlaw.com
**GREENSPOON MARDER LLP**
333 South Grand Avenue, 34th Floor
Los Angeles, CA 90071
Ph: (213) 626 2311
Fax: (213) 629 4520
Attorneys for Spring Mountain Vineyard, Inc
Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SANTA ROSA DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| SPRING MOUNTAIN VINEYARD INC.,<br>Debtor. | Case No. 22-10381 CN |
| | **AMENDED** FINAL ORDER: |
| | **(I) AUTHORIZING SECURED POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364; (II) EXTENDING THE TERM FOR CASH COLLATERAL USAGE PURSUANT TO EXISTING CASH COLLATERAL ORDERS TO APRIL 15, 2023, AND (III) GRANTING RELATED RELIEF** |

Upon the motion, dated December 30, 2022 (Docket Entry No. 185) (the "Motion"),[1] of Spring Mountain Vineyard, Inc., as debtor-in-possession (the "Debtor") in the above referenced chapter 11 case (the "Case"), for entry of an interim order and a final order (this "Final Order") under sections 105, 361, 362, 363(c), 363(e), 364(c), 364(d)(1) and 364(e) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy

---

[1] Capitalized terms used herein that are not otherwise defined shall have the meanings given to them in the Motion.

Code"), and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"); the Court having entered orders approving the Debtor's use of cash collateral (Docket Entry Nos. 23 (the "First Cash Collateral Order"), 76 (the "Second Cash Collateral Order"), 120 (together with Docket Entry No. 92, the "Third Cash Collateral Order"), 183 (together with Docket Entry No. 181, the "Cash Collateral Stipulation" and, collectively, with the First Cash Collateral Order, the Second Cash Collateral Order, and the Third Cash Collateral Order, the "Cash Collateral Orders")); the Court having reviewed the Motion, the Declaration of Kevin Krakora in Support of the Motion (Docket Entry No. 185) (the "Krakora Declaration"), and all other evidence and all responses to the Motion, and having entered an interim order (the "Interim DIP Order") (Docket No. 209) granting interim authority to obtain postpetition financing and use cash collateral, the relief sought by the Debtor in this Final Order includes an order:

(a)     authorizing the Debtor to obtain senior secured postpetition financing on a superpriority basis (the "DIP Loan") pursuant to the terms and conditions of this Final Order and that certain *Debtor in Possession Secured Multi-Draw Term Promissory Note* (the "DIP Note"), attached hereto as **Exhibit A**, in the aggregate, maximum principal amount of up to $4,000,000;[2]

(b)     authorizing the Debtor to execute any other documents, agreements, and instruments delivered pursuant thereto or executed or filed in connection therewith, all as may be reasonably requested by the DIP Agent (as the same may be amended, restated, supplemented, or otherwise modified from time to time, and collectively with the DIP Note, the "DIP Loan Documents");

(c)     granting the DIP Agent, for itself and for the benefit of the DIP Lenders, first priority security interest in and liens on all of the DIP Collateral (as defined below) to secure the DIP Loan and all obligations owing and outstanding

---

[2]   The "DIP Lenders" shall mean the lender parties listed in the DIP Note.  MGG California, LLC shall serve as the "DIP Agent" for and on behalf of the DIP Lenders.

2

thereunder and under the DIP Loan Documents, as applicable, the Interim Order and the Final Order, as applicable (collectively, the "DIP Obligations");

(d)    granting allowed superpriority administrative expense claims to the DIP Agent and the DIP Lenders;

(e)    authorizing the Debtor to use Cash Collateral (as defined in the Cash Collateral Orders) pursuant to the extension of the terms of the Third Cash Collateral Order, as previously extended by the Cash Collateral Stipulation;

(f)    vacating and modifying the automatic stay arising under section 362 of the Bankruptcy Code in accordance with the provisions hereof to the extent necessary to implement and effectuate the terms and provisions of this Final Order; and

(g)    granting certain related relief.

The Court having considered the Motion, the Krakora Declaration, the other filings and pleadings in the Case and the evidence submitted or adduced and the arguments of counsel made at the final hearing held on January 25, 2023 (the "Final Hearing"); and notice of the Final Hearing having been given in accordance with Bankruptcy Rules 2002, 4001, and 9014; and the Final Hearing to consider the final relief requested in the Motion having been held and concluded; and all objections, if any, to the final relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and it appearing to the Court that granting the relief set forth herein is necessary to avoid immediate and irreparable harm to the Debtor and its estate, and is otherwise fair and reasonable, in the best interests of the Debtor, its estate, and its creditors and equity holders, and essential for the continued operation of the Debtor's business; and after due deliberation and consideration, and for good and sufficient cause appearing therefor; the following terms are approved as the Final Order between the Debtor and the DIP Agent:

A.    The Debtor's Stipulations. Pursuant to (i) Paragraph A of Third Cash Collateral Order and (ii) Paragraph G of the Second Cash Collateral Order, the Debtor has

agreed to certain stipulations relating to, among other things, the amount and priority of the Administrative Agent's claim in connection with the Debtor's prepetition loan facility pursuant to the Credit Agreement (as defined in the Second Cash Collateral Order), which amount of such claim is not less than $202,315,536.14. The Debtor hereby reaffirms the stipulations contained in Paragraph A of the Final Cash Collateral Order and Paragraph G of the Second Cash Collateral Order, which are incorporated herein by reference, and the amount of the Administrative Agent's claim on account of the Prepetition Obligations (as defined in the Second Cash Collateral Order) in an amount not less than $202,315,536.14.

B. <u>Sale Process Milestones</u>. Notwithstanding anything to the contrary contained in the Cash Collateral Orders, the Debtor agrees to the following terms that will govern its sale process:

(i) <u>Stalking Horse Bid</u>: (a) The Debtor and its advisors shall use their reasonable best efforts to market the Debtor's assets and obtain a stalking horse bid on or before **February 17, 2023**; <u>provided</u>, <u>however</u>, the failure to obtain a stalking horse bid itself shall not be a breach pursuant to the DIP Loan; <u>provided</u>, <u>further</u>, that the Debtor's investment banker shall be allowed, in its sole discretion, to communicate with the DIP Agent and its advisors in connection with the marketing and sale (the "<u>Sale Process</u>") of the Debtor's vineyard property located in St. Helena, CA (the "<u>Vineyard</u>") and wine inventory, and the Chapter 11 case without the Debtor or its counsel present.

(b) The Debtor shall not decide to accept a stalking horse bid, if any, until no earlier than February 17, 2023, unless the DIP Agent otherwise consents in writing. The Debtor shall, consistent with its fiduciary duties, consider all stalking horse bids received, including a stalking horse bid submitted by MGG California, LLC, as administrative agent ("<u>MGG</u>" or the "<u>Administrative Agent</u>"), if any, which bid may be submitted on or after February 17, 2023.

4

(c) All of MGG's rights are fully reserved, including, without limitation, the filing of any objection and/or other pleadings on or after February 17, 2023 relating to the Debtor's selection of a stalking horse bid, regardless of whether the Debtor decides to accept a stalking horse bid (including a bid by MGG), or to not accept any stalking horse bid at all and proceed to a naked auction.

(ii) <u>Bid Procedures and Sale Motion</u>: (a) On or before **January 17, 2023**, the Debtor shall file a motion (the "<u>Bid Procedures Motion</u>") seeking (a) entry into a stalking horse purchase agreement, if any and providing that any stalking horse bid shall be acceptable to the DIP Agent in its sole discretion, (b) approval of bidding procedures for the sale of all or substantially all assets of the Debtor, (c) scheduling the auction, the hearing, and objection deadlines for such sale consistent with the deadlines herein, and (d) seeking related relief consistent with this Final Order, which Bid Procedures Motion and proposed order in connection therewith (the "<u>Bid Procedures Order</u>") shall each be subject to the DIP Agent's approval in its sole discretion. After the hearing on the Bid Procedures Motion, presuming that such motion is granted by the Court, the DIP Agent will support the dates provided in the milestones referenced in this Final Order going forward as long as the Debtor has otherwise complied with this Final Order.

(iii) <u>Auction</u>. The auction in connection with the sale of all or substantially all assets of the Debtor shall conclude no later than **March 24, 2023** (*i.e.*, an auction scheduled to occur over multiple days shall conclude no later than March 24, 2023). The DIP Agent's rights are fully reserved, including, without limitation, (i) to participate, including, without limitation, a credit bid of all or any portion of its claim, at the auction, and (ii) to file objections and/or other pleadings in connection with the sale hearing.

(iv) <u>Sale Hearing</u>. The hearing to consider approval of the sale of all or substantially all assets of the Debtor shall occur no later than **March 31,**

5

**2023**. The DIP Agent's rights are fully reserved, including, without limitation, the filing of objections and/or other pleadings in connection with the sale hearing. The order approving such sale, and the asset purchase agreement and all exhibits and schedules thereto in connection with such sale, shall each be in form and substance satisfactory to the DIP Agent, in its sole discretion.

(v) <u>Closing of Sale</u>. The closing of a sale approved by the Bankruptcy Court shall occur no later than **July 7, 2023.**

(vi) <u>Contract Assumption and Assignment</u>.

(a) On or before **May [~~ ~~]30,[3] 2023**, the Debtor shall file a motion to assume and assign executory contracts (the "<u>Contract Assumption Motion</u>"), which Contract Assumption Motion and proposed order in connection therewith shall each be subject to the DIP Agent's approval in its sole discretion.

(b) On or before **June 23, 2023**, the Debtor shall obtain entry of an order approving the Contract Assumption Motion.

C. <u>Necessity for Relief Requested</u>.

(i) *Postpetition Financing*. The Debtor requested from the DIP Lenders certain loans, advances, and other financial accommodations on the terms and conditions set forth in this Final Order and the DIP Loan Documents (as defined below). The DIP Lenders have indicated a willingness to provide financing to the Debtor subject to the entry of this Final Order, and conditioned upon the entry of the Final Order, including stipulations that such financing is essential to the Debtor's estate, the DIP Lenders are extending credit to the Debtor as set forth herein in good faith, and that the claims, superpriority claims, security interest, liens, rights, and other protections granted to the DIP Lenders and DIP Agent will have the protections provided in section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment,

---

[3] ~~[The date of the hearing on the motion to amend the Final DIP Order.]~~

6

reargument, or reconsideration of the Interim DIP Order, this Final Order, or any other order

(ii) *Need for Postpetition Financing*. The Debtor has an immediate need for financing to, among other things, preserve and maximize the value of the assets of the Debtor's bankruptcy estate (as defined under section 541 of the Bankruptcy Code, the "Estate") in order to maximize the recovery to all creditors of the Debtor's Estate, absent which immediate and irreparable harm will result to the Debtor, its Estate, and its stakeholders. Absent the Debtor's ability to obtain postpetition financing, the Debtor will not have sufficient available sources of working capital, including Cash Collateral, or financing and will be unable to pay its payroll and other operating expenses, or maintain its assets to the detriment of its Estate and creditors.

(iii) *No Credit Available on More Favorable Terms*. The Debtor is unable to obtain adequate unsecured credit allowable as an administrative expense under section 503 of the Bankruptcy Code, or other sufficient financing under sections 364(c) or (d) of the Bankruptcy Code, on more favorable terms than those set forth herein, based on the totality of the circumstances. A loan in the amount provided by the DIP Loan is not available to the Debtor without granting the DIP Agent, for the benefit of the DIP Lenders, superpriority claims, liens, and security interests, pursuant to sections 364(c)(1), 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, as provided in this Final Order.

