Victor A. Sahn (CA Bar No. 97299)
   victor.sahn@gmlaw.com
Steve Burnell (CA Bar No. 286557)
   steve.burnell@gmlaw.com
**GREENSPOON MARDER LLP**
1875 Century Park East, Suite 1900
Los Angeles, CA 90067
Telephone: 213.626.2311
Facsimile: 954.771.9264

Attorneys for Debtor in Possession,
Spring Mountain Vineyard Inc.

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SANTA ROSA DIVISION

| | |
|---|---|
| In re | Case No. 1:22-bk-10381 CN |
| SPRING MOUNTAIN VINEYARD INC., | Chapter 11 |
| Debtor. | **OMNIBUS MOTION TO ASSUME AND ASSIGN EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO 11 U.S.C. § 365** |
| | [Memorandum of Points and Authorities, Request for Judicial Notice, and Declaration of Kevin A. Krakora Filed Concurrently Herewith] |
| | [Appendix of Exhibits Filed Separately] |
| | **Hearing Information:** |
| | Date:     June 23, 2023 |
| | Time:     11:00 a.m. |
| | Place:     Courtroom 215 |
| |                 1300 Clay Street |
| |                 Oakland, CA 94612 |

## OMNIBUS MOTION

**TO THE HONORABLE CHARLES NOVACK, UNITED STATES BANKRUPTCY JUDGE, MGG CALIFORNIA LLC, THE TWENTY LARGEST UNSECURED CREDITORS, THE OFFICE OF THE UNITED STATES TRUSTEE, AND PARTIES ENTITLED TO NOTICE:**

Spring Mountain Vineyard Inc., the debtor in possession in the above-captioned case ("Debtor"), hereby moves for an order of the Court (the "Motion") authorizing Debtor to assume and assign following executory contracts and unexpired leases to MGG California, LLC ("MGG"), to be effective only upon the Sale closing on the Closing Date (defined below):

**PARTIES RECEIVING THIS MOTION SHOULD LOCATE THEIR NAMES AND THEIR CONTRACTS OR LEASES BELOW**

| Contract No. | Party | Contract/Lease | Date of Contract/Lease | Assumption Terms | Assignment Terms |
|---|---|---|---|---|---|
| 1 | Allen Wine Group, LLP | Accounting Engagement Agreement | 09/07/22 | Assumption of the contract to occur "as-is"; no defaults under the contract, so no cure costs required. | Contract will be assigned to MGG; adequate assurance of future performance provided in support of the Motion |
| 2 | Ballande & Meneret | Ballande & Meneret Agreement | 08/05/22 | Assumption of the contract to occur "as-is"; no defaults under the contract, so no cure costs required. | Contract will be assigned to MGG; adequate assurance of future performance provided in support of the Motion |
| 3 | Cab West LLC | Lease for 2020 Ford F150 | 08/17/22 | Assumption of the contract to occur "as-is"; no defaults under the contract, so no cure costs required. | Contract will be assigned to MGG; adequate assurance of future performance provided in support of the Motion |

SB 54558763v5

| | | | | Assumption of the contract to occur "as-is"; no defaults under the contract, so no cure costs required. | Contract will be assigned to MGG; adequate assurance of future performance provided in support of the Motion |
|---|---|---|---|---|---|
| 4 | Cab West LLC | Lease for 2021 Ford F150 | 04/14/22 | Assumption of the contract to occur "as-is"; no defaults under the contract, so no cure costs required. | Contract will be assigned to MGG; adequate assurance of future performance provided in support of the Motion |
| 5 | Cab West LLC | Lease for 2021 Ford Expedition | 03/18/22 | Assumption of the contract to occur "as-is"; no defaults under the contract, so no cure costs required. | Contract will be assigned to MGG; adequate assurance of future performance provided in support of the Motion |
| 6 | Conway Beverages Group, LLC dba Elite Brands, a California limited liability company | Brokerage Agreement | 03/03/17 | Assumption of the contract to occur "as-is"; no defaults under the contract, so no cure costs required. | Contract will be assigned to MGG; adequate assurance of future performance provided in support of the Motion |
| 7 | CQ&A Consulting | Compliance Services Agreement | 07/01/14 | Assumption of the contract to occur "as-is"; no defaults under the contract, so no cure costs required. | Contract will be assigned to MGG; adequate assurance of future performance provided in support of the Motion |
| 8 | East West Wine Trading, Inc. | Marketing Agreement | 05/16/17 | Assumption of the contract to occur "as-is"; no defaults under the contract, so no cure costs required. | Contract will be assigned to MGG; adequate assurance of future performance provided in support of the Motion |

SB 54558763v5

| | | | | | |
|---|---|---|---|---|---|
| 9 | Missing Link Networks, Inc. (d/b/a eCellars) | Point-of-Sale Agreement | | Assumption of the contract to occur "as-is"; no defaults under the contract, so no cure costs required. | Contract will be assigned to MGG; adequate assurance of future performance provided in support of the Motion |
| 10 | My Enologist, Inc. | Subscription Services Agreement | 01/10/11 | Assumption of the contract to occur "as-is"; no defaults under the contract, so no cure costs required. | Contract will be assigned to MGG; adequate assurance of future performance provided in support of the Motion |
| 11 | Vinetrace Winery Software | Vinetrace Subscription Agreement | 05/31/18 | Assumption of the contract to occur "as-is"; no defaults under the contract, so no cure costs required. | Contract will be assigned to MGG; adequate assurance of future performance provided in support of the Motion |
| 12 | VinWizard | Winery Operations System Agreement | | Assumption of the contract to occur "as-is"; no defaults under the contract, so no cure costs required. | Contract will be assigned to MGG; adequate assurance of future performance provided in support of the Motion |

(collectively, the "Assumed Contracts"). MGG reserves its rights to remove any of the Assumed Contracts prior to Closing.

