CHRISTINA L. GOEBELSMANN (CA SBN 273379)
Assistant United States Trustee
TREVOR R. FEHR (CA SBN 316699)
Trial Attorney
PHILLIP J. SHINE (CA SBN 318840)
Trial Attorney
UNITED STATES DEPARTMENT OF JUSTICE
Office of the United States Trustee
450 Golden Gate Ave., Rm. 05-0153
San Francisco, California 94102
Telephone: (415) 705-3333
Facsimile: (415) 705-3379
Email: Trevor.Fehr@usdoj.gov
Email: Phillip.Shine@usdoj.gov

Attorneys for Tracy Hope Davis
United States Trustee for Region 17

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SANTA ROSA DIVISION

| | |
|---|---|
| In re:<br><br>SPRING MOUNTAIN VINEYARD INC.,<br><br>Debtor. | Case No. 22-10381 CN<br><br>Chapter 11<br><br>Date: July 5, 2023<br>Time: 11:00 a.m.<br>Place: By Tele/Videoconference<br><br>Judge: Honorable Charles Novack |

**MOTION OF THE UNITED STATES TRUSTEE, PURSUANT TO 11 U.S.C. § 1112(b)(1) AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 1017(f) AND 9014, TO DISMISS OR CONVERT CHAPTER 11 CASE**

Tracy Hope Davis, the United States Trustee for Region 17 (the "United States Trustee"), by and through her undersigned counsel, hereby files this motion to dismiss or convert this case pursuant to 11 U.S.C. § 1112(b)(1) and 11 U.S.C. § 1112(b)(4)(A) and Federal Rules of Bankruptcy Procedure 1017(f) and 9014 (the "Motion"). The Motion is supported by the Declaration of Kristin A. McAbee (the "McAbee Declaration").

//

1

## I. INTRODUCTION

1. This chapter 11 case should be dismissed for "cause" under 11 U.S.C. §§ 1112(b)(1) and (b)(4)(A) because the Debtor's estate is suffering a substantial or continuing loss and/or diminution of value, and the Debtor has no reasonable likelihood of rehabilitation.

2. The Debtor is expected to close a court-authorized sale of substantially all of its assets to a secured creditor by July 7, 2023. However, the Debtor has not filed a disclosure statement and plan providing for the orderly liquidation of any remaining assets or payment of its administrative expenses. While the case remains pending, the Debtor is continuing to incur additional administrative expenses, which it appears to be unable to pay due to the non-operational status of its business and the sale of its assets.

3. The United States Trustee reserves her right to supplement this Motion with additional facts or arguments for cause to dismiss or convert the Debtor's case.

## II. STATEMENT OF FACTS

A. **General Case Background**

4. On September 29, 2022, the Debtor commenced this voluntary case under Chapter 11 of the United States Bankruptcy Code (the "Petition Date"). *See* ECF No. 1. The Debtor is currently a debtor-in-possession under Sections 1107 and 1108 of the Bankruptcy Code. *See* Case Docket *generally*.

5. Due to a lack of interest, the United States Trustee has not appointed an official committee of unsecured creditors in this case. *Id*.

6. According to the first day declaration of chairman and president Constantine S. Yannias (the "First Day Declaration"), the Debtor owns Spring Mountain Vineyard, an 845-acre

vineyard in Napa County, California. See ECF No. 26, at 2 of 35.[1]  Jacqui E. Safra is the Debtor's beneficial owner. *Id*., at 8 of 35.

B. **The Debtor's Assets and Liabilities**

7. According to Schedule A/B, the value of the Debtor's assets on the Petition Date was $471,520,017.39. *See* ECF No. 78. These assets include: (i) cash and cash equivalents of $307,283.45; (ii) deposits or prepayments of $1,447,938.17; (iii) accounts receivable of $293,107.77; (iv) inventory valued at $161,432,141; (v) real property, comprising the vineyard, valued at $218,700,000; and (vi) "other" assets, comprising causes of actions and federal and state net operating losses, valued at $89,339,547. *Id*.

8. According to Schedule D, the Debtor's secured claims total $204,188,912. *Id*. These claims include a $1,873,376 claim held by IPFS Corporation of California and a $202,315,536 claim held by MGG California, LLC ("MGG"). *Id*.

