1   Victor A. Sahn (CA Bar No. 97299)
        victor.sahn@gmlaw.com
2   Steve Burnell (CA Bar No. 286557)
        steve.burnell@gmlaw.com
3   **GREENSPOON MARDER LLP**
    1875 Century Park East, Suite 1900
4   Los Angeles, California 90067
    Telephone: 213.626.2311
5   Facsimile: 954.771.9264

6   Attorneys for Debtor in Possession,
    Spring Mountain Vineyard Inc.
7
                    **UNITED STATES BANKRUPTCY COURT**
8
                    **NORTHERN DISTRICT OF CALIFORNIA**
9
                          **SANTA ROSA DIVISION**
10

11  In re                              Case No. 1:22-bk-10381 CN

12  SPRING MOUNTAIN VINEYARD INC.,     Chapter 11

13              Debtor.                **FIRST AND FINAL APPLICATION FOR
                                       ALLOWANCE AND PAYMENT OF FEES
14                                     AND EXPENSES FOR ENOTRIAS,
                                       ELITE SOMMELIER  SERVICES**
15
                                       [Filed Concurrently with Declarations of
16                                     Kevin A. Krakora and Melissa L. Smith In
                                       Support Thereof]
17
                                       [Covering period of January 16, 2023 to
18                                     May 31, 2023]

19                                     <u>**Hearing Information:**</u>
                                       Date:      August 4, 2023
20                                     Time:      11:00 a.m.
                                       Place:     Courtroom 215
21                                                1300 Clay Street
                                                  Oakland, CA 94612
22

23

24

25

26

27

28

**TO THE HONORABLE CHARLES NOVACK, UNITED STATES BANKRUPTCY JUDGE, THE TWENTY LARGEST CREDITORS, THE UNITED STATES TRUSTEE FOR REGION 17, AND ALL INTERESTED PARTIES:**

Pursuant to 11 U.S.C. §§ 330 and Federal Rule of Bankruptcy Procedure 2016, and in compliance with the Court's *Guideline for Compensation and Expense Reimbursement of Professional and Trustee*, effective February 19, 2014 (the "Court Compensation Guidelines"), and the *Notice of Applicability of Large-Case United States Trustee Fee Guidelines* [Docket no. 99] (the "UST Fee Guidelines"), Enotrias, Elite Sommelier Services ("Enotrias" or "Applicant"), wine appraiser for Spring Mountain Vineyard Inc., a Delaware corporation and the debtor-in-possession in the above-captioned case ("Debtor"), hereby submits this first and final fee application (the "Final Fee Application") for allowance and payment of its professional fees in the total amount of $17,250.00 incurred from September 29, 2022 to May 31, 2023 (the "Application Period").

**I.**

**SUMMARY OF FEES AND EXPENSES REQUESTED IN THE**

**FINAL FEE APPLICATION**

**A.    General Information**

| | |
|---|---|
| Name of Applicant: | Enotrias, Elite Sommelier Services |
| Scope of Services: | Wine Appraiser |
| Petition Date: | September 29, 2022 |
| Retention Date: | Order entered on March 9, 2023 [Docket. no. 171] |
| Prior Interim Fee Applications: | None |

**B.    Total Fees and Expenses Requested in this Final Fee Application**

| | |
|---|---|
| Time Period Covered: | January 16, 2023 to May 31, 2023 |

**Total Amount of Fees Requested for the Application Period:**          **$17,250.00**

| | |
|---|---|
| Amount of Fees Previously Paid via Retainer: | $11,250.00 |

|  |  |
|---|---|
| Amount of Fees Previously Paid via the March Monthly Fee Statement (80%): | $4,800.00 |
| Amount of Fees Remaining to Be Paid: | $1,200.00 |

**Amount of Expenses Requested for the Application Period:** <u>**$0.00**</u>

|  |  |
|---|---|
| Amount of Expenses Previously Paid via Monthly Fee Statements: | $0.00 |
| Amount of Fees Remaining to Be Paid: | $0.00 |

**Total Fees and Expenses Requested for the Application Period:** <u>**$17,250.00**</u>

**C.**    <u>**Other Information**</u>

|  |  |
|---|---|
| All Professionals Blended Rate in this Final Fee Application: | $300.00 |
| Number of Professionals in this Final Fee Application: | 1 |
| Number of Timekeepers billing fewer than 15 hours during the Application Period: | 0 |
| Difference Between Fees Budgeted and Compensation Sought in this Final Fee | $5,250.00 |

**II.**

<u>**CASE STATUS**</u>

**A.**    <u>**Debtor's Prepetition Operations and Capital Structure**</u>

Prior to bankruptcy, Debtor has owned and operated the Spring Mountain Vineyard in Napa County, California (the "Vineyard") since 1992. The Vineyard consists of up to 70 total employees during harvest season, approximately 35 vineyard blocks across 211 acres, millions of dollars in annual sales, and relationships with dozens of suppliers and thousands of customers. As a result of the Glass Fire of 2020 and the Covid-19 pandemic, Debtor became unable to pay its operating expenses and debt service due to revenue shortfalls, leading to Debtor's bankruptcy.

Debtor traditionally financed its operations through secured lending. In October 2018, Debtor obtained an $185 Million (the "Loan") from fourteen lenders with MGG California LLC serving as administrative agent and collateral agent for those lenders (the fourteen lenders with MGG California LLC, collectively, "MGG"). Debtor defaulted on its repayment terms and elected to file for bankruptcy protection once its forbearance agreements with MGG were about to expire with no extension in prospect.

### B.     The Bankruptcy Filing and Sale Order

On September 29, 2022 (the "Petition Date"), Debtor commenced the instant bankruptcy case. Kevin A. Krakora was appointed Chief Restructuring Officer of Debtor on August 22, 2022 and he continues in that role post-petition. No trustee or creditors' committee has been appointed in this case.

After extensive marketing by Debtor, on April 7, 2023, the *Order (I) Authorizing And Approving The Sale Of Substantially All Of The Debtor's Assets And (II) Granting Related Relief* (the "Sale Order") [Docket no. 318] was entered. The Court approved the asset purchase agreement between Debtor and MGG (the "APA") in which substantially all of Debtor's assets were sold to MGG, after auction (the "Sale"). MGG's credit bid totaling $42 Million was the highest and best offer received, and the Sale must close by no later than July 7, 2022 (the "Closing Date").

In addition, MGG and Debtor's ultimate beneficial owner, Mr. Jacqui Safra ("Mr. Safra") entered into a Binding Settlement Agreement dated as of April 6, 2023 (the "Safra Settlement Agreement"). Debtor is not a party to the Safra Settlement Agreement. It is Debtor's understanding, however, that under the Safra Settlement Agreement, that Mr. Safra has until June 28, 2023 to pay a "Release Price" to MGG ("Release Price Date"). If this deadline is met, the Sale Order may be vacated by request from Debtor with the written consent of MGG.

### C.     The Final DIP Order and Amendments Thereto

With regard to cash collateral, since the Loan is secured by substantially all of Debtor's personal and real property, Debtor negotiated with MGG for continued consensual use of cash collateral until December 31, 2022. Each of these matters was subsequently approved by Court orders [Docket nos. 48, 76, 92, and 120]. In spite of the uniqueness of its Vineyard and wine,

however, Debtor generated insufficient revenue from its post-petition operations to pay its normal course operating expenses and service MGG's debt. In order to cover the shortfalls in operating costs from the Petition Date until December 31, 2022, Debtor received approximately $2.05 Million from sources related to Mr. Jaqui Safra, Debtor's ultimate beneficial owner.

Debtor subsequently reached an agreement with MGG for debtor in possession financing to cover the operating cost shortfalls incurred after January 1, 2023. The Court entered the *Final Order: (I) Authorizing Secured Post-Petition Financing Pursuant to 11 U.S.C. § 364; (II) Extending The Term For Cash Collateral Usage Pursuant To Existing Cash Collateral Orders To April 15, 2023, And (III) Granting Related Relief* (the "Final DIP Order") [Docket no. 224] entered on January 27, 2023.

Debtor successfully moved to amend the Final DIP Order [Docket no. 383] to facilitate Debtor's continued use of cash collateral and upsizing the prior DIP Loan to $20 Million, inclusive of amounts previously borrowed, for use during the interim period between April 15, 2023 and the earlier of the Closing Date or Release Price Date. The *Order Amending Final Order: (I) Authorizing Secured Post-Petition Financing Pursuant to 11 U.S.C. § 364; (II) Extending The Term For Cash Collateral Usage Pursuant To Existing Cash Collateral Orders To April 15, 2023, And (III) Granting Related Relief* (the "Amended Final DIP Order") [Docket no. 424] entered on June 9, 2023.

**D.     The Employment of Enotrias and Prior Interim Fee Application**

The application to employ Enotrias was filed on January 20, 2023 (the "Employment Application") [Docket no. 212]. A copy of the Employment Application is attached hereto as **Exhibit 1** and incorporated herein by this reference. As detailed in the Employment Application, Melissa L. Smith ("Ms. Smith") was highly qualified to perform the appraisal services requested by Debtor. She is certified by the Court of Master Sommeliers, The Culinary Institute of America, The California State Bar Association, The Sake Education Counsel, and the Appraisers Association for USPAP. Enotrias was employed to appraise all vintages of Debtor's Estate Cabernet Sauvignon and the Elivette, a Bordeaux Blend, bottled wine inventory. The Estate Cabernet Sauvignon includes vintages from 1979 up to 2019 and the Elivette includes vintages starting from 1996 up to 2019

(collectively, the "Appraised Wine"). Pursuant to the terms of its employment, Entorias was to be paid a flat rate of $12,000 which, included 25 hours of appraisal service by Enotrias and Ms. Smith. To accomplish the expedited one-day tasting requested by Debtor, Ms. Smith employed five additional sommeliers under the Enotrias umbrella who were each paid $750 for their one day of service. To the extent additional hours were needed to complete the appraisal for Debtor, Enotrias would bill at $300/hour. The Employment Application was approved by order entered on March 9, 2023 (the "Employment Order") [ Docket no. 268]. A copy of Enotrias' employment order is attached hereto as **Exhibit 2** and incorporated herein by this reference. Debtor paid Enotrias a retainer of $11,250.00.

Pursuant to the Court-approved interim compensation procedures included in the Employment Application, Enotrias filed its monthly fee statement requesting payment of 80% of its outstanding interim compensation on March 15, 2023 (the "February Monthly Fee Statement") [Docket no. 272]. A copy of the February Monthly Fee Statement is attached hereto as **Exhibit 3** and incorporated herein by this reference. After no objections were filed, Debtor paid Enotrias $4,800.00 in interim compensation, leaving an unpaid balance of $1,200.00.

At the end of May 2023, the bankruptcy estate was holding approximately $1,116,300 in cash and has a DIP loan facility of up to $20 Million (inclusive of prior amounts previously borrowed by Debtor) with MGG to pay operating expenses, including professional fees, pursuant to the Court-approved Order Amending Final DIP Order. Moreover, Debtor's bankruptcy estate will incur no capital gains tax from the Sale. *See Motion Of Chapter 11 Debtor For Authorization To Disburse Allowed Professional Fees And Costs Previously Not Authorized For Distribution By The Court (Twenty Percent Holdback Pursuant to Monthly Professional Fee Compensation Procedures)* [Docket no. 429].

The deadlines under 11 U.S.C. § 1121 for Debtor to file its chapter 11 plan and obtain confirmation of the plan are July 26, 2023 and September 23, 2023, respectively [Docket no. 270].

///

///

**III.**

**PROFESSIONAL FEES REQUESTED IN THIS FINAL FEE APPLICATION**

Applicant incurred 45 total hours for total fees of $17,250.00 during the Application Period. The professional fees charged by Applicant were billed in accordance with Applicant's existing billing rates and procedures in effect during the Application Period. The hourly rates charged by Applicant for services rendered by its professionals are the same rates charged in comparable bankruptcy and non-bankruptcy related matters.

The services for which Applicant requests compensation were performed for, or on behalf of Debtor, and not on behalf of any creditor, or for the benefit of any other person. At all times covered by this Final Fee Application, Applicant diligently sought to fulfill its duty as the wine appraiser for Debtor. Applicant has no agreement with any other person, firm, or entity for the division or sharing of any fees received in this case, in violation of the Bankruptcy Code, the Bankruptcy Rules, or any other provision of state or federal law. The services rendered by Applicant were reasonable, necessary, proper, and beneficial to Debtor and its bankruptcy estate. Services performed by Applicant throughout this case were performed in a professional, skilled, and expeditious manner requiring substantially less time than would have been required of professionals with less expertise and direct experience. Applicant made every attempt to reduce hours expended. Pursuant to the Court Compensation Guidelines, Applicant is not requesting reasonable fees and expenses incurred preparing this Final Fee Application.

Applicant does not maintain computerized time records detailing the time spent by all professionals in Applicant's matters in the ordinary course of business. In an attempt to comply with UST Fee Guidelines, Applicant maintained its records in a notebook and Google calendar. Applicant incurred a total of 45 hours on this matter as follows:

| Date | Timekeeper | Time | Description |
|------|-----------|------|-------------|
| 1/13/2023 | MLS | 1.0 | Phone with S. Burnell of Debtor's counsel (Not charged) |
| 1/17/2023 | MLS | 5.0 | On-site tasting at Spring Mountain Vineyard |
| 1/18/2023 | MLS | 8.0 | SMV Valuation |
| 1/20/2023 | MLS | 11.0 | SMV Valuation |
| 1/21/2023 | MLS | 8.0 | SMV Valuation |
| 1/22/2023 | MLS | 2.0 | SMV Valuation |

| 1/25/2023 | MLS | 4.0 | SMV Valuation |
|---|---|---|---|
| 1/26/2023 | MLS | 5.0 | SMV Valuation |
| 1/27/2023 | MLS | 1.5 | SMV Wrap Up, Valuation Report |
| 1/30/2023 | MLS | 0.5 | Final Phone Call |

## IV.

## SUMMARY OF PROFESSIONAL SERVICES RENDERED BY APPLICANT

## DURING THE APPLICATION PERIOD

During the Application Period, Enotrias rendered substantial professional services to Debtor in order to efficiently and economically assist Debtor in its ongoing restructuring efforts and to administer the chapter 11 case. Specifically, the services performed by Entorias were vital and necessary to the Court-approved sale process because an independent valuation was requested by the various potential bidders and served as an important reference point to them in preparing their offers to purchase Debtor's assets.

Applicant included the wine tasting and initial estimate of the valuation as part of the initial 25 hours. On January 17, 2023, Applicant spent one-day at the winery tasting the Appraised Wine. The tasting took 5 hours (not including drive time and expenses which were not charged). Applicant, Debtor's winemaker, and Peter Ekman, met on-site to taste through targeted samplings of wines. Twenty-six wines were pulled from Debtor's cellar for the tasting. Applicant helped to open and pour the Appraised Wine, conducted tastings in flights of 6, and re-tasting as necessary. The tasting was necessary to determine the commercial viability of the wines.

Analyzing the fair market value of the Appraised Wine proved difficult for Applicant, however, because the Appraised Wine's lack of retail store presence. As a result, Applicant was required to utilize an alternative approach by analyzing the presence of the Appraised Wines on restaurant wine lists around the country. This was a labor-intensive process in which Applicant used alternative sources of information to determine the fair market value of the wine, including online research, reaching out directly to restaurants selling the Appraised Wines, and reaching out to available to wine professionals. Applicant pulled data from restaurants with wine lists available online, as well as lists provided directly to Applicant via email. Efforts were made

to reach out to all relevant restaurant accounts (not including private clubs because their pricing structures are different from public restaurants). Some restaurants did not respond to outreach. Applicant reviewed the Appraised Wines' sales sheet provided by Debtor with all involved, and kept Debtor and its professionals appraised of the additional time being expended on this matter. Applicant further incurred 1.5 hours preparing the final appraisal report. Applicant did not charge for travel time, nor any of the phone calls or emails that have been a part of this bankruptcy proceeding, as that would have added on several more hours to this project and increased the compensation requested.

## V.

## NO EXPENSES ARE REQUESTED IN THE FINAL FEE APPLICATION

Applicant incurred $0.00 in in expenses during the Application Period. Accordingly, no request for award of expenses is included in this Final Fee Application.

## VI.

## THE FEES SHOULD BE ALLOWED AND PAID ON A FINAL BASIS

## UNDER 11 U.S.C. § 330

"Section 330(a)(1) authorizes 'reasonable compensation for actual, necessary services rendered' by a professional." *In re Mednet*, 251 B.R. 103, 106 (B.A.P. 9th Cir. 2000). "Section 330(a)(3)(A) outlines factors a court should consider when determining what is reasonable compensation for services rendered" including, but not limited to, the time spent on such services, the rates charged for such services, whether the services were necessary to the administration of, or beneficial at the time at which the services were rendered toward the completion of the bankruptcy case. 11 U.S.C. § 330(a)(3); *Mednet*, 251 B.R. at 106. The court's allowance of fees is reviewed for abuse of discretion. *See id*.

In this case, Enotrias rendered substantial professional services to Debtor in order to efficiently and economically assist Debtor in its ongoing restructuring efforts and to administer the chapter 11 case. Specifically, the services performed by Entorias were vital and necessary to the Court-approved sale process because an independent valuation was requested by the various potential bidders and served as an important reference point to them in preparing their offers to

purchase Debtor's assets. The time spent by Applicant for services was reasonable, the rates are commensurate with rates charged by other wine appraisers, and the services were reasonably likely to benefit the bankruptcy estate by advancing Debtor's reorganization effort and necessary for the administration of the case. Accordingly, because Applicant has satisfied the requirements of 11 U.S.C. § 330 for allowance and payment of its fees on a final basis, the Final Fee Application should be granted in full. A proposed order is attached hereto as **Exhibit 4** and incorporated herein by this reference.

## VII.

## STATEMENTS REQUIRED BY THE UST FEE GUIDELINES

Pursuant to Subsection C.5 of Appendix B of the UST Fee Guidelines, Applicant provides the following statements required thereto:

1. "Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period? If so, please explain." **Response: No.**

2. "If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?"

   **Response: Yes, and Debtor has no objection.**

3. "Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?"

   **Response: No.**

4. "Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.). If so, please quantify by hours and fees."

   **Response: No.**

5. "Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees." **Response: No.**

6. "If the fee application includes any rate increases since retention:

    a. Did you client review and approve those rate increases in advance?

    b. Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11–458?" **Response: Not applicable.  Enotrias has not increased rates since the start of the case.**

## VIII.

## CONCLUSION

Based on the foregoing, Applicant requests that the Court enter an order: (i) allowing Enotrias, on a final basis, total fees in the amount of $ 17,250.00, and (ii) ordering immediate payment to Enotrias, on a final basis, of the remaining unpaid balance of $1,200.00.

DATED:  July 3, 2023                    Respectfully submitted,

                                        **GREENSPOON MARDER LLP**


                                        By:   _____/s/ Victor A. Sahn_____
                                              Victor A. Sahn
                                              Steve Burnell
                                              Attorneys for Debtor in Possession,
                                              Spring Mountain Vineyard Inc.

SB 54673943v6

# DECLARATION OF KEVIN A. KRAKORA

I, Kevin A. Krakora, declare as follows:

1. I am an individual over the age of (18) eighteen years old. The matters stated herein are true and correct and within my personal knowledge or have been explained to me by Debtor's counsel. If called to testify as a witness in this matter, I could and would competently testify under oath to the truth of the statements set forth herein.

2. I am the Chief Restructuring Officer of Spring Mountain Vineyard Inc., a Delaware corporation ("Debtor"). I make this declaration solely in capacity as Chief Restructuring Officer of Debtor.

3. I have been the Chief Restructuring Officer of Debtor since August 22, 2022. In this role, I am involved in its day-to-day operations including issues regarding financial matters, issues regarding operational concerns from the vineyard operations, sales issues and all related matters to its doing business.

4. I make this declaration in support of the foregoing, attached *First And Final Application For Allowance And Payment Of Fees And Expenses For Enotrias, Elite Sommelier Services* (the "Final Fee Application").[1]

5. Prior to bankruptcy, Debtor has owned and operated the Spring Mountain Vineyard in Napa County, California (the "Vineyard") since 1992. The Vineyard consists of up to 70 total employees during harvest season, approximately 35 vineyard blocks across 211 acres, millions of dollars in annual sales, and relationships with dozens of suppliers and thousands of customers. As a result of the Glass Fire of 2020 and the Covid-19 pandemic, Debtor became unable to pay its operating expenses and debt service due to revenue shortfalls, leading to Debtor's bankruptcy.

6. In October 2018, Debtor obtained an $185 Million (the "Loan") from fourteen lenders with MGG California LLC serving as administrative agent and collateral agent for those

---

[1] Unless otherwise defined herein, capitalized terms have the same meaning given to them in the foregoing Final Fee Application.

lenders (the fourteen lenders with MGG California LLC, collectively, "MGG"). Debtor defaulted on its repayment terms and elected to file for bankruptcy protection once its forbearance agreements with MGG were about to expire with no extension in prospect.

7.     On September 29, 2022 (the "Petition Date"), Debtor commenced the instant bankruptcy case. I was appointed Chief Restructuring Officer of Debtor on August 22, 2022, and I continue in that role post-petition. No trustee or creditors' committee has been appointed in this case.