(iv) *Good Faith*. The terms of the DIP Loan Documents, including, without limitation, the interest rates and fees applicable, and intangible factors relevant thereto, are more favorable to the Debtor than those available from alternative sources. The DIP Loan Documents have been negotiated in good faith and at arm's-length among the Debtor, the DIP Lenders, and the DIP Agent under no duress, and without undue influence, in respect of all actions taken by them in

7

connection with or related in any way to negotiating, implementing, documenting, or obtaining the requisite approvals of the DIP Loan. Any DIP Obligations and other financial accommodations made to the Debtor by the DIP Agent and the DIP Lenders pursuant to the DIP Loan Documents and this Final Order shall be deemed to have been extended by the DIP Agent and the DIP Lenders in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and the DIP Agent and the DIP Lenders shall be entitled to all protections afforded thereby.

(v) *Fair Consideration and Reasonably Equivalent Value*. The Debtor has received and will receive fair and reasonable consideration in exchange for access to the DIP Loan and all other financial accommodations provided under the DIP Loan Documents and this Final Order. The terms of the DIP Loan Documents and this Final Order are fair and reasonable, reflect the Debtor's exercise of prudent judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

D. <u>Good Cause</u>. Good cause has been shown for immediate entry of this Final Order. The relief requested in the Motion, at the Final Hearing, and the terms set forth herein are (i) critical to the Debtor's ability to maximize the value of the Estate, (ii) in the best interests of the Debtor and its Estate, and (iii) necessary, essential, and appropriate to avoid immediate and irreparable harm to the Debtor and its Estate, stakeholders, assets, goodwill, reputation, and employees. The ability of the Debtor to obtain sufficient working capital and liquidity under the DIP Loan is vital to the Debtor's estate and creditors. Among other things, the relief granted herein will minimize disruption of the Debtor's business and permit the Debtor to meet payroll and other expenses necessary to maximize the value of the Estate. The terms of the proposed adequate protection arrangements, as set forth in this Final Order, are fair and reasonable under the circumstances and reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties.

8

E. <u>Sections 506(c) and 552(b) Waivers</u>. In exchange for and as a material inducement to the DIP Agent and the DIP Lenders to agree to provide the DIP Loan, and in light of the agreement of the Administrative Agent and the Prepetition Secured Parties to permit their Prepetition Liens (each as defined in the Second Cash Collateral Order) to be subject to prior payment of the DIP Liens and the DIP Superpriority Claim, the DIP Agent, the DIP Lenders, the Administrative Agent, and the Prepetition Secured Parties are each entitled to (a) subject to entry of the Final Order, a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code and (b) subject to entry of the Final Order in the case of the Administrative Agent and the Prepetition Secured Parties, a waiver of the provisions of section 506(c) of the Bankruptcy Code.

Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Court at the Final Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED that:**

1. <u>Motion Granted</u>. The relief requested in the Motion and on the record at the Final Hearing is GRANTED on a final basis to the extent provided herein. Any objection to the entry of this Final Order, to the extent not withdrawn, waived or resolved, is hereby overruled on its merits. The authorization to obtain financing pursuant to this Final Order and the DIP Loan Documents shall expire, and the DIP Loan made pursuant to this Final Order and the DIP Loan Documents will mature, and together with all interest thereon and any other obligations accruing under the DIP Loan Documents, will become due and payable (unless such obligations become due and payable earlier pursuant to the terms of the DIP Loan Documents and this Final Order by way of acceleration or otherwise) on the Maturity Date (as defined below).

<u>**Authorization for DIP Financing and Use of Cash Collateral**</u>

2. <u>Authorization for DIP Financing</u>. The Debtor is hereby authorized, on a final basis, to incur DIP Obligations immediately subject to the terms of this Final Order, the

9

052

Approved Budget, and the DIP Loan Documents, in the aggregate principal amount of up to

$20,000,000.00 (inclusive of the DIP Obligations incurred pursuant to the Interim DIP Order). Except as provided under this Final Order, available financing under the DIP Loan Documents shall, on a final basis, be made to fund, strictly in accordance with the Approved Budget, the payment of accrued and budgeted administrative expenses prior to the Maturity Date, including those set forth on budgets approved by the DIP Agent pursuant to the Cash Collateral Orders.

3. <u>Authorization for Use of Cash Collateral</u>. The terms and provisions of the Third Cash Collateral Order, as extended pursuant to the Cash Collateral Stipulation, shall be further extended to the Maturity Date, and the Debtor shall be permitted to use Cash Collateral solely in accordance with and to the extent set forth in the Approved Budget during the period commencing on the date of this Final Order through the Maturity Date.

4. <u>Approved Budget</u>.

(a) The Debtor has delivered to the DIP Agent a budget that sets forth projected (i) cash receipts, (ii) cash disbursements (including ordinary course operating expenses, non-operating expenses, bankruptcy-related expenses (including professional fees of the Debtor's professionals and advisors), asset sales and any other fees and expenses), and (iii) net cash flow, on a weekly basis and line-item basis for the time period from and including April 17, 2023 through July 10, 2023, a copy of which is attached hereto as **Exhibit B** (as the same may be updated from time to time with the prior written consent of the DIP Agent in its sole discretion, the "<u>Approved Budget</u>"). The Approved Budget shall at all times be in form and substance acceptable to the DIP Agent, and approved in writing by the DIP Agent in its sole discretion. The Debtor shall provide updates to the Approved Budget and financial reporting with respect to the Debtor in accordance with the terms of this Final Order and the DIP Loan Documents and shall provide copies of updates to the Approved Budget to the U.S. Trustee and counsel for any Committee. Funds borrowed under the DIP Loan Documents and this Final Order shall be used by the Debtor strictly in

10

accordance with the DIP Loan Documents, this Final Order, and the Approved Budget, subject to such variances as are permitted by this Final Order or agreed to in writing by the DIP Agent. Each budget delivered to the DIP Agent shall be accompanied by such customary supporting documentation as reasonably requested by the DIP Agent and shall be prepared in good faith based upon assumptions the Debtor believes to be reasonable at the time of delivery. The consent of the DIP Agent to any Approved Budget shall not be construed as a commitment to provide the DIP Loan after the Maturity Date under this Final Order.

(b) Any modifications, amendments, revisions, or updates to the Approved Budget must be consented to in writing by the DIP Agent in its sole discretion prior to the implementation thereof and shall not require further notice, hearing, or court order; provided, however, that notice of any such amendment, supplement, or modification shall be provided to the U.S. Trustee and counsel to any Committee.

(c) The Debtor shall provide to the DIP Agent, at least once every four (4) weeks beginning on February 9, 2023, an updated budget on a rolling 13-week basis, which updated budget shall be subject to the DIP Agent's approval in its sole discretion. Such updated budget approved by the DIP Agent shall be the Approved Budget; provided, however, the DIP Agent may, in its sole discretion, revoke its approval of the Approved Budget, in whole or in part, at any time.

(d) The DIP Agent and the DIP Lenders (i) may assume the Debtor will comply with the Approved Budget, and (ii) shall have no duty to monitor such compliance. All advances and extensions of credit shall be based upon the terms and conditions of the DIP Loan Documents, as the same may be adjusted from time to time. Subject to the terms and conditions of this Final Order, the DIP Agent and the DIP Lenders shall have the right, but not the obligation, to extend credit independent of the bi-weekly schedule pursuant to any Approved Budget and the DIP Loan Documents; provided, however, the aggregate principal amount of the DIP Loan, including any such extended credit, shall not exceed $20,000,000,

11

054

and all such DIP Obligations shall be entitled to the benefits and protections of this Final Order.

(e) Not later than 8:00 p.m. (prevailing Eastern time) on the Thursday of each week commencing on January 16, 2023, the Debtor shall furnish to the DIP Agent a weekly report (each, a "Budget Compliance Report") that sets forth, as of the preceding Friday , for the prior week and on a rolling four-week basis (each such reporting period, a "Cash Flow Measurement Period"), the variance, if any, between the Approved Budget and the actual results for each line item set forth in the Approved Budget.

(f) The Debtor shall be deemed in compliance with the Approved Budget to the extent that (i) the actual amount of "Total Receipts" for any Cash Flow Measurement Period is not less than eighty-five percent (85%) of the amount projected in the "Total Receipts" line item of the Approved Budget for such Cash Flow Measurement Period; and (ii) the actual amount of the "Operating Disbursements" for any Cash Flow Measurement Period does not exceed one hundred fifteen percent (115%) of the amount projected in the "Operating Disbursement" line item of the Approved Budget for such Cash Flow Measurement Period (individually and collectively, the "Permitted Variances").

5.     Authority to Execute and Deliver Necessary Documents.

(a) The Debtor is authorized to negotiate, prepare, enter into, and deliver the DIP Loan Documents, including any amendments thereto and borrow money under the DIP Loan, on final basis in accordance with the terms of this Final Order and the DIP Loan Documents. The Debtor is further authorized and directed to negotiate, prepare, enter into and deliver any UCC financing statements, pledge and security agreements, mortgages or deeds of trust, or similar documents or agreements encumbering all of the DIP Collateral and securing the Debtor's obligations under the DIP Loan Documents, each as may be reasonably requested by the DIP Agent, for itself or on behalf of the DIP Lenders, or the DIP Lenders. The Prepetition Liens shall be deemed continuing liens to secure (i) the DIP Obligations, and (ii) the Prepetition Obligations in accordance with the priorities set forth in

12

this Final Order. All Loan Documents (as defined in the Second Cash Collateral Order) evidencing the grant, priority and perfection of the Prepetition Liens on the Collateral shall (x) remain in full force and effect and continue to secure the Prepetition Obligations, (y) be deemed, upon entry of this Final Order, to secure, *mutatis mutandis*, the DIP Obligations for the benefit of the DIP Agent and the DIP Lenders, and (z) inure also to the benefit of, and shall be exercisable exclusively by, the DIP Agent, until all of the DIP Obligations have been indefeasibly paid in full, at which time exclusive control shall automatically revert to the Administrative Agent.

(b) The Debtor is further authorized to (i) perform all of its obligations under the DIP Loan Documents, and such other agreements as may be required by the DIP Loan Documents to give effect to the terms of the financing provided for therein and in this Final Order, and (ii) perform all acts required under the DIP Loan Documents and this Final Order.

6. <u>Valid and Binding Obligations</u>. All obligations under the DIP Loan Documents shall constitute valid and binding obligations of the Debtor, enforceable against the Debtor, its Estate, and its successors and assigns, jointly and severally, including, without limitation, any trustee or other estate representative appointed in the Case or any Successor Case (as defined below), in accordance with their terms and the terms of this Final Order, and no obligation, payment, transfer, or grant of a lien or security interest under the DIP Loan Documents or this Final Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code) or subject to any avoidance, reduction, set off, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defense, or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity. The DIP Obligations include all loans and any other indebtedness or obligations, contingent or absolute, now existing or hereafter arising, which may from time to time be or become owing by the Debtor to the DIP

13

Lenders and the DIP Agent under the DIP Loan Documents, including, without limitation, all principal, interest, costs, fees, expenses, and other amounts owed pursuant to the DIP Loan Documents.

7.     <u>Termination of DIP Loan Documents</u>.  Notwithstanding anything in this Final Order to the contrary, the authorization to obtain financing pursuant to this Final Order and the DIP Loan Documents shall expire, and the DIP Loan made pursuant to this Final Order and the DIP Loan Documents will mature, and together with all interest thereon and any other obligations accruing under the DIP Loan Documents, will become due and payable (unless such obligations become due and payable earlier pursuant to the terms of the DIP Loan Documents and this Final Order by way of acceleration or otherwise) on the date that is the earliest of: (a) the date on which the "Release Price" pursuant to that certain Binding Settlement Agreement, dated as of April 6, 2023, is paid on or before June 28, 2023, (b) the date of consummation of the sale of all or substantially all of the assets of the Debtor pursuant to the Order (I) Authorizing and Approving the Sale of Substantially all of the Debtor's Assets and (II) Granting Related Relief (ECF No. 318), or (c) termination by the DIP Agent (acting at the direction of the DIP Lenders) following the occurrence of an Event of Default under the DIP Loan Documents (the "<u>Maturity Date</u>").