Pursuant to the *Order (I) Authorizing And Approving The Sale Of Substantially All Of The Debtor's Assets And (II) Granting Related Relief* (the "Sale Order") [Docket no. 318] entered on April 7, 2023, the Court approved the asset purchase agreement between Debtor and MGG (the "APA") in which substantially all of Debtor's assets were sold to MGG, after auction (the "Sale"). MGG's credit bid totaling $42 Million was the highest and best offer received, and the Sale must

close by no later than July 7, 2022 (the "Closing Date"). One of the assets acquired by MGG included all of Debtor's rights under the Assumed Contracts.

In addition, MGG and Debtor's ultimate beneficial owner, Mr. Jacqui Safra ("Mr. Safra") entered into a Binding Settlement Agreement dated as of April 6, 2023 (the "Safra Settlement Agreement"). Debtor is not a party to the Safra Settlement Agreement. It is Debtor's understanding, however, that under the Safra Settlement Agreement, that Mr. Safra has until June 28, 2023 to pay a "Release Price" to MGG ("Release Price Date"). If this deadline is met, the Sale Order may be vacated by request from Debtor with the written consent of MGG. As such, in the event Mr. Safra pays the Release Price, the order granting the Motion and approving assumption and assignment of the Assumed Contracts (the "Assumption Order") should only be effective on the Closing Date.

The Motion is brought forth pursuant to 11 U.S.C. §§ 105 and 365, Federal Rule of Bankruptcy Procedure 6006, and Bankruptcy Local Rule 6006-1. The relief requested in the Motion should be granted because the Assumed Contracts are vital to Debtor's operation of its vineyard business and are key requirement for consummation of the Sale pursuant to the Sale Order and APA. No cure costs will be required because Debtor is not in default under any of the Assumed Contracts, and the record in this Chapter 11 case with respect to MGG's financing of the Debtor's operations, and MGG's intent to sufficiently fund the business following the Closing Date, provides adequate assurance of future performance under the Assumed Contracts. And because the Sale must close by the Closing Date, waiver of the fourteen day stay of assignment orders imposed by FRBP 6006(d) is requested. The Motion is supported by the Memorandum of Points and Authorities, the Declaration Of Kevin A. Krakora, the records and files of this bankruptcy case, and such arguments of counsel that may be made during the hearing on the Motion.

## **CONCLUSION**

**WHEREFORE,** Debtor respectfully requests that the Court enter an order:

1.    Granting the Motion;

2.    Authorizing Debtor to assume the Assumed Contracts pursuant to 11 U.S.C. § 365(a);

3.    Finding that there have been no defaults under the Assumed Contracts by

1        Debtor so the requirements of 11 U.S.C. § 365(b)(1) for assumption are not

2        applicable;

3      4.    Authorizing Debtor to assign the Assumed Contracts pursuant to 11 U.S. C.

4        § 365(f) to MGG;

5      5.    Finding that Debtor has provided sufficient evidence of adequate assurance

6        of future performance under the Assumed Contracts by MGG;

7      6.    Waiver of the fourteen day stay imposed by FRBP 6006(d);

8      7.    Making this Assumption Order effective only upon close of the Sale, and

9      8.    For such relief that the Court deems just and proper.

10

11 DATED:  May 30, 2023         Respectfully submitted,

12                **GREENSPOON MARDER LLP**

13

14           By:     */s/ Victor A Sahn*

15              Victor A. Sahn

16              Steve Burnell

               Attorneys for Debtor in Possession,

17              Spring Mountain Vineyard Inc.

18

19

20

21

22

23

24

25

26

27

28

SB 54558763v5

# MEMORANDUM OF POINTS AND AUTHORITIES[1]

There exists good cause for granting the relief requested by Debtor under 11 U.S.C. §§ 105 and 365 as explained in greater detail below.[2]  Accordingly, the Motion should be granted.

## I.

## BACKGROUND

### A.    Debtor's Prepetition Operations and Capital Structure

Since 1992, Debtor has owned the Spring Mountain Vineyard in Napa County, California (the "Vineyard").  The Vineyard is Debtor's primary asset.  Debtor runs an ongoing business with up to 70 employees, millions of dollars in annual sales, and relationships with dozens of suppliers and thousands of customers.  The Vineyard features approximately 135 vineyard blocks across approximately 211 acres, each with a different elevation, soil and exposure to the elements and each producing a unique and diverse grape.  The Vineyard is also improved with the estate residence, two winery buildings, a tasting room, six wells, cisterns, an irrigation system, a historic barn, and other outbuildings.  The Vineyard also has extensive winery caves that have been completely finished and utilized for barrel storage and private events.  Debtor's business consists primarily of growing grapes in its 135 vineyard blocks, harvesting those grapes and pressing them into wine in casks, bottling that wine from casks, and storing and selling that wine.  Debtor's revenue comes almost entirely from the sale of wine and grapes.

Debtor has traditionally financed its operations through secured lending.  In October 2018, Debtor obtained an $185 Million (the "Loan") from fourteen lenders with MGG California LLC serving as administrative agent and collateral agent for those lenders (the fourteen lenders with MGG California LLC, collectively, "MGG").  Debtor defaulted on its repayment terms and elected to file for bankruptcy protection once its forbearance agreements with MGG were about to expire

---

[1] Unless otherwise defined herein, capitalized shall have the same meaning assigned to them in the foregoing Motion.