9. On February 1, 2023, the Debtor amended Schedule E/F to disclose one priority claim of $7,000. *See* ECF No. 228.

10. The amended Schedule E/F also reports sixty-four general unsecured claims in the aggregate amount of $83,217,299.57. *Id*. The largest general unsecured claim is a $78,937,305 claim held by Sertabel Corporation, an entity related to the Debtor by common ownership.[2] *Id*.

C. **The Sale of Substantially all of the Debtor's Assets**

11. On April 7, 2023, the Court entered an order authorizing the sale of substantially all of the Debtor's assets to MGG, following an auction where MGG submitted a winning $42

---

[1]  References to documents on the Court's docket denote the page numbers of the documents per the Court's docketing stamp.
[2]  Mr. Yannis is listed as a general unsecured creditor, holding a $2,538,867.12 claim and Mr. Safra is listed as a general unsecured creditor, with an unknown claim. *See* ECF No. 228.

million credit bid (the "Sale Order"). *See* ECF No. 318. The sale is to close no earlier than July 1, 2023 and no later than July 7, 2023. *Id*. at 7 of 109.

12. Based upon the sales price and listed values for the Debtor's assets and liabilities in Schedule A/B, it appears that there will be little to no equity left following the closure of the sale. *See* ECF No. 78.

13. According to the Debtor's April 24, 2023 status conference statement (the "April 2023 Status Conference Statement"), MGG and Mr. Safra entered into a bidding settlement agreement following the auction. The agreement gives Mr. Safra until June 28, 2023 to pay an undefined "release price" to MGG, after which the Sale Order may be vacated with MGG's consent. *See* ECF No. 356, at 4 of 14. The Debtor is not a party to the settlement agreement between Mr. Safra and MGG. *Id*.

14. The April 2023 Status Conference Statement also states that "MGG has committed to provide the necessary funding to sustain the Debtor's operations and payment of the Debtor's professionals' fees" during this interim period. *Id*. In the Monthly Operating Report for Period ending on April 30, 2023, the Debtor listed Approved Aggregate Cumulative Total of Debtor's professional fees and expenses are approximately $2,434,129 and the Paid Aggregate Cumulative Total of Debtor's professional fees and expenses are approximately $2,234,129. *See* ECF No. 389, p. 3; *see also* McAbee Declaration.

D. **The Debtor Has Not Filed a Plan**

15. As of the filing of this Motion, the Debtor has not filed a plan or a disclosure statement. *See* Case Docket *generally*.

4

Case: 22-10381    Doc# 416    Filed: 06/07/23    Entered: 06/07/23 12:50:42    Page 4 of 10

16. The April 2023 Status Conference Statement represents that "it would be premature at this time for the Debtor to present an outline of a plan of reorganization given the unresolved contingency of whether the [r]elease [p]rice is paid." *See* ECF No. 356, at 5 of 14.

17. The April 2023 Status Conference Statement explains, if the Sale Order is vacated, Mr. Safra may be "interested in filing a chapter 11 plan to reorganize the Debtor as a going concern, especially in light of the potential net operating losses currently estimated to be over $100 million." *Id*. Otherwise, the Debtor intends to move for voluntary dismissal. *Id*.

### III. MEMORANDUM OF POINTS AND AUTHORITIES

**A. Cause Exists Under 11 U.S.C. § 1112(b)(1) to Convert or Dismiss this Bankruptcy Case**

18. 11 U.S.C. §1112(b)(1) provides that:

> Except as provided in paragraph (2) and subsection (c), on request . . . the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

19. Section 1112(b)(4) sets forth a non-exclusive list of what constitutes "cause." This list includes "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A).

20. The bankruptcy court has broad discretion to determine what constitutes "cause" adequate for dismissal or conversion under § 1112(b), and may also "consider other factors as they arise, and use its equitable power to reach the appropriate result." *In re Consolidated Pioneer Mortgage Entities*, 248 B.R. 368, 375 (B.A.P. 9th Cir. 2000) *aff'd*, 264 F.3d 803 (9th Cir. 2001). *Id*.

21. As movant, the United States Trustee bears the burden of establishing by a preponderance of the evidence that cause exists. *See In re Sullivan,* 522 B.R. 604, 614 (B.A.P. 9th Cir. 2014).