8.     Debtor conducted an extensive marketing process, in which the work product of Applicant was shared with prospective bidders as part of the due diligence process. After this extensive marketing by Debtor, on April 7, 2023, the *Order (I) Authorizing And Approving The Sale Of Substantially All Of The Debtor's Assets And (II) Granting Related Relief* (the "Sale Order") [Docket no. 318] was entered. The Court approved the asset purchase agreement between Debtor and MGG (the "APA") in which substantially all of Debtor's assets were sold to MGG, after auction (the "Sale"). MGG's credit bid totaling $42 Million was the highest and best offer received, and the Sale must close by no later than July 7, 2022 (the "Closing Date").

9.     Debtor reached an agreement with MGG for debtor in possession financing to cover the operating cost shortfalls incurred after January 1, 2023. The Court entered the *Final Order: (I) Authorizing Secured Post-Petition Financing Pursuant to 11 U.S.C. § 364; (II) Extending The Term For Cash Collateral Usage Pursuant To Existing Cash Collateral Orders To April 15, 2023, And (III) Granting Related Relief* (the "Final DIP Order") [Docket no. 224] entered on January 27, 2023.

10.    Debtor successfully moved to amend the Final DIP Order [Docket no. 383] to facilitate Debtor's continued use of cash collateral and upsizing the prior DIP Loan to $20 Million, inclusive of amounts previously borrowed, for use during the interim period between April 15, 2023 and the earlier of the Closing Date or Release Price Date. The *Order Amending Final Order: (I) Authorizing Secured Post-Petition Financing Pursuant to 11 U.S.C. § 364; (II) Extending The Term For Cash Collateral Usage Pursuant To Existing Cash Collateral Orders To April 15, 2023, And (III) Granting Related Relief* (the "Amended Final DIP Order") [Docket no. 424] entered on June 9,

2023.

11.     At the end of May 2023, the bankruptcy estate was holding approximately $1,116,300 in cash and has a DIP loan facility of up to $20 Million (inclusive of prior amounts previously borrowed by Debtor) with MGG to pay operating expenses, including professional fees, pursuant to the Court-approved Order Amending Final DIP Order.  Moreover, it is my understanding that Debtor's bankruptcy estate will incur no capital gains tax from the Sale. *See Motion Of Chapter 11 Debtor For Authorization To Disburse Allowed Professional Fees And Costs Previously Not Authorized For Distribution By The Court (Twenty Percent Holdback Pursuant to Monthly Professional Fee Compensation Procedures)* [Docket no. 429].

12.     The deadlines under 11 U.S.C. § 1121 for Debtor to file its chapter 11 plan and obtain confirmation of the plan are July 26, 2023 and September 23, 2023, respectively [Docket no. 270].

13.     I have reviewed the Final Fee Application and the supporting billing charts/statement identifying $17,250.00 of total fees and $0.00 in expenses incurred by Enotrias during the Application Period.  Debtor has no objections to the Final Fee Application and supports Enotrias' request for allowance and immediate payment of the unpaid balance of $1,200.00 owed to Enotrias.  These services were reasonably likely to benefit Debtor's bankruptcy estate and were necessary to the administration of the bankruptcy case.

I declare under penalty of perjury that the forgoing is true and correct.

Executed on July 3, 2023.

Kevin A. Krakora,
Chief Restructuring Officer

## DECLARATION OF MELISSA L. SMITH

I, Melissa S. Smith, declare as follows:

1.     I am an individual over the age of (18) eighteen years old. The matters stated herein are true and correct and within my personal knowledge or have been explained to me by Debtor's counsel. If called to testify as a witness in this matter, I could and would competently testify under oath to the truth of the statements set forth herein.

2.     I am the principal of Enotrias, Elite Sommelier Services ("Enotrias" or "Applicant"). I make this declaration solely in capacity as principal of Enotrias.

3.     I make this declaration in support of the foregoing, attached *First And Final Application For Allowance And Payment Of Fees And Expenses For Enotrias, Elite Sommelier Services* (the "Final Fee Application").[2]

4.     The application to employ Enotrias was filed on January 20, 2023 (the "Employment Application") [Docket no. 212]. A true and correct copy of the Employment Application is attached hereto as **Exhibit 1** and incorporated herein by this reference. As detailed in the Employment Application, I am highly qualified to perform the appraisal services requested by Debtor. I am a certified by the Court of Master Sommeliers, The Culinary Institute of America, The California State Bar Association, The Sake Education Counsel, and the Appraisers Association for USPAP. Enotrias was employed to appraise all vintages of Debtor's Estate Cabernet Sauvignon and the Elivette, a Bordeaux Blend, bottled wine inventory. The Estate Cabernet Sauvignon includes vintages from 1979 up to 2019 and the Elivette includes vintages starting from 1996 up to 2019 (collectively, the "Appraised Wine"). Pursuant to the terms of its employment, Entorias was to be paid a flat rate of $12,000 which, included 25 hours of appraisal service by me. To accomplish the expedited one-day tasting requested by Debtor, I employed five additional sommeliers under the Enotrias umbrella who were each paid $750 for their one day of service. To the extent additional hours were needed to complete the appraisal for Debtor, Enotrias would bill at $300/hour.

---

[2] Unless otherwise defined herein, capitalized terms have the same meaning given to them in the foregoing Final Fee Application.

5. The Employment Application was approved by order entered on March 9, 2023 (the "Employment Order") [ Docket no. 268]. A true and correct copy of Enotrias' employment order is attached hereto as **Exhibit 2** and incorporated herein by this reference. Debtor paid Enotrias a retainer of $11,250.00.

6. Pursuant to the Court-approved interim compensation procedures included in the Employment Application, Enotrias filed its monthly fee statement requesting payment of 80% of its outstanding interim compensation on March 15, 2023 (the "February Monthly Fee Statement") [Docket no. 272]. A true and correct copy of the February Monthly Fee Statement is attached hereto as **Exhibit 3** and incorporated herein by this reference. After no objections were filed, Debtor paid Entorias $4,800.00 in interim compensation, leaving an unpaid balance of $1,200.00.

7. Applicant incurred 45 total hours for total fees of $17,250.00 during the Application Period. The professional fees charged by Applicant were billed in accordance with Applicant's existing billing rates and procedures in effect during the Application Period. The hourly rates charged by Applicant for services rendered by its professionals are the same rates charged in comparable bankruptcy and non-bankruptcy related matters.

8. The services for which Applicant requests compensation were performed for, or on behalf of Debtor, and not on behalf of any creditor, or for the benefit of any other person. At all times covered by this Final Fee Application, Applicant diligently sought to fulfill its duty as the wine appraiser for Debtor. Applicant has no agreement with any other person, firm, or entity for the division or sharing of any fees received in this case, in violation of the Bankruptcy Code, the Bankruptcy Rules, or any other provision of state or federal law. The services rendered by Applicant were reasonable, necessary, proper, and beneficial to Debtor and its bankruptcy estate. Services performed by Applicant throughout this case were performed in a professional, skilled, and expeditious manner requiring substantially less time than would have been required of professionals with less expertise and direct experience. Applicant made every attempt to reduce hours expended. Pursuant to the Court Compensation Guidelines, Applicant is not requesting reasonable fees and expenses incurred preparing this Final Fee Application.

9. Applicant does not maintain computerized time records detailing the time

spent by all professionals in Applicant's matters in the ordinary course of business.  In an attempt to comply with UST Fee Guidelines, Applicant maintained its records in a notebook and Google calendar.  Applicant incurred a total of 45 hours on this matter as follows:

| Date | Timekeeper | Time | Description |
|---|---|---|---|
| 1/13/2023 | MLS | 1.0 | Phone with S. Burnell of Debtor's counsel (Not charged) |
| 1/17/2023 | MLS | 5.0 | On-site tasting at Spring Mountain Vineyard |
| 1/18/2023 | MLS | 8.0 | SMV Valuation |
| 1/20/2023 | MLS | 11.0 | SMV Valuation |
| 1/21/2023 | MLS | 8.0 | SMV Valuation |
| 1/22/2023 | MLS | 2.0 | SMV Valuation |
| 1/25/2023 | MLS | 4.0 | SMV Valuation |
| 1/26/2023 | MLS | 5.0 | SMV Valuation |
| 1/27/2023 | MLS | 1.5 | SMV Wrap Up, Valuation Report |
| 1/30/2023 | MLS | 0.5 | Final Phone Call |

10.     During the Application Period, Enotrias rendered substantial professional services to Debtor in order to efficiently and economically assist Debtor in its ongoing restructuring efforts and to administer the chapter 11 case.  Specifically, the services performed by Entorias were vital and necessary to the Court-approved sale process because an independent valuation was requested by the various potential bidders and served as an important reference point to them in preparing their offers to purchase Debtor's assets.

11.     Applicant included the wine tasting and initial estimate of the valuation as part of the initial 25 hours.  On January 17, 2023, Applicant spent one-day at the winery tasting the Appraised Wine.  The tasting took 5 hours (not including drive time and expenses which were not charged).  Applicant, Debtor's winemaker, and Peter Ekman, met on-site to taste through targeted samplings of wines.  Twenty-six wines were pulled from Debtor's cellar for the tasting..  Applicant helped to open and pour the Appraised Wine, conducted tastings in flights of 6, and re-tasting as necessary.  The tasting was necessary to determine the commercial viability of the wines.

12.     Analyzing the fair market value of the Appraised Wine proved difficult for Applicant, however, because the Appraised Wine's lack of retail store presence.  As a result, Applicant was required to utilize an alternative approach by analyzing the presence of the Appraised Wines on restaurant wine lists around the country.  During this detailed process, Applicant used

alternative sources of information to determine the fair market value of the wine, including online research, reaching out directly to restaurants selling the Appraised Wines, and reaching out to available to wine professionals. Applicant pulled numbers from restaurants with wine lists available online, as well as lists provided directly to Applicant via email. Efforts were made to reach out to all relevant restaurant accounts (not including private clubs because their pricing structures are different from public restaurants). Some restaurants did not respond to outreach. Applicant reviewed the Appraised Wines' sales sheet provided to me by Debtor with all involved, and kept Debtor and its professionals appraised of the additional time being expended on this matter. Applicant further incurred 1.5 hours preparing the final appraisal report. Applicant did not charge for travel time, nor any of the phone calls or emails that have been a part of this bankruptcy proceeding, as that would have added on several more hours to this project.

I declare under penalty of perjury that the forgoing is true and correct.

Executed on June 22, 2023.

Melissa L. Smith

SB 54673943v4

# EXHIBIT 1 re: First & Final Fee App

Victor A. Sahn (CA Bar No. 97299)
  *victor.sahn@gmlaw.com*
Mark S. Horoupian (CA Bar No. 175373)
  *mark.horoupian@gmlaw.com*
Steve Burnell (CA Bar No. 286557)
  *steve.burnell@gmlaw.com*
**GREENSPOON MARDER LLP**
a Florida limited liability partnership
333 South Grand Ave., Suite 3400
Los Angeles, CA 90071
Telephone: 213.626.2311
Facsimile: 213.629.4520

Attorneys for Debtor in Possession,
Spring Mountain Vineyard Inc.

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SANTA ROSA DIVISION

| | |
|---|---|
| In re: | Case No. 1:22-bk-10381 CN |
| SPRING MOUNTAIN VINEYARD INC., a Delaware corporation, | Chapter 11 |
| Debtor. | **APPLICATION TO EMPLOY APPRAISER FOR THE DEBTOR'S BOTTLED WINE INVENTORY.** |
| Federal EIN: 36-3844911 | **DECLARATIONS OF KEVIN A KRAKORA AND MELISSA L. SMITH IN SUPPORT THEREOF** |
| | **Hearing Information:** |
| | Date: February 15, 2023 |
| | Time: 11:00 a.m. |
| | Place: U.S. Bankruptcy Court |
| | Courtroom 215 |
| | 1300 Clay Street |
| | Oakland, CA 94612 |

019

SB 52780857v4

TO THE HONORABLE CHARLES NOVACK, UNITED STATES BANKRUPTCY JUDGE, THE TWENTY LARGEST UNSECURED CREDITORS, MGG CALIFORNIA LLC, THE OFFICE OF THE UNITED STATES TRUSTEE, AND PARTIES ENTITLED TO NOTICE:

Pursuant to 11 U.S.C. §§ 327(a), 330, 331, and Federal Rule of Bankruptcy Procedure 2014, Spring Mountain Vineyard Inc., a Delaware corporation, the debtor in possession in the above-captioned case (the "Debtor"), hereby applies for authority to employ Enotrias, Elite Sommelier Services ("Enotrias"), effective as of January 13, 2023, to appraise all vintages of the Debtor's Estate Cabernet Sauvignon and the Elivette, a Bordeaux Blend, bottled wine inventory. The Estate Cabernet Sauvignon includes vintages from 1979 up to 2019 and the Elivette includes vintages starting from 1996 up to 2019 (collectively, the "Property"). At the Debtor's request, Enotrias will also provide, if necessary, the Additional Services (defined below) pursuant to the terms and conditions stated in this employment application (the "Application"). This Application is supported by the attached declarations of Kevin A. Krakora ("Krakora Declaration.") and Melissa L. Smith, the principal of Enotrias ("Smith Declaration").[1]

## I.

## BACKGROUND

Since 1992, the Debtor has owned the Spring Mountain Vineyard in Napa County, California (the "Vineyard"). The Vineyard is the primary asset of the Debtor, an ongoing business with millions of dollars in annual sales, and relationships with dozens of suppliers and thousands of customers. The Debtor's business consists primarily of growing grapes in its 135 vineyard blocks, harvesting those grapes and pressing them into wine in casks, bottling that wine from casks, and the storage and sale of that wine.

In October, 2018, the Debtor obtained a loan (the "Loan") of $185 million from MGG

---

[1] Unless otherwise noted, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code"), and all references to the "Bankruptcy Rules" are to the Federal Rules of Bankruptcy Procedure ("FRBP"), 1001 et seq.

California LLC, as administrative and collateral agent for a group of lenders affiliated with that entity ("MGG").  As a result of amendments to that loan agreement, and certain additional agreements, MGG possesses a security interest in substantially all of the Debtor's assets.  MGG also possesses a security interest in certain non-Debtor assets owned by the Debtor's ultimate beneficial owner Mr. Jacob E. Safra ("Mr. Safra") and the Loan is guaranteed by Mr. Safra.

The Debtor commenced this bankruptcy case on an emergency basis on September 29, 2022 (the "Petition Date"), to prevent MGG from seizing the Vineyard and the Debtor's personal property.  The Debtor's Chief Restructuring Officer is Kevin A. Krakora (the "CRO") who was appointed on August 22, 2022 and continues in that role post-petition.

On October 27, 2022, the Debtor filed its schedules and listed bottled wine inventory with book value of $18,896,237 and retail value of $161,432,141 (the "Bottled Wine Inventory").  See the Debtor's Schedule A/B filed on Oct. 27, 2022 [Docket no. 78], 3.  According to the Debtor's records, on the Petition Date, the Bottled Wine Inventory consisted of 105,671 natural cases and 69,745 9L cases.  The majority of the Bottled Wine Inventory consists of the Property to be appraised.

On November 8, 2022, the United States Trustee (the "U.S. Trustee") filed a "Notice Of Applicability Of Large-Case United States Trustee Fee Guidelines" [Docket No. 99] (the "Fee Guidelines").

**II.**

**PROPOSED EMPLOYMENT OF ENOTRIAS**

**A.      Scope And Terms Of Employment**

**1.      Services To Be Provided**

The Debtor now seeks to employ Enotrias to provide a written Fair Market Value appraisal of the Property (the "Appraisal").  The Appraisal will be based on the Debtor's records and targeted tasting of the Property, but Entorias will not be conducting an in-person inspection to verify the quantities of the Property listed in the Bottled Wine Inventory.  The Appraisal is necessary for the Debtor to fulfill its duties as debtor in possession and for use in its continued chapter 11 bankruptcy case, including any potential sale of assets or reorganization efforts.   In

addition, if necessary and at the Debtor's request, Enotrias may provide additional services, such as consulting with prospective buyers, or providing deposition or court testimony regarding the Appraisal (the "Additional Services").  A copy of the proposed Appraisal Agreement Between Enotrias and the Debtor (the "Engagement Agreement") is attached hereto as **Exhibit 1** and incorporated herein by this reference.

To the extent there is a conflict between the Engagement Agreement and the Application, the terms of the Application and the order granting the Application shall govern.

he services of Enotrias are required by the Debtor because the Appraisal is very important to the sale process.  The Debtor is currently engaged in a marketing and sale process of its Vineyard business and has employed BNP Paribas Securities, Inc. ("BNP Paribas") as its investment banker.  One of the items of information which BNP Paribas must have for the many individual entities who are interested in the Vineyard is an independent valuation of the Property by a qualified appraiser.  Those prospective purchasers will use the Appraisal as an important reference point to putting their offer to purchase the Vineyard. As such, the Debtor requires the services of the Enotrias, and time is of the essence since the Appraisal is a necessary for the sale process.

The principal of Enotrias, Melissa L. Smith ("Ms. Smith"), is highly qualified to perform the Appraisal.  She  is certified by the Court of Master Sommeliers, The Culinary Institute of America, The California State Bar Association, The Sake Education Counsel, and the Appraisers Association for USPAP. Ms. Smith's work has been published in print and online, and she is often used as a trusted source for industry news.  She is a Culinary Institute of America trained chef that spent 15 years in some of the top kitchens in the country as well as Japan, including stints at the French Laundry, and at Terra, under chef Hiro Sone.

While maintaining a full time position as the Head Sommelier for K&L Wine Merchants, the largest online wine and spirits retailer in the country, she developed the first iPhone App for wine pronunciation, the Enotria Guide, and simultaneously created Enotrias, providing cellar organization and wine appraisal services to top collectors in the Bay Area.  After over a decade working with various collections, she developed proprietary software unique to Enotrias, allowing

SB 52780857v4

for wine cellar inventories that are the most efficient and accurate in the industry, and compatible with commonly used cloud based inventory platforms.

In 2018, Ms. Smith became the first person certified by the California State Bar Association for her continuing education seminar on The Valuation and Appraisal of Wine Collections, and in 2020 her CLE was credited in Texas, Oregon, Washington, Idaho, Utah, Colorado, New York, Connecticut, Illinois, and later in Florida. Her reputation for providing high profile clients with cellar services has led to a series of MCLE seminars, where she works directly with Family Law and Trust and Estate attorneys as a valued resource for legal cases, and USPAP compliant appraisals.

In 2022, Ms. Smith created the world's first online Wine Collecting Master Class, based on the one-hour seminar on wine collecting that has been attended by wine enthusiasts and attorneys around the United States.  A copy of Ms. Smith's qualifications are attached hereto as **Exhibit 2** and incorporated herein by this reference.

### 2.        Compensation and Retainer

The Debtor proposes to employ Enotrias pursuant to Section 327(a), and at the expense of the bankruptcy estate pursuant to Sections 330 and 331 in accordance with the terms and conditions stated in this Application.

Enotrias will charge a flat rate of $12,000 for preparing the Appraisal.  This fee represents Enotrias' estimate that 25 hours will be required for Ms. Smith to complete the Appraisal.   Given the large number of wines and vintages to be appraised, Ms. Smith will be leading a team of 5-6 extra wine professionals to assist Ms. Smith in completing all the tastings needed in one day, as requested by the Debtor.  This will also bring substantial creditability to the final Appraisal and the team's services are covered by the flat rate.  If preparing the Appraisal requires more than 25 hours of time, Enotrias will promptly notify the Debtor of the revised estimate and upon the Debtor's authorization, continue working to complete the Appraisal.  Debtor will compensate Enotrias for such additional time spent over the 25 hour estimate at Enotrias' current hourly rate of $300/hour (the "Hourly Rate").  Finally, for any Additional Services provided, if any, Enotrias will charge the Hourly Rate.

1     There are no arrangements between Enotrias and any other person or entity for the sharing

2     of compensation received or to be received in connection with the representation of the Debtor,

3     except insofar as such compensation may be shared among the employees of Enotrias and the Ms.

4     Smith's team assisting her to complete the appraisal tastings in one day.   Enotrias understands that

5     its compensation is subject to the prior approval of this Court, and that no compensation will be

6     paid except upon application to and approval by this Court after notice and a hearing in

7     accordance with Sections 330 and 331, Rule 2016, and any other applicable rule and procedures of

8     the Court.  Enotrias will also make a reasonable effort to comply with the Fee Guidelines in

9     connection with the Application and any interim or final fee applications filed by Enotrias.  No

10    payment will be made to Enotrias that is not in conformity with a cash collateral budget, in effect

11    at the time, and approved by MGG or otherwise ordered by the Court.

12        As a condition of Enotrias' proposed employment, Enotrias has requested the payment of a

13    retainer in the amount of $12,000.00 and the Debtor has agreed to pay the proposed retainer.

14            **B.        Enotrias Is Disinterested And Not Adverse To The Bankruptcy Estate**

15        With the Court's approval, the Debtor is authorized under Section 327(a) to "employ one or

16    more… appraisers… or other professional persons, that do not hold or represent an interest

17    adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying

18    out the trustee's duties under this title."  See 11 U.S.C. § 1107(a) ("…a debtor in possession shall

19    have all the rights…and powers…and shall perform all the functions and duties… of a trustee

20    serving under this chapter.").