8.     <u>Authorization for Payment of DIP Financing Fees and Expenses</u>.  All fees paid and payable, and all costs and/or expenses reimbursed or reimbursable (including, without limitation, all fees, costs and expenses referred to in the DIP Loan Documents) by the Debtor to the DIP Agent are hereby approved.  The Debtor is hereby authorized and directed to pay all such fees, costs, and expenses in accordance with the terms of the DIP Loan Documents and this Final Order, without any requirement that any party or their counsel file any further application or other pleading, notice, or document with the Court for approval or payment of such fees, costs, or expenses.  Notwithstanding anything to the contrary herein, the fees, costs, and expenses of the DIP Agent and DIP Lenders, including,

14

057

without limitation, all fees referred to in the DIP Loan Documents and all attorneys' fees and expenses, shall be deemed fully earned and non-refundable as of the date of this Final Order.

9.    <u>Amendments, Consents, Waivers, and Modifications</u>.  The Debtor may enter into any amendments, consents, waivers, or modifications to the DIP Loan Documents in accordance with the terms of the DIP Loan Documents without need for further notice and hearing or any order of this Court; <u>provided</u>, <u>however</u>, that any material amendment, waiver, or modification shall require Court approval.  Copies of all amendments, waivers, modifications, whether or not material, shall be provided by the Debtor to counsel to the Committee, if any, and the U.S. Trustee.

### **DIP Liens and DIP Superpriority Claims**

10.    <u>DIP Liens & Priority</u>.

(a)    To secure the DIP Obligations and other obligations of the Debtor under the DIP Loan and DIP Loan Documents, the DIP Agent is hereby granted for the benefit of itself and the DIP Lenders, pursuant to and in accordance with sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, in each case subject to the Carve-Out, valid, enforceable, and fully perfected:

(i)    first priority liens on all property of the Debtor's estate in the Case that is not subject to valid, perfect, and non-avoidable liens as of the commencement of the Case on September 29, 2022 (the "<u>Petition Date</u>"), excluding claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code (collectively, "<u>Avoidance Actions</u>"); <u>provided</u>, <u>however</u>, upon entry of the Final Order, liens in favor of the DIP Agent and DIP Lenders shall attach to and be perfected in any proceeds of Avoidance Actions;

(ii)    junior liens on all property of the Debtor's estate in the Case, that is subject to valid, perfected, and non-avoidable liens in existence as of the Petition Date or to valid liens in existence at the time of the Petition Date that are perfected subsequent to the Petition Date as permitted by Section 546(b) of the Bankruptcy Code, other than property

15

that is subject to the existing liens that secure obligations under the agreements referred to in subsection (iii) below, which liens shall be primed by the liens to be granted to the DIP Lender as described therein;

(iii)     first priority, senior priming liens on all of the property (such property, together with the property described in subsections (i) and (ii) above, the "DIP Collateral") of the Debtor's estate in the Case (including, without limitation, inventory, accounts receivable, general intangibles, chattel paper, owned real estate, real property leaseholds, fixtures and machinery and equipment fixtures and machinery and equipment, deposit accounts, patents, copyrights, trademarks, tradenames, rights under license agreements, and other intellectual property and capital stock of subsidiaries) that is subject to the existing liens that secure the obligations of any other lenders under or in connection with any existing credit agreement and related documents and agreements and all of which existing liens (the "Primed Liens") shall be primed by and made subject and subordinate to the perfected first priority senior liens to be granted to the DIP Agent, for the benefit of itself and the DIP Lenders, which senior priming liens in favor of the DIP Agent shall also prime any liens granted after the Petition Date to provide adequate protection in respect of any of the Primed Liens (subsections (i), (ii), and (iii) collectively, the "DIP Liens").

(b)     The DIP Liens shall be effective immediately upon the entry of this Final Order and shall not at any time be made subject or subordinated to, or made *pari passu* with, any other lien, security interest or claim existing as of the Petition Date, or created under sections 363 or 364(d) of the Bankruptcy Code or otherwise, other than the Carve-Out as provided herein.

(c)     The DIP Liens shall be and hereby are deemed fully perfected liens and security interest, effective and perfected upon the date of this Final Order, without the necessity of execution by the Debtor of mortgages, security agreements, pledge agreements, financing agreements, financing statements, account control agreements, or any other agreements or instruments, such that no additional actions need by taken by the DIP Agent or

16

the DIP Lenders to perfect such interests. Any provision of any lease, loan document, easement, use agreement, proofer, covenant, license, contract, organizational document, or other instrument or agreement that requires the consent or approval of one or more landlords, licensors or other parties, or requires the payment of any fees or obligations to any governmental entity, non-governmental entity or any other person, in order for any of the Debtor to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other collateral, is and shall be deemed to be inconsistent with the provisions of the Bankruptcy Code, and shall have no force or effect with respect to the transactions granting the DIP Agent, for the benefit of itself and the DIP Lenders, a security interest in such fee, leasehold, or other interest or other collateral or the proceeds of any assignment, sale, or other transfer thereof, by the Debtor in favor of the DIP Agent, for the benefit of itself and the DIP Lenders, in accordance with the terms of the DIP Loan Documents.

11. <u>DIP Lenders' Superpriority Claim</u>. The DIP Agent, for the benefit of itself and the DIP Lenders, is hereby granted an allowed superpriority administrative expense claim (the "<u>DIP Superpriority Claim</u>") pursuant to section 364(c)(1) of the Bankruptcy Code in the Case and in any successor case(s) under the Bankruptcy Code (including any case or cases under chapter 7 of the Bankruptcy Code, the "<u>Successor Case(s)</u>") for all DIP Obligations, having priority over any and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to entry of a Final Order), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114 and any other provision of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed DIP Superpriority Claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtor and all proceeds thereof including, without limitation, any proceeds or property recovered in

17

connection with the pursuit of Avoidance Actions. Except as set forth in this Final Order, without the written consent of the DIP Agent, no other superpriority claims shall be granted or allowed in the Case or in any Successor Case and the DIP Superpriority Claim shall be senior in all respects to any superpriority claims granted in the Case, other than the Carve-Out as provided herein.

12. <u>Survival of DIP Liens and DIP Superpriority Claim</u>. The DIP Liens, DIP Superpriority Claim, and other rights and remedies granted under this Final Order to the DIP Agent, for the benefit of itself and the DIP Lenders, shall continue in this and any Successor Case(s) and shall be valid and enforceable against any trustee appointed in the Case and/or upon the dismissal of the Case or any Successor Case(s) and such liens and security interests shall maintain their priority as provided in this Final Order until all of the DIP Obligations have been indefeasibly paid in full in cash and the DIP Lenders' commitments have been terminated in accordance with the DIP Loan Documents.

13. For purposes hereof, the term "<u>Carve-Out</u>" shall mean the sum of, to the extent allowed at any time pursuant to the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules for the Northern District of California (the "<u>Local Rules</u>"), and any interim or final orders of the Court, (x) all accrued and unpaid fees, disbursements, costs, expenses (the "<u>Allowed Professional Fees</u>") incurred by persons or firms retained by the Debtor pursuant to sections 327, 328, or 363 of the Bankruptcy Code, in an aggregate amount of up to one hundred fifteen percent (115%) of the amount specified for professional fees in the Approved Budget for the period up to the Maturity Date, (y) all fees and expenses of BNP Paribas Securities Corp. to which the pre-petition and post-petition liens and claims of Debtor's lenders are subject to a carveout pursuant to paragraph 10 of the *Order Authorizing the Employment and Retention of BNP Paribas Securities Corp. as Investment Banker to the Debtor and Debtors in Possession Effective as of October 14, 2022* (Docket No. 161), and (z) all fees required to be paid to the Clerk of the Court and to the Office of the

18

United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate.

14. _Application of Proceeds of Sale._ Proceeds of the sale of Collateral shall first be applied to the DIP Obligations and then be applied to Prepetition Obligations. Any amount credit bid by the DIP Agent shall first be applied to reduce the amount of outstanding DIP Obligations and then be applied to reduce the amount of Prepetition Obligations.

15. _Post-Sale Professional Fees and Expenses._ Upon the consummation of a sale of all or substantially all of the assets of the Debtor, an amount equal to the Debtor's accrued and unpaid professional fees and expenses at such time set forth in the Approved Budget, plus the amount specified in the Approved Budget (as may be amended from time to time) under line item "Wind Down Budget Funding" (collectively, the "Wind-Down Reserve"), shall be reserved from proceeds of the DIP Agent's collateral to satisfy those obligations and to provide for the winding down of the Debtor's chapter 11 case (the "Wind-Down") pursuant to the Approved Budget; _provided, however,_ that following the satisfaction of any such obligations and the Wind-Down, any remaining balance in the Wind-Down Reserve shall immediately thereafter be distributed to the DIP Agent for application to the DIP Obligations or Prepetition Obligations if such obligations have not been satisfied in full; _provided, further,_ that the funding of the Wind-Down Reserve in accordance with the Approved Budget shall not guarantee or otherwise ensure that such funds will prove to be sufficient for the Debtor to fund the Wind-Down.

16. Nothing contained in the Motion, the DIP Note, the DIP Loan, the DIP Loan Documents, the Final Order, the Final Order (as amended), or any ancillary documents shall prime, alter, impair or otherwise modify any and all past, present or future valid, perfected, and non-avoidable liens of the Napa County Treasurer and Tax Collector (the "County") established in accordance with applicable state law. The Debtor, the DIP Agent, the Administrative Agent, and the County reserve all rights, arguments, and defenses in connection with any claim asserted by the County.

19

## Adequate Protection

17.    Adequate Protection for Prepetition Secured Parties.

(a)    Adequate Protection Liens.  As adequate protection for and to the extent of the amount of diminution in value from and after the Petition Date, of its interests in the Collateral, including, without limitation, the priming of the Prepetition Liens on and in the Collateral by the DIP Agent or the DIP Lenders (collectively, the "Diminution in Value"), the Administrative Agent, for the benefit of itself, is hereby granted (subject to the DIP Liens, and DIP Superpriority Claim), pursuant to sections 361 and 363 of the Bankruptcy Code, valid, binding, enforceable and perfected replacement and additional liens upon and security interests in all property, real or personal, whether now existing or hereafter arising and wherever located, tangible and intangible, of the Debtor, including insurance policies (and any and all claims thereunder) and the proceeds thereof, commercial tort claims, causes of action, and all substitutions, indemnification rights, all present and future intercompany debt, books and records related to the foregoing, accessions and proceeds of the foregoing, wherever located, including, without limitation, (a) insurance or other proceeds; (b) all proceeds of leased real property; (c) the proceeds of any avoidance actions brought pursuant to Chapter 5 of the Bankruptcy Code or applicable state law equivalents; and (d) the proceeds of the Debtor's rights under section 506(c) and 550 of the Bankruptcy Code, and all Collateral that was not otherwise subject to valid, perfected, enforceable, and unavoidable liens on the Petition Date (collectively, to the extent acquired after the Petition Date, the "Post-Petition Collateral" and, together with the Prepetition Collateral and the Cash Collateral, the "Collateral") to the extent of any Diminution in Value (the "Adequate Protection Liens").  The Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any asset of the Debtor and all rights of payment of all other parties, but shall be subordinate to and subject to the DIP Liens and/or payment of any DIP Obligations on account thereof. Other than as set forth herein, including with respect to the DIP Liens and/or payment of any DIP Obligations, the Adequate Protection Liens shall

20

063

not be made subject to or *pari passu* with any lien or with any lien or security interest previously or hereinafter granted in the Case or any Successor Case. The Adequate Protection Liens shall be valid, binding and enforceable against any trustee or other estate representative appointed in the Case, in any Successor Case, and/or upon the dismissal of any Case or Successor Case.