[2] Unless otherwise specified, all references to "sections" are to Tile 11 of the United States Code, 11 U.S.C.§ 101 et seq. (the "Bankruptcy Code"), and all references to "rules" are to the Federal Rules of Bankruptcy Procedures, Rule 1001 et seq.

1   with no extension in prospect.

2       **B.**      <u>**The Bankruptcy Filing and Sale Order**</u>

3       On September 29, 2022 (the "Petition Date"), Debtor commenced the instant
4   bankruptcy case. Kevin A. Krakora was appointed Chief Restructuring Officer of Debtor on August
5   22, 2022 and he continues in that role post-petition.

6       After extensive marketing by Debtor, on April 7, 2023, the *Order (I) Authorizing*
7   *And Approving The Sale Of Substantially All Of The Debtor's Assets And (II) Granting Related*
8   *Relief* (the "Sale Order") [Docket no. 318] was entered. The Court approved the asset purchase
9   agreement between Debtor and MGG (the "APA") in which substantially all of Debtor's assets were
10  sold to MGG, after auction (the "Sale"). MGG's credit bid totaling $42 Million was the highest and
11  best offer received, and the Sale must close by no later than July 7, 2022 (the "Closing Date"). A
12  copy of the Sale Order, including the APA attached as Exhibit 1 thereto, is attached as <u>**Exhibit 1**</u> to
13  the separately filed Appendix of Exhibits (the "Appendix") and incorporated herein by this
14  reference.

15      In addition, MGG and Debtor's ultimate beneficial owner, Mr. Jacqui Safra ("Mr.
16  Safra") entered into a Binding Settlement Agreement dated as of April 6, 2023 (the "Safra Settlement
17  Agreement"). Debtor is not a party to the Safra Settlement Agreement. It is Debtor's understanding,
18  however, that under the Safra Settlement Agreement, that Mr. Safra has until June 28, 2023 to pay
19  a "Release Price" to MGG ("Release Price Date"). If this deadline is met, the Sale Order may be
20  vacated by request from Debtor with the written consent of MGG.

21      **C.**      <u>**The Final DIP Order, and Amendments Thereto**</u>

22      With regard to cash collateral, since the Loan is secured by substantially all of
23  Debtor's personal and real property, Debtor negotiated with MGG for continued consensual use of
24  cash collateral until December 31, 2022. Each of these matters was subsequently approved by
25  Court orders [Docket nos. 48, 76, 92, and 120]. In spite of the uniqueness of its Vineyard and wine,
26  however, Debtor generated insufficient revenue from its post-petition operations to pay its normal
27  course operating expenses and service MGG's debt. In order to cover the shortfalls in operating
28  costs from the Petition Date until December 31, 2022, Debtor received approximately $2.05 Million

from sources related to Mr. Jaqui Safra, Debtor's ultimate beneficial owner.

Debtor subsequently reached an agreement with MGG for debtor in possession financing to cover the operating cost shortfalls incurred after January 1, 2023. The Court entered the *Final Order: (I) Authorizing Secured Post-Petition Financing Pursuant to 11 U.S.C. § 364; (II) Extending The Term For Cash Collateral Usage Pursuant To Existing Cash Collateral Orders To April 15, 2023, And (III) Granting Related Relief* (the "Final DIP Order") [Docket no. 224] entered on January 27, 2023. In relevant part, as a condition of Debtor's continued use of cash collateral and obtaining debtor in possession financing from MGG in the amount of $4 Million (the "DIP Loan"), certain sale process milestones were included in the Final DIP Order. Debtor has moved to amend the Final DIP Order (the "Motion to Amend Final DIP Order") [Docket no. 383] to facilitate Debtor's continued use of cash collateral and upsizing the prior DIP Loan to $20 Million, inclusive of amounts previously borrowed, for use during the interim period between April 15, 2023 and the earlier of the Closing Date or Release Price Date. In relevant part, two of the proposed amendments to the Final DIP Order are additional sale process milestones the Debtor must satisfy. Debtor must file the instant Motion by May 30, 2023, and the order granting the Motion and approving assumption and assignment of the Assumed Contracts (the "Assumption Order") must be entered by June 23, 2023. The Motion to Amend Final DIP Order was granted at the May 30, 2023 hearing, subject to the addition of certain language to the proposed order.

### D. The Assumed Contracts

One of the assets acquired by MGG under the Sale Order and APA included all of Debtor's rights under each of the following contracts and leases, which may be revised by MGG to remove any contracts and leases prior to Closing:

| Contract No. | Party | Contract/Lease | Date of Contract/Lease | Contract/Lease Attached to the Appendix as Exhibit No. |
|---|---|---|---|---|
| 1 | Allen Wine Group, LLP | Accounting Engagement Agreement | 09/07/22 | 3 |
| 2 | Ballande & Meneret | Ballande & Meneret Agreement | 08/05/22 | 4 |
| 3 | Cab West LLC | Lease for 2020 Ford F150 | 08/17/20 | 5 |
| 4 | Cab West LLC | Lease for 2021 Ford F150 | 04/14/22 | 6 |

| | | | | |
|---|---|---|---|---|
| 5 | Cab West LLC | Lease for 2021 Ford Expedition | 03/18/22 | 7 |
| 6 | Conway Beverages Group, LLC dba Elite Brands, a California limited liability company | Brokerage Agreement | 03/03/17 | 8 |
| 7 | CQ&A Consulting | Compliance Services Agreement | 07/01/14 | 9 |
| 8 | East West Wine Trading, Inc. | Marketing Agreement | 05/16/17 | 10 |
| 9 | Missing Link Networks, Inc. (d/b/a eCellars) | Point-of-Sale Agreement | | N/A |
| 10 | My Enologist, Inc. | Subscription Services Agreement | 01/10/11 | 11 |
| 11 | Vinetrace Winery Software | Vinetrace Subscription Agreement | 05/31/18 | 12 |
| 12 | VinWizard | Winery Operations System Agreement | | N/A |

(collectively, the "Assumed Contracts").