22. If the bankruptcy court determines that there is cause to convert or dismiss, it must also: (1) decide whether dismissal or conversion is in the best interests of creditors and the estate; and (2), if the cause for dismissal is *not* substantial or continuing loss or diminution of the estate, identify whether there are unusual circumstances that establish that dismissal or conversion is not in the best interests of creditors and the estate. *See* 11 U.S.C. § 1112(b)(2)(B); *In re Sullivan*, 522 B.R. at 612; *see also In re Creekside Sr. Apartments, L.P.*, 489 B.R. 51, 63 (B.A.P. 6th Cir. 2013).

### B. Cause Exists Under 11 U.S.C. § 1112(b)(4)(A) Because There is Continuing Loss or Diminution of the Estate and Absence of a Reasonable Likelihood of Rehabilitation

23. Cause under § 1112(b)(4)(A) requires demonstrating (i) a substantial or continuing loss to or diminution of the estate, and (ii) the absence of a reasonable likelihood of rehabilitation. *See In re Creekside Sr. Apartments, L.P.,* 489 B.R. at 61; *see also In re Hassen Imports P'ship*, 2013 WL 4428508, at *13 (B.A.P. 9th Cir. Aug. 19, 2013). Both elements are met in this case.

#### i. There is Continuing Loss to or Diminution of the Estate

24. The first element, a substantial or continuing loss, requires that a loss be either substantial or continuing. "It need not be both in order to constitute cause under § 1112(b)(4)(A)." *In re Creekside Sr. Apartments, L.P.,* 489 B.R. at 61. To evaluate whether there is a substantial or continuing loss, "the bankruptcy court must look beyond financial statements and fully evaluate the present condition of a debtor's estate." *See In re Hassen Imports P'ship,* 2013 WL 4428508, at *13.

Case: 22-10381 Doc# 416 Filed: 06/07/23 Entered: 06/07/23 12:50:42 Page 6 of 10

25.     The court may consider a debtor's "dwindling liquidity, or illiquidity resulting in unpaid postpetition debts;" recurring post-petition losses; or maintenance of a negative cash flow post-petition. *See In re Hassen Imports P'ship,* 2013 WL 4428508, at *13; *see also In re Wide W. Servs., LLC*, 2013 WL 5201383, at *3 (Bankr. E.D. Cal. Sept. 12, 2013); *In re Schriock Construction, Inc.*, 167 B.R. 569, 575 (Bankr. D.N.D. 1994) ("This element can be satisfied by demonstrating that the debtor . . . maintained a negative cash flow position after the entry of the order for relief.").

26.     The debtor's continued accrual of administrative expenses, including professional fees and United States Trustee quarterly fees, may also constitute a continuing loss. *See In re Landmark Atlantic Hess Farm, LLC*, 448 B.R. 707, 714 (Bankr. D. Md. 2011); *see also In re FRGR Managing Member LLC,* 419 B.R. 576, 581 (Bankr. S.D.N.Y. 2009); *Loop Corp. v. U.S. Tr.*, 379 F.3d 511, 516 (8th Cir. 2004) ("In the context of a debtor who has ceased business operations and liquidated virtually all of its assets, any negative cash flow-including that resulting only from administrative expenses-effectively comes straight from the pockets of the creditors.")

27.     Here, the Sale Order provides for the sale of substantially all of the Debtor's assets to MGG. *See* ECF No. 318. The Debtor has no ongoing business, but is continuing to accrue professional and administrative expenses due to the pendency of this case. In the Monthly Operating Report for Period ending on April 30, 2023, the Debtor listed Approved Aggregate Cumulative Total of Debtor's professional fees and expenses are approximately $2,434,129 and the Paid Aggregate Cumulative Total of Debtor's professional fees and expenses are approximately $2,234,129. *See* ECF No. 389, p. 3; *see also* McAbee Declaration. Without the assistance of MGG, the Debtor is unable to pay these ongoing expenses and

appears to be administratively insolvent. *See* ECF No. 356, at p. 4 of 14; *In re Plaza Antillana Inc.*, No. 13-10013, 2014 WL 585299 at *11-12 (Bankr. D. P.R. Feb. 14, 2014) ("The court finds that the first prong under Section 1112(b)(4) has been satisfied, as Debtor generates no income because there is no on-going business and thus, is unable to pay for the commercial property's expenses, such as the property insurance policy and the security services"). While administrative insolvency is not expressly listed in Section 1112(b), it demonstrates diminution of the estate and a growing inability to repay creditors. *See In re BH S & B Holdings, LLC*, 439 B.R. 342, 350 (Bankr. S.D.N.Y. 2010).