21        To the best of the Debtor's knowledge and based upon the attached Smith Declaration, no

22    conflict of interests arises from the Debtor's employment of Enotrias.  Enotrias: (i) is not a

23    creditor, equity security holder, or an "insider" of Debtor as that term is defined in Section

24    101(31), (ii) is not and was not within two (2) years before the Petition Date, a director, officer, or

25    employee of Debtor, and (iii) does not have any interest materially adverse to the interests of the

26    bankruptcy estate or of any class of creditors or equity security holders, by reason of any direct or

27    indirect relationship to, connection with, or interest in, Debtor or for any other reason.

28    Accordingly, Enotrias is a "disinterested person" as that term is defined and used in Sections

SB 52780857v4

101(14) and 327.  Furthermore, to the best of the Debtor's knowledge and based upon the attached Smith Declaration, Enotrias does not hold or represent an interest adverse to the bankruptcy estate.

Finally, pursuant to Rule 2014 and the Smith Declaration, Enotrias has no disqualifying connection with the Debtor, any other party in interest and their respective attorneys and accountants, the U.S. Trustee, or any person employed in the office of the U.S. Trustee.

## III.

## INTERIM FEE PROCEDURES

### A.    The Bankruptcy Code Authorizes Payment Of Monthly Compensation

Section 331 of the Bankruptcy Code provides for the payment of interim compensation for professionals retained by debtors in possession and creditors' committees.  In enacting the professional compensation provisions of the Bankruptcy Code, Congress adopted the principle that "professionals in bankruptcy cases are entitled to be paid on a comparable basis to other privately retained counsel, both in terms of timeliness and amount of payment".  See In re Commercial Consortium of California, 135 B.R. 120, 123 (Bankr. C.D. Cal. 1991) (citing Burgess v. Klenske (In re Monoa Finance Co., Inc.), 853 F.2d 687, 690 (9th Cir. 1988)); In re Nucorp Energy, Inc., 764 F.2d 655, 658-59 (9th Cir. 1985).  The Bankruptcy Appellate Panel for the Ninth Circuit has recognized that interim payments for professionals on a monthly basis are entirely appropriate in sophisticated and difficult cases.  See U.S. Trustee v. Knudsen Corp. (In re Knudsen Corp.), 84 B.R. 668 (B.A.P. 9th Cir. 1988).  Knudsen holds that, at least in multifaceted and complex cases, monthly payments to professionals are appropriate without prior approval of the court so long as they are made pursuant to a procedure that provides the opportunity for subsequent review by the court.  Id. at 671-72.  Furthermore, four factors were identified in Knudsen for determining whether monthly payment to professionals is appropriate: (1) the case is an unusually large one in which an exceptionally large amount of fees accrue each month, (2) the court is convinced that waiting an extended period for payment would place an undue hardship on professionals, (3) the court is satisfied that the professionals will be able to respond to any subsequent reassessment of fees paid pursuant to the procedures; and (4) the fee procedures are the subject of a noticed hearing prior to any payment thereunder.  Id. at 672.

SB 52780857v4

**B.    The Proposed Interim Fee Procedures**

In this case, which the U.S. Trustee has already designated as large case subject to the Fee Guidelines, the Debtor proposes that the following interim fee procedures be applicable (collective, the "Interim Fee Procedures"):

a.    On or before the 20th day of each month following the month for which compensation is sought, Enotrias must file with the Court and serve a monthly statement (the "Monthly Statement") on the Debtor, MGG California, LLC, the Office of the U.S. Trustee, and counsel to the Debtor's secured creditors, and all parties who have filed requests for notice in this bankruptcy case (collectively, the "Recipients").

b.    Each Monthly Statement must include the following information: (i) the total amount of compensation and reimbursement of expenses requested for the month; (ii) the names, hourly rates, total number of hours billed, and total amount of fees incurred by each individual during the month; (iii) a summary list of the expenses, separated by category, for which reimbursement is sought; (iv) a summary list of the fees, separated by matter categories, for which compensation is sought; and (v) detailed statements of the time entries for all individuals who performed services during the month.

c.    Each of the Recipients shall have fifteen (15) days after service of a Monthly Statement (the "Objection Deadline") to raise any objection thereto.  Any objection to a Monthly Statement (each, an "Objection") must (i) be in writing, (ii) set forth the precise nature of the Objection, the grounds therefor, and the amount of fees and/or expenses to which the Objection applies, and (iii) be filed with the Court and served, on or before the Objection Deadline, on Enotrias, the Debtor's counsel, and each of the Recipients.

d.    If no timely Objection is filed and served with respect to a Monthly Statement, then, without further order of the Court, Enotrias shall file a certificate of no objection with the Court with respect to the unopposed portion of the fees and expenses requested in its Monthly Statement (each, a "CNO").  After a CNO is filed, the Debtor may pay Enotrias 80% of the fees and 100% of the out-of-pocket expenses requested in the Monthly Statement.  All such

payments shall be on an interim basis and subject to the filing of interim and final fee applications pursuant to 11 U.S.C. §§ 330 and 331.

e.     If a timely Objection is filed and served with respect to a Monthly Statement, then the objecting party and Entorias may attempt to resolve the Objection on a consensual basis. If the parties are unable to reach a consensual resolution of the Objection, Enotrias may either (i) set the matter for hearing with the Court, on not less than fifteen (15) days' notice to each of the Recipients, or (ii) forego payment of the disputed amount until the next interim or final fee application hearing, at which time the Court will consider and resolve the Objection.

f.     Pending resolution of any timely Objection, the Debtor may pay Enotrias the lesser of (i) 80% of the fees and 100% of the expenses requested in the Monthly Statement to which the Objection applies; and (ii) the aggregate amount of fees and expenses requested in such Monthly Statement as to which no timely Objection was raised.

g.     The pendency of an Objection to payment of compensation or reimbursement of expense requested by Enotrias in a particular Monthly Statement or interim fee application shall not prevent Enotrias from receiving payment of fees and expenses pursuant to future Monthly Statements served in accordance with these proposed procedures, except as otherwise ordered by the Court.

h.     Neither the payment of, nor the failure of any Recipient to serve an Objection, in whole or in part, to any Monthly Statement, shall waive that party's right to later object to an interim or final fee application, nor bind that party with respect to the subsequent consideration of the interim or final allowance of Enotrias' fees and expenses.

i.     The proposed procedures are optional and need only be followed if Enotrias is seeking monthly compensation.

**C.     <u>The Proposed Interim Fee Procedures Satisfy The Knudsen Factors</u>**

The proposed Interim Fee Procedures provide ample opportunity for review, not only by the Court, but by the significant creditors such as MGG and the Office of the U.S. Trustee.  Each of the <u>Knudsen</u> factors is present here.  First, the Debtor's case  involves one of the most unique

pieces of real estate in Napa County, California, and has a history of winemaking that goes back to the 1800s,  Moreover, the U.S. Trustee has already designated this matter as a "large-case" and made the Fee Guidelines applicable to this case.  Second, waiting an extended period for payment will cause an undue hardship on Enotrias because once its work is completed, as explained in <u>Knudsen</u>, professionals are entitled to be paid on a comparable terms as others in the private sector, including timeliness.  Third, the proposed procedures will ensure that Enotrias will be able to address any reassessment of fees or costs paid prior to interim or final allowance because the Interim Fee Procedures  provides for a 20% fee holdback (one of the methods suggested in <u>Knudsen</u>), which holdback will serve as a reserve from which any disallowed fees or costs can be deducted.  Furthermore, Enotrias is well aware that its employment is subject to Court review.  Finally, the proposed Interim Fee Procedures provide for a means of review by the Court, both at the time of the filing the Monthly Statement of an objection filed, and subsequent review by the Court during the filing of interim and final fee applications.  Accordingly, all four <u>Knudsen</u> factors weigh in favor of approving the proposed Interim Fee Procedures.

**IV.**

**<u>EMPLOYMENT OF ENOTRIAS IS IN THE BEST INTERESTS</u>**

**<u>OF THE BANKRUPTCY ESTATE</u>**

Pursuant to the Debtor's sole business judgment, the proposed employment of Enotrias upon the foregoing terms and conditions is necessary and appropriate to help the Debtor continue its efforts in this Chapter 11 case and fulfill its duties as debtor in possession.  As such, the proposed employment is in the best interest of the bankruptcy estate.  And pursuant to Rule 2014, the Application and related notice will be served on the U.S. Trustee, the twenty largest unsecured creditors, and parties in interest, including MGG and any party who filed and served a request for special notice as of the date of service of the notice.  A copy of the proposed order granting this Application is attached hereto as **<u>Exhibit 3</u>** and incorporated herein by this reference.

SB 52780857v4

## V.

### FEE GUIDELINES STATEMENT FROM ENOTRIAS

The following are provided by Enotrias pursuant to Paragraph D.1 of the Fee Guidelines:

1.     Question: Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement?

Response: No.

2.     Question: Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case?

Response: No.

3.     Question: If you represented the client in the twelve (12) months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the twelve (12) months prepetition. If your billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference.

Response:  No, Enotrias did not represent the Debtor in the twelve (12) months prepetition.

4.     Question: Has your client approved your prospective budget and staffing plan, and, if so, for what budget period?

Response: Enotrias is developing a prospective budget and staffing plan for the case.

## VI.

### CONCLUSION

Based on the foregoing reasons, the Debtor respectfully requests that the Court enter an order:

(1) approving the Application;

(2) authorizing the employment of Enotrias, effective as of January 13, 2023, to appraise the Property and provide the Additional Services, if any, pursuant to Sections 327(a),

330, and 331 of the Bankruptcy Code, and on the terms and conditions stated herein;

        (3) approving the payment of a retainer to Enotrias in the amount of $12,000.00;

        (4) authorizing the Debtor to pay Enotrias at the hourly rate of $300/hour for the Additional Services provided at the Debtor's request, if any; and

        (6) providing such other relief as is proper.

Dated: January 19, 2023           Respectfully Submitted,

                         **GREENSPOON MARDER LLP**

                         */s/ Steve Burnell*

                         Victor A. Sahn
                         Mark S. Horoupian
                         Steve Burnell
                         Attorneys for Debtor in Possession,
                         Spring Mountain Vineyard, Inc.

SB 52780857v4

030

# DECLARATION OF KEVIN A. KRAKORA

I, Kevin A. Krakora, declare as follows:

1.     I am over the age of 18 years.  I am the Chief Restructuring Officer of Spring Mountain Vineyard Inc., a Delaware corporation (the "Debtor").  I make this declaration solely in capacity as Chief Restructuring Officer of the Debtor.  I have personal knowledge of the facts stated herein.  I can testify that these facts are true and correct.

2.     I have been the Chief Restructuring Officer of the Debtor since August 22, 2022.  In this role, I am involved in its day-to-day operations including issues regarding financial matters, issues regarding operational concerns from the vineyard operations, sales issues and all related matters to its doing business.

3.     I make this declaration in support of the foregoing, attached "Application To Employ Enotrias To Appraise The Debtor's Bottled Wine Inventory" (the "Application").  Unless otherwise defined herein, capitalized terms have the meaning given them in the Application.

4.     Since 1992, the Debtor has owned the Spring Mountain Vineyard in Napa County, California (the "Vineyard").  The Vineyard is the primary asset of the Debtor, an ongoing business with millions of dollars in annual sales, and relationships with dozens of suppliers and thousands of customers.  The Debtor's business consists primarily of growing grapes in its 135 vineyard blocks, harvesting those grapes and pressing them into wine in casks, bottling that wine from casks, and the storage and sale of that wine.

5.     The Debtor commenced this bankruptcy case on an emergency basis on September 29, 2022 (the "Petition Date").  I continue to serve as the Debtor's Chief Restructuring Officer post-petition.

6.     On October 27, 2022, the Debtor filed its schedules and listed bottled wine inventory with net book value of $18,896,237 and retail value of $161,432,141 (the "Bottled Wine Inventory").  See the Debtor's Schedule A/B filed on Oct. 27, 2022 [Docket no. 78].  According to the Debtor's records, on the Petition Date, the Bottled Wine Inventory consisted of  approximately 69,745 9L cases.

7.     The Debtor now seeks to employ Enotrias, Elite Sommelier Services ("Enotrias"),

SB 52780857v4

effective as of January 13, 2023, to appraise all vintages of the Debtor's Estate Cabernet Sauvignon and the Elivette, a Bordeaux Blend, bottled wine inventory. Based on the Debtor's records, the Estate Cabernet Sauvignon includes vintages from 1979 up to 2019, and the Elivette includes vintages from 1996 up to 2019 (collectively, the "Property"). At the Debtor's request, Enotrias will also provide, if necessary, the Additional Services, pursuant to the terms and conditions stated in the Application.

8.     According to the proposed appraisal agreement with Enotrias, the Appraisal will be based on the Debtor's records and targeted tasting of the Property, but Entorias will not be conducting an in-person inspection to verify the quantities of the Property listed in the Bottled Wine Inventory. The Appraisal is necessary for the Debtor to fulfill its duties as debtor in possession and for use in its continued chapter 11 bankruptcy case, including any potential sale of assets or reorganization efforts. A true and correct copy of the proposed Appraisal Agreement Between Enotrias and the Debtor (the "Engagement Agreement") is attached hereto as **Exhibit 1** and incorporated herein by this reference.

9.     The services of Enotrias are required by the Debtor because the Appraisal is very important to the sale process. The Debtor is currently engaged in a marketing and sale process of its Vineyard business and has employed BNP Paribas Securities, Inc. ("BNP Paribas") as its investment banker. One of the items of information which BNP Paribas has indicated to the Debtor that is necessary to have for the many individual entities who are interested in the Vineyard is an independent valuation of the Property by a qualified appraiser. Per BNP Paribas, those prospective purchasers will use the Appraisal as an important reference point developing and submitting an offer to purchase the Vineyard. As such, the Debtor requires the services of the Enotrias, and time is of the essence since the Appraisal is a necessary for the sale process.

10.     The Debtor has agreed to the proposed compensation terms, including the proposed Interim Fee Procedures, as stated in the Application and the Engagement Agreement. Compensation to Enotrias is subject to the prior approval of the Court, and no compensation will be earned by Enotrias except upon application to and approval by the Court after notice and a hearing in accordance with Sections 330 and 331, Rule 2016, and any other applicable rule and

SB 52780857v4

14

032

1   procedures of the Court.  No payment will be made to Enotrias that is not in conformity with a
2   cash collateral budget, in effect at the time, and approved by MGG or otherwise ordered by the
3   Court.

4        11.     Enotrias has requested a retainer in the amount of $12,000.00, and the Debtor has
5   agreed to pay the proposed retainer in order for Enotrias to begin its services on a timely basis.

6        12.     Based on my understanding of Enotrias' experience and qualifications, Enotrias is
7   well-qualified to render the services contemplated by the Application.

8        13.     To the best of my knowledge and based on the Smith Declaration, Enotrias does
9   not hold a prepetition claim against the Debtor's bankruptcy estate, does not represent any party
10  other than the Debtor in connection with this case, and does not hold an adverse interest to the
11  bankruptcy estate.

12       14.     Furthermore, to the best of my knowledge, other than as stated in the Smith
13  Declaration, Enotrias does not have any connection with the Debtor, its employees, accountants,
14  the U.S. Trustee, or any employee of the U.S. Trustee, or other parties in interest or creditors.

15       15.     Pursuant to the Debtor's business judgment, the proposed employment of Enotrias
16  upon the foregoing terms and conditions is necessary and appropriate to help the Debtor continue
17  its efforts in this Chapter 11 case and fulfill its duties as debtor in possession.  As such, the
18  proposed employment is in the best interest of the bankruptcy estate.  Pursuant to Rule 2014, the
19  Application and related notice will be served on the U.S. Trustee, the twenty largest unsecured
20  creditors, and parties in interest, including MGG and any party who filed and served a request for
21  special notice as of the date of service of the notice.  A copy of the proposed order granting this
22  Application is attached hereto as **Exhibit 3** and incorporated herein by this reference.

23                    **Fee Guidelines Statements**

24       16.     To ensure that Enotrias' billing rates and material terms for the engagement are
25  comparable to Enotrias' billing rates and terms for other non-bankruptcy engagements and other
26  comparably skilled professionals, I relied on the expertise and guidance of Peter Ekman of Jigsaw
27  Advisors, the Debtor's retained wine industry expert, and BNP Paribas, the Debtor's retained
28  investment banker.  In the Debtor's business judgment, this was adequate investigation given the

SB 52780857v4

033

| | |
|---|---|
| 1 | need to avoid unnecessary costs conducting an exhaustive search given Enotrias' qualifications |
| 2 | and availability to provide the Appraisal. |
| 3 |      17.    To supervise Enotrias' fees and expenses and to manage costs, the Debtor will have |
| 4 | frequent communication with Enotrias as needed.  Moreover, because Enotrias is being employed |
| 5 | under 11 U.S.C. § 330, it must file fee applications before any interim or final compensation, and |
| 6 | this provides a further procedure for oversight from the Court and the Debtor to object, if required, |
| 7 | while ensuring Enotrias' fees and expenses incurred are reasonable and necessary. |
| 8 |      I declare under penalty of perjury under the laws of the United States of America that the |
| 9 | foregoing is true and correct.  Executed on January 17, 2023, in Chicago, Illinois. |

Kevin A. Krakora,
Chief Restructuring Officer of the Debtor

SB 52780857v4

034

# DECLARATION OF MELISSA L. SMITH

I, Melissa S. Smith, declare as follows:

1.     I am over the age of 18 years.  I am the principal of Enotrias, Elite Sommelier Services ("Enotrias").  I have personal knowledge of the facts stated herein.  I can testify that these facts are true and correct.

2.     I make this declaration in support of the attached "Application To Employ Enotrias To Appraise The Debtor's Bottled Wine Inventory" (the "Application").  Unless otherwise defined herein, capitalized terms have the meaning given them in the foregoing, attached Application.

3.     At the request of Spring Mountain Vineyard Inc., a Delaware corporation (the "Debtor"), effective December 13, 2022, Enotrias has agreed to appraise the Debtor's Bottled Wine Inventory and provide the Additional Services, if any, pursuant to the terms and conditions stated in the Application.

4.     Enotrias will provide a written Fair Market Value appraisal (the "Appraisal") of all vintages of the Debtor's Estate Cabernet Sauvignon and the Elivette, a Bordeaux Blend, bottled wine inventory. The Estate Cabernet Sauvignon includes vintages from 1979 up to 2019 and the Elivette includes vintages starting from 1996 up to 2019 (collectively, the "Property").  At the Debtor's request, Enotrias will also provide, if necessary, the Additional Services, pursuant to the terms and conditions stated in the Application.  The Appraisal will be based on the Debtor's records and targeted tasting of the Property, but Entorias will not be conducting an in-person inspection to verify the quantities of the Property listed in the Bottled Wine Inventory.  A true and correct copy of the proposed Appraisal Agreement Between Enotrias and the Debtor (the "Engagement Agreement") is attached hereto as **Exhibit 1** and incorporated herein by this reference.  To the extent there is a conflict between the Engagement Agreement and the Application, the terms of the Application and the order granting the Application shall govern.

5.     Enotrias will charge a flat rate of $12,000 for preparing the Appraisal.  This fee represents Enotrias' estimate that 25 hours will be required for me to complete the Appraisal.  Given the large number of wines and vintages to be appraised, I will be leading a team of 5-6 extra

wine professionals to assist me in completing all the tastings needed in one day, as requested by the Debtor. This will also bring substantial creditability to the final Appraisal and the team's services are covered by the flat rate. If preparing the Appraisal requires more than 25 hours of time, Enotrias will promptly notify the Debtor of the revised estimate and upon the Debtor's authorization, continue working to complete the Appraisal. Debtor will compensate Enotrias for such additional time spent over the 25 hour estimate at Enotrias' current hourly rate of $300/hour (the "<u>Hourly Rate</u>"). Finally, for any Additional Services provided, if any, Enotrias will charge the Hourly Rate.

6. There are no arrangements between Enotrias and any other person or entity for the sharing of compensation received or to be received in connection with the representation of the Debtor, except insofar as such compensation may be shared among the employees of Enotrias and the my team assisting her to complete the appraisal tastings in one day.

7. Enotrias understands that its compensation is subject to the prior approval of this Court, and that no compensation will be paid except upon application to and approval by this Court after notice and a hearing in accordance with Sections 330 and 331, Rule 2016, and any other applicable rule and procedures of the Court. Enotrias will also make a reasonable effort to comply with the Fee Guidelines in connection with the Application and any interim or final fee applications filed by Enotrias. No payment will be made to Enotrias that is not in conformity with a cash collateral budget, in effect at the time, and approved by MGG or otherwise ordered by the Court.

8. As a condition of Enotrias' proposed employment, Enotrias has requested the payment of a retainer in the amount of $12,000.00 and the Debtor has agreed to pay the proposed retainer.

9. Enotrias is well-qualified to provide the services appraising the Debtor's Property. Specifically and as set forth in the above employment application-

A. I am the principal of Enotrias. I am highly qualified to perform the appraisal. I am certified by the Court of Master Sommeliers, The Culinary Institute of America, The California State Bar Association, The Sake Education Counsel, and the Appraisers

Association for USPAP. My work has been published in print and online, and I am often used as a trusted source for industry news. I am a Culinary Institute of America trained chef and spent 15 years in some of the top kitchens in the country as well as Japan, including stints at the French Laundry, and at Terra, under chef Hiro Sone.