(b)     Adequate Protection Fees.  As Adequate Protection for and to the extent of the amount of diminution in value from and after the Petition Date, of the DIP Agent's and the DIP Lenders' interests in the Collateral, including, without limitation, the priming of the Prepetition Liens on and in the Collateral by the DIP Agent or the DIP Lenders, the Debtor is authorized to reimburse, within ten (10) calendar days of written demand (together with reasonably detailed supporting documentation, which may be redacted to protect privileged or confidential information), the Administrative Agent and the Lenders for reasonable and documented out-of-pocket fees and expenses incurred in connection with efforts to restructure the Debtor, any event of default under the Credit Agreement, and any exercise of remedies in respect thereof (including reasonable documented out-of-pocket prepetition and postpetition fees, charges, and disbursements of legal counsel, financial advisors, and third-party appraisers and consultants advising the Administrative Agent or the Lender incurred in connection with such party's participation in the Chapter 11 Case).

(c)     Cash Management.  The Debtor shall maintain its cash management arrangements in a manner consistent with that described in the applicable "first day" order.

(d)     Adequate Protection Superpriority Claim. As adequate protection for the Diminution in Value of its interest in the Prepetition Collateral (as defined in the Second Cash Collateral Order), the Administrative Agent is hereby granted as and to the extent provided by sections 503 and 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in the Case and any successor bankruptcy case, subject in all respects to the Carve-Out (the "Adequate Protection Superpriority Claim"). The Adequate

21

064

Protection Superpriority Claim shall have priority over all administrative expense claims, including administrative expenses of the kinds specified in or ordered pursuant to sections 503(b) and 507(b) of the Bankruptcy Code, and unsecured claims against the Debtor and the Estate now existing or hereafter arising, of any kind or nature whatsoever; provided, however, the Adequate Protection Superpriority Claim shall be subordinate to and subject to the DIP Superpriority Claim.

(e) <u>Disposition of Collateral</u>. The Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral outside the ordinary course of business without (i) prior written notice (which writing may be e-mail) to the DIP Agent and the Administrative Agent of such disposition and the terms thereof, and (ii) in each case, an order of this Court.

(f) <u>Further Adequate Protection Reservation</u>. Notwithstanding anything to the contrary set forth herein, the adequate protection granted by this Final Order is without prejudice to the Administrative Agent's rights to seek additional adequate protections from this Court.

<b><u>Restriction on Use of Funds</u></b>

18. <u>Limitation on Use of Collateral</u>. No proceeds of the DIP Loan, any DIP Collateral, Collateral, or Cash Collateral may be used in connection with or to finance in any way: (a) obtaining postpetition loans or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code or otherwise, other than from the DIP Agent or DIP Lenders, unless the proceeds of such loans or accommodations are or will be sufficient, and will be used, to indefeasibly pay in full in cash all DIP Obligations and Prepetition Obligations, (b) any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) for the payment of any services rendered by the professionals retained by the Debtor or Committee, or other representative of the Estate, in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the

22

result of which would be to obtain, any order, judgment, determination, declaration or similar relief invalidating, setting aside, avoiding or subordinating, in whole or in part, any Prepetition Liens, Prepetition Obligations, DIP Obligations, or DIP Liens (ii) for monetary, injunctive or other affirmative relief against the Administrative Agent, any Prepetition Collateral, the DIP Agent, the DIP Lenders, or the DIP Collateral, or (iii) preventing, hindering or otherwise delaying the exercise by the Administrative Agent or the DIP Agent of any rights under this Final Order; (c) objecting to or challenging in any way the claims, liens, or interests held by or on behalf of the Administrative Agent, the DIP Agent, or the DIP Lenders; (d) asserting, commencing or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against the Administrative Agent, the DIP Agent, or the DIP Lenders; or (e) prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the Prepetition Liens, the Prepetition Obligations or any other rights or interest of the Administrative Agent, or the DIP Liens, the DIP Obligations or any other rights or interest of the DIP Agent or the DIP Lenders.

19. <u>Effect of Debtor's Stipulations on Third Parties</u>.

(a) Nothing in this Final Order shall prejudice the rights of any Committee or any other party in interest, if granted standing by the Court, pursuant to Paragraph 18 of the Second Cash Collateral Order.

(b) Nothing in this Final Order vests or confers on any person (as defined in the Bankruptcy Code), including any Committee, standing or authority to pursue any cause of action belonging to the Debtor or its Estate, including, without limitation, any Challenge (as defined in the Second Cash Collateral Order) with respect to the DIP Loan Documents or the Prepetition Obligations.

20. <u>Prohibition on Granting of Additional Liens and Interests</u>. No liens, claims, interests or priority status having a lien or administrative priority superior to or *pari passu*

23

with that of the DIP Liens, the DIP Superpriority Claim, or the Adequate Protection Liens granted by this Final Order, shall be granted while any portion of the DIP Obligations or Prepetition Obligations remain outstanding, or any commitment under the DIP Loan Documents or Loan Documents remains in effect, without the prior written consent of the DIP Agent and the Administrative Agent.

21.    Release. The release, discharge, waivers, settlements, compromises, and agreements set forth in this Paragraph 22 shall be deemed effective upon entry of the Final Order, and subject only to the rights set forth in Paragraph 20 above and entry of the Final Order. The Debtor, on behalf of itself and its Estate (including any successor trustee or other estate representative in the Case or any Successor Case) forever and irrevocably (a) release, discharge, and acquit the DIP Agent, the DIP Lenders, the Administrative Agent, the Prepetition Secured Parties and each of their respective former, current or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, lenders, financing sources, and predecessors in interest (collectively, the "Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every type, including, without limitation, any claims arising from any actions relating to any aspect of the relationship between the DIP Agent, the DIP Lenders, the Administrative Agent or the Prepetition Secured Parties, on the one hand, and the Debtor and its affiliates, on the other hand, including any equitable subordination claims or defenses, with respect to or relating to the Prepetition Obligations, the Loan Documents, the DIP Loan, the DIP Liens, the DIP Loan Documents, any and all claims and causes of action arising under title 11 of the United States Code, and any and all claims regarding the validity, priority, perfection or avoidability of the liens or secured claims of the Administrative Agent and the Prepetition Secured Parties; and (b) waive any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the

24

067

validity, perfection, priority, enforceability and non-avoidability of the Prepetition Obligations.

**Remedies; Modification of Automatic Stay**

22.     <u>Event of Default</u>.  Each of the following events, unless waived by the DIP Agent in writing, shall constitute an "<u>Event of Default</u>":

(a)     failure by the Debtor to make any payment (whether principal, interest, or otherwise) when such amount becomes due and payable under the DIP Note;

(b)     any breach of, or failure to achieve or adhere to a covenant, representation, warranty, or milestone under the DIP Note, the Interim DIP Order, or the Final Order, including, without limitation, failure to obtain the DIP Agent's or MGG's consent or approval as required pursuant to the DIP Note or the DIP Order; <u>provided</u>, <u>however</u>, that failure to timely pay the tax claims asserted by the County shall not constitute an Event of Default;

(c)     any misrepresentation or omission by the Debtor in or with respect to the DIP Loan in any respect;

(d)     the Debtor's failure to comply with any requirement of the Final Order or the DIP Note;

(e)     failure by the Debtor to comply with the Approved Budget, subject to the Permitted Variances, without the prior written consent of the DIP Agent;

(f)     the Debtor's filing of a chapter 11 plan that does not pay, upon consummation of the plan, in full, in cash the DIP Obligations and the Prepetition Obligations;

(g)     the granting, creation, or approval of any lien on Collateral *pari passu* or senior to the DIP Liens granted to the DIP Agent;

(h)     dismissal of the Chapter 11 case or conversion of the Chapter 11 case to a Chapter 7 case;

(i)     any material adverse change in the business of the Debtor;

25

(j)     the appointment of a chapter 11 trustee or examiner with expanded powers or other person with expanded powers in the Chapter 11 case;

(k)     the automatic stay shall be modified, reversed, revoked, or vacated in a manner that has a material adverse impact on the rights and interests of the DIP Agent without the prior written consent of the DIP Agent;

(l)     reversal, vacation, or stay of the effectiveness of this Final Order.

(m)     failure of any of the DIP Liens or DIP Superpriority Claims to be valid, perfected, and enforceable in all respects;

(n)     the failure of the Debtor to perform any of the terms, provisions, conditions, covenants, or obligations under this Final Order or the DIP Note;

(o)     any reduction in the duties and responsibilities of the Debtor's Chief Restructuring Officer (the "CRO"), Jigsaw Advisors LLC, or BNP Paribas Securities Corp. without the prior written consent of the DIP Agent in its sole discretion;

(p)     any direct or indirect modification or amendment, without MGG's written consent, to that certain *Minutes of Action and Resolution Taken by Unanimous Written Consent of the Board of Directors of Spring Mountain Vineyard Inc. (f/k/a Good Wine Company) in Lieu of Special Meeting*, dated April 6, 2023.

23.     Relief from the Automatic Stay; Other Remedies.

(a)     The automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to permit (i) the Debtor to implement and perform the terms of this Final Order and (ii) the Debtor to create, and the Administrative Agent or the DIP Agent to perfect, the Adequate Protection Liens, the DIP Liens and other liens granted hereunder, as applicable. The Administrative Agent and the DIP Agent shall not be required to file UCC financing statements or other instruments with any other filing authority to perfect the liens, including the Adequate Protection Liens and the DIP Liens, granted by this Final Order or to take any other actions to perfect such liens, which shall be deemed automatically perfected by the docketing of this Final Order by the Clerk of the Court, and deemed to be effective as

26

069

of the Petition Date. If, however, the Administrative Agent or the DIP Agent shall elect for any reason to file, record or serve any such financing statements or other documents with respect to such liens, then the Debtor shall execute same upon request and the filing, recording or service thereof (as the case may be) shall be deemed to have been made at the time of the commencement of this Case on the Petition Date.

(b)  The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified without further notice, application or order of the Court to the extent necessary to permit the Administrative Agent or the DIP Agent, as applicable, to perform any act authorized or permitted under or by virtue of this Final Order, the DIP Loan Documents, the other Loan Documents, as applicable, to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the Collateral or the DIP Collateral, as applicable, including any adequate-protection replacement liens.

(c)  Upon the occurrence of an Event of Default (or the Maturity Date), (i) subject to extension of the date of such acceleration by the DIP Agent in its sole discretion, the DIP Obligations shall accelerate and become immediately due and payable and enforceable by the DIP Agent, subject to the DIP Agent's filing a motion on two (2) business days' notice seeking relief from the automatic stay pursuant to section 362 of the Bankruptcy Code, at which hearing on such motion, the Debtor shall be limited to argue only that no uncured Event of Default has occurred or is continuing, and (ii) pursuant to section 1121(d) of the Bankruptcy Code, the period during which the Debtor has the exclusive right to file a chapter 11 plan pursuant to section 1121(b) and (c) of the Bankruptcy Code shall terminate solely as it applies to MGG's right to file a chapter 11 plan, and MGG shall be permitted to file a chapter 11 plan at that time.

24.  Reversal, Modification, Vacatur, or Stay.  Pursuant to Bankruptcy Code section 364(e), any reversal, modification, vacatur, or stay of any or all of the provisions of this Final Order (other than in accordance with this Final Order) shall not affect the validity

27

or enforceability of any Adequate Protection Liens, the Adequate Protection Superpriority Claim, the DIP Liens, the DIP Superpriority Claim, or any claim, lien, security interest, or priority authorized or created hereby with respect to any Adequate Protection Liens, the Adequate Protection Superpriority Claim, the DIP Liens, the DIP Superpriority Claim incurred prior to the effective date of such reversal, modification, vacatur, or stay. Notwithstanding any reversal, modification, vacatur, or stay (other than in accordance with this Final Order), (a) this Final Order shall govern, in all respects, any use of Cash Collateral, Adequate Protection Liens, Adequate Protection Superpriority Claim, DIP Liens, or DIP Superpriority Claim incurred by the Debtor prior to the effective date of such reversal, modification, vacatur, or stay, and (b) the Administrative Agent or the DIP Agent, as applicable, shall be entitled to all the benefits and protections granted by this Final Order with respect to any such use of Cash Collateral or such Adequate Protection Liens, Adequate Protection Superpriority Claim, the DIP Liens, or the DIP Superpriority Claim incurred by the Debtor.