With respect to the Assumed Contracts relating to Cab West, LLC ("Cab West") for leases of three Ford vehicles, a motion for relief from the automatic stay (the "RFS Motion") [Docket no. 375] was filed on May 9, 2023 and is set for hearing on June 7, 2023. Debtor is negotiating with Cab West for a resolution of the RFS Motion prior to the hearing on the instant Motion.

## II.

## THE MOTION SHOULD BE GRANTED BECAUSE ASSUMPTION AND ASSIGNMENT OF THE ASSUMED CONTRACTS IS IN THE BEST INTEREST OF THE ESTATE

### A. The Court Should Authorize Debtor's Assumption Of The Assumed Contracts

#### 1. Legal Standard

Section 365(a) of the Bankruptcy Code provides that "the trustee, subject to the court's approval, may assume or reject any executory contracts or unexpired lease of the debtor." 11 U.S.C. § 365(a).

Section 365(b) of the Bankruptcy Code sets forth the particular requirements a trustee must satisfy to assume an executory contract or unexpired lease. That section provides, in part:

(b) (1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

(A)     cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph;

(B)     compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C)     provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).  A debtor-in-possession has the same rights, powers, and duties as a trustee. 11 U.S.C. § 1107(a).

Section 365(a) does not provide a standard for determining when assumption of an executory contract or unexpired lease is appropriate.  *See* 11 U.S.C. § 365(a); *Monarch Tool & Mfg. Co. v. Monarch Product Sales Corp. (In re Monarch Tool and Mfg. Co.)*, 114 B.R. 134, 137 (Bankr. S.D. Ohio 1990).  However, courts hold that "[s]ection 365(a) gives [trustees] wide latitude in deciding whether to assume or reject a contract . . . ."  *In re Pomona Valley Medical Group, Inc.*, 476 F.3d 665, 672 (9th Cir. 2006).

More specifically, in determining whether assumption is appropriate, the Ninth Circuit applies the "business judgment rule."  *See id.* at 670.  *See also In re G.I. Industries, Inc.*, 204 F.3d 1276, 1282 (9th Cir. 2000); *Robertson v. Pierce (In re Huang)*, 23 B.R. 798, 800-01 (9th Cir. B.A.P. 1982); *In re Continental Country Club, Inc.*, 114 B.R. 763, 767 (Bankr. M.D. Fla. 1990); *In re Gucci*, 193 B.R. 411, 415 (S.D.N.Y. 1996).  The business judgment standard requires a court to follow the business judgment of the trustee unless that judgment is the product of bad faith, whim,

or caprice. *See In re Prime Motors Inns*, 124 B.R. 378, 381 (Bankr. S.D. Fla. 1991) (*citing Lubrizol Enterprises v. Richmond Metal Finishers*, 756 F.2d 1043, 1047 (4th Cir. 1985)).

2.      **Debtor Satisfies All Applicable Requirements for Assumption of the Assumed Contracts**

a.      **Assumption is in the Best Interest of the Bankruptcy Estate**

In Debtor's business judgment, assumption of the Assumed Contracts is in the best interest of its bankruptcy estate. This Court previously found in the Sale Order, after extensive marketing by Debtor, the $42 Million credit bid offer received from MGG, after Debtor' duly noticed and conducted auction, was the highest and best offer received by Debtor. The Court further found that Debtor's acceptance of MGG's offer pursuant to the APA constituted a valid and sound exercise of Debtor's business judgment. *See* Ex. 1 (the Sale Order), p. 5-6 thereto. Debtor's decision to assume the Assumed Contracts as required by the Sale Order and APA is Debtor's continued exercise of that sound business judgment. The timely assumption of the Assumed Contracts is a requirement for the close of the Sale. Moreover, as detailed in the APA and below, MGG has agreed to assume all of the liabilities related to the Assumed Contracts from and after the Closing, thereby decreasing the bankruptcy estate's liability under the Assumed Contracts.

Finally, pursuant to the proposed amendments in the Motion to Amend Final DIP Order, Debtor's timely assumption of the Assumed Contracts is condition for Debtor's continued use of cash collateral and upsizing the DIP Loan to $20 Million, inclusive of amounts previously borrowed, for use during the interim period between April 15, 2023 and the earlier of the Closing Date or Release Price Date. Accordingly, the requirements for assumption of the Assumed Contracts under Section 365(a) have been satisfied.

b.      **There Have Been No Defaults Under the Assumed Contracts, And Therefore No Cure Costs**

Section 365(b)(1)(A) and (B) require a trustee to "cure[ ], or provides adequate assurance that the trustee will promptly cure" all defaults under an executory contract or unexpired lease, and "compensate, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party

resulting from such default." 11 U.S.C. § 365(b)(1)(A), (B). Courts generally recognize that "a time period of one year or less" satisfies "the requirement for prompt payment of the cure amount" so long as the cure period does not extend to the end of the term of the lease. *In re Citrus Tower Blvd. Imaging Ctr., LLC*, 2012 Bankr. LEXIS 2208, *11-13 (Bankr. N.D. Ga. April 2, 2012) (collecting cases on issue). Courts also hold that "'[a]dequate assurance of a prompt cure requires that there be a firm commitment to make all payments and at lease a reasonably demonstrable capability to do so.'" *Id.* (*quoting In re Embers 86th Street, Inc.*, 184 B.R. 892, 900-01 (Bankr. S.D.N.Y. 1995)).