### ii. There is No Reasonable Likelihood of Rehabilitation

28. To satisfy the second element of Section 1112(b)(4)(A):

> …a movant must demonstrate that the debtor does not have a reasonable likelihood of rehabilitation. As used in § 1112(b)(4)(A), "rehabilitation does not necessarily denote reorganization, which could involve liquidation. Instead, rehabilitation signifies something more, with it being described as 'to put back in good condition; re-establish on a firm, sound basis.'" … "'*Rehabilitation' is a different and ... much more demanding standard than 'reorganization.'*" … "The purpose of § 1112(b) (1) is to 'preserve estate assets by preventing the debtor in possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation.'"

*In re Creekside Sr. Apartments, L.P.*, 489 B.R. at 61 (internal citations omitted) (emphasis added).

29. "The issue of rehabilitation for purposes of Section 1112(b)(4)(A) is not the technical one of whether the debtor can confirm a plan, but, rather, whether the debtor's business prospects justify continuance of the reorganization effort." *In re TMT Procurement Corp.*, 534 B.R. 912, 920 (Bankr. S.D. Tex. 2015) (*quoting In re LG Motors, Inc.*, 422 B.R. 110, 116 (Bankr. N.D. Ill.2009)).

30. Here, even though the case has been pending for more than eight months and the Debtor is contemplating a liquidation of assets, the Debtor has not filed a plan or disclosure statement. *See* Case Docket *generally*. Instead, the Debtor has expressed its expectation that it will dismiss this case unless Mr. Safra pays an undefined "release price" to MGG that vacates the Sale Order and proposes a Chapter 11 plan. *See* ECF No. 356, at 4-5 of 14.

31. As of the filing of this Motion, Mr. Safra has not filed any pleadings or any statement with the Court that demonstrates his intent and ability to pay the "release price" *and* to propose a chapter 11 plan. There is therefore no evidence that a rehabilitation of the Debtor's business operations is reasonably in prospect or that the Debtor has a reasonable likelihood of rehabilitation. *See In re Plaza Antillana Inc.*, 2014 WL 585299 at *11-12 (citing *In re Creekside Senior Apts., L.P.,* 489 B.R. at 62)).

C. **Dismissal Appears to be More Appropriate than Conversion**

32. The United States Trustee has established cause under § 1112(b)(4)(A) to either dismiss or convert this case. The Debtor or another party in interest must now demonstrate that dismissal or conversion is not warranted. *See In re Hassen Imports P'ship*, 2013 WL 4428508 at *15 (*citing In re Lizeric Realty Corp.,* 188 B.R. 499, 503 (Bankr.S.D.N.Y.1995)).

33. Upon a showing of "cause" to dismiss or convert a case to Chapter 7 pursuant to Section 1112(b), the bankruptcy court must choose between conversion and dismissal based on the "'best interests of creditors and the estate.'" *See In re BH S & B Holdings, LLC*, 439 B.R. at 346; *see also Rand v. Porsche Fin. Servs., Inc. (In re Rand)*, 2010 WL 6259960, at *10 & n.14 (B.A.P. 9th Cir. Dec. 7, 2010) (internal citations omitted) (identifying ten factors courts have used to determine whether dismissal or conversion is in the best interests of creditors and the estate under §1112(b)(1)).

34. Dismissal of this case rather than conversion to Chapter 7 appears to be in the best interest of creditors. The Debtor is no longer operational and, following the sale of substantially all of the Debtor's assets, will have minimal remaining estate property left to administer. *Id.* (in choosing between dismissal and conversion, courts have considered "whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise" and "whether a plan has been confirmed and whether any property remains in the estate to be administered.").

35. Alternatively, the United States Trustee does not object to conversion of this case if the Court determines that is in the best interest of the Debtor's creditors and the estate.

### IV. CONCLUSION

Based on the foregoing, the United States Trustee requests that the Court enter an order (a) granting the Motion; (b) dismissing this case, or in the alternative, converting the case to Chapter 7 if the Court determines that such relief is in the best interests of the Debtor's creditors and the estate; and (c) granting such other relief as is just under the circumstances.

Dated: June 7, 2023

Respectfully submitted,

TRACY HOPE DAVIS
UNITED STATES TRUSTEE, REGION 17

By: /s/ Trevor R. Fehr
Trevor R. Fehr
Phillip J. Shine
Trial Attorneys for United States Trustee