B. While maintaining a full time position as the Head Sommelier for K&L Wine Merchants, the largest online wine and spirits retailer in the country, I developed the first iPhone App for wine pronunciation, the Enotria Guide, and simultaneously created Enotrias, providing cellar organization and wine appraisal services to top collectors in the Bay Area. After over a decade working with various collections, I developed proprietary software unique to Enotrias, allowing for wine cellar inventories that are the most efficient and accurate in the industry, and compatible with commonly used cloud based inventory platforms.

C. In 2018, I became the first person certified by the California State Bar Association for her continuing education seminar on The Valuation and Appraisal of Wine Collections, and in 2020 my CLE was credited in Texas, Oregon, Washington, Idaho, Utah, Colorado, New York, Connecticut, Illinois, and later in Florida. My reputation for providing high profile clients with cellar services has led to a series of MCLE seminars, where I work directly with Family Law and Trust and Estate attorneys as a valued resource for legal cases, and USPAP compliant appraisals.

D. In 2022, I created the world's first online Wine Collecting Master Class, based on the one-hour seminar on wine collecting that has been attended by wine enthusiasts and attorneys around the US. A copy of Ms. Smith's qualifications are attached hereto as **Exhibit 2** and incorporated herein by this reference.

10. Enotrias: (i) is not a creditor, equity security holder, or an "insider" of Debtor as that term is defined in Section 101(31), (ii) are not, or were not, within two (2) years before the Petition Date, a director, officer, or employee of Debtor, and (iii) do not have any interest materially adverse to the interests of the Estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, Debtor or for any other reason. Accordingly, Enotrias is a "disinterested person" as that term is defined

and used in Sections 101(14) and 327.

11.     Enotrias does not hold or represent an interest adverse to the bankruptcy estate. Enotrias maintains a computer database of past and present clients, and certain parties (such as significant creditors) related to those clients. I caused Enotrias' database to be searched for the names of the Debtor, any known secured creditors, general unsecured creditors, and other interested parties ("Searched Persons"), to determine the extent if any, of Enotrias' (a) conflicts, (b) past relationships, and (c) connections with or to the Searched Persons. The search results indicated no conflicts, past relationships, or connections with or to the Searched Persons. It is important to note that in spite of these efforts, it sometimes occurs that not all connections are discovered and that some additional connections arise after the filing of the employment application or after the entry of an order authorizing the employment. Should this occur, I will ensure that Enotrias makes additional disclosures to this Court and to parties in interest and will request appropriate relief depending on the nature of the connections, if any, that are subsequently discovered. Based on this comprehensive search, Enotrias has not identified any potential or actual conflicts of interest relating to its representation of the Debtor.

12.     I am familiar with the Debtor's Vineyard but have never been employed by the Debtor. I am also familiar with Mr. Peter Ekman of Jigsaw Advisors who is employed by the Debtor's bankruptcy estate. Other than these two connections, as far as I am aware, I have no other connections with any other party in this bankruptcy case. It is possible that I have had dealings in the past with one or more of the potential acquirers of the Debtor's assets, particularly those who already conduct a vineyard business in Napa and Sonoma Counties in Northern California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 15, 2023, in Marin Country, California.

_____

Melissa L. Smith

SB 52780857v4

# EXHIBIT 1

039

# ENOTRIAS

## Elite Sommelier Services

APPRAISAL AGREEMENT BETWEEN ENOTRIAS
AND

| Name: Kevin Krakora | Email: kkrakora@getzlerhenrich.com |
|---|---|
| Company: Spring Mountain Vineyard | Phone: 415.722.0535 |
| Address: 2805 Spring Mountain Rd. | City/State/Zip Code: St. Helena, CA 94574 |

Purpose of Appraisal: To determine the Fair Market Value for Chapter 11 Procession

This agreement is between the individual or company named above and undersigned (the "Client") and Enotrias/Melissa L. Smith (the "Appraiser"). The Client hereby requests that the Appraiser furnish a written **Fair Market Value** appraisal of **Spring Mountain Vineyard Cabernet Sauvignon (including Cabernet's designated "- Rsv", "-MV", "-CC", "Alba", and "La Perla") and the Elivette labels from the vintages 1979 - 2019** (the "Property"). The appraisal will be based on a furnished spreadsheet, and has not been inspected in-person by the appraiser to verify the quantities listed. The undersigned is the owner or agent of the owner and is duly authorized by the owner to have such Property appraised. The Client warrants and represents that Client has (or is authorized to act for the owner of) free, clear and marketable title to all the Property to be appraised. It is agreed that the appraisal, including without limitation, all copies, summaries and drafts thereof (collectively, the "Appraisal"): (i) represents Enotrias's judgment and opinion as to the **fair market value** of the Property as of the date indicated on the Appraisal and is not a statement of fact; (ii) is not a representation or warranty with respect to the authenticity, authorship, period of creation, description, genuineness, attribution, provenance, title or condition of the Property; (iii) is not deemed a representation or warranty that the Property would bring the appraised price if offered for sale at public auction or otherwise; (iv) is not furnished and will not be used or relied upon, by the owner or anyone in connection with any transaction involving the Property, including but not limited to any purchase, sale, loan, donation or exchange, except as noted in the appraisal report. The Client agrees to defend and hold the Appraiser harmless from any claims, actions, liabilities, damages or expenses (including reasonable attorney's fees and/or costs of litigation) by third parties incurred as a result of claims based on or related to the Appraisal, provided, however, Debtor shall not have the obligation to indemnify Appraiser for any claims which are judicially determined to have been created as a result of Appraiser's bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct, (ii) for a contractual dispute in which the Debtor alleges breach of Appraiser's contractual obligations where the court in which the Chapter 11 bankruptcy case for which Appraiser is being retained (the "Court") determines that indemnification, contribution, or reimbursement would not be

# ENOTRIAS

## Elite Sommelier Services

permissible, or (iii) for any claim or expense settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined to by the Court, after notice and a hearing, to be a claim or expense for which Appraiser should not receive indemnity, contribution, or reimbursement under the terms and conditions of the Engagement Agreement and any order issued by the Court (the "Order"); if, before the earlier of (i) the entry of an order confirming a Chapter 11 plan in this case (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing the Chapter 11 case for which Appraiser is being engaged hereunder, Appraiser believes that Appraiser is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification, contribution, and/or reimbursement obligations under the Engagement Letter (as modified by this Order), including, without limitation, the advancement of defense costs, Appraiser must file an application therefor in the Court, and the Debtor may not pay any such amounts to Appraiser before the entry of an order by the Court approving the payment. This subparagraph is intended only to specify the period during which the Court shall have jurisdiction over any request for fees and expenses by Appraiser for indemnification, contribution, or reimbursement, and not as a provision limiting the duration of the Debtor's obligation to indemnify, or make contribution or reimbursement to Appraiser. The Client further agrees that should the Appraiser be required by subpoena or otherwise to appear in any legal or administrative proceeding or deposition that the Client will pay the Appraiser the current published and/or agreed hourly rate, plus all reasonable expenses for travel fees, lodging, meals, mileage, and transportation. The Client agrees that the Appraiser may consult others in connection with the Appraisal. The Client's representations, warranties and indemnity shall survive completion of the Appraisal.

Compensation. Upon receipt of the Appraisal, The Client agrees to pay the Appraiser an hourly or daily fee, plus any reasonable travel, out-of-pocket, and research expenses. Compensation for the Fair Market Valuation shall be **$12,000.00**, representing Appraiser's estimate of the time needed for her team to complete the Valuation. If the Valuation requires more than 25 hours of Appraiser's time plus the time of her team, Appraiser will promptly notify Client of the revised estimate, and Client will compensate Appraiser for such additional work at Appraiser's hourly rate. Once the Valuation is accepted by the Client, Client shall pay Appraiser for additional work, including, but not limited to further research, testimony, deposition, or other services beyond the Valuation at a rate of **$300 per hour** (the "Hourly Rate"). Any changes to this rate will be discussed verbally and confirmed in writing by the Client. The Fair Market Valuation fee is due within 5 business days of execution of this Agreement. Further work will be payable within 14 business days of invoicing by Appraiser.

Hourly fees and expenses will be deducted from the deposit. You authorize Appraiser to use those funds to pay Appraiser's fee(s) and other charges as they are incurred. Appraiser will deduct from the deposit funds only after transmitting an invoice for services. You agree to provide future deposits within 5 days of notice from Appraiser

that the existing deposit is exhausted. Unless otherwise agreed in writing, Appraiser will refund any unused deposit at the conclusion of the engagement.

You acknowledge that the deposit is not an estimate of total fees and costs, but merely an advance for security. Nothing in this agreement and nothing in any of Appraiser's statements to you will be construed as a promise or guarantee about the outcome of the engagement. Appraiser makes no such promises or guarantees. Appraiser's comments about the outcome of the engagement are expressions of opinion only. Any estimate of fees given by the Appraiser shall not be a guarantee. Actual fees may vary from any estimate(s) provided.

Limitation Of Liability. Appraiser's maximum liability hereunder arising from any cause whatsoever, whether based in contract, tort, including negligence, or any other theory of law, shall not exceed the amount paid by Client to Appraiser for the services rendered hereunder. Any above-mentioned claim or cause of action must be given by written notice, or commenced, within one year from the date of which that action accrues.

Waiver of Jury Trial. EACH PARTY HERETO HEREBY WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING WHICH PERTAINS DIRECTLY OR INDIRECTLY TO THIS AGREEMENT OR ANY ADDENDUM OR OTHER AGREEMENT WHICH, IN ANY WAY, ARISES OUT OF OR RELATES TO CLIENT'S HIRING OF APPRAISER OR ANY OTHER RELATIONSHIP BETWEEN APPRAISER AND CLIENT.

Severability. If any term or provision of this Agreement, or the application thereof to any person or circumstance, shall to any extent be found to be invalid, void, or unenforceable, the remaining provisions of this Agreement and any application thereof shall, nevertheless, continue in full force and effect without being impaired or invalidated in any way.

Waiver. No waiver of any term, provision, or condition of this Agreement, whether by conduct or otherwise, in any one or more instances, shall be deemed to be or be construed as a further or continuing waiver of any such term, provision, or condition or as a waiver of any other term, provision, or condition of this Agreement.

Entire Agreement. This Agreement, along with its exhibits, contains the entire agreement and understanding of the parties with respect to the subject matter of this Agreement, and merges and supersedes all prior agreements, discussions, and writings with respect to that subject matter. No modification or alteration of this Agreement shall be effective unless made in writing and signed by both parties.

This Agreement will be governed and construed under California law and any action concerning any dispute under this Agreement shall be heard in the United States Bankruptcy Court for the Northern District of California where **Spring Mountain Vineyard's** bankruptcy case is being heard. The following will be considered in the appraisal process:

# ENOTRIAS

## Elite Sommelier Services

- Fair market value as determined by current market prices taken from both retail and auction valuations (but will *not* include the retail and/or wholesale price(s) that the wines are offered from Spring Mountain Vineyard, as those prices are not relevant). The current market value will be based on prices in the US, excluding taxes, shipping, or buyers' premiums and/or fees in the case of auction sales. In many cases, there will not be a value available for large format bottles, in which case the value assigned will be based on the equivalent multiple of a 750ml format (i.e. a magnum will be 2x the value of the same vintage of the standard size bottle, and so on). In the case that there is no current retail presence for the wines, the value assigned will be $0.
- Quality assessment as determined by an in-person tasting to take place within three weeks of the appraisal process at the winery. If a particular vintage or bottling is deemed unsaleable because of the condition, the appraiser has the right to retract the assigned value.
- Educated speculation on the drinkability range of commercially viable wines based on the in-person tasting.

Appraiser understands that her employment will be submitted for approval by the United States Bankruptcy Court for the Northern District of California who is hearing **Spring Mountain's** bankruptcy case. Spring Mountain's bankruptcy counsel will prepare and with cooperation from Appraiser submit the employment application for consideration of and approval by the Bankruptcy Court. Any issues with the employment application of Appraiser will be addressed by Spring Mountain's bankruptcy counsel who will assist Appraiser in this regard.

Appraiser understands that the fees and costs which she incurs will be subject to review and approval by the United States Bankruptcy Court for the Northern District of California who is hearing **Spring Mountain's** bankruptcy case. Spring Mountain's counsel will assist Appraiser in presenting the necessary pleadings to the Bankruptcy Court regarding approval of her fees and costs and will appear with Appraiser at any hearing regarding the approval of said fees and costs.

# ENOTRIAS

## Elite Sommelier Services

ACCEPTED AND AGREED BY:

Enotrias

By: _____
Melissa L. Smith

Its: ___Founder Enotrias___

Spring Mountain Vineyard, Inc.

By: _____
Kevin A. Krakora

Its: Chief Restructuring Officer

VAS 52974542v1

# EXHIBIT 2

Case: 22-10381    Doc# 252    Filed: 07/00/23    Entered: 07/00/23 13:03:04    Page 46 of
109

# MELISSA L. SMITH, CS

*Founder, Enotrias Elite Sommelier Services*

510.969.WINE (9463)          Enotrias.com          melissa@enotrias.com

463 Sherwood Drive #203 Sausalito, CA 94965

---

## Executive Summary

---

Certified Sommelier Melissa Smith has been building her profile as "The Sommelier to the Silicon Valley Stars", providing in-home and corporate wine tasting seminars, and private cellar services to top collectors. While maintaining a full time position as the Head Sommelier for K&L Wine Merchants, the largest online wine and spirits retailer in the country, she developed the first iPhone app for wine pronunciation, the Enotria Guide, and grew Enotrias into the Bay Area's premier sommelier service company.

In 2018, Melissa became the first person certified by the California State Bar Association for her seminar on the Valuation of Wine Collections. Her reputation for providing high profile clients with cellar services has led to a series of MCLE seminars, where she works directly with Family Law and Trust attorneys as a valued resource for legal cases, and her appraisals are USPAP compliant. In 2021, Melissa was recruited by the US government as an expert witness.

Melissa is a CIA trained chef that spent 15 years in some of the top kitchens in the country as well as Japan, including stints at the French Laundry, and at Terra, under chef Hiro Sone. After spending years roaming the country with her knife bag and an unbridled sense of adventure, bouncing from a Relais & Chateaux dude ranch in Montana to a hunting camp in Idaho, to a charter yacht in Southeast Alaska, and a pineapple scented season in Maui, Melissa then spent time as the private chef for families of industry giants, and settled down in the San Francisco Bay Area to pursue a career in wine and hospitality.

Melissa is certified by the Court of Master Sommeliers, The Culinary Institute of America, The California State Bar Association, The Sake Education Counsel, and USPAP. Melissa's work has been published in print and online, and she is often used as a trusted source for industry news. Her philanthropic work includes mentoring women in wine through Battonage, contributions to SPCA, John Muir Land Trust, Children with Cancer, and micro loans to emerging businesses.

## Work Experience

---

### Enotrias Elite Sommelier Services

*Founder*                                                            Jan 2011 - Present
- Specializing in elite corporate team building, and private wine, sake, and spirits events, cellar services, and restaurant consultation.
- Cellar services include organization, inventory, valuation, and consultation for personal, insurance, and legal purposes.
- Philanthropic work with SPCA, earn.org, Children's Health Guild, and the John Muir Land Trust.
- Expert witness testimony for the Department of Justice for the USA V. Newland et. al case, also known as the infamous Fat Leonard Navy Bribery scandal.
- Created the Wine Collecting Master Class

*Clients include Google, Peel, Coinbase, Facebook, Boston Private Bank, Wells Fargo, IBM, Yahoo, Steelcase, Gensler, earn, Linked, appbackr, tech VC's, and more.*

### MCLE Single Activity Provider                                  July 2017 - Present

*State Bar of California, Oregon, Washington, Idaho, Colorado, Utah, Texas, Illinois, New York, Florida, and Connecticut*
- Valuation and Appraisal of Wine Collections for issues surrounding Family Law and Trust and Estates.

**Topics of past CLE courses have included:**
- Why you need to hire a qualified wine professional, and not your nanny, to inventory your wine.
- How a wine is assigned a value: Vintage, Domaine, Provenance, Condition, OWC, OTP, etc.
- How a 4 point font could make a several hundred or several thousand dollar difference.
- Why do some wines have no value?
- The collection has been assigned a value, now what? Facilitating sales, separation of property, turnaround time.

**Legal guidelines:**
- When is the value set, who has access, and when and if bottles can be removed for consumption or sale.
- The relevance to practitioners for purposes of 3.601 is that through this course, lawyers will learn how to value wine and spirits assets, which is increasingly important in marital dissolution, probate and trust administration, and business dissolution and acquisition matters.
- With California's importance to the wine and spirits industry growing each year, this subject will only increase in relevance.
- During each course, Ms. Smith includes substantive written materials, and Ms. Smith will continue to develop additional supporting written materials as necessary.

Past and active cases have included divorce, trust preparation, trust disbursement, probate, and insurance.

**Mourad**

*Guest Sommelier*                                                October 2022

- Wine Spectator Award winning program.
- Michelin Starred Moroccan fine dining restaurant located in San Francisco

**The Sea by Alexander's Steakhouse**

*Sommelier*                                                Aug 2017 – Feb 2020

- Wine Spectator Award winning program.
- Fine dining seafood restaurant catering to the elite of Silicon Valley tech and venture capital.

**Hakkasan Group**

*Sommelier*                                                Dec 2016 – Aug 2017

- Floor sommelier for popular, high volume, casual fine dining Cantonese restaurant with extensive wine list in downtown San Francisco with an additional focus on sake. 250+covers/night.

**Enotria Guide**

*Developer*                                                Jun 2011 – Jun 2017

- iPhone and iPod Touch application for mastering the pronunciation of wine terms.

**WineQuest**

*Wine Reviewer*                                                Jan 2012 – Jan 2017

- Among a select team of sommeliers who taste, review, import, and assign algorithms to wines. Developed and instituted training and education on sake.

**First Growth***

*Head Sommelier and Domestic Wine Buyer*                    Mar 2015 – Jan 2016

- Cultivated a list of the finest Domestic wines from highly sought after California "Grand Crus" to small production, exceptional, daily drinkers.
- Began formal staff education, implemented customer service strategies, sourced old and rare library wines, and managed online content and social media.
- Continued to develop and nurture relationships with vendors, producers, and wineries to great success.

**The Cleaver Group, LLC | Harnessing the Power of Nutritious Food**

*Consultant*                                                                    2015 – 2016
- Consulted on NDA company culinary projects supporting 4000+ employees.

**K&L Wine Merchants**

*Head Sommelier/Sake Buyer*                                    Dec 2009 – Sep 2014

- On top of managing the best online sake selection in the country, I specialize in Spirits, Bordeaux, and Domestic wines.
- Freelance work includes writing, leading classes for private and corporate events through PopUpEdu.com, restaurant consulting, and private cellar management (inventory, consulting, and sales).

**Taste Catering & Event Planning**

*On-site kitchen Manager*                                                    2003 – 2010

- Fine dining catered events for 10-10,000.

**Triple Creek Ranch**

*Chef de Cuisine/Wine Steward*                                    Jun 2003 – Sep 2003

- A season at the premier Relais and Chateau ranch in Darby, Montana, where food cost was not an issue, and access to the world's top ingredients was just a Fed Ex flight away.
- Brought fine dining experience from previous locations to elevate the chef's tasting menu, and incorporated local ingredients including wild game and river fish.
- As the Wine Steward I educated and trained the existing staff, worked with the chef on wine pairing suggestions, and purchased and inventoried wines and spirits. Limited bar training was included.

**Four Seasons Hotels and Resorts**

*Line Cook*                                                                                 2001

- Fine dining, casual, banquet, and room service outlets responsible for designing menus, specials, training, ordering, and guest relations.

## The French Laundry
*Stagier*                                              Nov 1999 – May 2000

- While at Terra full time I occasionally staged in the pastry department, working with Stephen Durfee and then Sebastien Rouxel, and on the savory line doing various prep work whenever possible under sous chefs Grant Achatz and Greg Short.
- Having more of a casual stage allowed me to observe and participate in the elusive kitchen, while maintaining respect from chef Keller. This later allowed me to assist him on his visits and demonstrations at the CIA in Hyde Park.
- Standards and techniques, attitude and finesse learned from the French Laundry training can not be replicated.
- This is also where I met and worked with Food and Wine top chef Rob Evans of Hugo's in Portland, Maine.

## Terra Restaurant
*Line Cook*                                            Jan 1999 – May 2000

- California cuisine utilizing Japanese ingredients and techniques. Recipe testing done for the Terra cookbook, released in December 2000.

## Wine Spectator Greystone Restaurant
*Pastry  Chef*                                         1998 – 1999

- High volume casual fine dining restaurant lead by chef Joyce Goldstein.


## Education / Certifications

## Appraisers Association of America
*USPAP - Field Of Study: Wine Appraisals*              2019,2021

- Uniform Standards of Professional Appraisal Practice for IRS compliant wine appraisals

## American Society of Appraisers
*How To Excel at Your Expert Witness DepositionHow To Excel at Your Expert Witness Deposition*                                            2022


## American Society of Appraisers
*How To Write a Bulletproof Expert Witness Report*     2022

**Appraisers Association of America**
*Collectible Champagne: Market Trends / Market Leaders*                        2022

**Appraisers Association of America**
*Wine Assessment and Appraisal Practice*                        2020

- Neil Kaplan, DipWSET, AAA is the managing partner of Cork Counsel and offers a wide array of services to wine collectors. An attorney with over 25 years' experience in virtually all aspects of the wine business, Neil works in conjunction with Charles Curtis MW, who is the founder of WineAlpha, one of 394 Masters of Wine in the world, an AAA certified wine appraiser, and the former Head of Wine for Christie's.