25. <u>No Waiver for Failure to Seek Relief</u>. The failure or delay of the Administrative Agent or the DIP Agent, as applicable, to seek relief or otherwise exercise any of its rights and remedies under this Final Order, the DIP Loan Documents, the Credit Agreement, the other Loan Documents or applicable law, as the case may be, shall not constitute a waiver of any rights hereunder, thereunder, or otherwise, by the Administrative Agent or the DIP Agent, as applicable.

26. <u>Section 507(b) Reservation</u>. Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Administrative Agent, hereunder is insufficient to compensate for any Diminution in Value during the Case. Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by the Administrative Agent that the adequate protection granted herein does in fact adequately protect the Administrative Agent against

28

071

any Diminution in Value of its interests in the Prepetition Collateral (including the Cash Collateral).

**Miscellaneous**

27.    <u>Limits on Lender Liability</u>.  Subject to entry of the Final Order, nothing in this Final Order, the DIP Loan Documents, the Loan Documents, or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the Administrative Agent, the Lenders (as defined in the Second Cash Collateral Order), the DIP Agent, or the DIP Lenders, as applicable, of any liability for any claims arising from any activities by the Debtor in the operation of its businesses or in connection with the administration of this Case.

28.    <u>Expenses and Indemnification</u>.

(a)    The Debtor shall pay (i) all out-of-pocket expenses of the DIP Agent associated with the arrangement of the DIP Loan and the preparation, execution, delivery and administration of the DIP Loan Documents and any amendment or waiver with respect thereto (including the fees, disbursements and other charges of counsels and financial advisors), (b) all out-of-pocket expenses of the DIP Agent and the DIP Lenders (including the reasonable fees, disbursements and other charges of counsels and financial advisors) in connection with the enforcement of the DIP Loan Documents and (c) all other out-of-pocket expenses of the DIP Agent (including, without limitation, the ongoing monitoring of the Case, including attendance at hearings or other proceedings and the on-going review of documents filed with the Court and the preparation of any and all pleadings).

(b)    The Administrative Agent, the Lenders, the DIP Agent, and the DIP Lenders (and their affiliates and their respective officers, directors, employees, partners, members, counsel, professionals, advisors, lenders, financing sources, and agents) will have no liability for, and will be indemnified and held harmless against, any losses, claims, damages, liabilities or expenses incurred in respect of the financing contemplated by the DIP Loan Documents or this Final Order or the use or the proposed use of proceeds thereof,

29

except to the extent they are found by a final, non-appealable judgment of a court to arise from the gross negligence or willful misconduct of the indemnified party.

29. _Insurance._ At all times the Debtor shall maintain casualty and loss property insurance coverage for the Collateral on substantially the same basis as maintained prior to the Petition Date. The Debtor shall provide the Administrative Agent and the DIP Agent with proof of the foregoing within five (5) days of written demand and give the Administrative Agent or the DIP Agent reasonable access to Debtor's records in this regard.

30. _Marshalling._ Upon entry of this Final Order, in no event shall the Administrative Agent, the DIP Agent, or the DIP Lenders be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the Collateral or the DIP Collateral.

31. _552(b) "Equities of the Case" Waiver._ Subject to entry of the Final Order granting such relief, the Administrative Agent shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code.

32. _506(c) Claims._ Subject to entry of the Final Order granting such relief, no costs or expenses of administration which have or may be incurred in the Case shall be charged against the Administrative Agent, the DIP Agent, or the DIP Lenders, their claims or the Collateral or DIP Collateral pursuant to section 506(c) of the Bankruptcy Code without the prior written consent of the Administrative Agent or the DIP Agent, as applicable, and no such consent shall be implied from any other action, inaction or acquiescence by the Administrative Agent or the DIP Agent, as applicable.

33. _Binding Effect._ This Final Order shall be binding upon and inure to the benefit of the Administrative Agent, the DIP Agent, and the DIP Lenders, and the Debtor and its respective successors and assigns, including, without any limitation, any trustee, responsible officer, examiner, estate administrator or representative, or similar person appointed in a case for the Debtor under any chapter of the Bankruptcy Code. No rights are entered under this Final Order for the benefit of any creditor of the Debtor, any other party in interest in the Case, or any other person or entities, or any direct, indirect or incidental beneficiaries thereof.

30

073

34. <u>Reporting</u>. Debtor shall provide the Administrative Agent and the DIP Agent with all financial and other information required under the Loan Documents or the DIP Loan Documents, as applicable, and this Final Order, and such other information as the Administrative Agent or the DIP Agent may from time to time reasonably request.

35. <u>Inspection and Access to CRO</u>. The DIP Agent shall have the right, upon three (3) days written notice to the Debtor, at any time during the Debtor's normal business hours, to inspect, audit, examine, check, make copies of or extract from the non-privileged books, accounts, checks, orders, correspondence and other records of the Debtor, and to inspect, audit and monitor all or any part of the DIP Collateral, and the Debtor shall make all of same reasonably available to the Administrative Agent and its representatives, for such purposes. Notwithstanding anything to the contrary herein, (a) the Debtor's CRO is authorized to provide confidential information to the DIP Agent and its advisors subject to all of the rights and privileges that apply to such information including that provided by Federal Rule of Evidence 408 and California Evidence Code 1152, (b) the Debtor authorizes the CRO to communicate directly with the DIP Agent regarding the matters described herein and to participate in discussions and update calls with the DIP Agent, and authorizes the CRO to provide to the DIP Agent copies of reports and other information or materials prepared or reviewed by the CRO as the DIP Agent may reasonably request from time to time subject to all of the rights and privileges that apply to such information and documents including that provided by Federal Rule of Evidence 408 and California Evidence Code 1152, and (c) the DIP Agent is the intended third-party beneficiary of the provisions in this paragraph and the other provisions of this Final Order that reference a consent, agreement or approval of the DIP Agent, and no such provisions shall be amended or otherwise modified or waived without the written consent of the DIP Agent. Notwithstanding anything to the contrary herein, neither the Debtor nor the CRO shall be required to provide the DIP Agent any communications or materials subject to attorney-client privilege.

31

074

36. <u>Limitation of Liability</u>. In extending credit as provided herein and in the DIP Loan Documents, or in exercising any rights or remedies as and when permitted pursuant to this Final Order the DIP Agent shall not be deemed to be in control of the operations of the Debtor. Furthermore, nothing in this Final Order shall in any way be construed or interpreted to impose or allow the imposition upon the Administrative Agent or the DIP Agent of any liability for any claims arising from the prepetition or post-petition activities of the Debtor and its affiliates (as defined in section 101(2) of the Bankruptcy Code).

37. <u>Effectiveness</u>. The terms and conditions of this Final Order shall be (i) effective and immediately enforceable upon its entry by the Clerk of the Court notwithstanding any potential application of Bankruptcy Rule 6004(h), 7062, 9014 or otherwise; and (ii) not be stayed absent (a) an application by a party in interest for such stay in conformance with such Bankruptcy Rule 8007, and (b) a hearing upon notice to all parties that have filed a notice of appearance pursuant to Bankruptcy Rule 2002 (the "<u>Notice Parties</u>").

38. <u>Survival</u>. The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (a) converting the Case to a case under chapter 7 of the Bankruptcy Code, (b) dismissing the Case or Successor Case, or (c) pursuant to which this Court abstains from hearing the Case or Successor Case; <u>provided</u>, <u>that</u> in the event there is later entered any order providing for either the conversion or dismissal of the Case, such order(s) shall make express provision, among other things, for the survival and continuing force and effect of the terms and provisions of this Final Order notwithstanding such conversion or dismissal. The terms and provisions of this Final Order, as well as the Adequate Protection Superpriority Claim, the Adequate Protection Liens, and all other claims and liens granted by this Final Order, and the rights provided to the Debtor and its professionals, shall (a) continue in this or any other superseding case under the Bankruptcy Code, (b) be valid and binding on all parties in interest, including, without limitation, any Committee, chapter 11 trustee, examiner or chapter 7 trustee, and (c)

32

continue, notwithstanding any dismissal of any Case or Successor Case (and any such order of dismissal shall so provide), and such claims and liens shall maintain their priority as provided by this Final Order.

39. <u>Rights Preserved</u>. Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the Administrative Agent to seek any other relief in respect of the Debtor (including the right to seek additional adequate protection); (b) the Administrative Agent's right to seek the payment by the Debtor of post-petition interest pursuant to section 506(b) of the Bankruptcy Code; or (c) any rights of the Administrative Agent under the Bankruptcy Code or under non-bankruptcy law, including the right to (i) request modification of the automatic stay pursuant to section 362 of the Bankruptcy Code, (ii) request dismissal of the Case or Successor Case, conversion of the Case to a case under chapter 7 of the Bankruptcy Code, or appointment of a chapter 11 trustee or an examiner (with or without expanded powers), (iii) propose a chapter 11 plan or plans of reorganization, subject to section 1121 of the Bankruptcy Code, or (iv) other than as expressly set forth in this Final Order, any other rights claims or privileges (whether legal, equitable or otherwise) of the Administrative Agent are preserved. Except as expressly provided in this Final Order, all rights of the Debtor under the Bankruptcy Code, Bankruptcy Rules, and Local Rules governing practice and procedure in the United States Bankruptcy Court for the Northern District of California are preserved.

40. <u>Retention of Jurisdiction</u>. The Court has and will retain jurisdiction to enforce this Final Order in accordance with its terms and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Final Order.

41. <u>Controlling Effect of this Final Order</u>. To the extent any provision of this Final Order conflicts or is inconsistent with any provision of the Motion, the DIP Loan Documents, or the Cash Collateral Orders, the provisions of this Final Order shall control to the extent of such conflict.

**\* END OF ORDER \***

APPROVED AS TO FORM AND CONTENT:

By:_____
      Jeff J. Marwil
      Peter J. Young
      Steve Ma
      Attorneys for MGG California, LLC
      As Administrative Agent and DIP Agent

34

077

**Exhibit A**

**DIP Note**

**Exhibit B**

**Approved Budget**

079

Document comparison by Workshare Compare on Wednesday, May 24, 2023
10:12:34 AM

| Input: | |
|---|---|
| Document 1 ID | file://\\na.proskauer.com\firm\Home\CA3\2621\Desktop\SMV - Amended Final DIP Order.docx |
| Description | SMV - Amended Final DIP Order |
| Document 2 ID | iManage://filesitex.proskauer.com/CURRENT/137823853/3 |
| Description | #137823853v3<filesitex.proskauer.com> - SMV - Amended Final DIP Order |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 3 |
| Deletions | 4 |
| Moved from | 0 |
| Moved to | 0 |
| Style changes | 0 |
| Format changes | 0 |
| Total changes | 7 |

# EXHIBIT 4

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SANTA ROSA DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| SPRING MOUNTAIN VINEYARD INC., | Case No. 22-10381 CN |
| Debtor. | RE: Docket Entry No. 224 |
| | **ORDER AMENDING FINAL ORDER: (I) AUTHORIZING SECURED POSTPETITION FINANCING PURSUANT TO 11 U.S.C. § 364; (II) EXTENDING THE TERM FOR CASH COLLATERAL USAGE PURSUANT TO EXISTING CASH COLLATERAL ORDERS TO APRIL 15, 2023, AND (III) GRANTING RELATED RELIEF** |

Upon the motion, dated May ~~12~~15, 2023 (Docket Entry No. ~~——~~383) (the "Motion"),[1] of

Spring Mountain Vineyard Inc., as debtor in possession (the "Debtor") in the above-referenced

chapter 11 case (the "Case"), for entry of an order (this "Order") under sections 105, 361, 362,

363(c), 363(e), 364(c), 364(d)(1) and 364(e) of title 11 of the United States Code, 11 U.S.C. §§

101-1532 (as amended, the "Bankruptcy Code"), and Rules 2002, 4001, 6004 and 9014 of the

Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"); the Court having

entered the *Final Order: (I) Authorizing Secured Postpetition Financing Pursuant to 11 U.S.C. §*

---

[1] Capitalized terms used herein that are not otherwise defined shall have the meanings given to them in the Motion or the Final DIP Order (defined below), as applicable.