In this case, the requirements of Section 365(b)(1) are not applicable because Debtor has not defaulted under any of the Assumed Contracts. With respect to the leases with Cab West, Debtor disputes the contention in the RFS Motion that Debtor defaulted under the applicable Ford vehicle leases based on missed post-petition payments for March and April 2023. Instead, Debtor believes there were mistakes by both parties with respect to Debtor's delivery of the March 2023 payment and Cab West's failure to account for Debtor's timely April 2023 payment. In any event, Debtor has tendered, and Cab West has accepted, Debtor's payments for March and May 2023 and remains current under Cab West's leases. Debtor further anticipates resolving the RFS Motion prior to, or concurrently with, the hearing on the Motion. Accordingly, Debtor has met the Bankruptcy Code's requirements for assumption of the Assumed Contracts.

**B.** **The Court Should Authorize Debtor's Assignment Of the Assumed Contracts**

**1.** **Legal Standard**

Section 363(f) of the Bankruptcy Code permits a trustee to assign an assumed executory contract or unexpired lease. 11 U.S.C. § 365(f). That section provides, in part:

> (1) . . . notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection.

> (2) The trustee may assign an executory contract or unexpired lease of the debtor only if—

>      (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and

> (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f). Thus, Section 365(f) conditions assignment of any executory contract or unexpired lease on "adequate assurance of future performance by the assignee of such contract or lease[.]" 11 U.S.C. § 365(f)(2)(B). As one court explained:

> Assurance of future performance is adequate "if performance is likely (i.e. more probable then not)" and the degree of assurance necessary to be deemed adequate "falls considerably short of an absolute guaranty." . . . A debtor need not prove it will "thrive and make a profit." [Citation]. It must simply appear that the rent will be paid and other lease obligations met. [Citation].

*Citrus Tower*, 2012 Bankr. LEXIS at *15 (*quoting In re M. Fine Lumber Co.*, 383 B.R. 565, 573 (Bankr. E.D.N.Y. 2008), and *In re Tex. Health Enters., Inc.*, 246 B.R. 832, 835 (Bankr. E.D. Tex. 2000).

### 2. Debtor Satisfies All Applicable Requirements for Assignment of the Assumed Contracts

#### a. Assignment of the Assumed Contracts is in the Best Interest of the Bankruptcy Estate

Similar to Debtor's decision to assume the Assumed Contracts, Debtor's decision to assign the Assumed Contracts to MGG is a further exercise of Debtor's sound business judgment. Assignment of the Assumed Contracts is required under the Sale Order and the APA. The assignment of the Assumed Contracts is also a requirement for the timely close of the Sale, and MGG has agreed to assume all of the liabilities related to the assigned Assumed Contracts. Finally, Debtor's assignment of the Assumed Contracts is condition for Debtor's continued use of the DIP Loan during the interim period between April 15, 2023 and the earlier of the Closing Date or Release Price Date. Accordingly, the elements for assignment of the Assumed Contracts to MGG under Section 365(f)(2)(A) have been satisfied.

SB 54558763v5

**b.** **There is Sufficient Evidence of Adequate Assurance of Performance by the Assignee, MGG**

MGG has financed Debtor's operations throughout this Chapter 11 case. As detailed in the *Declaration of Kevin A. Krakora in Support of Debtor in Possession Financing Motion and Continued Cash Collateral Usage by Chapter 11 Debtor* [Docket no. 185], Debtor's operations are such that its revenues are insufficient to pay its operating expenses as a going concern. Pursuant to the terms of the proposed amendments to the Final DIP Order, MGG has agreed to provide up to $20 Million of financing to continue Debtor's operations during the Chapter 11 case. Following the Closing of the Sale, MGG intends to perform under the Assumed Contracts assigned to MGG and provide sufficient funding for its operations, as it has done so throughout this Chapter 11 case. MGG is available to discussing providing additional information that any contract counterparty may request. Accordingly, the elements for assignment of the Assumed Contracts to MGG under Section 365(f)(2)(B) are satisfied based on the record in this case. Debtor has demonstrated adequate assurance of future performance by MGG under the Assumed Contracts.

**C.** **The Court Waive The 14-Day Stay Of The Order**

Under Rule 6006(d) of the Federal Rules of Bankruptcy Procedure, "[a]n order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6006(d). Sufficient grounds exist to waive the fourteen day stay of the proposed Assumption Order attached to the Appendix as **Exhibit 2** and incorporated herein by this reference. Pursuant to the proposed amendments to the Final DIP Order, Debtor must obtain entry of the Assumption Order by June 23, 2023. The Closing Date of the Sale is no later than July 7, 2023. Under these circumstances, in the event the Release Price is not paid by Mr. Safra, time is of the essence for Debtor to meet these deadlines. Waiver of the automatic fourteen day stay of assignment orders imposed by Rule 6006(d) is therefore appropriate under these circumstances.