**Appraisers Association of America**
*Damage & Loss: Who and What You Need to Know*                        2020

- Speakers: Claire Marmion, Haven Art Group; Suzzane Siano, Modern Art Conservation, NY; Betty Krulik, AAA, Betty Krulik Fine Art, Limited; Alan Lyons, Herrick, Feinstein LLP

**Appraisers Association of America**
*Advanced Issues in Appraising - On Demand*                        2020

- Panelists: Leila Dunbar, AAA (Moderator), Jannette Barth, Ph.D., Michael Kessel, Esq., Sylvia Leonard Wolf, AAA

**Appraisers Association of America**
*Collectible Wine*                        2019

- Charles Curtis, MW, AAA of Wine Alpha outlines what Wine Appraisers need to know

**Regulatory Council of Jerez**
*Certified Sherry Wine Specialist*                        2017

**Court of Master Sommeliers**
*Certified Sommelier - Field Of Study: Wine Steward/Sommelier*                        2016

**Sake Education Council**
*Certified Sake Professional (CSP) - Field Of Study: Sake*                        2013

- The Certified Sake Professional certification is presented to applicants that have successfully passed the CSP examination, after a 3 day workshop, a 75-question multiple-choice examination designed to assess the ability to professionally work with sake in some capacity, and demonstrate competence about all things sake related. The exam covers all basic aspects of sake, including terminology, classifications, production

and culture. The objective is to ensure that applicants can be a positive force in disseminating information about sake and in its distribution, be it importing, wholesaling, retail or on-premise. To qualify for taking the exam, applicants must complete a SEC-approved course such as (but not necessarily limited to) the Level I Sake Professional Course.

## Court of Master Sommeliers
*Introductory certification - Field Of Study: Wine Steward/Sommelier*                    2007

## Culinary Institute of America
*AOS - Field Of Study: Wine*                                                              2000-2002

- Activities and Societies: VP of Student Council, Chefs Collaborative, lead Culinary Olympic team assistant, head of 911 Memorial Project.

## ACCOMPLISHMENTS / PRESS MENTIONS

---

**When and Why You May Need a Professional Sommelier to Build Your Wine Cellar**
Jul 9, 2021
Forbes

*Excerpt*

In the case of Melissa L. Smith, you're also hiring someone certified as a sommelier by the Court of Master Sommeliers and trained at the Culinary Institute of America, who's cooked at The French Laundry and was a chef on a private yacht. She is also a member of the Appraisers Association of America. I interviewed Smith about the twists and turns of her life that somehow led her to her career as a wine consultant.

**On Champagne: A tapestry of tales to celebrate the greatest sparkling wine of all**
Book by Susan Keevil Published by Academie Du Vin Library
January 2023

*Excerpt (page 96-96)*

For wine industry or restaurant veterans, champagne catastrophes are inevitable, and almost a rite of passage; with the measure of a true pro being not in how often youi avoid a disaster but in how you handle the recovery. In this regard, Melissa Smith is as professional as they come. She was working as a wine steward at a Relais & Chateau dude ranch in Montana when a guest ordered a bottle of Perrier-Jouet that had been 'rattling around in the lit soda refrigerator for God knows how long'. Smith dutifully opened the frazzled bottle, only to have it shoot out of her hands, land on the floor and spray her guests. Without missing a beat, she turned to them and pronounced; 'If it's any consolation, you've been showered with our finest champagne.'

052

## Master the Art of Wine Collecting
January 1, 2023
Wine Searcher

*Excerpt*

This may be the first online class on a topic that many people rush into without a plan. You might spend thousands of dollars of wine club orders before you come up with a system for organizing your wines. One of the problems Smith points out in the class is that too many cellars don't prioritize which wines should be drunk in which order, so that many wines sit on shelves for years past the point when they should have.

## How to properly pack a bottle of wine in your suitcase
August 16, 2022
Conde Nast Traveler

*Excerpt*

Melissa L. Smith, founder of Enotrias Elite Sommelier Services, suggests looking into inflatable wine travel protector bags if you are traveling with just a few bottles in your checked luggage. The ones with zip-top closures are even safer – should bottles break, none of the contents of your luggage will be damaged.

## The Best Wine Fridges for Your Home
June 23, 2022
Food & Wine

*Excerpt*

"Wine is a living consumable that needs a light-, temperature-, and humidity-controlled environment to thrive," says Melissa Smith, founder of Enotrias Elite Sommelier Services. "Wine fridges are designed to take all three of those into consideration."

## What to know about Older Champagne
May 17, 2022
Enotrias

*Excerpt*

This story, in one form or another, has been told countless times over the last 18 years, and the memory of it makes it seem as if it were yesterday. I've even been told it's going to be published in an upcoming book about Champagne by Kelly White, which is at the same time an honor and a facepalm moment.

[The Ultimate Guide to Starting Your Wine Collection](#)
March 29, 2022
Robb Report

*Excerpt*

We also tapped Melissa Smith, founder of San Francisco Bay Area–based Enotrias, whose wine cellar management consulting services include "organization, inventory, tracking software, valuation, brokering, wine curation for investment and consumption, and collection maintenance," as well as seasoned wine collectors for their own takes on the principles and pitfalls of acquiring wine.

[5 ways to quickly chill wine when you're short on time](#)
March 15, 2022
Insider

*Excerpt*

"I like to chill all of my wines," says Melissa L. Smith, sommelier and founder of Enotrias Elite Sommelier Services. "It tends to bring out the fruit flavors and minerality. Citrus is brighter, berries are heightened — the wines are more crisp and refreshing."

"Bright, young reds with low tannins like Pinot Noir and Gamay are fantastic with a bit of chill on them," says Smith. For older "library" wines and Cabernet Sauvignon, she recommends serving them just under room temperature, around 65 degrees Fahrenheit.

[Counterfeiting Is a Lingering Stain on the Wine Industry](#)
Feb 8, 2022
Wine Industry Network Advisor

*Excerpt*

Melissa L. Smith, founded Enotrias to provide wine appraisal in addition to her services as a certified sommelier. She advises restaurateurs to conduct monthly inventories, monitor which employees have access to the cellars, and destroy all empty bottles—which could end up refilled and resold.

## [We Need to Talk About "Clean," "Organic," and "Natural" Wine](#)

January 25, 2022
BYRDIE

*Excerpt*

If you really want to understand exactly how your wine is made and how that specific wine retailer is defining words like "natural," "clean," and "organic," your best bet is to have a conversation with small, local retailers.

"They are the ones who will be able to tell you vineyard practices and how the wines are made," says Melissa Smith, founder of Enotrias Elite Sommelier Services. "Most organic or biodynamic wines will actually not indicate that on the labels for a ton of reasons, one of which is how expensive those certifications actually are. You want to have a conversation with the wine shop clerk the same way you'd have a conversation with the farmer at the farmers market: How do you grow your fruit? Do you use synthetic fertilizers or pesticides?"

## [Dream Cellars: Clyde Beffa, co-founder of K&L Wine Merchants](#)

Jan 21, 2022
Enotrias

*Excerpt*

For those of us who have worked with Clyde in any capacity in the wine industry, the man is on the highest pedestal. Having worked for K&L at the beginning of my full time wine career after transitioning from my career as a chef, he took me under his wing, and gave me the responsibility of reviewing many of the Right Bank Bordeaux that we were importing, because in 2009, I declared that I had a "Parker palate" (face palm emoji in 2022 to that declaration). But it turns out, those are now his go to's for enjoyable drinking.

## [The Best Wine Glasses, According To Wine Experts](#)

January 20, 2022
Forbes

*Excerpt*

If you're looking for a single wine glass that will perform well with a wide range of varietals, the "One for All" crystal glass should be a top choice. "My new go-to is the Gabriel Glas StandArt One for All glass," says sommelier Melissa L. Smith, founder and proprietor of Enotrias, a California-based elite sommelier service. "It is elegant, durable and has a modern shape. Everything I put in it, from Champagne to Bordeaux, shows beautifully. I now use them as my house glass."

## [What Are You Really Waiting For?](#)
January 3, 2022
Wine Searcher

*Excerpt*

I was wondering what happens to wine collections after people die, so I called Melissa Smith, founder of Enotrias Elite Sommelier Services. Smith does wine appraisals and is frequently hired after a wine collector passes away. I asked her, do they end up being worth what the owners thought they were?

## [The Best Wine Racks for Your Favorite Bottles](#)
January 7, 2022
Simply Recipes

*Excerpt*

What exactly are the benefits of a wooden wine rack? According to Melissa L. Smith, founder of Enotrias Elite Sommelier Services. "In California, wooden racking is necessary because of earthquakes (they absorb vibration), and in other parts of the country that might not be necessary (although I always think it's a good idea simply because it is a softer material)."

## [Top Wine Gifts for 2021](#)
December 14, 2021
Enotrias

*Excerpt*

Skip the tchotchkes, the cork containers (do we really need a reminder of all of the bottles we've consumed?), and the gimmicky aerators, and go for sommelier tested high quality products, incredible reads, and three versions of glass that I'm obsessed with.

## [39 Best Places You Have To Travel Before You Die](#)
November 6, 2021
Lifney

*Excerpt*

Anderson Valley is home to some of the most exquisite wines in the US. Stunning Pinot Noir and Alsatian varietals are grown along this wine route that spans 3 AVAs, and ends at the Pacific Ocean at the Mendocino Coast where you can stay at homey inns or chic glamping resorts.

## What do you do with all of that Cab?

October 15, 2021

Enotrias

*Excerpt*

All of my client's cellars are FILLED with Cabernet, and unless it is an investment cellar filled with Burgundy, they are low on Pinot. Why is this? People drink through their Pinot. It is infinitely more food friendly, doesn't take as long to age, with softer tannins, minimal oak aging, and with the exception of Burgundy and some of the more luxury brand California and Oregon Pinots, the price tag is much lower.

## What to know when visiting wine country

August 19, 2021

Enotrias

*Excerpt*

We're constantly acclimating to the new realities of living in a pandemic, and the constant changes in mask policies, indoor and outdoor dining and tasting room policies, and of course, our new annual threat, fire/smoke season. Having spent almost every week in Napa Valley and Sonoma for the last few months, I figured I would update you on the state of things in wine country and hospitality so that you can best plan your visit.

## Valuing Wine Collections

July 15, 2021

Enotrias

*Excerpt*

During the pandemic I developed in-house proprietary software for Enotrias. This allowed me to speed up an inventory substantially, with way more accuracy than was previously possible. As one can assume, Vintage, Producer, Varietal, Vineyard Sites, etc., all go into the obvious category when inventorying a wine collection, but that is just the start when figuring out the true value of a collection.

## Insurance misconceptions place wine collections at risk

Jul 6, 2021

Property Casualty 360

*Excerpt*

A misconception persists among homeowners that their insurance policies will protect wine collections, when in fact, a separate rider or wine-specific coverage is necessary, according to

Melissa L. Smith, certified sommelier and founder of Enotrias Elite Sommelier Services, which specializes in inventorying wine collections.

**Napa Valley's Most Exclusive Club Makes Winemakers Out of the 1%**
Jun 18, 2021
Inside Hook

*Excerpt*

Situated at the Southern end of Meadowood Resort and shrouded in exclusivity, Napa Valley Reserve has become a secretive destination for the West Coast's well-to-do; Mark Zuckerberg and Bill Gates are rumored to pay their dues, while Kobe Bryant worked on bottlings there in the past. The Napa Valley Reserve "hosts the who's who of Silicon Valley tech and venture capital," as Melissa L. Smith, a certified sommelier and founder of Enotrias elite sommelier services, describes.

**NFTs Join the Fight Against Wine Fraud**
May 21, 2021
Wine Searcher

*Excerpt*

"I've opened so many fake 1982 Château Mouton Rothschilds, I've lost count," says Melissa Smith, founder of Enotrias, which provides white-glove private sommelier services to people who can afford it. Wine-Searcher caught her in the airport between flights from collector in California, to another in New Jersey. "I never said anything, because I was in hospitality settings, and each time, the person had brought the bottle in. I was never sure if they knew or not."

**Melissa L. Smith – USA/CA – Sommelier/Founder Enotrias**
May 17, 2021
Premium Sommelier

*Excerpt*

"I've worked with so many incredible people in this industry, but the person that continues to amaze and impress me is Tonya Pitts of One Market in San Francisco. When I was just a baby sommelier doing luxury Bordeaux events at One Market with K&L, she was always so friendly, supportive, and down to earth. Her smile set me at ease no matter how much I felt I was in over my head. It's a decade and a half later, and she continues to wow me. She's a quiet force, and one of the most intelligent, articulate, and welcoming people in hospitality."

[Science Makes a Mockery of Tasting Notes](#)
May 3, 2021
Wine Searcher

*Excerpt*

Smith also believes that we need to speak more inclusively to people from a variety of backgrounds, with a range of flavor touchstones.

"I work with a lot of tech companies, and the vast majority of my clients have ended up being from India," she notes. "Guess what? For them, it's not about cranberries and honeysuckle. I often start by asking them what they ate as children, the fresh fruits they love. I try to lead them through their own sensory background, and connect maybe the green mangos they loved as kids with New Zealand Sauvignon Blanc.

[Style Profile: Melissa L. Smith, Founder of Enotrias Elite Sommelier Services](#)
Apr 28, 2021
Run Around Chic

*Excerpt*

What wine would you pair with a wagyu beef burger:
A gorgeous aged Bordeaux like 2010 Lynch Bages or Smith Haut Lafitte.
What wine would you pair with oysters:
A crisp dry Champagne like Billecart's Blanc de Blanc.
Favorite winery in Napa and Sonoma: Robert Sinskey in Napa Valley. They have an incredible biodynamic program and offer an unbeatable full circle culinary experience. It's right on the Napa/Sonoma border, but you really can't go wrong with Domaine Carneros.

[Best Kitchen Appliances to Splurge On](#)
Mar 1, 2021
A Sweat Life

*Excerpt*

Melissa L. Smith, CIA trained chef and sommelier, for example, is a big fan of the Instant Pot 7-in-1 Electric Pressure Cooker ($79, amazon.com), which can be used as both a pressure cooker and a slow cooker. You can make so many things in it, including bone broth, yogurt, and freezer-to-table meals, she says.

## Dream Cellars: Heidi Barrett

Feb 8, 2021

Enotrias

*Excerpt*

There has never been a collection that I have worked on, or a restaurant that I have worked in, that hasn't held at least one of the wines that she's made. These wines are collected, coveted, and rarely brought out of hiding unless there is a grand occasion to open one of these almost priceless bottles.

## Making Sure of Your Wine Insurance

Dec 14, 2020

Wine Searcher

*Excerpt*

If you think your home insurance policy covers your wine collection, you better take a closer look.

Most home insurance policies do not cover wine, says Melissa Smith, who does wine collection valuations for her company Enotrias. And most people don't find out until it's too late.

Among her contacts are Steve and Betsy Moulds, who own a vineyard and home in the Oak Knoll District of Napa Valley. Smith says the Moulds had a 3000-bottle cellar, including bottles of historic value, like 100-year-old Madeira, and personally important wines like bottlings made from their vines.

## Uncorking The Basics Of Wine Insurance

Nov 2, 2020

Forbes

*Excerpt*

Many of us simply open a $15 bottle of wine, pour a glass and sip it. Other people savor the art of collecting wine, whether it's for pure pleasure or as an investment. But some of those collectors fail to insure their valuable vino—wines that can fetch hundreds of thousands of dollars per bottle. [...] Certified sommelier Melissa Smith, founder of Enotrias Elite Sommelier Services, which appraises and inventories wine for insurance purposes, says the wine collections owned by her clients generally range from $30,000 to several million dollars in value.

**The Best Wines for Relaxing (And What to Avoid)**
Oct 13, 2020
Pure Healthy Living

*Excerpt*

For some of us, nothing compares to a glass of wine when you need to detach from a stressful day. Not a freshly brewed cup of chamomile tea. Not a mug of steaming hot chocolate. Uncork a bottle of aromatic vino and we're golden.

But have you ever wondered, what are the best wines for relaxing? Could changing up your go-to grapes make your unwind sessions even more satisfying?

We posed this question and more to Melissa L. Smith, a certified sommelier and founder of Enotrias Elite Sommelier Services. She's also known as "The Sommelier to the Silicon Valley Stars"—so if anyone knows what it takes to help SUPER busy people decompress with wine, it's her.

Here's what she said.

**How to start a video podcast on YouTube with 9 expert tips**
Aug 17, 2020
YBIERLING

*Excerpt*

Melissa L. Smith, Enotrias: set three goals for yourself before each presentation...

**The Man Behind the Most Awe Inspiring Wine Cellars in the Country**
June 2020
Enotrias

*Excerpt*

His wine cellars are like museums. Incredible details, utilizing the finest materials, and preserving and presenting bottles of wine as the masterpieces that they are. Through a series of phone calls, video chats, and offline research, I was given insight into the world of creating some of the finest cellars in the country.

## A Total Loss
May 2020
Enotrias

*Excerpt*

A burst pipe resulted in a wine collection that was a complete loss. The subterranean space where the wine was being kept was completely flooded with water that came from a compromised pipe that was recently replaced by a plumbing company. What made it a total loss instead of just a partial due to water damage on the labels, was compounded by two factors. One was the temperature variance as the wines had to be removed from the space to dry, during a heat wave (the flood also damaged the air conditioning unit which was inoperable, resulting in an environment that was in the 80s and 90s). The second, and more serious, was that there was a rodent trap filled with rat poisoning on the floor of the same room. This poison quickly mixed with the flood water, and compromised every bottle that the water touched.

## Are You a Wine Hoarder?
May 2020
Enotrias

*Excerpt*

Wine clubs backing up, bottles placed errantly in empty slots, wines gifted and thrown in with the rest of your collection, cases left over from events or parties, a sale gets the best of you. It can be entirely overwhelming to keep track of what you have.

## Dream Cellars: Joel Weiss of Napa
May 2020
Enotrias

*Excerpt*

Currently Joel is in Napa, CA in the Oak Knoll AVA with his wife, Jennlea Weiss on an eight acre home and vineyard. Having built a stunning three story tall wine tower in the Oak Knoll District of Napa Valley with Thomas Warner Wine Cellars, Weiss has one of the most incredible wine collections and wine cellars in the US.

## "The Marie Kondo of Wine Cellars"
May 2020
Enotrias

One of my favorite concepts of Marie Kondo's The Life-Changing Magic of Tidying Up, is the idea that if it does not bring you joy, remove it. Oftentimes collectors start with a passion for big, bold, domestic wines, and then progress towards lighter, more European styles, or go from daily

drinkers, to investment wines. Others have a mish mash of wines brought back from wine country trips, and the wines are buried in the collection, or, the more common affliction, is the wine club windfall (don't worry, I'm guilty of it too).

## Is Your Wine Collection Insured?
May 2020
Enotrias

For the last several years I have been giving a seminar on Wine Collecting and the Valuation of Wine Collections to various Bar Associations, Country Clubs, and now with the esteemed San Francisco Wine School. I've seen an increase in wine collections lost to natural disasters that are now becoming commonplace in California. Earthquakes, fires, floods, and now power outages that compromise cellar cooling units are all things that a wine collector needs to take into consideration when creating and protecting their cellar.

**Fuel for Rocket Scientists**
June 2015
Dinosaur

*Excerpt*

In this feature from DINOSAUR No. 4, chef Ted Cizma takes the kitchens at Elon Musk's SpaceX from farm to table and beyond.

**Domaine Weinbach Faller**
May 27, 2014
Uncorked

**The Latest Trends of California Wine**
May 9, 2014
Decapo

**2014 Fete de Bordeaux**
Feb 14, 2014
Uncorked

**2014 UGC-The 2011 BDX Vintage**
Feb 7, 2014
Uncorked

**Last Minute Personal Sommelier Gift Picks**
Dec 20, 2013
Uncorked

**Coravin: What we all want (need) for Christmas**
Dec 9, 2013
Uncorked

**SOMM: "The most difficult test you've NEVER heard of."**
Jul 9, 2013
Uncorked

**[A Day in the Vineyard](#)**
Mar 13, 2013
San Jose Mercury News

**Sake Sans Sushi**
Mar 8, 2013
Uncorked
**Napa Bootcamp 2012: A Visit to Oakville Ranch**
Oct 18, 2012
Uncorked

**Behind the (Urban) Wine: Kristie Tacey & Tessier Winery**
Aug 29, 2011
Uncorked

**Do Glasses Really Matter?**
May 13, 2011
Uncorked

**Sake Stories: Melissa Smith and Taru Sake**
Mar 1, 2011
Uncorked

**Craft Your Own Cocktails with Slanted Door's Jennifer Colliau**
Jan 11, 2011
Uncorked

**Good Taste: New Years Lez-olutions**
Jan 6, 2011
After Ellen

**Spice Up Your Christmas: Eggnog Recipe**
Dec 15, 2010
Uncorked

**Nama Sake in Fall**
Nov 8, 2010
Uncorked

**Sake 101: Junmai**
Jul 23, 2010
Uncorked

**Trockenbeerenauswhat?**
Jul 19, 2010
Uncorked

**Crafty Cocktails and Japanese Whiskey**
Jul 14, 2010
Uncorked

## SKILLS

- Google Suite
- POS
- Journalism
- Wine
- Wine Tasting
- Wine Education
- Wine Appraisal
- Wine Authentication
- Cellar Organization
- Wine Inventory
- Food & Beverage Consulting
- Fine Dining
- Event Planning
- Event Management
- Culinary Skills
- Restaurant Management
- Cocktail Creation
- Catering
- Bartending
- Pastry
- Social Media
- Sales
- Hospitality Management
- Marketing
- Strategic Planning
- Corporate Events
- Leadership
- Food Pairing

# EXHIBIT 3

066

1   Victor A. Sahn (CA Bar No. 97299)
      *victor.sahn@gmlaw.com*
2   Mark S. Horoupian (CA Bar No. 175373)
      *mark.horoupian@gmlaw.com*
3   **GREENSPOON MARDER LLP**
    a Florida limited liability partnership
4   333 South Grand Ave., Suite 3400
    Los Angeles, CA 90071
5   Telephone: 213.626.2311
    Facsimile: 213.629.4520
6
    Attorneys for Debtor in Possession,
7   Spring Mountain Vineyard Inc.