1

*364; (II) Extending the Term for Cash Collateral Usage Pursuant to Existing Cash Collateral Orders to April 15, 2023, and (III) Granting Related Relief* (Docket Entry No. 224) (the "<u>Final DIP Order</u>"); the Court having reviewed and considered the Motion and all other evidence and all responses to the Motion, all responses to the Motion, and the evidence submitted or adduced and the arguments of counsel made at the hearing held on May ~~[____]~~30, 2023 (the "<u>Hearing</u>"); and notice of the Hearing having been given in accordance with Bankruptcy Rules 2002 and 9014; and the Hearing to consider the relief requested in the Motion having been held and concluded; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and it appearing to the Court that granting the relief set forth herein is necessary to avoid immediate and irreparable harm to the Debtor and its estate, and is otherwise fair and reasonable, in the best interests of the Debtor, its estate, and its creditors and equity holders, and essential for the continued operation of the Debtor's business; and after due deliberation and consideration, and for good and sufficient cause appearing therefor; the Debtor and the DIP Agent have agreed upon the following terms:

    A.   <u>The Debtor's Stipulations</u>.   Pursuant to Paragraphs 9 and 41 of the Final DIP Order, the Debtor and the DIP Agent agree and acknowledge that the DIP Note is deemed amended to provide for and reflect the amendments in this Order, including, without limitation, the Extended Maturity Date and Upsized DIP Obligations (each as defined below).

    Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Court at the Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED that:**

    1.   <u>Motion Granted</u>.  The relief requested in the Motion and on the record at the Hearing is GRANTED to the extent provided herein.  Any objection to the entry of this Order, to the extent not withdrawn, waived, or resolved, is hereby overruled on its merits.  The effectiveness of this Order and the amendments to the Final DIP Order specified herein are conditioned upon, and MGG shall not be obligated to make any advances pursuant to the Final DIP Order (as amended pursuant to this Order), unless all documents with respect to the

2

consummation of the sale of all or substantially all of the assets of the Debtor to MGG pursuant to the *Order (I) Authorizing and Approving the Sale of Substantially all of the Debtor's Assets and (II) Granting Related Relief* (ECF No. 318) are executed, and all exhibits and schedules thereto are competed, and delivered to MGG on or before the commencement of the Hearing. Such documents include, without limitation, the Asset Purchase Agreement, the License Transfer and Transition Services Agreement, the Bill of Sale and Assumption Agreement, the Intellectual Property Assignment and Assumption Agreement, the Grant Deed, and any other documents reasonably requested by MGG.

2.    Paragraph B(v) of the Final DIP Order is hereby amended to read as follows:

> "Closing of Sale.    The closing of a sale approved by the Bankruptcy Court shall occur no later than ***July 7, 2023***."

3.    Paragraph B of the Final DIP Order is hereby amended to add new section B(vi), which shall read as follows:

> "Contract Assumption and Assignment.
>
> (a) On or before **May [    ]30,[2] 2023**, the Debtor shall file a motion to assume and assign executory contracts (the "Contract Assumption Motion"), which Contract Assumption Motion and proposed order in connection therewith shall each be subject to the DIP Agent's approval in its sole discretion.
>
> (b) On or before **June 23, 2023**, the Debtor shall obtain entry of an order approving the Contract Assumption Motion."

4.    Paragraph 2 of the Final DIP Order is hereby amended to increase the aggregate principal amount of the DIP Obligations to $20,000,000.00 (the "Upsized DIP Obligations") and read as follows:

---

[2] [The date of the hearing on the motion to amend the Final DIP Order.]

3

> "<u>Authorization for DIP Financing</u>. The Debtor is hereby authorized … to incur DIP Obligations … in the aggregate principal amount of up to $*20,000,000.00* …"

The Upsized DIP Obligations are inclusive of the amounts borrowed pursuant to the Final DIP Order and the *Interim Order: (I) Authorizing Secured Postpetition Financing Pursuant to 11 U.S.C. § 364; (II) Extending the Term for Cash Collateral Usage Pursuant to Existing Cash Collateral Orders to April 15, 2023, and (III) Granting Related Relief* (Docket Entry No. 209).

     5.    Paragraph 4(a) of the Final DIP Order is hereby amended to read as follows and Exhibit B thereto is replaced with the Approved Budget attached hereto as **<u>Exhibit A</u>**:

> "… (iii) net cash flow, on a weekly basis and line-item basis for the time period from and including *April 17*, 2023 through *July 10*, 2023, a copy of which is attached hereto as **<u>Exhibit B</u>** (as the same may be updated from time to time with the prior written consent of the DIP Agent in its sole discretion, the "<u>Approved Budget</u>")."

     6.    Paragraph 4(c) of the Final DIP Order is hereby amended to read as follows:

> "… Such updated budget approved by the DIP Agent shall be the Approved Budget*; <u>provided</u>, <u>however</u>, the DIP Agent may, in its sole discretion, revoke its approval of the Approved Budget, in whole or in part, at any time*."

     7.    The reference to "$4,000,000" in Paragraph 4(d) is hereby replaced with "$20,000,000".

     8.    Paragraph 7 of the Final DIP Order is hereby amended to modify the termination of the DIP Loan Documents and extend the Maturity Date (the "<u>Extended Maturity Date</u>") and read as follows:

> "<u>Termination of DIP Loan Documents</u>. … on the date that is the earliest of: (a) *the date on which the "Release Price" pursuant to that certain Binding Settlement Agreement, dated as of April 6, 2023, is paid on or before June 28, 2023, (b) the date of consummation of the sale of all or substantially all of the assets of the Debtor pursuant to the Order (I) Authorizing and Approving the Sale of Substantially all of the Debtor's Assets and (II) Granting Related Relief (ECF No. 318)*, or (c) termination by the DIP Agent (acting at the direction of the DIP Lenders) following the occurrence of an Event of Default under the DIP Loan Documents (the "<u>Maturity Date</u>")."

4

9. Paragraph 15 of the Final DIP Order is hereby amended to read as follows:

"<u>Post-Sale Professional Fees and Expenses</u>. Upon the consummation of a sale of all or substantially all of the assets of the Debtor, an amount equal to the Debtor's accrued and unpaid professional fees and expenses at such time set forth in the Approved Budget, plus *the amount specified in the Approved Budget (as may be amended from time to time) under line item "Wind Down Budget Funding" (collectively, the "<u>Wind-Down Reserve</u>")*, shall be reserved from proceeds of the DIP Agent's collateral to satisfy those obligations *and to provide for the winding down of the Debtor's chapter 11 case (the "<u>Wind-Down</u>") pursuant to the Approved Budget*; <u>provided</u>, <u>however</u>, that following the satisfaction of any such obligations *and the Wind-Down*, any remaining balance *in the Wind-Down Reserve* shall immediately thereafter be distributed to the DIP Agent for application to the DIP Obligations or Prepetition Obligations if such obligations have not been satisfied in full*; <u>provided</u>, <u>further</u>, that the funding of the Wind-Down Reserve in accordance with the Approved Budget shall not guarantee or otherwise ensure that such funds will prove to be sufficient for the Debtor to fund the Wind-Down*."

10. Paragraph 16 of the Final DIP Order is hereby amended to read as follows:

Nothing contained in the Motion, the DIP Note, the DIP Loan, the DIP Loan Documents, the Final Order, *the Final Order (as amended),* or any ancillary documents shall prime, alter, impair or otherwise modify any and all past, present or future valid, perfected, and non-avoidable liens of the Napa County Treasurer and Tax Collector (the "County") established in accordance with applicable state law. The Debtor, the DIP Agent, the Administrative Agent, and the County reserve all rights, arguments, and defenses in connection with any claim asserted by the County.

11. ~~10.~~ Paragraph 22 of the Final DIP Order is hereby amended to add new section 22(p), which shall read as follows:

"any direct or indirect modification or amendment, without MGG's written consent, to that certain *Minutes of Action and Resolution Taken by Unanimous Written Consent of the Board of Directors of Spring Mountain Vineyard Inc. (f/k/a Good Wine Company) in Lieu of Special Meeting*, dated April 6, 2023."

12. ~~11.~~ Solely for reference purposes only, attached hereto as **Exhibit B** is a copy of the Final DIP Order reflecting the amendments contained in this Order.

5

13. 12. This Court has and will retain jurisdiction to enforce this Order and the Final DIP Order (as amended pursuant to this Order) in accordance with its terms and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Order and the Final DIP Order (as amended pursuant to this Order).

**\*\* END OF ORDER \*\***

6

087

Document comparison by Workshare Compare on Wednesday, May 24, 2023 10:10:38 AM

| Input: | |
|---|---|
| Document 1 ID | file://\\na.proskauer.com\firm\Home\CA3\2621\Desktop\SMV - Proposed Order Amending Final DIP Order.docx |
| Description | SMV - Proposed Order Amending Final DIP Order |
| Document 2 ID | iManage://filesitex.proskauer.com/CURRENT/137570689/7 |
| Description | #137570689v7<filesitex.proskauer.com> - SMV - Proposed Order Amending Final DIP Order |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 11 |
| Deletions | 10 |
| Moved from | 0 |
| Moved to | 0 |
| Style changes | 0 |
| Format changes | 0 |
| Total changes | 21 |