**D.** **The Assumption Order Should Be Effective Only Upon Close Of The Sale**

It is currently unknown whether Mr. Safra will timely pay the Release Price by the Release Price Date, i.e., June 28, 2023. If timely payment is made, the Sale Order may be vacated

upon written request by Debtor with the written consent of MGG.  As such, Debtor requests that the Assumption Order be effective only upon close of the Sale.  In the event Mr. Safra timely pays the Release Price, it is unknown what course Debtor's bankruptcy plan may undertake and the type of plan that Debtor may then be filing.

## III.

## CONCLUSION

Based on the foregoing, the Motion should be granted in its entirety.

DATED:  May 30, 2023                     Respectfully submitted,

**GREENSPOON MARDER LLP**


By:     _/s/ Victor A. Sahn_____
        Victor A. Sahn
        Steve Burnell
        Attorneys for Debtor in Possession,
        Spring Mountain Vineyard Inc.

**REQUEST FOR JUDICIAL NOTICE**[3]

Pursuant to Rule 201 of the Federal Rules of Evidence, Plaintiff hereby requests that

the Court take judicial notice of the documents below attached to the Appendix. *See Plys v. Ang (In*

*re Ang)*, 589 B.R. 165, 171 n.3 (Bankr. S.D. Cal. 2018) (taking judicial notice of the state court's

docket) (citations omitted).

**Exhibit 1-** Order (I) Authorizing And Approving The Sale Of Substantially All

Of The Debtor's Assets And (II) Granting Related Relief (the "Sale

Order") [Docket no. 318] entered on April 7, 2023

DATED: May 30, 2023 Respectfully submitted,

**GREENSPOON MARDER LLP**

By: ___/s/ Victor A. Sahn___

Victor A. Sahn
Steve Burnell

Attorneys for Debtor in Possession,
Spring Mountain Vineyard Inc.

<u>**DECLARATION OF KEVIN A. KRAKORA**</u>

I, Kevin A. Krakora, declare:

1.    I am an individual over the age of (18) eighteen years old. The matters stated herein are true and correct and within my personal knowledge or have been explained to me by Debtor's counsel. If called to testify as a witness in this matter, I could and would competently testify under oath to the truth of the statements set forth herein.

2.    I am the Chief Restructuring Officer of Spring Mountain Vineyard Inc., a Delaware corporation ("Debtor"). I make this declaration solely in capacity as Chief Restructuring Officer of Debtor.

3.    I have been the Chief Restructuring Officer of Debtor since August 22, 2022. In this role, I am involved in its day-to-day operations including issues regarding financial matters, issues regarding operational concerns from the vineyard operations, sales issues and all related matters to its doing business.

4.    I make this declaration in support of the foregoing, attached *Omnibus Motion To Assume And Assign Executory Contracts And Unexpired Leases Pursuant To 11 U.S.C. § 365* (the "Motion").[4]

5.    Since 1992, Debtor has owned the Spring Mountain Vineyard in Napa County, California (the "Vineyard"). The Vineyard is Debtor's primary asset. Debtor runs an ongoing business with up to 70 employees, millions of dollars in annual sales, and relationships with dozens of suppliers and thousands of customers. The Vineyard features approximately 135 vineyard blocks across approximately 211 acres, each with a different elevation, soil and exposure to the elements and each producing a unique and diverse grape. The Vineyard is also improved with the estate residence, two winery buildings, a tasting room, six wells, cisterns, an irrigation system, a historic barn, and other outbuildings. The Vineyard also has extensive winery caves that have been completely finished and utilized for barrel storage and private events. Debtor's business consists

---

[4] Unless otherwise defined herein, capitalized terms have the same meaning given to them in the foregoing Motion and Memorandum of Points and Authorities.

primarily of growing grapes in its 135 vineyard blocks, harvesting those grapes and pressing them into wine in casks, bottling that wine from casks, and storing and selling that wine. Debtor's revenue comes almost entirely from the sale of wine and grapes.

6. Debtor has traditionally financed its operations through secured lending. In October 2018, Debtor obtained an $185 Million (the "Loan") from fourteen lenders with MGG California LLC serving as administrative agent and collateral agent for those lenders (the fourteen lenders with MGG California LLC, collectively, "MGG"). Debtor defaulted on its repayment terms and elected to file for bankruptcy protection once its forbearance agreements with MGG were about to expire with no extension in prospect.

7. On September 29, 2022 (the "Petition Date"), Debtor commenced the instant bankruptcy case.

8. After extensive marketing by Debtor, on April 7, 2023, the *Order (I) Authorizing And Approving The Sale Of Substantially All Of The Debtor's Assets And (II) Granting Related Relief* (the "Sale Order") [Docket no. 318] was entered. The Court approved the asset purchase agreement between Debtor and MGG (the "APA") in which substantially all of Debtor's assets were sold to MGG, after auction (the "Sale"). MGG's credit bid totaling $42 Million was the highest and best offer received, and the Sale must close by no later than July 7, 2022 (the "Closing Date"). A true and correct copy of the Sale Order, including the APA attached as Exhibit 1 thereto, is attached **Exhibit 1** to the separately filed Appendix of Exhibits (the "Appendix") and incorporated herein by this reference.