8               **UNITED STATES BANKRUPTCY COURT**

9               **NORTHERN DISTRICT OF CALIFORNIA**

10                  **SANTA ROSA DIVISION**

11  | In re: | Case No. 1:22-bk-10381 CN |

12  SPRING MOUNTAIN VINEYARD INC., a          Chapter 11
    Delaware corporation,
13                                            **ORDER GRANTING APPLICATION TO**
              Debtor.                         **EMPLOY ENOTRIAS TO APPRAISE THE**
14                                            **DEBTOR'S BOTTLED WINE**
                                              **INVENTORY.**
15  Federal EIN: 36-3844911
                                              [Related to Docket No. ___]
16
                                              **Hearing Information:**
17                                            Date:  February 15, 2023
                                              Time:  11:00 a.m.
18                                            Place: U.S. Bankruptcy Court
                                                     Courtroom 215
19                                                   1300 Clay Street
                                                     Oakland, CA 94612
20

21

22         On January 11, 2023, Spring Mountain Vineyard Inc., the above-captioned debtor in

23  possession (the "Debtor") filed its "Application To Employ Enotrias To Appraise The Debtor's

24  Bottled Wine Inventory" [Docket No. ___] (the "Application").[1]  The Application came on for

25  hearing before the Honorable Charles Novack.

26  _____

27  [1] Capitalized terms not otherwise defined herein shall have the meanings given to such terms in
    the Application.

28

                                                                        067

SB 52925377v1

This Court having considered the Application, including all pleadings, declarations, and exhibits thereto and the record in this case; and this Court having jurisdiction to consider the Application and the relief requested therein; and due and proper notice of the Application having been provided to all necessary parties, and it appearing that no other or further notice need be provided; and the Court having found and determined that the relief sought in the Application is in the best interests of the Debtor and the its bankruptcy estate, and that the legal and factual bases for approval of the Application establish just cause for the relief granted herein; and good cause appearing therefor,

**IT IS HEREBY ORDERED AS FOLLOWS:**

1.      The Application is approved as set forth herein.

2.      The Debtor is authorized to employ Enotrias, Elite Sommelier Services ("Enotrias"), effective as of January 16, 2022, to appraise the Debtor's bottled wine inventory and provide the Additional Services, if any, as defined in the Application, pursuant to 11 U.S.C. §§ 327(a), 330, and 331, and the terms and conditions stated in the Application.

3.      Enotrias authorized to receive payments from the Debtor for fees and reimbursement of expenses pursuant to the following Interim Fee Procedures, which are hereby approved:

    a.      On or before the 20th day of each month following the month for which compensation is sought, Enotrias must file with the Court and serve a monthly statement (the "Monthly Statement") on the Debtor, MGG California, LLC, the Office of the U.S. Trustee, and counsel to the Debtor's secured creditors, and all parties who have filed requests for notice in this bankruptcy case (collectively, the "Recipients").

    b.      Each Monthly Statement must include the following information: (i) the total amount of compensation and reimbursement of expenses requested for the month; (ii) the names, hourly rates, total number of hours billed, and total amount of fees incurred by each individual during the month; (iii) a summary list of the expenses, separated by category, for which reimbursement is sought; (iv) a summary list of the fees, separated by matter categories, for which

compensation is sought; and (v) detailed statements of the time entries for all individuals who performed services during the month.

      c.     Each of the Recipients shall have fifteen (15) days after service of a Monthly Statement (the "Objection Deadline") to raise any objection thereto. Any objection to a Monthly Statement (each, an "Objection") must (i) be in writing, (ii) set forth the precise nature of the Objection, the grounds therefor, and the amount of fees and/or expenses to which the Objection applies, and (iii) be filed with the Court and served, on or before the Objection Deadline, on Enotrias, the Debtor's counsel, and each of the Recipients.

      d.     If no timely Objection is filed and served with respect to a Monthly Statement, then, without further order of the Court, Enotrias shall file a certificate of no objection with the Court with respect to the unopposed portion of the fees and expenses requested in its Monthly Statement (each, a "CNO"). After a CNO is filed, the Debtor may pay Enotrias 80% of the fees and 100% of the out-of-pocket expenses requested in the Monthly Statement. All such payments shall be on an interim basis and subject to the filing of interim and final fee applications pursuant to 11 U.S.C. §§ 330 and 331.

      e.     If a timely Objection is filed and served with respect to a Monthly Statement, then the objecting party and Enotrias may attempt to resolve the Objection on a consensual basis. If the parties are unable to reach a consensual resolution of the Objection, Enotrias may either (i) set the matter for hearing with the Court, on not less than fifteen (15) days' notice to each of the Recipients, or (ii) forego payment of the disputed amount until the next interim or final fee application hearing, at which time the Court will consider and resolve the Objection.

      f.     Pending resolution of any timely Objection, the Debtor may pay Enotrias the lesser of (i) 80% of the fees and 100% of the expenses requested in the Monthly Statement to which the Objection applies; and (ii) the aggregate amount of fees and expenses requested in such Monthly Statement as to which no timely Objection was raised.

      g.     The pendency of an Objection to payment of compensation or reimbursement of expense requested by Enotrias in a particular Monthly Statement or interim fee

application shall not prevent Enotrias from receiving payment of fees and expenses pursuant to future Monthly Statements served in accordance with these proposed procedures, except as otherwise ordered by the Court.

h.     Neither the payment of, nor the failure of any Recipient to serve an Objection, in whole or in part, to any Monthly Statement, shall waive that party's right to later object to an interim or final fee application, nor bind that party with respect to the subsequent consideration of the interim or final allowance of Enotrias' fees and expenses.

i.     The proposed procedures are optional and need only be followed if Enotrias is seeking monthly compensation.

4.     Subject to and consistent with any cash collateral stipulations or orders, cash collateral usage, post-petition financing, or related budgets approved by the Court, Enotrias shall be compensated for its services and reimbursed for any related expenses in accordance with the rates (as may be adjusted from time to time) and disbursement policies as set forth in the Application and any other applicable orders of this Court.

5.     To the extent that there may be any inconsistency between the terms of the Application and this Order, the terms of this Order shall govern.

6.     Enotrias shall make a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in the "Notice of Applicability of Large-Case United States Trustee Fee Guidelines" (the "Fee Guidelines") [Docket No. 99], in connection with the Application and any interim and/or final fee application(s) to be filed by Enotrias in this case.

7.     Enotrias shall be compensated in accordance with the procedures set forth in the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Fee Guidelines, and any applicable orders of this Court, and shall file interim and final applications for allowance of its compensation and expenses in accordance with the foregoing, which applications shall be subject to sections 330 and 331 of the Bankruptcy Code.

8.     Enotrias shall be reimbursed for reasonable and necessary expenses as provided by the Fee Guidelines.

1        9.     Enotrias shall use its best efforts to avoid any duplication of services provided by
2   any of the other retained professionals in this bankruptcy case.

3        10.    This Court retains jurisdiction over all matters arising from or related to the
4   implementation or interpretation of this Order.

5                         **\*\*END OF ORDER\*\***

SB 52925377v1

COURT SERVICE LIST

SERVICE OF THE ORDER IS NOT NECESSARY

GREENSPOON MARDER LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

1

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 333 South Grand Avenue, Suite 3400, Los Angeles, CA 90071.

A true and correct copy of the foregoing document entitled (*specify*): **APPLICATION TO EMPLOY APPRAISER FOR THE DEBTOR'S BOTTLED WINE INVENTORY. DECLARATIONS OF KEVIN A KRAKORA AND MELISSA L. SMITH IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) January 20, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

⊠ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) January 20, 2023, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

⊠ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)  January 20, 2023 , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

⊠ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 20, 2023 | Patricia Dillamar | *Patricia Dillamar* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

CC 52274685v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**
073

**ADDITIONAL SERVICE INFORMATION (if needed):**

# 1. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")

Dean C. Burnick on behalf of Interested Party Mt. Hawley Insurance Company **(RSN)**
dcb@proughlaw.com

Jacquelyn H. Choi on behalf of Creditor Napa County Treasurer-Tax Collector **(RSN)**

Trevor Ross Fehr on behalf of U.S. Trustee Office of the U.S. Trustee / SR
trevor.fehr@usdoj.gov

Mark S Horoupian on behalf of Debtor Spring Mountain Vineyard Inc.
mark.horoupian@gmlaw.com, cheryl.caldwell@gmlaw.com

Thomas Philip Kelly, III on behalf of Creditor Central Valley Builders Supply Inc. **(RSN)**
tomkelly@sonic.net

Steve Ma on behalf of Creditor MGG California, LLC
sma@proskauer.com

Jeff J. Marwil on behalf of Creditor MGG California, LLC
jmarwil@proskauer.com

Randall P. Mroczynski on behalf of Creditor Ford Motor Credit Company LLC **(RSN)**
rmroczynski@cookseylaw.com

Office of the U.S. Trustee / SR
USTPRegion17.SF.ECF@usdoj.gov

Elvina Rofael on behalf of U.S. Trustee Office of the U.S. Trustee / SR
elvina.rofael@usdoj.gov, Katina.Umpierre@usdoj.gov,GemMil.Langit@usdoj.gov

Victor A. Sahn on behalf of Debtor Spring Mountain Vineyard Inc.
victor.sahn@gmlaw.com, Karen.Files@gmlaw.com

Michael St. James on behalf of Interested Party Arcade Capital, LLC **(RSN)**
ecf@stjames-law.com

John G. Warner on behalf of Creditor Francois Freres USA Inc. **(RSN)**
warnerwest@aol.com

Ashley M. Weringa on behalf of Creditor MGG California, LLC
aweringa@proskauer.com

Steven F. Werth on behalf of Debtor Spring Mountain Vineyard Inc.
steven.werth@gmlaw.com, Patricia.Dillamar@gmlaw.com

Peter J Young on behalf of Creditor MGG California, LLC
pyoung@proskauer.com

CC 52274685v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                          F 9013-3.1.PROOF.SERVICE

Case: 22-10381     Doc# 452     Filed: 07/06/23     Entered: 07/06/23 13:62:02     Page 75 of 109

**SERVED BY EMAIL OR UNITED STATES MAIL**

**Debtor's Financial Advisor And Chief Restructuring Officer**
Attn: Kevin A. Krakora, Managing Director
Getzler Henrich & Associates LLC, a Hilco Global Company
150 S. Wacker Drive | 24th Floor
Chicago, IL 60606
Tel: (312) 283-8071
email: kkrakora@getzlerhenrich.com
pekman@hilcoglobal.com

**Secured Creditor**
Imperial PFS aka IPFS
49 Stevenson St. #127
San Francisco, CA 94105-2909
(877) 687-9826
Lisa Chandler, Litigation and Bankruptcy
Recovery Manager
lisa.chandler@ipfs.com

**Largest Unsecured Creditors**
Allen Wine Group LLP
Attn: Timothy Allen, CPA - Managing Partner
120 Stony Point Road, #230
Santa Rosa, CA 95401
(707) 528-3860
tim@allenwine.com
Tim@allengroupllp.com
Brent Garrison
Brent@allengroupllp.com

Bartelt Engineering
Attn: Paul Bartelt
1303 Jefferson St #200B
Napa, CA 94559
(707) 258-1301
paulb@barteltengineering.com

Belkorp AG, LLC
Attn: Laura Correll, Accounting
2413 Crows Landing Rd
Modesto, CA 95358
(209) 205-3706
ar@belkorpag.com
AR@BelkorpAg.com
ldunhouse@belkorpag.com

Brown's Auto Parts
Attn Dan Beltramai, Owner
1218 Main St.
Saint Helena, CA 94574-1901
(707) 963-3638
brownsauto169@gmail.com

Castino Restaurant Equipment And Supply
50 Utility Ct.
Rohnert Park, CA 94928-1659
(707) 585-3566
sales@castinosolutions.com

Central Valley
Administrative Offices
1804 Soscol Ave., #205
Napa, CA 94559
Attn: Gerry Cruz, Accounting Mgr.
(707) 261-7900
gerryc@central-valley.com

Chubb Group of Insurance Companies
P.O. Box 777-1630
Philadelphia, PA 19175-0001
(800) 372-4822
**Returned – Box Closed**

Conway Beverage Group, LLC
Dba: Elite Brands
Elite Brokerage
3238 Old Heather Rd.
San Diego, CA 92111-7716
Attn: Mr. Jay Conway
Jayconway@elitebrands.biz

Famille Sylvain
855 Bordeaux Way #239
Napa, CA 94558-7549
(707) 492-3308
contactusa@famillesylvain.com

Tonnellerie Sylvain
855 Bordeaux Way
Napa, CA 94558
(707) 492-3308
contactusa@famillesylvain.com

CC 52274685v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                          F 9013-3.1.PROOF.SERVICE

Francois Freres USA Inc.
1403 Jefferson St.
Napa, CA 94559-1708
(707) 294-2204
office@francoisfreresusa.com
julie@francoisfreresusa.com
accounting@francoisfreresusa.com
assistant@francoisfreresusa.com

G3 Enterprises Inc.
(Tapp Labels)
580 Gateway Dr.
Napa, CA 94558
(707) 252-8300
jeff.licht@tapplabel.com

Napa County Treasurer
1195 3rd St. #108
Napa, CA 94559-3035
(707) 253-4314
Dawnette.martindale@countyofnapa.org
Napa County Treasurer-Tax Collector
Bob.Minahen@countyofnapa.org
Napa County Attorney
Wendy.dau@countyofnapa.org

Napa Ford Lincoln
170 Soscol Ave.
Napa, CA 94559
(707) 255-2580
**Via Regular Mail**

Ford Motor Credit Company
National Bankruptcy Service Center
P O Box 62180
Colorado Springs CO 80962-2180
(800) 955-8232
fcffald@ford.com

Napa Valley Petroleum
P.O. Box 2670
Napa, CA 94558-0528
(707) 252-6888
kamh@napavalleypetroleum.com

Napa Valley Vintners Association
P.O. Box 141
Saint Helena, CA 94574
(707) 963-3388
Attn: Steve Tradewell, CFO
stradewell@napavinters.com

Ramondin U.S.A. Inc.
Tammy Frandsen
Finance Manager
541 Technology Way
Napa, CA 94558
(707) 944-2277
tfrandsen@ramondin.com

Stanzler Law Group
Attn: Jordan S. Stanzler
390 Bridge Pkwy #220
Redwood City, CA 94065
(650) 739-0200
Jstanzler@stanzlerlawgroup.com

Wilbur Ellis Company LLC
c/o Registered Agent Solutions Inc.
720 14th St.
Sacramento, CA 95814-1905
(707) 963-3495
KZavala@wilburellis.com
MHAMMETT@wilburellis.com

Wine Service Cooperative
1150 Dowdell Lane
Saint Helena, CA 94574
Attn:  Steven Tamburelli
General Manager
Tel: (707) 963-9474
Fax: (707) 963 9359
Steve@wineservicecoop.com

Bright Event Rental
22674 Broadway # A
Sonoma, CA 95476
(707) 940-6060
Attn:  Michelle Minsk, Acctg.
accountsreceivable@bright.com

CC 52274685v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

F 9013-3.1.PROOF.SERVICE

CNH Capital
Dept. 1801104747435
P.O. Box 78004
Phoenix, AZ 85062
Attn: Steve Wright, Bankruptcy Dept.
(717) 355-5790
**Via Regular Mail**

CNH Industrial Capital America, LLC
PO Box 71264
Philadelphia, PA 19176-6264
Attn: John Chiavacci, HRBK Analyst
(717) 355-5913
john.chiavacci@cnhind.com

ETS Laboratories
c/o Marjorie Burns 899 Adams Street #A
Saint Helena, CA 94574-1160
(707) 963-4806
Attn Accounts Receivable Team
ar@etslabs.com
accounts@etslabs.com

Matheson Tri-Gas Inc.
Dept. LA 23793
Pasadena, CA 91185
(707) 963-4307
**Via Regular Mail**

Sovos Compliance LLC
200 Ballardvale St. Bldg 14th Fl.
Wilmington, MA 01887
(866) 890-3970
lori.bradshaw@sovos.com

Wine Technology America
aka Wine Technology, Inc.
474 Walten Way
aka Vinwizard
Windsor, CA 95492
(707) 703-5919
Attn: Kelly Graves, Director
(720) 284-2059
kelly@vinwizard.us

Wine Technology America Inc.
c/o Lloyd Matthews, Agent
1899 Larkspur St.
Yountville, CA 94599-1237
**Via Regular Mail**

Wyatt Irrigation Co.
4407 Solano Ave.
Napa, CA 94558
(707) 578-3747
Lynne Colombano, Acct Receivable Mgr.
lynne@wyattsupply.com

Wyatt Irrigation Co.
c/o CSC - Lawyers Incorporing Service
2710 Gateway Oaks Dr. #150N
Sacramento, CA 95833-3502
**Via Regular Mail**

**Request for Special Notice**
Alcohol & Tobacco Tax & Trade Bureau
U.S. Department of the Treasury
Attn: Daniel Paralta, Senior Counsel,
Field Operations
1436 2nd Street #531
Napa, CA 94559
(513) 684-2509
(202) 453-2412
Daniel.Peralta@ttb.gov

Dept. of the Treasury, Alcoholic Beverage Control
Attn: Tracie Parker, Lic. Rep. I
50 D Street Room 130
Santa Rosa, CA. 95404
Phone: (707) 576-2165
Fax: (707) 638-9537
tracie.parker@abc.ca.gov

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346
(800) 973-0424
**Via Regular Mail**

California Department of Tax and Fee
Administration
Special Operations Bankruptcy Team MIC: 74
P.O. Box 942879
Sacramento, CA 94279-0074
(800) 400-7115
**Via Regular Mail**

CC 52274685v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                    F 9013-3.1.PROOF.SERVICE

Franchise Tax Board
Attn: Vivian Ho
Bankruptcy Section, MS A-340
P.O. Box 2952
Sacramento, CA 95812-2952
916-845-7069
Vivian.Ho@ftb.ca.gov

Employment Development Department
Bankruptcy Unit-MIC 92E
P.O. Box 826880
Sacramento, CA 94280-0001
**Via Regular Mail**

Employment Development Department
Attn: MIC 53
800 Capital Mall
Sacramento, CA 95814
**Via Regular Mail**

Piper/Sandler
1251 Avenue of the Americas, 39th Floor
New York, N.Y. 10020
Attn.: Mr. Leonard Sheer and Mr. Mike Dillahunt
Leonard.sheer@psc.com
Michael.dillahunt@psc.com
**Via Regular Mail & Email**

Will Densberger
Pavi Micheli
Engel & Voelkers
25 East Napa Street
Sonoma, California
Will@nvwineestates.com
pavimicheli@icloud.com
**Via Regular Mail & Email**

**Courtesy Email**

Jay B. Spievack, Esq.
Cohen Tauber Spievack & Wagner P.C.
420 Lexington Ave., Suite 2400
New York NY 10170-2499
(212) 381-8735
email: jspievack@ctswlaw.com

Joseph Vann, Esq.
Cohen Tauber Spievack & Wagner P.C.
420 Lexington Ave., Suite 2400
New York NY 10170-2499
(212) 381-8724
email: jvann@ctswlaw.com

John C. Vaughan
Newmark Knight Frank
4675 MacArthur Court, Suite 1600
Newport Beach, CA 92660
(808) 797-0148
email: john.vaughan@nmrk.com

Mark Kasowitz: MKasowitz@kasowitz.com

Gavin D. Schryver: GSchryver@kasowitz.com

Attorneys for Napa County Treasurer
Jacquelyn H. Choi
jacquelyn.choi@rimonlaw.com,
docketing@rimonlaw.com

Luckey McDowell
luckey.mcdowell@shearman.com

Jonathan Dunworth
jonathan.dunworth@shearman.com

Attorneys for Creditor Francois Freres USA Inc.
John G. Warner
warnerwest@aol.com

CC 52274685v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                    F 9013-3.1.PROOF.SERVICE

# EXHIBIT 2 re: First & Final Fee App



1    Victor A. Sahn (CA Bar No. 97299)
       *victor.sahn@gmlaw.com*
2    Mark S. Horoupian (CA Bar No. 175373)
       *mark.horoupian@gmlaw.com*
3    **GREENSPOON MARDER LLP**
     a Florida limited liability partnership
4    333 South Grand Ave., Suite 3400
     Los Angeles, CA  90071
5    Telephone: 213.626.2311
     Facsimile: 213.629.4520
6
     Attorneys for Debtor in Possession,
7    Spring Mountain Vineyard Inc.