089

# EXHIBIT 5

# SPRING MOUNTAIN VINEYARD
## WEEKLY CASH FLOWS
($000s)

| Weeks start on Mondays (W/O) | 29 Actual 4/17/2023 | 30 Forecast 4/24/2023 | 31 Forecast 5/1/2023 | 32 Forecast 5/8/2023 | 33 Forecast 5/15/2023 | 34 Forecast 5/22/2023 | 35 Forecast 5/29/2023 | 36 Forecast 6/5/2023 | 37 Forecast 6/12/2023 | 38 Forecast 6/19/2023 | 39 Forecast 6/26/2023 | 40 Forecast 7/3/2023 | 41 Forecast 7/10/2023 | TOTAL 13 Week DIP EXT. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Operating Receipts** | | | | | | | | | | | | | | |
| US Wholesale | 89.7 | 38.8 | 12.0 | 32.9 | 43.8 | 38.5 | 10.8 | 16.0 | 4.7 | 18.1 | 5.4 | 24.6 | 3.0 | 338.3 |
| Export | 17.0 | 34.1 | 21.5 | 36.6 | 24.7 | 37.6 | 32.4 | 54.4 | 18.4 | 26.8 | 15.0 | 8.1 | 19.9 | 346.5 |
| Tasting Room (POS, Web, Events) | | | | | | | | | | | | | | |
| Club | | | | | 39.0 | | 125.0 | | | | | | | 164.0 |
| Other (Bulk, Grape, Misc.) | | | | | | | | | | | | | | |
| **Total Operating Receipts** | 106.7 | 72.9 | 33.5 | 69.5 | 107.5 | 76.1 | 168.2 | 70.4 | 23.1 | 44.9 | 20.4 | 32.7 | 22.9 | 848.8 |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| Total Payroll | 9.9 | 123.4 | 22.5 | 139.5 | 42.5 | 149.5 | 2.5 | 159.5 | 42.5 | 144.5 | 152.5 | 164.5 | 46.0 | 1,199.3 |
| Total Farm & Vineyards | 5.1 | 14.0 | 20.0 | 15.0 | 11.0 | 22.0 | 12.0 | 14.0 | 13.0 | 14.0 | 14.0 | 15.0 | 14.0 | 183.1 |
| Total Winemaking & Production | 0.8 | 35.9 | 12.0 | 4.0 | 6.0 | 6.0 | 27.0 | 27.0 | 6.0 | 52.0 | 4.0 | 6.0 | 7.0 | 193.7 |
| Elite (Sales Brokers) | | 1.7 | 35.0 | | | | | 15.0 | | | | | 25.0 | 76.7 |
| Licensing/Fees/DTC Sales Tax | | 1.4 | 35.0 | | | | | 35.0 | | 5.0 | | 30.0 | | 106.4 |
| Warehouses/Shipping | | 30.3 | 10.0 | 5.0 | 15.0 | 15.0 | 25.0 | | | 10.0 | 10.0 | 20.0 | | 140.3 |
| Misc. | 10.2 | 2.0 | 55.0 | 5.0 | 2.0 | 5.0 | 15.0 | 5.0 | 5.0 | 15.0 | 5.0 | 25.0 | 5.0 | 154.2 |
| **Total Sales & Shipping** | 10.2 | 35.4 | 135.0 | 10.0 | 17.0 | 20.0 | 40.0 | 55.0 | 5.0 | 30.0 | 15.0 | 75.0 | 30.0 | 477.6 |
| Utilities | 1.6 | 3.5 | 5.0 | 3.0 | 2.0 | 3.0 | 5.0 | 3.0 | 2.0 | 3.0 | 5.0 | 3.0 | 3.0 | 42.1 |
| Book Keeping Services | 23.8 | | 25.0 | | 20.0 | | 15.0 | | 15.0 | | 10.0 | | 10.0 | 118.8 |
| Property Tax | | | | | | | | | | | | | 418.7 | 418.7 |
| Corporate Insurance/Financing | | | 200.0 | | | | | 100.0 | | | | 250.0 | | 550.0 |
| Other/Misc. | 1.8 | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 | 37.8 |
| **Total Corporate/Overhead** | 27.2 | 6.5 | 233.0 | 6.0 | 25.0 | 6.0 | 23.0 | 106.0 | 20.0 | 6.0 | 18.0 | 256.0 | 434.7 | 1,167.4 |
| **Total Operating Disbursements** | 53.3 | 215.1 | 422.5 | 174.5 | 101.5 | 203.5 | 104.5 | 361.5 | 86.5 | 246.5 | 203.5 | 516.5 | 531.7 | 3,221.0 |
| **Net Operating Cash Flows** | 53.4 | (142.2) | (389.0) | (105.0) | 6.0 | (127.4) | 63.7 | (291.1) | (63.4) | (201.6) | (183.1) | (483.8) | (508.8) | (2,372.2) |
| Capital Expenditures/Repairs-ST | | | 25.0 | | 100.0 | 100.0 | 475.0 | 500.0 | 395.0 | 250.0 | 264.0 | 250.0 | | 2,359.0 |
| Capital Expenditures/Repairs-LT | | | | | | | 200.0 | 200.0 | 1,000.0 | 1,000.0 | 1,000.0 | 1,000.0 | 948.0 | 5,348.0 |
| BNP Paribas | | 20.0 | | | 15.0 | | | | 10.0 | | | 1,500.0 | | 1,545.0 |
| Greenspoon & Marder | | 189.2 | 222.2 | | 175.0 | | | | | 175.0 | | | | 761.4 |
| Special Counsel - CTSW | | 7.4 | | | 35.0 | | | | | 35.0 | | | | 77.4 |
| Special Counsel - Stanzler | | 12.0 | | | 15.0 | 2.0 | | | | 15.0 | | | | 44.0 |
| Special Counsel - Abbott-Kindermann | | | | 40.0 | 15.0 | 5.0 | | | | 15.0 | | | | 75.0 |
| Getzler Henrich | | 133.7 | | | 125.0 | | | | | 125.0 | | | | 383.7 |
| Jigsaw Advisors | | 86.4 | 107.3 | | 90.0 | | | | | 90.0 | | | | 373.8 |
| Accrued Professional Fees | | | | | | | | | | | | 1,000.0 | | 1,000.0 |
| Appraisal Firm - Enotrias | | | | | | 1.2 | | | | | | | | 1.2 |
| Accounting Firm - Dal Poggetto | | | | 25.0 | 25.0 | | | | | 25.0 | | | | 75.0 |
| Tax Advisory Firm - TBD | | | | | | | | | | | 100.0 | | | 100.0 |
| US Trustee Fees | 29.9 | | | | | | | | | | | | 173.0 | 202.9 |
| Utility/CA Sales Tax Req Deposits | | | | | | | | | | | | | | |
| Wind Down Budget Funding | | | | | | | | | | | | 500.0 | | 500.0 |
| Lender Professional Fees | | | | | | | | | | | | | | |
| Interest / Principal | | | | | | | | | | | | 4,500.0 | | 4,500.0 |
| **Total Non-Operating Disbursements** | 29.9 | 448.8 | 354.5 | 65.0 | 595.0 | 108.2 | 675.0 | 700.0 | 1,405.0 | 1,730.0 | 1,364.0 | 8,750.0 | 1,121.0 | 17,346.4 |
| **Total Operating & Non-Operating Disb.** | 83.2 | 663.9 | 777.0 | 239.5 | 696.5 | 311.7 | 779.5 | 1,061.5 | 1,491.5 | 1,976.5 | 1,567.5 | 9,266.5 | 1,652.7 | 20,567.5 |
| **Net Cash Flows** | 23.5 | (591.0) | (743.5) | (170.0) | (589.0) | (235.6) | (611.3) | (991.1) | (1,468.4) | (1,931.6) | (1,547.1) | (9,233.8) | (1,629.8) | (19,718.6) |

Case: 22-10381    Doc# 394    Filed: 05/26/23    Entered: 05/26/23 19:53:46    Page 95 of 102

**SPRING MOUNTAIN VINEYARD**
**WEEKLY CASH FLOWS**
**($000s)**

| | 29 Actual 4/17/2023 | 30 Forecast 4/24/2023 | 31 Forecast 5/1/2023 | 32 Forecast 5/8/2023 | 33 Forecast 5/15/2023 | 34 Forecast 5/22/2023 | 35 Forecast 5/29/2023 | 36 Forecast 6/5/2023 | 37 Forecast 6/12/2023 | 38 Forecast 6/19/2023 | 39 Forecast 6/26/2023 | 40 Forecast 7/3/2023 | 41 Forecast 7/10/2023 | TOTAL 13 Week DIP EXT. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Weeks start on Mondays (W/O) | | | | | | | | | | | | | | |
| Beg Bank Balance (Est.) | 2,659.4 | 2,682.9 | 2,092.0 | 1,348.4 | 1,178.4 | 589.4 | 353.8 | 742.5 | 751.4 | 1,283.0 | 1,351.4 | 804.3 | 670.5 | 2,659.4 |
| Net Cash Flows | 23.5 | (591.0) | (743.5) | (170.0) | (589.0) | (235.6) | (611.3) | (991.1) | (1,468.4) | (1,931.6) | (1,547.1) | (9,233.8) | (1,629.8) | (19,718.6) |
| Owner Advances | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| MGG DIP Advances | - | - | - | - | - | - | 1,000.0 | 1,000.0 | 2,000.0 | 2,000.0 | 1,000.0 | 9,100.0 | 1,000.0 | 17,100.0 |
| MGG DIP (Repayments) | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| End Bank Balance (Est.) | 2,682.9 | 2,092.0 | 1,348.4 | 1,178.4 | 589.4 | 353.8 | 742.5 | 751.4 | 1,283.0 | 1,351.4 | 804.3 | 670.5 | 40.8 | 40.8 |
| Beg DIP Loan Balance | 2,800.0 | 2,800.0 | 2,800.0 | 2,800.0 | 2,800.0 | 2,800.0 | 2,800.0 | 3,800.0 | 4,800.0 | 6,800.0 | 8,800.0 | 9,800.0 | 18,900.0 | 2,800.0 |
| MGG DIP Advances | - | - | - | - | - | - | 1,000.0 | 1,000.0 | 2,000.0 | 2,000.0 | 1,000.0 | 9,100.0 | 1,000.0 | 17,100.0 |
| MGG DIP (Repayments) | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| End DIP Loan Balance | 2,800.0 | 2,800.0 | 2,800.0 | 2,800.0 | 2,800.0 | 2,800.0 | 3,800.0 | 4,800.0 | 6,800.0 | 8,800.0 | 9,800.0 | 18,900.0 | 19,900.0 | 19,900.0 |
| Beg Loan Balance (Est.) * | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 |
| MGG Advances | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| MGG (Repayments) | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| End Loan Balance (Est.) * | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 | 196,681.8 |

*Note: MGG Loan balances are estimated and subject to change and reconciliation.*

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 333 South Grand Avenue, Suite 3400, Los Angeles, CA 90071.

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF (1) PROPOSED ORDER AMENDING FINAL DIP FINANCING ORDER; (2) AMENDED FINAL DIP FINANCING ORDER; (3) REDLINE OF AMENDED FINAL DIP FINANCING ORDER; (4) REDLINE OF PROPOSED ORDER AMENDING FINAL DIP FINANCING ORDER; (5) DIP FINANCING BUDGET** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) May 26, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) May 26, 2023, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) May 26, 2023 , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 26, 2023 | Patricia Dillamar | *Patricia Dillamar* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

PMD 54364505v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                **F 9013-3.1.PROOF.SERVICE**

ADDITIONAL SERVICE INFORMATION (if needed):

## 1. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")

Steve Burnell on behalf of Debtor Spring Mountain Vineyard Inc.
steve.burnell@gmlaw.com

Dean C. Burnick on behalf of Interested Party Mt. Hawley Insurance Company **(RSN)**
dcb@proughlaw.com

Jacquelyn H. Choi on behalf of Creditor Napa County Treasurer-Tax Collector **(RSN)**

Louis J. Cisz  lcisz@nixonpeabody.com on behalf of Don Yannias **(RSN)**

Trevor Ross Fehr on behalf of U.S. Trustee Office of the U.S. Trustee / SR
trevor.fehr@usdoj.gov

Mark S Horoupian on behalf of Debtor Spring Mountain Vineyard Inc.
mark.horoupian@gmlaw.com, cheryl.caldwell@gmlaw.com

Thomas Philip Kelly, III on behalf of Creditor Central Valley Builders Supply Inc. **(RSN)**
tomkelly@sonic.net

Steve Ma on behalf of Creditor MGG California, LLC
sma@proskauer.com

Jeff J. Marwil on behalf of Creditor MGG California, LLC
jmarwil@proskauer.com

Randall P. Mroczynski on behalf of Creditor Ford Motor Credit Company LLC **(RSN)**
rmroczynski@cookseylaw.com

Office of the U.S. Trustee / SR
USTPRegion17.SF.ECF@usdoj.gov

Elvina Rofael on behalf of U.S. Trustee Office of the U.S. Trustee / SR
elvina.rofael@usdoj.gov, Katina.Umpierre@usdoj.gov,GemMil.Langit@usdoj.gov

Victor A. Sahn on behalf of Debtor Spring Mountain Vineyard Inc.
victor.sahn@gmlaw.com, Karen.Files@gmlaw.com

Michael St. James on behalf of Interested Party Arcade Capital, LLC **(RSN)**
ecf@stjames-law.com

John G. Warner on behalf of Creditor Francois Freres USA Inc. **(RSN)**
warnerwest@aol.com