9. In addition, MGG and Debtor's ultimate beneficial owner, Mr. Jacqui Safra ("Mr. Safra") entered into a Binding Settlement Agreement dated as of April 6, 2023 (the "Safra Settlement Agreement"). Debtor is not a party to the Safra Settlement Agreement. It is Debtor's and my understanding, however, that under the Safra Settlement Agreement, that Mr. Safra has until June 28, 2023 to pay a "Release Price" to MGG ("Release Price Date"). If this deadline is met, the Sale Order may be vacated by request from Debtor with the written consent of MGG.

10. With regard to cash collateral, since the Loan is secured by substantially all of Debtor's personal and real property, Debtor negotiated with MGG for continued consensual use

of cash collateral until December 31, 2022.   Each of these matters was subsequently approved by Court orders [Docket nos. 48, 76, 92, and 120].  In spite of the uniqueness of its Vineyard and wine, however, Debtor generated insufficient revenue from its post-petition operations to pay its normal course operating expenses and service MGG's debt.  In order to cover the shortfalls in operating costs from the Petition Date until December 31, 2022, Debtor received approximately $2.05 Million from sources related to Mr. Jaqui Safra, Debtor's ultimate beneficial owner.

11.    Debtor subsequently reached an agreement with MGG for debtor in possession financing to cover the operating cost shortfalls incurred after January 1, 2023.  The Court entered the *Final Order: (I) Authorizing Secured Post-Petition Financing Pursuant to 11 U.S.C. § 364; (II) Extending The Term For Cash Collateral Usage Pursuant To Existing Cash Collateral Orders To April 15, 2023, And (III) Granting Related Relief* (the "Final DIP Order") [Docket no. 224] entered on January 27, 2023.  In relevant part, as a condition of Debtor's continued use of cash collateral and obtaining debtor in possession financing from MGG in the amount of $4 Million (the "DIP Loan"), certain sale process milestones were included in the Final DIP Order.  Debtor has moved to amend the Final DIP Order (the "Motion to Amend Final DIP Order") [Docket no. 383] to facilitate Debtor's continued use of cash collateral and upsizing the prior DIP Loan to $20 Million, inclusive of amounts previously borrowed, for use during the interim period between April 15, 2023 and the earlier of the Closing Date or Release Price Date.    In relevant part, two of the proposed amendments to the Final DIP Order are additional sale process milestones the Debtor must satisfy. Debtor must file the instant Motion by May 30, 2023, and the order granting the Motion and approving assumption and assignment of the Assumed Contracts (the "Assumption Order") must be entered by June 23, 2023.  The Motion to Amend Final DIP Order was granted at the May 30, 2023, subject to the addition of certain language to the proposed order.

12.    One of the assets acquired by MGG under the Sale Order and APA included all of Debtor's rights under each of the following  contracts and leases:

| Contract No. | Party | Contract/Lease | Date of Contract/Lease | Contract/Lease Attached to the Appendix as Exhibit No. |
|---|---|---|---|---|
| 1 | Allen Wine Group, LLP | Accounting Engagement Agreement | 09/07/22 | 3 |
| 2 | Ballande & Meneret | Ballande & Meneret Agreement | 08/05/22 | 4 |
| 3 | Cab West LLC | Lease for 2020 Ford F150 | 08/14/20 | 5 |
| 4 | Cab West LLC | Lease for 2021 Ford F150 | 04/14/22 | 6 |
| 5 | Cab West LLC | Lease for 2021 Ford Expedition | 03/18/22 | 7 |
| 6 | Conway Beverages Group, LLC dba Elite Brands, a California limited liability company | Brokerage Agreement | 03/03/17 | 8 |
| 7 | CQ&A Consulting | Compliance Services Agreement | 07/01/14 | 9 |
| 8 | East West Wine Trading, Inc. | Marketing Agreement. | 05/16/17 | 10 |
| 9 | Missing Link Networks, Inc. (d/b/a eCellars) | Point-of-Sale Agreement | | N/A |
| 10 | My Enologist, Inc. | Subscription Services Agreement | 01/10/11 | 11 |
| 11 | Vinetrace Winery Software | Vinetrace Subscription Agreement | 05/31/18 | 12 |
| 12 | VinWizard | Winery Operations System Agreement | | N/A |

(collectively, the "Assumed Contracts"). It is my understanding that MGG reserves its rights to remove any of the Assumed Contracts prior to Closing.

13. With respect to the Assumed Contracts relating to Cab West, LLC ("Cab West") for leases of three Ford vehicles, a motion for relief from the automatic stay (the "RFS Motion") [Docket no. 375] was filed on May 9, 2023 and is set for hearing on June 7, 2023. Debtor is negotiating with Cab West for a resolution of the RFS Motion prior to the hearing on the instant Motion.

14. In Debtor's business judgment, assumption of the Assumed Contracts is in the best interest of Debtor's bankruptcy estate. This Court previously found in the Sale Order, after extensive marketing by Debtor, the $42 Million credit bid offer received from MGG, after Debtor's

duly noticed and conducted auction, was the highest and best offer received by Debtor. The Court further found that Debtor's acceptance of MGG's offer pursuant to the APA constituted a valid and sound exercise of Debtor's business judgment. Debtor's decision to assume the Assumed Contracts as required by the Sale Order and APA is a continuation of the Debtor's exercise of that sound business judgment. The timely assumption of the Assumed Contracts is a requirement for the timely close of the Sale. Moreover, as detailed in the APA and below, MGG has agreed to assume all of the liabilities related to the Assumed Contracts from and after the Closing, thereby decreasing the bankruptcy estate's liability under the Assumed Contracts.