The following constitutes the order of the Court.
**Signed: March 9, 2023**

_____
**Charles Novack**
**U.S. Bankruptcy Judge**

8                **UNITED STATES BANKRUPTCY COURT**

9                **NORTHERN DISTRICT OF CALIFORNIA**

10                      **SANTA ROSA DIVISION**

11   In re:                                   Case No. 1:22-bk-10381 CN

12   SPRING MOUNTAIN VINEYARD INC., a         Chapter 11
     Delaware corporation,
13                                            **ORDER GRANTING APPLICATION TO**
                      Debtor.                 **EMPLOY ENOTRIAS TO APPRAISE THE**
14                                            **DEBTOR'S BOTTLED WINE**
                                              **INVENTORY.**
15   Federal EIN:  36-3844911
                                              [Related to Docket No. 212]
16
                                              **Hearing Information:**
17                                            Date:    February 15, 2023
                                              Time:    11:00 a.m.
18                                            Place:   U.S. Bankruptcy Court
                                                       Courtroom 215
19                                                     1300 Clay Street
                                                       Oakland, CA 94612
20

21           On January 11, 2023, Spring Mountain Vineyard Inc., the above-captioned debtor in

22   possession (the "<u>Debtor</u>") filed its "Application To Employ Enotrias To Appraise The Debtor's

23   Bottled Wine Inventory" [Docket No. 212] (the "<u>Application</u>").[1]  The Application came on for

24   hearing before the Honorable Charles Novack.

25

26   _____

27   [1] Capitalized terms not otherwise defined herein shall have the meanings given to such terms in
28   the Application.

079

SB 52925377v1

This Court having considered the Application, including all pleadings, declarations, and exhibits thereto and the record in this case; and this Court having jurisdiction to consider the Application and the relief requested therein; and due and proper notice of the Application having been provided to all necessary parties, and it appearing that no other or further notice need be provided; and the Court having found and determined that the relief sought in the Application is in the best interests of the Debtor and the its bankruptcy estate, and that the legal and factual bases for approval of the Application establish just cause for the relief granted herein; and good cause appearing therefor,

**IT IS HEREBY ORDERED AS FOLLOWS:**

1. The Application is approved as set forth herein.

2. The Debtor is authorized to employ Enotrias, Elite Sommelier Services ("Enotrias"), effective as of January 16, 2022, to appraise the Debtor's bottled wine inventory and provide the Additional Services, if any, as defined in the Application, pursuant to 11 U.S.C. §§ 327(a), 330, and 331, and the terms and conditions stated in the Application.

3. The Engagement Agreement attached as Exhibit 1 to the Application is hereby approved as amended below:

    a. The following language in the "Limitation of Liability" section on page 3 of the Engagement Agreement is hereby **deleted**- "Appraiser's maximum liability hereunder arising from any cause whatsoever, whether based in contract, tort, including negligence, or any other theory of law, shall not exceed the amount paid by Client to Appraiser for the services rendered hereunder."

4. Enotrias authorized to receive payments from the Debtor for fees and reimbursement of expenses pursuant to the following Interim Fee Procedures, which are hereby approved:

    a. On or before the 20th day of each month following the month for which compensation is sought, Enotrias must file with the Court and serve a monthly statement (the "Monthly Statement") on the Debtor, MGG California, LLC, the Office of the U.S. Trustee, and

SB 52925377v1

counsel to the Debtor's secured creditors, and all parties who have filed requests for notice in this bankruptcy case (collectively, the "Recipients").

        b.      Each Monthly Statement must include the following information: (i) the total amount of compensation and reimbursement of expenses requested for the month; (ii) the names, hourly rates, total number of hours billed, and total amount of fees incurred by each individual during the month; (iii) a summary list of the expenses, separated by category, for which reimbursement is sought; (iv) a summary list of the fees, separated by matter categories, for which compensation is sought; and (v) detailed statements of the time entries for all individuals who performed services during the month.

        c.      Each of the Recipients shall have fifteen (15) days after service of a Monthly Statement (the "Objection Deadline") to raise any objection thereto. Any objection to a Monthly Statement (each, an "Objection") must (i) be in writing, (ii) set forth the precise nature of the Objection, the grounds therefor, and the amount of fees and/or expenses to which the Objection applies, and (iii) be filed with the Court and served, on or before the Objection Deadline, on Enotrias, the Debtor's counsel, and each of the Recipients.

        d.      If no timely Objection is filed and served with respect to a Monthly Statement, then, without further order of the Court, Enotrias shall file a certificate of no objection with the Court with respect to the unopposed portion of the fees and expenses requested in its Monthly Statement (each, a "CNO"). After a CNO is filed, the Debtor may pay Enotrias 80% of the fees and 100% of the out-of-pocket expenses requested in the Monthly Statement. All such payments shall be on an interim basis and subject to the filing of interim and final fee applications pursuant to 11 U.S.C. §§ 330 and 331.

        e.      If a timely Objection is filed and served with respect to a Monthly Statement, then the objecting party and Enotrias may attempt to resolve the Objection on a consensual basis. If the parties are unable to reach a consensual resolution of the Objection, Enotrias may either (i) set the matter for hearing with the Court, on not less than fifteen (15) days' notice to each of the Recipients, or (ii) forego payment of the disputed amount until the next

1 interim or final fee application hearing, at which time the Court will consider and resolve the

2 Objection.

3      f.      Pending resolution of any timely Objection, the Debtor may pay Enotrias

4 the lesser of (i) 80% of the fees and 100% of the expenses requested in the Monthly Statement to

5 which the Objection applies; and (ii) the aggregate amount of fees and expenses requested in such

6 Monthly Statement as to which no timely Objection was raised.

7      g.      The pendency of an Objection to payment of compensation or

8 reimbursement of expense requested by Enotrias in a particular Monthly Statement or interim fee

9 application shall not prevent Enotrias from receiving payment of fees and expenses pursuant to

10 future Monthly Statements served in accordance with these proposed procedures, except as

11 otherwise ordered by the Court.

12      h.      Neither the payment of, nor the failure of any Recipient to serve an

13 Objection, in whole or in part, to any Monthly Statement, shall waive that party's right to later

14 object to an interim or final fee application, nor bind that party with respect to the subsequent

15 consideration of the interim or final allowance of Enotrias' fees and expenses.

16      i.      The proposed procedures are optional and need only be followed if Enotrias

17 is seeking monthly compensation.

18      5.      Subject to and consistent with any cash collateral stipulations or orders, cash

19 collateral usage, post-petition financing, or related budgets approved by the Court, Enotrias shall

20 be compensated for its services and reimbursed for any related expenses in accordance with the

21 rates (as may be adjusted from time to time) and disbursement policies as set forth in the

22 Application and any other applicable orders of this Court.

23      6.      To the extent that there may be any inconsistency between the terms of the

24 Application and this Order, the terms of this Order shall govern.

25      7.      Enotrias shall make a reasonable effort to comply with the U.S. Trustee's requests

26 for information and additional disclosures as set forth in the "Notice of Applicability of Large-

27 Case United States Trustee Fee Guidelines" (the "Fee Guidelines") [Docket No. 99], in connection

28 with the Application and any interim and/or final fee application(s) to be filed by Enotrias in this

SB 52925377v1

1   case.

2          8.      Enotrias shall be compensated in accordance with the procedures set forth in the

3   applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules,

4   the Fee Guidelines, and any applicable orders of this Court, and shall file interim and final

5   applications for allowance of its compensation and expenses in accordance with the foregoing,

6   which applications shall be subject to sections 330 and 331 of the Bankruptcy Code.

7          9.      Enotrias shall be reimbursed for reasonable and necessary expenses as provided by

8   the Fee Guidelines.

9          10.     Enotrias shall use its best efforts to avoid any duplication of services provided by

10  any of the other retained professionals in this bankruptcy case.

11         11.     This Court retains jurisdiction over all matters arising from or related to the

12  implementation or interpretation of this Order.

13                                  **END OF ORDER**

SB 52925377v1

1                              COURT SERVICE LIST

2

3 SERVICE OF THE ORDER IS NOT NECESSARY

084

# EXHIBIT 3 re: First & Final Fee App

Attorney or Professional Name, Address, Telephone and FAX

Victor A. Sahn (CA Bar No. 97299)
 victor.sahn@gmlaw.com
Mark S. Horoupian (CA Bar No. 175373)
 mark.horoupian@gmlaw.com
Steven F. Werth (CA Bar No. 205434)
 steven.werth@gmlaw.com
Greenspoon Marder LLP
a Florida limited liability partnership
333 South Grand Ave., Suite 3400
Los Angeles, CA  90071
Telephone: 213.626.2311
Facsimile: 954.771.9264


Attorneys for Debtor in Possession,
Spring Mountain Vineyard Inc.

### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>SPRING MOUNTAIN VINEYARD INC.,<br>a Delaware corporation,<br><br>                Debtor. | Case Number: 1:22-bk-10381 CN<br><br>Chapter 11<br><br>**Monthly Fee Statement**<br>**Number: 1**<br>**Month of: February 2023** |

| 1. Name of Professional: | Enotrias, Elite Sommelier Services |
|---|---|
| 2. Authorized to Provide Professional Services to: | Spring Mountain Vineyard Inc. |
| 3. Date of Retention: | March 9, 2023 |
| 4. Period For Which Compensation And Reimbursement Are Sought: | February 2023 |
| 5. Amount of Compensation Sought As Actual, Reasonable, And Necessary: | $ 4,800.00 (80% of $6,000) |
| 6. Amount of Expense Reimbursement Sought As Actual, Reasonable, And Necessary: | $ 0.00 |
| 7. Total Amount of Compensation And Expense Reimbursement Sought: | $ 4,800.00 |

DETAILED DOCUMENTATION SUPPORTING THE PROFESSIONAL FEES EARNED AND THE EXPENSES INCURRED DURING THIS REPORTING PERIOD ARE ATTACHED AS <u>EXHIBIT 1</u> AND WILL BE SERVED ON: THE DEBTOR, MGG CALIFORNIA LLC, THE OFFICE OF THE UNITED STATES TRUSTEE, COUNSEL TO THE DEBTOR'S SECURED CREDITORS, AND ALL PARTIES WHO HAVE FILED REQUESTS FOR NOTICE IN THIS BANKRUPTCY CASE (COLLECTIVELY, THE "<u>RECIPIENTS</u>").  COMPENSATION AND EXPENSES WILL BE WITHDRAWN FROM THE DEBTOR'S TRUST ACCOUNT IN THE AMOUNT STATED IN ITEM 7 ABOVE UNLESS A WRITTEN OBJECTION IS FILED WITH THE CLERK OF THE COURT AND SERVED ON THE PROFESSIONAL ABOVE AND ON ALL RECIPIENTS <u>**WITHIN 15 DAYS**</u> FROM THE DATE OF SERVICE OF THIS MONTHLY STATEMENT.

Items 1-7 above are a true and correct statement of fee compensation earned and expenses incurred during this reporting period.

Dated:  March 15, 2023

Type Name of Professional:

Signature of Professional:

Melissa Smith, Founder_____

By: See Signature Page Attached

Respectfully submitted,

Greenspoon Marder LLP,
A Florida limited liability partnership

Victor A. Sahn

DETAILED DOCUMENTATION SUPPORTING THE PROFESSIONAL FEES EARNED AND THE EXPENSES INCURRED DURING THIS REPORTING PERIOD ARE ATTACHED AS <u>EXHIBIT 1</u> AND WILL BE SERVED ON: THE DEBTOR, MGG CALIFORNIA LLC, THE OFFICE OF THE UNITED STATES TRUSTEE, COUNSEL TO THE DEBTOR'S SECURED CREDITORS, AND ALL PARTIES WHO HAVE FILED REQUESTS FOR NOTICE IN THIS BANKRUPTCY CASE (COLLECTIVELY, THE "<u>RECIPIENTS</u>"). COMPENSATION AND EXPENSES WILL BE WITHDRAWN FROM THE DEBTOR'S TRUST ACCOUNT IN THE AMOUNT STATED IN ITEM 7 ABOVE UNLESS A WRITTEN OBJECTION IS FILED WITH THE CLERK OF THE COURT AND SERVED ON THE PROFESSIONAL ABOVE AND ON ALL RECIPIENTS **<u>WITHIN 15 DAYS</u>** FROM THE DATE OF SERVICE OF THIS MONTHLY STATEMENT.

Items 1-7 above are a true and correct statement of fee compensation earned and expenses incurred during this reporting period.

Dated: March 15, 2023

Type Name of Professional:

Signature of Professional:

Melissa Smith, Founder

By:

Respectfully submitted,

Greenspoon Marder LLP,
A Florida limited liability partnership

_____

Victor A. Sahn

# EXHIBIT 1

Case: 22-10381 Doc# 452 Filed: 03/05/23 Entered: 03/05/23 18:01:47 Page 91 of 109

# ENOTRIAS

## INVOICE

Spring Mountain Vineyard • Appraisal
2805 Spring Mountain Rd, St Helena, CA 94574

| Appraisal and Appraisal Report | HOURS | RATE | SUB TOTAL |
|---|---|---|---|
| Appraisal Services | 45 | $300 | $13,500 |

- Detailed Appraisal Report consisting of the Fair Market Value of Spring Mountain Vineyard estate Cabernet Sauvignon and Elivette.
- On -premise organized tasting of both bottlings going back to 1979.
- Spreadsheets outlining the FMV as well as current restaurant listed prices within the US, based on the current inventory dated December 31, 2022.

*45 hours were spent in total on the appraisal. 20 hours spent on analyzing wine lists across the US. This time is in excess of the 25 hours that was originally estimated for this appraisal, is what is currently outstanding and has been approved. $7500 was paid directly from SMV on* Jan 17, 2023

- *Because of the prevalence of Spring Mountain Vineyard's presence on wine lists versus retail, additional research regarding pricing for Spring Mountain Vineyard's wine in restaurants and private clubs, including contacting each establishment directly.*

| | | | |
|---|---|---|---|
| Total | | | $13,500 |
| Deposit Paid 1/17/23 from SMV | | | -$7,500 |
| Balance Due | | | **$6000** |

## PAYMENT TERMS

Deposit is non refundable. Balance is due the day of the event or services completed. **Payments made by credit card are subject to a 5% credit card processing fee;** Outstanding balance will be charged to credit card on file within 48 hours of completion of services rendered unless alternate arrangements are made ahead of time and agreed upon by both parties in writing. Payments not paid within 14 days are subject to a 10% late fee for every 7 days that the outstanding balance has not been paid.

## APPROVED BY

NAME

FOR

DATE

Please make checks payable to:

**Melissa L. Smith/Enotrias**
463 Sherwood Drive #203 Sausalito, CA 94965
**Venmo:**
@winechef
**PayPal:**
PayPal.Me/Enotrias

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 333 South Grand Avenue, Suite 3400, Los Angeles, CA 90071.

A true and correct copy of the foregoing document entitled (*specify*): **MONTHLY FEE STATEMENT NUMBER 1 MONTH OF FEBRUARY 2023** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) March 15 2023  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*)  March    , 2023 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) March 15 2023, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 15, 2023 | Patricia Dillamar | /s/ Patricia Dillamar |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

PMD 53484341v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California. 091

*June 20* Case: 22-10381   Doc# 452   Filed: 03/15/23   Entered: 03/15/23 13:04:10   Page 94 of   PROOF OF SERVICE
109

**<u>ADDITIONAL SERVICE INFORMATION</u> (if needed):**

**1. <u>SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")</u>**

Steve Burnell on behalf of Debtor Spring Mountain Vineyard Inc.
steve.burnell@gmlaw.com

Dean C. Burnick on behalf of Interested Party Mt. Hawley Insurance Company **(RSN)**
dcb@proughlaw.com

Jacquelyn H. Choi on behalf of Creditor Napa County Treasurer-Tax Collector **(RSN)**
jacquelyn.choi@rimonlaw.com, docketing@rimonlaw.com

Trevor Ross Fehr on behalf of U.S. Trustee Office of the U.S. Trustee / SR
trevor.fehr@usdoj.gov

Mark S Horoupian on behalf of Debtor Spring Mountain Vineyard Inc.
mark.horoupian@gmlaw.com, cheryl.caldwell@gmlaw.com

Thomas Philip Kelly, III on behalf of Creditor Central Valley Builders Supply Inc. **(RSN)**
tomkelly@sonic.net

Steve Ma on behalf of Creditor MGG California, LLC
sma@proskauer.com

Jeff J. Marwil on behalf of Creditor MGG California, LLC
jmarwil@proskauer.com

Randall P. Mroczynski on behalf of Creditor Ford Motor Credit Company LLC **(RSN)**
rmroczynski@cookseylaw.com

Office of the U.S. Trustee / SR
USTPRegion17.SF.ECF@usdoj.gov

Elvina Rofael on behalf of U.S. Trustee Office of the U.S. Trustee / SR
elvina.rofael@usdoj.gov, Katina.Umpierre@usdoj.gov,GemMil.Langit@usdoj.gov

Victor A. Sahn on behalf of Debtor Spring Mountain Vineyard Inc.
victor.sahn@gmlaw.com, Karen.Files@gmlaw.com

Michael St. James on behalf of Interested Party Arcade Capital, LLC **(RSN)**
ecf@stjames-law.com

John G. Warner on behalf of Creditor Francois Freres USA Inc. **(RSN)**
warnerwest@aol.com

Ashley M. Weringa on behalf of Creditor MGG California, LLC
aweringa@proskauer.com

Steven F. Werth on behalf of Debtor Spring Mountain Vineyard Inc.
steven.werth@gmlaw.com, Patricia.Dillamar@gmlaw.com

Peter J Young on behalf of Creditor MGG California, LLC
pyoung@proskauer.com

PMD 53484341v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California. 092

*June 20* Case: 22-10381 Doc# 452 Filed: 03/05/23 Entered: F090483-31B PROOF SERVICE
1109

**3. SERVED BY EMAIL ONLY**

<u>Debtor</u>
Spring Mountain Vineyard Inc.
2805 Spring Mountain Road
St. Helena, CA 94574-1798
Attn:  Don Yannias, President
email:  don@bimi.com

**Debtor's Financial Advisor And Chief Restructuring Officer**
Attn:  Kevin A. Krakora, Managing Director
Getzler Henrich & Associates LLC, a Hilco Global Company
150 S. Wacker Drive | 24th Floor
Chicago, IL 60606
Tel:  (312) 283-8071
email:  kkrakora@getzlerhenrich.com
Peter.Ekman@jigsawadvisors.com

**Secured Creditors**
MGG (BV) Limited
MGG Canada Fund LP
MGG Insurance Fund Series Interests of t
MGG Investment Group LP
MGG Onshore Funding I LLC
MGG SF Drawdown Master Fund (Cayman) LP
MGG SF Drawdown Unlevered Fund II LP
MGG SF Drawdown Unlevered Fund LP
MGG SF Drawdown Unlevered Master Fund I
MGG SF Evergreen Unlevered Fund LP
MGG SF Evergreen Master Fund (Cayman) LP
MGG SF Evergreen Unlevered Fund LP
MGG SF Evergreen Unlevered Master Fund I
MGG Specialty Finance Fund I LP
MGG Specialty Finance Fund LP
c/o MGG California, LLC
One Penn Plaza 53rd Fl
Attn Kevin F. Griffin, CEO
New York, NY 10119-0002
Tel:  (212) 356-6100
creditagreementnotices@mgginv.com

**Counsel for MGG Secured Creditors**

Bradley R. Bobroff, Esq.
Proskauer Rose LLP
Eleven Times Square
New York, NY  10036-8299
Tel:  (212) 969-3643
email:  bbobroff@proskauer.com

Scott P. Cooper, Esq.
Proskauer Rose LLP
2029 Century Park East, Suite 2400
Los Angeles, California 90067-3010
Tel:  (310) 284-5669
email:  scooper@proskauer.com

PMD 53484341v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California 093

June 2017  Case: 22-10381  Doc# 452  Filed: 03/05/23  Entered: F-9013-3.1 PROOF OF SERVICE

Frederic Ragucci, Esq.
Proskauer Rose LLP
Eleven Times Square
New York, NY 10036-8299
Tel: (212) 969-3023
email: FRagucci@proskauer.com

**Jeff. J. Marwil, Esq. (NEF)**
Head-Business Solutions, Governance, Restructuring & Bankruptcy Group
Proskauer Rose LLP
70 W. Madison, Suite 3800
Chicago, IL 60602-4342
D (312).962.3540
C (312) 543 2303
email: jmarwil@proskauer.com
pyoung@proskauer.com
AWeringa@proskauer.com
sma@proskauer.com
NPetrov@proskauer.com

**Secured Creditor**
Imperial PFS aka IPFS
49 Stevenson St. #127
San Francisco, CA 94105-2909
(877) 687-9826
Lisa Chandler, Litigation and Bankruptcy Recovery Manager
lisa.chandler@ipfs.com

**Request for Special Notice**
Alcohol & Tobacco Tax & Trade Bureau
Attn: Daniel Paralta, Senior Counsel, Field Operations
1436 2nd Street #531
Napa, CA 94559
Daniel.Peralta@ttb.gov

**Request for Special Notice - NEF**
Attorneys for Mt. Hawley Insurance Company
Michael D. Prough
**Dean C. Burnick**
Prough Law, APC
1550 Parkside Drive, Suite 200
Walnut Creek, CA 94596
T: (925) 433-5894
F: (925) 482-0929
Email: mdp@proughlaw.com
        dcb@proughlaw.com

**Request for Special Notice - NEF**
Attorneys for Napa County Treasurer
Jacquelyn H. Choi
RIMON, P.C.
2029 Century Park East
Suite 400N
Los Angeles, CA 90067
Telephone: (310) 525-5859
Facsimile: (310) 525-5859
jacquelyn.choi@rimonlaw.com

PMD 53484341v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California. 094

June 2012     F 9013-3.1.PROOF.SERVICE

Case: 22-10381    Doc# 459    Filed: 03/05/23    Entered: 03/05/23 18:12:00    Page 97 of 109

**Courtesy Email**
Luckey McDowell luckey.mcdowell@shearman.com
Jonathan Dunworth jonathan.dunworth@shearman.com

**Attorneys for Creditor Francois Freres USA Inc.**
John G. Warner warnerwest@aol.com

PMD 53484341v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California. 095

*June 2012* F 9013-3.1.PROOF.SERVICE

Case: 22-10381    Doc# 459    Filed: 03/05/23    Entered: 03/05/23 18:14:30    Page 84 of 109

# EXHIBIT 4 re: First & Final Fee App

1  Victor A. Sahn (CA Bar No. 97299)
       *victor.sahn@gmlaw.com*
2  Mark S. Horoupian (CA Bar No. 175373)
       *mark.horoupian@gmlaw.com*
3  **GREENSPOON MARDER LLP**
   a Florida limited liability partnership
4  333 South Grand Ave., Suite 3400
   Los Angeles, CA  90071
5  Telephone: 213.626.2311
   Facsimile: 213.629.4520
6
   Attorneys for Debtor in Possession,
7  Spring Mountain Vineyard Inc.