Ashley M. Weringa on behalf of Creditor MGG California, LLC
aweringa@proskauer.com

Steven F. Werth on behalf of Debtor Spring Mountain Vineyard Inc.
steven.werth@gmlaw.com, Patricia.Dillamar@gmlaw.com

Peter J Young on behalf of Creditor MGG California, LLC
pyoung@proskauer.com

PMD 54364505v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                          **F 9013-3.1.PROOF.SERVICE**

Case: 22-10381    Doc# 394    Filed: 05/26/23    Entered: 05/26/23 19:52:46    Page 98 of
102

**SERVED BY EMAIL OR UNITED STATES MAIL**

**Debtor's Financial Advisor And Chief
Restructuring Officer**
Attn:  Kevin A. Krakora, Managing Director
Getzler Henrich & Associates LLC, a Hilco Global
Company
150 S. Wacker Drive | 24th Floor
Chicago, IL 60606
Tel:   (312) 283-8071
email:  kkrakora@getzlerhenrich.com
Peter.Ekman@jigsawadvisors.com

**Secured Creditor**
Imperial PFS aka IPFS
49 Stevenson St. #127
San Francisco, CA 94105-2909
(877) 687-9826
Lisa Chandler, Litigation and Bankruptcy
Recovery Manager
lisa.chandler@ipfs.com

**Largest Unsecured Creditors**
Allen Wine Group LLP
Attn:  Timothy Allen, CPA - Managing Partner
120 Stony Point Road,  #230
Santa Rosa, CA 95401
(707) 528-3860
tim@allenwine.com
Tim@allengroupllp.com
Brent Garrison
Brent@allengroupllp.com

Bartelt Engineering
Attn:  Paul Bartelt
1303 Jefferson St #200B
Napa, CA 94559
(707) 258-1301
paulb@barteltengineering.com

Belkorp AG, LLC
Attn:  Laura Correll, Accounting
2413 Crows Landing Rd
Modesto, CA 95358
(209) 205-3706
ar@belkorpag.com
AR@BelkorpAg.com
ldunhouse@belkorpag.com

Brown's Auto Parts
Attn Dan Beltramai, Owner
1218 Main St.
Saint Helena, CA 94574-1901
(707) 963-3638
brownsauto169@gmail.com

Castino Restaurant Equipment And Supply
50 Utility Ct.
Rohnert Park, CA 94928-1659
(707) 585-3566
sales@castinosolutions.com

Central Valley
Administrative Offices
1804 Soscol Ave., #205
Napa, CA 94559
Attn:  Gerry Cruz, Accounting Mgr.
(707) 261-7900
gerryc@central-valley.com

Chubb Group of Insurance Companies
P.O. Box 777-1630
Philadelphia, PA 19175-0001
(800) 372-4822
**Returned – Box Closed**

Conway Beverage Group, LLC
Dba:  Elite Brands
Elite Brokerage
3238 Old Heather Rd.
San Diego, CA 92111-7716
Attn:  Mr. Jay Conway
Jayconway@elitebrands.biz

Famille Sylvain
855 Bordeaux Way #239
Napa, CA 94558-7549
(707) 492-3308
contactusa@famillesylvain.com

Tonnellerie Sylvain

PMD 54364505v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                    F 9013-3.1.PROOF.SERVICE

Case: 22-10381     Doc# 394     Filed: 05/26/23     Entered: 05/26/23 19:53:46     Page 99 of
102

855 Bordeaux Way
Napa, CA 94558
(707) 492-3308
contactusa@famillesylvain.com

Francois Freres USA Inc.
1403 Jefferson St.
Napa, CA 94559-1708
(707) 294-2204
office@francoisfreresusa.com
julie@francoisfreresusa.com
accounting@francoisfreresusa.com
assistant@francoisfreresusa.com

G3 Enterprises Inc.
(Tapp Labels)
580 Gateway Dr.
Napa, CA 94558
(707) 252-8300
jeff.licht@tapplabel.com

Napa County Treasurer
1195 3rd St. #108
Napa, CA 94559-3035
(707) 253-4314
Dawnette.martindale@countyofnapa.org
Napa County Treasurer-Tax Collector
Bob.Minahen@countyofnapa.org
Napa County Attorney
Wendy.dau@countyofnapa.org

Napa Ford Lincoln
170 Soscol Ave.
Napa, CA 94559
(707) 255-2580
**Via U.S. Mail**

Ford Motor Credit Company
National Bankruptcy Service Center
P O Box 62180
Colorado Springs CO 80962-2180
(800) 955-8232
fcffald@ford.com

Napa Valley Petroleum
P.O. Box 2670
Napa, CA 94558-0528
(707) 252-6888
kamh@napavalleypetroleum.com

Napa Valley Vintners Association
P.O. Box 141
Saint Helena, CA 94574
(707) 963-3388
Attn: Steve Tradewell, CFO
stradewell@napavinters.com

Ramondin U.S.A. Inc.
Tammy Frandsen
Finance Manager
541 Technology Way
Napa, CA 94558
(707) 944-2277
tfrandsen@ramondin.com

Stanzler Law Group
Attn: Jordan S. Stanzler
390 Bridge Pkwy #220
Redwood City, CA 94065
(650) 739-0200
Jstanzler@stanzlerlawgroup.com

Wilbur Ellis Company LLC
c/o Registered Agent Solutions Inc.
720 14th St.
Sacramento, CA 95814-1905
(707) 963-3495
KZavala@wilburellis.com
MHAMMETT@wilburellis.com
SPRIM@wilburellis.com

Wine Service Cooperative
1150 Dowdell Lane
Saint Helena, CA 94574
Attn: Steven Tamburelli
General Manager
Tel: (707) 963-9474
Fax: (707) 963 9359
Steve@wineservicecoop.com

Bright Event Rental
22674 Broadway # A
Sonoma, CA 95476

PMD 54364505v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                           F 9013-3.1.PROOF.SERVICE

(707) 940-6060
Attn:  Michelle Minsk, Acctg.
accountsreceivable@bright.com

CNH Capital
Dept. 1801104747435
P.O. Box 78004
Phoenix, AZ 85062
Attn:  Steve Wright, Bankruptcy Dept.
(717) 355-5790
**Via U.S. Mail**

CNH Industrial Capital America, LLC
PO Box 71264
Philadelphia, PA 19176-6264
Attn:  John Chiavacci, HRBK Analyst
(717) 355-5913
john.chiavacci@cnhind.com

ETS Laboratories
c/o Marjorie Burns 899 Adams Street #A
Saint Helena, CA 94574-1160
(707) 963-4806
Attn Accounts Receivable Team
ar@etslabs.com
accounts@etslabs.com

Matheson Tri-Gas Inc.
Dept. LA 23793
Pasadena, CA 91185
(707) 963-4307
**Via U.S. Mail**

Sovos Compliance LLC
200 Ballardvale St. Bldg 14th Fl.
Wilmington, MA 01887
(866) 890-3970
lori.bradshaw@sovos.com

Wine Technology America
aka Wine Technology, Inc.
474 Walten Way
aka Vinwizard
Windsor, CA 95492
(707) 703-5919
Attn:  Kelly Graves, Director
(720) 284-2059
kelly@vinwizard.us

Wine Technology America Inc.
c/o Lloyd Matthews, Agent
1899 Larkspur St.
Yountville, CA 94599-1237
**Via U.S. Mail**

Wyatt Irrigation Co.
4407 Solano Ave.
Napa, CA 94558
(707) 578-3747
Lynne Colombano, Acct Receivable Mgr.
lynne@wyattsupply.com

Wyatt Irrigation Co.
c/o CSC - Lawyers Incorporing Service
2710 Gateway Oaks Dr. #150N
Sacramento, CA 95833-3502
**Via U.S. Mail**

**Request for Special Notice**
Alcohol & Tobacco Tax & Trade Bureau
U.S. Department of the Treasury
Attn:  Daniel Paralta, Senior Counsel,
Field Operations
1436 2nd Street #531
Napa, CA 94559
(513) 684-2509
(202) 453-2412
Daniel.Peralta@ttb.gov

Dept. of the Treasury, Alcoholic Beverage Control
Attn: Tracie Parker, Lic. Rep. I
50 D Street Room 130
Santa Rosa, CA. 95404
Phone: (707) 576-2165
Fax: (707) 638-9537
tracie.parker@abc.ca.gov

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346
(800) 973-0424
**Via U.S. Mail**

California Department of Tax and Fee
Administration
Special Operations Bankruptcy Team MIC: 74
P.O. Box 942879
Sacramento, CA 94279-0074
(800) 400-7115

PMD 54364505v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012     Case: 22-10381     Doc# 394     Filed: 05/26/23     Entered: 05/26/23 19:53:46     Page 101
of 102                                                                              F 9013-3.1.PROOF.SERVICE

**Via U.S. Mail**

Franchise Tax Board
Attn: Vivian Ho
Bankruptcy Section, MS A-340
P.O. Box 2952
Sacramento, CA 95812-2952
916-845-7069
Vivian.Ho@ftb.ca.gov

Employment Development Department
Bankrupty Unit-MIC 92E
P.O. Box 826880
Sacramento, CA 94280-0001
**Via U.S. Mail**

Employment Development Department
Attn: MIC 53
800 Capital Mall
Sacramento, CA 95814
**Via U.S. Mail**

Piper/Sandler
1251 Avenue of the Americas, 39th Floor
New York, N.Y. 10020
Attn.: Mr. Leonard Sheer and Mr. Mike Dillahunt
Leonard.sheer@psc.com
Michael.dillahunt@psc.com
**Via U.S. Mail & Email**

Will Densberger
Pavi Micheli
Engel & Volkers
1111 Main Street Suite A,
St. Helena CA 94574
Will@nvwineestates.com
pavimicheli@icloud.com
**Via U.S. Mail & Email**

**Attorneys for Don Yannias**
Louis J. Cisz, III, Esq. NIXON PEABODY LLP
One Embarcadero Center, 32nd Floor
San Francisco, CA 94111
Tel: 415-984-8320 Fax: 415-984-8300
Email: lcisz@nixonpeabody.com

Richard J. Frey NIXON PEABODY LLP
300 South Grand Avenue, Suite 4100
Los Angeles, CA 9007

Tel: (213) 629-6000 Fax: (213) 629-6001
Email: rfrey@nixonpeabody.com

Office of the United States Trustee
Attn: Phillip J. Shine
280 South First Street, Rm. 268
San Jose, CA 95113
Email: phillip.shine@usdoj.gov

**Courtesy Email**
Jay B. Spievack, Esq.
Cohen Tauber Spievack & Wagner P.C.
420 Lexington Ave., Suite 2400
New York NY 10170-2499
(212) 381-8735
email: jspievack@ctswlaw.com

Joseph Vann, Esq.
Cohen Tauber Spievack & Wagner P.C.
420 Lexington Ave., Suite 2400
New York NY 10170-2499
(212) 381-8724
email: jvann@ctswlaw.com

John C. Vaughan
Newmark Knight Frank
4675 MacArthur Court, Suite 1600
Newport Beach, CA 92660
(808) 797-0148
email: john.vaughan@nmrk.com

Mark Kasowitz: MKasowitz@kasowitz.com

Gavin D. Schryver: GSchryver@kasowitz.com

Attorneys for Napa County Treasurer
Jacquelyn H. Choi
jacquelyn.choi@rimonlaw.com,
docketing@rimonlaw.com

Luckey McDowell
luckey.mcdowell@shearman.com

Jonathan Dunworth
jonathan.dunworth@shearman.com

Attorneys for Creditor Francois Freres USA Inc.
John G. Warner
warnerwest@aol.com

PMD 54364505v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

Case: 22-10381    Doc# 394    Filed: 05/26/23    Entered: 05/26/23 19:53:46    Page 102 of 102

F 9013-3.1.PROOF.SERVICE