15. Debtor's timely assumption of the Assumed Contracts is condition for Debtor's continued use of cash collateral and upsizing the DIP Loan to $20 Million, inclusive of amounts previously borrowed, for use during the interim period between April 15, 2023 and the earlier of the Closing Date or Release Price Date.

16. Debtor has not defaulted under any of the Assumed Contracts. With respect to the leases with Cab West, Debtor disputes the contention in the RFS Motion that it defaulted under the applicable Ford vehicle leases based on missed post-petition payments for March and April 2023. Instead, Debtor believes there were mistakes by both parties with respect to Debtor's delivery of the March 2023 payment and Cab West's failure to account for Debtor's timely April 2023 payment. In any event, Debtor has tendered, and Cab West has accepted, Debtor's payments for March and May 2023 and is current under Cab West's leases. Debtor further anticipates resolving the RFS Motion prior to, or concurrently with, the hearing on the Motion.

17. Similar to Debtor's decision to assume the Assumed Contracts, Debtor's decision to assign the Assumed Contracts to MGG is a further exercise of Debtor's business judgment. Assignment of the Assumed Contracts is required under the Sale Order and the APA. The assignment of the Assumed Contracts is also a requirement for the timely close of the Sale, and MGG has agreed to assume all of the liabilities related to the assigned Assumed Contracts. Finally, Debtor's assignment of the Assumed Contracts is condition for Debtor's continued use of the DIP Loan during the interim period between April 15, 2023 and the earlier of the Closing Date or Release Price Date.

18.     Sufficient grounds exist to waive the fourteen day stay of the proposed Assumption Order attached to the Appendix as **Exhibit 2** and incorporated herein by this reference. Pursuant to the proposed amendments to the Final DIP Order, Debtor must obtain entry of the Assumption Order by June 23, 2023.  The Closing Date of the Sale is no later than July 7, 2023. Under these circumstances, in the event the Release Price is not paid by Mr. Safra, time is of the essence for Debtor to meet these deadlines.

19.     It is currently unknown whether Mr. Safra will timely pay the Release Price by the Release Price Date, i.e., June 28, 2023.   If timely payment is made, the Sale Order may be vacated upon written request by Debtor with the written consent of MGG.  As such, Debtor requests that the Assumption Order be effective only upon close of the Sale.  In the event Mr. Safra timely pays the Release Price, it is unknown what course Debtor's bankruptcy plan may undertake and the type of plan that Debtor may then be filing.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 30, 2023.

_____

Kevin A. Krakora
Chief Restructuring Officer for
Spring Mountain Vineyard, Inc.

23

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 333 South Grand Avenue, Suite 3400, Los Angeles, CA 90071.

A true and correct copy of the foregoing document entitled (*specify*): **OMNIBUS MOTION TO ASSUME AND ASSIGN EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO 11 U.S.C. § 365** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) May 30, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) May , 2023, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)  May , 2023 , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 30, 2023 | Patricia Dillamar | *Patricia Dillamar* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

PMD 54573436v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

# 1. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")

Steve Burnell on behalf of Debtor Spring Mountain Vineyard Inc.
steve.burnell@gmlaw.com

Dean C. Burnick on behalf of Interested Party Mt. Hawley Insurance Company **(RSN)**
dcb@proughlaw.com

Jacquelyn H. Choi on behalf of Creditor Napa County Treasurer-Tax Collector **(RSN)**

Louis J. Cisz  lcisz@nixonpeabody.com on behalf of Don Yannias **(RSN)**

Trevor Ross Fehr on behalf of U.S. Trustee Office of the U.S. Trustee / SR
trevor.fehr@usdoj.gov

Mark S Horoupian on behalf of Debtor Spring Mountain Vineyard Inc.
mark.horoupian@gmlaw.com, cheryl.caldwell@gmlaw.com

Thomas Philip Kelly, III on behalf of Creditor Central Valley Builders Supply Inc. **(RSN)**
tomkelly@sonic.net

Steve Ma on behalf of Creditor MGG California, LLC
sma@proskauer.com

Jeff J. Marwil on behalf of Creditor MGG California, LLC
jmarwil@proskauer.com

Randall P. Mroczynski on behalf of Creditor Ford Motor Credit Company LLC **(RSN)**
rmroczynski@cookseylaw.com

Office of the U.S. Trustee / SR
USTPRegion17.SF.ECF@usdoj.gov

Elvina Rofael on behalf of U.S. Trustee Office of the U.S. Trustee / SR
elvina.rofael@usdoj.gov, Katina.Umpierre@usdoj.gov,GemMil.Langit@usdoj.gov

Victor A. Sahn on behalf of Debtor Spring Mountain Vineyard Inc.
victor.sahn@gmlaw.com, Karen.Files@gmlaw.com

Michael St. James on behalf of Interested Party Arcade Capital, LLC **(RSN)**
ecf@stjames-law.com

John G. Warner on behalf of Creditor Francois Freres USA Inc. **(RSN)**
warnerwest@aol.com

Ashley M. Weringa on behalf of Creditor MGG California, LLC
aweringa@proskauer.com

Steven F. Werth on behalf of Debtor Spring Mountain Vineyard Inc.
steven.werth@gmlaw.com, Patricia.Dillamar@gmlaw.com

Peter J Young on behalf of Creditor MGG California, LLC
pyoung@proskauer.com

PMD 54573436v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                    **F 9013-3.1 PROOF.SERVICE**
Case: 22-10381    Doc# 398    Filed: 05/30/23    Entered: 05/30/23 22:33:25    Page 25 of 25