8              **UNITED STATES BANKRUPTCY COURT**

9             **NORTHERN DISTRICT OF CALIFORNIA**

10                   **SANTA ROSA DIVISION**

11  In re:                              Case No. 1:22-bk-10381 CN

12  SPRING MOUNTAIN VINEYARD INC.,      Chapter 11

13            Debtor.                   **ORDER GRANTING FIRST AND FINAL**
                                        **APPLICATION FOR ALLOWANCE AND**
14                                      **PAYMENT OF FEES AND EXPENSES**
                                        **FOR ENOTRIAS, ELITE SOMMELIER**
15                                      **SERVICES**

16                                      [Related to Docket No. ____]

17                                      **Hearing Information:**
                                        Date:    August 4, 2023
18                                      Time:    11:00 a.m.
                                        Place:   U.S. Bankruptcy Court
19                                               Courtroom 215
                                                 1300 Clay Street
20                                               Oakland, CA 94612

21

22

23

24

25

26

27

28

SB 54808897v1

On June 29, 2023, Spring Mountain Vineyard Inc., the above-captioned debtor in possession (the "Debtor") filed the *First And Final Application For Allowance And Payment Of Fees And Expenses For Enotrias, Elite Sommelier Services* [Docket No. ___] (the "Final Fee Application").[1] The Final Fee Application came on for hearing before the Honorable Charles Novack on the date and time indicated above.

This Court having considered the Final Fee Application, including all pleadings, declarations, and exhibits thereto and the record in this case; and this Court having jurisdiction to consider the Application and the relief requested therein; and due and proper notice of the Application having been provided to all necessary parties, and it appearing that no other or further notice need be provided; and that the legal and factual bases for approval of the Final Fee Application establish just cause for the relief granted herein; and good cause appearing therefor,

**IT IS HEREBY ORDERED AS FOLLOWS:**

1.      The Final Fee Application is approved as set forth herein.

2.      Total fees in the amount of $17,250.00 and total expenses in the amount of $0.00 incurred during September 29, 2022 to May 31, 2023 ("the Application Period") by Enotrias, Elite Sommelier Services ("Sommelier") are hereby allowed, on a final basis, pursuant to 11 U.S.C. § 330.

3.      The Debtor is hereby authorized to pay Enotrias, on a final basis, $1,200.00 for outstanding fees not previously paid to Enotrias via its previously filed monthly fee statements.

4.      This Court retains jurisdiction over all matters arising from or related to the implementation or interpretation of this Order.

**\*\*END OF ORDER\*\***

---

[1] Capitalized terms not otherwise defined herein shall have the meanings given to such terms in the Final Fee Application.

SB 54808897v1

097

COURT SERVICE LIST

SERVICE OF THE ORDER IS NOT NECESSARY

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1875 Century Park East, Ste. 1900, Los Angeles, CA 90067.

A true and correct copy of the foregoing document entitled (*specify*): **FIRST AND FINAL APPLICATION FOR ALLOWANCE AND PAYMENT OF FEES AND EXPENSES FOR ENOTRIAS, ELITE SOMMELIER SERVICES** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) July 3, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) July 3, 2023, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)  July 3, 2023 , I served  the following persons and/or entities by personal delivery, overnight mail service, or (for those who onsented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 3, 2023 | Patricia Dillamar | *Patricia Dillamar* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

PMD 54816884v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

ADDITIONAL SERVICE INFORMATION (if needed):

## 1. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")

Steve Burnell on behalf of Debtor Spring Mountain Vineyard Inc.
steve.burnell@gmlaw.com

Dean C. Burnick on behalf of Interested Party Mt. Hawley Insurance Company **(RSN)**
dcb@proughlaw.com

Jacquelyn H. Choi on behalf of Creditor Napa County Treasurer-Tax Collector **(RSN)**

Louis J. Cisz  lcisz@nixonpeabody.com on behalf of Don Yannias **(RSN)**

Trevor Ross Fehr on behalf of U.S. Trustee Office of the U.S. Trustee / SR
trevor.fehr@usdoj.gov

Mark S Horoupian on behalf of Debtor Spring Mountain Vineyard Inc.
mark.horoupian@gmlaw.com, cheryl.caldwell@gmlaw.com

Thomas Philip Kelly, III on behalf of Creditor Central Valley Builders Supply Inc. **(RSN)**
tomkelly@sonic.net

Steve Ma on behalf of Creditor MGG California, LLC
sma@proskauer.com

Jeff J. Marwil on behalf of Creditor MGG California, LLC
jmarwil@proskauer.com

Randall P. Mroczynski on behalf of Creditor Ford Motor Credit Company LLC **(RSN)**
rmroczynski@cookseylaw.com

Office of the U.S. Trustee / SR
USTPRegion17.SF.ECF@usdoj.gov

Elvina Rofael on behalf of U.S. Trustee Office of the U.S. Trustee / SR
elvina.rofael@usdoj.gov, Katina.Umpierre@usdoj.gov,GemMil.Langit@usdoj.gov

Victor A. Sahn on behalf of Debtor Spring Mountain Vineyard Inc.
victor.sahn@gmlaw.com, Karen.Files@gmlaw.com

Michael St. James on behalf of Interested Party Arcade Capital, LLC **(RSN)**
ecf@stjames-law.com

John G. Warner on behalf of Creditor Francois Freres USA Inc. **(RSN)**
warnerwest@aol.com

Ashley M. Weringa on behalf of Creditor MGG California, LLC
aweringa@proskauer.com

Steven F. Werth on behalf of Debtor Spring Mountain Vineyard Inc.
steven.werth@gmlaw.com, Patricia.Dillamar@gmlaw.com

Peter J Young on behalf of Creditor MGG California, LLC
pyoung@proskauer.com

PMD 54816884v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                          F 9013-3.1.PROOF.SERVICE

Case: 22-10381    Doc# 459    Filed: 07/03/23    Entered: 07/03/23 13:03:04    Page 104
of 109

## 2. SERVED VIA U.S. MAIL OR EMAIL

**Secured Creditors**
MGG (BV) Limited
MGG Canada Fund LP
MGG Insurance Fund Series Interests of t
MGG Investment Group LP
MGG Onshore Funding I LLC
MGG SF Drawdown Master Fund
(Cayman) LP
MGG SF Drawdown Unlevered Fund II
LP
MGG SF Drawdown Unlevered Fund LP
MGG SF Drawdown Unlevered Master
Fund I
MGG SF Evergreen Unlevered Fund LP
MGG SF Evergreen Master Fund
(Cayman) LP
MGG SF Evergreen Unlevered Fund LP
MGG SF Evergreen Unlevered Master
Fund I
MGG Specialty Finance Fund I LP
MGG Specialty Finance Fund LP
c/o MGG California, LLC
One Penn Plaza 53rd Fl
Attn Kevin F. Griffin, CEO
New York, NY 10119-0002
Tel: (212) 356-6100
creditagreementnotices@mgginv.com

**Debtor's Financial Advisor And Chief Restructuring Officer**
Attn: Kevin A. Krakora,
Managing Director
Getzler Henrich & Associates
LLC, a Hilco Global Company
kkrakora@getzlerhenrich.com
Peter.Ekman@jigsawadvisors.com

Ballande & Meneret
Attn: Florian Malpuch
55 Boulevard Jacques-Chaban
Delmas
33250 Bruges, France

Wine Service Cooperative
1150 Dowdell Lane
Saint Helena, CA 94574
Attn: Steven Tamburelli
General Manager

**Attorney for Cab West LLC**
Randall P. Mroczynski
Cooksey, Toolen, Gage, Duffy
& Woog APC
535 Anton Boulevard, Tenth
Floor Costa Mesa, Ca 92626-
1977
rmroczynski@cookseylaw.com

East West Wine Trading, Inc.
Attn: Satoshi Tanaka,
President & CEO
1 Blackfield Dr. #205
Tiburon, CA 94920

Wilmington Trust, National
Association
10250 Constellation Blvd #2800,
Los Angeles, CA 90067
Attn: Jennifer Anderson,
Vice President

CQ&A Consulting
Attn: Deanna Leon, President
PO Box 777
Pinole, CA 94564
dleon@cqaconsult.com

My Enologist, Inc.
Attn: Mark Meyering
1451 Gordon Drive
Napa, CA 94558

## 20 Largest Unsecured Creditors:

Allen Wine Group LLP
Attn: Timothy Allen, CPA
tim@allenwine.com
Tim@allengroupllp.com
Brent Garrison
Brent@allengroupllp.com

Bartelt Engineering
Attn: Paul Bartelt
1303 Jefferson St #200B
Napa, CA 94559
paulb@barteltengineering.com

Belkorp AG, LLC
Attn: Laura Correll,
Accounting
ar@belkorpag.com
AR@BelkorpAg.com
ldunhouse@belkorpag.com

PMD 54816884v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

F 9013-3.1 PROOF.SERVICE

Case: 22-10381   Doc# 459   Filed: 07/03/23   Entered: 07/03/23 13:03:04   Page 105 of 109

Brown's Auto Parts
Attn Dan Beltramai, Owner
1218 Main St.
Saint Helena, CA 94574-1901
brownsauto169@gmail.com

Castino Restaurant Equipment
And Supply
50 Utility Ct.
Rohnert Park, CA 94928-1659
(707) 585-3566
sales@castinosolutions.com

Central Valley
Administrative Offices
1804 Soscol Ave., #205
Napa, CA 94559
Attn: Gerry Cruz, Accounting
Mgr.
gerryc@central-valley.com

Chubb Group of Insurance
Companies
P.O. Box 777-1630
Philadelphia, PA 19175-0001
(800) 372-4822
**Returned – Box Closed**

Conway Beverage Group, LLC
Dba: Elite Brands
Elite Brokerage
3238 Old Heather Rd.
San Diego, CA 92111-7716
Attn: Mr. Jay Conway
Jayconway@elitebrands.biz

Famille Sylvain
855 Bordeaux Way #239
Napa, CA 94558-7549
(707) 492-3308
contactusa@famillesylvain.com

Francois Freres USA Inc.
1403 Jefferson St.
Napa, CA 94559-1708
(707) 294-2204
office@francoisfreresusa.com
julie@francoisfreresusa.com
accounting@francoisfreresusa.com
assistant@francoisfreresusa.com

G3 Enterprises Inc.
(Tapp Labels)
580 Gateway Dr.
Napa, CA 94558
(707) 252-8300
jeff.licht@tapplabel.com

Imperial PFS aka IPFS
49 Stevenson St. #127
San Francisco, CA 94105
Lisa Chandler, Litigation and
Bankruptcy Recovery Manager
lisa.chandler@ipfs.com

Napa County Treasurer
1195 3rd St. #108
Napa, CA 94559-3035
Dawnette.martindale@countyofnapa.
org
Napa County Treasurer-Tax Collector
Bob.Minahen@countyofnapa.org
Napa County Attorney
Wendy.dau@countyofnapa.org

Napa Ford Lincoln
170 Soscol Ave.
Napa, CA 94559

Napa Valley Petroleum
P.O. Box 2670
Napa, CA 94558-0528
(707) 252-6888
kamh@napavalleypetroleum.com

Ramondin U.S.A. Inc.
Tammy Frandsen
Finance Manager
tfrandsen@ramondin.com

Stanzler Law Group
Attn: Jordan S. Stanzler
390 Bridge Pkwy #220
Redwood City, CA 94065
Jstanzler@stanzlerlawgroup.com

Tonnellerie Sylvain
855 Bordeaux Way
Napa, CA 94558
contactusa@famillesylvain.com

Wilbur Ellis Company LLC
c/o Registered Agent Solutions Inc.
720 14th St.
Sacramento, CA 95814
KZavala@wilburellis.com,
MHAMMETT@wilburellis.com,
SPRIM@wilburellis.com

Wine Service Cooperative
1150 Dowdell Lane
Saint Helena, CA 94574
Attn: Steven Tamburelli
General Manager
Steve@wineservicecoop.com

Jeff. J. Marwil, Esq. **(NEF)**
Proskauer Rose LLP
jmarwil@proskauer.com
pyoung@proskauer.com
AWeringa@proskauer.com
sma@proskauer.com
NPetrov@proskauer.com
creditagreementnotices@mgginv.c
om

PMD 54816884v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1 PROOF.SERVICE**

**Additional Others:**

Bradley R. Bobroff, Esq.
Proskauer Rose LLP
Eleven Times Square
New York, NY 10036-8299
bbobroff@proskauer.com

Scott P. Cooper, Esq.
Proskauer Rose LLP
2029 Century Park East, Suite 2400
Los Angeles, California 90067-3010
scooper@proskauer.com

Frederic Ragucci, Esq.
Proskauer Rose LLP
Eleven Times Square
New York, NY 10036-8299
FRagucci@proskauer.com

Ford Motor Credit Company
National Bankruptcy Service Center
P O Box 62180
Colorado Springs CO 80962-2180
fcffald@ford.com

Napa Valley Vintners Association
P.O. Box 141
Saint Helena, CA 94574
Attn: Steve Tradewell, CFO
stradewell@napavintners.com

Bright Event Rental
22674 Broadway # A
Sonoma, CA 95476
(707) 940-6060
Attn: Michelle Minsk, Acctg.
accountsreceivable@bright.com

CNH Capital
Dept. 1801104747435
P.O. Box 78004
Phoenix, AZ 85062
Attn: Steve Wright, Bankruptcy Dept.

CNH Industrial Capital America, LLC
PO Box 71264
Philadelphia, PA 19176-6264
Attn: John Chiavacci, HRBK Analyst
john.chiavacci@cnhind.com

ETS Laboratories
c/o Marjorie Burns 899 Adams Street #A
Saint Helena, CA 94574-1160
(707) 963-4806
Attn Accounts Receivable Team
ar@etslabs.com
accounts@etslabs.com

Matheson Tri-Gas Inc.
Dept. LA 23793
Pasadena, CA 91185
(707) 963-4307
**Via U.S. Mail**

Sovos Compliance LLC
200 Ballardvale St. Bldg 14th Fl.
Wilmington, MA 01887
(866) 890-3970
lori.bradshaw@sovos.com

Wine Technology America
aka Wine Technology, Inc.
474 Walten Way
aka Vinwizard
Windsor, CA 95492
Attn: Kelly Graves, Director
kelly@vinwizard.us

Wine Technology America Inc.
c/o Lloyd Matthews, Agent
1899 Larkspur St.
Yountville, CA 94599-1237
**Via U.S. Mail**

Wyatt Irrigation Co.
4407 Solano Ave.
Napa, CA 94558
(707) 578-3747
Lynne Colombano, Acct Receivable Mgr.
lynne@wyattsupply.com

Wyatt Irrigation Co.
c/o CSC - Lawyers Incorporating Service
2710 Gateway Oaks Dr. #150N
Sacramento, CA 95833-3502
**Via U.S. Mail**

**Request for Special Notice**
Alcohol & Tobacco Tax & Trade Bureau
U.S. Department of the Treasury
Attn: Daniel Paralta, Senior Counsel,
Field Operations

Dept. of the Treasury, Alcoholic Beverage Control
Attn: Tracie Parker, Lic. Rep. I
50 D Street Room 130
Santa Rosa, CA. 95404
tracie.parker@abc.ca.gov

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

PMD 54816884v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012       **F 9013-3.1 PROOF.SERVICE**

Case: 22-10381    Doc# 459    Filed: 07/03/23    Entered: 07/03/23 13:03:04    Page 107 of 109

Daniel.Peralta@ttb.gov

California Department of Tax and Fee Administration
Special Operations Bankruptcy Team MIC: 74
P.O. Box 942879
Sacramento, CA 94279-0074

Franchise Tax Board
Attn: Vivian Ho
Bankruptcy Section, MS A-340
P.O. Box 2952
Sacramento, CA 95812-2952
916-845-7069
Vivian.Ho@ftb.ca.gov

Employment Development Department
Bankruptcy Unit-MIC 92E
P.O. Box 826880
Sacramento, CA 94280-0001

Employment Development Department
Attn: MIC 53
800 Capital Mall
Sacramento, CA 95814

Piper/Sandler
1251 Avenue of the Americas, 39th Floor
New York, N.Y. 10020
Attn.: Mr. Leonard Sheer and Mr. Mike Dillahunt
Leonard.sheer@psc.com
Michael.dillahunt@psc.com
**Via U.S. Mail & Email**

Will Densberger
Pavi Micheli
Engel & Volkers
1111 Main Street Suite A,
St. Helena CA 94574
Will@nvwineestates.com
pavimicheli@icloud.com
**Via U.S. Mail & Email**

**Attorneys for Don Yannias**
Louis J. Cisz, III, Esq. NIXON PEABODY LLP
One Embarcadero Center, 32nd Floor
San Francisco, CA 94111
lcisz@nixonpeabody.com

Richard J. Frey NIXON PEABODY LLP
300 South Grand Avenue, Suite 4100
Los Angeles, CA 9007
Tel: (213) 629-6000 Fax: (213) 629-6001
rfrey@nixonpeabody.com

Office of the United States Trustee
Attn: Phillip J. Shine
280 South First Street, Rm. 268
San Jose, CA 95113
Email: phillip.shine@usdoj.gov

**Courtesy Email**
Jay B. Spievack, Esq.
Cohen Tauber Spievack & Wagner P.C.
jspievack@ctswlaw.com

Joseph Vann, Esq.
Cohen Tauber Spievack & Wagner P.C.
420 Lexington Ave., Suite 2400
New York NY 10170-2499
(212) 381-8724
jvann@ctswlaw.com

John C. Vaughan
Newmark Knight Frank
4675 MacArthur Court, Suite 1600
Newport Beach, CA 92660
john.vaughan@nmrk.com

Mark Kasowitz:
MKasowitz@kasowitz.com

Gavin D. Schryver:
GSchryver@kasowitz.com

Attorneys for Napa County Treasurer
Jacquelyn H. Choi
jacquelyn.choi@rimonlaw.com,
docketing@rimonlaw.com

Luckey McDowell
luckey.mcdowell@shearman.com

Jonathan Dunworth
jonathan.dunworth@shearman.com

Attorneys for Creditor Francois Freres USA Inc.
John G. Warner
warnerwest@aol.com

PMD 54816884v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1 PROOF.SERVICE**

Case: 22-10381    Doc# 459    Filed: 07/03/23    Entered: 07/03/23 13:03:04    Page 108
of 109

C Q and A Consulting, LLC
c/o Robert J. Hooy, Agent
3125 Clayton Rd. 2nd Fl.
Concord, CA 94519-2732

**Debtor**
Spring Mountain Vineyard Inc.
2805 Spring Mountain Road
St. Helena, CA 94574-1798
Attn: Don Yannias, President
email: don@bimi.com

**Elvina Rofael, Trial Attorney**
United States Department of
Justice
Office of the United States
Trustee
Phillip J. Burton Federal
Building
450 Golden Gate Avenue, Fifth
Floor, 05-0153
San Francisco, California 94102

Abbott & Kinderman, Inc.
2100 21st Street
Sacramento, CA 95818

Central Valley
1100 Vintage Avenue
St. Helena, CA 94564

William R. Brinkman
3581 Mt. Diablo Blvd., #215
Lafayette, CA 94549

PMD 54816884v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.